UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) 3:02 CV 1302 (DJS) |
| | ) |
| PAUL ARPIN VAN LINES, INC., | ) |
| ET AL. | ) OCTOBER 16, 2003 |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The plaintiff files this memorandum of law in opposition to the defendants' motion to dismiss, improperly filed pursuant to Fed. R. Civ. P. 12(b) (1),[1] alleging that the court lacks subject matter jurisdiction to adjudicate this negligence claim against the Arpin defendants because the plaintiff, who was hired by Arpin as an "independent contractor" has been

---

[1] The workers' compensation exclusivity defense does not implicate the court's subject matter jurisdiction and this objection alone (based on the procedural posture of Arpin's motion) is sufficient to require its denial. See Grant v. Bassman, 221 Conn. 465, 471 (1992) (exclusivity defense does not implicate subject matter jurisdiction and is not properly asserted as motion to dismiss but must be alleged as affirmative/special defense). Moreover, when judging a motion to dismiss based on exclusivity "every presumption is to be indulged in favor of jurisdiction" Id.; see also Posr v. Court Officer Shield 207, 180 F.3d 409, 413 (2d Cir. 1999) (on 12(b)(1) motion all inferences are drawn in favor of plaintiff). Also, generally, a motion to dismiss based on the defense of exclusivity is improper since the inquiry usually involves a question of fact. See Antignani v. Britt Airways, 58 Conn. App. 109, 113, cert. denied, 254 Conn. 911 (2000) (improper to strike workers' compensation defense – inquiry is usually one of fact). The court should deny the motion for the procedural reasons set forth above, but it should also deny it since the C.F.R. sections cited by Arpin do not immunize the defendants from liability.

**ORAL ARGUMENT REQUESTED**

transformed during the course of this litigation into an employee, thereby immunizing the defendants from liability under the workers' compensation exclusivity provisions. The defendants' *post hoc* attempt to recast Mr. Pouliot as an employee should be rejected on procedural and substantive grounds. Particularly where, in their "Eleventh Defense: Independent Contractor" asserted in the Amended Answer dated August 15, 2003,[2] Arpin alleges that "The Plaintiff, Shawn Pouliot, was an independent contractor who undertook the pickup and delivery of equipment in his capacity as an independent contractor . . . ." Accordingly, this motion should be denied, with prejudice.

I.   **FACTUAL BACKGROUND**

The plaintiff was rendered a paraplegic as a result of the defendants' negligent maintenance and inspection of the lift gate on a truck that they had provided to the plaintiff. The defective leased vehicle was registered in Connecticut as was the vehicle that the plaintiff usually operated which was out of service at the time of the injury. Tr. of Anita Labossiere at 6-8. Prior to the date of the plaintiff's injuries the parties entered into an "Owner Operator Agreement", see Exhibit 10, whereby Mr. Pouliot, in ¶ 1(A)(a) "represents, warrants and covenants that he is an independent Contractor only, and is not an employee of the Company." Further, the "Owner

---

[2] Admissions in pleadings such as this are judicial admission binding on the party making the statement. See Keller v. United States, 58 F.3d 1194, 1198 n.8 (2d Cir. 1995); Peckham Materials Corp. v. Raima Corp., 90 Civ. 4134(JSM), 1995 U.S. Dist. LEXIS 10046, at *1 (S.D.N.Y. July 18, 1995) (prohibiting plaintiff from contradicting at trial statements of fact made in complaint).

2

Operator Agreement" states at ¶ 13 that "nothing contained in this contract shall be deemed to create an agency, joint venture, partnership, or any other legal relationship except that of the carrier and independent contractor." Tr. of Joseph Rocha at 8. Mr. Pouliot was paid on a 1099, had no taxes withheld, see Exhibit 2, had no benefits provided by Arpin and in order to get workers' compensation he would have to buy his own because his is not included within the Arpin policy. See Exhibit 10, ¶ 6(d); Tr. of Michael Killoran, at 6, 17. Mr. Pouliot had to pay for his own helpers (lumpers), had to pay his own fuel taxes, social security taxes, payroll taxes, property taxes, fines or penalties incurred while driving, carry his own MCS-90 endorsement, and place his own money in the Arpin escrow account to pay for overhead, including his own workers' compensation insurance if he elected to purchase it. Tr. of Michael Killoran, at 17-19. Mr. Killoran, identified by Arpin as the person most knowledgeable concerning workers' compensation policies at Arpin, stated that he was not aware of Arpin ever paying for workers' compensation coverage for an owner operator like Mr. Pouliot. Id. at 19. Killoran was not aware of Arpin ever telling anyone that Mr. Pouliot was an employee. Id. at 20.

