UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT,<br>Plaintiff,<br><br>V.<br><br>PAUL ARPIN VAN LINES, INC.,<br>ARPIN LOGISTICS, INC.,THE FESTO<br>CORPORATION, MICHAEL KOVAC<br>D/B/A TRANS EXPO INTERNATIONAL,<br>AND ERICA RAMIREZ<br>Defendants. | )<br>)<br>) CIVIL ACTION NO<br>) 3:02 CV 1302 (DJS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) OCTOBER 7, 2003 |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND THE COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a), motion for leave to amend shall be freely granted. The plaintiff is simply adding one subparagraph to his negligence claims in counts one and two to assert a violation of the Federal Motor Carrier Safety Regulations as a predicate for liability. Since discovery is still ongoing and the defendants will not be prejudiced, the motion for leave to amend should be granted. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Ansan v. Cola Petroleum, 760 F.2d 442, 446 (2d Cir. 1985). Based on the foregoing the motion to amend should be granted.

THE PLAINTIFF

BY_____

Michael A. Stratton
Stratton Faxon
59 Elm Street
New Haven, CT 06510
Federal Bar No. ct 08166
Tel: (203) 624-9500
Fax: (203) 624-9100
mstratton@strattonfaxon.com

## CERTIFICATION

This is to certify that a copy of the foregoing and the amended complaint has

been forwarded via U.S regular first class mail, on this day to:

**Thomas J. Grady, Esq.**
**Lenihan, Grady & Steele**
Six Canal Street
P.O. Box 541
Westerly, RI  02891
Fax No. (401) 596-6845

**Clerk's Office**
**United States District Court**
**District of Connecticut**
450 Main Street
Hartford, Connecticut 06103

**Roland F. Moots, Esq.**
**Moots, Pellegrini, Mannion, Martindale & Dratch, PC**
46 Main Street
P.O. Box 1319
New Milford, CT  06776-1319
Fax No. (860) 355-8487

**Honorable Dominic J. Squatrito**
**United States District Court**
**District of Connecticut**
450 Main Street
Hartford, CT 06103

**Susan O' Donnell, Esq.**
**Halloran & Sage, LLP**
One Goodwin Square
Hartford, CT 06103
Fax No. (860) 548-0006

**James R. Oswald, Esq.**
**Adler, Pollock & Sheehan, PC**
2300 Financial Plaza
Providence, RI 02903-2443
Fax No. (401) 751-0604/351-4607

Michael A. Stratton

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT,<br>Plaintiff, | )<br>) CIVIL ACTION NO |
| V. | ) 3:02 CV 1302 (DJS)<br>)<br>) |
| PAUL ARPIN VAN LINES, INC.,<br>ARPIN LOGISTICS, INC.,THE FESTO<br>CORPORATION, MICHAEL KOVAC<br>D/B/A TRANS EXPO INTERNATIONAL,<br>AND ERICA RAMIREZ<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) OCTOBER 7, 2003 |

## PLAINTIFF'S FIFTH AMENDED COMPLAINT

### Count One:  As to Paul Arpin Van Lines, Inc. for Negligence:

1.      The defendant, Paul Arpin Van Lines, Inc. (hereinafter referred to as "Arpin"), is a Rhode Island corporation with its corporate headquarters in Rhode Island.

2.      The defendant, Arpin Logistics, Inc. (hereinafter referred to as "Logistics"), is a foreign corporation with its corporate headquarters in Rhode Island.

3.      Both Logistics and Arpin do business in Connecticut as movers and truckers.

4.      On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an independent contractor delivery driver for the defendants.

5.      The defendants provided Shawn Pouliot with a truck and with loads to deliver.

6.     During the delivery of a Learnline 2000 work station to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein.

7.     The injuries to Shawn Pouliot were the direct and proximate result of the defendant, Paul Arpin Van Lines, Inc.'s negligence and/or carelessness in one or more of the following ways:

    a.     they provided him with a defective liftgate;

    b.     they failed to adequately inspect the liftgate;

    c.     they failed to properly service the liftgate;

    d.     they failed to replace the liftgate with a safe alternative;

    e.     they failed to equip the truck with proper equipment for securing loads;

    f.     they sent Shawn Pouliot on a job without proper equipment and/or support staff;

    g.     they failed to obtain all pertinent and/or correct information from the shipper and/or Festo as to the condition of the Learnline 2000 unit, the moving requirements of the unit and as to whether it was safely prepared for shipment;

    h.     they failed to warn Shawn Pouliot of the dangers of transporting the Learnline unit;

i.   failed to inform Shawn Pouliot of information provided to them by the shipper's agent that the unit was on wheels; required a palletjack; palleting; and a proper liftgate for delivery;

j.   failed to inform Shawn Pouliot that he should call in advance for delivery at the college for special delivery instructions despite being warned by the shipper's agent to do so;

k.   provided Shawn Pouliot with a truck with an inadequate liftgate despite knowing but not informing Shawn Pouliot that a safe and adequate liftgate would be necessary to accomplish the delivery;

l.   failed to convey to Shawn Pouliot the necessity of having the correct equipment given the requirements of the job known to this defendant but not Shawn Pouliot; and/or

m.   failed to comply with federal safety requirements under the Motor Carrier Act, including 49 C.F.R. § 396.3(a), by providing the plaintiff with a defective and dangerous vehicle as set forth above.

