## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT,<br>    Plaintiff, | :<br>:<br>: |
| v. | :<br>: |
| | :     No. 3:02CV1302(DJS) |
| PAUL ARPIN VAN LINES, INC.<br>AND ARPIN LOGISTICS, INC. | :<br>:<br>: |
| v. | :<br>: |
| FESTO CORPORATION, MICHAEL D.<br>KOVAC, D/B/A TRANS-EXPO<br>INTERNATIONAL AND ERICA<br>RAMIREZ IN HER CAPACITY AS<br>EMPLOYEE OF TRANS-EXPO<br>INTERNATIONAL<br>    Defendants. | :<br>:<br>: |

## MEMORANDUM OF DECISION

Plaintiff Shawn Pouliot ("Pouliot") brings this action against Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereafter "Arpin") and third-party defendants Festo Corporation ("Festo"), Michael D. Kovac ("Trans-Expo") and Erica Ramirez ("Ramirez") based on state torts sounding in negligence and recklessness. The parties are present in this court on diversity jurisdiction under 28 U.S.C. §1332. Arpin filed a motion to dismiss **[doc. #89]** Pouliot's claims against it on the ground that the claims are pre-empted by federal laws that statutorily classify Pouliot as an employee covered by the worker's compensation exclusivity provision of Rhode Island law. Defendant's motion is **DENIED**.

## I. FACTS

The following facts are alleged in the complaint. On or about October 23, 2001, Shawn Pouliot, a truck driver, was hired by Arpin to pick up a Learnline 2000 unit from Festo Corporation in Hauppauge, New York, and deliver the equipment to Nuagatuck Valley Community College in Waterbury, Connecticut. Pouliot is an independent truck driver–he leases his truck to a commercial shipper such as Arpin and works on its behalf under conditions determined in his lease agreement. On the night of October 23, Pouliot was not driving a truck owned by him but rather was driving a truck provided by Arpin. Pouliot picked-up the Learnline 2000 in New York and safely delivered the equipment to Waterbury. During the course of unloading the Learnline 2000 unit, the device fell onto Pouliot causing permanent and severe injuries to his spinal cord and rendering him paraplegic.

At the time, Pouliot was a resident of South Carolina. Arpin is a Rhode Island corporation, registered to do business in Connecticut.

## II. DISCUSSION

### A. Legal Standard

Defendant submits its motion to dismiss on the grounds that the court lacks subject matter jurisdiction. Specifically, Arpin seems to be arguing that Pouliot's claims are barred by a state exclusivity provision that acts to divest this court of subject matter jurisdiction. This argument is without merit. Pouliot's case is present in federal court on diversity jurisdiction. The standard for diversity jurisdiction is well known, and it contains only two components–that the amount in controversy be greater than $75,000 and that the parties be citizens of different states. See, 28

-2-

U.S.C. §1332. No party to this case claims that these requirements have not been satisfied.

Further, it is a basic tenet of the law that "'[i]n determining its own jurisdiction, a District Court of the United States must look to the sources of its power and not to the acts of states which have no power to enlarge or to contract the federal jurisdiction.'" <u>Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.</u>, 550 F.2d 1320, 1325 (2d Cir. 1978) (quoting <u>Markham v. Newport News</u>, 292 F.2d 711, 713 (4th Cir. 1961)). A state "door closing" statute cannot divest the district court of jurisdiction when the statutory and constitutional requirements of diversity jurisdiction are satisfied. <u>Elgard Corp. v. Brennan Construction Co.</u>, 157 F.R.D. 1, 2 (D. Conn. 1994). Similarly, Rhode Island's exclusivity provision cannot supercede federal law and the Constitution of the United States. Dismissal for lack of subject matter jurisdiction would thus be an inappropriate action where the parties are properly present under diversity jurisdiction.[1]

