had exclusive control over a situation is left to the jury. See <u>Skuzinski v. Bouchard Fuels, Inc.</u>, 694 A.2d 794 (citing <u>Weintraub v. Richard Dahn, Inc.</u>, 188 Conn. 570, 572 (1982).

In <u>Skuzinski v. Bouchard Fuels, Inc.</u>, the plaintiff sought to recover for injuries he sustained when he was struck by the defendant's truck after leaving a store. See <u>Skuzinski</u> at 790. The defendant truck driver, Bouchard, sought indemnification from the third-party defendants, the store owners, alleging that their failure to clear snow from their sidewalk caused the plaintiff to walk in the street where he was struck and injured by the truck. See Id. The trial court granted the store owners' motion to strike observing that "the relationship between these parties [the store owners and the defendant] was clearly random and unanticipated . . ." See <u>Skuzinski</u> at 790.

On appeal, the Connecticut Supreme Court held that precedent did not require "an independent legal relationship between the indemnitor and indemnitee;" See <u>Skuzinski</u> at 791. Nonetheless, the Supreme Court upheld the trial court's decision upon the ground that the stores owners did not have exclusive control of the situation. See <u>Skuzinski</u> at 794. The Supreme Court then described exclusive control over the situation as "*exclusive control being control over the dangerous condition that gives rise to the accident.*" See Id. [Italics added for emphasis]. This definition is conspicuously missing from Festo's analysis of <u>Skuzinski</u>.

21

The Court noted that at oral argument, "Bouchard conceded that it did not claim that the unremoved snow had resulted in an encroachment on or an obstruction of the street." See Skuzinski at 794. The court concluded that under the alleged facts 'no reasonable juror could find that the third party defendants has exclusive control over the situation." See Skuzinski at 794.

Prior to issuing this ruling, the Connecticut Supreme Court stated, "We need not decide today the broad question of whether any potential indemnitor can ever be found to have been in "exclusive control" of a public street. *We address only the narrower question raised by the circumstances of this case*, namely, whether the exercise of exclusive control over a sidewalk, by failing to remove its snow cover, can be equated to exclusive control over the "situation" that is to say over an accident caused by an unrelated party and occurring in the adjoining public roadway." [Italics added for emphasis] See Skuzinski at 794.

There are two factors which distinguish Skuzinski from the case before this Court. First, in effect, Bouchard had conceded that the "snow", which in that case was alleged to be the "dangerous condition" was not in the roadway, which was where the accident took place. Arpin has not conceded that the "dangerous condition", the Learnline 2000 unit, shipped with faulty instructions a misrepresented weight, an inadequate braking system and inadequate shipping preparation for special handling, was not at the scene of the accident. Arpin has alleged that the

22

Learnline 2000 unit was the "dangerous transportation hazard" which caused Pouliot's injuries. This alone places the current case outside the narrow holding of <u>Skuzinski</u>.

Second, the Court in <u>Skuzinski</u> expressly limited itself to "whether the exercise of exclusive control over a sidewalk, by failing to remove its snow cover can be equated to exclusive control . . . over an accident caused by an unrelated party and occurring in an adjoining roadway." See <u>Skuzinski</u> at 794. This scenario did not occur in our particular case. While <u>Skuzinski</u> stands for the broad proposition that "exclusive control" can be found as a matter of law, its factual scenario is wholly not analogous to the situation before the court.

In all of its Indemnification claims against Festo for negligence, Arpin claims that Festo failed to adequately and safely prepare the Learnline 2000 unit for shipment in that it failed to provide safe and adequate shipping instructions, failed to provide an adequate braking system, and misrepresented its weight. See Arpin Cross-Claim at Paragraphs 5. In all of its Indemnification claims against Festo for negligence Arpin alleges that "The Plaintiff's injuries were due to the active negligence of Festo rather than any passive negligence with which Arpin may be found chargeable, if any at all, Festo's negligence being the direct and proximate cause of the accident and resulting injuries to the Plaintiff." See Arpin Cross-Claim at Paragraph 7. Arpin has not conceded that Festo's negligence was not the immediate cause of the Plaintiff's injuries.

Arpin's negligent misrepresentation claims also fall outside the exception of Skuzinski. Paragraph 40 of Arpin's cross-claim alleges that "Festo supplied false shipping information to Michael D. Kovac d/b/a Trans-Expo, International regarding the Learnline 2000 unit." Paragraph 41 states, "Michael D. Kovac d/b/a Trans-Expo, International received false shipping information from Festo Corpration regarding the Learnline 2000 unit which it then forwarded to Arpin." Paragraph 45 states, "The Plaintiff's injuries were due to the active negligence of Festo rather than any passive negligence with which Arpin may be found chargeable, if any at all, Festo's negligence being the direct and immediate cause of the accident and resulting injuries to Plaintiff."

