# EXHIBIT 1

We are asking this court to use its plenary equity power to fashion a remedy in equity for Paul Arpin Van Lines, Inc. so that it may have redress in equitable indemnity against Trans-Expo for its losses in this case. Arpin was not in control of the motor vehicle or the Learnline 2000 unit at the time of the accident. The accident did not occur on Paul Arpin Van Lines, Inc.'s premises. Paul Arpin Van Lines, Inc. had no control over the communications from Trans-Expo regarding shipping and unloading information. Paul Arpin Van Lines, Inc. ought to be able to assert its claim in this proceeding as a claim for indemnity, so that Trans-Expo in a due and timely manner may take responsibility for their actions.

Trans-Expo should not be allowed to walk away from their responsibilities without accountability and being made to indemnify Paul Arpin Van Lines, Inc. for all of its injuries, damages, losses, and expenses in this current pending action, both directly and indirectly.

Therefore, Trans-Expo's Motion to Strike Arpin's Cross-Claim for equitable indemnification must be denied.

D.     Arpin's Cross-Claims for Apportionment of Damages" are Legally Sufficient Due to the Federal Courts' Policies on Notice Pleading.

The question posed in Section III of Trans-Expo's Motion to Strike is whether an apportionment claim cannot be brought as a cross-claim against a co-party in federal court. Arpin concedes that, while this may be the majority position in the Connecticut state courts, the

minority position which allows for apportionment cross-claims is more consistent with the general policies of the Federal Rules of Civil Procedure and with Rule 13(g) in particular.

In addition, the Plaintiff has included two additional allegations against Arpin in its August 14, 2003 complaint at Count One, Clause 7(g) and (h) and Count Two, Clause 7(g) and (h). See Exhibit 7, Plaintiff's Third Amended Complaint. Arpin could not have apportioned liability based on these new allegations within 120 days of the return date of the original complaint because they did not even exist within that time window. These allegations were made by the Plaintiff for the first time on August 14, 2003, some 382 days after the return day in the Original Complaint and allowed by the Court on August 18, 2003.

In any event, Arpin agrees with Trans-Expo that pursuant to "Section 52-572h, the trier of fact is entitled to attribute and divide percentages of negligence among parties to the action." The apportionment cross-claims merely provided notice to Trans-Expo and Festo of Arpin's intention to present evidence on apportionment based on these particular allegations in the event that Plaintiff Complaint action, should for any reason be dismissed. The rules contemplate the pleading of inconsistent defenses and claims. Trans-Expo, which has admitted that the trier of fact may apportion liability among parties to the action, is in effect arguing that it has received too much notice of the apportionment claims.

A cogent explanation of the Connecticut majority position is provided in Judge McWeeney's opinion in <u>Gallagher v. Square D Company</u>, Complex Litigation Docket, judicial district of Waterbury at Waterbury, Docket No. X06-CV-01-0171019S (McWeeney, J., Aug. 27, 2002). See Exhibit 8. It reads as follows, "Our General Statutes contain a well-considered scheme for apportioning liability and damages among joint tortfeasors. General Statute § 52-102b is the exclusive means by which a defendant may bring a claim against a person not a party to an action but who may be liable for a proportionate share of the plaintiff's damages. Judge Mihalakos decided in <u>Gerarde</u> that the apportionment defendant was already a party to the action and therefore the cross claim filed against him by a defendant in the original action was impermissible. According to the <u>Gerarde</u> decision, "the express language of 52-102b precludes a cross-claim for apportionment against someone who is already a party to the action."

Under this view, Arpin's cross claims against Trans-Expo would be struck, but it would maintain its ability to apportion liability by virtue of Conn.Gen.Stat. §52-572h (c), as admitted by Trans-Expo. See Motion to Strike at 10.

Pursuant to the minority position, Arpin's cross-claim would be upheld. The New Haven Superior Court has allowed apportionment cross-claims.

The case of <u>Sharif v. Peck</u>, Superior Court, judicial district of New Haven at New Haven Docket No. 429034, (March 27, 2001, Blue, J.), involved a two car crash. See Exhibit 9. One

# EXHIBIT 2

## Connecticut Trial Ct. Unpublished Decisions

GALLAGHER v. SQUARE D COMPANY, No. X06-CV-01-0171019S (Aug. 27, 2002)

RICHARD GALLAGHER, JR. v. SQUARE D COMPANY ET AL.

*2002 Ct. Sup. 11022, 33 CLR 67*

No. X06-CV-010171019S

Superior Court

Judicial District of Waterbury at Waterbury

Complex Litigation Docket.

August 27, 2002

MEMORANDUM OF DECISION RE: MOTION TO STRIKE
BY DEFENDANTS NORTHEAST UTILITIES AND THE CONNECTICUT LIGHT &
POWER COMPANY #126

McWEENY>, JUDGE.

