UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SHAWN POULIOT,
   Plaintiff,
      v.

PAUL ARPIN VAN LINES, INC.
AND ARPIN LOGISTICS, INC.,
THE FESTO CORPORATION, MICHAEL
D. KOVAC, D/B/A TRANS-EXPO
INTERNATIONAL AND ERICA
RAMIREZ, IN HER CAPACITY AS
EMPLOYEE OF TRANS-EXPO
INTERNATIONAL,
   Defendants.

2004 FEB 18 A 10: 56

C.A. No. 3:02 CV1302 (DJS)

February 17, 2004

### REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT FESTO CORPORATION TO COMPEL PLAINTIFF'S RESPONSES TO FIRST SET OF INTERROGATORIES AND FIRST SET OF DOCUMENT REQUESTS

The Court should reject the excuses offered by Plaintiff for his unilateral refusal to respond to a <u>single</u> interrogatory or to produce a <u>single</u> document to Defendant The Festo Corporation ("Festo"). Plaintiff should be compelled to fully answer Festo's interrogatories; to produce all the requested documents; and to produce the documents well in advance of upcoming depositions.

    A.    <u>Interrogatory No. 14 and Related Documents (Relating to Plaintiffs' Experts)</u>

In his Memorandum in Opposition to Festo's Motion to Compel ("Plaintiff's Memorandum" or "Pl. Mem."), Plaintiff concedes that the information and material requested by Festo relating to the 17 experts disclosed by Plaintiff to date is relevant, and that Festo is entitled

**ORAL ARGUMENT REQUESTED**
**NO TESTIMONY REQUIRED**

to this information and material.[1]  See Pl. Mem. at 2 ("plaintiff will certainly provide the files relied upon by [his] experts").

Despite this concession, Plaintiff has failed to respond at all to Interrogatory No. 14, which seeks specific relevant information regarding each of Plaintiff's 17 disclosed expert witnesses – not just the three experts for whom Plaintiff has produced expert reports.  Plaintiff has represented to this Court that the 14 other expert witnesses (essentially, health care providers to Plaintiff) will provide expert testimony "either in person or by written report" as to "the causation of Mr. Pouliot's injuries" and other issues, despite no reports having been produced by these expert witnesses.  See Plaintiff's Disclosure of Expert Witnesses (attached hereto as **Exhibit A**), at 2.  Festo is entitled to the information requested in Interrogatory No. 14 as to these 14 expert witnesses.

This information is all the more necessary in that certain of Plaintiff's other experts also rely on it in forming their expert opinions.  Lawrence Forman, Plaintiff's "rehabilitation expert," states in his report that his testimony will be based in part "on information obtained from the medical and other care providers for the plaintiff."  See Plaintiff's Disclosure of Expert Witness Lawrence J. Forman, at 2.  In fact, Mr. Forman lists "Medical Needs & Physical Assessment Forms" completed by four of the 14 remaining expert witnesses as documents upon which he relied in reaching his expert opinions.  Likewise, Gary Crakes, Plaintiff's "economist expert," states that he relied in part on the expert report prepared by Lawrence Forman in reaching his expert opinion, thereby indirectly relying on that same "information obtained from the medical and other care providers" listed by Mr. Forman.  See Plaintiff's Disclosure of Expert Witness Gary M. Crakes, "Appraisal of Economic Loss," at 2.

---

[1] Plaintiff initially claimed that such information is "work product" that is privileged from discovery, a claim he now apparently has abandoned.  See Plaintiff's Objections to Defendant Festo Corporation's First Set of Interrogatories

2

Plaintiff has disclosed 17 expert witnesses. Festo is entitled to know the bases for the testimony and conclusions of each of these experts. Plaintiff should be required to provide complete responses to Interrogatory No. 14.

Plaintiff likewise has failed to completely respond to Interrogatory No. 14 even as to the three experts for whom Plaintiff has produced expert reports. While certain of the information requested in Interrogatory No. 14 is included in these expert reports, the reports themselves are incomplete, as Plaintiff has failed to produce all of the documentation relied upon by these experts. Plaintiff's simply referencing the three expert reports is not a sufficient response to Interrogatory No. 14.

