# EXHIBIT 4

**Page 13**

1  A. Yes.
2  Q. When was that?
3  A. When we lived in South Carolina we owned
4  a house and he told me that he threw a diaper
5  in the toilet and flushed it.
6     MR. GRADY: Can you read that back
7  again?
8     (The last answer was read back.)
9  BY MR. GRADY:
10 Q. Okay. And did he tell you anything
11 about staging an accident so that there would
12 be insurance proceeds?
13 A. No.
14    MR. STRATTON: Objection.
15 BY MR. GRADY:
16 Q. He didn't? What did you mean when he
17 threw the diaper in the toilet?
18 A. He told me after, a long time after the
19 fact.
20 Q. After that?
21 A. After it happened, yes. We assumed it
22 was my daughter. I assumed it was my daughter.
23 Q. I see. And so was there insurance
24 proceeds as a result of that?
25 A. Yes.

**Page 14**

1  Q. And how much money was involved?
2  A. I don't remember the exact amount. It
3  wasn't a whole lot.
4  Q. Okay. Was there any difficulty with
5  impotency on his part during the marriage?
6  A. I'm sorry. I don't understand your
7  question.
8  Q. Okay. Do you know whether or not your
9  husband ever took Viagra during the course of
10 his marriage to you?
11 A. One time, yes.
12 Q. He did?
13 A. One time.
14 Q. And do you remember when that was?
15 A. No.
16 Q. Do you know why he took the Viagra?
17 A. No, I don't know why he did.
18 Q. Do you know what Viagra is?
19 A. Yes, I know what Viagra is.
20 Q. Now, were there any discussions during
21 the course of your marriage about any of his
22 medical conditions other than the alcohol
23 problem that he had?
24 A. Yes.
25 Q. What -- what were those discussions?

**Page 15**

1  A. He had to take medication and -- and he
2  hardly ever would.
3  Q. And what kind of medication was it?
4  A. Tegretol and Lithium.
5  Q. Did you ask him during the course of
6  your marriage to take that medication?
7  A. Yes.
8  Q. And was he depressed?
9  A. Yes.
10 Q. During the entire marriage was he
11 depressed?
12 A. He had his ups and downs.
13 Q. Was divorce discussed before October
14 23rd, 2001?
15 A. Yes.
16 Q. And how early on was divorce discussed?
17 A. It was always discussed.
18 Q. It was always discussed?
19 A. Yes.
20    MR. GRADY: Now, I'd like to have
21 these two documents marked for identification.
22    (Defendant's Exhibits Bibbee A
23    and B were marked for identification.)
24 BY MR. GRADY:
25 Q. Defendant's Exhibit A is a joint tax

**Page 16**

1  return, Shawn L. Pouliot and Charity L. Pouliot
2  for the year 1999. Have you ever seen that tax
3  return before?
4  A. Yes.
5  Q. Did you sign that tax return?
6  A. No.
7  Q. Is there any reason why you didn't sign
8  the tax return?
9  A. Yes.
10 Q. What was the reason?
11 A. Because he didn't file it.
12 Q. Because it wasn't filed?
13 A. No.
14 Q. I'll show you another tax return,
15 Defendant's Exhibit B, the tax return for the
16 year 2000 and ask if you've ever seen that tax
17 return before?
18 A. Uh-huh.
19 Q. You answered yes?
20 A. Yes.
21 Q. Did you sign that tax return?
22 A. No.
23 Q. Why didn't you sign that return?
24 A. Because it wasn't filed.
25 Q. It wasn't filed. When you say it wasn't

**Page 17**

1  filed, you mean it wasn't filed with the
2  Internal Revenue Service?
3     A. Yes.
4     Q. Did -- did Shawn ever tell you how the
5  accident happened?
6     A. All I know is that something fell on
7  him. That's -- that's all I know.
8     Q. Okay. Has Shawn ever threatened you?
9     A. Yes.
10    Q. And when is the first time he threatened
11 you?
12    A. I can't give you a date.
13    Q. Okay. Do you know how many years ago?
14    A. When our divorce proceedings started he
15 was not very nice.
16    Q. When's the last time he threatened you?
17    A. I -- I can't recall when.
18    Q. Is it recent?
19    A. No.
20    Q. When he did threaten you, how did he
21 threaten you?
22    A. He threatened to take my kids away which
23 he did.
24    Q. Prior to October 23rd, 2001, had you
25 ever gone to a lawyer for a divorce?

