# EXHIBIT 3

Volume I, Pages 1-7
Exhibits NONE

UNITED STATES DISTRICT
DISTRICT OF CONNECTICUT

C.A. NO. 3:02 CV1302 (DJS)

SHAWN POULIOT,
    Plaintiff,

vs.

PAUL ARPIN VAN LINES, INC.
AND ARPIN LOGISTICS, INC.,
    Defendants/Third-Party Plaintiffs,

vs.

THE FESTO CORPORATION,
MICHAEL D. KOVAC D/B/A TRANS-EXPO INTERNATIONAL
AND ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INTERNATIONAL,
    Third-Party Defendants


DEPOSITION OF:   WILLIAM TWEEDY

LENIHAN, GRADY & STEELE
Six Canal Street
Westerly, Rhode Island 02891

July 26, 2004  2:05 p.m. - 2:10 p.m.


ATKINSON-BAKER, INC. COURT REPORTERS

330 North Brand Boulevard, Suite 250

Glendale, California  91203

800.228.3376

REPORTED BY:  Linda A. Menard
              Registered Professional Reporter
              Certified Shorthand Reporter
JOB NO. 9E05C32

9E05C32
## WILLIAM TWEEDY   JULY 26, 2004

### Page 2

```
 1  APPEARANCES OF COUNSEL:
 2
 3  Representing the Plaintiff:
 4    STRATTON FAXON
        BY: Michael A. Stratton, Esquire
 5      59 Elm Street
        New Haven, CT 06510
 6      Fax: 203.624.9100
 7
    Representing the Defendants/Third-Party Plaintiffs:
 8
      LENIHAN, GRADY & STEELE
 9      BY: Thomas J. Grady, Esquire
        Six Canal Street, P.O. Box 541
10      Westerly, RI 02891
        Fax: 401.596.6845
11
    Representing the Third-Party Defendant
12  The Festo Corp.:
13    ADLER, POLLOCK & SHEEHAN, INC.
        BY: James R. Oswald, Esquire
14      2300 Financial Plaza
        Providence, RI 02903
15      Fax: 401.751.0604
16  Representing the Third-Party Defendants
    Michael D. Kovac, d/b/a Trans-Expo International
17  and Erica Ramirez:
18    HALLORAN & SAGE
        BY: Susan J. O'Donnell, Esquire
19      One Goodwin Square
        225 Asylum Street
20      Hartford, CT 06103
        Fax: 860.548.0006
21
    ALSO PRESENT:
22    Jack Fuyat
      Elizabeth Wallace
23
24
```

### Page 3

```
 1              I N D E X
 2
    DEPOSITION OF
 3  WILLIAM TWEEDY                    PAGE
      Examination by Mr. Stratton       4
 4
```

### Page 4

```
 1                PROCEEDINGS
                  * * * * *
 2         WILLIAM TWEEDY, a witness called on behalf
 3  of the Plaintiff, first having been duly sworn,
 4  under oath, deposes and says as follows:
 5  EXAMINATION BY MR. STRATTON:
 6    Q. Sir, are you here pursuant to a subpoena?
 7    A. Yes.
 8    Q. And what was the first thing you said to
 9  me as you were walking in the room?
10    A. I said you were an asshole.
11    Q. Then you sat down?
12    A. Yeah.
13    Q. And you gave me a hand gesture?
14    A. I gave you the middle finger, correct.
15    Q. Then I asked you whether you thought that
16  you were under control enough to give a deposition
17  today?
18    A. I'm under control. I know what I'm doing.
19    Q. You told me that you weren't going to do
20  what?
21    A. I ain't helping your side at all. I got
22  amnesia.
23    Q. You've got amnesia and you are planning on
24  lying today?
```

### Page 5

```
 1    A. Yeah, sure, why not. Did you threaten me
 2  on the phone last winter, told me you'd sue me and
 3  take me for everything I've got? Did you not state
 4  that on the telephone?
 5    Q. I'm going to continue this deposition and
 6  have this done in a court of law in Rhode Island or
 7  Massachusetts.
 8    A. Did you tell me that on the telephone?
 9    Q. You are here pursuant to a U.S. Marshal
10  subpoena?
11    A. I'm asking, you threatened me on the
12  telephone?
13    Q. I'm here -- I ask the questions; you
14  answer the questions.
15    A. You want answers from me? I ain't
16  answering any questions. You want to subpoena me in
17  here, you'll tell me under oath whether you
18  threatened me or not. You didn't tell me you'd sue
19  me and take me for everything I got if I didn't show
20  up here?
21    Q. No.
22    A. You're a clown.
23    Q. Sir, are you able to give a deposition?
24    A. Anybody else wants to ask questions other
```

```
 1  than you, I'll answer them.
 2      Q.  I don't have any further questions right
 3  now because I'm going to get a court order to have
 4  you answer questions.
 5      A.  That's fine. Get in touch with my
 6  attorney. Don't get in touch with me.
 7      Q.  Well, you are free to go at this point,
 8  Mr. Tweedy.
 9      A.  No problem.
10          (Deposition suspended at 2:05 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 6

