FILED

2004 OCT -7 A 11 07

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT<br>Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO.<br>: 3:02 CV 1302 (DJS) |
| PAUL ARPIN VAN LINES, INC.;<br>ARPIN LOGISTICS, INC.; THE FESTO<br>CORPORATION; MICHAEL D. KOVAC<br>d/b/a TRANS-EXPO INTERNATIONAL,<br>ERICA RAMIREZ, IN HER CAPACITY A<br>EMPLOYEE OF TRANS-EXPO<br>INTERNATIONAL, | :<br>:<br>:<br>:<br>:<br>:<br>: OCTOBER 6, 2004 |

### *MEMORANDUM OF LAW IN SUPPORT OF PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'S MOTION FOR RECONSIDERATION OF MEMORANDUM OF DECISION AND ORDER (# 304)*

Pursuant to Local Rule 7(a), Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter "Arpin") respectfully move the Court to reconsider its Order granting, in part, the Plaintiff's Motion For Protective Order which was filed September 27, 2004. (Court's Doc. No. # 304)

1. <u>Legal Standard For Motion For Reconsideration</u>

    Local Rule 7(c) provides:

    Motions for reconsideration shall be filed and served within ten (10) days of the

1

filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court overlooked in the initial decision or order.

The standard for granting a motion for reconsideration is strict. See Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). However, such a Motion will be granted if the "moving party can point to controlling decisions or data that the court overlooked - matters in other words, that might reasonably be expected to alter the conclusion reached by the court." Id. "The function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence.'" LoSacco v. City of Middletown, 822 F.Supp. 870, 876-77 (D.Conn. 1993) (quoting Rothwell Cotton Co. v. Rosenthal Co., 827 F.2d 246, 251 (7th Cir. 1987), aff'd, 33 F.3d 50 (2d Cir. 1994).

The permissible grounds upon which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. Doe v. New York City Dep't of Social Services, 709 F.2d 782, 789 (2d Cir.).

In its Order, the Court granted the Plaintiff's Motion For Protective Order.

A protective order may issue on good cause shown by the moving party. Fed.R.Civ. p. 26(c); Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992). Fed.R.Civ.P. 26(c)

2

however, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983).

A moving party may not establish good cause through conclusory statements. Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986). Good cause is established by demonstrating "a clearly defined and serious injury" resulting from disclosure. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

Arpin relies upon grounds two and three, stated above, for the Court's reconsideration.

2.   Arpin's Addition of a Fraud Defense

Since the time of the Court's order of September 27, 2004, Arpin has moved for leave to amend its Answer to add an affirmative defense based upon the fraud of the Plaintiff. As the lack of an affirmative defense of fraud was one ground for the Court's granting of the Plaintiff's Motion For Protective Order, the Court's decision would be appropriately reconsidered in light of Arpin's affirmative defense of fraud.

Fed.R.Civ.P. 26(b)(1) states:

(b) **Discovery Scopes and Limits.** Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) *In General.* Parties may obtain discovery regarding any matter,

not privileged, that is relevant to the claim or defense of any party.

The Advisory Committee Note to the 2000 Amendment to Fed.R.Civ.P. 26(b)(1) describes the effect of the year 2000 amendment which narrowed the scope of discovery from information relevant to the "subject matter" to information that is "relevant to the claim or defense of any party." See Exhibit 1, Advisory Committee Note to the 2000 Amendment to Rule 26(b)(1).

Now that Arpin has included a fraud defense, the intent of the Plaintiff is now at issue as relevant to a claim or defense of Arpin. In light of this modification, Arpin requests that the court reconsider its previous Order and permit Arpin to discover the information found in Shawn Pouliot's Nationwide Mutual Insurance claims file.

3. <u>Arpin's Use of Inadmissible Evidence</u>

Arpin requests the Court to reconsider its decision prohibiting Arpin from discovering Pouliot's insurance claim file based on its inadmissibility.

Evidence need not be admissible to be relevant, and thus discoverable. <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Fed.R.Civ.P. 26(b)(1) states that relevant inadmissible evidence is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." <u>Glover v. South Carolina Law Enforcement Division</u>, 170 F.3d 411 (4th Cir. 1999).

4

Advisory Committee Note to the 2000 Amendments of Fed.R.Civ.P. 26(b)(1) reads in part, "A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. . . . Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to claims or defenses, might be properly discoverable."  See Exhibit 1.

Furthermore, courts have been hesitant to make decisions on admissibility prior to trial. The United States District Court for the Southern District of New York recently stated,

> "Defendants, positing that Plaintiff may testify he was not involved in drug activity, also argue that testimony regarding the alleged drug paraphernalia should be admitted for impeachment purposes.  It would be premature to rule on Defendants' request in advance of an actual proffer of testimony by Plaintiff.  As the court noted in Giles v. Rhodes, a decision relied upon by Defendants, "to make a ruling now would require the Court to speculate as to the nature of the testimony that might open the door to the proper admission of this evidence . . . " No. 94 Civ. 6385, 2000 WL 1425046 at *2 (S.D.N.Y. Sept. 27, 2000).  The Court will defer consideration of any impeachment proffer, and any additional evidentiary issues that may by implicated by such proffer, to the time of trial.

