UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
|    Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 1302 (DJS) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE  FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY A | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL | : | OCTOBER 18, 2004 |

### *PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'S OBJECTION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (# 305)*

Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter "Arpin") object to

Plaintiff's Motion For Protective Order and Sanctions dated October 1, 2004 which is designated

as court document number (#305).  Plaintiff's Motion For Protective Order and Sanctions seeks

to prohibit Arpin counsel from deposing the Keeper of the Records of Huntington Leasing

Corporation and Robert Baker and further to impose sanctions in the amount of $150 against

Arpin.

Arpin moves the Court to deny Plaintiff's Motion For Protective Order.

I.    FACTUAL BACKGROUND

The following is a brief factual background necessary to resolution of the dispute over Plaintiff's Motion For Protective Order.

On March 16 2001, Shawn Pouliot signed an Owner-Operator Agreement with Arpin Logistics, Inc.  It is believed that at the time Shawn Pouliot signed the Owner-Operator Agreement with Arpin Logistics, Inc., he was leasing his tractor-trailer from Huntington Leasing Corporation.  Upon information and belief, Robert Baker is the owner of Huntington Leasing Corporation.  Shawn Pouliot did not disclose to Arpin the fact that the truck was leased from Huntington to Arpin Logistics, Inc., or to Shawn Pouliot.

On August 27, 2001, Mark Pouliot, on Shawn's recommendation, was hired by Apin Logistics, Inc.  On October 22, 2001, Mark Pouliot appeared at Arpin headquarters in Secaucus, New Jersey where he met up with Shawn who was assigned to a series of deliveries on Long Island, and this Festo pickup.

The next day, October 23, 2001, Plaintiff Shawn Pouliot was injured when a Learnline 2000 unit fell on him while he was unloading it at Naugatuck Valley Community College in Waterbury, Connecticut.

Plaintiff has filed suit against Paul Arpin Van Lines, Inc., Arpin Logistics, Inc., Festo Corporation and Trans-Expo, International d/b/a/ Michael Kovac and Erica Ramirez in her capacity as an employee of Trans-Expo, International, d/b/a Michael Kovac.

As a portion of Plaintiff's damages, he claims loss of earnings as an independent contractor owner-operator. Plaintiff claims that his brother Mark and he intended to lease a number of trucks and operate a fleet. Plaintiff has claimed lost earnings as an independent contractor truck driver in the range of $1,738,530 to $1,774,398. See Exhibit 1, Gamboa Report.

II.     LAW AND ANALYSIS

The Plaintiff's Motion fails to meet the legal standard necessary to allow the Court to grant his Motion For Protective Order.

A protective order may issue on good cause shown by the moving party. Fed.R.Civ. P. 26(c); Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992). Fed.R.Civ.P. 26(c) however, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983).

A moving party may not establish good cause through conclusory statements. Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986). Good cause is established by demonstrating "a clearly defined and serious injury" resulting from disclosure. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

1.     Lack of Certification

Fed.R.Civ.P. 26 (c), in relevant part, provides "Upon motion by a party or by the person from whom discovery is sought, <u>accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action</u> . . . the court may make an order which justice requires to protect a party or a person from annoyance, embarrassment, oppression or undue burden or expense . . ." [emphasis added].

Plaintiff's counsel has not conferred with Arpin counsel in an effort to resolve the dispute.  As a result, Plaintiff's counsel has not filed any certification indicating such good faith efforts.  Plaintiff's extremely vague grounds supporting the Motion For Protective Order leave Arpin counsel with no capability of conducting this deposition in a way that addresses the Plaintiff's concerns.  For this reason, Plaintiff's Motion For Protective Order must be denied.

       2.     <u>No Statement of Clearly Defined and Serious Injury</u>

The Plaintiff has not stated any clearly defined and serious injury, which he will suffer, in his Motion For Protective Order should the depositions go forward.  As to the Huntington Leasing Corporation, Plaintiff conclusively states "there is no relevance regarding this deposition to the issue of liability and damages."  As to Robert Baker's deposition Plaintiff conclusively states "there is no relevance regarding this deposition to the issue of the liability or damages."

Plaintiff has not alleged any "annoyance, embarrassment, oppression or undue burden",

he will suffer if the deposition goes forward.  Other than the conclusory and premature assertion

that any information which might discovered by Arpin will not be relevant, Plaintiff offers no

grounds for granting the motion for protective order.

