UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 1302 (DJS) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE  FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY A | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL | : | OCTOBER 18, 2004 |

### _PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'S OBJECTION TO_ _PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (# 306)_

Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter "Arpin") object to

Plaintiff's Motion For Protective Order and Sanctions dated October 1, 2004 which is designated

as court document number (#306).  Plaintiff's Motion For Protective Order and Sanctions seeks

to prohibit Arpin from obtaining certain documents from and deposing Mark Pouliot and

obtaining police reports regarding Shawn Pouliot from the Cuyahoga Falls Police Department.

In addition, the Plaintiff moves the Court to impose sanctions in the amount of $150 against

Arpin.

Arpin moves the Court to deny Plaintiff's Motion For Protective Order.

I.     <u>LAW AND ANALYSIS</u>

The Plaintiff's Motion fails to meet the legal standard necessary to allow the Court to grant his Motion For Protective Order.

A protective order may issue on good cause shown by the moving party.  Fed.R.Civ. P. 26(c); <u>Dove v. Atlantic Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992).  Fed.R.Civ.P. 26(c) however, "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes."  <u>Bridge C.A.T. Scan Assocs. v. Technicare Corp.</u>, 710 F.2d 940, 944-45 (2d Cir. 1983). 963 F.2d 15, 19 (2d Cir. 1992).

A moving party may not establish good cause through conclusory statements.  <u>Anderson v. Cryovac, Inc.</u>, 805 F.2d 1, 8 (1st Cir. 1986).  Good cause is established by demonstrating "a clearly defined and serious injury" resulting from disclosure.  <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 483 (3d Cir. 1995).

1.     <u>Lack of Certification</u>

Fed.R.Civ.P. 26 (c), in relevant part, provides "Upon motion by a party or by the person from whom discovery is sought, <u>accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute</u>

<u>without court action</u> . . . the court may make an order which justice requires to protect a party or a person from annoyance, embarrassment, oppression or undue burden or expense . . ." [emphasis added].

Plaintiff's counsel has not conferred with Arpin counsel in an effort to resolve the dispute. As a result, Plaintiff's counsel has not filed any certification indicating such good faith efforts. Plaintiff's extremely vague grounds supporting the Motion For Protective Order leave Arpin counsel with no capability of conducting this deposition in a way that addresses the Plaintiff's concerns. For this reason, Plaintiff's Motion For Protective Order must be denied.

2.   <u>Cuyahoga Falls Police Department</u>

On October 4, 2004, the Plaintiff filed a Motion For Protective Order and Sanctions (#306) with the Court. The requested protective order was intended to prevent Arpin's discovery of Cuyahoga Falls, Ohio Police Department records regarding a March 6, 1990 robbery at a Sunoco gas station in Cuyahoga Falls and a burglary at a Little Caesar's Pizza restaurant on July 4, 1991 in Cuyahoga Falls.

On October 5, 2004, Captain Tom Pozza, Investigation and Records Commander of the Cuyahoga Falls Police Department, without solicitation, and of his own volition faxed redacted copies of the requested police records to Arpin counsel. At that time and as of this current date no protective order has been issued by the Court. The records have been safeguarded.

Arpin must be permitted to depose the Keeper of the Records of the Cuyahoga Falls Police Department to obtain police records which are not redacted.

It is believed that the Plaintiff, while working as an employee at a Sunoco Gas Station was involved in a March 6, 1990 Sunoco Gas Station robbery.  Namely, Shawn Pouliot arranged with a fellow employee at the Sunoco Gas Station to stage a robbery at the store and share in the proceeds.  It is believed that Shawn Pouliot assaulted the Sunoco employee, robbed the store register and split the proceeds with the assaulted employee.

It is also believed that Shawn Pouliot, while working as an employee at a Little Caesar's restaurant, stole funds from the restaurant's safe on July 4, 1991.  It is further believed that Pouliot refused to take a polygraph test during the Cuyahoga Falls Police Department's investigation of the incident.

Arpin is entitled to these records because they are relevant pursuant to Fed.R.Civ.P. 26(b)(1).

Fed.R.Civ.P. 26(b)(1) states:

(b) **Discovery Scopes and Limits.**  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
    (1) *In General*.  Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.

Evidence need not be admissible to be relevant, and thus discoverable.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).  Fed.R.Civ.P. 26(b)(1) states

that relevant inadmissible evidence is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence."  <u>Glover v. South Carolina Law Enforcement Division</u>, 170 F.3d 411 (4th Cir. 1999).

Advisory Committee Note to the 2000 Amendments of Fed.R.Civ.P. 26(b)(1) reads in part, "A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. . . . Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to claims or defenses, might be properly discoverable."  See Exhibit 1.

