UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SHAWN POULIOT,          :
   Plaintiff,           :
               :
      v.               :          C.A. No. 3:02 CV1302 (DJS)
               :
PAUL ARPIN VAN LINES, INC.   :
AND ARPIN LOGISTICS, INC.,    :
THE FESTO CORPORATION, MICHAEL :
D. KOVAC, D/B/A TRANS-EXPO    :
INTERNATIONAL AND ERICA       :
RAMIREZ,IN HER CAPACITY AS    :
EMPLOYEE OFTRANS-EXPO        :
INTERNATIONAL,                :
   Defendants.          :          December 15, 2004

## MEMORANDUM OF LAW IN SUPPORT OF FESTO CORPORATION'S MOTION FOR SUMMARY JUDGMENT AS TO THE COMMON-LAW INDEMNITY COUNTS ALLEGED BY PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS,INC.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56 of this Court's

Local Rules, Defendant The Festo Corporation ("Festo") respectfully submits this Memorandum

of Law in support of its Motion for Summary Judgment as to (1) Counts 1, 2, 9 and 10 asserted

against Festo by Defendants Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter,

collectively "Arpin") in Arpin's Amended Answer and Cross-Claims dated October 6, 2004;[1]

and (2) Counts 1 and 4 asserted against Festo by Arpin in Arpin's Second Amended Third-Party

Complaint dated June 9, 2003,[2] seeking common-law indemnification against Festo.[3]

---

[1] Count 1, "Common Law Indemnification against Festo Corporation for Negligence;"
Count 2, "Common Law Indemnification against Festo Corporation in Vicarious Liability for Negligence;"
Count 9, "Common Law Indemnification Against Festo Corporation for Negligent Misrepresentation;"
Count 10, "Common Law Indemnification Against Festo Corporation in Vicarious Liability for Negligent Misrepresentations."

[2] Count 1, "Common Law Indemnification and/or Equitable Indemnification against Festo Corporation;"
Count 4, "Common Law and/or Equitable Indemnity in Vicarious Liability as to Festo Corporation."

Summary judgment should be granted because – after extensive discovery establishing Arpin's own active misconduct and recklessness in the accident that is the subject matter of this action – there exists no genuine issue of material fact that, first, Arpin's negligence was active and not merely passive, and second, Arpin had at least some degree of control over the situation giving rise to Plaintiff's injuries. In particular, the undisputed facts establish that Arpin was aware of but failed to record critical information about the Festo shipment into its computer system (including the fact that the Festo shipment included a mobile workstation, the fact that the mobile workstation was on wheels, and the dimensions of the mobile workstation); this information was critical to the selection by Arpin employees of proper, safe equipment for the Festo shipment, including a lift gate that would descend horizontal to the ground; the Arpin employees who needed to know this information failed to get this information; and lacking this critical information, Arpin employees assigned Plaintiff to unload a five-foot-long, six-foot-high, three-foot-wide workstation – on wheels – using a lift gate designed to tilt downward as it descended, thereby allowing the mobile workstation to fall off the lift gate and onto Plaintiff.

Granting summary judgment on the indemnity claims does not leave Arpin without a remedy. Even if the indemnity claims are dismissed, Festo and the other co-defendants remain party defendants by virtue of Plaintiff's direct claims against them. Thus, under the apportionment of liability scheme adopted in Connecticut as part of Tort Reform, each party, including Arpin, will be liable only for its proportionate share of fault. In addition, Arpin's contribution claims against Festo and the other co-defendants remain viable. Indeed, even if the

---

[3] To the extent Arpin continues to seek recovery from Festo in "equitable indemnification" in Counts 1 and 4 of its Second Amended Third-Party Complaint, this Court has already ruled that Arpin's claims for "equitable indemnification" fail to state a claim upon which relief may be granted. See Memorandum of Decision dated February 9, 2004 (granting Festo's motion to dismiss Arpin's cross-claims for "equitable indemnification"). Thus, Festo hereby moves for (and the Court should grant) summary judgment as to those portions of Counts 1 and 4 of Arpin's Second Amended Third-Party Complaint that purport to seek recovery for equitable indemnification.

Court were to grant Festo's motion for summary judgment, Arpin would be able to present to the trier of fact for consideration at trial the issue of Festo's alleged negligence. See Conn. Gen. Stat. § 52-572h(f). This would be true even if Plaintiff were to settle and release his claims with Festo prior to trial. See Conn. Gen. Stat. § 52-572h(n) (reducing total award of damages by the amount of any released person's negligence proven to the trier of fact). Thus, Arpin is more than adequately protected against paying more than its proportionate share of liability. Arpin should not be permitted to use unsupported indemnification claims simply as insurance against a disproportionate damage award.

As set forth below, as a matter of law Arpin cannot recover on its claims for common-law indemnification against Festo. Summary judgment should be granted.

## FACTUAL AND PROCEDURAL HISTORY

This case arises out of an accident that occurred on October 23, 2001. Plaintiff Shawn Pouliot, a truck driver for Arpin, was injured when a large, wheeled workstation that he was unloading fell off a lift gate on the Arpin truck and fell onto him, rendering him a paraplegic. Arpin concedes that the lift gate was not level, but rather, was tilted downward, toward the Plaintiff, when the workstation fell onto him. A detailed recitation of the undisputed facts is set forth in Festo's Local Rule 56(a)1 Statement, filed concurrently herewith.

