# EXHIBIT 1

Not Reported in F.Supp.  
1991 WL 496886 (S.D.Fla.)  
(Cite as: 1991 WL 496886 (S.D.Fla.))  
H

Page 1

Only the Westlaw citation is currently available.

United States District Court, S.D. Florida.

KEY WEST HARBOR DEVELOPMENT CORPORATION, a Florida corporation, Plaintiff,  
v.  
CITY OF KEY WEST, FLORIDA, et al., Defendants.

No. 90-10027-CIV-KING.

Dec. 16, 1991.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KING, District, Judge.

*1 This cause comes before the Court upon the motion for partial summary judgment of plaintiff Key West Harbor Development Corporation, and the cross-motion for summary judgment of defendants City of Key West, Florida, City Commissioners Jimmy Weekley, Sally Lewis, and George Halloran, and City Mayor Tom Sawyer.

The plaintiff's claims arise out of the Key West City Commission's adoption of Resolution 86-58, which the plaintiff asserts was done in a procedurally deficient manner that deprived it of a constitutionally protected property right without due process. The plaintiff alleges that the property interest arose out of two contracts between it and the Key West Redevelopment Agency, as well as a third contract between the plaintiff, the City of Key West, the Key West Redevelopment Agency, and the Florida Department of Community Affairs, in addition to the procedural protections provided in the governing Florida statutes.

For the reasons stated below, the defendants' motion for summary judgment is granted.

Initially, the Court will address the plaintiff's motion for leave to file a memorandum in excess of twenty (20) pages. The defendants have no objection. Therefore, that motion is granted.

Second, the defendants move for an enlargement of three-days' time to file a memorandum. The plaintiff has filed a motion to strike the untimely memorandum. The defendants have filed a memorandum in opposition. This Court will grant the defendants' motion for enlargement of time, *nunc pro tunc*, and deny the plaintiff's motion to strike.

Because this is a factually complicated case, it is necessary to review the lengthy facts at this point.

I. FACTUAL BACKGROUND  
This case arises out of the proposed sale and development of the Harry S. Truman Annex Naval Base in Key West, Florida ("Truman Annex"). In 1973, the United States Department of the Navy announced its intention to shut down a portion of the Truman Annex, and turned the property over to the General Services Administration's Real Property Division ("GSA") to handle its disposition. GSA contacted state and local government entities to encourage and coordinate their participation in the sale and development of the property. Defendant City of Key West ("City") expressed a desire to participate.

On March 19, 1979, the Key West City Commission ("City Commission") passed Resolution 79-41, which recognized that the redevelopment of the Truman Annex was in the interest of the City, and further recognized the need for a community redevelopment agency to carry out the program of rehabilitation and redevelopment. On May 7, 1979, the City Commission passed Ordinance 79-15, pursuant to the Community Redevelopment Act, § 163.330-163.500 Fla.Stat. (1977) ("CRA"), creating the Key West Redevelopment Agency ("Redevelopment Agency") to oversee and implement the redevelopment of the Truman Annex.

In June 1979, the City Commission passed an ordinance which appointed the Redevelopment Agency as the City's agent in connection with the Truman Annex Project. In January 1980, the Redevelopment Agency published a plan entitled "Revised Conceptual Plan for the Redevelopment of

Not Reported in F.Supp.                                                Page 2
(Cite as: 1991 WL 496886, *1 (S.D.Fla.))

the Truman Annex, Key West, Florida" ("Conceptual Plan"). The City Commission passed Resolution 80-30 approving and adopting the Conceptual Plan on March 3, 1980. The plaintiff alleges that this was passed without conditions, while the defendants argue that conditions were imposed.

*2 In the fall of 1980, plaintiff Key West Harbor Development Corporation ("KWHDC") was selected by the Redevelopment Agency to perform certain predevelopment services in connection with the Truman Annex project. KWHDC began to perform predevelopment services for the Redevelopment Agency in October 1980. In July 1981, the Redevelopment Agency was simultaneously abolished and recreated by the Florida Legislature in Chapter 81-405, Laws of Fla. On July 16, 1982, KWHDC and the Redevelopment Agency executed a contract which, among other things, named KWHDC the master developer of the Truman Annex project.

