# EXHIBIT 2

1997 WL 346720                                                                 Page   1
1997 WL 346720 (E.D.La.)
(Cite as: 1997 WL 346720 (E.D.La.))
H

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Lisa Alack PETERS et al.
v.
Connie LOWREY, et al.

No. CIV.A. 94-2738.

June 23, 1997.

*ORDER AND REASONS*

PATRICK E. CARR, District Judge.

**\*1** Defendants move for summary judgment in this 42 U.S.C. § 1983 and state-law action involving the death of infant Michael Alack. Plaintiffs are his parents, Lisa Peters and Joseph Winterstein, and his older sister Michelle. The following facts are undisputed.

In August, 1992, four-month-old Michael was diagnosed with a skull fracture and Peters reported that he had fallen off his grandmother's bed. Michael had just returned home from having been with baby-sitter Evelyn McKnight. In September, 1992, McKnight again had Michael and told his parents that his skull was soft again. It was found that the previous skull fracture had expanded. A doctor reported possible child abuse to the Office of Community Services ["OCS"] in Tangapahoa Parish.

Deputy sheriff Connie Lowery [FN1] and OCS social worker Craig Andrews investigated. They found no evidence of physical abuse, but there was evidence of neglect. Plaintiffs lived with plaintiff Peters' mother and father in a home which was very unclean; and Peters, Winterstein, and both their children shared a twin bed and a cot in one room, though another room was available. Lowery and Andrews were made aware that plaintiffs regularly left the children with McKnight or another friend, Sandy Morgan, for several days and nights each week, though there was no reason to do so. The parents work schedules did not require such extensive baby-sitting. Winterstein, the father, declined to care for the children; and Peters, the mother, let either Morgan or McKnight keep the children whenever they wanted to.

   FN1. "Lowery" is correct, though the complaint shows "Lowrey."

Lowery, in the presence of Andrews, angrily warned plaintiffs about the possibility of neglect charges, told them they had to clean up the home and prepare a room for the children, and refrain from using baby-sitters so often. She also told them that when they did use a baby-sitter to use McKnight, rather than Morgan, because McKnight provided a better home environment. OCS provided plaintiffs with assistance and training in housekeeping and child care, and matters improved.

At a family gathering on Christmas day, 1992, Michael was well and active. Winterstein, accompanied by Peters, practiced the next two nights with a band and the children spent those nights and the intervening day with first Morgan and then McKnight. On December 27, McKnight took Michael to an emergency room. He was brain dead.

On December 28, 1992, by court order on the complaint of Andrews, the State took custody of Michael and his sister. Michael died the next day of brain injuries. His sister was placed with an aunt.

In January, 1993, plaintiffs were arrested for child neglect on warrants obtained by Lowery. In March, 1993, plaintiffs were indicted by a grand jury for second degree murder and were rearrested. In August, 1993, a grand jury reconsidered the matter and returned no true bill. All charges were dropped. [FN2]

   FN2. Except for a few days following each arrest, plaintiff Peters had been free on bond. Plaintiff Winterstein remained in jail until the final dismissal of the charges.

A year later, in July, 1994, McKnight was charged with obstruction of justice and accessory after the fact in the death of another child for whom she was a baby-sitter. [FN3] Plaintiffs then filed this action. They assert the culpability of McKnight in the death

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 346720  
(Cite as: 1997 WL 346720, *1 (E.D.La.))

Page 2

of Michael and allege that defendants violated their constitutional rights and various state laws. Defendants are Deputy Sheriff Lowery, Sheriff Edward Layrisson, social worker Andrews, and Dale Frazier and Thomas Hall, Andrews' supervisors.

> FN3. See *State v. McKnight,* 665 So.2d 768 (La.App. 1 Cir.1995), rev'd, 671 F.2d 933. The case against McKnight is pending.

*2 In another Section of this Court, plaintiffs prevailed on defendants' motions to dismiss for failure to state a claim. [FN4] Plaintiffs incorrectly contend that the denial of that motion "is completely *res judicata* to these [summary judgment] motions...."

> FN4. Judge Okla Jones, deceased. Though he denied the motion to dismiss, Judge Jones ordered plaintiffs to amend their complaint to more clearly set out their allegations to overcome the defense of qualified immunity advanced by all defendants. They have not done so.

A motion for failure to state a claim is determined by the Court's accepting all allegations in the complaint as true; and the motion is denied if the facts alleged, if proved, would entitle plaintiffs to a verdict in their favor. On a motion for summary judgment, the issue is evidence, not allegations. One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In opposing these motions, plaintiffs must go beyond the pleadings and by their own affidavits or by the "depositions, answers and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Ibid.* The **denial** of the **motion** to **dismiss** has no **effect** on these **summary judgment** motions.

All defendants are sued in their individual, or personal, capacities and in their official capacities. To impose personal liability, the plaintiffs must show that a defendant acted under color of state law to deprive them of a constitutional right. *Kentucky v. Graham,* 473 U.S. 159, 165-167, 105 S.Ct. 3099, 3105-3106, 87 L.Ed.2d 114 (1985). As to personal capacity, a defendant may assert the defense of qualified immunity. Ibid. Suits against a defendant in his official capacity are actually actions against the entity of which he is an agent; and plaintiffs must show that a policy or custom of the entity itself played a part in the violation of federal law. *Ibid.*

The allegations against the OCS defendants (Andrews, Frazier and Hall) are that they failed to investigate the matter and violated plaintiffs' rights to family integrity, regarding the custody of Michael and his sister. The Fifth Circuit Court of Appeals, on an interlocutory appeal, determined that the OCS defendants are entitled to qualified immunity as to their personal capacity. Once qualified immunity has been raised as a defense, plaintiffs must plead facts with particularity which will entitle them to overcome that defense. *Schultea v. Wood,* 47 F.3d 1427 (5th Cir.1995). Plaintiffs have not done that, though the Court in the earlier ruling on the motion to dismiss ordered them to do so.

