# EXHIBIT 7

Not Reported in A.2d
24 Conn. L. Rptr. 13
(Cite as: 1999 WL 30593 (Conn.Super.))

Page 75

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Grace ADLEY,
v.
CONNECTICUT POST LIMITED PARTNERSHIP
et al.

No. CV 970060913S.

Jan. 4, 1999.

MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

CORRADINO.

**\*1** This action was brought by the plaintiff Grace Adley against Connecticut Post Mall Partnership and Bridgeport Paving Co., Inc. The claim is made that the two defendants did not properly remove snow from a parking lot. The plaintiff had been driving her vehicle on December 22, 1995 in the lot and had a collision with a Richard Samu. The plaintiff brought a prior action against Samu which was settled.

The defendant Bridgeport Paving has filed an apportionment claim against Samu alleging that the injuries and damages to the plaintiff were caused by the negligence of Samu.

Since Samu has already settled, the proper method for seeking apportionment is the notice provision of § 52-102(b)(c) of the General Statutes. Apparently, notice has been filed by the defendant Bridgeport Paving Company.

(1)

After the apportionment complaint was filed, each of the defendants filed a third-party complaint seeking indemnification from Richard Samu--the indemnification claims are based on active/passive negligence. Mr. Samu, by means of this motion for summary judgment, seeks to have the third-party complaints dismissed. He relies on Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 207 A.2d 732 (1965) and refers to the four factors that must be alleged to properly plead an active/passive theory of negligence. Id. p. 416, 207 A.2d 732. Mr. Samu argues that no such claim can be made here for indemnification based on an active/passive theory of negligence in a multi-vehicle accident "because no one can be in conclusive control"--the third Kaplan requirement for such a claim. The case of Sanclemente v. Wlaz, 6 C ONN.L.RPTR. 405 (1992) is cited which relies on Mahoney v. Gibson, 10 CLT 47, p. 13 (1984). "Moreover," argues Samu, "the plaintiff alleges that the Connecticut Post Mall parking lot was in a defective condition and it was that situation which caused the accident. Richard Samu could not have been in exclusive control of the 'situation' which the plaintiff alleges caused the accident between her vehicle and the Samu vehicle."

The two defendants rely on Carter v. Rental Car Resources, Inc., et al, 9 CSCR 74 (1993). In Carter, the action arose out of a motor vehicle collision between a car operated by Brenda Carter and owned by Rental Car Resources, Inc. (RCR) and a vehicle operated by Corin Bligh. Gwen Carter, who was a passenger in the vehicle driven by Brenda Carter, claimed injuries and filed suit against Brenda Carter, RCR, and Bligh. Another passenger in the car operated by Brenda Carter, Devery Smith, also filed suit against the previously mentioned defendants.

RCR then filed cross claims in both suits which sought indemnification--these actions alleged that Brenda Carter was in control and possession of the vehicle to the exclusion of RCR at the time of the collision and had no reason to know of or anticipate Brenda Carter's negligence (alluding to third and fourth Kaplan factors for active/passive negligence claim).

**\*2** Brenda Carter then filed a motion for summary judgment against the indemnification cross claim filed by RCR and in part relied on Mahoney v. Gibson, supra. She argued RCR's indemnity claim, based on allegations of her active negligence, was not viable because there could not have been exclusive control of the "situation" giving rise to the accident--i.e., a collision involving two drivers.

Carter refused to use Mahoney as a basis to bar the indemnity claim. Analyzing Mahoney, the court said that in that case a defendant operator of the car

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d
(Cite as: 1999 WL 30593, *2 (Conn.Super.))

Page 76

in which the plaintiff passenger was seated filed a third-party indemnity claim against the defendant operator of the other vehicle involved in the accident and its owner. The Carter court noted that Mahoney reasoned that this other operator in a multi-vehicle collision could not have had control over the situation involved in the accident to the exclusion of the other defendant operator who filed the third-party indemnification accident. Also, the defendant operator bringing the indemnity action was involved in the accident and, as such, could have been actively negligent.

The Carter court, however, reasoned that in the case before it, the rental company, RCR, did not allege that the defendant Brenda Carter had control of the car to the exclusion of the operator of the other vehicle involved in the accident; "rather, RCR alleged that it was the owner of the rental vehicle and that defendant [Brenda] Carter as the operator of the rental vehicle was actively negligent because she had exclusive control of the rental vehicle at the time of the accident."

The Carter court went on to say
In the present actions, RCR has satisfied the "exclusive control" requirement, because ... "exclusive control of the situation" is analogous to exclusive control of the operation of the rental vehicle, and because the present cross claims for indemnity are being asserted by RCR in its capacity as the owner-lessor of the vehicle, and not as an operator of the vehicle that was involved in the underlying accident. Thus, RCR is not precluded as a matter of law from asserting that defendant [Brenda] Carter was in "exclusive control of the situation."
But Mahoney and Carter are of limited value for deciding the issue now before the court.

