# EXHIBIT 11

Not Reported in A.2d  Page 110
(Cite as: 2003 WL 21675349 (Conn.Super.))
<KeyCite Citations>

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Middlesex.

Larry PARKER,
v.
KONOVER CONSTRUCTION CORPORATION.

No. CV990090911S.

June 24, 2003.

Berman & Russo, South Windsor, for Larry Parker.

D'Attelo & Shields, Rocky Hill, for Konover Construction Corporation.

Chadwick & Stone, LLP, East Hartford and O'Keefe Phelan & Jackson, Hartford, for Northeast Atlantic Inc.

Silver Daniel Law Offices, New Britain, and Howd & Ludorf, Hartford, for DMC Construction Co. Inc.

AURIGEMMA, J.

*1 This case arises from a construction site accident at the Farmington Assisted Living facility in Farmington, Connecticut. Larry Parker, the plaintiff, suffered personal injuries when he fell into a stairwell on the project on April 21, 1998. He filed suit only against Konover Construction ("Konover"), the general contractor, which in turn filed a third-party claim against Northeast Atlantic, Inc. ("Northeast"), the framing subcontractor on the project.

Konover raises three claims: 1) Northeast breached its contract by failing to properly procure insurance for the benefit of Konover; 2) Northeast breached its contract by failing to defend and indemnify Konover against Larry Parker's claim; and 3) Northeast is liable under the common law to indemnify Konover.

Facts

Konover was the general contractor for the construction of the Farmington Assisted Living Facility. Northeast was the framing subcontractor on the project. Henry Bissonnette, the president of Northeast, executed a contract with Konover (the "Contract"). The Contract contained a start date of February 1, 1998.

The specifics of the work to be performed by Northeast were set forth in Rider A of the Contract, which required Northeast to "Furnish all Labor and Material, rigging, hoisting, clean-up, temporary safety protection, cranes, forklifts, etc.; for a complete CARPENTRY WORK PACKAGE ..." Northeast specifically agreed to "Furnish and Install all OSHA Safety rails, stairs, temporary protection etc.; as requested by Konover Safety Officer and Site Superintendent." The Contract also required Northeast to "perform all work and furnish all supervision, labor, materials" and insisted upon "strict accordance and in compliance with the terms of this Subcontract[.]" Northeast also agreed "to be bound by, and, at its own cost, comply with all federal, state and local laws, codes, ordinances and regulations applicable to this subcontract and the performance of the work hereunder, including, not limited to, ... the Occupational Safety and Health Act of 1970."

Northeast also agreed to indemnify Konover. Paragraph Six of the Contract provided that the "subcontractor shall indemnify, defend and hold harmless contractor ... against all claims, damages, loss and expense, including but not limited to, attorneys fees arising out of or resulting from the performance of the subcontractor's work attributable to bodily injury ... to the extent caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor ..."

The Contract also required Northeast to "procure for the Subcontractor's work and maintain in force Workers' Compensation insurance, Employer's Liability insurance, [and] Comprehensive General Liability insurance ..." and provided that "The Contractor and the Owner(s) shall be named as additional insureds on each of these policies except for workers' compensation."

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 2003 WL 21675349, *2 (Conn.Super.))

Page 111

*2 Prior to the events in this case, Northeast procured a Certificate of Insurance from its broker, R.C. Knox. That Certificate does indicate that "Konover Construction Corporation [and the owners] are named additional insureds on General Liability policy, with respects to the above mentioned project." The Northeast policy did not provide coverage for Konover Construction against Mr. Parker's claim. Further, there was no evidence that Northeast paid a premium for the Certificate or that it otherwise sought to extend or expand the coverage under the policy. It simply procured the Certificate.

In accordance with the Contract, Northeast accepted responsibility for the installation of safety rails. Mr. Perez, the person in charge of safety on the job for Northeast, was aware that the rails had to be completed before other trades could work in an area. The safety rails were completed in the area before Mr. Parker fell.

