# EXHIBIT 12

Not Reported in A.2d  
(Cite as: 2002 WL 449842 (Conn.Super.))  
<KeyCite History>

Page 117

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Edward L. LEHN III et al.,
v.
Michael DAILEY et al.

No. CV000070707S.

Feb. 27, 2002.

Investors in resort development sued resort, guarantor of promissory note issued by resort, registered broker-dealer, financial adviser, and individual purportedly responsible for financial adviser's acts under agency theory, asserting claims for breach of fiduciary duty and alleged violations of state securities laws and Connecticut Unfair Trade Practices Act (CUTPA). Financial adviser asserted cross-complaint against purported principal for indemnification. After default judgment was entered against guarantor and broker-dealer, and following bench trial, the Superior Court, Judicial District of Ansonia-Milford, Ripley, III, Judge Trial Referee, held that: (1) note was security that was not exempt from state regulations; (2) financial adviser qualified as "investment adviser" under statute; (3) financial adviser had obligation to verify representations by resort and purported principal before suggesting that investors invest in resort; (4) agency relationship existed between financial adviser and purported principal; (5) purported principal was "broker-dealer" under state securities law and subject to provisions of Uniform Securities Act; and (6) financial adviser was not entitled to indemnification.

Ordered accordingly.

West Headnotes

[1] Securities Regulation   250
349Bk250
No action could be brought before expiration of nine months to enforce collection of promissory note which was executed in exchange for investors' delivery of $18,000 and which, under its terms, matured and was payable "in a full nine (9) months from the date of execution," and therefore note was "security" that was not exempt from state regulations under statute exempting security evidencing obligation to pay cash within nine months of date of issuance. C.S.G.A. §§ 36b-3(17), 36b-21.

[2] Securities Regulation   260
349Bk260
Defendant qualified as "investment adviser" under statute defining term to include person who for compensation engaged in business of advising others as to value of securities or as to advisability of investing in or buying securities when defendant met with investors to review their financial situation and recommend appropriate investment of inherited funds, defendant's original recommendation resulted in profitable investment for investors, and defendant made further recommendations as to subsequent investment. C.G.S.A. § 36b-3(10).

[3] Securities Regulation   278
349Bk278
Investment adviser had statutory obligation not to make untrue statement of material fact or omit to state material fact necessary to make his statements not misleading, and thus had obligation to make reasonable attempt to verify on his own statements made by resort corporation in its brochures and commercials and representations made by third party before suggesting to investors his own opinion as to wisdom of contemplated investment in resort corporation, which he promoted. C.G.S.A. § 36-5a(2).

[4] Principal and Agent   131
308k131
Agency relationship existed between investors' financial adviser and individual who authorized adviser to act on behalf of investment company, of which individual was partner in obtaining investors in resort operation; therefore, individual was liable, as principal, for adviser's liability to investors, as agent, in connection with investment in resort operation.

[5] Securities Regulation   260
349Bk260
By engaging in sales promotion to Connecticut investors, partner of investment company became "broker-dealer" under state securities law and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 2002 WL 449842 (Conn.Super.))

Page 118

subject to provisions of Uniform Securities Act, including penalties for sale through his agent and companies of unregistered security in form of North Carolina resort's promissory note. C.G.S.A. §§ 36b-3(5), 36b-29(a)(1).

[6] Appeal and Error     1079  
30k1079  
Trade practices claim that was not briefed by plaintiffs was abandoned.

[7] Indemnity     60  
208k60  
Indemnification does not lie where the individual seeking to be indemnified was himself guilty of affirmative misconduct which was a proximate cause of the loss.

### MEMORANDUM OF DECISION

GEORGE W. RIPLEY, II, Judge Trial Referee.

*1 In this matter the plaintiffs, husband and wife, seek to recover damages resulting from their investment in a resort development located in North Carolina. Their action is brought in eight counts naming as defendants Michael Dailey, a Connecticut resident, James Carpenter individually doing business as Investment Concepts, Investors Capital Corporation and Global Insurance Company Limited of San Jose, Costa Rica.

The first count alleges an illegal sale of a security by the defendant North Carolina resort corporation called South Mountain Resort and Spa, Inc. which the evidence indicates is in bankruptcy with proceedings against it stayed by operation of the Bankruptcy Code. (See P.Ex. 6).

The second count is against Michael Dailey of Trumbull, Connecticut alleging, inter alia, breach of a fiduciary duty.

The third count alleges a violation of "CUTPA" on the part of Dailey.

The fourth count names the defendant corporation and claims several statutory violations as concerns the sale of investment paper.

The fifth and sixth counts claim liability on the part of Carpenter as a principal responsible for Dailey's activities as an agent and liability under CUTPA.

The seventh and eighth counts claim damages against Investors Capital Corporation as a principal of Michael Dailey who acted as its agent.

The eighth count makes claim against Global Insurance Company of Costa Rica a claimed guarantor of the note issued by the resort corporation.