At the time Mr. Pouliot signed the owner operator agreement in the presence of Mr. Rocha (wherein he specifically warranted that he was not an employee) he also had to fill out a NAIT Membership Application. Exhibit 15. The application permitted him to purchase workers' compensation insurance out of his own funds. On the second page of the form Mr. Pouliot had to swear "I am not now, nor will I become an employee of a motor carrier [i.e. Arpin]

3

while this contract is in force." Id. The workers' compensation premium is deducted from Mr. Pouliot's paycheck. Tr. of Joseph Rocha at 15-16. As indicated on Exhibit 16, Mr. Pouliot purchased his own workers' compensation and occupational accident insurance from American Automobile Ins. Co. American Automobile Ins. Co. is not the company that Arpin submitted Mr. Pouliot's claim to some 20 months after the injury. Beacon Insurance, Arpin's Rhode Island carrier, is the company that Arpin contacted after this case had been pending for some time. See Exhibits 11 & 12.

On the date of the injury Mr. Pouliot was starting a delivery in New York and ending in Connecticut at the location where he sustained his injuries. Tr. of Joseph Rocha, at 14. Shortly after the injury Mr. Rocha and other executives at Arpin became aware of his injury. Id. at 21. The employer, however, filed no workers' compensation claim or first report of injury. Id. at 22. Connecticut law requires the employer to provide medical care and compensation to the employee as soon as it has knowledge of the injury. General Statutes § 31-294d (a) (1). Here, despite having immediate knowledge of the injury Arpin did nothing.

The filing of a workers' compensation claim was not contemplated until July of 2003, nearly two years after the incident, when Mr. Grady, defense counsel, instructed clerical employee Patricia Silva to file a workers' compensation claim with the state on behalf of Mr. Pouliot. Tr. of Patricia Silva at 12. Ms. Silva, the workers' compensation filing coordinator, has never before filed a comp. claim for an owner operator. Id. at 9. Silva prepared the first report of

4

injury on July 24, 2003. Exhibit 12. The claim was made with Beacon Insurance Company, the carrier that Arpin uses exclusively for Rhode Island employees. Exhibits 3-6; Tr. of Michael Killoran at 10, 13-14. Non-Rhode Island employees are covered under a policy issued by the Travelers. Exhibit 8. If a hypothetical employee was on the road and injured in another state he or she would not be covered under the Beacon policy. Tr. of Michael Killoran at 14. Despite this lack of coverage, Arpin, at its counsel's instigation, filed a claim on Mr. Pouliot's behalf in July of 2003 in order to trump up a workers' compensation defense.[3]

## II. ARPIN IS NOT IMMUNIZED FROM LIABILITY BY FEDERAL REGULATION

Despite the surfeit of evidence set forth above clearly showing the no one at Arpin ever legitimately thought or claimed Mr. Pouliot was an employee, Arpin now claims that the plaintiff is precluded from pursuing this lawsuit to recover for his paralysis due to a workers' compensation defense which is based on a misreading of federal regulations, 49 C.F.R. §§ 376.12(c) (1) & 390.5, which contain no exclusivity provisions. Importantly, 49 C.F.R. § 376.12(c) (4) specifically retains the right of owner operators to remain independent contractors as long as the administrative requirements attendant thereto are satisfied. In this case, it is undisputed that the ministerial administrative requirements were satisfied. There is no Federal administrative preemption of the plaintiff's claims in this case.

---

[3] Arpin secretly filed the notice of compensation in July, 2003 and never provided a copy to Mr. Pouliot in violation of R.I.G.L. § 28-35-15 (even though Arpin claims R.I. law applies).