8.   As a direct and proximate result of the defendant's negligence, Shawn Pouliot suffered the following injuries, all or part of which are permanent:

a.   burst fracture of L1 with complete spinal cord injury and paraplegia;

b.   loss of bowel and bladder function;

c.   loss of ability to ambulate

d.   loss of sexual function;

e.   lumbar fusion;

f.      multiple operations;

g.      depression;

h.      anxiety

i.      physical pain;

j.      loss of ability to handle wide variety of activities of daily living;

k.      probable future degeneration of bone, muscle, and other tissues;

l.      probable future infections and fractures; and

m.     severe emotional distress.

9.      As a further result, Shawn Pouliot has incurred and will continue to incur medical costs, prescription drug costs, surgical costs, and other associated care costs.

10.     As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity.

11.     As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

### Count Two:  As to Arpin Logistics, Inc. for Negligence:

1.      The defendant, Paul Arpin Van Lines, Inc. (hereinafter referred to as "Arpin"), is a Rhode Island corporation with its corporate headquarters in Rhode Island.

2.      The defendant, Arpin Logistics, Inc. (hereinafter referred to as "Logistics") is a Rhode Island corporation with its corporate headquarters in Rhode Island.

3.      Both Logistics and Arpin do business in Connecticut as movers and truckers.

4.　　On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an independent contractor delivery driver for the defendants.

5.　　The defendants provided Shawn Pouliot with a truck and with loads to deliver.

6.　　During the delivery of a Learnline 2000 work station to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein.

7.　　The injuries to Shawn Pouliot were the direct and proximate result of the defendant, Arpin Logistics' negligence and/or carelessness in one or more of the following ways:

a.　　they provided him with a defective liftgate;

b.　　they failed to adequately inspect the liftgate;

c.　　they failed to properly service the liftgate;

d.　　they failed to replace the liftgate with a safe alternative;

e.　　they failed to equip the truck with proper equipment for securing loads;

f.　　they sent Shawn Pouliot on a job without proper equipment and/or support staff;

g.　　they failed to obtain all pertinent and/or correct information from the shipper and/or Festo as to the condition of the Learnline 2000 unit, the moving requirements of the unit and as to whether it was safely prepared for shipment;

h.    they failed to warn Shawn Pouliot of the dangers of transporting the

Learnline unit;

i.    failed to inform Shawn Pouliot of information provided to them by the

shipper's agent  that the unit was on wheels; required a palletjack;

palleting; and a proper liftgate for delivery;

j.    failed to inform Shawn Pouliot that he should call in advance for delivery at

the college for special delivery instructions despite being warned by the

shipper's agent to do so;

k.    provided Shawn Pouliot with a truck with an inadequate liftgate despite

knowing but not informing Shawn Pouliot that a safe and adequate  liftgate

would be necessary to accomplish the delivery;

l.    failed to convey to Shawn Pouliot the necessity of having the correct

equipment given the requirements of the job known to this defendant but

not Shawn Pouliot; and/or

m.    failed to comply with federal safety requirements under the Motor Carrier

Act, including 49 C.F.R. § 396.3(a), by providing the plaintiff with a

defective and dangerous vehicle as set forth above.

8.    As a direct and proximate result of the defendant's negligence, Shawn

Pouliot suffered the following injuries, all or part of which are permanent:

a.    burst fracture of L1 with complete spinal cord injury and paraplegia;

b.    loss of bowel and bladder function;

c.    loss of ability to ambulate

d.    loss of sexual function;

e.    lumbar fusion;

f.    multiple operations;

g.    depression;

h.    anxiety

i.    physical pain;

j.    loss of ability to handle wide variety of activities of daily living;

k.    probable future degeneration of bone, muscle, and other tissues;

l.    probable future infections and fractures; and

m.    severe emotional distress.

9.    As a further result, Shawn Pouliot has incurred and will continue to incur medical costs, prescription drug costs, surgical costs, and other associated care costs.

10.    As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity.

11.    As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

**Count Three:  As to the Defendant Festo Corporation For Negligence:**

1.    Festo Corporation, Defendant, is a duly incorporated New York domestic business corporation whose principal place of business is located in Hauppauge, Suffolk County, New York.

2.    Festo Corporation, Defendant, is a foreign business corporation doing business in the State of Connecticut.

3.    Arpin Logistics, Inc. is a Rhode Island domestic business corporation with its principal place of business in the Town of East Greenwich, County of Kent, State of Rhode Island.

4.    Arpin Logistics, Inc. is a foreign corporation doing business in the State of Connecticut.

5.    Michael D. Kovac, d/b/a Trans-Expo International, is a proprietorship doing business as a shipper's agent and broker with its principal place of business in or about the City of San Diego, in the State of California.

6.    Michael D. Kovac, d/b/a Trans-Expo International is a foreign business person doing business in the State of Connecticut.

7.    Paul Arpin Van Lines, Inc. is a Rhode Island domestic corporation with its principal place of business in the Town of West Warwick, County of Kent, State of Rhode Island.

8.    Paul Arpin Van Lines, Inc. is a foreign corporation licensed to do business and duly qualified in the State of Connecticut.

9.    Erica Ramirez is the agent and servant of Michael D. Kovac, d/b/a Trans-Expo International and is a resident of the City of San Diego, in the State of California.

10.    Pursuant to General Statutes § 52-59b(a), Defendants Michael D. Kovac and Erica Ramirez have transacted business within the State of Connecticut and/or have committed a tortuous act inside and outside the State of Connecticut causing injury to

Shawn Pouliot, the Festo Learnline 2000 unit and Plaintiff within the State of Connecticut, thereby reasonably expecting the act to have had consequences in the State of Connecticut, and Michael D. Kovac and Erica Ramirez have derived substantial revenue from interstate or international commerce.