The fact that Arpin's motion is procedurally flawed does not mean that the court should deny its motion without further discussion, although that is an option. The Second Circuit has held that district courts may construe an untimely Rule 12(b)(6) motion as a motion for judgment on the pleadings pursuant to Rule 12(c). <u>Patel v. Contemporary Classics of Beverly Hills</u>, 259

---

[1]Defendant cites a leading Tenth Circuit case (<u>Stuart v. Colorado Interstate Gas Co.</u>, 271 F.3d 1221 (10th Cir. 2001)) that appears to resolve this issue in opposition to the Second Circuit. A closer reading reveals that the Tenth Circuit faced an issue involving the preclusive effect of a prior state decision regarding the viability of state court jurisdiction of a case that the plaintiff could have filed in either state or federal court (also known as a forum shopping problem). Arpin seems to have confused the issue of jurisdiction with an <u>Erie v. Tompkins</u>, 304 U.S. 64 (1938) problem of dual sovereignty. There is no <u>Erie</u> problem in this case. If any or all of Pouliot's claims are barred by an application of state substantive law, this court will apply state substantive law and dismiss the claims. Jurisdiction goes instead to the issue of whether or not the court may even entertain the case on its docket. Any ruling on the merits of the Plaintiff's claims necessarily involves an exercise of jurisdiction by this court.

F.3d 123, 126 (2d Cir. 2001). Arpin has, substantively, motioned the court to dismiss Pouliot's

claims on the grounds that federal and state law render Arpin immune from suit.  Such issues are

sufficiently important at this stage of the proceedings to warrant a full and fair hearing by the

court. Therefore, the court will construe Arpin's improper Rule 12(b)(1) motion (analogous to an

improper Rule 12(b)(6) motion) as a motion for a judgment on the pleadings under Rule 12(c).

    The standard for reviewing a Rule 12(c) motion is identical to the standard for a Rule

12(b)(6) motion for failure to state a claim. Patel 259 F.3d at 126. The court must accept all

allegations in the complaint as true and draw all inferences in the non-moving party's favor. Id. at

126. The case will not be dismissed unless the complaint cannot state any set of facts that would

entitle the plaintiff to relief. Id. at 126.


## B.  Defendant's Argument for Exclusion Under Federal Law

    Arpin argues that federal regulations and the law of the Rhode Island operate to create an

exclusive remedy for Pouliot in the form of worker's compensation, thus barring Pouliot's

common law claims.  Arpin asks the court to find, as a matter of law, that Pouliot is an

"employee" of Arpin and, therefore, is limited to that recovery provided by Rhode Island's

worker compensation scheme.

    The basis for Arpin's claim is a Federal Motor Carrier Safety Regulation definition of the

term "employee".[2] Arpin argues that a clause in the contract between Arpin and Pouliot expressly

---

[2]"Employee means any individual, other than an employer, who is employed by an
employer and who in the course of his or her employment directly affects commercial motor
vehicle safety. Such term includes a driver of a commercial motor vehicle (including an
independent contractor while in the course of operating a commercial motor vehicle), a
mechanic, and a freight handler. Such term does not include an employee of the United States,

-4-

incorporates this definition of "employee" and that as a result of this definition Arpin and Pouliot have agreed to be bound by an alleged Congressional intent to abolish the distinction between an independent contractor and an employee.[3] Arpin makes a further argument that 49 C.F.R. § 376.12 governs the contract and that compliance with § 376.12 imposes a "statutory employee" regime on Pouliot and Arpin. The court will address each argument in turn.


**1. Section 390.5**

The core of Arpin's argument is that Shawn Pouliot meets the definition of an "employee" in the federal regulations governing motor carriers and is thus barred, by operation of Rhode Island law, from pursuing this lawsuit. To decide this, the court must first analyze the federal regulations to determine whether they clearly apply to the facts of this case. If the regulations are ambiguous, the court must consider to what extent they are applicable in the present circumstances.