These allegations take Arpin's negligent misrepresentation claim outside the exception of Skuzinski. Arpin has not conceded that the negligent misrepresentation of Festo was not the immediate cause of Plaintiff's injuries.

Given that the narrow exception of Skuzinski does not apply, Arpin is permitted to introduce evidence consistent with the allegations of their cross-claim. These factual allegations if proven would result in a finding of exclusive control by the Festo Corporation.

In its Motion, Festo has cited to two other cases which purportedly support its broad interpretation of Skuzinski. Festo has cited to Skrzyniarz v. Votto and Simon v. My Bread Baking Co. Both of these cases fall within narrowly defined exceptions to the general rule that

24

"exclusive control" is a question of fact for the jury and should not be persuasive on the issue before this Court.

Votto arose in an unusual posture. See Skrzyniarz v. Votto, Superior Court, judicial district of New London at Norwich, Docket No. X04-CV-0122390-S (August 29, 2001, Koletsky, J.) (Exhibit 3) Votto involved an accident which occurred while two children were playing on a riding lawnmower. See Votto at *1. One child filed a products liability claim against the lawnmower manufacturer. See Votto at *1. The manufacturer then filed an indemnity claim against the parents of the other child for negligence. See Votto at *1.

The court held that this case was one of the rare "special circumstances" alluded to by Skuzinski. See Votto at *3. The court held that if the manufacturer were held liable for a product liability claim, then necessarily the parents could not have been in exclusive control of the design, manufacture, or distribution of the product. See Votto at *3. See also, Torrington Country Club v. Ply Gem, 12 Conn.. L. Rptr.. 53, 1994 WL 320228 (Doc. No. CV92 0061340; Conn. Super. 1994) (third-party defendant architect could not have exercised exclusive control over a defectively manufactured product as a matter of law).

Votto is clearly distinguishable from the current case. The Plaintiff has alleged that Arpin is negligent in failing to provide the Plaintiff with the requisite equipment and information to properly unload the Learnline 2000 unit. Arpin's indemnity claims allege that Festo was

negligent by its failure to provide adequate shipping instructions so that Arpin could develop an adequate shipment plan. Also, Festo failed to warn Arpin that the Learnline 2000 unit was a dangerous transportation hazard, thus depriving Arpin of the opportunity to develop a safe shipment plan. Arpin alleges that Festo had exclusive control of these dangerous conditions. Unlike in Votto, a finding that Arpin was negligent does not necessitate a finding that Festo was not in exclusive control of the situation.

Simon v. My Bread Baking Co. is also readily distinguishable from the current case. Simon is a "public highway" case. These cases involve automobile accidents on public roads when both parties are alleged to have committed active negligence. There is a split of authority over whether such indemnification claims regarding accidents of public roadways can ever be legally sufficient. See Boles v. Metro-North, Superior Court, judicial district of Waterbury, Docket No. CV00-0158782S (Feb. 28, 2001, Rogers, J.)

In any event, the current case does not involve an automobile accident on a public highway. Therefore, the Simon case is only generally helpful given the existence of several more analogous trial court decisions.

The three cases cited by Festo above notwithstanding, the vast majority of Connecticut cases find that "exclusive control" is a question of fact. See Morin v. Cook, Superior Court, judicial district of Windham at Putnam, Docket No. 058495 (April 25, 2000, Potter, J.) (27

26

Conn.L.Rptr. 101, 103) (motion to strike denied where third party defendant alleged to have caused automobile accident by obstructing public road with debris from tree removal); Katsetos v. Viking Construction, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 160359 (November 6, 1998, Hickey, J.) (motion to strike denied where third party defendant alleged to have exclusive control over architectural plans and property where plaintiff alleged water damages from the construction of the building); Zaccagnini v. Laidlaw Transit, Inc., Superior Court, judicial district of Danbury, Docket No. 323571 (September 16, 1998, Moraghan, J.) (motion denied where third party defendant alleged to have caused the plaintiff to fall in a position where the defendant then struck and ran over the foot of the plaintiff); Long v. McDonald's Corp., Superior Court, judicial district of New Haven at New Haven, Docket No. 399076 (September 11, 1998, Moran, J.) (motion denied where plaintiff alleged to have fallen because the third party defendant's soda fountain leaked).