This personal injury action was commenced by the plaintiff Richard
Gallagher, Jr., against the defendants Northeast Utilities (NU), The
Connecticut Light & Power Company (CL&P) and Square D, by writ, summons
and complaint served upon them in July, 2001. The plaintiff amended his
complaint against the same defendants on August 22, 2001, and filed a
revised version on November 21, 2001. Square D responded to the amended
complaint by filing an answer, special defenses and a crossclaim dated
October 18, 2001. The crossclaim is directed at the defendants NU and
CL&P (the utilities), and seeks <apportionment> of liability and damages to
the extent that the plaintiff recovers damages in this action, pursuant
to General Statutes

The utlities have moved to strike the crossclaim on two grounds:

(1) the crossclaim does not seek any affirmative relief, and

(2) it seeks <apportionment> from entities already parties to this
action.

Square D has objected to the motion to strike. The parties have waived
oral argument.

The revised amended complaint asserts three counts of negligence that
allegedly resulted in the injuries to the plaintiff during the testing of
an energized electrical system. Count one is a claim of negligence
against Square D, consisting of twelve separate subparagraphs of alleged
negligent acts by Square D. Counts two and three are claims of negligence
against the two utilities, each count consisting of three separate
subparagraphs alleging their negligent acts. Square D notes that the
allegations contained in counts two and three of the revised amended
CT Page 11023
complaint are separate and distinct from the allegations contained in
count one. Square D objects to the motion to strike its crossclaim
against the utilities on the basis that the crossclaim provides notice of
its intention to seek <apportionment> against the utilities.

"A motion to strike tests the legal sufficiency of the allegations of
any complaint, counterclaim or crossclaim . . . to state a claim upon

which relief may be granted. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989); Practice Book § 10-39(a)(5). "[A motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . ." (Citations omitted.) Mingachos v. CVS, Inc., 196 Conn. 91, 108, 491 A.2d (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) Novametrix Medical Systems v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992).

Relying on the plain language of General Statutes § 52-102b and pertinent case law, the court agrees that a crossclaim for <apportionment> of liability and damages is unnecessary in a negligence action in which liability already is claimed against the crossclaim defendant.

This issue was decided by Judge Mihalakos in Gerarde v. Anastasiou, Superior Court, judicial district of New London at New London, Docket No. 546471 (June 30, 1999, Mihalakos, J.). The Gerarde plaintiff brought an action for damages as a result of a slip and fall she sustained while exiting the Old Lyme Pizza Palace. She claimed that she tripped over a concrete curbstone next to the front entrance of the restaurant, and on that basis served a three-count complaint against the owner of the restaurant, the restaurant itself, and the builder of the curbstone. The curbstone builder filed an <apportionment> complaint against the designer of the curbstone, and the restaurant owner then filed a crossclaim against that designer. Before the court was a motion to strike the crossclaim on the grounds that an <apportionment> complaint may be filed only against a person not already a party to the action, and a crossclaim for <apportionment> is legally insufficient because it fails to seek affirmative relief. The crossclaim plaintiff argued that his pleading against the curbstone designer was necessary to ensure that the designer's <apportionment> liability would be properly considered by the court.

The crossclaim plaintiff in Gerarde assumed that a pleading was sufficient notice to the court of his intention to seek <apportionment> of damages in a negligence action in which the crossclaim defendant already was a party. In fact, such a pleading may effect reliance by the CT Page 11024
crossclaimant on an assumption that the mere assertion of a crossclaim against a person already a party to the action guarantees automatic <apportionment> of liability and damages at the conclusion of trial, even if a defendant has been released after settlement prior to trial. Both assumptions are mistaken.[fn1]

Our General Statutes contain a well-considered scheme for apportioning liability and damages among joint tortfeasors. General Statutes § 52-102b is the exclusive means by which a defendant may bring a claim against a person not a party to an action but who may be liable for a proportionate share of the plaintiff's damages. Judge Mihalakos decided in Gerarde that the <apportionment> defendant already was a party to the action and therefore the crossclaim filed against him by a defendant in the original action was impermissible. According to the Gerarde decision, "the express language of 52-102b precludes a crossclaim for <apportionment> against someone who is already a party to the action." Id.

The court noted, however, that the defendant is not left without a remedy. "Since General Statutes § 52-572h (c) provides that all parties against whom recovery is permitted are liable only for their proportionate share of the damages, and because [the crossclaim defendant already] is a party, his percentage of negligence will be considered by the jury." Id., quoting Algea v. Barnett, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334396 (July 17, 1997, Skolnick, J.).

This court notes, however, that <apportionment> does not arise automatically, but must be based on evidence at trial. Baxter v. Cardiology Associates of New Haven, 46 Conn. App. 377, 381-82, 699 A.2d 271, cert denied, 243 Conn. 933, 702 A.2d 640 (1977). In Baxter, the appellate court reviewed the question that arises when a defendant, namely the hospital defendant in a medical malpractice case, settled and was released prior to trial.[fn2] The remaining party defendants argued after the close of the plaintiff's evidence that they had no obligation to raise the issue of the hospital's liability for <apportionment> purposes, nor did they have any burden of proof in regard to the hospital's <apportionment> liability. "The defendants take the position that the question of <apportionment> and liability of a settled or released party arises automatically by virtue of the statute." Id., 380. The trial court disagreed with them, and denied their request to submit to the jury the issue of the hospital's negligence.