As to the documents requested by Festo relating to Plaintiff's experts, Plaintiff again readily concedes that he is under an obligation to produce these materials, but asserts that any documents related thereto need be produced <u>only at the time of these experts' depositions</u>. See Pl. Mem. at 2 ("all non-privileged components of [his experts'] files will be made available for review <u>at the depositions</u>"); at 2 ("plaintiff will certainly provide the files relied upon by the experts <u>at the time of the deposition</u>") (emphasis added).

Plaintiff's response is inadequate for at least two reasons. First, Plaintiff cannot unilaterally limit his document production to only those experts whose depositions have been noticed. Festo's document request in connection with Interrogatory No. 14 seeks the files underlying the opinions of <u>each</u> of Plaintiff's disclosed experts, not just those whose depositions have presently been scheduled. Festo is entitled to production of these documents (as Plaintiff concedes, when he states that he will "certainly provide" such files). Festo is entitled to these materials for each of Plaintiff's disclosed experts – each of whom, as Plaintiff has represented, will offer an opinion as to the "causation of Mr. Pouliot's injuries," among other opinions.

---

Dated Dec. 16, 2003, at 6 (objecting that such material "is work product").

Indeed, Festo cannot make an informed determination as to whether to depose the additional expert witnesses without reviewing the underlying bases for these witnesses' expert testimony.

Second, Plaintiff cannot unilaterally decide that he will wait to produce the files of Messrs. Crake, Forman and Ruhl until the depositions of these experts. See Pl. Mem. at 2 (experts' files "will be made available for review at the [expert] depositions"). Plaintiff's complete responses to Festo's interrogatories and document requests were due on January 15, 2004, weeks before the depositions of Plaintiff's experts were to be completed. Festo specifically requested that information and materials related to Plaintiff's expert witnesses be produced by this date so that Festo would have sufficient time to copy, review and analyze the information – together with its own experts – <u>well in advance of the expert witness depositions</u>.

Plaintiff's attempt to withhold production of this information and material until the depositions themselves is nothing but a blatant attempt to handicap Festo's ability to properly examine these experts on the bases of their expert opinions. Plaintiffs' experts' reports – from a "rehabilitation expert," an economist and a mechanical engineer – are highly technical, detailed and lengthy. The Ruhl report, for example, runs 10 single-spaced pages, and offers conclusions based on at least five separate tests run on the liftgate at issue in this lawsuit. The Crakes report involves calculation of the alleged lifetime unimpaired earning capacity of Plaintiff, his purported lifetime impair earning capacity, appropriate discount rates, and other technical variables. The Forman report includes a 29-page "life care plan," with some 165 individual line items; a seven-page "employment section," all of which are governed by two additional pages of "definitions."

Festo would be at a severe and prejudicial disadvantage if it is forced to review these experts' files – on which they purportedly base their detailed and technical expert opinions – for

4

the first time during the depositions themselves, and without having these files reviewed in advance by Festo's own experts. Festo should not be forced to organize, review, analyze, and formulate questions regarding the experts' underlying files, for the first time, in the course of these experts' depositions. Such a procedure is inherently unfair.

Such a procedure is also inherently wasteful. Instead of conducting expeditious examinations of expert witnesses, the parties would be forced to spend precious time reviewing documents, and discussing any disputes about the completeness of production. This concern is compounded by the fact that the near-entirety of Plaintiff's experts are located out-of-state (in Arizona, Florida, and Ohio), and are available only on specific days – some, only for an extremely limited time on those specific days. For example, counsel has represented that Dr. Slezak is available only for a total of two hours – making it extremely difficult, if not impossible, to review Dr. Slezak's files for the first time <u>and</u> conduct a thorough examination of this expert witness.