**Page 18**

1     A. I made an appointment, but I never went.
2     Q. And who was the appointment with?
3     A. My dad made the appointment for me so I
4  don't know the attorney's name.
5     Q. Your father did?
6     A. Yes.
7     Q. Now, you say you're afraid of Mark
8  Pouliot too?
9     A. Yes.
10    Q. Why are you afraid of him?
11    A. Because he's deceitful.
12    Q. He's deceitful?
13    A. Yes.
14    Q. Relative to the tax returns for the
15 years 1999 and 2000 which are represented by
16 Defendant's Exhibit A and B, did you
17 subsequently file tax returns yourself?
18    A. Yes, I did.
19    Q. On your own?
20    A. Yes, I did.
21    Q. When did you do that?
22    A. When I found out those weren't filed.
23    Q. When did you find out these were not
24 filed?
25    A. During my divorce trial.

**Page 19**

1     Q. Do you know why these returns were never
2  filed?
3     A. No.
4     Q. During the course of your marriage did
5  you ever request that your husband go to
6  marriage counseling?
7     A. Yes.
8     Q. On how many occasions?
9     A. A lot of occasions. Many, many. Too
10 many to count.
11    Q. Would he ever go to marriage counseling?
12    A. No, he would not.
13    Q. Was he taking the medication, the
14 Lithium and the Tegretol, when you were first
15 married?
16    A. Yes.
17    Q. When did he stop taking them?
18    A. He -- he didn't -- he didn't take it
19 consistently after we were married, he took it
20 whenever. Whenever he felt like it, I suppose.
21    Q. Do you know whether or not there were
22 ever any conversations with Mark Pouliot about
23 staging an accident for the insurance proceeds?
24    A. I'm not aware.
25    Q. Now, I think I asked you about his

**Page 20**

1  depression during the course of the marriage?
2     A. Yes.
3     Q. Did you -- I don't recall your answer.
4  Would you state your answer again? Was he
5  depressed during the marriage?
6        MR. STRATTON: Objection.
7        THE WITNESS: He had his -- yes.
8  Yes and no.
9  BY MR. GRADY:
10    Q. Yes and no?
11    A. Yes and no.
12    Q. Can you explain that?
13    A. He was sometimes and others he wasn't.
14    Q. And I believe you indicated that he had
15 a tendency to be violent?
16    A. Yes.
17    Q. Could you explain that?
18    A. He punched walls.
19    Q. Punched walls?
20    A. Punched windows.
21    Q. How often did he do that?
22    A. He kicked.
23       I don't know how often, just usually
24 when he was intoxicated he did the most.
25    Q. He'd punch walls as well as windows.

# EXHIBIT 5

Law Offices of
## Lenihan Grady & Steele
The Denison House
6 Canal Street
P.O. Box 541
Westerly, Rhode Island 02891-0541

F. Thomas Lenihan
(1939-2003)
Thomas J. Grady*
Margaret L. Steele*

Michelle A. Buck*
Matthew J. Corcoran*

Telephone (401) 596-0183
Facsimile (401) 596-6845

*Admitted to practice in RI and CT

*VIA FASCIMILE ONLY*

August 11, 2004

Michael Stratton, Esquire
Stratton Faxon
59 Elm Street
New Haven, CT 06510

*Re:* **Shawn Pouliot's Tax Returns**

Dear Mike:

I am writing to request that you produce Shawn Pouliot's <u>signed</u> tax returns from the years 1999, 2000, and 2001 which were filed with the Internal Revenue Service. Shawn referred to these returns as in your possession at his last deposition. See Attachment

As you know, we will run into a discovery deadline on August 30, 2004. For this reason, please produce these returns by Monday August 16, 2004. Should there be a dispute over this discovery, I will need to take the proper steps in obtaining these documents prior to the discovery deadline.

Thank you for your prompt attention to this matter.