```
 1           CERTIFICATE
 2
 3  COMMONWEALTH OF MASSACHUSETTS
 4  COUNTY OF BRISTOL, ss.
 5
 6          I, Linda A. Menard, a Registered
 7  Professional Reporter and Notary Public in and for
 8  the Commonwealth of Massachusetts, do hereby certify
 9  that the foregoing transcript of the deposition of
10  WILLIAM TWEEDY, having been duly sworn, on Monday,
11  July 26, 2004, is true and accurate to the best of
12  my knowledge, skill and ability.
13          IN WITNESS WHEREOF, I have hereunto set my
14  hand and seal this 9th day of August, 2004.
15
16
17
                    Linda A. Menard, RPR
18                  Notary Public
                    My commission expires:
19                  September 17, 2004
20
21
22
23
24
```

Page 7

3 (Pages 6 to 7)

# EXHIBIT 4

**Page 269**

1　A. Years ago.
2　Q. Were you on medication for depression?
3　A. Actually, I think that medication took
4　care -- it did the same thing. It was one
5　medication.
6　Q. Was that Lithium?
7　A. Yes, I believe so.
8　Q. And how about Tegretol?
9　A. That's when I was a kid about ten years
10　old -- yeah, 12 years old, something like that.
11　Q. Were you ever treated by Dr. Perera for
12　alcoholism?
13　A. When you call it alcoholism, I call it
14　depression, but yes, I did my share of drinking
15　when I was a kid.
16　Q. Is it fair to say that you had problems
17　concentrating?
18　A. Yes.
19　Q. That's carried over into adulthood too,
20　right?
21　A. No.
22　Q. Now, you provided us with a joint tax
23　return for the year 1999, IRS joint tax return.
24　Did you file that joint tax return with the
25　Internal Revenue Service?

**Page 270**

1　A. Yes.
2　Q. You provided us with a joint tax return
3　from the year 2000. Did you file that tax
4　return with the Internal Revenue Service?
5　A. Yes. My attorney -- attorney here has
6　done it, taken care of everything.
7　Q. When were those tax returns filed?
8　A. I don't know when exactly, but I was
9　late filing them. But he's got it all. I
10　would have to check his records.
11　Q. How about your tax return for the year
12　2001?
13　A. I believe that's in there too.
14　Q. You filed that one too?
15　A. I believe so.
16　Q. You have a lot of trouble with the law
17　when you were younger?
18　A. I've had my run-ins, yes.
19　Q. And --
20　　　MR. GRADY: Excuse me just a minute,
21　Shawn.
22　BY MR. GRADY:
23　Q. Were you represented by Attorney James
24　Wagner?
25　A. Probably numerous times.

**Page 271**

1　Q. In fact, this is the office we're at
2　today, right?
3　A. Yes.
4　Q. One of charges that you were charged
5　with is aggravated burglary. Do you remember
6　that, July 31st, 1989?
7　A. Yeah. I was 19 years old.
8　Q. What was that all about?
9　A. I broke into a college dorm and stole an
10　empty beer can collections and a microwave as a
11　joke to a friend of mine, but he didn't take it
12　as a joke. I did no property damage, I just
13　took the broken microwave and an empty beer can
14　collection.
15　Q. How about on July 7, 1990, receiving
16　stolen property?
17　A. 1999?
18　Q. September 7, 1990?
19　　　MS. O'DONNELL: '90?
20　　　THE WITNESS: Oh, those big orange
21　barrels on the side of the expressway that had
22　the blinking lights, I took that and put it in
23　the back of my pickup truck and thought it
24　would be cool to use it as a beer cooler. They
25　didn't think that was funny either.

**Page 272**

1　BY MR. GRADY:
2　Q. There's another charge of October 14,
3　1991 of aggravated burglary. What was that one
4　all about?
5　A. Oh, I was mad at a girlfriend so I went
6　in there and took my TV that I bought for her,
7　and I think that was it. I took my TV back
8　that I bought, but I still got charged with it.
9　Q. You have a number of charges for drunk
10　and disorderly, right?
11　A. Yeah.
12　Q. And a number of charges for contempt of