Dallas v. Goldberg, 143 F.Supp.3d 312, 318-319 (S.D.N.Y. 2001).

Arpin respectfully requests this Court to reconsider its decision finding that the contents and information contained within the Nationwide Mutual Insurance claims file would be inadmissible at trial.  Arpin requests that discovery go forward and that the Court defer ruling on its admissibility until the time it is proffered at trial.

5

As the insurance claim file is "reasonably calculated to lead to the discovery of admissible evidence", Arpin requests that the Court reconsider its decision.

4.   <u>Admissibility of Evidence Contained Within the Insurance Claims File</u>

Arpin respectfully requests the Court to reconsider one particular aspect of its order regarding the admissibility of the Plaintiff's insurance claim file.

While the Court is correct that FRE 608(a) generally prohibits the use of extrinsic evidence of prior bad acts to show the witness's "character for truthfulness or untruthfulness", Arpin may inquire into these prior bad acts.

FRE 608 (b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . ."

If, in fact, Shawn Pouliot committed insurance fraud, Arpin submits that such an act would be probative of the Plaintiff's "character for truthfulness or untruthfulness." The Second Circuit Court of Appeals has held that failure to file tax returns is probative of a witness's character for truthfulness or untruthfulness. See <u>Chnapkova v. Koh</u>, 985 F.2d 79, 82 (2d Cir. 1993). More on point, the Fifth Circuit Court of Appeals, has permitted the introduction of past

6

acts of insurance fraud to impeach a witness's truthfulness. See United States v. Marroquin, 885 F.2d 1240, 1246 (5th Cir. 1989).

The alleged insurance fraud by the Plaintiff is akin to the cases cited above. If in fact, Pouliot did file a fraudulent insurance claim under his Nationwide policy, this is probative of his character for truthfulness or untruthfulness. Arpin may inquire into this incident.

While extrinsic evidence of specific acts probative of a witness's character for truthfulness or untruthfulness is generally not admissible, the permitted inquiry during cross-examination must be made with a good faith basis. See Michelson v. United States, 335 U.S. 469, 481 (1948) (judge properly ascertained that defendant testifying as witness, had actually been arrested before cross-examiner was permitted to ask about underlying deeds, so "groundless question" would not "waft an unwarranted innuendo into the jury box"). See also United States v. Leake, 642 F.2d 715, 718-719 (4th Cir. 1981) (approving questions about misdeeds on assumption that counsel has "reasonable basis" for believing that witness "actually committed" them). See also, United States v. Oshatz, 704 F.Supp. 511, 514 (S.D.N.Y. 1989) ("The government can question a character witness about specific instance of misconduct, provided its believes in good faith that the alleged bad act has a basis in fact and the question is relevant to the character traits at issue.")

The information contained in Pouliot's claims file might or might not reveal a good faith

basis for inquiry on cross-examination regarding this claim. Arpin, however, as discussed above, is permitted under the Federal Rules of Civil Procedure to discover inadmissible evidence which is reasonably calculated to lead to admissible evidence. An inquiry into Pouliot's fraudulent insurance claim is an admissible inquiry permitted during cross-examination pursuant to FRE 608(b) for purposes of showing his character for truthfulness.

Furthermore, F.R.E. 608(b) is not an absolute bar to presentation of extrinsic evidence relating to credibility.

> Rule 608's bar on extrinsic evidence relating to credibility is not absolute: where the prior acts are not denied by the witness, evidence relating to them may be introduced. See United States v. Zandi, 769 F.2d 229, 236 (4th Cir. 1995); Carter v. Hewitt, 617 F.2d 961, 970 (3d Cir. 1980). Therefore, until it is known how the potential witnesses might testify regarding the prior acts, no determination can be made regarding admissibility of extrinsic evidence.

Wagschal v. Sea Ins. Co., Ltd., 861 F.Supp. 263, 265 (S.D.N.Y. 1994) (quoting Davidson Pipe Co., v. Laventhol and Horwath, 120 F.R.D. 455, 462 (S.D.N.Y. 1988)).

While the Court is correct that FRE 608(b) does not generally permit extrinsic evidence to impeach a testifying witness's truthfulness, the information from that particular file is admissible in the form of an inquiry of the Plaintiff during cross-examination, should he choose to testify. Should the Plaintiff fail to deny the allegation, the extrinsic evidence of the insurance file would be admissible.

Arpin respectfully requests the Court to reconsider its Order on this basis.