For the foregoing reasons, the Plaintiff's Motion must be denied.

3.    The Information Sought is Relevant

Even if the Court finds that lack of relevance can be construed as "annoyance,

embarrassment, oppression or undue burden", the Plaintiff's Motion must be denied because the

information sought is relevant.

Federal Rule 26(b) provides:

(b) **Discovery Scopes and Limits.**  Unless otherwise limited by order of the court in
accordance with these rules, the scope of discovery is as follows:
    (1)  *In General*.  Parties may obtain discovery regarding any matter,
    not privileged, that is relevant to the claim or defense of any party.

a.    Relevance to Damages

Evidence need not be admissible to be relevant, and thus discoverable.  Seattle Times Co.

v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).  Fed.R.Civ.P. 26(b)(1) states

that relevant inadmissible evidence is discoverable if it is "reasonably calculated to lead to the

discovery of admissible evidence."  Glover v. South Carolina Law Enforcement Division, 170

F.3d 411 (4th Cir. 1999).

Advisory Committee Note to the 2000 Amendments of Fed.R.Civ.P. 26(b)(1) reads in

part, "A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. . . . Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to claims or defenses, might be properly discoverable."  See Exhibit 2, 2000 Amendments of Fed.R.Civ.P. 26 (b)(1)

Furthermore, courts have been hesitant to make decisions on admissibility prior to trial. The United States District Court for the Southern District of New York recently stated,

> "Defendants, positing that Plaintiff may testify he was not involved in drug activity, also argue that testimony regarding the alleged drug paraphernalia should be admitted for impeachment purposes.  It would be premature to rule on Defendants' request in advance of an actual proffer of testimony by Plaintiff.  As the court noted in Giles v. Rhodes, a decision relied upon by Defendants, "to make a ruling now would require the Court to speculate as to the nature of the testimony that might open the door to the proper admission of this evidence . . . " No. 94 Civ. 6385, 2000 WL 1425046 at *2 (S.D.N.Y. Sept. 27, 2000).  The Court will defer consideration of any impeachment proffer, and any additional evidentiary issues that may by implicated by such proffer, to the time of trial.

Arpin seeks to discover information from the Keeper of Records of Huntington Leasing Corporation and Robert Baker who is believed to be the owner of Huntington Leasing and a close of friend of Shawn Pouliot. Whether Shawn and Mark Pouliot, each had actually leased a truck from Huntington Leasing is relevant to Plaintiff's claims for damages.  As the leasing of a truck is without question a significant expense for an owner-operator, the terms of the lease are relevant to Plaintiff's claim for damages.

b.      <u>Relevance to Fraud Defense</u>

Bias is defined as "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party."  It may stem from a wide variety of causes, including a "witness's dislike, or fear of a party, or a witness's self interest."  <u>United States v. Abel</u>, 469 U.S. 48, 52 (1984).

The deposition of Huntington's Keeper of the Records and Robert Baker can also be used to support Arpin's affirmative defense of fraud.  Arpin has moved for leave to amend its Answer to reflect this Fraud defense based upon newly discovered evidence.  It is believed that discovery into the Huntington Leasing Corporation documents will reveal that Shawn Pouliot's lease of the tractor trailer resulted in a very high level of indebtedness.  This indicates a bias, on the part of both Shawn and Mark Pouliot, to testify in a manner which would result in excessive money damages beings awarded to the Plaintiff.  Robert Baker, who is believed to be the person at Huntington Leasing involved in the leasing of trucks is also likely to know whether Shawn and Mark Pouliot had discussed plans to lease more vehicles, which would require still additional funds.

c.      <u>Relevance to Character for Truthfulness or Untruthfulness</u>

FRE 608(a) prohibits the use of extrinsic evidence of prior bad acts to show the witness's "character for truthfulness or untruthfulness", however Rule 608(b) permits such prior bad acts

to be inquired into on cross-examination.

FRE 608 (b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or
supporting the witness' character for truthfulness, other than conviction of crime
as provided in Rule 609, may not be proved by extrinsic evidence. They may
however, in the discretion of the court, if probative of truthfulness or
untruthfulness, be inquired into on cross-examination of the witness (1)
concerning the witness' character for truthfulness or untruthfulness . . ."