Furthermore, courts have been hesitant to make decisions on admissibility prior to trial. The United States District Court for the Southern District of New York recently stated,

> "Defendants, positing that Plaintiff may testify he was not involved in drug activity, also argue that testimony regarding the alleged drug paraphernalia should be admitted for impeachment purposes.  It would be premature to rule on Defendants' request in advance of an actual proffer of testimony by Plaintiff.  As the court noted in <u>Giles v. Rhodes</u>, a decision relied upon by Defendants, "to make a ruling now would require the Court to speculate as to the nature of the testimony that might open the door to the proper admission of this evidence . . . " No. 94 Civ. 6385, 2000 WL 1425046 at *2 (S.D.N.Y. Sept. 27, 2000).  The Court will defer consideration of any impeachment proffer, and any additional evidentiary issues that may by implicated by such proffer, to the time of trial.

> <u>Dallas v. Goldberg</u>, 143 F.Supp.3d 312, 318-319 (S.D.N.Y. 2001).

FRE 608(a) while generally prohibiting the use of extrinsic evidence of prior bad acts to

show the witness's character for "truthfulness or untruthfulness", permits inquiry into such

incidents on cross-examination.

FRE 608 (b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence.  They may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . ."

While extrinsic evidence of specific acts probative of a witness's character for

truthfulness or untruthfulness is generally not admissible, the permitted inquiry during cross-

examination must be made with a good faith basis.  See <u>Michelson v. United States</u>, 335 U.S.

469, 481 (1948) (judge properly ascertained that defendant testifying as witness, had actually

been arrested before cross-examiner was permitted to ask about underlying deeds, so "groundless

question" would not "waft an unwarranted innuendo into the jury box").  See also <u>United States</u>

<u>v. Leake</u>, 642 F.2d 715, 718-719 (4th Cir. 1981) (approving questions about misdeeds on

assumption that counsel has "reasonable basis" for believing that witness "actually committed"

them).  See also, <u>United States v. Oshatz</u>, 704 F.Supp. 511, 514 (S.D.N.Y. 1989) ("The

government can question a character witness about specific instance of misconduct, provided its

believes in good faith that the alleged bad act has a basis in fact and the question is relevant to

the character traits at issue.")

Both of the incidents recounted above are relevant to the Plaintiff's character for truthfulness or untruthfulness. It is believed that Plaintiff staged a robbery at the Sunoco Gas Station in an effort to collect money from the store's register. As to the Little Caesar's incident, it is believed that Plaintiff, used his position as an employee to obtain the safe combination and then used the combination to rob the safe. It is believed that Plaintiff, then refused to cooperate in the Cuyahoga Falls Police Department investigation by refusing to take a polygraph examination.

Both of these incidents are probative of Plaintiff's character for untruthfulness or truthfulness. It is also quite likely that Plaintiff will testify at trial in this case, thereby permitting a good faith inquiry under FRE 608(b).

It is without question that the above incidents are relevant to untruthfulness or truthfulness.

Courts have previously permitted inquiry into incidents of prior use of a false name: See United States v. Geda, 23 F.3d 1473, 1476-77 (8th Cir. 1994), forgery; United States v. Waldrip, 981 F.2d 799, 802-03 (5th Cir. 1993), and attempts to threaten potential witnesses to keep them from testifying truthfully. United States v. Manske, 186 F.3d 700, 774-76 (7th Cir. 1999).

These incidents are similar in nature to the deceptive actions of the Plaintiff in the

Sunoco and Little Caesar's incidents.  Arpin must be permitted to inquire into these incidents on

cross-examination should Shawn Pouliot testify.

Furthermore, F.R.E. 608(b) is not an absolute bar to presentation of extrinsic evidence

relating to credibility.

> Rule 608's bar on extrinsic evidence relating to credibility is not absolute: where
> the prior acts are not denied by the witness, evidence relating to them may be
> introduced.  See United States v. Zandi, 769 F.2d 229, 236 (4th Cir. 1995); Carter
> v. Hewitt, 617 F.2d 961, 970 (3d Cir. 1980).  Therefore, until it is known how the
> potential witnesses might testify regarding the prior acts, no determination can be
> made regarding admissibility of extrinsic evidence.

Wagschal v. Sea Ins. Co., Ltd., 861 F.Supp. 263, 265 (S.D.N.Y. 1994) (quoting Davidson

Pipe Co., v. Laventhol and Horwath, 120 F.R.D. 455, 462 (S.D.N.Y. 1988)).

While FRE 608(b) does not generally permit extrinsic evidence to impeach a testifying

witness's truthfulness, the information from the police reports is admissible in the form of an

inquiry of the Plaintiff during cross-examination, should he choose to testify.  Should the

Plaintiff fail to deny the allegations, the extrinsic evidence of the police reports would be

admissible.

The police reports might also become admissible for the purpose of contradicting the

Plaintiff's testimony.