In June 2002, Plaintiff commenced this action against Arpin only. He alleged that Arpin provided Plaintiff with a defective lift gate; that Arpin failed to inspect and maintain the lift gate; and failed to provide Plaintiff with proper equipment for securing loads and otherwise failed to warn Plaintiff of the dangers involved in this shipment. On July 30, 2002, Arpin removed the action to this Court.

3

On November 5, 2002, Arpin filed a Third-Party Complaint against Festo and Michael D. Kovac d/b/a Trans-Expo International, Inc. ("Trans-Expo") and Erica Ramirez ("Ramirez"). Thereafter, on June 9, 2003, Arpin amended its Third-Party Complaint and filed its Second Amended Third-Party Complaint against Festo, Trans-Expo and Ramirez (Docket No. 108). Arpin's Second Amended Third-Party Complaint contains two counts against Festo: Count One ("Common Law Indemnification and/or Equitable Indemnification against Festo Corporation), and Count Four ("Common Law and/or Equitable Indemnity in Vicarious Liability as to Festo Corporation").

On August 14, 2003, Plaintiff filed a Motion to Amend and proposed Third Amended Complaint in which Plaintiff for the first time asserted direct claims against Festo, Trans-Expo and Ramirez. On August 18, 2003, this Court granted Plaintiff's Motion to Amend and ordered that the clerk docket the Third Amended Complaint. Subsequently, Plaintiff sought to file a Fourth and then a Fifth Amended Complaint, to add claims of recklessness against Arpin. On October 31, 2003, the Court granted Plaintiff's Motion to Amend and ordered that the clerk docket the Fifth Amended Complaint (Document No. 201).

Five of the seven counts in Plaintiff's Fifth Amended Complaint are alleged against Arpin, including allegations of recklessness against Arpin:

> The injuries to Shawn Pouliot were the direct and proximate result of the defendant [Arpin's] recklessness in that [Arpin was] provided with information by the shipper's agent that special equipment and packaging was necessary for the safe performance of this delivery, and they made no effort to convey this critical information to Shawn Pouliot prior to the job being performed. Moreover, [Arpin] actually provided him with a broken lift gate in complete disrepair when they knew that it would be utilized in the delivery of the Learnline unit.

Plaintiff's Fifth Amended Complaint, Count Five, ¶ 7 & Count Six, ¶ 7.

Plaintiff also makes repeated allegations against Arpin of active negligence, including that Arpin

- ○    provided him with a defective lift gate;

- ○    failed to adequately inspect the lift gate;

- ○    failed to properly service the lift gate;

- ○    failed to replace the lift gate with a safe alternative;

- ○    failed to equip the truck with proper equipment for securing loads;

- ○    sent Plaintiff on a job without proper equipment and/or support staff;

- ○    failed to inform Plaintiff of information provided to them that the unit was on wheels; required a palletjack; palleting; and a proper liftgate for delivery;

- ○    failed to comply with federal safety requirements under the Motor Carrier Act.

Plaintiff's Fifth Amended Complaint, Count One, ¶ 7 & Count Two, ¶ 7.

Plaintiff asserted a single count against Festo, for alleged negligence. See Plaintiff's Fifth Amended Complaint, Count Three. Each of the allegations in that count is asserted only "[u]pon information provided by Arpin and belief." Id.

On December 18, 2003, Arpin filed its "Answer and Crossclaims" to Plaintiff's Fifth Amended Complaint. Included within Arpin's Answer and Crossclaims were Arpin's cross-claims asserted against Festo. These cross-claims included sixteen counts against Festo, seeking apportionment, contribution, equitable indemnification and common-law indemnification.

On January 13, 2004, Festo moved to dismiss all sixteen counts asserted by Arpin in its cross-claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6). In a Memorandum of Decision dated February 9, 2004, the Court granted Festo's motion to dismiss Counts 5, 6, 13

and 14 (for apportionment) and Counts 3, 4, 11 and 12 (for "equitable indemnification").[4] The

Court denied Festo's motion to dismiss Counts 7, 8, 15 and 16 (contribution), and thus, Arpin's

claims for contribution against Festo remain, in the event that Arpin is found liable to Plaintiff.

However, the Court denied Festo's motion to dismiss Counts 1, 2, 9 and 10 (common-law

indemnification), noting that in its motion "Festo contends that Arpin's pleadings do not show

that Festo was in exclusive control of the situation that caused Pouliot's injuries." See February

9, 2004 Memorandum of Decision, at 7. The Court noted that the issue of exclusive control "is

the only standard Festo relies on and so it is the only standard the court will consider" on the

motion to dismiss. Id. The Court denied the motion to dismiss Arpin's common-law indemnity

claims, "constru[ing] all allegations in the complaint in the light most favorable to the non-

moving party." Id. at 8.[5]

---

[4] Although the Court dismissed Arpin's apportionment cross-claims, the Court has indicated that at trial, because of Plaintiff's direct claims, each defendant's respective degree of fault, if any, will be apportioned accordingly. See February 9, 2004 Memorandum of Decision, at 4 ("Pouliot brought Festo into this case as a defendant and placed the Court on notice that liability could be subject to apportionment among Arpin, Festo and any other defendant joined as parties to this case").