On May 29, 1984, KWHDC and the Redevelopment Agency executed a second agreement entitled "Disposition and Development Agreement." On September 5, 1984, the City Commission passed Ordinance 84-32, which created a "planned redevelopment district." On June 4, 1985, the City Commission passed Resolution 85-107, which authorized the City to execute an agreement entitled the "Key West Harbour Project Agreement." In June 1985, KWHDC, the City, the Redevelopment Agency, and the State of Florida Department of Community Affairs ("DCA") executed this agreement, which is undated. On July 18, 1985, A.J. McDaniel, as Executive Director of the Redevelopment Agency, submitted to GSA an official offer to purchase the Truman Annex property for $13.8 million. The defendants claim that GSA subsequently requested a 20% down payment in the amount of $2.76 million, but the plaintiff disputes this.

On January 7, 1986, the City Commission adopted Ordinance 86-2, which established a moratorium on the issuance of building permits for the construction of any building, project, development, or structure as defined in Section 24 1/2 --34 of the Code of Ordinances of the City of Key West. The moratorium was established for 180 days while the Key West Planning Department evaluated estimated growth projections, etc.

On February 7, 1986, KWHDC Secretary George Perrin requested an opportunity to speak at the February 18 City Commission meeting. Mr. Perrin requested assurances from the City that the proposed redevelopment project would be allowed to proceed under existing laws and ordinances when the initial moratorium term expired. On February 18, the City Commission adopted Resolution 86-49, which requested GSA to delay the proposed sale and transfer of Truman Annex for 90 days to allow the City to evaluate the proposed purchase and transfer. On February 17, Peat, Marwick, Mitchell & Co. submitted an evaluation to the City. Also in February 1986, the City published a notice for a special commission meeting and a "workshop" in connection with the Truman Annex project. On February 25, 1986, the City Commission passed resolution 86-58, which arguably rescinded its prior approval of the Conceptual Plan. On March 11, 1986, the City Commission passed Resolution 86-76, which sought to interpret the City Commission's action in connection with Resolution 85-58, and requested that the Redevelopment Agency recommend amendments to the 1980 Conceptual Plan reflecting the current needs and conditions of the City.

*3 On March 14, 1986, KWHDC notified the Redevelopment Agency that it would not provide funds necessary to purchase the Truman Annex property and that the Redevelopment Agency may be asked to reimburse KWHDC for predevelopment services. GSA declared the Redevelopment Agency in breach of the Purchase and Sale Agreement of the Truman Annex property and placed the property up for public auction. In September 1986, the property was purchased by another developer, Pritam Singh and/or the Truman Annex Company, for $17.2 million.

II. PROCEDURAL HISTORY

This action for damages was commenced on February 22, 1990. [FN1] In Count I, the plaintiff alleges a violation of 42 U.S.C. § 1983, in that the defendants violated the plaintiff's constitutional rights under color of state law. The plaintiff alleges that it was deprived of constitutionally protected property rights without due process of law, in violation of the Fourteenth Amendment to

Not Reported in F.Supp.  
(Cite as: 1991 WL 496886, *3 (S.D.Fla.))

Page 3

the United States Constitution. In Count II, the plaintiff alleges that the defendants conspired to deprive the plaintiff of its rights without due process. Counts III and IV are pendent state claims: breach of contract, and tortious interference with a business relationship.

On February 26, 1991, the plaintiff filed a motion for partial summary judgment. On March 8, 1991, the defendants filed a cross-motion for summary judgment. Both sides have filed responses and replies. A hearing was held on May 31, 1991, and both sides filed post-argument memoranda.

### III. SUMMARY JUDGMENT
### A. NO GENUINE ISSUE OF MATERIAL FACT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Both sides, with their motions for summary judgment, have filed statements of material facts as to which there is no genuine issue. The facts as stated above were culled from these statements. Although the statements of fact are similar, there are a few points of contention.

The plaintiff controverts the defendants' statement that the City's approval of the Conceptual Plan, in Resolution 80-30, was without conditions, and that GSA requested a 20% down payment from the Redevelopment Agency. The defendants assert that there are no genuine issues as to their motion for summary judgment, but that there are genuine issues of material fact and/or mixed questions of law and fact that would preclude entering summary judgment in favor of the plaintiff. The Court finds that these facts are not material. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505 (1986).