As to official capacity, the OCS defendants have shown through summary judgment evidence that they are employees of the State. OCS is a state agency, a part of the Department of Social Services of the State of Louisiana. La.R.S. 36:471C(1), 477C(1). Neither a State nor its officials, acting in their official capacities and sued in their official capacities, may be held liable in a § 1983 action because they are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). *Hafer v. Melo,* 502 U.S. 21, 26, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). The OCS defendants may not be held liable under § 1983 in either their personal or official capacities.

*3 Deputy Lowery and Sheriff Layrisson may be held liable in their official capacities if a custom or practice of the Sheriff's office caused unconstitutional conduct. Defendants have presented evidence that those customs and practices are meant to prevent such conduct, *i.e.,* no arrest without probable cause, etc. Plaintiffs have presented no contrary evidence. The Sheriff and Lowery may not be held liable in their official capacities.

The Sheriff may be held liable personally if he actually participated in acts causing a constitutional deprivation, *Mouille v. City of Live Oak, Texas,* 977 F.2d 924 (5th Cir.1992), *cert. denied,* 508 U.S.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 346720
(Cite as: 1997 WL 346720, *3 (E.D.La.))

Page 3

951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993), or if a constitutional violation was caused by a grossly negligent or deliberately indifferent failure to train or supervise Lowery. *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986). There is no evidence that the Sheriff participated in the events at issue, or was negligent or indifferent in the matter of Lowery's training. Defendants' evidence shows that Lowery was well-trained. Sheriff Layrisson may not be held liable in this matter at all.

The only federal-law claims remaining for consideration are allegations against Lowery in her personal capacity--that she failed to investigate and subjected plaintiffs to false arrest, false imprisonment and malicious prosecution. The acts at issue are the arrests and detentions actually caused by Lowery--for child neglect. There is no evidence that she was involved in the decision to charge plaintiffs with murder.

Lowery applied for warrants for the arrests of plaintiffs, and a City Court judge issued those warrants for violation of La.R.S.14:93, which, in pertinent part, provides:
  Cruelty to a juvenile is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen, whereby unjustifiable pain or suffering is caused to said child.
  The applications for the warrants show that Lowery did not accuse plaintiffs of mistreatment, but of neglect. The issue is whether there was probable cause for the arrests. Lowery has submitted copies of reports, medical records, affidavits, etc.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Regarding false arrest, an officer is entitled to immunity if there was probable cause for the arrest. *Id.* But, even if an officer obtains an arrest warrant, she is not shielded by immunity:
  if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.
  *Id.,* 106 S.Ct. at 1096.

Plaintiffs do not aver that Lowery gave false information to the Judge, but they contend that there was no probable cause and that Lowery acted through malice. As to malice, even if an officer has evil intent or bad faith in obtaining a warrant, that will not transmute an arrest based on probable cause into a violation of the arrestee's constitutional rights. *Jureczki v. City of Seabrook, Texas,* 760 F.2d 666, 669. Whether there was probable cause for the warrant is determined by the facts available to the officer when she submitted the application for it. *Bennett v. City of Grand Prairie, Texas,* 883 F.2d 400, 404 (5th Cir.1989).

*4 The facts known at that time were that Michael had twice before suffered head injuries; that Lowery had previously found neglect; that plaintiffs had been warned that placing him with baby-sitters too often or too long might constitute child neglect; that Michael had been healthy on Christmas day; [FN5] that again he had been placed with sitters for two consecutive days and nights; and that he had suffered fatal injury. An objectively reasonable police officer could conclude that these facts provided probable cause for an arrest for child neglect. Lowery is entitled to qualified immunity.

  FN5. Though Lowery declined to view a video-tape of Michael on that day, she had been told of his good condition by several persons during her investigation.

There are no genuine issues of material fact regarding the liability of the defendants under federal law and they are entitled to judgment as a matter of law on those claims. The same may not be true for the state-law claims, but the Court declines to address that issue.

In federal court, the general rule is to dismiss state law claims when the federal claims to which they are pendent are dismissed. *Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir.1992). There is no reason to except this case from that rule. There has been scant attention to the state-law claims in this court, and all discovery which has been performed is usable in state court, which can better address difficult questions of state law. [FN6] The interests of judicial economy, convenience, fairness and comity indicate that the Court should decline to exercise jurisdiction over the state-law claims. *Id.,* 972 F.2d at 586, quoting

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 346720  
(Cite as: 1997 WL 346720, *4 (E.D.La.))

Page 4

*Carnegie-Mellon University v. Cohill*, 484 U.S. 434, 350 n. 7, 108 S.Ct. 614, 619 n. 7 (1988).

> FN6. For example, if a baby-sitter caused the death, are Deputy Lowery and the Sheriff (through state law *respondeat superior*) liable because Lowery told plaintiffs to use the baby-sitter?

In consideration of the foregoing, the motions of the defendants for summary judgment are GRANTED; and

IT IS ORDERED that all claims under federal law be and are hereby DISMISSED WITH PREJUDICE, and

IT IS FURTHER ORDERED that all state law claims be and are hereby DISMISSED WITHOUT PREJUDICE.

1997 WL 346720 (E.D.La.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.