What Kaplan v. Merberg Wrecking Corporation, supra, requires and Carter and Mahoney make clear is that in deciding whether an indemnification action between joint tortfeasors is viable on an active passive negligence theory, the criterion that the tortfeasor against whom indemnification is sought must be in control of the situation to the exclusion of the other tortfeasor depends on the factual setting of the accident producing event and the relationship of the parties involved inter se to the accident producing evidence. A case Kaplan relies on heavily and which can be looked to for guidance in applying

the active/passive theory of negligence as an exception to the common law rule barring contribution between joint tortfeasors is Preferred Accident Ins. Co. v. Musante, Berman & Steinberg Co., 133 Conn. 536, 52 A.2d 862 (1947). That case quoted an early case, Bailey v. Bussing, 28 Conn. 455, 459 (1859), which said
*3 We must look for personal participation, personal culpability, personal knowledge. If we do not find these circumstances, but perceive only a liability in the eye of the law, growing out of a mere relationship to the perpetrator of the wrong, the maxim of the law that there is no contribution among wrongdoers is not to be applied. [FN1]

  FN1. This succinctly explains the result in Carter v. Rental Car Resources, Inc., supra.

The court went on to quote from 38 ALR 566 which said "... the applicability of the rule is negatived, wherever it appears that the party seeking indemnity was himself [sic] guilty of affirmative misconduct which was a proximate cause of the injury in question." Preferred Accident itself at page 543 said
Where there are two joint tortfeasors and each is guilty of intentional wrongdoing, there may be sound justification for a denial of contribution because either party in seeking it would have to take his [sic] stand upon his [sic] own wrong. We have held that where the negligence of each of two defendants enters immediately and directly into the production of the accident, neither should have a right to contribution. [FN2]

  FN2. The second sentence of this quote if not the first (from which the second sentence does not necessarily follow) justifies the result in Mahoney v. Gibson, supra. The second sentence provides the basis for the third or exclusive control requirement in Kaplan v. Merberg Wrecking Corp., 152 Conn. at p. 416, 207 A.2d 732.

(2)

Using the foregoing reasoning to examine the indemnification claim made by Connecticut Post Mall Limited Partnership (Post Mall) against the third-party defendant, Richard Samu, the "situation" or factual setting of the accident in light of the allegations of the amended complaint and the indemnification cross complaint must be examined.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d
(Cite as: 1999 WL 30593, *3 (Conn.Super.))

Page 77

Three factors are involved as predicates to the cause of this accident--the negligence, if any, of Samu and the claimed negligence of the Post Mall and the company it hired for snow removal, Bridgeport Paving. The basis of the plaintiff's claim against Post Mall is that the negligence of Post Mall contributed to the causation of the accident which caused her injury, apart from any negligence on Samu's part. As between Samu and Post Mall, could it be said that Post Mall is only passively negligent as opposed to Richard Samu's active negligence?

Giving every favorable inference to the nonmoving party, the court will assume that the Post Mall will prevail, at trial, in rebutting every claim made against it that it actively created the conditions of danger by not posting warning signs to drivers about snow conditions, by plowing the snow in such a way as to obstruct the vision of drivers and by not properly removing the snow.

But despite these assumptions, the Post Mall is the owner-occupier of the land and an aspect of the claim against it is based on a theory of premises liability. It appears to be the general rule that a party who fails to make a dangerous condition safe after having notice of the condition cannot be regarded as passively negligent for purposes of applying the principles of common law indemnification. Thus, "... when a tortfeasor has knowledge of a dangerous situation, he [sic] is not entitled to indemnification for damages." 41 Am.Jur.2d §§ 27, 29. "Indemnity," cf., Oregon Farm Bureau Ins. Co. v. E.L. Caldwell & Sons, Inc., 306 F.Supp. 835, 839 (D.Ore., 1969); Slemmons v. Ciba-Gligy Corp., 57 Ohio App.2d 43, 385 N.E.2d 298, 307 (Oh., 1978); Foss v. Moskowitz, 359 So.2d 24, 25 (Fla., 1978).

*4 True, it has also been held that "a vendee-user of a product is not entitled to indemnity from a manufacturer for damages the former is required to pay a third party, when as here, the vendee's fault gives beyond the mere negligent failure to discover a product defect." General Motors Corp. v. County of Dade, 272 So.2d 192, 194 (Fla., 1973) (passenger injured by brick thrown through bus window which had a type of glass that shattered, indemnity claim by bus owner against bus manufacturer not allowed where bus owner knew of nature of glass yet allowed bus to be driven in area where rock throwing could be anticipated).