The Contract incorporated OSHA specifications for safety rails, which required two rails, a top rail no more than 42 inches from the work surface and a mid-rail, roughly 21 inches from the surface. In addition, OSHA required uprights spaced five feet on center. Prior to Mr. Parker's fall, Konover had directed Northeast to construct safety rails with uprights five feet on center.

On April 21, 1998, there were three trades working on the third floor. Northeast, through Mr. Perez, was erecting safety rails. He was working ahead of D.M.C. Concrete, the concrete subcontractor, whose employees, including Mr. Parker, were laying wire mesh in preparation for a concrete pour the following day. In addition, Steel Fab, another subcontractor, was laying steel decking in another portion of the third floor. Mr. Perez admitted that Northeast was responsible to place safety rails on the third floor that day. Further, he recognized that he was required to complete these rails, including the opening into which Mr. Parker fell, before the other trades worked in the area.

Mr. Perez had completed the installation of safety rails across the stairwell opening before Mr. Parker's fall. His installation consisted of the placement of the rails across a seven- or eight-foot opening using only braces or uprights shot into masonry block at either end of the stairway opening with no center upright.

Larry Parker fell through the safety rails which were supposed to have been sufficiently strong to hold his weight. He fell into a stairwell and sustained injuries, including a broken left elbow. He underwent several surgeries, including at least one to place a plate and screws in his elbow. Further, he claimed to have lost nearly two years from work as a direct result of this incident. Mr. Parker claimed medical bills in the approximate amount of $34,000 and lost wages of approximately $20,000. He also claimed a 10% permanent disability to his arm.

By Writ, Summons and Complaint, Mr. Parker commenced an action against Konover Construction in December 1999. Thereafter, by Third-Party Complaint dated February 2001 Konover Construction commenced this action against Northeast. Konover made a demand for defense and indemnity to Northeast around the time of the filing of the Third-Party Complaint.

*3 After Parker's fall, Gary Hicks, an employee of Konover, found one rail still partially attached which had covered the stairwell opening. This rail was bent or "wrinkled." Mr. Hicks also found a bent rail in the stairwell. These were light gauge metal that was inappropriate for safety rails. The court finds that Parker's fall was due to the negligence of Northeast.

Northeast refused to defend or indemnify Konover. Konover settled the case in chief with Mr. Parker for the amount of $62,500 on or about September 24, 2002.

Discussion of the Law and Ruling

The elementary principles of contract interpretation are well established: 1) the intention of the parties is controlling and must be gathered from the language of the contract in light of the circumstances surrounding the execution of the contract; 2) the language of the contract will be given its ordinary meaning unless a technical or special meaning is clearly intended; and 3) the contract is construed as a whole, in order to give effect, if reasonably possible, to each provision. Ingalls v. Roger Smith Hotels Corp., 143 Conn. 1, 6, 118 A.2d 463 (1955).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



The Contract provides: "Subcontractor shall procure for the Subcontractor's Work and maintain in force ... Comprehensive General Liability Insurance ..." "The Contractor and the Owner(s) shall be named as additional insured on each of these policies ..." The reasonable interpretation of the foregoing language is that Northeast would add Konover to its insurance policy, which policy would actually provide insurance coverage to Konover.

Northeast does not dispute that its policy afforded no coverage for Konover. Instead, it makes the argument that all the Contract required was that Konover's name be placed on the insurance policy, it did that, and, therefore, it did not breach the Contract. This argument is contrary to the basic tenet of contract interpretation, which provides that "[p]arties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible." Barnard v. Barnard, 214 Conn. 99, 116, 570 A.2d 690 (1990).

Northeast also argues that it paid no extra money to obtain the placement of Konover's name on its insurance certificate. This argument is baffling. It seems to make Konover's point, underscoring the fact that rather than obtain insurance coverage for Konover as the Contract required, it merely placed Konover's name on its policy, an act which provided Konover with no insurance coverage.