Finally, the defendant Dailey filed a cross-complaint against the defendant Carpenter claiming indemnity against any loss arising from the plaintiff's cause of action.

Global Insurance Company and Investors Capital Corporation failed to appear, and default judgments have been entered against them. (See docket entries Nos. 105 and 111.)

This matter was tried before the court on November 12, 2001. It appears from the evidence that the plaintiffs obtained some funds through inheritance some time ago and lacking in sufficient knowledge as to appropriate investments, attended seminars where Michael Dailey was a participant as a financial advisor. This relationship commenced in September 1997 when Dailey initially invested some funds of the plaintiffs which brought about a satisfactory return. In the spring of 1998, Dailey contacted the plaintiffs and advised them that he was able to offer them an investment in the North Carolina resort development which offered a good return. The plaintiffs were to remit to the resort a sum of money for which the resort would issue its promissory note payable in nine months from date of issue and bearing interest in the amount of 10.9 percent. The plaintiffs issued their check in the amount of $18,000 on June 24, 1998 (P.Ex. 2) and in due course obtained a promissory note from the resort dated July 8, 1998. (P.Ex. 1.) The understanding that the plaintiff had from Dailey was that the interest payments of $164 per month were to be sent monthly during the lifetime of the note. As things developed, the plaintiffs only got three interest payments; September, October and December 1998. In March 1999 the resort wrote to the plaintiffs offering to renew the note which was to mature the following month, April 1999. (See P.Ex. 4.) This was declined by the plaintiffs and on

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 2002 WL 449842, *1 (Conn.Super.))

Page 119

May 9, 1999 the plaintiffs by letter to the resort (P.Ex. 5) demanded payment of the principal and accrued interest. Needless to say, this demand was never honored. Subsequent investigation by counsel for the plaintiffs determined that Michael Dailey was a registered broker-dealer agent of Investors Capital Corporation between April 1998 and September 1999 and that Investors Capital was a registered broker-dealer since 1993. (See P.Ex. 9.) Plaintiffs' Exhibit 3, a certified record of the Department of Banking, State of Connecticut, indicates that South Mountain Resort & Spa, Inc. commencing in 1997 issued securities in the form of promissory notes. During this period neither the company nor its agents were registered agents as required by Connecticut statutes and it was also determined that the resort was in no way exempt from the regulations and statutes. Additionally, the securities sold the promissory notes, were never registered in Connecticut as required by C.G.S. § 36b-16 and § 36b-21.

*2 [1] At issue in this matter is whether the instrument executed by South Mountain Resort & Spa, Inc. (P.Ex. 1) falls within the definition of a "security" and thereby represents a transaction governed by the provisions of the Uniform Securities Act, Chapter 672a of the Connecticut General Statutes or is exempt from the regulations set forth in that chapter. The terms of the note executed by South Mountain naming the plaintiffs as payee in exchange for the plaintiffs' delivery of $18,000 provide, inter alia, that the note would mature and be payable "in a full nine (9) months from the date of execution." Sec. 36b-21 C.G.S. exempts from the provisions of this chapter any security "which evidences an obligation to pay cash within nine months of the date of issuance ." There appears no question that a promissory note as evidenced hereto is a security as defined is Sec. 36b-3(17) and accordingly is included within the chapter regulations unless otherwise exempt. Inasmuch as the note matured by its terms following the expiration of a "full" nine months from date of issue it did not represent an obligation to pay cash "within nine months." By its terms, no action could be brought to enforce collection before the expiration of nine months. The court concludes that the promissory note in question was not exempt from the terms of the Chapter. This apparently was also the conclusion of the Securities and Business Investments Division of the Department of Banking, State of Connecticut, as set out in an "Order to Cease and Desist" dated November 7, 2000. (P.Ex. 3.)

This order set forth a finding that the note as offered by South Mountain represented a security which was not exempt from registration as required by the Chapter and additionally that South Mountain had no registered agents in Connecticut which would allow the sale of such securities of South Mountain as required by the provisions of the Chapter. If an individual sells, or offers to sell such a security in violation of the applicable statutes they are subject to civil suit for reimbursement of the consideration paid for the security in addition to other fees and costs including attorneys fees. See C.G.S. § 36b-29.

[2] Also at issue in this matter is whether the defendant Dailey owed a duty to the plaintiffs as a fiduciary. Sec. 36b-3(10) describes an "investment adviser" as any person who for compensation engages in the business of advising others ... as to the value of securities or as to the advisability of investing in or purchasing securities. It seems clear from the testimony that the defendant Dailey did engage in such activities so as to fall within the definition of an investment adviser.