The cases interpreting 49 C.F.R. § 376.12(c) indicate that the purpose of the regulation is not to thwart legitimate claims, but rather to make the carrier vicariously liable for the negligent operation of a leased truck as a matter of law. See Reliance Ins. Co. v. Royal Indemnity Co., No. 99 Civ. 10920 (NRB), 2001 U.S. Dist. LEXIS 12901, at *22-23 (S.D.N.Y. Aug. 24, 2001). The vicarious liability was imposed not to interfere with the Seventh Amendment rights of independent contractors by mandating federal workers' compensation protection, but rather to protect the motoring public from unscrupulous motor carriers that would attempt to circumvent safety regulations and provide defective equipment or not maintain its fleet. See id. (discussing purposes of the vicarious liability regulations). 49 C.F.R. § 390.5 defines employee to include independent contractors "for purposes of this sub-chapter" – a clear indication that the scope of the definition is limited to providing protections to the motoring public as set forth in Reliance Ins. Co., supra, or to provide additional protection to the motoring public under the MCS-90 endorsement. See, e.g., Pierre v. Providence Washington Ins. Co., 784 N.E.2d 52, 55 (N.Y. 2002) (discussing purposes of motor carrier regulations); see also Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc., 930 F.2d 258, 260 (2d Cir. 1991) (same). In this case, the purpose of the regulations will not be served by eliminating Mr. Pouliot's cause of action against Arpin.

While Arpin cites several cases that do not attack the issue head-on,[4] the Supreme Court of Pennsylvania has addressed the issue in the context of a workers' compensation claim and held, as a matter of law, that the Federal Regulations relied on by Arpin do not create an employer/employee relationship and permit the parties to make independent contractor agreements consistent with 49 C.F.R. § 376.12(c)(4). See Universal Am. Can Ltd. v. Workers' Compensation Appeals Board, 762 A.2d 328, 334 (Pa. 2000). The Court held that the

---

[4] For example, the principal case Arpin cites as authority for its argument is White v. Excalibur, 599 F.2d 50 (5th Cir.), cert. denied, 444 U.S. 965 (1979), a case that doesn't deal persuasively with the issue before the court. In White the court had to determine whether a co-employee passenger in a truck was a member of the public for purposes of liability under the MSC-90 endorsement. The court determined that he was not. Id. at 53. The ruling in White has been roundly criticized by courts across the nation. See, e.g., Johnson v. S.O.S. Transportation, 926 F.2d 516, 522-23 (6th Cir. 1991) (cited with approval in Reliance Ins. Co., supra)(describing court's reasoning as "incorrect" and permitting recovery by driver of truck against company that negligently maintained it); Riddle v. Trans Cold Express, Inc., 530 F.Supp. 186, 189 n.5 (S.D.Ill. 1982) (rejecting White stating "[t]he Court in White also found that since the driver was a "statutory employee" of the lessee, his survivor's remedy would be under the lessee's workman's compensation program. This Court declines to extend the "statutory employee" fiction this far. The lessor and his employees are not the lessee's "statutory employees" for all purposes, as the Court in White suggests. The "statutory employee" fiction exists only to implement the lessee's financial responsibility to shippers and the general public."); Zimprich v. Broekel, 519 N.W.2d 588, 590 (N.D. 1994) (no employer/employee relationship despite statements in White case to the contrary – inquiry rests on facts of case and relationship of parties); Stonerock v. Miller Bros., 594 N.E.2d 94, 100 (Oh. Ct. App.), cert. denied, 573 N.E.2d 672 (Oh. 1991) (permitting recovery against carrier and rejecting White approach); Wilkerson v. Allied Van Lines, Inc., 521 A.2d 21, 25 (Pa. Super. Ct. 1987), appeal dismissed, 540 A.2d 268 (Pa.), cert. denied, 488 U.S. 827 (1988) (allowing recovery in spite of White holding); Maples v. Perkle Refrigerated Lines, 1987 Wisc. App. LEXIS 3484 at *6-7 (Wisc. Ct. App. 1987) (rejecting White and recognizing limited scope of "statutory employee" status – applies to protect motoring public not immunize carriers from liability). The foregoing authority makes clear that the precedential value of White and its flawed reasoning is dubious at best.