11.   In personam jurisdiction over each of the defendants does not offend traditional notions of fair play and substantial justice under the due process clause of the Constitution of the United States, the requisite minimum contacts being present and/or jurisdiction reasonable under the circumstances.

12.   The matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.

13.   On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an independent contractor delivery driver for the defendants.

14.   The defendants provided Shawn Pouliot with a truck and with loads to deliver.

15.   During the delivery of a Learnline 2000 work station to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein.

16.   The Defendant, Festo Corporation, was the manufacturer, owner and shipper of the "Learnline unit" which fell off the rear lift onto the Plaintiff.

17.   The Defendant, Michael D. Kovac, d/b/a Trans-Expo International was the shipping agent for Festo Corporation.

18.    The injuries suffered by Shawn Pouliot were the direct and proximate result of the Defendant, Festo Corporation's, negligence and/or carelessness in one or more of the following ways:

a.    Upon information provided by Arpin and belief, the defendant, Festo Corporation, negligently and inaccurately represented through its agent and shipping brokers, Michael D. Kovac d/b/a Trans-Expo International to Arpin Logistics, Inc. that this unit and another unit, made, owned and shipped by Defendant Festo Corporation, which Plaintiff was transporting at the time of the accident weighed 400 lbs., when, in fact, this unit, the Learnline 2000, alone, without accessories, weighed over 800 lbs;

b.    Upon information provided by Arpin and belief, the defendant, Festo Corporation failed to provide a cargo ready for shipment on wheels with an adequately safe braking system on the Learnline 2000 unit at any time prior to the accident;

c.    Upon information provided by Arpin and belief, defendant, Festo Corporation had a duty to and failed to ascertain and accurately inform the Plaintiff of the need for special care and handling in unloading of this dangerous cargo, it being a product that required special care and preparation so that it could be transported to its destination without exposing others to an unreasonable danger of personal injury;

d.    Upon information provided by Arpin and belief, defendant, Festo Corporation had a duty to and failed to so prepare the unit for shipment in such a manner that it would be safely transported to its destination without exposing others to unreasonable danger of personal injury.

19.    As a direct and proximate result of the defendant's negligence, Shawn Pouliot suffered the following injuries, all or part of which are permanent:

a.    burst fracture of L1 with complete spinal cord injury and paraplegia;

b.    loss of bowel and bladder function;

c.    loss of ability to ambulate

d.    loss of sexual function;

e.    lumbar fusion;

f.    multiple operations;

g.    depression;

h.    anxiety

i.    physical pain;

j.    loss of ability to handle wide variety of activities of daily living;

k.    probable future degeneration of bone, muscle, and other tissues;

l.    probable future infections and fractures; and

m.    severe emotional distress.

20.    As a further result, Shawn Pouliot has incurred and will continue to incur medical costs, prescription drug costs, surgical costs, and other associated care costs.

21.    As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity.

22.    As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

**Count Four: As to the Defendants, Michael Kovac d/b/a Trans-Expo International and Erica Ramirez for Negligence:**

1.    Festo Corporation, Defendant, is a duly incorporated New York domestic business corporation whose principal place of business is located in Hauppague, Suffolk County, New York.

2.    Festo Corporation is a foreign business corporation doing business in the State of Connecticut.

3.    Arpin Logistics, Inc., Defendant, is a Rhode Island domestic business corporation with its principal place of business in the Town of East Greenwich, County of Kent, State of Rhode Island.

4.    Arpin Logistics, Inc. is a foreign corporation doing business in the State of Connecticut.

5.    Michael D. Kovac, d/b/a Trans-Expo International, Defendant, is a proprietorship doing business as a shipper's agent and broker with its principal place of business in or about the City of San Diego, State of California.

6.    Michael D. Kovac, d/b/a Trans-Expo International, Third-Party Defendant, is a foreign business person doing business in the State of Connecticut.

7.    Paul Arpin Van Lines, Inc., Defendant, is a Rhode Island domestic corporation with its principal place of business in the Town of West Warwick, County of Kent, State of Rhode Island.

8.    Paul Arpin Van Lines, Inc. is a foreign corporation licensed to do business and duly qualified in the State of Connecticut.

9.    Erica Ramirez, Defendant, is the agent and servant of Michael D. Kovac, d/b/a Trans-Expo International and is a resident of the City of San Diego and State of California.

10.    Pursuant to General Statutes § 52-59b(a), Defendants, Michael D. Kovac and Erica Ramirez have transacted business within the State of Connecticut and/or have committed a tortuous act inside and outside the State of Connecticut causing injury to Shawn Pouliot, the Festo Learnline 2000 unit , within the State of Connecticut, thereby reasonably expecting the act to have had consequences in the State of Connecticut, and Michael D. Kovac and Erica Ramirez have derived substantial revenue from interstate or international commerce.

11.    In personam, jurisdiction over each of the Defendants does not offend traditional notices of fair play and substantial justice under the due process clause of the Constitution of the United States, the requisite minimum contacts being present and/or jurisdiction reasonable under the circumstances.

12.    The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

13.    On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an independent contractor delivery driver for the defendants.

14.    The defendants provided Shawn Pouliot with a truck and with loads to deliver.

15.    During the delivery of this Learnline 2000 to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein.

16.    The Defendant, Festo Corporation, was the manufacturer, owner, and shipper of the Learnline 2000 which fell off the rear lift onto the Plaintiff.