The starting point for any interpretive inquiry of this nature must be the language of the statute (or rule). As Arpin notes, other courts have already adopted a "plain language" approach to interpreting the reach of §390.5 and this court will follow that path. The critical portion of

---

any State, any political subdivision of a Sate, or any agency established under a compact between States and approved by the Congress of the Unites States who is acting within the course of such employment." 49 C.F.R. § 390.5.

[3]The contract reads in part "[i]t is expressly understood and agreed between the parties to this Contract that the same shall be interpreted under the laws of the State of Rhode Island and shall be subject to all Federal and State statutes, and rules and regulations of the DOT, and all State regulatory bodies and agencies; and in the event of any conflict therewith, this Contract shall remain in full force and effect as to the parties hereto and subject to the remaining terms and effect as to the parties hereto subject to the remaining terms." (<u>Motion to Dismiss</u>, Exhibit 1, *Owner Operator Agreement*, at ¶ 21).

§390.5 reads as follows: "Employee...includes a driver of a commercial motor vehicle (including an *independent contractor while in the course of operating a commercial motor vehicle*)" (emphasis added). This sentence reveals critical information about how this regulation should be interpreted. Arpin is incorrect in its assertion that these regulations eliminate the distinction between an independent contractor and an employee. Although some courts have suggested that the distinction does not exist, the plain language of the regulation preserves this distinction.[4]

The finding that "employee" and "independent contractor" remain distinct concepts does not mean that they are of equal value under §390.5.  The language of the regulation is clear–the "independent contractor" is treated as an "employee" under this section when certain conditions are satisfied. Specifically, independent contractors are deemed "employees" while in the course of operating a commercial motor vehicle. Thus, the information necessary to determine whether §390.5 is operative in this case is not the language of incorporation in the contract between Arpin and Pouliot.  Instead, the court must determine what "operating a commercial motor vehicle" means for purposes of this regulation to determine whether or not it will apply in this case.

Initially, the court looks to the remainder of §390.5 to determine whether the regulation defines the necessary term. Unfortunately, the language of §390.5 is not clear. The definition of "operator" contains only a cross-reference to "driver", which is defined as "any person who operates any commercial motor vehicle." Section 390.5 does include a catch-all definition that

---

[4]Adding further weight to this conclusion is the fact that the statute authorizing the Secretary of Transportation to promulgate 49 C.F.R. §390.5 – 49 U.S.C. §§31101-et., seq.– contains a definition that almost exactly matches the definition used in §390.5. 49 U.S.C. §31132(2) reads, in part:

> "'employee' means an operator of a commercial motor vehicle
> (including an independent contractor when operating a motor vehicle)..."

instructs interpreters to read undefined terms according to a "commonly accepted meaning",[5] and the court will follow this instruction. Accordingly, the Court interprets the common meaning of "operating a motor vehicle" as driving a motor vehicle, not merely operating some mechanical apparatus attached to the vehicle. However, the Court has an obligation to ensure that this reading of the regulation is consistent with the governing statutory authority, the language of 49 C.F.R. Ch. III and the application of §390.5 by other courts.[6]

**a. The Language of the Governing Statutes**

The transportation statutes of Title 49 of the United States Code are complex and far-reaching, but the language of the sections operative for the promulgation of 49 C.F.R. §390.5 supports the court's reading of "operating" to mean only "driving" in the context of the Federal Motor Carrier Safety Regulations . Specifically, 49 U.S.C. §31136(a)(1) reads in part that "[a]t a minimum, the regulations shall ensure that–(1) commercial motor vehicles are maintained, equipped, loaded, and operated safely;". The separation of these aspects of commercial transport into distinct categories suggests that Congress viewed them as discrete areas of activity subject to regulation. At the least, the term "operating" is not to be read as synonymous with "loading", especially in light of the Supreme Court's admonishment that statutory terms not be treated as surplusage. See, Babbitt v. Sweet Home Chapter of Communities for a Greater Oregon, 515 U.S. 687, 698 (1995).