Despite Festo's failure to establish that the pleadings before this court create one of the rare exceptions to the rule that "exclusive control" is a question of fact, a few cases provide apt analogies to the situation before this Court.

In Satula v. Yale University, the plaintiff was injured while walking on the tile patio floor at the premises of the Joseph Slivka Center at Yale University. Superior Court, judicial district of New Haven at New Haven, Docket No. CV-97-0404649-S (Dec. 7, 1998, Jones, J.) (Exhibit

27

4) The Plaintiff filed a complaint consisting of one count of negligence against five defendants, including both the general contractor and the architectural designer of the patio floor. See Satula at *1. The general contractor filed an indemnity cross-claim against the architects. See Satula at *1. The architects claimed that the cross-claim was legally deficient on the question of exclusive control. See Satula at *2. The architects claimed that the mere admission by the contractors that they constructed and built the patio precluded a finding by a reasonable juror that the architectural firm could have exercised exclusive control of the situation. See Satula at *2.

The court denied the motion to strike finding that the contractors' allegations that the architects controlled the designs and specifications of the project and that the design and specifications were at all times followed prevented the granting of a Motion to Strike. See Satula at *2. The court held that the instant set of circumstances were not "special", and that the rare exception of Skuzinski would not apply. See Satula at *3. The court held that the allegation that someone else physically put the tiles in place does not preclude a finding that the architects had exclusive control. See Satula at *3.

The Satula case is analogous to the situation before this Court. While Arpin (or Pouliot) might have physically unloaded the Learnline 2000 unit and prepared the shipment plan, Arpin alleges that it was following instructions provided to it by Festo and that it reasonably relied upon those instructions. "A party's actual knowledge and the reasonableness of his reliance on

28

others are also to be determined by the trier of fact." See Weintraub v. Richard Dahn, Inc., 188 Conn. 570, 573-74, 452 A.2d 117 (1982).

A reasonable juror could find, consistent with the allegations of Arpin's cross-claim that Festo was in control of the dangerous condition which caused the injury to Shawn Pouliot. Arpin must be allowed to present such evidence to the jury.

Judge D'Andrea's opinion in Sedlak v. Neville is also instructive as to the situation currently before this Court. Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV98 0167678 (December 21, 1999).(Exhibit 5) In Sedlak, the Plaintiff alleged that she sustained injury as a result of an attack by a dog owned by the defendant/third-party plaintiff Richard Neville. See Sedlak at *1. While the Plaintiff was in the process of unleashing her dog to place him into the open door of her motor vehicle, the third party plaintiff's unleashed dog aggressively approached and attacked the plaintiff and her dog. Sedlak at *1. As the third-party plaintiff's dog aggressively approached the plaintiff's leashed dog, the leash on the plaintiff's dog became entangled on the left master index finger of the plaintiff. See Sedlak at *1. The plaintiff's dog responded to the attack by the third party plaintiff's dog and the plaintiff's entangled finger was traumatically amputated. See Sedlak at *1.

When sued on the basis of negligence, the third party plaintiff brought an indemnity claim against the distributor of the leash, Petland Discounts, Inc. See Sedlak at *1. Petland filed

a motion to strike alleging a lack of exclusive control over the situation. See Sedlak at *1. The court held that the third party plaintiff had adequately alleged that the plaintiffs dog leash was the dangerous instrumentality and that the issue of exclusive control was a question of fact for the jury. See Sedlak at *2.

Arpin has likewise alleged that the Learnline 2000 unit, as shipped by Festo, "presented a dangerous transportation hazard." See Arpin Cross-Claim at paragraph 5, subparagraph (g). Like in Sedlak, the mere fact that Festo was not in actual control of the dangerous condition at the time of the accident does not preclude a finding that Festo had exclusive control over the situation. Also, like in Sedlak, the presence of several allegedly intervening forces does not preclude a finding of exclusive control.

Based on these allegations a reasonable juror could find that Festo was in exclusive control over the situation or "dangerous condition". See Skuzinski v. Bouchard Fuels, Inc., 694 A.2d 788, 794. Arpin is entitled to present evidence to the jury consistent with these allegations.

The state of Connecticut, with a few narrowly defined exceptions, holds that the determination of exclusive control is a question of fact for the jury. Festo has presented no evidence that this Court should deviate from that standard. Arpin has made sufficient allegations so as to put Festo on notice of its common law indemnification claims. The mere fact that Festo

believes that these allegations will be unsuccessful is legally insufficient to grant judgment to Festo Corporation on the pleadings.