The appellate court affirmed that decision, holding that "[a]s with any issue, the trial court must not submit the issue of the settled person's negligence to the jury unless there is evidence to support it." Id., CT Page 11025
382. The same result would occur if no evidence were presented to support a complaint, counterclaim or crossclaim. A claim devoid of evidence to support it will not be submitted to the trier of fact.

Thus, it is impermissible to assert a crossclaim against a party already in the case. The notice of a defendant's intention to have <apportionment> questions submitted to the jury must come from the evidence presented by that defendant at trial.

In the instant case, the utilities also argue in their motion to strike that the crossclaim for <apportionment> is legally insufficient because it fails to seek affirmative relief. The court's holding as to the impermissibility of the crossclaim under the plain language of General Statutes § 52-102b is dispositive of this motion to strike; therefore, the court need not address this issue.

The motion to strike the crossclaim by Square D against the utilities (#126) is granted.

Robert F. <McWeeny, J.

[fn1] "The court declines to follow the minority view discussed in Torres v. Bejic, Superior Court, judicial district of New Haven, Docket No. 423742 (June 14, 2000, Levin, J.)

[fn2] General Statutes § 52-572h "[s]ets forth two classes of persons whose negligence must be considered by the trier of fact: (1) the `parties' to the action; and (2) `settled or released persons,' as that term is illuminated in subsection (n)." Donner v. Kearse, 234 Conn. 660, 671, 662 A.2d 1269 (1995).
CT Page 11026

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 3

## Connecticut Trial Ct. Unpublished Decisions

SKRZYNIARZ v. VOTTO, No. X04-CV-00-0122390-S (Aug. 29, 2001)

VIOLET SKRZYNIARZ, ET AL. v. JOHN VOTTO, ET AL.

*2001 Ct. Sup. 11650*

No. X04-CV-00-0122390-S

Superior Court

Judicial District of New London at Norwich

Complex Litigation Docket.

August 29, 2001

### MEMORANDUM OF DECISION ON MOTION TO STRIKE CROSS CLAIM

KOLETSKY, JUDGE.

On March 7, 2000, the plaintiffs, Violet Skrzyniarz and Shawn Skrzyniarz (collectively "Skrzyniarz"), filed a six-count complaint against the defendants, John Votto, Brenda Votto and Stephen Votto (collectively "Votto"), for damages allegedly sustained when Shawn Skrzyniarz, a minor, injured his left foot and leg on the cutting blades of a moving lawn tractor, when he fell off the tractor which was being operated by Stephen Votto, the twelve year old son of John and Brenda Votto. On July 14, 2000, the Votto defendants filed an apportionment complaint against Martin Herasimovich and John Herasimovich, doing business as Yalesville Lawn and Garden Power Equipment ("Yalesville") and Husqvarna Forest and Garden Company, Husqvarna USA and White Consolidated
CT Page 11651
Industries, Inc. (collectively "Husqvarna").

Pursuant to section 52-102b (d) of the Connecticut General Statutes, the plaintiffs filed an amended complaint asserting direct claims against Yalesville and the Husqvarna defendants. Yalesville sold the lawn tractor to John Votto; the Husqvarna defendants designed, manufactured and distributed the subject tractor.

The operative complaint is the second amended complaint dated May 7, 2001. The counts directed against the Votto defendants allege that the parents were negligent in allowing their minor son to operate the tractor, by failing to supervise him and by failing to provide their son with sufficient information and training as to the use of the tractor. It is alleged that Stephen Votto was negligent in failing to keep the lawnmower under control and by allowing Shawn Skrzyniarz to sit on the hood of the tractor while it was in operation. The allegations against the Husqvarna defendants include, inter alia, failure to provide a labeled and reasonably acceptable cut off switch for the operation of the mower blades, failure to equip the tractor with a continuous pressure pedal or hand pressure device which would require affirmative activity on the part of the operator to keep the mowing blades engaged and failure to provide adequate warnings as to the operation of the lawn tractor.

The Husqvarna defendants filed an answer to the plaintiffs' second amended complaint and a cross claim dated June 13, 2001 against the Votto defendants. The cross claim alleges that the Husqvarna defendants, if adjudged to be liable to the plaintiffs, are entitled to full indemnification> from the Votto defendants because the negligence of the

Votto defendants, in failing to supervise Stephen Votto in the operation of the lawn tractor and for allowing Shawn Skrzyniarz to ride on the hood of the lawn tractor, was the direct, immediate cause of the accident and plaintiffs' injuries.

By motion dated June 25, 2001, the Votto defendants move to strike the cross claim of the Husqvarna defendants. The court heard argument on the motion to strike on August 21, 2001.

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint [or pleading] . . . to state a claim upon which relief can be granted." (Citation omitted; internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293 (1997). The role of the trial court in ruling on a motion to strike is "to examine the [pleading], construed in favor of the [pleading party], to determine whether the [pleading party has] stated a legally sufficient cause of action." (Citation omitted; internal quotation marks omitted.) Dodd v. Middlesex

CT Page 11652

Mutual Assurance Company, 242 Conn. 375, 378, 698 A.2d 859 (1997). "In ruling on a motion to strike, the court is limited to the facts alleged in the [pleading]." (Citation omitted; internal quotation marks omitted.) Faulkner, supra, 580. "A motion to strike is properly granted if the [pleading] alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992).