Plaintiff is claiming tens of millions of dollars of damages in this lawsuit. Plaintiff's claims may hinge in large part on the testimony of Plaintiff's expert witnesses. Festo should not be forced to conduct discovery depositions of Plaintiff's many experts without sufficient time, <u>in advance of the depositions</u>, to review, analyze and formulate questions regarding the bases for these experts' opinions. While it may be Plaintiff's "standard practice" to handicap his opponents by springing documents on them only during the course of an expert's deposition, see Pl. Mem. at 2, such a practice is prejudicial and wasteful, and flies in the face of Plaintiff's conceded obligation to produce the files within the time limits set forth by the Federal Rules of Civil Procedure.

In sum, Plaintiff should be ordered to (1) provide complete responses to Interrogatory No. 14 for each of his 17 disclosed expert witnesses; (2) produce the files relating to the expert opinions of each of his 17 disclosed expert witnesses; and (3) produce these files immediately, as the depositions of Plaintiff's experts are scheduled for as early as March 12, 2004.

B.  Interrogatory Nos. 2-11 and Related Documents (Relating to the Bases for the Allegations in Plaintiff's Fifth Amended Complaint)

Plaintiff represents that he "readily concedes that he is required to respond to [Interrogatory Nos. 2-11]," which simply and straightforwardly request the bases for Plaintiff's allegations against Festo. Pl. Mem. at 2. Much like Plaintiff's unilateral refusal to make his experts' files available in advance of the experts' depositions (if at all), Plaintiff has unilaterally refused to answer Interrogatory Nos. 2-11 until a time of his choosing – again, until after the depositions of his experts. See Pl. Mem. at 2 (advocating that Festo conduct expert depositions and only "[t]hereafter, if necessary, the plaintiff can fully respond" to the interrogatories).

Plaintiff should be ordered to answer Interrogatory Nos. 2-11. This Court has very recently ordered Plaintiff to "provide a full and fair response" to interrogatories propounded by Defendant Arpin Logistics, Inc., which, like Festo's Interrogatory Nos. 2-11, seek the factual basis for Plaintiff's claims. Compare Arpin Interrogatory No. 61 ("Identify the facts upon which you rely to support the allegations as set forth in paragraph 4 of Counts One and Two of your Third Revised Complaint") with Festo Interrogatory No. 2 ("Explain fully and in detail the factual basis for Plaintiff's claims that Festo 'failed to provide a cargo ready for shipment on wheels with an adequately safe braking system on the Learnline 2000 unit at any time prior to the accident,' as alleged in Paragraph 18(b) of Count Three of Plaintiff's Fifth Amended Complaint, and identify any documents in your possession, custody or control in

support thereof").

As the Court noted in its February 9, 2004 Order, the Arpin interrogatories seeking the factual basis for Plaintiff's claims "are proper under Rule 26 and, absent a legitimate objection or claim of privilege, Pouliot is obligated to provide a full and fair response to each question." See February 9, 2004 Order, at 1. Moreover, "to the extent that Pouliot's responses to [Arpin] interrogatories Nos. 61-68 can be construed as . . . general objections, those objections are overruled." Id.

Festo's Interrogatory Nos. 2-11, like the Arpin interrogatories, seek the factual bases, if any, for Plaintiff's claims. Festo's interrogatories, like the Arpin interrogatories, are proper under Rule 26 and merit a "full and fair response."

Plaintiff's assertion that Festo should wait to obtain the requested information from Plaintiff's experts in deposition runs counter to the discovery procedures set forth in the Federal Rules. As indicated in Rule 26, Plaintiff may not avoid his obligation to respond to interrogatories and document requests by claiming that the information should first be sought via deposition. See Fed.R.Civ.P. 26(d) ("methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery").

Equally unavailing is Plaintiff's claim that it need answer the interrogatories only "near or at the close of discovery." Festo has not yet taken Plaintiff's deposition. In advance of that deposition, Festo has served interrogatories that seek the facts upon which Plaintiff relies to support his allegations against Festo. Plaintiff should be required to provide the factual bases, if any, for his allegations, such that Festo may conduct a thorough examination of Plaintiff. See New Colt Holding Corp. v. RJG Holdings of Florida, Inc., No. Civ.3:02CV173(PCD), 2003 WL

7

22327167 (D. Conn. June 17, 2003), at *3 (ordering defendant to "identify[ ] facts in support of its position" in response to interrogatory; "Plaintiffs sought the factual underpinnings of defendants' allegations, not a recitation of legal theory").[2]

In sum, Plaintiff should be order to (1) provide immediate and complete responses to Interrogatory Nos. 2-11, and (2) produce documents identified in his responses.