Sincerely

Thomas J. Grady, Esquire
***LENIHAN, GRADY & STEELE***
6 Canal Street
Westerly, RI 02891

## Page 269

1  A. Years ago.
2  Q. Were you on medication for depression?
3  A. Actually, I think that medication took
4  care -- it did the same thing. It was one
5  medication.
6  Q. Was that Lithium?
7  A. Yes, I believe so.
8  Q. And how about Tegretol?
9  A. That's when I was a kid about ten years
10 old -- yeah, 12 years old, something like that.
11 Q. Were you ever treated by Dr. Perera for
12 alcoholism?
13 A. When you call it alcoholism, I call it
14 depression, but yes, I did my share of drinking
15 when I was a kid.
16 Q. Is it fair to say that you had problems
17 concentrating?
18 A. Yes.
19 Q. That's carried over into adulthood too,
20 right?
21 A. No.
22 Q. Now, you provided us with a joint tax
23 return for the year 1999, IRS joint tax return.
24 Did you file that joint tax return with the
25 Internal Revenue Service?

## Page 270

1  A. Yes.
2  Q. You provided us with a joint tax return
3  from the year 2000. Did you file that tax
4  return with the Internal Revenue Service?
5  A. Yes. My attorney -- attorney here has
6  done it, taken care of everything.
7  Q. When were those tax returns filed?
8  A. I don't know when exactly, but I was
9  late filing them. But he's got it all. I
10 would have to check his records.
11 Q. How about your tax return for the year
12 2001?
13 A. I believe that's in there too.
14 Q. You filed that one too?
15 A. I believe so.
16 Q. You have a lot of trouble with the law
17 when you were younger?
18 A. I've had my run-ins, yes.
19 Q. And --
20    MR. GRADY: Excuse me just a minute,
21 Shawn.
22 BY MR. GRADY:
23 Q. Were you represented by Attorney James
24 Wagner?
25 A. Probably numerous times.

## Page 271

1  Q. In fact, this is the office we're at
2  today, right?
3  A. Yes.
4  Q. One of charges that you were charged
5  with is aggravated burglary. Do you remember
6  that, July 31st, 1989?
7  A. Yeah. I was 19 years old.
8  Q. What was that all about?
9  A. I broke into a college dorm and stole an
10 empty beer can collections and a microwave as a
11 joke to a friend of mine, but he didn't take it
12 as a joke. I did no property damage, I just
13 took the broken microwave and an empty beer can
14 collection.
15 Q. How about on July 7, 1990, receiving
16 stolen property?
17 A. 1999?
18 Q. September 7, 1990?
19    MS. O'DONNELL: '90?
20    THE WITNESS: Oh, those big orange
21 barrels on the side of the expressway that had
22 the blinking lights, I took that and put it in
23 the back of my pickup truck and thought it
24 would be cool to use it as a beer cooler. They
25 didn't think that was funny either.

## Page 272

1  BY MR. GRADY:
2  Q. There's another charge of October 14,
3  1991 of aggravated burglary. What was that one
4  all about?
5  A. Oh, I was mad at a girlfriend so I went
6  in there and took my TV that I bought for her,
7  and I think that was it. I took my TV back
8  that I bought, but I still got charged with it.
9  Q. You have a number of charges for drunk
10 and disorderly, right?
11 A. Yeah.
12 Q. And a number of charges for contempt of
13 court, right?
14 A. A number? How many -- how many are the
15 number of drunk and disorderlies and how many
16 contempt of court?
17 Q. Well, I came across three drunk and
18 disorderlies. September 7, 1990, disorderly
19 conduct, intoxication before Judge Maxen?
20 A. I was 20 years old and I was a partyer.
21 Q. November 2nd, 1995, disorderly conduct,
22 intoxication, Judge Shapiro. May 2nd, 1996,
23 contempt of court, Judge George.
24 A. The May --
25 Q. Do you remember these?

# EXHIBIT 6

# Stratton Faxon

Connecticut's Firm for Trial Law

59 Elm Street
New Haven, CT 06510
(203) 624-9500 Phone
(203) 624-9100 Fax
(866) 351-9500 Toll-free
www.strattonfaxon.com

Michael A. Stratton*
Joel T. Faxon
Michael R. Denison

* Certified Civil Trial Advocate
National Board of Trial Advocacy

Legal Assistants
Carol A. Girard
Shel Swanson, RN
Sheila Geen, RN
Kristi E. Biondo
Jason K. Gamsby
Shannon Wickham

*VIA FASCIMILE ONLY*

August 13, 2004

Thomas J. Grady, Esq.
Lenihan Grady & Steele
The Denison House
6 Canal Street
P.O. Box 541
Westerly, RI 02891

Re: **Shawn Pouliot's Tax Returns**

Dear Attorney Grady:

We are in the process of obtaining our client's tax returns and will let you know when we have them all in our possession.