13　court, right?
14　A. A number? How many -- how many are the
15　number of drunk and disorderlies and how many
16　contempt of court?
17　Q. Well, I came across three drunk and
18　disorderlies. September 7, 1990, disorderly
19　conduct, intoxication before Judge Maxen?
20　A. I was 20 years old and I was a partyer.
21　Q. November 2nd, 1995, disorderly conduct,
22　intoxication, Judge Shapiro. May 2nd, 1996,
23　contempt of court, Judge George.
24　A. The May --
25　Q. Do you remember these?

# EXHIBIT 5

**Page 13**

1   A. Yes.
2   Q. When was that?
3   A. When we lived in South Carolina we owned
4   a house and he told me that he threw a diaper
5   in the toilet and flushed it.
6      MR. GRADY: Can you read that back
7   again?
8      (The last answer was read back.)
9   BY MR. GRADY:
10  Q. Okay. And did he tell you anything
11  about staging an accident so that there would
12  be insurance proceeds?
13  A. No.
14     MR. STRATTON: Objection.
15  BY MR. GRADY:
16  Q. He didn't? What did you mean when he
17  threw the diaper in the toilet?
18  A. He told me after, a long time after the
19  fact.
20  Q. After that?
21  A. After it happened, yes. We assumed it
22  was my daughter. I assumed it was my daughter.
23  Q. I see. And so was there insurance
24  proceeds as a result of that?
25  A. Yes.

**Page 14**

1   Q. And how much money was involved?
2   A. I don't remember the exact amount. It
3   wasn't a whole lot.
4   Q. Okay. Was there any difficulty with
5   impotency on his part during the marriage?
6   A. I'm sorry. I don't understand your
7   question.
8   Q. Okay. Do you know whether or not your
9   husband ever took Viagra during the course of
10  his marriage to you?
11  A. One time, yes.
12  Q. He did?
13  A. One time.
14  Q. And do you remember when that was?
15  A. No.
16  Q. Do you know why he took the Viagra?
17  A. No, I don't know why he did.
18  Q. Do you know what Viagra is?
19  A. Yes, I know what Viagra is.
20  Q. Now, were there any discussions during
21  the course of your marriage about any of his
22  medical conditions other than the alcohol
23  problem that he had?
24  A. Yes.
25  Q. What -- what were those discussions?

**Page 15**

1   A. He had to take medication and -- and he
2   hardly ever would.
3   Q. And what kind of medication was it?
4   A. Tegretol and Lithium.
5   Q. Did you ask him during the course of
6   your marriage to take that medication?
7   A. Yes.
8   Q. And was he depressed?
9   A. Yes.
10  Q. During the entire marriage was he
11  depressed?
12  A. He had his ups and downs.
13  Q. Was divorce discussed before October
14  23rd, 2001?
15  A. Yes.
16  Q. And how early on was divorce discussed?
17  A. It was always discussed.
18  Q. It was always discussed?
19  A. Yes.
20     MR. GRADY: Now, I'd like to have
21  these two documents marked for identification.
22     (Defendant's Exhibits Bibbee A
23     and B were marked for identification.)
24  BY MR. GRADY:
25  Q. Defendant's Exhibit A is a joint tax

**Page 16**

1   return, Shawn L. Pouliot and Charity L. Pouliot
2   for the year 1999. Have you ever seen that tax
3   return before?
4   A. Yes.
5   Q. Did you sign that tax return?
6   A. No.
7   Q. Is there any reason why you didn't sign
8   the tax return?
9   A. Yes.
10  Q. What was the reason?
11  A. Because he didn't file it.
12  Q. Because it wasn't filed?
13  A. No.
14  Q. I'll show you another tax return,
15  Defendant's Exhibit B, the tax return for the
16  year 2000 and ask if you've ever seen that tax
17  return before?
18  A. Uh-huh.
19  Q. You answered yes?
20  A. Yes.
21  Q. Did you sign that tax return?
22  A. No.
23  Q. Why didn't you sign that return?
24  A. Because it wasn't filed.
25  Q. It wasn't filed. When you say it wasn't

**Page 17**