5. <u>Claims File Offered For Contradiction</u>

The insurance claims file might also become admissible for the purposes of contradicting the Plaintiff's testimony.

Admission for contradiction is proper because 'where a defendant in his direct testimony falsely states a specific fact, the prosecution will not be prevented from proving either through cross-examination or by calling its own witnesses, that he lied as to that fact.' <u>United States v. Cuadrado</u>, 413 F.2d 633, 635 (2d Cir. 1969) (quoting <u>United States v. Beno</u>, 324 F.2d 582, 588 (2d Cir. 1963)) (emphasis in original)." See <u>United States v. Garcia</u>, 900 F.2d 571, 575 (2d Cir. 1990).

While the above cited cases considered contradiction of direct testimony, there is no reason why this should not apply to extrinsic evidence offered to contradict testimony made during cross-examination. The insurance claims file would not be offered to show the Plaintiff's character for truthfulness, but rather would be offered to contradict the testimony of the Plaintiff.

The scenario described above could plausibly occur at trial. At that point, the insurance claims file might be admissible for purposes of contradiction of the Plaintiff's testimony.

For the foregoing reasons, Arpin respectfully requests the Court to reconsider its Order granting the Plaintiff's Motion For Protective Order.

DEFENDANT/THIRD PARTY<br>
PLAINTIFF/CROSS-CLAIM PLAINTIFF

_/s/ Thomas J. Grady_

Thomas J. Grady, Esq.<br>
Lenihan, Grady & Steele<br>
Six Canal Street, P.O. Box 541<br>
Westerly, RI 02891<br>
(401) 596-0183<br>
(401) 596-6845 (Fax)

### *CERTIFICATION*

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this 6__ day of October 2004 to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street, New Haven, CT 06510, Roland F. Moots, Jr., Esquire of *Moots, Pellegrini, Mannion, Martindale & Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire *Halloran & Sage*, One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and James R. Oswald, Esquire of *Adler, Pollack & Sheehan*, P.C., 2300 Financial Plaza, Providence, RI 02903-2443.

_/s/_

# EXHIBIT 1

**Rule 26**      ADVISORY COMMITTEE NOTES      Pt. VII

ment that subdivision (a)(3) materials be filed has been moved from subdivision (a)(4) to subdivision (a)(3), and it has also been made clear that they—and any objections—should be filed "promptly."

**Subdivision (a)(4).** The filing requirement has been removed from this subdivision. Rule 5(d) has been amended to provide that disclosures under subdivisions (a)(1) and (a)(2) must not be filed until used in the proceeding. Subdivision (a)(3) has been amended to require that the disclosures it directs, and objections to them, be filed promptly. Subdivision (a)(4) continues to require that all disclosures under subdivisions (a)(1), (a)(2), and (a)(3) be in writing, signed, and served.

"Shall" is replaced by "must" under the program to conform amended rules to current style conventions when there is no ambiguity.

**GAP Report**

The Advisory Committee recommends that the amendments to Rules 26(a)(1)(A) and (B) be changed so that initial disclosure applies to information the disclosing party "may use to support" its claims or defenses. It also recommends changes in the Committee Note to explain that disclosure requirement. In addition, it recommends inclusion in the Note of further explanatory matter regarding the exclusion from initial disclosure provided in new Rule 26(a)(1)(E) for actions for review on an administrative record and the impact of these exclusions on bankruptcy proceedings. Minor wording improvements in the Note are also proposed.

**Subdivision (b)(1).** In 1978, the Committee published for comment a proposed amendment, suggested by the Section of Litigation of the American Bar Association, to refine the scope of discovery by deleting the "subject matter" language. This proposal was withdrawn, and the Committee has since then made other changes in the discovery rules to address concerns about overbroad discovery. Concerns about costs and delay of discovery have persisted nonetheless, and other bar groups have repeatedly renewed similar proposals for amendment to this subdivision to delete the "subject matter" language. Nearly one-third of the lawyers surveyed in 1997 by the Federal Judicial Center endorsed narrowing the scope of discovery as a means of reducing litigation expense without interfering with fair case resolutions. *Discovery and Disclosure Practice, supra*, at 44–45 (1997). The Committee has heard that in some instances, particularly cases involving large quantities of discovery, parties seek to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the "subject matter" involved in the action.

The amendments proposed for subdivision (b)(1) include one element of these earlier proposals but also differ from these proposals in significant ways. The similarity is that the amendments describe the scope of party-controlled discovery in terms of matter relevant to the claim or defense of any party. The court, however, retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause. The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery. The Committee has been informed repeatedly by lawyers that involvement of the court in managing discovery is an important method of controlling problems of inappropriately broad discovery. Increasing the availability of judicial officers to resolve discovery disputes and increasing court management of discovery were both strongly endorsed by the attorneys surveyed by the Federal Judicial Center. *See Discovery and Disclosure Practice, supra*, at 44. Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

1232