While extrinsic evidence of specific acts probative of a witness's character for

truthfulness or untruthfulness might not be admissible, the permitted inquiry during cross-

examination must be made with a good faith basis. See Michelson v. United States, 335 U.S.

469, 481 (1948) (judge properly ascertained that defendant testifying as witness, had actually

been arrested before cross-examiner was permitted to ask about underlying deeds, so "groundless

question" would not "waft an unwarranted innuendo into the jury box"). See also United States

v. Leake, 642 F.2d 715, 718-719 (4th Cir. 1981) (approving questions about misdeeds on

assumption that counsel has "reasonable basis" for believing that witness "actually committed"

them). See also, United States v. Oshatz, 704 F.Supp. 511, 514 (S.D.N.Y. 1989) ("The

government can question a character witness about specific instances of misconduct, provided it

believes in good faith that the alleged bad act has a basis in fact and the question is relevant to

the character traits at issue.")

The information obtained from the Huntington Leasing Corporation documents and Robert Baker might reveal a good faith basis for inquiry on cross-examination.  Arpin, is permitted under the Federal Rules of Civil Procedure to discover inadmissible evidence which is reasonably calculated to lead to admissible evidence.  It is believed that Shawn Pouliot did not disclose to Arpin Logistics, Inc. that he was not the owner of the truck.  An inquiry into Pouliot's conflicting accounts of his ownership of his tractor-trailer is an admissible inquiry permitted during cross-examination pursuant to FRE 608(b) for purposes of showing his character for truthfulness or untruthfulness.

       d.      <u>Relevance to Evidence of Contradiction</u>

Information obtained from Huntington Leasing Corporation and Robert Baker might also indicate contradictions in the expected testimony of Shawn Pouliot and Mark Pouliot.

Admission for contradiction is proper because 'where a defendant in his direct testimony falsely states a specific fact, the prosecution will not be prevented from proving either through cross-examination or by calling its own witnesses, that he lied as to that fact.'  <u>United States v. Cuadrado</u>, 413 F.2d 633, 635 (2d Cir. 1969) (quoting <u>United States v. Beno</u>, 324 F.2d 582, 588 (2d Cir. 1963)) (emphasis in original)."  See <u>United States v. Garcia</u>, 900 F.2d 571, 575 (2d Cir. 1990)

Shawn and Mark both contend that in the time prior to Shawn Pouliot's injury, they

planned to lease a number of trucks for purposes of operating a small commercial fleet.  These plans have been presented by the Plaintiff in support of his claim for lost earnings.  It is anticipated that Shawn and Mark will both testify as to these plans.

Arpin is entitled to access to the Huntington Leasing Corporation records and to the opportunity to depose Robert Baker.  Information from these depositions is likely to lead to evidence which can be used to contradict the testimony of Shawn and Mark Pouliot at trial.

For the foregoing reasons, Arpin requests the Court to deny the Plaintiff's Motion For Protective Order.

4.     <u>Failure to Substantiate Attorney's Fees</u>

Plaintiff while requesting attorney's fees in the amount of $150, has failed to provide an itemized account of these fees.  For this reason, the Court has no evidence upon which to determine whether such fees are reasonable or "calculated by using the normal hourly rate of the attorney."  See United States District Court of Connecticut Local Rule 37(a)(4).

Furthermore, as discussed above, Arpin is entitled to depose the Keeper of Records of Huntington Leasing Corporation and Robert Baker.  For that reason, Plaintiff's Motion For Sanctions must be denied.

For the foregoing reasons, Plaintiff's Motion For Protective Order and Motion For

Sanctions (#305) must be denied.

DEFENDANT/THIRD PARTY
PLAINTIFF/CROSS-CLAIM PLAINTIFF


_____
Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street, P.O. Box 541
Westerly, RI 02891
(401) 596-0183
(401) 596-6845 (Fax)

### ***CERTIFICATION***

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this ___ day of October 2004 to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street, New Haven, CT 06510, Roland F. Moots, Jr., Esquire of *Moots, Pellegrini, Mannion, Martindale & Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire *Halloran & Sage*, One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and James R. Oswald, Esquire of *Adler, Pollack & Sheehan,* P.C., 2300 Financial Plaza, Providence, RI 02903-2443.


_____

11

1