Admission for contradiction is proper because 'where a defendant in his direct testimony

falsely states a specific fact, the prosecution will not be prevented from proving either through

cross-examination or by calling its own witnesses, that he lied as to that fact.' United States v. Cuadrado, 413 F.2d 633, 635 (2d Cir. 1969) (quoting United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963)) (emphasis in original)." See United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990).

While the above cited cases considered contradiction of direct testimony, there is no reason why this should not apply to extrinsic evidence offered to contradict testimony made during cross-examination. The police reports would not be offered to show the Plaintiff's character for truthfulness, but rather would be offered to contradict the testimony of the Plaintiff.

The scenario described above could plausibly occur at trial. At that point, the police reports might be admissible for purposes of contradiction of the Plaintiff's testimony.

For the foregoing reasons, Arpin requests this Court to deny Plaintiff's Motion for Protective Order (#306) relating to the Cuyahoga Falls Police Department records.

3.    Mark Pouliot's Cellular Phone Records

Plaintiff's Motion For Protective Order also seeks production of Mark Pouliot's cellular phone records from July 1, 2001 to December 31, 2001.

A protective order may issue on good cause shown by the moving party. Fed.R.Civ. P. 26(c); Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992). Fed.R.Civ.P. 26(c) however, "is not a blanket authorization for the court to prohibit disclosure of information

whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983).

A moving party may not establish good cause through conclusory statements. Anderson v. Cryovac, Inc., 805 F.2d 1, 8 (1st Cir. 1986). Good cause is established by demonstrating "a clearly defined and serious injury" resulting from disclosure. Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

The Plaintiff essentially argues that any information obtained through Mark Pouliot's cellular phone records is not relevant.

Federal Rule 26(b) provides:

(b) **Discovery Scopes and Limits.**  Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) *In General*.  Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.

Evidence need not be admissible to be relevant, and thus discoverable. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Fed.R.Civ.P. 26(b)(1) states that relevant inadmissible evidence is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence." Glover v. South Carolina Law Enforcement Division, 170 F.3d 411 (4th Cir. 1999).

Advisory Committee Note to the 2000 Amendments of Fed.R.Civ.P. 26(b)(1) reads in

part, "A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. . . . Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to claims or defenses, might be properly discoverable."  See Exhibit 1, 2000 Amendments of Fed.R.Civ.P. 26 (b)(1)

Mark Pouliot was hired by Arpin Logistics, Inc. on August 29, 2001, upon his brother Shawn's recommendation.  Shortly before Shawn's accident, Mark Pouliot was sent to California on a job by Arpin.  Mark Pouliot came to New Jersey and spent the night with his brother Shawn on October 22, 2001.  The following day, Shawn's injury occurred.

Three to five days after the accident, Mark Pouliot appeared in East Greenwich, Rhode Island at Arpin headquarters.  The straight truck, which Shawn was using when his injury occurred, was located at Arpin headquarters.  Mark filmed the liftgate on the Arpin straight truck on that day.  Mark quit his job at Arpin Logistics, Inc. on the day after filming the liftgate.  It is believed that Mark might have purchased the video camera prior to the accident.

Prior to Shawn Pouliot's injuries, Mark and Shawn had been planning on starting their own trucking business and would have needed additional money to buy equipment.

It is believed that there may have been discussions between Mark and Shawn about this subject matter.  The cellular phone records of Mark Pouliot may indicate whether such discussions took place.

The discovery of Mark Pouliot's cellular phone records is relevant to Arpin's affirmative defense of fraud against the Plaintiff.  Mark Pouliot's phone records are likely to lead to admissible evidence regarding this fraud defense.

For the foregoing reasons, Arpin requests the Court to deny the Plaintiff's Motion For Protective Order.

4.    Failure to Substantiate Attorney's Fees

Plaintiff while requesting attorney's fees in the amount of $150, has failed to provide an itemized account of these fees.  For this reason, the Court has no evidence upon which ro determine whether such fees are reasonable or "calculated by using the normal hourly rate of the attorney."  See United States District Court of Connecticut Local Rule 37(a)(4).

Furthermore, as discussed above, Arpin is entitled to depose Mark Pouliot and the Keeper of the Records of the Cuyahoga Falls Police Department.  Therefore, no grounds exist upon which to claim attorney's fees.

For the foregoing reasons, Plaintiff's Motion For Protective Order and Motion For

Sanctions (#306) must be denied.

DEFENDANT/THIRD PARTY
PLAINTIFF/CROSS-CLAIM PLAINTIFF


_____

Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street, P.O. Box 541
Westerly, RI 02891
(401) 596-0183
(401) 596-6845 (Fax)


### _CERTIFICATION_

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this ___ day of October 2004 to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street, New Haven, CT 06510, Roland F. Moots, Jr., Esquire of *Moots, Pellegrini, Mannion, Martindale & Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire *Halloran & Sage*, One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and James R. Oswald, Esquire of *Adler, Pollack & Sheehan,* P.C., 2300 Financial Plaza, Providence, RI 02903-2443.


_____