[5] In deciding Festo's Rule 12(b)(6) motion to dismiss, the Court expressly limited itself to "'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.'" February 9, 2004 Memorandum of Decision , at 3 (quoting Samuels v. Air Trans. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). The Court did not have before it, and did not consider, any of the testimony or documentary evidence that Festo has submitted in support of its present motion for summary judgment. Thus, although the Court noted that "[a] reasonable jury could conclude that Festo, as the manufacturer of the Learnline 2000 unit, had exclusive control over the dangerous conditions that led to the accident and Pouliot's injuries" (February 9, 2004 Memorandum of Decision, at 8), that conclusion was based solely on Arpin's pleadings. Because the Court considers evidence on a motion for summary judgment, the Court's Memorandum of Decision denying Festo's motion to dismiss has no effect on the present motion. See New Jersey Auto Ins. Plan v. Sciarra, 103 F. Supp.2d 388, 420 (D.N.J. 1998) (rejecting claim of preclusive effect of prior denial of motion to dismiss on subsequent motion for summary judgment; "different standards govern each type of motion, and a denial of a motion to dismiss for failure to state a claim within the pleadings does not preclude a motion for summary judgment on the basis of the evidence . . . gathered during discovery"); Key West Harbor Development Corp. v. City of Key West, No. 90-10027-CIV-KING, 1991 WL 496886, at * (S.D. Fla. Dec. 16, 1991) (Exhibit 1) (denial of defendant's motion to dismiss stating that plaintiff had a property interest "of which [defendant] could not deprive it without some notice or hearing" did not preclude subsequent summary judgment motion on same issue; "a motion to dismiss and one for summary judgment have different standards"); Peters v. Lowrey, No. CIV.A. 94-2738, 1997 WL 346720, at *2 (E.D. La. June 23, 1997) (Exhibit 2) (denial of defendants' motion to dismiss was not res judicata as to defendants' summary judgment motions on same issue; because "[o]n a motion for summary judgment, the issue is evidence, not allegations. . . . [t]he denial of the motion to dismiss has no effect on these summary judgment motions"); Amendola v. Bayer, No. 85 C 9161, 1988 WL 128687, at *2 (N.D. Ill. Nov. 21, 1988) (Exhibit 3)

On October 6, 2004, Arpin filed its "Amended Answer and Cross Claims of Defendant Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. to Fifth Amended Complaint of Shawn Pouliot" (Document No. 314).  Arpin's cross-claims against Festo mirror the cross-claims it had previously asserted against Festo that remained viable following this Court's February 9, 2004 Memorandum Decision dismissing certain of Arpin's original cross-claims.

Since the filing of Festo's motion to dismiss, the parties have taken a multitude of depositions, including the depositions of Joe Rocha, the Arpin Logistics employee who chose the truck/lift gate for the moving job during which Plaintiff was injured; Mike Montgomery, the Arpin Logistics employee who assigned Plaintiff to this particular moving job; William Mottla, the Arpin Logistics employee responsible for ensuring that all relevant information about this job was inputted into the Arpin Logistics computer system; and William Tweedy, the Arpin Logistics employee responsible for dispatching and communicating with Plaintiff on this job.

As set forth below and in its Local Rule 56(a)1 Statement, Festo respectfully submits that the undisputed testimony of Arpin's own employees and undisputed documentary evidence establish that (1) Arpin was aware of but failed to record critical information into its computer system (including the fact that the Festo shipment included a mobile workstation, the fact that the Festo mobile workstation was on wheels, and the dimensions of the Festo mobile workstation); (2) this information was critical to the selection by Arpin employees of proper, safe equipment for the Festo shipment, including a lift gate that would descend horizontal to the ground; (3) the Arpin employees who needed to know this information failed to get this information; and (4) lacking this critical information, Arpin employees assigned Plaintiff to unload a five-foot long,

(allowing defendant's summary judgment motion despite prior denial of motion to dismiss; "[t]he fact that this court held that [plaintiff] had alleged sufficient facts to survive a motion to dismiss this count is immaterial.  It is axiomatic that different standards are used to evaluate motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56") (emphasis in original).

7

six-foot high, three-foot wide workstation weighing hundreds of pounds – on wheels – using a lift gate <u>designed to tilt downward as it descended</u>, thereby allowing the mobile workstation to roll off the lift gate and injure Plaintiff.

With the benefit of this undisputed testimonial and documentary evidence, Festo now moves for summary judgment as to all of Arpin's claims against it for common-law indemnification (Counts 1, 2, 9 and 10 of Arpin's cross-claims seeking common-law indemnification, and Counts 1 and 4 of Arpin's Second Amended Third-Party Complaint).