### B. MATTER OF LAW

Both motions for summary judgment involve basically the same legal questions. The plaintiff moves for partial summary judgment on the issue of the City's liability on the § 1983 claim and the breach of contract claim. The defendants move for summary judgment on all counts, arguing that the conduct complained of does not implicate a constitutionally protected property right, that the pendent claims should be dismissed, and that the individual defendants have absolute legislative and/or qualified immunity. [FN2]

*4 In order to prevail on a § 1983 claim, the plaintiff must show that he was deprived of a constitutionally protected right, and that the person who deprived him of that right was acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). The plaintiff here alleges a violation of procedural due process, in that the defendants deprived it of protected property rights without due process. The threshold question, then, is whether the plaintiff had a constitutionally protected right. *Marine One, Inc. v. Manatee County,* 877 F.2d 892, 894 (11th Cir.1989); *Economic Development Corp. v. Stierheim,* 782 F.2d 952, 953-54 (11th Cir.1986).

### 1. Protected Property Interest

The plaintiff alleges that it had a protected property interest arising from the contracts and the CRA's statutory scheme. The parameters of a protectable property interest are created and defined by state law. *Paul v. Davis,* 424 U.S. 693, 709-11 (1976). Whether Florida law confers on KWHDC a protectable property interest is a question of law for the court. *Marine One,* 877 F.2d at 894. In Florida, "[a] property interest may be created by statute, ordinance, or contract as well as by policies or practices of an institution which support claims of entitlement." *Metropolitan Dade County v. Sokolowski,* 439 So.2d 932, 934 (Fla. 3d DCA 1983) (citing *Bishop v. Wood,* 426 U.S. 341 (1976) and *Perry v. Sindermann,* 408 U.S. 593 (1972)). According to KWHDC, its "property interest arises out of its contracts with the City and the Redevelopment Agency, as well as the provisions of the Community Redevelopment Act, under the auspices of which the contracts were executed." (Pl.'s M/S/J at 14). It appears to this Court that the plaintiff is asserting a property interest in its contracts and/or in being the developer of the Truman Annex.

The plaintiff makes several arguments that it had a protected property interest, which the Court will consider *seriatim.* Initially, the plaintiff contends that the question was answered on the motion to dismiss. The plaintiff argues that this Court decided that KWHDC had a protectable property interest in its order denying the motion to dismiss,

Not Reported in F.Supp.                          Page 4
(Cite as: 1991 WL 496886, *4 (S.D.Fla.))

reported at *Key West Harbour Development Corp. v. City of Key West*, 738 F.Supp. 1390 (S.D.Fla.1990). In that order, this Court stated, "In light of the rules and understandings between itself and the [City], [KWHDC] had some entitlement to continued enjoyment of its contract[s]--of which the [City] could not deprive it without some notice or hearing." *Id.* at 1393.

However, a **motion** to **dismiss** and one for **summary judgment** have **different standards**. On a motion to dismiss pursuant to Rule 12(b)(6), the court must view the complaint in the light most favorable to plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969), and may only grant the motion where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In addition, the court must, "at this stage of the litigation, ... accept [the plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In contrast, on a motion for summary judgment, the Court is dealing with undisputed facts, and with the application of the law to those facts. Moreover, the Eleventh Circuit has stated that a court may reconsider its motion to dismiss ruling when considering a motion for summary judgment. *See Vintilla v.*, 931 F.2d 1444 (11th Cir.1991). Thus, this Court is free at this point to determine whether the plaintiff had a protectable property interest at stake.

*5 The Court has attempted to clarify the exact claims that the plaintiff has made, and will address them herein.

The plaintiff argues that its property interest arises out of its contracts with the City and the Redevelopment Agency, as well as the provisions of the CRA. The plaintiff asserts that the City granted the approval of the Conceptual Plan authorized in § 163.358 [FN3] through Resolution 80-30, before the execution of contracts between KWHDC, the City, and the Redevelopment Agency. Thus, the plaintiff argues, it acquired a property interest in developing the Truman Annex.

At first glance, this seems like a straight contract claim. It is clear that the existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally protected property interest. *See Economic Development*, 782 F.2d 952 (11th Cir.1986); *Braden v. Texas A & M University*, 636 F.2d 90, 93 (5th Cir. Unit A Feb. 1981). [FN4] The plaintiff does not refute this, but instead takes issue with the defendants' characterization of this as a simple breach of contract action. "It is not the existence of a contract in and of itself which gives rise to the constitutional claim. Rather, it is the existence of the contracts under the circumstances of this case, coupled with the procedural protections afforded by ... the Community Redevelopment Act ..., which give rise to the property interest." (Pl.'s Opp. at 2).