But the obligations of an owner of premises to business invitees goes beyond the requirement of actual notice necessary to impose liability in other contexts. It is true that a party in control of premises can be held liable for defective conditions of which it had not only actual but constructive notice, Smeriglio v. Connecticut Savings Bank, 129 Conn. 461, 462, 29 A.2d 443 (1942). But the possibility that liability could be imposed where there is only constructive notice (should have known of icy conditions, for example) cannot be used as a pretext to argue that therefore it is feasible to posit the possibility that a property owner could be only passively negligent for indemnification analysis. The requirement of notice runs with a corresponding duty to inspect in premises liability law. Phenning v. Silansky, 144 Conn. 223, 226, 129 A.2d 224 (1957). In other words, the question of whether there is constructive notice of defective conditions-- should the party in control of the premises have known of these conditions, is dependent on the reasonableness of inspections in terms of frequency and thoroughness that the owner is obligated to make as part of its duty of reasonable care. Thus, the imposition of liability on Connecticut Post Mall Limited, at the very least, will depend on a finding of failure to make reasonable inspection of the premises which obviously involves a finding of active negligence. Under the reasoning of Preferred Accident Insurance Co. and Bailey v. Bussing, it cannot be said that a failure to make reasonable inspection of one's property does not involve "personal culpability" or "personal participation" in the circumstances that might have caused the accident. Such failure is "affirmative misconduct." To allow indemnification in such a case would permit Post Mall to "stand upon [its] own wrong" so as an active co-tortfeasor Post Mall should not be permitted to bring an indemnification action.

In other words, the only negligence the plaintiff can prove to establish liability against Post Mall would be, for definitional purposes in indemnification terms, active negligence. If active negligence is not proven, then the indemnification does not arise. The motion is granted and the indemnification action by Post Mall against the third-party defendant, Richard Samu, is dismissed.

(3)

*5 The indemnification claim of Bridgeport

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 1999 WL 30593, *5 (Conn.Super.))

Page 78

Paving must also be examined in the context of the factual setting or "situation" presented by this accident and whether an active/passive negligence theory as between Samu and Bridgeport Paving makes any sense in light of the prospective evidence that can be admitted under the pleadings.

The plaintiff's complaint against Bridgeport Paving which will limit and define her proof sounds in allegations of active negligence: the snow was not properly removed, it was plowed in such a way as to block the vision of motorists, no warnings as to conditions were posted, the snow was allowed to dangerously accumulate, the defendant did not comply with its obligation to remove snow under its contract with Post Mall.

It is difficult for the court to posit a scenario surrounding this accident and its occurrence whereby it could be found that (1) Bridgeport Paving was negligent in any of the ways alleged in the plaintiff's complaint; (2) Samu was negligent in any of the ways alleged in Bridgeport Paving's third-party complaint, but given these predicates, Richard Samu's negligence was "active" and that of Bridgeport Paving was "passive."

Ordinarily, the question of active/passive negligence or, for example, the question of exclusive control of the situation by the party against whom an indemnification claim is made is a question for the jury. But here, the plaintiff's complaint and the third-party cross complaint seeking indemnification indicate Samu, vis-a-vis Bridgeport Paving, could not have had exclusive control of the circumstances which led to the accident because the only allegations against Bridgeport Paving lie in active negligence. As has been said "... where the negligence of each of two defendants enters immediately into the production of the accident, neither should have a right to contribution." Preferred Accident Ins. Co. v. Steinberg Co., supra at 133 Conn., page 543, 52 A.2d 862.

The issue of indemnification only arises if the plaintiff proves her claim of negligence against Bridgeport Paving--if she does not, there will be no indemnification; if she does, the claims lie in active negligence and no indemnification claim will lie. The very wording of the third-party complaint by Bridgeport Paving echo this factual scenario. The motion for summary judgment is also granted as to the third-party indemnification complaint by Bridgeport Paving against Richard Samu. [FN3]

> FN3. One other matter should be discussed. The Post Mall and Bridgeport Paving in opposition to the motion for summary judgment argue that, in effect, the motion is being used to test the sufficiency of the complaint which is not permissible under Burke v. Avitable, 32 Conn.App. 765, 768, 630 A.2d 624 (1993). But Boucher Agency, Inc. v. Zimmer, 160 Conn. 404, 408, 279 A.2d 540 (1971) suggests otherwise. Why not permit such a procedure at least where, by no possible construction of the pleadings or inferences to be drawn from them, can the nonmoving party successfully resist the motion and the factual circumstances out of which the case arises do not suggest that any possible amendment of the pleadings could forestall the granting of the motion. If the latter is not the case, the nonmoving party should be allowed to amend the pleadings and allege the factual circumstances which justify this and would otherwise prevent the granting of the motion. Here, no factual allegations beyond the factual allegations of the pleadings have been raised by way of amendment to the pleadings, affidavits, depositions, documents, et cetera, and the court believes there is probably good reason why this is so--given the circumstances of which happened here, no such allegations could be raised that would forestall the granting of the motion.

1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work