Northeast breached the Contract with Konover by failing to provide insurance coverage to Konover for claims relating to Northeast's work, such as the one made by Mr. Parker. Therefore, judgment may enter on the Third Count of the Third-Party Complaint in favor of the third-party plaintiff, Konover Construction in the amount of $90,507.65, which is composes of $62,500 which Konover paid to Parker in settlement of his claim, $16,007.65, the attorneys fees which Konover incurred to defend Parker's action, and $12,000, the reasonable amount of the Third-Party Plaintiff's attorneys fees to prosecute the Third-Party claims against Northeast.

*4 Konover claims in the Second Count of the Third-Party Complaint that Northeast also breached the Contract by failing to defend Konover and indemnify it against Mr. Parker's claims.

Indemnity agreements have been specifically recognized as appropriate in construction contracts by our Supreme Court. "Indemnification agreements have long been recognized as a valid method of allocating the risks inherent in construction projects." Leonard Concrete Pipe Co. v. C.W. Blakeslee & Sons, Inc., 178 Conn. 594, 597, 424 A.2d 277 (1979). Thus, "[a]n indemnity agreement will be construed to cover such losses which appear to have been intended by the parties." Id. at 599.

Paragraph 6 of the contract, entitled "Indemnification," provides, in pertinent part:
> Subcontractor shall indemnify, defend and hold harmless Contractor ... from and against all claims, damages, loss and expense, including but not limited to attorneys fees, arising out of or resulting from the performance of the Subcontractor's work attributable to bodily injury ... to the extent caused in whole or in part by any negligent act or omission of the Subcontractor ...

Connecticut law recognizes two types of indemnity agreements, those which indemnify against loss and those which indemnify against potential liability. See, e.g., Amoco Oil Co. v. Liberty Auto & Elec. Co., 262 Conn. 142, 149, 810 A.2d 259 (2002). These are not mutually exclusive, and an agreement may protect against both. Id . at 150. The Contract can be read to protect both against potential liability ("defend" contractor, protect against "claims") and against loss (indemnify against "damages, loss and expense").

Northeast had distinct, and equally binding, duties to indemnify Konover against both Mr. Parker's claim and against the monies paid to him. Konover made timely demand on Northeast for defense and indemnification and Northeast did not defend or indemnify.

Mr. Parker was injured when he fell through safety rails which Northeast had the clear contractual duty to install. Thus, Parker's claim certainly was one "arising out of" or "resulting from" the work of Northeast within the meaning of the Contract. See Cirrito v. Turner Constr. Co., 189 Conn. 701, 705, 458 A.2d 678 (1983); Harvey v. Boehringer Ingelheim Corp., 52 Conn.App. 1. 724 A.2d 1143 (1999).

Northeast has argued that since Parker's complaint did not allege the negligence of Northeast, but only the negligence of Konover, Parker's claim did not

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 2003 WL 21675349, *4 (Conn.Super.))

Page 113

"arise out of" the work of Northeast. This argument is factually and legally flawed. Parker alleged that Konover was negligent in that "Konover Construction Corporation, its agents or employees, negligently and carelessly failed to protect or place barriers against the edge of the roof area." Complaint ¶ 5. Although he did not specifically name Northeast, he did specifically allege the negligence of Konover's agents. Northeast was Konover's agent in that it had agreed to perform a portion of Konover's general construction contract.

*5 The Connecticut Supreme Court has found an argument similar to that advanced by Northeast to be invalid in Harvey v. Boehringer Ingelheim, supra. In Harvey, the trial court granted summary judgment in favor of the third-party defendant on a third-party contractual indemnity claim, relying upon the allegations of the plaintiff's complaint. That court found that even if the allegations of the plaintiff's complaint were proven, they would not trigger the indemnification requirement. The Appellate Court reversed noting that the material issue was not what the plaintiff had alleged but whether the accident was "sufficiently connected" to the subcontractor's performance so as to trigger the indemnification clause.

Northeast also relies on Ray v. Schneider, 16 Conn.App. 660, 548 A.2d 461 (1998), and Pelletier v. Sordoni/Skanska Construction Co., 262 Conn. 372, 815 A.2d 82 (2003), for the proposition that as a general matter, contractors are not liable for the torts of their subcontractors. See Trial Brief by Third-Party Defendant Northeast Atlantic, Inc., p. 22. Northeast misstates the holdings of those cases.