The plaintiff Edward Lehn testified that he met Dailey in September 1998 when he came to the plaintiff's home to review their financial situation in order to recommend appropriate investment of funds which the plaintiff had obtained from a recent inheritance. Mrs. Lehn had met Dailey when he put on or participated in investment seminars. As noted before, his original recommendation in 1997 resulted in a profitable investment for the plaintiffs and in the spring of 1998 he returned with recommendations as to South Mountain. Dailey testified that his information as to this particular investment came from the defendant James Carpenter. Based upon that information, Dailey advised the plaintiffs that it was a good investment with a good return and that it was safe as it was secured by a bond. Mrs. Lehn testified that she and her husband relied upon Dailey's representations and that Dailey said the investment was guaranteed "no matter what." Dailey testified that his only knowledge of this investment was given to him by the defendant Carpenter. Carpenter's knowledge according to Dailey was gained from a personal visit to the premises and personal knowledge of the Chief

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Financial Officer of South Mountain. Carpenter told Dailey that South Mountain was a very safe investment and that it was secured by a bonding company. Dailey thought it was a New England bonding company but it turned out that the so-called bonding company was domiciled in Costa Rica. Had the plaintiffs known the company was not a New England carrier, as they thought, they might have entertained second thoughts as to the investment. (See D. Ex. 2.) The company thus far has failed to respond to plaintiffs' inquiries regarding the default on the part of South Mountain or to service of this complaint naming them as a co-defendant.

*3 [3] Dailey as an investment adviser had an obligation under Sec. 36-5a(2) not to make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they are made, not misleading. From the testimony of the plaintiffs and Dailey the court concludes that Dailey had an obligation in his capacity as a financial adviser to make a reasonable attempt to verify on his own the statements made by South Mountain in brochures and commercials and representations made by Carpenter before suggesting to the plaintiffs his own opinion as to the wisdom of the contemplated investment which he promoted.

[4][5] The plaintiffs in their complaint have alleged a cause of action against James Carpenter d/b/a/ Vision Capital Group of Companies and Investors Capital Corporation. The evidence indicates that James Carpenter became aware of South Mountain Resort as an investment opportunity and brought it to the attention of Dailey as his Connecticut representative. Several exhibits, namely Plaintiffs' Exhibit 10 and 12, and Defendants' Exhibits 4 and 5 as well as the testimony of Dailey and Carpenter confirm an agency relationship between Dailey and Carpenter which authorized Dailey to act on behalf of Investors Capital of which Carpenter was a partner in obtaining investors in the South Mountain Resort operation. Carpenter acknowledged in his testimony that he received a commission of two percent of the $18,000 note purchased by the plaintiffs from South Mountain Resort. It is clear from the evidence that Carpenter's actions in promoting South Mountain Resort as an investment opportunity to Dailey and Dailey's solicitation of the plaintiffs joined Carpenter and Dailey as principal and agent and accordingly Dailey's liability to the plaintiffs becomes Carpenter's liability as well. Carpenter, in engaging in this sales promotion to Connecticut investors, became a "broker-dealer" under Sec. 36b-3(5) and subject to the provisions of the Uniform Securities Act. The court has previously determined that the promissory note issued by South Mountain Resort (P.Ex. 1) constituted a "security" under Sec. 36b-3(17) and therefore subjects Carpenter and the companies he operated to the penalties set forth in Sec. 36b-29(a)(1). According to the evidence, South Mountain Resort's notes as offered through the defendant Dailey and defendant Carpenter's companies, Investment Concepts and Vision Capital, were unregistered in Connecticut and this subjects them to the aforementioned statute and the penalties set forth thereto.

Counsel for the plaintiffs has calculated the plaintiffs' damages allowed under Sec. 36b-29(a) as set out in Exhibit A attached to plaintiff's post-trial brief to be $21,654.66 and counsel fees as set out in Exhibit B to be $12,521.02. The court finds the counsel fees to be reasonable and thereby awards to the plaintiffs the sum of $34,205.68 against the defendants Carpenter and Dailey.

*4 [6] The court makes no determination as to the plaintiffs' claim of Unfair Trade Practices as this claim was not briefed and is considered abandoned.

Judgment may also enter against Investors Capital by default for failure to appear in the amount of $34,205.68.

As concerns the defendant Global Insurance Company Limited, judgment may enter by default for failure to appear in the amount of $22,698.00 pursuant to the calculations offered by plaintiffs' counsel and set out in Exhibit C of plaintiff's brief.

All damages awarded are joint and several as between the defendants Dailey, Carpenter and Investors Capital. Global's liability is limited to the amount of the undertaking as set out in Exhibit C, i.e. the principal and unpaid interest on the note.

[7] As to the defendant Dailey's claim to indemnification from the defendant Carpenter as set out in his cross claim of June 22, 2001 (docket item No. 115) the court finds the issues for the defendant Carpenter. Indemnification does not lie where the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work



Not Reported in A.2d  
(Cite as: 2002 WL 449842, *4 (Conn.Super.))

Page 121

individual seeking to be indemnified was himself guilty of affirmative misconduct which has a proximate cause of the loss. See Preferred Accident Ins. Co. v. Musante, Berman and Steinberg Co., 133 Conn. 536, 542, 52 A.2d 862.

2002 WL 449842 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Work