7

regulations are designed to protect the motoring public, not mandate federal workers' compensation benefits on states, id. at 335, an area traditionally controlled by the States. In Universal, the claimant was an owner operator who was hurt while unloading a truck. The court examined the relationship and held that "[s]imply stated, we agree with Universal Am-Can that based upon the unequivocal language contained in § 376.12(c) (4), the regulation found at § 376.12(c) (1), relating to possession, control, and use does not mandate a determination of employee status." Id. at 332. The court placed in proper perspective the Federal Regulations by indicating (in reliance on courts in other jurisdictions):

> Restrictions upon a workers' [sic] manner and means of performance that spring from government regulation (rather than company initiatives) do not necessarily support a conclusion of employment status. Indeed, employer efforts to ensure the workers' compliance with government regulations, even when those efforts restrict the manner and means of performance, do not weigh in favor of employee status. "The employer cannot evade the law . . . and in requiring compliance with the law he is not controlling the driver. It is the law that controls the driver." North American Van Lines, Inc. v. National Labor Relations Board, 869 F.2d 596, 599 (D.C. Cir. 1989) (citations omitted). See also National Trailer Convoy, Inc. v. Employment Security Agency of Idaho, 360 P.2d 994, 996 (Idaho 1961) ("Requirements that truck and driver meet Interstate Commerce Commission standards . . . point toward compliance with governmental regulations, and are not indicia of an employer-employee relationship.").

Id. at 335; see also Riddle, 530 F.Supp. at 189 n.5 ("The Court in White also found that since the driver was a 'statutory employee' of the lessee, his survivor's remedy would be under the lessee's workman's compensation program. This Court declines to extend the 'statutory employee' fiction this far. The lessor and his employees are not the lessee's 'statutory employees' for all purposes,

8

as the Court in White suggests. The 'statutory employee' fiction exists only to implement the lessee's financial responsibility to shippers and the general public."). The law is clear that Federal Regulations do not mandate state workers' compensation benefits. As such, Arpin's motion to dismiss must be rejected in its entirety.

### III.   THE FEDERAL MOTOR CARRIER ACT PROVIDES A RIGHT OF ACTION FOR VIOLATION OF SAFETY REGULATIONS

Mr. Pouliot has a cause of action for Arpin's violation of safety regulations promulgated under the Federal Motor Carrier Act, including 49 C.F.R. § 396.3(a), for Arpin's provision to Mr. Pouliot of a defective and dangerous vehicle, see Fifth Amended Complaint, Counts One and Two ¶¶ 7(m), and thus it is irrelevant whether the motor carrier act characterizes the plaintiff as an employee (which is denied) or an independent contractor. See Johnson, 926 F.2d at 523.

As stated by the court in Johnson, a decision where the driver of the leased vehicle was held to be an intended beneficiary of the safety regulations and entitled to pursue an action against the carrier under the federal safety regulations, "[t]he statute mandates that the lessee carrier assume control over the vehicle, and bear responsibility, as it would if it were the owner, for any defects in the vehicle . . . ." Id. After citing the relevant federal statutes and regulations within the safety scheme, the court wrote that "driver safety is expressly recognized as an important purpose of the regulatory design. We decline to thwart the fulfillment of that purpose by holding, as [the carrier] asks, that lessee carriers are not responsible when their failure to meet

9

safety requirements results in the injury or death of a driver." Id. at 524. Accordingly, the court held that the plaintiff had a private right of action for the carrier's violation of regulations despite the fact that he was the driver of the leased vehicle.

Cases within this Circuit have recognized the persuasive authority of Johnson. See Reliance Ins. Co., 2001 U.S. Dist. LEXIS 12901, at *24 (recognizing liability as a matter of law for safety violations); see also Roberts v. Xtra Lease, Ins., 98 Civ. 7559(ILG), 2001 U.S. Dist. LEXIS 12161, at *26 (S.D.N.Y. June 25, 2001) (same). Based on the reasoning of Johnson, this court should recognize an independent cause of action under the safety regulations regardless of the status of Mr. Pouliot as an employee or independent contractor. The motion should be denied on this ground alone.

## IV. CHOICE OF LAW

Mr. Pouliot believes that the argument set forth above is dispositive of Arpin's motion, however, if the court reaches the issue of exclusivity, as a matter of law the defense does not apply in this case (under Connecticut or Rhode Island law).[5]

"A federal court sitting in diversity must follow the choice-of-law rules of the forum state to resolve conflict-of-law questions. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); AroChem International, Inc. v. Buirkle, 968 F.2d 266, 269-70 (2d Cir. 1992); Economu

---

[5] Even if the court rules that workers' compensation exclusivity is a viable defense the motion cannot be granted since the inquiry is one of fact based on the circumstances of the case. See Antignani, 58 Conn. App. at 113.