17.    The Defendant, Michael D. Kovac, d/b/a Trans-Expo International was the shipping agent for Festo Corporation.

18.    The injuries suffered by Shawn Pouliot were the direct and proximate resultof the Defendant, Michael D. Kovac d/b/a Trans-Expo International and Erica Ramirez's negligence and/or carelessness in one or more of the following ways:

a.    they negligently represented that this unit weighed 400 lbs., when, in fact, this unit, the Learnline 2000, alone, without accessories, weighed over 800 lbs;

b.    they failed to provide a cargo ready for shipment on wheels with an adequately safe braking system on the Learnline 2000 unit at any time prior to the accident;

c.    they failed to ascertain and accurately inform the Plaintiff of the need for special care and handling in unloading of this dangerous cargo, it being a product that required special care and preparation so that it could be transported to its destination without exposing others to an unreasonable danger of personal injury;

d.    they failed to prepare the unit for shipment in such a manner that it would

be safely transported to its destination without exposing others to

unreasonable danger of personal injury.

19.    As a direct and proximate result of the defendant's negligence, Shawn

Pouliot suffered the following injuries, all of part of which are probably permanent:

a.    burst fracture of L1 with complete spinal cord injury and paraplegia;

b.    loss of bowel and bladder function;

c.    loss of ability to ambulate

d.    loss of sexual function;

e.    lumbar fusion;

f.    multiple operations;

g.    depression;

h.    anxiety

i.    physical pain;

j.    loss of ability to handle wide variety of activities of daily living;

k.    probable future degeneration of bone, muscle, and other tissues;

l.    probable future infections and fractures; and

m.    severe emotional distress.

20.    As a further result, Shawn Pouliot has incurred and will continue to incur

medical costs, equipment costs, prescription drug costs, surgical costs, and other

associated care costs.

21.    As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity.

22.    As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

**Count Five: As to Paul Arpin Van Lines, Inc. for Recklessness:**

1.    The defendant, Paul Arpin Van Lines, Inc. (hereinafter referred to as "Arpin"), is a Rhode Island corporation with its corporate headquarters in Rhode Island.

2.    The defendant, Arpin Logistics, Inc. (hereinafter referred to as "Logistics"), is a foreign corporation with its corporate headquarters in Rhode Island.

3.    Both Logistics and Arpin do business in Connecticut as movers and truckers.

4.    On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an independent contractor delivery driver for the defendants.

5.    The defendants provided Shawn Pouliot with a truck and with loads to deliver.

6.    During the delivery of a Learnline 2000 work station to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein.

7.    The injuries to Shawn Pouliot were the direct and proximate result of the defendant, Paul Arpin Van Lines, Inc.'s recklessness in that they were provided with information by the shipper's agent that special equipment and packaging was necessary

for the safe performance of this delivery, and they made no effort to convey this critical information to Shawn Pouliot prior to the job being performed. Moreover, this defendant actually provided him with a broken liftgate in complete disrepair when they knew that it would be utilized in the delivery of the Learnline unit.

        8.    As a direct and proximate result of the defendant's recklessness, Shawn Pouliot suffered the following injuries, all or part of which are permanent:

        a.    burst fracture of L1 with complete spinal cord injury and paraplegia;

        b.    loss of bowel and bladder function;

        c.    loss of ability to ambulate

        d.    loss of sexual function;

        e.    lumbar fusion;

        f.    multiple operations;

        g.    depression;

        h.    anxiety

        i.    physical pain;

        j.    loss of ability to handle wide variety of activities of daily living;

        k.    probable future degeneration of bone, muscle, and other tissues;

        l.    probable future infections and fractures; and

        m.    severe emotional distress.

        9.    As a further result, Shawn Pouliot has incurred and will continue to incur medical costs, prescription drug costs, surgical costs, and other associated care costs.

10.   As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity.

11.   As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

### Count Six:  As to Arpin Logistics, Inc. for Recklessness:

1.   The defendant, Paul Arpin Van Lines, Inc. (hereinafter referred to as "Arpin"), is a Rhode Island corporation with its corporate headquarters in Rhode Island.

2.   The defendant, Arpin Logistics, Inc. (hereinafter referred to as "Logistics") is a Rhode Island corporation with its corporate headquarters in Rhode Island.

3.   Both Logistics and Arpin do business in Connecticut as movers and truckers.

4.   On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an independent contractor delivery driver for the defendants.

5.   The defendants provided Shawn Pouliot with a truck and with loads to deliver.

6.   During the delivery of a Learnline 2000 work station to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein.

7.   The injuries to Shawn Pouliot were the direct and proximate result of the defendant, Arpin Logistics' recklessness in that they were provided with information by the shipper's agent that special equipment and packaging was necessary for the safe

performance of this delivery, and they made no effort to convey this critical information to Shawn Pouliot prior to the job being performed. Moreover, this defendant actually provided him with a broken liftgate, in complete disrepair, when they knew that it would be utilized in the delivery of the Learnline unit.

8.    As a direct and proximate result of the defendant's recklessness, Shawn Pouliot suffered the following injuries, all or part of which are permanent:

a.    burst fracture of L1 with complete spinal cord injury and paraplegia;

b.    loss of bowel and bladder function;

c.    loss of ability to ambulate

d.    loss of sexual function;

e.    lumbar fusion;

f.    multiple operations;

g.    depression;

h.    anxiety

i.    physical pain;

j.    loss of ability to handle wide variety of activities of daily living;

k.    probable future degeneration of bone, muscle, and other tissues;

l.    probable future infections and fractures; and

m.    severe emotional distress.