Although it does not govern 49 C.F.R. §390.5, the language of 49 U.S.C. §14102 further

---

[5]The definition reads in full: "Other Terms–Any other term used in this subchapter is used in its commonly accepted meaning, except where such other term has been defined elsewhere in this subchapter. In that event, the definition therein given shall apply." C.F.R. §390.5.

[6]The Second Circuit has not ruled on the appropriate reach of 49 C.F.R. §390.5.

bolsters this analysis.[7] This section operates in conjunction with 49 U.S.C. §14103 to establish

the statutory rules for loading and unloading commercial motor vehicles. Section 14102(b) is

titled "Responsible party for loading and unloading", and it instructs the Secretary of

Transportation to require, by regulation, that "any arrangement, between a motor carrier of

property providing transportation...and any other person, under which such other person is to

provide any portion of such transportation by a motor vehicle not owned by the carrier shall

specify, in writing, who is responsible for loading and unloading the property onto and from the

motor vehicle."

    This provision became law on January 1, 1996, but there appears to be no regulation of

the loading or unloading of motor vehicles at this time, so the court cannot say with certainty

how the statute ought to be interpreted.  Regardless, Congress has made manifest an intention

that loading and unloading be considered separately from the act of driving a motor vehicle.

Congress seems not to have thought that §390.5 already covered this aspect of the shipping

process. This understanding is also consistent with the court's analysis of 49 C.F.R. §376.12

infra.

**b. The Language of 49 C.F.R. Ch. III**

    The court considers the common meaning of "operating a motor vehicle" to be the act of

driving a motor vehicle. Thus, the definition of "employee" in §390.5 would apply to an

independent contractor while the contractor is driving his commercial motor vehicle on any

public or private road or highway. Under this reading of the law, all acts of an independent

---

    [7]Arpin mistakenly cites 49 U.S.C. §14102 as the source of authority for 49 C.F.R. §390.5. Arpin's reliance on this statute, as well as the fact that it is the authority for 49 C.F.R. §376.12 gives its meaning particular weight in the court's analysis.

contractor not involving the driving of a commercial motor vehicle (loading, unloading, moving equipment, taking inventories, etc) would be beyond the scope of §390.5. This reading appears to be consistent with the language of other sections of 49 C.F.R. Ch. III.[8]

Chapter Three of the transportation regulations is titled "Federal Motor Carrier Safety Administration." 49 C.F.R. Parts 200-399 at 735. The regulations deal, generally, with all aspects of motor vehicle safety. Among the topics covered by the regulations are noise and air pollution, routing, parts and vehicle safety standards, driver training, insurance coverage requirements, record keeping and motor vehicle accident reporting. The specific language of almost every section focuses on the use of commercial motor vehicles on the public highways. See, 49 C.F.R. §325.31 ("The rules in this subpart specify conditions and procedures for measurement of the sound level generated by a motor vehicle engaged in a highway operation..."); 49 C.F.R. §350.105 ("10-year average accident rate means for each State, the aggregate number of large truck-involved fatal crashes...for a 10-year period divided by the aggregate vehicle miles traveled..."); 49 C.F.R. §368.2 (Interstate transportation defined in part as passengers, property or both transported by motor carrier from one state to another pursuant to 49 U.S.C. §13501(1)(A).); 49 C.F.R. §382.107 (Applies alcohol use restrictions for "drivers" to all safety-sensitive functions, which include as separate activities "[a]ll time spent at the driving controls of a commercial motor vehicle in operation" and "[a]ll time loading or unloading a vehicle"); 49

---

[8]Given the ambiguity of "operate" in the regulations, it is appropriate for the court to consider the whole of the statute. As the Supreme Court has noted, "[s]tatutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme–because the same terminology is used elsewhere in a context that makes its meaning clear." United Savings Assn. of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371 (1988)

C.F.R. §393.102 (Regulations for "securement systems" apply to "[a]ll devices which are used to secure cargo to a motor vehicle in transit").