On page 20 of Festo's Motion it claims that "Plaintiff's pleadings in this action underscore the conclusion that Festo was not and could not have been in control of the unit." This allegation, even if true, is irrelevant toward a determination of whether Arpin may present evidence to support its allegations of "exclusive control."

Connecticut law does not require that the allegations in an indemnification claim be the same as those in the Plaintiff's Complaint. See e.g. Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 698, 694 A.2d 788 (1997) (raising indemnification claim against third-party defendant for failing to remove snow and ice where defendant/third-party plaintiff hit and injured plaintiff); Saucier v. 5-D's Skating Center Inc., Superior Court, judicial district of Waterbury, Docket No. 131232 (January 7, 1998, Shortall, J.) (raising indemnification claim against third-party defendants for negligently colliding with plaintiff at skating rink while defendant/third-plaintiff allegedly liable for failing to provide adequate security and supervision); Katsetos v. Viking Construction, Superior Court, judicial district of Stamford -Norwalk at Stamford, Docket No. 160359 (November 6, 1998, Hickey, J.) (bringing indemnification claim against third-party defendant for negligent design and supervision of construction of building where defendant/third-party plaintiff allegedly liable for negligent construction of building); Satula v.

31

Yale University, Superior Court, judicial district of New Haven, Docket No. 404649 (December 7, 1998, Jones, J.) (bringing indemnification claim against third party defendant for negligent design where defendant/third party plaintiff allegedly liable for , negligent construction of patio).; City of Bristol v. Dickau Bus Co., Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 567991 (October 1, 1999, Peck, J.); see also Sedlak v. Neville, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 167678 (December 21, 1999, D'Andrea, J.)

Therefore the fact that the Plaintiff's complaint could permissibly be read as implying that Festo was not in exclusive control, does not entitle Festo to the benefit of a judgment on the pleadings. Arpin also notes that it is not a foregone conclusion that the Plaintiff will prove any or all of the allegations in his complaint.

For the foregoing reasons, Festo's Motion For Judgment on the Pleadings as to Counts 1, 2, 3, 4, 9, 10, 11 and 12 must be denied.

H. <u>If confronted with the current facts, the Connecticut Supreme Court would allow Arpin to present evidence supporting equitable indemnification.</u>

Based upon the Connecticut law's strong support of equity, the Connecticut Supreme Court, if confronted with the facts before this Court, would allow Arpin to present evidence supporting an equitable indemnification claim against the Festo Corporation.

The Connecticut Supreme Court has described equity as "a system of positive jurisprudence founded upon established principles which can be adapted to new circumstances where a court of law is powerless to give relief." in the case of <u>Associated Investment Co. v. Williams Associates</u>, 230 Conn. 148 (1994). The Court went on to state, "A hallmark of equity is its capacity of expansion [beyond the common law], so as to keep abreast of each succeeding generation and age." See also, <u>Harper v. Adametz</u>, 142 Conn. 218, 223, 113 A.2d 136 (1955).

Connecticut courts have expressly recognized both common law indemnity grounded in tort and contractual indemnity.

"[I]f a claim for indemnification is grounded in tort, reimbursement is warranted only upon proof that the injury resulted from the 'active or primary negligence of the party against whom reimbursement is sought." <u>Burkert v. Petrol Plus of Naugatuck, Inc.</u>, 216 Conn. 65, 74, 579 A.2d 26 (1990). In order to prove active or primary negligence and recover as indemnitees, an indemnitor is required to satisfy the four criteria set forth in <u>Kaplan v. Merberg Wrecking Corporation</u>, 152 Conn. 405, 416, 207 A.2d 732 (1965). In the third party litigation context, the third-party plaintiff must prove that (1) the third defendant was negligent; (2) the third-party defendant's negligence rather than the third-party plaintiff's negligence was the direct and immediate cause of the damage; (3) that the third-party defendant was in control of the situation to the exclusion of the third-party plaintiff and (4) that the third-party plaintiff did not know of

the negligence and the third-party defendant, had not reason to anticipate it, and could reasonably rely on the third party defendant not to act in an improper way.

To prevail on a contractual indemnity claim, the defendant must show either an express or implied contractual right to indemnification. Connecticut General Life Ins.Co. SVA, Inc., 743 F.Supp. 107, 110 (D.Conn.1990). For a court to find an implied contractual duty, it must arise by the affirmative conduct of the parties. In re General Dynamics Asbestos Cases, 539 F.Supp. 1106, 1111 (D.Conn.1982).