The allegations in the cross claim of the Husqvarna defendants are based on principles of common law <indemnification>; there is no claim of contractual <indemnification>. The plaintiffs' claims against the Husqvarna defendants, as conceded by counsel at the time of oral argument, are product liability claims for defective design and failure to warn. The plaintiffs' claims against the Votto defendants, as noted above, are negligence claims. The actions of the Votto defendants which are alleged in the cross claim to be the direct and immediate cause of the plaintiffs' injuries are the same alleged acts of negligence detailed in the plaintiffs' second amended complaint. The Votto defendants contend that the principles of common law <indemnification> do not apply here because the Votto defendants were not in <exclusive> <control> of the situation.

"[I]f a claim for <indemnification> is grounded in tort, reimbursement is warranted only upon proof that the injury resulted from the `active or primary negligence' of the party against whom reimbursement is sought." Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 74, 579 A.2d 26 (1990). In order to prove active or primary negligence and recover as indemnitees, the Husqvarna defendants are required to satisfy the four criteria set forth in Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405, 416, 207 A.2d 732 (1965). The Husqvarna defendants would have to prove that at the time of the accident: 1) the Votto defendants were negligent; 2) the Votto defendants' negligence, rather than the actions chargeable to the Husqvarna defendants, was the direct, immediate cause of the accident and the resulting injuries; 3) the Votto defendants were in control of the situation to the exclusion of the Husqvarna defendants; and 4) the Husqvarna defendants did not know of the negligence of the Votto defendants, had no reason to anticipate it, and could reasonably rely on the Votto defendants not to be negligent.

Control is an essential element of primary negligence. Kaplan, supra, 416-417. Ordinarily, the absence or presence of <exclusive> <control> is a question of fact. Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 704, 694 A.2d 788 (1997); Weintraub v. Richard Dahn, Inc., 188 Conn. 570, 573, 452 A.2d 117 (1982). However, in certain circumstances, in light of the facts alleged, a court may come to the conclusion that no reasonable juror could conclude that a certain party had <exclusive> <control> of the

juror could conclude that a certain party had <exclusive> <control> of the
CT Page 11653
situation. In such a case, the issue becomes a question of law.
Skuzinski, supra, 705.

In the Skuzinski case, the plaintiff filed a personal injury action
against Bouchard, the owner and operator of a truck. The plaintiff was
struck by the truck when he exited a liquor store owned by Clearview and
proceeded to walk in the street adjacent to Clearview's business. The
plaintiff walked in the street because Clearview failed to remove the snow
from the sidewalk in front of its building. Bouchard filed a third party
complaint against Clearview for common law <indemnification>. The
Connecticut Supreme Court upheld the decision of the trial court in
striking the third party complaint because, as a matter of law, Clearview
was not in <exclusive> <control> of the situation.

The facts as alleged in the present case, taken to be true for purposes
of this motion to strike, are even more compelling than the facts in the
Skuzinski case for concluding the Votto defendants were not in <exclusive>
<control> of the situation. The Husqvarna defendants will be found liable
only if they have manufactured, designed or distributed a defective
product. If the plaintiffs fail to prove defective design or failure to
provide adequate warnings, the Husqvarna defendants will prevail and
<indemnification> will not be an issue. Conversely, if the Husqvarna
defendants are found liable under the product liability act, it is beyond
cavil that the Votto defendants, as purchasers of that product, were not
in control of the design, manufacture or distribution of the product. No
reasonable juror could find that the Votto defendants had <exclusive>
<control> over that situation. For this reason, the court finds the issue
of control to be a question of law and finds that the Votto defendants
were not in control of the situation to the exclusion of the Husqvarna
defendants.[fn1]

The motion of the Votto defendants to strike the cross claim of the
Husqvarna defendants is granted.

BY THE COURT

Koletsky, J.

[fn1] The unusual procedural posture of this case requires comment. The
Husqvarna defendants are represented by a Rhode Island attorney admitted
pro hac vice when a motion was filed by another attorney employed by the
same Rhode Island firm, which attorney is also a member of the
Connecticut bar. The motion, filed before transfer to the Complex
Litigation Docket, was filed in July of 2000 and claimed to be based on
P.B. Sec. 24, a designation abandoned in 1998.
CT Page 11654

When the apportionment complaint was filed, it was expertly and
exquisitely drafted to appear to be a negligence complaint, when it may
well sound in product liability. The Husqvarna defendants, rather than
filing a motion to strike the apportionment complaint, under the
authority of Paul v. McPhee Electrical Contractors, 46 Conn. App. 18,
698 A.2d 354 (1997), C.G.S. Sec. 52-572h (o), and Allard v. Liberty Oil
Equipment Co., 253 Conn. 787, 756 A.2d 237 (2000), filed instead what was
termed an "Answer to the Third Party Complaint", with a jury claim
endorsed thereon, along with numerous items new to Connecticut
procedure.