### C. Interrogatory No. 1 (Relating to the Identity of the Persons Responding to the Interrogatories)

Plaintiff's Memorandum does not contest the appropriateness of Festo Interrogatory No. 1. Thus, Plaintiff should be ordered to provide a full and fair response to this interrogatory.

### D. Interrogatory No. 13 and Related Documents (Relating to Persons with Discoverable Information)

Plaintiff's Memorandum asserts that Interrogatory No. 13 improperly and prematurely asks for the list of Plaintiff's trial witnesses. Pl. Mem. at 1. Plaintiff is mistaken. As set forth in Festo's original Memorandum of Law, Interrogatory No. 13 seeks the identification of persons who have or may have discoverable information that Plaintiff may use to support his claims, and the nature of the information. Festo has requested this information so that it may make a determination of the need to seek discovery from these individuals. Such a request is certainly "reasonably calculated to lead to the discovery of admissible evidence," as required under

---

[2] Nor are Festo's interrogatories "premature," as Plaintiff has had significant time to develop the factual bases for his allegations against Festo. Plaintiff filed his initial complaint on June 27, 2002. Since that time, the parties, and the Plaintiff, have engaged in substantial discovery, including interrogatories, document requests, and numerous depositions. Indeed, Plaintiff recently produced reports from three of his experts, who base their conclusions in large part on the substantial discovery conducted to date. Certainly, if Plaintiff has sufficiently developed the factual bases for his claims to be able to produce expert reports in support of those claims, Plaintiff can be required to respond to Festo's interrogatories seeking those same factual bases. See, e.g., Capacchione v. Charlotte-Mecklenburg Schools, 182 F.R.D. 486, 489-90 (W.D.N.C. 1998) (ordering response to interrogatories seeking factual bases for defendant's claims "at or near the same" time as production of defendant's experts' reports, because "the preparation of [defendant's] expert witness report(s) undoubtedly will involve an analysis of the factual information requested by [plaintiff] in its contention interrogatories").

Fed.R.Civ.P. 26. See, e.g., In re Grand Casinos, Inc., 181 F.R.D. 615, 618 (D. Minn. 1998) (ordering response to interrogatory seeking identification of "each person known or believed by you to have personal knowledge of any facts at issue or involved in the captioned lawsuit" and "the facts and observations within each person's knowledge;" interrogatory is "calculated to discover information – namely the identification of witnesses – which is plainly discoverable").

Festo does not presently seek Plaintiff's trial "witness list;" there is nothing in Interrogatory No. 13 referring to witness lists or trial. Plaintiff's original objection – that identification of persons with discoverable information is "work product," which objection Plaintiff appears to have abandoned – is in any event meritless. The names of persons known to have discoverable information is simply not work product. Plaintiff should be ordered to provide a full and fair response to Interrogatory No. 13.

      E.     Interrogatory No. 12 and Related Documents
            (Relating to Identification of Trial Exhibits)

Plaintiff's objection to Interrogatory No. 12 is that identification of his trial exhibits constitutes "work product." See Plaintiff's Objections to Defendant Festo Corporation's First Set of Interrogatories Dated Dec. 16, 2003, at 5. Yet in his Memorandum in Opposition to Festo's Motion to Compel, Plaintiff makes no claim of work product; indeed, Plaintiff agrees that this information "will be produced." See Pl. Mem. at 2. Instead, Plaintiff advances the new argument that Interrogatory No. 12 is premature. See Pl. Mem. at 2-3.

Plaintiff has properly abandoned his sole objection based on work product, as the information sought does not constitute work product. Plaintiff did not object that Interrogatory No. 12 was premature. To the extent Plaintiff can presently respond to Interrogatory No. 12, he should be ordered to do so. To the extent he cannot yet respond because "virtually all" of