We are sorry for any inconvenience.

Very truly yours,

Jason K. Gamsby
Legal Assistant

# EXHIBIT 7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT<br>  Plaintiff | : <br> : <br> : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| v. | : <br> : | |
| PAUL ARPIN VAN LINES, INC. AND<br>ARPIN LOGISTICS, INC.<br>FESTO CORPORATION, MICHAEL<br>D. KOVAC, D/B/A TRANS-EXPO<br>INTERNATIONAL, AND ERICA RAMIREZ<br>IN HER CAPACITY AS EMPLOYEE<br>OF TRANS-EXPO INTERNATIONAL<br>  Defendants/Third-Party Defendants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | <br><br><br><br><br><br><br>AUGUST 23, 2004 |

## *AFFIDAVIT OF MOVANT'S GOOD FAITH EFFORTS TO RESOLVE THIS DISCOVERY DISPUTE RELATIVE TO PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC. FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS*

I, Thomas J. Grady, upon oath being duly sworn as follows:

1. On August 11, 2004, Arpin counsel sent a letter to Plaintiff's counsel in an attempt to resolve a discovery dispute regarding Plaintiff's Answers to Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. Fourth Request for Production of Documents (Signed State and Federal Tax Returns for 1999, 2000 and 2001), which set a deadline of August 16, 2004 by which Plaintiff was asked to respond. (Exhibit 1)

2. On August 13, 2004, Plaintiff counsel sent a letter to Arpin indicating that they were in the process of obtaining their client's tax returns and would let us know when they would have them in their possession. No communications have been forthcoming. (Exhibit 2)

3. As of August 23, 2004, the tax returns have not been provided.

The aforesaid facts are true and correct to the best of my knowledge and belief.

IN WITNESS THEREOF, I hereunto set my hand and seal this 23rd day of August, 2004.

Thomas J. Grady

STATE OF RHODE ISLAND
COUNTY OF WASHINGTON

In Westerly, Rhode Island on the 23rd day of August 2004 before me personally appeared Thomas J. Grady to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, by he so executed to be his free act and deed.

Notary Public:
My Commission Expires: 6/15/05

# EXHIBIT 1

Law Offices of
# Lenihan Grady & Steele
The Denison House
6 Canal Street
P.O. Box 541
Westerly, Rhode Island 02891-0541

F. Thomas Lenihan
(1939-2003)
Thomas J. Grady*
Margaret L. Steele*

Michelle A. Buck*
Matthew J. Corcoran*

Telephone (401) 596-0183
Facsimile (401) 596-6845

*Admitted to practice in RI and CT

**VIA FASCIMILE ONLY**

August 11, 2004

Michael Stratton, Esquire
Stratton Faxon
59 Elm Street
New Haven, CT 06510

**Re:**  *Shawn Pouliot's Tax Returns*

Dear Mike:

    I am writing to request that you produce Shawn Pouliot's <u>signed</u> tax returns from the years 1999, 2000, and 2001 which were filed with the Internal Revenue Service. Shawn referred to these returns as in your possession at his last deposition. See Attachment

    As you know, we will run into a discovery deadline on August 30, 2004. For this reason, please produce these returns by Monday August 16, 2004. Should there be a dispute over this discovery, I will need to take the proper steps in obtaining these documents prior to the discovery deadline.

    Thank you for your prompt attention to this matter.

Sincerely

Thomas J. Grady, Esquire
***LENIHAN, GRADY & STEELE***
6 Canal Street
Westerly, RI 02891

**Page 269**

1  A. Years ago.
2  Q. Were you on medication for depression?
3  A. Actually, I think that medication took
4  care -- it did the same thing. It was one
5  medication.
6  Q. Was that Lithium?
7  A. Yes, I believe so.
8  Q. And how about Tegretol?
9  A. That's when I was a kid about ten years
10 old -- yeah, 12 years old, something like that.
11 Q. Were you ever treated by Dr. Perera for
12 alcoholism?
13 A. When you call it alcoholism, I call it
14 depression, but yes, I did my share of drinking
15 when I was a kid.
16 Q. Is it fair to say that you had problems
17 concentrating?
18 A. Yes.
19 Q. That's carried over into adulthood too,
20 right?
21 A. No.
22 Q. Now, you provided us with a joint tax
23 return for the year 1999, IRS joint tax return.
24 Did you file that joint tax return with the
25 Internal Revenue Service?