```
 1  filed, you mean it wasn't filed with the
 2  Internal Revenue Service?
 3     A.  Yes.
 4     Q.  Did -- did Shawn ever tell you how the
 5  accident happened?
 6     A.  All I know is that something fell on
 7  him.  That's -- that's all I know.
 8     Q.  Okay.  Has Shawn ever threatened you?
 9     A.  Yes.
10     Q.  And when is the first time he threatened
11  you?
12     A.  I can't give you a date.
13     Q.  Okay.  Do you know how many years ago?
14     A.  When our divorce proceedings started he
15  was not very nice.
16     Q.  When's the last time he threatened you?
17     A.  I -- I can't recall when.
18     Q.  Is it recent?
19     A.  No.
20     Q.  When he did threaten you, how did he
21  threaten you?
22     A.  He threatened to take my kids away which
23  he did.
24     Q.  Prior to October 23rd, 2001, had you
25  ever gone to a lawyer for a divorce?
```

**Page 18**

```
 1     A.  I made an appointment, but I never went.
 2     Q.  And who was the appointment with?
 3     A.  My dad made the appointment for me so I
 4  don't know the attorney's name.
 5     Q.  Your father did?
 6     A.  Yes.
 7     Q.  Now, you say you're afraid of Mark
 8  Pouliot too?
 9     A.  Yes.
10     Q.  Why are you afraid of him?
11     A.  Because he's deceitful.
12     Q.  He's deceitful?
13     A.  Yes.
14     Q.  Relative to the tax returns for the
15  years 1999 and 2000 which are represented by
16  Defendant's Exhibit A and B, did you
17  subsequently file tax returns yourself?
18     A.  Yes, I did.
19     Q.  On your own?
20     A.  Yes, I did.
21     Q.  When did you do that?
22     A.  When I found out those weren't filed.
23     Q.  When did you find out these were not
24  filed?
25     A.  During my divorce trial.
```

**Page 19**

```
 1     Q.  Do you know why these returns were never
 2  filed?
 3     A.  No.
 4     Q.  During the course of your marriage did
 5  you ever request that your husband go to
 6  marriage counseling?
 7     A.  Yes.
 8     Q.  On how many occasions?
 9     A.  A lot of occasions.  Many, many.  Too
10  many to count.
11     Q.  Would he ever go to marriage counseling?
12     A.  No, he would not.
13     Q.  Was he taking the medication, the
14  Lithium and the Tegretol, when you were first
15  married?
16     A.  Yes.
17     Q.  When did he stop taking them?
18     A.  He -- he didn't -- he didn't take it
19  consistently after we were married, he took it
20  whenever.  Whenever he felt like it, I suppose.
21     Q.  Do you know whether or not there were
22  ever any conversations with Mark Pouliot about
23  staging an accident for the insurance proceeds?
24     A.  I'm not aware.
25     Q.  Now, I think I asked you about his
```

**Page 20**

```
 1  depression during the course of the marriage?
 2     A.  Yes.
 3     Q.  Did you -- I don't recall your answer.
 4  Would you state your answer again?  Was he
 5  depressed during the marriage?
 6         MR. STRATTON:  Objection.
 7         THE WITNESS:  He had his -- yes.
 8  Yes and no.
 9  BY MR. GRADY:
10     Q.  Yes and no?
11     A.  Yes and no.
12     Q.  Can you explain that?
13     A.  He was sometimes and others he wasn't.
14     Q.  And I believe you indicated that he had
15  a tendency to be violent?
16     A.  Yes.
17     Q.  Could you explain that?
18     A.  He punched walls.
19     Q.  Punched walls?
20     A.  Punched windows.
21     Q.  How often did he do that?
22     A.  He kicked.
23         I don't know how often, just usually
24  when he was intoxicated he did the most.
25     Q.  He'd punch walls as well as windows.
```

# EXHIBIT 6

JAMES L. WAGNER
ATTORNEY AT LAW
529 WHITE POND DRIVE
AKRON, OHIO 44320
TELEPHONE (330) 864-3100
FAX (330) 864-7753

May 20, 2003

David H. Ferguson
Attorney at Law
120 E. Mill St.
Suite 415
Akron, OH 44308

RE: Pouliot v. Pouliot

Dear Mr. Ferguson:

I am in receipt of your letter of May 14, 2003 wherein you enclosed a copy of the proposed 1999 and 2000 Income Tax Returns.

As I mentioned to you, these documents were prepared but were never filed. The IRS is leaning rather heavily on Mr. Pouliot to file these documents.

The questions is whether Mrs. Pouliot would be willing to file jointly with Mr. Pouliot. As there are amounts owing for both years, of course Mr. Pouliot will hold Mrs. Pouliot harmless on any payments.

Please advise.

Yours very truly,

James L. Wagner

JLW:lsm

8

# EXHIBIT 7

# Stratton Faxon

*Connecticut's Firm for Trial Law*

59 Elm Street
New Haven, CT 06510
(203) 624-9500 Phone
(203) 624-9100 Fax
(866) 351-9500 Toll-free
www.strattonfaxon.com

Michael A. Stratton*
Joel T. Faxon
Michael R. Denison

* Certified Civil Trial Advocate
National Board of Trial Advocacy

Legal Assistants
Carol A. Girard
Shel Swanson, RN
Sheila Geen, RN
Kristi E. Biondo
Jason K. Gamsby
Shannon Wickham

*VIA FASCIMILE ONLY*

August 13, 2004

Thomas J. Grady, Esq.
Lenihan Grady & Steele
The Denison House
6 Canal Street
P.O. Box 541
Westerly, RI 02891

Re:   Shawn Pouliot's Tax Returns

Dear Attorney Grady:

We are in the process of obtaining our client's tax returns and will let you know when we have them all in our possession.

We are sorry for any inconvenience.

Very truly yours,

Jason K. Gamsby
Legal Assistant