## <u>ARGUMENT</u>

### BECAUSE THERE EXISTS NO GENUINE ISSUE OF MATERIAL FACT REGARDING APRIN'S CLAIMS FOR COMMON-LAW INDEMNIFICATION, <u>FESTO'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED</u>

Because the undisputed facts establish that Arpin as a matter of law cannot establish at least two of the elements required for common-law indemnification under Connecticut law, the Court should grant Festo's Motion for Summary Judgment as to Counts 1, 2, 9 and 10 of Arpin's Amended Cross-Claims, and Counts 1 and 4 of Arpin's Second Amended Third-Party Complaint.

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). "'One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose.'" <u>Crown Theaters, L.P. v. Daly</u>, 331 F. Supp.2d 89, 92 (D. Conn. 2004) (quoting <u>Celotex v. Catrett</u>, 477 U.S. 317, 323-24 (1986)).

8

Although "[t]he court must view all inferences and ambiguities in the light most favorable to the nonmoving party," in order to defeat a motion for summary judgment, the nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Estate of Chipwata v. Rovinetti, No. 302CV858(DJS), 2004 WL 722166, at *2-3 (D. Conn.. March 31, 2004) (**Exhibit 4**) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Instead, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Phaneuf v. Cipriano, 330 F.Supp.2d 74, 77 (D. Conn. 2004) (internal citations omitted). However, "'[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to avoid the entry of summary judgment against the non-moving party].'" Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986) (emphasis added)).

## I.    UNDER THE UNDISPUTED EVIDENCE, AS A MATTER OF LAW ARPIN CANNOT ESTABLISH THAT ITS OWN WRONGDOING WAS MERELY PASSIVE AND THAT FESTO'S PURPORTED  WRONGDOING WAS ACTIVE

### A.    The Standard for Common-Law Indemnification

Under long-established Connecticut law, "[o]rdinarily there is no right of indemnity or contribution between joint tort-feasors." Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 697, 694 A.2d 788, 790 (1997) (citations and internal quotation marks omitted). This is because "[i]n an action for indemnity, as distinguished from an action for contribution, one tortfeasor seeks to impose total liability upon another." Id. at 697 n.3, 694 A.2d at 790 n.3. Indemnity "shifts the impact of liability from passive joint tortfeasors to active ones." Id. at 697, 694 A.2d at 790 (citations and internal quotation marks omitted).

However, Connecticut law recognizes a limited exception to the general rule.  A claim for common-law indemnification will be allowed against a co-defendant in tort only where that defendant "is in control of the situation and his negligence alone is the direct immediate cause of the injury," and where "the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong."  Id. at 697, 694 A.2d at 790.

Thus, in Connecticut a party must establish each of four elements to recover for common-law indemnification:

> These elements are:  (1) that the other tortfeasor was negligent; (2) that [that] negligence, rather than [the party's] negligence, was the direct, immediate cause of the accident and injuries; (3) that [the other tortfeasor] was in control of the situation to the exclusion of [the party]; and (4) that [the party] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent.

Id. at 698, 694 A.2d at 791.[6]

The burden of establishing its claim for common-law indemnification rests on Arpin. Because the undisputed facts demonstrate as a matter of law that Arpin cannot establish any one of these elements – for example, that its own wrongdoing constituted merely "passive," pass-through negligence and that Festo's alleged negligence was "active," or that only Festo had exclusive control over the situation that caused Plaintiff's injuries – then summary judgment should be granted.

It is important to underscore that the present motion seeks summary judgment not on Arpin's ultimate liability to Plaintiff, but rather on Arpin's claims for common-law indemnification.  Thus, Festo does not need to establish Arpin's ultimate liability to the Plaintiff. Instead, the undisputed evidence need only demonstrate as a matter of law that Arpin's

---

[6] Arpin does not allege claims for contractual indemnification against Festo.

10

wrongdoing is such that Arpin cannot establish that its own conduct was merely "passive" or pass-through conduct, or that it had zero control over the situation that caused Plaintiff's injuries. Connecticut courts have recognized this important distinction: although determination of the elements of a common-law indemnification claim may ordinarily be questions of fact, the courts have not hesitated to grant summary judgment on common-law indemnification claims where, as a matter of law, a party cannot establish all the requisite elements. See, e.g., Gott v. Greed-Monarch, Inc., No. CV 000274741S, 2003 WL 22333005, at * 6 (Conn. Super. Ct. Sept. 30, 2003) (**Exhibit 5**); Shelby Ins. Co. v. Castellon, No. CV 980416779S, 2000 WL 775506, at * 3-4 (Conn. Super. Ct. May 26, 2000) (**Exhibit 6**); Adley v. Connecticut Post Ltd P'ship, No. CV 970060913S, 1999 WL 30593, at *3 (Conn. Super. Ct. Jan. 4, 1999) (**Exhibit 7**); Hanover Ins. Co. v. Valley Electric Supply Co., Inc., Nos. X02 CV 990174400S, X02 CV 00-0174362S, X02 CV 00-0174500S, 2002 WL 31843462, at *3 (**Exhibit 8**); Crown Theaters, L.P. v. Daly, 331 F. Supp.2d at 93.