Thus, this Court will next address whether the CRA vests the plaintiff with a property interest in the contracts. *See, e.g., Sokolowski*, 439 So.2d 932 (county code allowing suspension "for any cause which will promote the efficiency of the service" gave property interest in continued employment).

Pursuant to the CRA, when a county or municipality determines that redevelopment of an area is necessary, the county or municipality is authorized to create a Community Redevelopment Agency to carry out the purposes of the CRA. § 163.356(1) Fla.Stat. In the case at bar, the Redevelopment Agency later was recreated by statute. [FN5] The redevelopment agency is vested with the "powers necessary or convenient to carry out and effectuate the purposes and provisions" of the CRA. § 163.358. However, the county or municipality retains the power of final approval of the redevelopment plan. *Id.* Upon the governing body's approval of the redevelopment plan, the plan is deemed to be in full force. § 163.360(8); *see Striton Properties, Inc. v. City of Jacksonville Beach*, 533 So.2d 1174, 1176 (Fla. 1st DCA 1988), *review denied*, 544 So.2d 201 (Fla.1988). Section 163.361 provides that "after the lease or sale of real property in the community redevelopment area," modification of the redevelopment plan may be conditioned upon the approval of such owner or lessor and subject to his rights.

The plaintiff claims that the type of property interest it acquired pursuant to the contracts and the CRA has been recognized as subject to procedural due process protections in *Medical Laundry Service v. University of Alabama*, 840 F.2d 840 (11th Cir.1988), *cert. denied*, 488 U.S. 826 (1988) *(Medical Laundry Service I)*, and *Three Rivers*

Not Reported in F.Supp.
(Cite as: 1991 WL 496886, *5 (S.D.Fla.))

Page 5

*Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980), as well as *Perry v. Sindermann*, 408 U.S. 593 (1972).

*6 In *Medical Laundry Service I*, the Eleventh Circuit reversed a district court's grant of summary judgment in favor of the defendant university against a procedural due process claim based on the university's termination of the plaintiff's contract to provide laundry services. In rejecting a strict, formal definition of property, the court said, " '[P]roperty' denotes a broad range of interests that are secured by 'existing rules and understandings.' " *Medical Laundry Service I*, 840 F.2d at 842 (quoting *Perry*, 408 U.S. at 601). The court then found the procedures of the Board of Adjustment to constitute just such a set of rules securing the plaintiff's interest in the contract. *Id.*

The defendants argue that the plaintiff's reliance on *Medical Laundry Service I* is misplaced, as the plaintiff relies on dicta which played no part in the ultimate disposition after the opinion was modified. The Eleventh Circuit *sua sponte* modified its original opinion prior to remand by agreeing with Chief Judge Roney's dissent from the original opinion and declining to decide whether a simple breach of contract by the state rises to the level of a constitutional deprivation. *Medical Laundry Services v. University of Alabama*, 856 F.2d 128, 129 (11th Cir.1988). In a third opinion, after remand and full briefing on the issue, the Eleventh Circuit affirmed the district court and held that a simple breach of contract does not rise to the level of a constitutional deprivation. *Medical Laundry Services v. University of Alabama*, 906 F.2d 571, 573 (11th Cir.1990) *(Medical Laundry Service II)*. The defendants argue that *Medical Laundry Service I* therefore played no part in the ultimate disposition of the case and should not be relied on. Given its questionable status, the Court is inclined to agree.

The plaintiff also cites *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D.Pa.1980). In that case, the plaintiff was a bidder for a city cable television contract who sued the city under § 1983. The city had adopted an ordinance providing the basic contract terms and specifications to be met by prospective bidders. The ordinance stated that any bid which failed to meet the ordinance specifications would be rejected. The city awarded the contract to a bidder which the plaintiff claimed did not comply with the specifications. The court held that the plaintiff had a property interest, namely the right of the lowest bidder in compliance with specifications to be awarded the contract once the city decided to make an award. *Id.* at 1131.

The plaintiff argues that Florida's CRA provides similar protections similar to those in *Medical Laundry Service I* and *Three Rivers*, and thus vest the plaintiff with a property interest. As stated above, *Medical Laundry Service I* has questionable precedential value. *Three Rivers* is not binding on this Court; Florida law is well settled that statutory procedures do no in and of themselves create protected property interests. *See, e.g., Kelly v. Gill*, 544 So.2d 1162, 1164-65 (Fla. 5th DCA1989).