Ray and Pelletier were cases in which the independent contractor was negligent, the negligence injured an employee of the independent contractor and the employee, barred by the Connecticut Workers' Compensation laws from suing his employer, sued the general contractor on a vicarious liability theory. The Court in Ray held that although the contractor could be "vicariously liable to members of the general public under these circumstances for harm caused by the negligence of an independent contractor employed by them, they cannot, as a matter of law, be held vicariously liable to an employee of the negligent independent contractor." 16 Conn.App. at 663 (emphasis added). The Court further stated:

Finally, and most importantly, the imposition of liability would subject the employer of an independent contractor to greater liability than he would have had if he had used his own employees on the job. Vagle v. Pickands Mather & Co., supra, 1219; King v. Shelby Rural Electric Co-Op Corporation, supra, 662-63. As a general rule, an employee's recovery is limited to workers' compensation. In this case, for example, if the plaintiff had been an employee of Schneider and Welsh, doing exactly the same work, he would have been prevented by our workers' compensation law from suing them in tort. Employees of an employer should not be limited to workers' compensation benefits while permitting employees of an independent contractor to recover not only workers' compensation benefits, but also to recover damages in tort from an employer of an independent contractor.

16 Conn.App. at 668-69.

Rather than support Northeast's argument that Konover could not be legally liable for Northeast's negligence, Ray confirmed that a contractor could have vicarious liability to persons on the job site, like Parker, who are not employed by the negligent subcontractor. 16 Conn.App. at 667.

*6 Northeast has raised the special defense that the contractual indemnify provision is barred by Connecticut General Statutes § 52-572k, [FN1] which provides:

> FN1. This statute was amended by Public Act 01-155, which substituted "negligence" for "sole negligence." The version of the statute set forth above applies to this case.
>
> (a) Any covenant, promise, agreement or understanding entered into in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of any building, structure or appurtenances thereto including moving, demolition and excavating connected therewith, that purports to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of such promisee, such promisee's agents or employees, is against public policy and void, provided this section shall not affect the validity of any insurance contract, workers' compensation agreement or other agreement issued

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



by a licensed insurer.

In Donar v. King Assoc., 67 Conn.App. 346, 348, 786 A.2d 1256 (2001), the Appellate Court considered an indemnity agreement which provided in pertinent part: "the subcontractor shall indemnify and hold harmless the owner, contractor and agents ... from and against all claims arising out of or resulting from performance of the subcontractor's work under this subcontract but only to the extent caused in whole or in part by negligent acts or omissions of the subcontractor ..." Id. (emphasis in original). The Court found that this language did not seek indemnification for the contractor's negligence but only for the subcontractor's negligence. The provision here is indistinguishable from that in Donar, and is not rendered void by § 52-572k.

Northeast has also raised the special defense of waiver based on a provision of the Contract which clearly relates to construction disputes, and not to disputes concerning third-party claims. Northeast relies on a section of the Contract, which provides: "In the event Contractor and Subcontractor cannot resolve disputes, either party may prosecute its claim in a court of competent jurisdiction within the State of Connecticut. All suits must be brought in the courts of Connecticut and must be commenced within one year of the date Subcontractor substantially completes its work, otherwise the claim will be deemed to have been waived."

A reading of the Contract as a whole, giving effect to each provision, makes it evident that the parties did not intend the above provision to apply to indemnification claims. Under the interpretation suggested by Northeast, all claims against it were waived one year from the substantial completion of the carpentry work on the project. Konover's rights under the Indemnification Section of the Contract would be rendered meaningless if this waiver section were deemed to apply to claims for indemnification. A third party such as Parker generally has two years, sometimes three years, from the date of his injury to bring suit against Konover. If the injury sustained by the third party occurred at or after the time Northeast had finished its work, then Konover's indemnification rights could be extinguished even before they arose, and the indemnification provision would be meaningless. "Parties generally do not insert meaningless provisions in their agreements and therefore every provision must be given effect if reasonably possible." Barnard v. Barnard, 214 Conn. 99, 116, 570 A.2d 690 (1990).