10

v. Borg-Warner Corp., 652 F.Supp. 1242, 1246 (D.Conn.), aff'd, 829 F.2d 311 (2d Cir. 1987)." Valtec International, Inv. v. Allied Signal Aerospace Co., No. 3:93cv01171(WWE), 1997 U.S.Dist. LEXIS 7670, at *3-4 (D.Conn. 1997).

"Although the Connecticut courts have traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury or *lex loci delecti*, in O'Connor v. O'Connor, 201 Conn. 632, 519 A.2d 13 (1986), the Connecticut Supreme Court explicitly abandoned 'categorical allegiance' to this doctrine in tort cases. 201 Conn. at 648. Recognizing that there are circumstances in which strict application of this rule will frustrate the legitimate expectations of the parties and will undermine important state policies, the Court adopted the choice-of-law rules promulgated in the Restatement (Second) of Conflict of Laws as the governing principles for those cases 'in which application of the doctrine of lex loci would produce an arbitrary, irrational result.' 201 Conn. at 649-50." Valtec International, Inc., 1997 U.S.Dist.LEXIS 7670, at *4.

"O'Connor instructs that a court should first ascertain whether the doctrine of lex loci should be applied in its entirety based on the facts of the particular case. If not, then the relative significance of the various factors set forth in §§ 145 & 6 of the Restatement (Second) Conflict of Laws should be weighed. 201 Conn. at 650-51." Id. In this case, the rules of *lex loci* would not produce an arbitrary, irrational result, particularly, as set forth above there is significant contact in this case with the State of Connecticut, thus Connecticut law applies and does not

11

immunize Arpin from Mr. Pouliot's claims. Even if this court applies Rhode Island law, the exclusivity defense is inapplicable.

Under Connecticut law, when a defendant claims to be a principal employer of the plaintiff, the exclusivity provisions only apply if the defendant has paid compensation to the plaintiff. See General Statutes § 31-291; Pelletier v. Sordoni/Skanska Const. Co., 264 Conn. 509, 520 (2003) (refusing to immunize employer where no compensation paid). Here, no compensation has been paid to Mr. Pouliot, the independent contractor. Thus, no exclusivity attaches.

Moreover, under Rhode Island law, to the extent that Arpin claims that Mr. Pouliot is an employee, this claim was never asserted to Mr. Pouliot by an employee of Arpin until during depositions that occurred on September 16, 2003. At that time, Arpin produced to Mr. Pouliot, during the deposition of Ms. Silva, for the first time, first reports of injury claiming that Mr. Pouliot was an employee. See Exhibits 11-14. Under Rhode Island law, a person claimed to be an employee can opt out of the workers' compensation system and preserve his or her common law rights if a filing is made with the workers' compensation board within 10 days. See R.I.G.L. § 28-29-17. After receiving a claim that he was an employee, Mr. Pouliot immediately filed the opt out form with the state within the 10 day period allowed by statute. See Exhibit 21. Thus, Mr. Pouliot has preserved his common law rights as against Arpin.

The law of Connecticut and Rhode Island do not preclude the claims by Mr. Pouliot in

12

this case. Accordingly, the motion to dismiss should be denied.

## VI.     **CONCLUSION**

Based on the foregoing evidence and law, Arpin's motion to dismiss is both procedurally and substantively deficient. The motion should be denied.

THE PLAINTIFF

By_____
Michael A. Stratton
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Federal Bar No. ct 08166
Tel: (203) 624-9500
Fax: (203) 624-9100
mstratton@strattonfaxon.com

CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. Mail, postage prepaid, on this date to:

**Thomas J. Grady, Esq.**
**Lenihan, Grady & Steele**
Six Canal Street
P.O. Box 541
Westerly, RI 02891
Fax No. (401) 596-6845

**Roland F. Moots, Esq.**
**Moots, Pellegrini, Mannion, Martindale & Dratch, PC**
46 Main Street
P.O. Box 1319
New Milford, CT 06776-1319
Fax No. (860) 355-8487

**Susan J. O'Donnell, Esq.**
**Halloran & Sage**
One Goodwin Square
225 Asylum St.
Hartford, CT 06103
Fax No. (860) 548-0006

**John A. Tarantino, Esq**
**Adler, Pollock & Sheehan, Inc.**
2300 Hospital Trust Tower
Providence, RI 02903
Fax No. (401)351-4607



Michael A. Stratton