9.    As a further result, Shawn Pouliot has incurred and will continue to incur medical costs, prescription drug costs, surgical costs, and other associated care costs.

10.    As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity.

11.    As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

**Count Seven:  As to the Defendants, Paul Arpin Van Lines, Inc. and Arpin Logistics For Vicarious Liability For The Negligence of its Agent Michael Kovac d/b/a Trans-Expo International and Erica Ramirez :**

1.    Festo Corporation, Defendant, is a duly incorporated New York domestic business corporation whose principal place of business is located in Hauppague, Suffolk County, New York;

2.    Festo Corporation is a foreign business corporation doing business in the State of Connecticut;

3.    Arpin Logistics, Inc., Defendant, is a Rhode Island domestic business corporation with its principal place of business in the Town of East Greenwich, County of Kent, State of Rhode Island;

4.    Arpin Logistics, Inc. is a foreign corporation doing business in the State of Connecticut;

5.    Michael D. Kovac, d/b/a Trans-Expo International, Defendant, is a proprietorship doing business as a shipper's agent and broker with its principal place of business in or about the City of San Diego, State of California;

6.    Michael D. Kovac, d/b/a Trans-Expo International, Third-Party Defendant, is a foreign business person doing business in the State of Connecticut;

7.    Paul Arpin Van Lines, Inc., Defendant, is a Rhode Island domestic corporation with

its principal place of business in the Town of West Warwick, County of Kent, State

of Rhode Island;

8.    Paul Arpin Van Lines, Inc. is a foreign corporation licensed to do business and

duly qualified in the State of Connecticut;

9.    Erica Ramirez, Defendant, is the agent and servant of Michael D. Kovac, d/b/a

Trans-

Expo International and is a resident of the City of San Diego and State of California;

10.    Pursuant to General Statutes § 52-59b(a), Defendants, Michael D. Kovac and

Erica Ramirez have transacted business within the State of Connecticut and/or

have committed a tortuous act inside and outside the State of Connecticut causing

injury to Shawn Pouliot, the Festo Learnline 2000 unit , within the State of

Connecticut, thereby reasonably expecting the act to have had consequences in

the State of Connecticut, and Michael D. Kovac and Erica Ramirez have derived

substantial revenue from interstate or international commerce.

11.     In personam, jurisdiction over each of the Defendants does not offend traditional

notices of fair play and substantial justice under the due process clause of the

Constitution of the United States, the requisite minimum contacts being present

and/or jurisdiction reasonable under the circumstances.

12.    The matter in controversy exceeds, exclusive of interest and costs, the sum

of seventy-five thousand dollars.

13.    On or about October 23, 2001, the plaintiff, Shawn Pouliot, worked as an

Independent contractor delivery driver for the defendants.

14.    The defendants provided Shawn Pouliot with a truck and with loads to deliver;

15.    During the delivery of this Learnline 2000 to Naugatuck Valley Community College in Waterbury, Connecticut, the load fell directly onto Shawn Pouliot, pinning him to the ground and causing the permanent and severe injuries set forth herein;

16.    The Defendant, Festo Corporation, was the manufacturer, owner, and shipper of the Learnline 2000 which fell off the rear lift onto the Plaintiff;

17.    The Defendant, Michael D. Kovac, d/b/a Trans-Expo International was the shipping agent for Festo Corporation;

18.    The injuries suffered by Shawn Pouliot were the direct and proximate result of the Defendant, Michael D. Kovac d/b/a Trans-Expo International and Erica Ramirez's negligence and/or carelessness in one or more of the following ways:

    a.    they negligently represented that this unit weighed 400 lbs., when, in fact, this unit, the Learnline 2000, alone, without accessories, weighed over 800 lbs;

    b.    they failed to provide a cargo ready for shipment on wheels with an adequately safe braking system on the Learnline 2000 unit at any time prior to the accident;

    c.    they failed to ascertain and accurately inform the Plaintiff of the need for special care and handling in unloading of this dangerous cargo, it being a product that required special care and preparation so that it could be

transported to its destination without exposing others to an unreasonable danger of personal injury;

d.    they failed to prepare the unit for shipment in such a manner that it would be safely transported to its destination without exposing others to unreasonable danger of personal injury.

19.    As a direct and proximate result of the defendant's negligence, Shawn Pouliot suffered the following injuries, all of part of which are probably permanent:

a.    burst fracture of L1 with complete spinal cord injury and paraplegia;

b.    loss of bowel and bladder function;

c.    loss of ability to ambulate

d.    loss of sexual function;

e.    lumbar fusion;

f.    multiple operations;

g.    depression;

h.    anxiety

i.    physical pain;

j.    loss of ability to handle wide variety of activities of daily living;

k.    probable future degeneration of bone, muscle, and other tissues;

l.    probable future infections and fractures; and

m.    severe emotional distress.

20.    As a further result, Shawn Pouliot has incurred and will continue to incur medical costs, equipment costs, prescription drug costs, surgical costs, and other associated care costs;

21.    As a still further result, Shawn Pouliot has lost wages and has been caused to suffer a severe impairment of his earning capacity;

22.    As a final result, Shawn Pouliot has suffered a severe diminishment in his ability to enjoy life's activities, including but not limited to his marriage, his children, and his activities and hobbies.