One other highly relevant portion of the chapter is 49 C.F.R. §391.13. This section covers the responsibilities of drivers. The regulations do not require drivers to be capable of properly loading or unloading cargo. A driver is only required to be able to "determine whether the cargo he/she transports...has been properly located, distributed, and secured in or on the commercial motor vehicle he/she drives" and also to be "familiar with the methods and procedures for securing cargo in or on the commercial motor vehicle he/she drives." 49 C.F.R. §391.13. This section offers a sense of the distinction between driving a motor vehicle and other aspects of the commercial shipping enterprise.

Although this aggregation of language is not a perfect substitute for the missing definition of "operating a motor vehicle", there is ample evidence that the regulations treat "operating" as synonymous with driving. The line is not bright, but it is at least illuminated and it suggests that there is a distinction between the physical act of loading and unloading a commercial motor carrier and "operating" the same vehicle on public roads and highways.

### c. Judicial Interpretation of §390.5

Arpin takes great pains to marshal judicial support for its interpretation of the preclusive effect of §390.5. Arpin cites numerous cases which hold that a "statutory employee" relationship or other vicarious liability exists. However, the majority of these cases are distinguishable from this case based on one significant fact present in each of them–the plaintiff's injuries were caused

by a motor vehicle accident.[9]  As stated supra, any situation involving a motor vehicle accident

on a public highway is probably covered by §390.5.[10] This case does not involve a motor vehicle

accident. Therefore, the applicability of §390.5 here cannot be determined by judicial opinions

from other circuits dealing with motor vehicle accidents. The court will consider judgments

rendered in other situations similar to this case, not involving motor vehicle accidents.

The majority of courts have held that in accidents related to the loading, unloading or

storage of commercial motor vehicles, the independent contractor relationship is not preempted

and the viability of the lawsuit is determined by resort to state law or common law principles.[11]

---

[9]See, Consumers County Mutual Ins. Co. v. P.W. & Sons Trucking, Inc., 307 F.3d 362
(5th Cir. 2002); Perry v. Harco Nat'l Ins. Co., 129 F.3d 1072 (9th Cir. 1997); Jackson v.
O'Shields, 101 F.3d 1083 (5th Cir. 1996); Dietrich v. Albertsons, Inc., 57 F.3d 1080, (10th Cir.
1995); Zamalloa v. Hart, 31 F.3d 911 (9th Cir. 1994); Integral Ins. Co. v. Lawrence Fulbright
Trucking, Inc., 930 F.2d 258 (2d Cir. 1991); Johnson v. S.O.S. Transport, Inc., 926 F.2d 516 (6th
Cir. 1991); Price v. Westmoreland, 727 F.2d 494 (5th Cir. 1984); Rodriguez v. Ager, 705 F.2d
1229 (10th Cir. 1983); White v. Excalibur Ins. Co., 599 F.2d 50 (5th Cir. 1979); Wellman v.
Liberty Mutual Ins. Co., 496 F.2d 131 (8th Cir. 1974); Proctor v. Colonial Refrigerated
Transportation, Inc., 494 F.2d 89 (4th Cir. 1974); Simmons v. King, 478 F.2d 857 (5th Cir. 1973);
Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3d Cir. 1961); Reliance
Nat'l Ins. Co. v. Royal Indem. Co., No. 99 Civ. 10920 (NRB), 2001 U.S. Dist. LEXIS 12901
(S.D.N.Y. Aug. 24, 2001); Baker v. Robert's Express, Inc., 800 F.Supp. 1571 (S.D. Ohio 1992);
Riddle v. Trans-Cold Express, Inc., 530 F.Supp. 186 (S.D. Ill. 1982); Pierre v. Providence
Washington Ins. Co., 784 N.E.2d 52 (N.Y. 2002); Parker v. Erixon, 473 S.E.2d 421 (N.C. Ct.
App. 1996); Wycoff Trucking, Inc. v. Marsh Bros. Trucking Service, Inc., 569 N.E.2d 1049
(Ohio 1991); Cincinnati Ins. Co. v. Haack, 708 N.E.2d 214 (Ohio Ct. App. 1997); Stonerock v.
Miller Bros. Paving Inc., 594 N.E.2d 94 (Ohio Ct. App. 1991); Wilkerson v. Allied Van Lines,
Inc., 521 A.2d 25 (Pa. 1987).