Arpin argues that the relationship of shipper-carrier between Festo and Arpin gives rise to an obligation of indemnity when misrepresentations as to the nature of the cargo are made by the shipper. Festo, as the shipper, was in sole possession of all necessary information needed to compose a safe shipment plan. The nature of the shipping industry is such that a contract delineating all rights between the shipper and carrier, including rights of indemnity, would be unfeasible. As such, the relationship between Festo and Arpin, under the facts of this case, dictates that Festo should be obligated to pay all costs incurred by Arpin.

In this particular case, the Plaintiff has accused Arpin of engaging in a joint venture with Festo to move the Learnline 2000 unit. See Plaintiff's Fifth Amended Complaint, Count Seven. Through this claim, Plaintiff seeks to hold Arpin accountable for the actions of third-party and primary defendant Michael D. Kovac, d/b/a Trans-Expo, International. Despite the allegation

that Arpin and Festo were co-parties to this purported joint venture, the Plaintiff has chosen to seek recovery solely from Arpin on these grounds. Given the chance of unfair imposition of liability upon Arpin, Arpin should be allowed to present evidence establishing an equitable right of indemnification against Festo Corporation.

"A right to indemnity arises when one party is exposed to liability by the action of another, who in equity or law, should make good the other's loss. It is also equally clear that where one party has been required to discharge a claim for which he is only secondarily liable, he may compel indemnity from the person primarily responsible for the obligation giving rise to the claim." See Coleman v. American Mfrs. Mut. Ins. Co., 930 F.Supp. 255 (N.D. Miss. 1996).

Arpin has the right, given Connecticut's positive view of equity jurisprudence to establish that Festo should discharge all the obligations Arpin has incurred which have resulted from the negligence or negligent misrepresentation of Festo.

Festo should not be granted judgment on counts 3, 4, 11 and 12 of Arpin's Cross-Claims.

I.   A judgment for Festo on Arpin's contribution claim would be premature at this stage.

As it has yet to be shown whether Festo and Arpin are joint tortfeasors a finding of judgment on Counts 8 and 16 in Festo's favor would be premature.

The Plaintiff in this case has asserted that Arpin should be held liable for the actions of Michael D. Kovac d/b/a Trans-Expo, International. See Plaintiff's Fifth Amended Complaint at

Count Seven. This liability is premised upon an alleged joint venture between Festo and Arpin in the shipment of the Learnline 2000 unit. See Plaintiff's Fifth Amended Complaint at Count 7. The Plaintiff has made no theory of recovery against Festo based on this allegation.

Given that a finding of liability could be imposed upon Arpin because of the actions of Festo's alleged agent (Trans-Expo) Arpin, under the circumstances, is entitled to present evidence demonstrating that Festo should be held solely responsible for any actions of its agent, Trans-Expo.

Festo should not be granted judgment on Counts 8 and 16.

III.  CONCLUSION

For the foregoing reasons, Festo should not be granted judgment on Arpin's cross-claims. At this point in the case, it is not at all clear that Arpin can plead no facts which would entitle it to recovery under the allegations of its cross-claim. Arpin has properly plead cross-claims of apportionment and contribution under federal law. The pleadings do not establish that the issue of exclusive control can be determined as a matter of law. Arpin also has the right to present evidence on equitable indemnification and it is premature to determine that Arpin cannot establish contribution based on the alleged joint venture between Festo and Arpin. Arpin prays that Festo's Motion for Judgment on the Pleadings be denied in its entirety.

>
> Defendants/Third-Party Plaintiffs
> Cross-Claim Plaintiffs
> By their attorney:
>
> _____
> Thomas J, Grady, Esquire
> Federal Bar No. CT 17139
> **LENIHAN, GRADY & STEELE**
> 6 Canal Street, P.O. Box 541
> Westerly, RI 02891
> (401) 596-0183
> (401) 596-6845 (Fax)

## CERTIFICATION OF NOTICE

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this ____ day of December, 2003, to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street, New Haven, CT 06510, Roland F. Moots, Jr., Esquire *of Moots, Pellegrini, Mannion, Martindale & Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire of *Halloran & Sage*, One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and John Tarantino, Esquire and James R. Oswald, Esquire of *Adler, Pollack & Sheehan*, P.C., 2300 Financial Plaza, Providence, RI 02903-2443.

_____
Thomas J. Grady, Esq.