Since plaintiffs have now pleaded over against the Husqvarna defendants,
and that complaint has been answered, the court feels constrained to rule
on the instant motion, but does wish to point out the inevitable
procedural quagmire being created by out-of-state counsel's unfamiliarity
with Connecticut procedure.

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 4

## Connecticut Trial Ct. Unpublished Decisions

SATULA v. YALE UNIVERSITY, No. CV-97-0404649-S (Dec. 7, 1998)

JOSEPHINE SATULA V. YALE UNIVERSITY, ET AL

*1998 Ct. Sup. 14263, 23 CLR 433*

No. CV-97-0404649-S

Superior Court

Judicial District of New Haven at New Haven

December 7, 1998

**MEMORANDUM OF DECISION
ON CROSS-CLAIM DEFENDANT'S MOTION TO STRIKE**

JONES, J.

The main action results from an accident that occurred
September 9, 1995 in which plaintiff Josephine Satula> fell and
was injured while walking on a tiled patio floor at the premises
of the Joseph Slivka Center for Jewish Life at Yale in New Haven,
situated at 80 Wall Street — property owned by Yale University.
Ms. ‹Satula› alleges that the improper design and construction of
the tiled patio floor caused her accident. The complaint consists
of one count of negligence against each of five defendants: Yale
University; The Friends of Yale Hillel Foundation Inc.; the
architectural firm of Roth and Moore, Inc. (Roth and Moore); The
Stone Building Company (Stone); and Dimeo Construction Company
(Dimeo). Stone was the general contractor on the Slivka Center
project, and Dimeo was a subcontractor and the installer of the
patio floor.

Subsequent to the filing of the main complaint, defendants
CT Page 14264
Stone and Dimeo filed a revised cross-complaint against fellow
defendant Roth and Moore seeking an indemnification judgment for
any liability which may result from Ms. ‹Satula›'s action. As
cross-claim plaintiffs, general contractor Stone and
subcontractor Dimeo also seek reimbursement of expenses and costs
of investigating and defending the action. They also seek
attorney fees and money damages. The architectural firm of Roth
and Moore responded by moving to strike the cross-claim on the
ground of legal insufficiency.

A motion to strike may be filed when a party wishes to
contest the legal sufficiency of the allegations of a complaint,
including a cross-claim, to state a claim upon which relief may
be granted. *CT Practice Book* Sec. ⸱⸱⸱⸱. While no facts can be
alleged in a motion to strike *Blanchard v. Nichols*,
⸱⸱⸱ Conn. ⸱⸱⸱, 392, ⸱⸱ A.2d ⸱⸱⸱ (1949), the facts alleged in a
cross-complaint are to be construed in the most favorable way for
the cross-complainant. See *Amodio v. Cunningham*,
⸱⸱⸱ Conn. ⸱⸱, 438 A.2d 816, 817 (1980).

In their cross-claim, general contractor Stone and
subcontractor Dimeo allege that if any liability is proven, it
must be attributed to the negligent conduct of architect Roth and
Moore. Stone and Dimeo allege that at all times they constructed

Moore. Stone and Dimeo allege that at all times they constructed and built the patio floor in accordance with design and construction specifications imposed upon them by Roth and Moore. They allege that Roth and Moore had exclusive control over the situation and that Roth and Moore's negligence was active, direct, and primary, while their own conduct was passive and secondary. They claim they had no reason to know of, or to anticipate, negligence on the part of Roth and Moore, and they claim that they relied on Roth and Moore not to be negligent. The court is obliged to construe the cross-complaint "in the manner most favorable to sustaining its legal sufficiency." *Michaud v. Warwick*, 209 Conn. 407, 408, 551 A.2d 738 (1988).

Generally, contribution from a joint tortfeasor is not permitted *Cruz v. Periu*, 486 A.2d 888, 667 (Conn. Super. 1984), citing *Fox v. Fox*, 168 Conn. 592, 595, 362 A.2d 854 (1975), but an exception exists allowing indemnification from a party charged with active or primary negligence by a party who is secondarily negligent. *Cruz* at 667, citing *Kaplan v. Merberg Wrecking Corporation*, 152 Conn. 405, 415-10, 207 A.2d 732 (1965). To seek indemnity on such ground, the charging party must show that (1) the indemnitor was negligent; (2) the indemnitor's negligence
CT Page 14265
(rather than the indemnitee's) was the direct, immediate cause of the injury; (3) the indemnitor was in control of the situation to the exclusion of the indemnitee; (4) the indemnitee did not know of the indemnitor's negligence, had no reason to anticipate it, and could reasonably rely on the indemnitor not to be negligent. *Kaplan* at 738.

General contractor Stone and subcontractor Dimeo have pled the necessary four elements under the *Kaplan* test. However, architect Roth and Moore argues that the cross-complaint is legally insufficient on the element of exclusive control. The supreme court defined "exclusive control over `the situation' as exclusive control over the dangerous condition giving rise to the accident." *Skuzinski v. Bouchard Fuels Inc, Inc.*, 240 Conn. 694, 706, (1997). According to Roth and Moore, the mere admission by Stone and Dimeo that they constructed and built the patio precludes a reasonable juror from finding that the architectural firm could have exercized exclusive control of the situation. Roth and Moore further argue that the court must strike the crossclaim as a matter of law, because exclusive control by the architect is a factual impossibility under these circumstances.