**Page 270**

1  A. Yes.
2  Q. You provided us with a joint tax return
3  from the year 2000. Did you file that tax
4  return with the Internal Revenue Service?
5  A. Yes. My attorney -- attorney here has
6  done it, taken care of everything.
7  Q. When were those tax returns filed?
8  A. I don't know when exactly, but I was
9  late filing them. But he's got it all. I
10 would have to check his records.
11 Q. How about your tax return for the year
12 2001?
13 A. I believe that's in there too.
14 Q. You filed that one too?
15 A. I believe so.
16 Q. You have a lot of trouble with the law
17 when you were younger?
18 A. I've had my run-ins, yes.
19 Q. And --
20    MR. GRADY: Excuse me just a minute,
21 Shawn.
22 BY MR. GRADY:
23 Q. Were you represented by Attorney James
24 Wagner?
25 A. Probably numerous times.

**Page 271**

1  Q. In fact, this is the office we're at
2  today, right?
3  A. Yes.
4  Q. One of charges that you were charged
5  with is aggravated burglary. Do you remember
6  that, July 31st, 1989?
7  A. Yeah. I was 19 years old.
8  Q. What was that all about?
9  A. I broke into a college dorm and stole an
10 empty beer can collections and a microwave as a
11 joke to a friend of mine, but he didn't take it
12 as a joke. I did no property damage, I just
13 took the broken microwave and an empty beer can
14 collection.
15 Q. How about on July 7, 1990, receiving
16 stolen property?
17 A. 1999?
18 Q. September 7, 1990?
19    MS. O'DONNELL: '90?
20    THE WITNESS: Oh, those big orange
21 barrels on the side of the expressway that had
22 the blinking lights, I took that and put it in
23 the back of my pickup truck and thought it
24 would be cool to use it as a beer cooler. They
25 didn't think that was funny either.

**Page 272**

1  BY MR. GRADY:
2  Q. There's another charge of October 14,
3  1991 of aggravated burglary. What was that one
4  all about?
5  A. Oh, I was mad at a girlfriend so I went
6  in there and took my TV that I bought for her,
7  and I think that was it. I took my TV back
8  that I bought, but I still got charged with it.
9  Q. You have a number of charges for drunk
10 and disorderly, right?
11 A. Yeah.
12 Q. And a number of charges for contempt of
13 court, right?
14 A. A number? How many -- how many are the
15 number of drunk and disorderlies and how many
16 contempt of court?
17 Q. Well, I came across three drunk and
18 disorderlies. September 7, 1990, disorderly
19 conduct, intoxication before Judge Maxen?
20 A. I was 20 years old and I was a partyer.
21 Q. November 2nd, 1995, disorderly conduct,
22 intoxication, Judge Shapiro. May 2nd, 1996,
23 contempt of court, Judge George.
24 A. The May --
25 Q. Do you remember these?

# EXHIBIT 2

# stratton Faxon

Connecticut's Firm for Trial Law

59 Elm Street
New Haven, CT 06510
(203) 624-9500 Phone
(203) 624-9100 Fax
(866) 351-9500 Toll-free
www.strattonfaxon.com

Michael A. Stratton*
Joel T. Faxon
Michael R. Denison

* Certified Civil Trial Advocate
National Board of Trial Advocacy

Legal Assistants
Carol A. Girard
Shel Swanson, RN
Sheila Geen, RN
Kristi E. Biondo
Jason K. Gamsby
Shannon Wickham

*VIA FASCIMILE ONLY*

August 13, 2004

Thomas J. Grady, Esq.
Lenihan Grady & Steele
The Denison House
6 Canal Street
P.O. Box 541
Westerly, RI 02891

Re:   Shawn Pouliot's Tax Returns

Dear Attorney Grady:

We are in the process of obtaining our client's tax returns and will let you know when we have them all in our possession.

We are sorry for any inconvenience.

Very truly yours,

Jason K. Gamsby
Legal Assistant

AUG-13-2004  12:22                          96%                         P.02