As set forth below and in the accompanying Local Rule 56(a)1 Statement, the evidence is uncontroverted, and overwhelming, that Arpin's own wrongdoing – in particular, its employee's failure to note in the Arpin computer system that the Festo mobile workstation was on wheels and was very large – ultimately led to Arpin's employees assigning Plaintiff to work with a small lift gate that Arpin's employees concede was unsafe for the Learnline mobile workstation due to its "tilt-down" design. Where Arpin's own employees concede, in uncontroverted testimony, that they supplied Plaintiff with a lift gate that was unsafe for unloading a large wheeled unit because of Arpin's failure to provide them with information in Arpin's possession, Arpin's own wrongdoing cannot be termed merely "passive" negligence, as a matter of law. As Arpin cannot

show that its own misconduct was merely "passive," it cannot establish its claim for

indemnification, and summary judgment should be granted.

    B.    Arpin's Claim for Common-Law Indemnification Must Fail Because the
             Undisputed Evidence Shows That Arpin Cannot Establish That Its Own
             Negligence Is Merely Passive, and Festo's Alleged Negligence Is Active

       Connecticut courts "have distinguished between 'active or primary negligence,' and

'passive or secondary negligence.'" Skuzinski, 240 Conn. at 697, 694 A.2d at 790. Only where

the party seeking indemnification can establish that her own conduct was "passive," and that her

co-defendant's conduct was "active," can that party recover in common-law indemnification. Id.

at 697, 694 A.2d at 790. See also Bristol v. Dickau Bus. Co., 63 Conn.App. 770, 774, 779 A.2d

152, 155 (2001) (party seeking indemnification "must show that the 'negligence with which it

had been found chargeable was passive or secondary'") (citation omitted). Thus, summary

judgment should be granted if the undisputed evidence demonstrates that Arpin cannot establish

that its own wrongdoing is merely "passive" and that Festo's purported wrongdoing is "active."

       The phrase "passive negligence" in the indemnification context "encompasses parties

who were allegedly negligent in their management or supervision of others." Bristol, 63

Conn.App. at 774, 779 A.2d at 155. For purposes of an indemnification analysis, "passive"

conduct constitutes "'only a liability in the eye of the law, growing out of a mere relationship to

the perpetrator of the wrong.'" Adley v. Connecticut Post Ltd. P'ship, 1999 WL 30593, at *3

(granting summary judgment on common-law indemnification claim on active/passive theory of

recovery) (quoting Bailey v. Bussing, 28 Conn. 455, 459 (1859)). See also Preferred Accident

Ins. Co. v. Musante , Berman & Steinberg Co., 133 Conn. 536, 542, 52 A.2d 862, 865 (1947)

(indemnification barred where party seeking indemnity has "personal participation, personal

culpability, personal knowledge").

Connecticut courts have repeatedly emphasized that "passive" negligence for purposes of a common-law indemnification claim equates involves the situation where a party is chargeable with negligence solely by virtue of the party's oversight of or relationship with the actual wrongdoer. See, e.g., Bristol, 63 Conn.App. at 774, 779 A.2d at 155 (allowing indemnification claim by town sued for negligent management and supervision of its employee busdriver; town's negligence is merely "passive"); Preferred Accident Ins. Co., 133 Conn. at 542, 52 A.2d at 865 (allowing indemnification where party seeking indemnity "is chargeable merely with 'constructive fault' and is consequently not in pari delicto" with the active tortfeasor) (internal citation omitted); Gomeau v. Forrest, 176 Conn. 523, 524, 409 A.2d 1006, 1007 (1979) (noting that the common-law rule against indemnity among joint tort-feasors "has certain exceptions, notably in the indemnity situation where the liability of a defendant is . . . based merely on a relationship, such as that of employer-employee"); Maslansky v. First Assembly of God, No. CV010343545S, 2003 WL 1090578, at *2 (Conn. Super. Ct. Feb. 25, 2003) (**Exhibit 9**) (allegations that employer "failed to train, instruct, supervise or adequately warn" its employee "all involve passive or secondary negligence"); McAuley v. Frederick, No. CV000338203S, 2003 WL 178774, at *1, *2 (Conn. Super. Ct. Jan. 7, 2003) (**Exhibit 10**) (allegations that town was negligent "in training, monitoring and equipping" are "founded solely on [the town's] passive conduct"); Parker v. Konover Constr. Corp., No. CV 990090911S, 2003 WL 21675349, at *7 (Conn. Super. Ct. June 24, 2003) (**Exhibit 11**) general contractor's failure to discover subcontractor's faulty installation was "at worst passive conduct, a failure to supervise others").

Here, the undisputed facts make clear that Arpin's employee, William Mottla, failed to record crucial information regarding the Festo shipment, particularly the dimensions of the mobile workstation and the fact that it was on wheels, into the Arpin Logistics computer system

(Rule 56(a)1 Statement, ¶¶ 43-52); that this failure led to Plaintiff being assigned a truck with a "tilt-down" lift gate that was unsafe and inappropriate for large, wheeled loads such as the Festo mobile workstation (Rule 56(a)1 Statement, ¶¶ 71-138); and that Plaintiff was injured when the mobile workstation fell off the "tilt-down" lift gate and fell onto him (Rule 56(a)1 Statement, ¶¶ 139-156). Under these circumstances – particularly where Arpin's own employees have offered uncontroverted testimony that the "tilt-down" lift gate provided to Plaintiff was unsafe for this equipment, which Arpin knew was large and on wheels – Arpin's misconduct, as a matter of law, cannot be deemed merely "passive." See Adley v. Connecticut Post Ltd. P'ship, 1999 WL 30593, at *3 ("a party who fails to make a dangerous condition safer after having notice of the condition cannot be regarded as passively negligent for purposes of applying the principles of common law indemnification").