*7 The defendants argue that this case is analogous to *Marine One, Inc. v. Manatee County*, 877 F.2d 892 (11th Cir.1990). In that case, Manatee County rescinded the plaintiff's building permit for a pier, and the plaintiff brought a § 1983 action alleging a due process violation. The Eleventh Circuit affirmed the district court's judgment for the defendants notwithstanding the verdict, holding that Florida law does not confer a protected property interest in a building permit to perform activities on public land. *Id.* at 892-93.

The defendants also rely on a factually similar case, *Striton Properties, Inc. v. City of Jacksonville Beach*, 533 So.2d 1174, 1178 (Fla. 1st DCA 1988), *review denied*, 544 So.2d 201 (Fla.1988). In that case, the plaintiff developer argued that it had vested property rights in the redevelopment of an area by virtue of the Redevelopment Agency's advertising for redevelopment bids, Striton's submission of an offer, the Redevelopment Agency's acceptance of the offer by resolution, Striton and the Redevelopment Agency's negotiation of the wording of the Disposition and Development Agreement, and the Redevelopment Agency's approval of that agreement by resolution. *Id.*

Striton and the Redevelopment Agency entered into a Planning and Development Agreement, which was not signed by the City. In accordance with this agreement, Striton and the Redevelopment Agency prepared a Conceptual Plan and submitted it to the City, which declined to approve the plan after a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
(Cite as: 1991 WL 496886, *7 (S.D.Fla.))

Page 6

public hearing. *Id.* at 1177. The City subsequently approved a revised plan by resolution. However, this resolution was amended to direct that the Redevelopment Agency redevelop only "Phase I" of the area initially. Striton reserved its alleged rights under the Planning and Development Agreement, and submitted a bid for Phase I, which was accepted by the Redevelopment Agency. *Id.*

Striton and the Redevelopment Agency then negotiated the Disposition and Development Agreement for Phase I, but the City disapproved it before it was executed. *Id.* The Redevelopment Agency refused to accept the City's substitute agreement, so the City asked for the members' resignation, and adopted a resolution revoking its approval of Phase I.

Upon reviewing Florida's CRA, the First District Court of Appeal found that the statutory provisions make clear that the legislature vested the City with the exclusive authority "to grant final approval to community redevelopment plans and modifications thereof," § 163.356(2), and that the Act accorded the City no power to delegate or divest itself of such authority. *Id.* The court held that the City had a right to final approval pursuant to the Planning and Development Agreement, which contemplated a final agreement, namely the Disposition and Development Agreement. *Id.* at 1179. Affirming dismissal, the court stated: "We cannot construe the Disposition and Development Agreement, which represents the culmination of these interactions, as giving Striton any vested property rights because, in fact, the agreement was never executed by the City, the Agency, or Striton. Furthermore, even if we could construe this agreement and the interactions leading up to it as giving Striton vested property rights, they could not divest the City of its exclusive power to grant final approval to the community redevelopment plans." *Id.*

*8 While *Striton Properties* relied in part on the particular contract involved there, this Court finds persuasive the reasoning of the District Court of Appeal. In contrast to *Striton Properties,* in the case at bar, the Redevelopment Agency did in fact execute several agreements with the plaintiff. However, the only agreement signed by the City itself clearly stated that the plaintiff was to acquire no vested property rights. Paragraph V(B) of the agreement reads in pertinent part: "By approval of this Agreement, [KWHDC] and its successors and assigns shall acquire no rights or approvals, vested or otherwise, as the Redevelopment Agency, the City, and DCA except as to Paragraph IV(B)(1), [FN6] to develop the subject property in a certain manner or under a certain plan...." Furthermore, as in *Striton,* the City had no authority to divest itself of the power to grant final approval of the plan. Thus, it seems that under the statutory scheme itself, the plaintiff could not acquire a property right in the plan until the City's final approval if and when the property was acquired by the Redevelopment Agency.

For these reasons, there is no theory under which KWHDC can have acquired a property interest in developing Truman Annex.

2. Due Process

Therefore, since the plaintiff had no protected property interest, the Court need not address the § 1983 claim any further.

IV. PENDENT JURISDICTION

Initially, the Court will address whether to exercise pendent jurisdiction in this matter. The defendants argue that since there is no federal claim, this Court should not decide the pendent claims. However, if the state claims were dismissed now, the plaintiff would not be able to bring them in state court because the statute of limitations has expired. Thus, in the interest of justice, the Court will decide the state claims. *See Nelson v. Gadsden Housing Authority,* 802 F.2d 405, 407 (11th Cir.1986); *Prater v. United Mine Workers of America,* 793 F.2d 1201, 1208 (11th Cir.1986) (abuse of discretion to dismiss time-barred pendent claims).