*7 Moreover, even if Northeast's interpretation of the contract were correct, it cannot seek the protection of the waiver provision. A party which has not performed obligations under a contract cannot then seek to enforce the contract's terms. See C. Berstein v. Nemeyer, 213 Conn. 665, 672-73, 570 A.2d 164 (1990); see also Restatement 2nd (Contracts) § 237. Here, Northeast is in breach of the indemnity and insurance provisions of the contract. It cannot, therefore seek the protection of the waiver provision.

Finally, Northeast cannot seek the protection of the waiver provision where its conduct effectively concealed its breach from the defendant. See Amoco Oil, supra, 262 Conn, at 153 (concealment of breach stays running of limitation). The contract requires Northeast to provide insurance for the benefit of Konover Construction. Here Northeast provided a facially appropriate Certificate of Insurance for a policy which did not provide coverage. Konover Construction did not learn, and would not learn, that it was afforded no coverage until after it was too late, under Northeast's interpretation of the waiver provision, to pursue Northeast.

For the foregoing reasons, judgment may enter in favor of Konover Construction Corporation on the Second Count of the Third-Party Complaint in the amount of $90,507.65, composed of the same amounts as the damages awarded with respect to Count Three.

In the First Count of the Third-Party Complaint, Konover seeks to recover for common law indemnification. The elements of a claim for common law indemnity are well established. Konover Construction is entitled to recover if: 1) Northeast was negligent; 2) Northeast's negligence was the direct and immediate cause of the accident and Konover Construction's conduct was passive or secondary; 3) Northeast was in control of the situation causing injury to the exclusion of Konover Construction; and 4) Konover Construction did not know of Northeast's negligence, had no reason to anticipate it and could reasonably rely on Northeast not to act negligently. See, e.g., Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 74, 579 A.2d 357 (1990).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 2003 WL 21675349, *7 (Conn.Super.))

Page 115

The court has already found that Northeast was negligent for the reasons set forth above. It had a contractual duty to install appropriate safety railings and it breached that duty. The light-gauge, crumpled, rail was not an appropriate safety rail. Yet, Mr. Perez used this rail. Further, although Northeast should have installed all safety rails in the same fashion, the rails used to cover the stairwell opening spanned eight feet without the additional support of an upright. These facts establish Northeast's negligence.

The alleged conduct of Konover was passive. "Passive or secondary" conduct "encompasses parties who were allegedly negligent in their management or supervision or others ..." Bristol v. Dickau Bus Co., 63 Conn. App 770, 774, 779 A.2d 152 (2001). That is exactly the situation here.

*8 Northeast was responsible both for installation of safety rails and supervision of that work. The subcontract provided that Northeast would furnish all supervision concerning the installation of the safety rails. Konover's only fault, vis a vis Northeast's conduct, was failing to discover the improper rails. This is at worst passive conduct, a failure to supervise others.

Northeast was in exclusive control of the situation. "It is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident." Skuzinski v. Bouchard Fuels, 240 Conn. 694, 706, 694 A.2d 788 (1997).

The court defines "the situation" here as the installation of safety rails and choice of materials. Certainly, Northeast exercised control over the selection of materials and the installation of the rails through which Mr. Parker fell. That control was also exclusive for each of the following reasons. First, by contract Northeast, and only Northeast, bore responsibility for installation of safety rails. Second, Mr. Perez controlled the choice of materials. For some reason he rejected the stronger rails typically used on the project and used the lighter gauge rails which failed. Finally, the rails were completed only ten or fifteen minutes before the plaintiff's fall. Konover never had the opportunity to exercise control over them.

For the reasons set forth above judgment may enter in favor of Konover Construction Corporation on the First Count of the Third-Party Complaint in the amount of $78,507.65, composed of the $62,500 paid to Parker to settle his claim and the $16,007.65 in attorneys fees which Konover incurred in defending Parker's suit.

2003 WL 21675349 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work