23. Michael Kovac and Erica Ramirez acted as the agents, servants or employees of both Arpin Logistics and Paul Arpin Van Lines. Further, the Arpin defendants and the Kovac/Ramirez defendants were performing a joint venture for Festo at the time of Pouliot's injuries. As such, Arpin Logistics and/or Paul Arpin Van Lines are vicariously responsible for the negligence of Kovac and Ramirez.

**WHEREFORE**, the Plaintiff seeks damages including compensatory and common law

punitive damages.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY

THE PLAINTIFF

BY _____
    Michael A. Stratton
    Stratton Faxon
    59 Elm Street
    New Haven, CT 06510
    Federal Bar No. ct08166
    Tel:  (203) 624-9500
    Fax: (203) 624-9100

# EXHIBIT 5

# PART 393 — PARTS AND ACCESSORIES NECESSARY FOR SAFE OPERATION

## Subpart A — General

§393.1    Scope of the rules in this part.
§393.3    Additional equipment and accessories.
§393.5    Definitions.
§393.7    Matter incorporated by reference.*
§393.7    Matter incorporated by reference.

## Subpart B — Lighting Devices, Reflectors, and Electrical Equipment

§393.9    Lamps operable.
§393.11   Lighting devices and reflectors.
§393.13   Retroreflective sheeting and reflex reflectors, requirements for semitrailers and trailers manufactured before December 1, 1993.
§393.17   Lamps and reflectors - combinations in driveaway-towaway operation.
§393.19   Requirements for turn signaling systems.
§393.20   Clearance lamps to indicate extreme width and height.
§393.22   Combination of lighting devices and reflectors.
§393.23   Lighting devices to be electric.
§393.24   Requirements for head lamps and auxiliary road lighting lamps.
§393.25   Requirements for lamps other than head lamps.
§393.26   Requirements for reflectors.
§393.27   Wiring specifications.
§393.28   Wiring to be protected.
§393.29   Grounds.
§393.30   Battery installation.
§393.31   Overload protective devices.
§393.32   Detachable electrical connections.
§393.33   Wiring, installation.

## Subpart C — Brakes

§393.40   Required brake systems.
§393.41   Parking brake system.
§393.42   Brakes required on all wheels.
§393.43   Breakaway and emergency braking.
§393.44   Front brake lines, protection.
§393.45   Brake tubing and hose, adequacy.
§393.46   Brake tubing and hose connections.
§393.47   Brake lining.
§393.48   Brakes to be operative.
§393.49   Single valve to operate all brakes.
§393.50   Reservoirs required.
§393.51   Warning devices and gauges.
§393.52   Brake performance.
§393.53   Automatic brake adjusters and brake adjustment indicators.
§393.55   Antilock brake systems.

## Subpart D — Glazing and Window Construction

§393.60   Glazing in specified openings.
§393.61   Window construction.
§393.62   Window obstructions.
§393.63   Windows, markings.

## Subpart E — Fuel Systems

§393.65   All fuel systems.
§393.67   Liquid fuel tanks.
§393.69   Liquefied petroleum gas systems.

## Subpart F — Coupling Devices and Towing Methods

§393.70   Coupling devices and towing methods, except for driveaway-towaway operations.
§393.71   Coupling devices and towing methods, driveaway-towaway operations.

## Subpart G — Miscellaneous Parts and Accessories

§393.75   Tires.
§393.76   Sleeper berths.
§393.77   Heaters.
§393.78   Windshield wipers.
§393.79   Defrosting device.
§393.80   Rear-vision mirrors.
§393.81   Horn.
§393.82   Speedometer.
§393.83   Exhaust systems.
§393.84   Floors.
§393.85   [Reserved]
§393.86   Rear impact guards and rear end protection.
§393.87   Flags on projecting loads.
§393.88   Television receivers.
§393.89   Buses, driveshaft protection.
§393.90   Buses, standee line or bar.
§393.91   Buses, aisle seats prohibited.
§393.92   Buses, marking emergency doors.
§393.93   Seats, seat belt assemblies, and seat belt assembly anchorages.
§393.94   Vehicle interior noise levels.

## Subpart H — Emergency Equipment

§393.95   Emergency equipment on all power units.

## Subpart I — Protection Against Shifting and Falling Cargo

§393.100  Which types of commercial motor vehicles are subject to the cargo securement standards of this subpart, and what general requirements apply?
§393.102  What are the minimum performance criteria for cargo securement devices and systems?
§393.104  What standards must cargo securement devices and systems meet in order to satisfy the requirements of this subpart?
§393.106  What are the general requirements for securing articles of cargo?
§393.108  How is the working load limit of a tiedown determined?
§393.110  What else do I have to do to determine the minimum number of tiedowns?
§393.112  Must a tiedown be adjustable?
§393.114  What are the requirements for front end structures used as part of a cargo securement system?

### Specific Securement Requirements by Commodity Type

§393.116  What are the rules for securing logs?
§393.118  What are the rules for securing dressed lumber or similar building products?
§393.120  What are the rules for securing metal coils?
§393.122  What are the rules for securing paper rolls?
§393.124  What are the rules for securing concrete pipe?
§393.126  What are the rules for securing intermodal containers?
§393.128  What are the rules for securing automobiles, light trucks and vans?
§393.130  What are the rules for securing heavy vehicles, equipment and machinery?
§393.132  What are the rules for securing flattened or crushed vehicles?
§393.134  What are the rules for securing roll-on/roll-off or hook lift containers?
§393.136  What are the rules for securing large boulders?

## Subpart J — Frames, Cab and Body Components, Wheels, Steering, and Suspension Systems

§393.201  Frames.
§393.203  Cab and body components.
§393.205  Wheels.
§393.207  Suspension systems.
§393.209  Steering wheel systems.