[10]This Court does not purport to offer any opinion regarding whether or not suits by a
"statutory employee" driver against the "statutory employer" are barred by §390.5, a question not
presented in this case.

[11]See, Penn v. Virginia International Terminals, Inc., 819 F.Supp. 514 (E.D.Va. 1993);
Toomer v. United Resin Adhesives, Inc., 652 F.Supp. 219 (N.D. Ill. 1986); Harris v. Mitchell,
818 A.2d 443 (N.J. Super. Ct. App. Div. 2003); Zimprich v. Broekel, 519 N.W.2d 588 (N.D.
1994); Universal Am-Can, Ltd. v. Worker's Compensation Appeal Board, 762 A.2d 328 (Pa.

There are two notable exceptions that Arpin cites in support of its argument.

First, the case of <u>Robertson v. Motor Cargo, Inc</u>., 197 Ariz. 126 (Ariz. Ct. App. 1999), involves injuries suffered during the unloading of a truck as a result of shifts in the cargo during transit. <u>Robertson</u> is factually and legally distinguishable from this case. As noted in the discussion of 49 C.F.R. §391.13, drivers have a duty to ensure that cargo on their trucks does not shift during transit. Thus, where cargo does shift, it is at least arguable that drivers should bear legal responsibility for resulting accidents. Although the Arizona Appellate Court relied on what is now 49 C.F.R. §376.12 for its decision, the imposition of vicarious liability is, perhaps, more properly based on the language of 49 C.F.R. §391.13. Regardless of the legal grounds for the decision, <u>Robertson</u> is not persuasive here.

The more important decision relied on by Arpin is <u>Joyce v. Pederson</u>, 2003 WL 367320 (D. Kan. Feb 14, 2003). In <u>Joyce</u> the plaintiff was employed by Bennett Rogers, a company that hired Smithway-Motor to transport some pipes. The plaintiff, Joyce, was engaged in loading pipes onto the tractor-trailer of the defendant Pederson. Pederson was an independent contractor hired to drive the Bennet Rogers shipment on behalf of Smithway-Motor. Joyce was injured when his legs were struck by a pipe that slipped off a fork-lift, owned and used by Bennet Rogers.

The district court found that the defendant, Pederson, who was observing the loading of his truck,  was aware that the procedures used by Bennett Rogers to load the pipes were potentially dangerous and further that he took no steps to make the loading process more secure. The court then imposed "statutory employee" status under §390.5 on Pederson in relation to his

---

2000); <u>Maples v. Pirkle Refrigerated Freight Lines, Inc.</u>, 405 N.W.2d 84 (Wisc. Ct. App. 1987).

carrier-lessee, Smithway Motor, the shipping company that had hired Pederson as an independent contract-lessor to handle the shipment. The district court concluded that under the law of the Tenth Circuit there is a rebuttable presumption that independent contractors are employees. As a result, the court held that Joyce could sue Smithway Motor for the negligent omissions of Pederson in his capacity as the driver of the load of pipes.

This court rejects the legal conclusion of the <u>Joyce</u> court as irreconcilable with the plain language of §390.5 and the statutory scheme created by Congress that plainly accepts a distinction between independent contractors and employees as well as between loading and operating a motor vehicle. There is little evidence in the <u>Joyce</u> decision that the court considered the language of either 49 C.F.R. Ch. III as a whole or the governing statutes,[12] thereby limiting the persuasiveness of <u>Joyce</u>.