To support its position, Roth and Moore cite the cases of *Skuzinski v. Bouchard Fuels, Inc. supra*, and *Torrington Country Club v. Ply Gem*, 12 CONN. L. RPTR. 53, 1994 WL 320228 (Doc. No. CV92 0061340; Conn. Super. 1994), but neither case is persuasive. Both cases involved third-party complaints, where main action defendants impleaded third-party defendants for indemnification. In each case a motion to strike was granted, because the defendant/third party plaintiff failed to allege facts sufficient to establish that the third-party defendant could have had exclusive control over the dangerous condition giving rise to the accident. In the present case, Stone and Dimeo, as contractors, clearly allege that architect Roth and Moore controlled the design and specifications of the project and that the design and specifications were at all times followed. Considering the circumstances of the working relationship among the parties, the facts alleged by Stone and Dimeo fall within the domain of reasonable possibility. Such factual assertions do not constitute unsupported legal conclusions, and they are regarded as correct for the purposes of the motion to strike.

In *Skuzinski v. Bouchard Fuels, Inc., supra*, the court held that, as a matter of law, a business owner who exercised exclusive control in failing to shovel snow from a sidewalk could

CT Page 14266

not have exercised exclusive control over an accident caused by an unrelated party that occurred in an adjoining public roadway. The facts in *Skuzinski* offered a rare example of "special circumstances" where the issue of exclusive control became a matter of law. The court ruled that any reasonable juror could not conclude that the party failing to shovel had exercised exclusive control over the roadway accident. The instant set of circumstances are not "special", nor do they offer a rare example where exclusive control is factually impossible. The architectural firm of Roth and Moore admits direct involvement in the design and specifications of the tiled patio floor which is the alleged "dangerous situation" giving rise to the accident.

In *Torrington Country Club v. Ply Gem, supra*, — a product liability action and not an action in negligence — the court determined that a third party defendant-architect could not have exercised exclusive control over a defectively manufactured product as a matter of law, even though the architect had specified use of the product. The architect's responsibility in that case, the court reasoned, could only have been secondary to the manufacturer of the defective product. However, the instant case provides no allegations of defectively manufactured products, nor does the present question of exclusive control involve the tile or grout manufacturers. The architectural firm of Roth and Moore asserts the impossibility of their exclusive control based only on the fact that someone else physically put the tiles and grout in place. Roth and Moore fails to provide authority to justify this assertion.

General contractor Stone and subcontractor Dimeo, on the other hand, have alleged that they performed all work in accordance with the architect's requirements. Their allegations must be accepted as true in considering this motion to strike. Accordingly, for the foregoing reasons, the court finds that the cross-claim of general contractor Stone and subcontractor Dimeo is not legally insufficient.

The motion to strike is denied.

Clarance J. Jones, Judge

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved

# EXHIBIT 5

## Connecticut Trial Ct. Unpublished Decisions

SEDLAK v. NEVILLE, No. CV98 0167678 (Dec. 21, 1999)

MARGARET SEDLAK, ET AL vs. RICHARD M. NEVILLE

*1999 Ct. Sup. 16350*

No. CV98 0167678

Superior Court

Judicial District of Stamford/Norwalk at Stamford

December 21, 1999

### MEMORANDUM OF DECISION RE: MOTION TO STRIKE

D'ANDREA, JUDGE.

The plaintiff Margaret Sedlak alleges that she sustained personal injuries as a result of an attack by a dog owned by the defendant/third party plaintiff Richard Neville. According to the allegations in her complaint, the plaintiff was walking her dog on a leash in a park in New Canaan, Connecticut. While the plaintiff was in the process of unleashing her dog to place him into the open door of her motor vehicle, the third party plaintiffs unleashed dog aggressively approached and attacked the
CT Page 16351
plaintiff and her dog. As the third party plaintiffs dog aggressively approached the plaintiffs leashed dog, the leash on the plaintiffs dog became entangled on the left, master index finger of the plaintiff. The plaintiffs dog responded to the attack by the third party plaintiffs dog and the plaintiffs entangled finger was traumatically amputated by the leash on her dog. The plaintiff alleges that the conduct of the third party plaintiffs dog resulted in a violation of General Statutes § 22-357, the "dog-bite statute."[fn1] The complaint also claims that the plaintiffs injury resulted from the third party plaintiffs negligence or carelessness in a number of ways, including failing to control his dog, failing to keep his dog on a leash, and allowing his dog to roam at large on the land of another while not attending to the dog.

The third party plaintiff filed a third party complaint alleging that he is entitled to indemnification from the third party defendants Petland Discounts, Inc. (Petland), the retailer where the plaintiffs dog leash was allegedly purchased, and Rolf C. Hagen Corp. a/k/a Rolf C. Hagen U.S.A. Corp. (Hagen), the company that allegedly manufactured or distributed the plaintiffs dog leash. The third party plaintiff claims that Hagen and Petland "were in control of the design, manufacture, distribution and sale of the subject leash." Petland has filed a motion to strike the third party complaint against it claiming that Petland was not in exclusive control of the situation, the third party plaintiff was actively negligent, and the negligent conduct alleged by the third party plaintiff differs from the conduct alleged in the plaintiffs complaint.