This is not a situation where Plaintiff's claims against Arpin are based on Arpin's relationship to, or management or oversight of, Festo. The claims against Arpin do not charge Arpin with mere "constructive fault" for Festo's actions. Indeed, although Arpin's indemnification claims parrot the language that its own negligence was merely "passive," even Arpin itself does not claim that it had any sort of relationship or position of oversight or management of Festo.[7] Rather, the claims against Arpin are for active negligence – indeed, recklessness. See Plaintiff's Fifth Amended Complaint, Counts One, Two, Five and Six. And the undisputed facts bear out that Arpin's misconduct was indeed active: Arpin cannot dispute that it improperly provided Plaintiff with an unsafe "tilt-down" lift gate even when it knew that

---

[7] Although Counts 2 and 10 of Arpin's Amended Cross-Claims respectively assert claims for common-law indemnification "in Vicarious Liability for Negligence" and "in Vicarious Liability for Negligent Misrepresentations," in neither count does Arpin assert that Festo is vicariously liable for Arpin's alleged wrongdoing; rather, both counts assert Festo's purported "vicarious liability" for the alleged wrongdoing of Defendant Trans-Expo.

14

the Festo mobile workstation was large and on wheels.  (Rule 56(a)1 Statement, ¶¶ 25-42, 71-138)

The Connecticut Supreme Court has held that indemnification is barred "wherever it appears that the party seeking indemnity was himself guilty of affirmative misconduct which was a proximate cause of the injury in question." Preferred Accident Ins. Co., 133 Conn. at 542, 52 A.2d at 865.  Thus, even if Arpin could prove that Festo's purported wrongdoing was a proximate cause of Plaintiff's injuries – which Festo vigorously denies – Arpin still would need to prove that its own wrongdoing was merely passive, pass-through type negligence.  As noted above, the undisputed evidence overwhelmingly demonstrates that Arpin's wrongdoing – in particular, its employee Mr. Mottla's failure to note in the computer system that the Festo mobile workstation was on wheels and was five feet long by three feet wide by six feet high – ultimately led to Arpin's employees providing Plaintiff with a lift gate that Arpin's employees concede was unsafe due to its "tilt-down" design, and was thus at least one, if not the sole, proximate cause of Plaintiff's injuries.  See Adley v. Connecticut Post Ltd. P'ship, 1999 WL 30593, at *3 ("'[w]here there are two joint tortfeasors and each is guilty of intentional wrongdoing, there may be sound justification for a denial of contribution because either party in seeking it would have to take his [sic] stand upon his [sic] own wrong'") (citation omitted); Preferred Accident Ins. Co., 133 Conn. at 543, 52 A.2d at 865-66 ("where the negligence of each of two defendants enters immediately and directly into the production of the accident, neither should have a right to contribution"); Lehn v. Dailey, No. CV000070707S, 2002 WL 449842, at *4 (Conn. Super. Ct. Feb. 27, 2002), aff'd 77 Conn. App. 621 (2003) (**Exhibit 12**) denying claim for indemnification by one defendant against co-defendant, where both defendants were found liable for plaintiff's

losses; "[i]ndemnification does not lie where the individual seeking to be indemnified was himself guilty of affirmative misconduct which [w]as a proximate cause of the loss").[8]

The undisputed facts establish, as a matter of law, that Arpin's providing Plaintiff with an unsafe "tilt-down" lift gate due to its employee's failure to record critical information, was not merely "passive" wrongdoing. Because Arpin cannot show that its own negligence was merely "passive," Arpin cannot recover in indemnity against Festo. Festo's motion for summary judgment should be granted.

## II.     UNDER THE UNDISPUTED RECORD EVIDENCE, ARPIN CANNOT ESTABLISH THAT FESTO WAS IN CONTROL OF THE SITUATION TO THE EXCLUSION OF ARPIN

Even if Arpin could establish that its providing Plaintiff with a "tilt-down" lift-gate to unload a large wheeled workstation constituted mere "passive" pass-through negligence – which it cannot, given the overwhelming undisputed evidence to the contrary – Arpin's claims for indemnification would still fail. As discussed above, to recover in indemnification Arpin must also prove that Festo had control of the situation giving rise to Plaintiff's injuries to the exclusion of Arpin. See Skuzinski v. Bouchard Fuels, Inc., 240 Conn. at 697, 694 A.2d at 790 (party seeking indemnification must also prove that "[the other tortfeasor] was in control of the situation to the exclusion of [the party]"). Because Arpin cannot establish that Festo was in exclusive control of the situation that gave rise to the injuries alleged by Plaintiff, its counts for indemnification fails as a matter of law and must be dismissed.