KWHDC argues that Florida law is well settled that "[a] municipality is bound to recognize its contracts, the same as an individual." *E.g., City of Miami v. Bus Benches Co.,* 174 So.2d 49, 52 (Fla. 3d DCA 1965). The City does not dispute this principle, but argues that it has no application to this case: the only agreement between KWHDC and the City merely limited the DCA's ability to review the proposed redevelopment of Truman Annex when and if the property were acquired by the Redevelopment Agency and KWHDC proceeded with the project. The Court agrees with the City

Not Reported in F.Supp. Page 7
(Cite as: 1991 WL 496886, *8 (S.D.Fla.))

that is did not breach any contract with KWHDC.

Similarly, the adoption of Resolution 86-58 did not cause any third person to breach a business relationship with KWHDC.

## V. ABSOLUTE LEGISLATIVE OR QUALIFIED IMMUNITY

It is not necessary to reach the question of immunity.

## VI. CONCLUSION

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

*9 ORDERED and ADJUDGED that the plaintiff's motion for leave to file a memorandum in excess of twenty (20) pages is GRANTED. It is further

ORDERED and ADJUDGED that the defendants' motion for enlargement of time is GRANTED, *nunc pro tunc,* and the plaintiff's motion to strike is DENIED. It is further

ORDERED and ADJUDGED that the defendants' motion for summary judgment is GRANTED. It is further

ORDERED and ADJUDGED that the plaintiff's motion for partial summary judgment is DENIED.

DONE and ORDERED in chambers at the United States Courthouse, Federal Courthouse Square, Miami, Florida, on this 16th day of December, 1991.

> FN1. In addition to the defendants involved in these motions, KWHDC also sued the Key West Redevelopment Agency and three of its officers, individually and in their official capacities. Of these, only Redevelopment Agency Chairman Charles Majors was served, and he was later dismissed.
>
> FN2. It is the defendants' theory that the adoption of Resolution 86- 58 did not terminate KWHDC's "hoped for involvement" in the Truman Annex project. Instead, KWHDC "elected not to provide the funds to acquire the property or participate in the future development of Truman Annex because of concern that zoning densities did not permit an economically viable development." (Ds.' Summary of Argument at 4, ¶ 4).
>
> FN3. Under the CRA, the City has "[t]he power to grant final approval to community redevelopment plans and the modifications thereof." § 163.358 Fla.Stat.
>
> FN4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the court adopted as binding precedent all decisions of the former Fifth Circuit, including UNIT A, handed down prior to October 1, 1981.
>
> FN5. The defendants argue that this provision is irrelevant since the Redevelopment Agency was created by statute and not by the City. While this may be true, § 163.356(1) addresses only the creation of the Redevelopment Agency: "The community redevelopment agency of a county has the power to function within the corporate limits of a municipality only as, if, and when the governing body of the municipality has by resolution concurred in the community redevelopment plan proposed by the governing body of the county." In this case, the defendants argue that the Redevelopment Agency, unlike a municipally created agency, had the ability to acquire the Truman Annex even if it lacked an approved redevelopment plan. *See* § 163.370(3)(a) (permitting Redevelopment Agency to acquire real property prior to approval of redevelopment plan). Thus, the defendants argue that approval of the plan was not a prerequisite to the Redevelopment Agency's purchase of the Truman Annex property. This argument, as the defendants acknowledge, goes to the issue of whether the defendants deprived the plaintiff of property without due process, not whether the plaintiff had a property right in the first place.
>
> FN6. Paragraph IV(B)(1) states:
> 1. DCA approves of, and acknowledges that Phase One land uses are consistent with the "Boundary and Principles for Guiding Development for the Florida Key Area of Critical State Concern" in 27F-8, F.A.C. DCA will not contest a rezoning of the Project property to Planned Redevelopment District pursuant to Ordinance 84-32. DCA may contest a City development order or permit approving the Phase One uses if DCA believes the uses are being implemented contrary to the 27F-12, F.A.C., "Land Planning Regulations for the Florida Keys Area of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 8
(Cite as: 1991 WL 496886, *9 (S.D.Fla.))

Critical State Concern, City of Key West."

1991 WL 496886 (S.D.Fla.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.