AUTHORITY: Section 1041(b) of Pub. L. 102-240, 105 Stat. 1914; 49 U.S.C. 31136 and 31502; 49 CFR 1.73.



# EXHIBIT 6

§396.7

## §396.7 Unsafe operations forbidden.

(a) **General** — A motor vehicle shall not be operated in such a condition as to likely cause an accident or a breakdown of the vehicle.

(b) **Exemption** — Any motor vehicle discovered to be in an unsafe condition while being operated on the highway may be continued in operation only to the nearest place where repairs can safely be effected. Such operation shall be conducted only if it is less hazardous to the public than to permit the vehicle to remain on the highway.

## §396.9 Inspection of motor vehicles in operation.

(a) **Personnel authorized to perform inspections** — Every special agent of the FMCSA (as defined in Appendix B to this subchapter) is authorized to enter upon and perform inspections of motor carrier's vehicles in operation.

(b) **Prescribed inspection report** — The Driver-Equipment Compliance Check shall be used to record results of motor vehicle inspections conducted by authorized FMCSA personnel.

(c) **Motor vehicles declared "out of service".**

(1) Authorized personnel shall declare and mark "out of service" any motor vehicle which by reason of its mechanical condition or loading would likely cause an accident or a breakdown. An "Out of Service Vehicle" sticker shall be used to mark vehicles "out of service".

(2) No motor carrier shall require or permit any person to operate nor shall any person operate any motor vehicle declared and marked "out of service" until all repairs required by the "out of service notice" have been satisfactorily completed. The term "operate" as used in this section shall include towing the vehicle, except that vehicles marked "out of service" may be towed away by means of a vehicle using a crane or hoist. A vehicle combination consisting of an emergency towing vehicle and an "out of service" vehicle shall not be operated unless such combination meets the performance requirements of this subchapter except for those conditions noted on the Driver Equipment Compliance Check.

(3) No person shall remove the "Out of Service Vehicle" sticker from any motor vehicle prior to completion of all repairs, required by the "out of service notice."

(d) **Motor carrier disposition.**

(1) The driver of any motor vehicle receiving an inspection report shall deliver it to the motor carrier operating the vehicle upon his/her arrival at the next terminal or facility. If the driver is not scheduled to arrive at a terminal or facility of the motor carrier operating the vehicle within 24 hours, the driver shall immediately mail the report to the motor carrier.

(2) Motor carriers shall examine the report. Violations or defects noted thereon shall be corrected.

(3) Within 15 days following the date of the inspection, the motor carrier shall —

(i) Certify that all violations noted have been corrected by completing the "Signature of Carrier Official, Title, and Date Signed" portions of the form; and

(ii) Return the completed roadside inspection to the issuing agency at the address indicated and retain a copy at the motor carrier's principal place of business or where the vehicle is housed for 12 months from the date of the inspection.

[44 FR 38526, July 2, 1979, as amended at 49 FR 38290, Sept. 28, 1984; 57 FR 40964, Sept. 8, 1992]

### DOT Interpretations §396.9

**Question 1:** Under what conditions may a vehicle that has been placed "out of service" under §396.9 be towed?

**Guidance:** The vehicle may be moved entirely upon another vehicle, towed by lifting with a crane or hoist, or driven if the out of service condition no longer exists.

**Question 2:** Is it the intent of §396.9 for the "out of service" vehicles to be towed?

**Guidance:** Yes; however, not all out of service vehicles will be towed away from the inspection location. The rule sets up a flexible situation that will permit the officer to use his/her best judgment on a case by case basis.

## §396.11 Driver vehicle inspection report(s).

(a) **Report required.** Every motor carrier shall require its drivers to report, and every driver shall prepare a report in writing at the completion of each day's work on each vehicle operated and the report shall cover at least the following parts and accessories:

-Service brakes including trailer brake connections
-Parking (hand) brake
-Steering mechanism
-Lighting devices and reflectors
-Tires
-Horn
-Windshield wipers
-Rear vision mirrors
-Coupling devices
-Wheels and rims
-Emergency equipment

(b) **Report content.** The report shall identify the vehicle and list any defect or deficiency discovered by or reported to the driver which would affect the safety of operation of the vehicle or result in its mechanical breakdown. If no defect or deficiency is discovered by or reported to the driver, the report shall so indicate. In all instances, the driver shall sign the report. On two-driver operations, only one driver needs to sign the driver vehicle inspection report, provided both drivers agree as to the defects or deficiencies identified. If a driver operates more than one vehicle during the day, a report shall be prepared for each vehicle operated.

(c) **Corrective action.** Prior to requiring or permitting a driver to operate a vehicle, every motor carrier or its agent shall repair any defect or deficiency listed on the driver vehicle inspection report which would be likely to affect the safety of operation of the vehicle.

(1) Every motor carrier or its agent shall certify on the original driver vehicle inspection report which lists any defect or deficiency that the defect or deficiency has been repaired or that repair is unnecessary before the vehicle is operated again.

§396.11

(2) Every motor carrier shall maintain the original driver vehicle inspection report, the certification of repairs, and the certification of the driver's review for three months from the date the written report was prepared.

(d) **Exceptions.** The rules in this section shall not apply to a private motor carrier of passengers (nonbusiness), a driveaway-towaway operation, or any motor carrier operating only one commercial motor vehicle.