**2. Section 376.12**

Arpin also raises the possibility that 49 C.F.R. §376.12 imposes a "statutory employee" construct on Pouliot. Arpin supports this claim with judicial interpretations of §376.12 which give broad import to its language regulating the content of leases between independent contractor drivers and the shipping companies that hire them. Essentially, Arpin argues that, since it would be liable under this provision for damages caused by Pouliout to members of the public, Pouliot must be bound as an "employee" of Arpin when he suffers damage to himself.

Again, the court begins with an analysis of the regulatory provision itself. Section

---

[12]Especially 49 U.S.C. §14103(b) that would arguably preclude the conclusion reached by the district court in <u>Joyce</u>.

§376.12 does provide that "the authorized carrier lessee shall have exclusive use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. §376.12(c)(1). This provision does impose a "statutory employer" condition on the carrier-lessee in situations of damage done to the public during the term of the lease. In this case, however, the court is asked to find that a statutory employee condition exists between Pouliot and Arpin–between the parties to a contract for service. Thus, the court must look, not to the regulations imposing responsibility for harms done to third-parties, but instead to the regulations that shape the relationship between the lessor and the lessee. Both the regulations and the governing statutes regarding the lessor-lessee relationship are clear regarding the critical issue of responsibility for loading and unloading commercial vehicles.

Paragraph (c)(4) of §376.12 instructs the court that "[n]othing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements." The import of this language is plain–the existence of a lease under regulations that impose liability between the carrier-lessee and the public does not have any impact on the type of relationship that exists between the carrier lessee and the contractor-lessor. This critical provision was added in 1992, and this court agrees with a district court in Virginia that adherence to pre-1992 impositions of a statutory employee construct through §376.12 is "a misinterpretation of the regulations." Penn v. Virginia International Terminals, Inc., 819 F.Supp. 514, 523 (E.D.Va. 1993). A "statutory employee"

-14-

relationship cannot be imposed solely by a finding that the parties complied with the terms of 49 C.F.R. §376.12.

As noted supra, Congress did not simply ignore the issue of responsibility for loading and unloading commercial motor vehicles. The law, 49 U.S.C. §14102(b), clearly indicates that it is the duty of the parties to affirmatively allocate responsibility for the loading and unloading of the motor vehicle. Section 14103 supplements this instruction with an equally plain declaration that "[i]t shall be unlawful to coerce or attempt to coerce any person providing transportation of property by motor vehicle for compensation...to load or unload any part of such property or to employ or pay one or more persons to load or unload any part of such property." 49 U.S.C. §14103(b). Thus, not only is there no statutorily imposed employee relationship, there is a statutory bar to implying an employee relationship out of the act of loading or unloading a commercial motor vehicle. There is no basis for preemption under 49 C.F.R. §376.12 of Pouliot's claims that he is an independent contractor; any further question regarding the status of the relationship between Pouliot and Arpin is matter properly reserved for the trier of fact.

## C. Defendant's Claim for Exclusion Under Rhode Island Law

The court must also consider whether any provision of Rhode Island law acts to bar plaintiff's suit.[13] The terms of the contract between Pouliot and Arpin expressly incorporate the

---

[13]Arpin elaborates a choice of law theory that requires the court to apply Rhode Island law. The court does not decide any choice of law issue at present. The standard of review applied here is whether or not the plaintiff can plead any set of facts that might entitle him to relief. Certainly, it is possible, absent a statutory bar, that the facts presented in the pleadings could entitle the plaintiff to relief, under either Rhode Island or Connecticut common law. The defendant has properly raised the question of whether the state of the law precludes the bringing of this suit, such that no sufficient facts could ever be pled that would allow relief. Accordingly,

laws of the state of Rhode Island and the court can conceive of no reason why the law of Rhode
Island should not be applied to determine whether Pouliot is barred by the terms of his contract
from pursuing this suit. Any other claims regarding Pouliot's suit would necessarily rely heavily
on fact-finding that is inappropriate at this, the notice and pleading stage of the proceedings.