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . A motion to

strike admits all facts well pleaded; it does not admit legal
conclusions or the truth or accuracy of opinions stated in the
pleadings. . . . [W]hat is necessarily implied in an allegation
need not be expressly alleged." (Internal quotation marks
omitted.) D'Amico v. Johnson, 53 Conn. App. 855, 859,
733 A.2d 869 (1999). However, "[i]n deciding upon a motion to strike . . .
a trial court must take the facts to be those alleged in the
complaint . . . and cannot be aided by the assumption of any
facts not therein alleged." (Citations omitted; internal
quotation marks omitted.) Liljedahl Brothers, Inc. v. Grigsby,
215 Conn. 345, 348, 576 A.2d 149 (1990). The court must "construe
the complaint in the manner most favorable to sustaining its
CT Page 16352
legal sufficiency." (Internal quotation marks omitted.) Jacoby v.
Brinckerhoff, 250 Conn. 86, 89, 735 A.2d 347 (1999).

       "[I]ndemnity involves a claim for reimbursement in full from
one on whom a *primary liability* is claimed to rest. . . ."
(Emphasis in original; internal quotation marks omitted.) Crotta
v. Home Depot, Inc., 249 Conn. 634, 641-42, 732 A.2d 767 (1999).
In order to maintain a common law action for indemnity, a
plaintiff must allege sufficient facts to establish: "(1) that
the other tortfeasor was negligent; (2) that [that] negligence,
rather than [the third party plaintiffs'], was the direct,
immediate cause of the accident and injuries; (3) that [the other
tortfeasor] was in control of the situation to the exclusion of
[the third party plaintiffs]; and (4) that [the third party
plaintiffs] did not know of such negligence, had no reason to
anticipate it, and could reasonably rely on the other tortfeasor
not to be negligent." Skuzinski v. Bouchard Fuels, Inc.,
240 Conn. 694, 698, 694 A.2d 788 (1997).

       First, Petland contends that the court must strike the third
party complaint because the third party defendants were not in
exclusive control of the situation to the exclusion of the third
party plaintiff. The Connecticut Supreme Court has indicated that
"[i]t is plausible to define exclusive control over "the
situation' as exclusive control over the dangerous condition that
gives rise to the accident." Skuzinski v. Bouchard Fuels, Inc.,
supra, 240 Conn. 706. The third party plaintiff has alleged that
Hagen and Petland "were in control of the design, manufacture,
distribution and sale of the subject leash." "The absence or
presence of exclusive control is ordinarily a question of fact."
Gianquitti v. Sheppard, 53 Conn. App. 72, 78, 728 A.2d 1133
(1999). "Nonetheless, special circumstances may give rise to the
question of whether, in light of the facts alleged in the third
party complaint, any reasonable juror could find that the third
party defendants had exclusive control of the situation. Under
such circumstances, this issue becomes a question of law."
Skuzinski v. Bouchard Fuels, Inc., supra, 240 Conn. 705. Based
upon the foregoing allegations, the court is unwilling to
conclude as a matter of law that the third party defendants did
not have "exclusive control of the situation." See Allard v.
Liberty Oil Equipment Co., Superior Court, judicial district of
Hartford, Docket No. 562255 (November 5, 1998, *Peck, J.*) (23
Conn. L. Rptr. 426) (holding that the allegations in the
complaint were sufficient to conclude that the manufacturer of an
alleged defective product could be in exclusive control of the
CT Page 16353
situation). The court concludes that the third party plaintiff
adequately alleged that the plaintiffs dog leash was the
dangerous instrumentality that actually caused the plaintiffs
injury to the plaintiff. Therefore, Petland's motion to strike
the complaint on that basis is denied.

Petland also argues that the court must strike the third party complaint because it purports to be based upon active/passive negligence, but the allegations actually sound in active/active negligence. Connecticut courts "have distinguished between "active or primary negligence," and "passive or secondary negligence. . . ." Indemnity shifts the impact of the liability from passive joint tortfeasors to active ones." (Citation omitted.) Kyrtatas v. Stop & Shop, Inc., 205 Conn. 694, 698, 535 A.2d 357 (1988). "Where two parties are jointly liable in respect to a tort, one of them for the reason that he is the actual wrongdoer, and the other for the reason that the tort constituted a violation of a positive duty, the latter is entitled to recover from the former the amount which he was compelled to pay as damages for the injury. The rationale of this rule is that the latter party is chargeable merely with "constructive fault' and is consequently not in pari delicto with the former. In this point of view, the applicability of the rule is negatived, wherever it appears that the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question." Preferred Accident Ins. Co. of New York v. Musante, Berman and Steinberg Co., 133 Conn. 536, 542, 52 A.2d 862 (1947). Arguably, both the third party plaintiff and Petland are guilty of affirmative misconduct. However, "the question of whether a party is primarily negligent and thereby precluded from indemnification from another tortfeasor is ordinarily one for the trier of fact." Weintraub v. Richard Dahn, Inc., 188 Conn. 570, 573-74, 452 Conn. 117 (1982). But see Adley v. Connecticut Post Ltd. Partnership, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 060913 (January 4, 1999, Corradino, J.) (23 Conn. L. Rptr. 13) (granting a motion for summary judgment on a third party complaint because the court concluded that the third party plaintiffs negligence was active negligence). Based upon the allegations in the complaint and the third party complaint, the court concludes that a reasonable juror could find either Petland or the third party plaintiff primarily responsible for the underlying injury. A reasonable juror could also conclude that the conduct of the third party plaintiff did not constitute "affirmative misconduct." See Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 414-15, 207 A.2d 732
CT Page 16354
(1965). Therefore, Petland's motion to strike the third party complaint on that basis is denied.