---

[8] The active/passive prong of the indemnification test also precludes Arpin from recovering from Festo in indemnity for Plaintiff's claims of recklessness against Arpin. Under Connecticut law, recklessness constitutes a higher standard of culpability than negligence. See, e.g., Saindon v. Kellner, No. X01CV010170558S, 2002 WL 959929, at *1 (Conn. Super. Ct. April 16, 2002) (Exhibit 13) (citing Dubay v. Irish, 207 Conn. 518, 532, 542 A.2d 711, 718 (1988)). Therefore, if Plaintiff is able to prove Arpin's recklessness, Arpin will necessarily have been found liable of at least "active negligence," thus precluding recovery in indemnification. On the other hand, if Plaintiff is unable to prove Arpin's recklessness, then Arpin has no claim for indemnification for its alleged reckless behavior.

16

Although the issue of "exclusive control" is generally a question of fact, "special circumstances" may exist such that this issue "becomes a question of law." Skuzinski, 240 Conn. at 704-05, 694 A.2d at 794; see also United Rentals v. Bell Haven Club, No. CV01086372S, 2002 WL 31955041, at 2 (Conn. Super. Ct. Dec. 27, 2002) (**Exhibit 14**) ("[I]f the facts . . . are not meaningfully disputed, who had the control over the situation becomes a question of law for the trial court."). If the undisputed facts demonstrate that the party seeking indemnification cannot establish that the other party had <u>exclusive</u> control of the situation, then the claim for indemnification fails as a matter of law, and summary judgment is appropriate. See, e.g., Shelby Ins. Co. v. Castellon, 2000 WL 775506, at *3 (granting summary judgment in favor of alleged indemnitor, where undisputed facts established that neither party had exclusive control over the situation); Adley v. Connecticut Post Ltd. P'ship, 1999 WL 30593, at *3 (granting summary judgment in favor of third-party alleged indemnitor, where the alleged indemnitor "could not have had exclusive control of the circumstances which led to the accident because the only allegations against [the party seeking indemnity] lie in active negligence"). See also Sanclemente v. Wlaz, No. CV 91-0394430, 1992 WL 108018, at *2 (Conn. Super. Ct. May 7, 1992) (**Exhibit 15**) (granting motion to strike indemnification claim brought against co-defendant; "in a case such as this where . . . both drivers are charged with active negligence, it is not possible for anyone to have had exclusive control over the accident site").

The decision in Shelby Ins. Co. v. Castellon is particularly instructive on the issue of <u>exclusive</u> control. In Shelby, a fire caused by a faulty furnace in a bakery damaged an adjoining hair salon. The subrogee of the rights of the owners of the hair salon brought an action against the bakery owners, alleging that they negligently failed to repair, replace or maintain the furnace. The bakery owners, in turn, served a third-party complaint for indemnification on the town fire

17

marshall, based on the fire marshall's failure to conduct annual inspections of the bakery. It was undisputed that the fire marshall in fact had failed to conduct annual inspections as required, and that, if the annual inspections had been conducted, the owners of the bakery would have corrected the problems with the furnace. Shelby Ins. Co., 2000 WL 775506, at *3. Thus, the bakery owners alleged, the fire would not have happened absent the fire marshall's admitted failure to conduct inspections, and, because the fire marshall had exclusive control over the inspections, they were entitled to indemnification.

The fire marshall moved for summary judgment, asserting that the undisputed facts demonstrated that the bakery owners had at least some control over the situation giving rise to the damages. The fire marshall cited to undisputed evidence that the furnace had been allegedly poorly repaired the year before the fire. Thus, argued the fire marshall, even if he had failed to conduct the required inspections, he could not have had <u>exclusive</u> control over the situation giving rise to the damages.

The court agreed. In granting the fire marshall's motion for summary judgment, the court noted found that the "dangerous condition that gave rise to the accident was the defective furnace." Id. at *2. The court noted that the "parties advance competing positions regarding the control of the furnace," and that "the question of exclusive control is ordinarily one of fact." Id. Indeed, the court stated that "[i]f the standard were merely control, summary judgment should be denied. The [bakery owners], however, must prove that the Fire Marshall was in <u>exclusive</u> control of the situation." Id. (emphasis added). The court then held that, on the basis of the undisputed record evidence regarding the bakery owners own misconduct, "the facts fail to establish that degree of control," and granted summary judgment. Id.

18

Here, it is undisputed that Plaintiff's injuries occurred when the mobile workstation fell off the truck's lift gate during the course of Plaintiff's unloading. As in <u>Shelby</u>, "the parties advance competing positions" regarding control of the situation giving rise to Plaintiff's injuries. However, it is now undisputed, as established by the testimony of Arpin's employees, that (1) it was unsafe to provide Plaintiff with a "tilt-down" lift gate for a large workstation on wheels (Local Rule 56(a)1 Statement, ¶¶ 71-138); (2) Arpin had correct information that the item was a workstation, that it was very large, and that it was on wheels (Local Rule 56(a)1 Statement, ¶¶ 25-42); Arpin failed to pass this information along to its employees, because its customer service representative, William Mottla, failed to record this information into the Arpin computer system that these employees relied upon for all their information regarding a particular shipment (Local Rule 56(a)1 Statement, ¶¶ 43-52); had Arpin passed along this information, Plaintiff would have been provided with a lift gate that did not tilt downward as it descended but instead remained horizontal to the ground as it descended (Local Rule 56(a)1 Statement, ¶¶ 71-138); and, as a result of Arpin's failure to accurately record the information about the workstation, Arpin provided Plaintiff with a "tilt-down" lift gate that was unsafe for the unloading of an item this large and on wheels (Local Rule 56(a)1 Statement, ¶¶ 53-70). Thus, there can be no genuine dispute that the situation giving rise to Plaintiff's injuries included, at the very least, Arpin's tragic error to assign Plaintiff an admittedly unsafe "tilt-down" lift gate due to Mr. Mottla's failure to note the dimensions of the workstation and the fact that the workstations was on wheels. Moreover, Arpin took exclusive control of the workstation prior to the accident when Plaintiff, its driver, signed the Festo Bill of Lading acknowledging receipt and loading of the Festo shipment. (Local Rule 56(a)1 Statement, ¶¶ 148-50)

As in <u>Shelby</u>, this undisputed evidence makes clear that Arpin had at least some degree of control over the situation giving rise to Plaintiff's injuries. Even assuming <u>arguendo</u> that Festo were negligent – as was the fire marshall in <u>Shelby</u> – the uncontroverted evidence establishes that Arpin did not have <u>zero</u> control over the situation. As in <u>Shelby</u>, Arpin "must prove more than some measure of control" on Festo's part; it "must prove that [Festo] was in <u>exclusive</u> control of the situation." <u>Shelby</u>, No. CV 980416779S, 2000 WL 775506, at *3. Given the record in this case, Arpin simply cannot establish that Festo had 100% control, and Arpin itself had 0% control, over the situation giving rise to Plaintiff's injuries.

Plaintiff's allegations in his Fifth Amended Complaint likewise indicate that Arpin had at least some control over the situation giving rise to Plaintiff's injuries. Because Festo can be liable for indemnification to Arpin only if Arpin is found liable under Plaintiff's Fifth Amended Complaint, "the court looks to [plaintiff's] complaint in order to determine the situation allegedly giving rise to [plaintiff's] injuries." <u>Gott v. Greed-Monarch, Inc.</u>, No. CV 000274741S, 2003 WL 2233005, at *6 (Conn. Super. Ct. Sept. 30, 2003). As noted, Plaintiff's Fifth Amended Complaint contains repeated allegations of <u>active</u> negligence against Arpin – allegations that Plaintiff contends amount to recklessness. See Plaintiff's Fifth Amended Complaint, Counts One, Two, Five and Six.

Again, the issue here for purposes of Arpin's indemnification claims is not to determine which party's alleged negligence (or Arpin's recklessness) was the ultimate cause of Plaintiff's injuries. Rather, the issue is whether, on the undisputed record establishing Arpin's failure to record critical information regarding the workstation and its error in assigning Plaintiff an unsafe "tilt-down" lift gate as a result, Arpin can be deemed to have zero control over the situation that gave rise to Plaintiff's injuries. The uncontroverted evidence demonstrates as a matter of law

that Arpin cannot establish that it had 0% control over the situation and that Festo had 100% control. Summary judgment should be granted.

Festo is both physically – and causally – far removed from the accident that caused Plaintiff's injuries. No one from Festo supervised the unloading on site or was otherwise present during the unloading. (Local Rule 56(a)1 Statement, ¶¶ 154)

The undisputed evidence demonstrates as a matter of law that Arpin cannot establish that Festo was in control of the situation to the exclusion of Arpin. Because Arpin cannot establish this element of its claims for indemnification, Festo's motion for summary judgment should be granted as to Counts 1, 2, 9 and 10 of Arpin's Amended Cross-Claims, and Counts 1 and 4 of Arpin's Second Amended Third-Party Complaint.

## CONCLUSION

For the aforementioned reasons, Festo respectfully requests that this Court grant its Motion for Summary Judgment dismissing Counts 1, 2, 9 and 10 of Arpin's Amended Cross-Claims and Counts 1 and 4 of Arpin's Second Amended Third-Party Complaint.

Defendant,
THE FESTO CORPORATION,
By Its Attorneys,

JOHN A. TARANTINO, #15980
JAMES R. OSWALD, #20936
ADLER POLLOCK & SHEEHAN P.C.
2300 Citizens Plaza, 8th Floor
Providence, RI  02903-2443
Tel:  (401) 274-7200
Fax: (401) 751-0604/351-4607
Dated:  December 15, 2004

21

## **CERTIFICATION**

TO:   Michael A. Stratton, Esq.  
      Stratton Faxon  
      59 Elm Street  
      New Haven, CT 06510  

      Roland F. Moots, Jr., Esq.  
      Moots, Pellegrini, Mannion, Martindale  
        & Dratch  
      46 Main Street  
      New Milford, CT 06776  

Thomas J. Grady, Esq.  
Lenihan, Grady & Steele  
6 Canal Street  
P.O. Box 541  
Westerly, RI 02891  

Susan O'Donnell, Esq.  
Halloran & Sage  
One Goodwin Square  
225 Asylum Street  
Hartford, CT 06103  

I hereby certify that I caused a true copy of the within, to be mailed via regular First Class mail, to the above-named counsel of record on this 15th day of December, 2004.

*317263_1.doc*

22