[44 FR 38526, July 2, 1979, as amended at 45 FR 46425, July 10, 1980; 53 FR 18058, May 19, 1988; 59 FR 8753, Feb. 23, 1994; 63 FR 33279, June 18, 1998]

## DOT Interpretations — §396.11

**Question 1:** Does §396.11 require the DVIR to be turned in each day by a driver dispatched on a trip of more than one day's duration?

*Guidance:* A driver must prepare a DVIR at the completion of each day's work and shall submit those reports to the motor carrier upon his/her return to the home terminal. This does not relieve the motor carrier from the responsibility of repairing and correcting any items listed on the DVIR, prepared at the end of each day's work, that would be likely to affect the safety of the operation of the motor vehicle.

**Question 2:** Does §396.11 require that the power unit and trailer be inspected?

*Guidance:* Yes. A driver must be satisfied that both the power unit and the trailer are in safe operating condition before operating the combination.

**Question 3:** May more than one power unit be included on a DVIR if two or more power units were used by a driver during one day's work?

*Guidance:* No. A separate DVIR must be prepared for each power unit operated during the day's work.

**Question 4:** Does §396.11 require a motor carrier to use a specific type of DVIR?

*Guidance:* A motor carrier may use any type of DVIR as long as the report contains the information and signatures required.

**Question 5:** Does §396.11 require a separate DVIR for each vehicle and a combination of vehicles or is one report used to cover the entire combination?

*Guidance:* One vehicle inspection report may be used for the combination, provided the defects or deficiencies, if any, are noted for each vehicle and the driver signs the report.

**Question 6:** Does §396.11(c) require a motor carrier to effect repairs of all items listed on a DVIR prepared by a driver before the vehicle is subsequently driven?

*Guidance:* The motor carrier must effect repairs of defective or missing parts and accessories listed in Appendix G to the subchapter before allowing the vehicle to be driven.

**Question 7:** What constitutes a "certification" as required by §396.11(c)(1) and (2)?

*Guidance:* A motor carrier or its agent must state, in writing, that certain defects or deficiencies have been corrected or that correction was unnecessary. The declaration must be dated and followed by the signature of the person making it.

**Question 8:** Who must certify under §396.11(c) that repairs have been made when a motor vehicle is repaired en route by a driver or a commercial repair facility?

*Guidance:* Either the driver or the commercial repair facility.

**Question 9:** Must certification for trailer repairs be made?

*Guidance:* Yes. Certification must be made that all reported deficiencies have been corrected or that correction was unnecessary. The certification need only appear on the carrier's copy of the report if the trailer is separated from the tractor.

**Question 10:** What responsibility does a vehicle leasing company, engaged in the daily rental of CMVs, have regarding the placement of the DVIR in the power unit?

*Guidance:* A leasing company has no responsibility to comply with §396.11 unless it is the carrier. It is the responsibility of a motor carrier to comply with part 396 regardless of whether the vehicles are owned or leased.

**Question 11:** Which carrier is to be provided the original of the DVIR in a trip lease arrangement?

*Guidance:* The motor carrier controlling the vehicle during the term of the lease (i.e. the lessee) must be given the original of the DVIR. The controlling motor carrier is also responsible for obtaining and retaining records relating to repairs.

**Question 12:** Must the motor carrier's certification be shown on all copies of the DVIR?

*Guidance:* Yes.

**Question 13:** Must a DVIR carried on a power unit during operation cover both the power unit and trailer being operated at the time?

*Guidance:* No. The DVIR must cover the power unit being operated at the time. The trailer identified on the report may represent one pulled on the preceding trip.

**Question 14:** In instances where the DVIR has not been prepared or cannot be located, is it permissible under §396.11 for a driver to prepare a DVIR based on a pre-trip inspection and a short drive of a motor vehicle?

*Guidance:* Yes. §396.11 of the FMCSRs places the responsibility on the motor carrier to require its drivers to prepare and submit the DVIR. If, in unusual circumstances, the DVIR has not been prepared or cannot be located the motor carrier may cause a road test and inspection to be performed for safety of operation and the DVIR to be prepared.

**Question 15:** Is it permissible to use the back of a record of duty status (daily log) as a DVIR?

*Guidance:* Yes, but the retention requirements of §396.11 and §395.8 must be met.

**Question 16:** Does §396.11 require that specific parts and accessories that are inspected be identified on the DVIR?

*Guidance:* No.

**Question 17:** Is the Ontario pretrip/posttrip inspection report acceptable as a DVIR under §396.11?

*Guidance:* Yes, provided the report from the preceding trip is carried on board the motor vehicle while in operation and all entries required by §396.11 and 396.13 are contained on the reports.

**Question 18:** Where must DVIRs be maintained?

*Guidance:* Since §396.11 is not specific, the DVIRs may be kept at either the motor carrier's principal place of business or the location where the vehicle is housed or maintained.

**Question 19:** Who is responsible for retaining DVIRs for leased vehicles including those of owner-operators?

*Guidance:* The motor carrier is responsible for retaining the original copy of each DVIR and the certification of repairs for at least 3 months from the date the report was prepared.

**Question 20:** Is a multi-day DVIR acceptable under §396.11 and 396.13?

*Guidance:* Yes, provided all information and certifications required by §§396.11 and 396.13 are contained on the DVIR.

**Question 21:** Is a DVIR required by a motor carrier operating only one tractor trailer combination?

*Guidance:* No. One tractor semitrailer/full trailer combination is considered one motor vehicle. However, a carrier operating a single truck tractor and multiple semitrailers, which are not capable of being operated as one combination unit, would be required to prepare DVIRs.