Arpin claims that Rhode Island's exclusivity provision, R.I.G.L. §28-29-20, acts to bar
plaintiff's common law claims. Arpin does not base this argument on the definition of
"employee" included in R.I.G.L. §28-29-2, but instead relies on an incorporation of the federal
definition of "employee" in C.F.R. §390.5. The court has already held that C.F.R. §390.5 and
§376.12 do not impose a "statutory employee" relationship on the plaintiff, and so defendant's
claim fails on that ground. The court will, however, consider whether some independent
provision of Rhode Island law serves to impose exclusivity on the plaintiff, as the contract is
governed by the laws of Rhode Island.

The court concludes that Rhode Island law does not bar plaintiff's suit at this stage of the
proceedings. The operative definition of "employee" in R.I.G.L. §28-29-2 includes an exemption
for an "independent contractor." Pouliot could plead facts, taking all inferences in the pleadings
to be true and favorable to him, that would tend to show he was an independent contractor and
therefore is not barred from pursuing this suit. Further, Arpin makes no claim that it ever
required the plaintiff to formally consent to participate in a worker's compensation program.
Instead, the inferences to be drawn from the pleadings and the owner-operator agreement suggest

_____

the court has considered whether or not the law governing the contract between Arpin and
Pouliot is such that he is considered an employee of Arpin who may only resort to worker's
compensation for his remedy. Any other claims regarding the insufficiency of plaintiff's case
should properly be raised in a motion for summary judgment under F.R.C.P. 56.

that Arpin did not consider Pouliot to be covered by its worker's compensation program. The

parties' arguments on this point show that there is a factual dispute[14] and that Pouliot's effort to

opt-out of the Rhode Island worker's compensation scheme may be determinative.[15]  Regardless,

there is no basis, at present, to dismiss this case as barred by Rhode Island's exclusivity

provision.

## III. Conclusion

Arpin's Motion to Dismiss **[doc. # 89]** is **DENIED**. The terms of the contract between

Pouliot and Arpin do not impose a legal relationship on the parties that would exclude or

preempt Pouliot's common law claims. Neither 49 C.F.R. §390.5 nor §376.12 impose a

"statutory employee" relationship on Arpin and Pouliot in a situation where Pouliot was injured

while loading or unloading the commerical motor vehicle.  Such situations are beyond the scope

of those regulations. The court bases this holding on the plain language of the regulations, the

structure and interplay of 49 C.F.R. Ch. III and the plain language and structure of the statutes

authorizing the promulgation of 49 C.F.R. §390.5 and §376.12. Finally, the text of the Rhode

---

[14]Under Rhode Island law, the determination of whether an individual is an employee or an independent contractor is a matter that in each case "depends upon its peculiar facts taken as a whole." Di Orio v. R.L. Platter, Inc., 211 A.2d 642, 645 (R.I. 1965). Such an inquiry is clearly best resolved on a motion for summary judgment when the parties have submitted proper statements of fact under D. Conn. L. R. Civ. 56(c)(1).

[15]Plaintiff claims that he exercised his right to opt-out of Rhode Island worker's compensation law under R.I.G.L. §28-29-17, which permits an employee to declare his intention to reserve his common law rights and forego worker's compensation within 10 days of becoming eligible for worker's compensation coverage. The court does not resolve this issue here.

-17-

Island statutes governing this contract do not create a statutory bar to plaintiff's suit. Rather,

Rhode Island's courts have interpreted these provisions to leave the factual question of Pouliot's

status as either an employee or an independent contractor to resolution under the common law.

Thus, there is no basis for dismissal of plaintiff's claims under F.R.C.P. 12(c).

So ordered this  26th  day of November, 2003.

_____/s/_____

**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**