Petland also contends that the type of tortious conduct alleged by the third party plaintiff differs from the conduct alleged by the plaintiff, and, therefore, the third party plaintiff is not entitled to indemnification. In Kaplan v. Merberg Wrecking Corp., supra, 152 Conn. 408, the plaintiffs were owners of a building that was to be demolished by the defendant. During the demolition, certain pedestrians sustained personal injuries when struck by a portion of the front wall of the building. Id. The defendants settled all claims with the injured pedestrians. Id. The injured pedestrians sued the plaintiffs for personal injuries and wrongful death due to the plaintiffs' own negligence.[fn2] Id. The jury found the plaintiffs liable for $22,500 over and above the amount of settlements the injured pedestrians had received.[fn3] Id. Subsequent to this verdict, the plaintiffs sought indemnity from the defendant. Id. The Connecticut Supreme Court held that the trial court in the indemnity action improperly concluded that the personal independent negligence of the plaintiffs established in the Bonczkiewicz case would prohibit the plaintiffs from seeking indemnification from the defendant. Id., 415. "An indemnitee may be chargeable with personal negligence, independent of any

negligence of the indemnitor, and still not be chargeable with
active or primary negligence. Personal independent negligence may
be passive or secondary negligence. It need not necessarily be
active or primary negligence." Id.

The plaintiff in the present case has alleged personal
independent negligence against the third party plaintiff. While a
court could conclude that his negligence in failing to control
his dog, failing to keep his dog on a leash, and allowing his dog
to roam at large on the land of another, may have been a
proximate cause of the underlying injury, the trier of fact must
determine whether this activity was passive or secondary
negligence. Kaplan v. Merberg Wrecking Corp. , supra,
152 Conn. 415. Based upon Kaplan, it is possible for the trier of fact to
conclude that the third party plaintiff is entitled to
indemnification because the dog leash may have been the primary
cause of the injury. Id. Petland's claim that the third party
plaintiffs allegations of negligence must be based upon the same
allegations of negligence as those in the plaintiffs complaint
lacks authority, and ignores the proposition set forth in Kaplan
that personal independent negligence does not foreclose
CT Page 16355
indemnification. Accordingly, Petland's motion to strike the
third party complaint is denied.

So Ordered.

D'ANDREA, J.

[fn1] General Statutes § 22-357 states in relevant part: "If any
dog does any damage to either the body or property of any person,
the owner or keeper, or, if the owner or keeper is a minor, the
parent or guardian of such minor, shall be liable for such
damage, except when such damage has been occasioned to the body
or property of a person who, at the time such damage was
sustained, was committing a trespass or other tort, or was
teasing, tormenting or abusing such dog. . . .

[fn2] The suit between the plaintiffs and the injured pedestrians
will be referred to as "the Bonczkiewicz case." In the
Bonczkiewicz case, "the jury were instructed that the
[plaintiffs] would not be liable for any negligence of [the
defendant], an independent contractor, in carrying out the
demolition contract, including, of course, any negligence in
failing to protect users of the sidewalk. The jury were also
instructed that if they found that the contract called for work
which, even if it was performed with due care, would obviously
and naturally, even though not necessarily, expose pedestrians on
the sidewalk adjacent to the front wall of the building to
probable injury unless preventive measures were taken, and that
the present plaintiffs knew or in the exercise of reasonable care
should have known that the work was of that character and
negligently failed to take preventive measures or cause them to
be taken, the present plaintiffs would be liable forthe injuries
proximately caused by their negligence." Kaplan v. Merberg
Wrecking Corp. , supra, 152 Conn. 414.

[fn3] The Connecticut Supreme Court agreed with the trial court's
conclusion that "[t]he verdict against the [plaintiffs]
necessarily established as to them that they were negligent in
failing to take preventive measures to avoid injury to passing
pedestrians and that this negligence was a proximate cause of the
injuries and death for which damages were awarded in the first
action. . . . [T]he verdict in the Bonczkiewicz case established,
as to these plaintiffs, that the negligence with which they were

found chargeable was personal negligence on their part,
independent of any negligence or lack of it on the part of the
CT Page 16356
defendant." <u>Kaplan</u> <u>v. Merberg Wrecking Co.</u>, supra,
152 Conn. 414-15.

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved