# EXHIBIT 8

```
 1
 2                  UNITED STATES DISTRICT COURT
 3                    DISTRICT OF CONNECTICUT
 4                                              CERTIFIED COPY
     SHAWN POULIOT,                    )
 5                                     )
            Plaintiff,                 )
 6                                     )
          vs.                          ) CIVIL ACTION NO.:
 7                                     ) 3:02 CV1302 (DJS)
     PAUL ARPIN VAN LINES, ARPIN       )
 8   LOGISTICS, INC.,                  )
                                       )
 9          Defendants/Third party     )
            Plaintiffs,                )
10                                     )
          vs.                          )
11   THE FESTO CORPORATION, MICHAEL D. )
     KOVAC d/b/a TRANS-EXPO            )
12   INTERNATIONAL, ERICA RAMIRES, in her)
     capacity as employee of Trans-Expo)
13   International,                    )
                                       )
14          Third party Defendants.    )
                                       )
15
16                       DEPOSITION OF
17                       ERICA RAMIRES
18                  LAGUNA HILLS, CALIFORNIA
19                     OCTOBER 24, 2003
20
     ATKINSON-BAKER, INC.
21   COURT REPORTERS
     330 North Brand Boulevard, Suite 250
22   Glendale, California 91203
     (818) 551-7300
23
     REPORTED BY:   SHELLY GOODELL, CSR NO. 10307
24
     FILE NO.: 9D08994
25
```

1

REPORTER'S CERTIFICATION OF CERTIFIED COPY

I, SHELLY GOODELL, CSR No. 10307, a Certified Shorthand Reporter in the State of California, certify that the foregoing pages 1 through 147, constitute a true and correct copy of the original deposition of ERICA RAMIRES, taken on October 24, 2003.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 6th day of November, 2003.

*[Signature]*
SHELLY GOODELL, CSR NO. 10307

```
 1                    ERICA RAMIRES,
 2          having first been duly sworn, was
 3          examined and testified as follows:
 4
 5     MR. STRATTON:  We're going to have the usual
 6  stipulation and I guess Ms. Ramires will be reading and
 7  signing?
 8     MS. O'DONNELL:  That's fine.
 9
10                    EXAMINATION
11
12  BY MR. STRATTON:
13     Q    Good morning, is it Mrs. Ramires, how do you
14  prefer it, Erica?
15     A    My married name is Korzep, so I use
16  Ramires-Korzep, but I usually go by Ramires because in the
17  industry they know me as Erica Ramires.
18     Q    My name is Michael Stratton, and I'll be
19  asking -- and I represent the plaintiff, and I'll be asking
20  you some questions today with regards to an injury that
21  occurred to the plaintiff in this case and any information
22  you may have that is relevant to that.
23          If I ask a question you don't understand, ask me
24  to rephrase it and I'll be happy to do that.  If you do
25  answer a question, I'll assume you understood it and gave a
```

5

```
 1  truthful answer.
 2            Okay?
 3       A    Yes.
 4       Q    Can you tell me your current address?
 5       A    26 Abilene Drive, Trabuco Canyon 92679.
 6       Q    Do you have any plans on moving at any point in
 7  time?
 8       A    Not at this point.
 9       Q    With whom do you live?
10       A    I have a daughter and my husband.
11       Q    And your full name at this point in time is
12  Erica Ramires-Korzep?
13       A    Yes.
14       Q    K-o-r-z-e-t?
15       A    z-e-p like in Paul.
16       Q    Can you tell me whether you work outside the
17  home?
18       A    No, I do not.
19       Q    Can you tell me the last time that you did work
20  outside the home?
21       A    I worked for Trans-Expo International.
22       Q    Is that the company run by Mr. Kovac?
23       A    That's correct.
24       Q    How long did you work for Trans-Expo?
25       A    Approximately nine months.
```

```
 1    Q    Can you describe your job with Trans-Expo?
 2    A    Yes, I was an operations manager.
 3    Q    Did you have a job description?
 4    A    I believe Mike did provide me with one.
 5    Q    And as an operations -- did you say operations
 6  manager?
 7    A    Yes.
 8    Q    What did that job entail?
 9    A    I mainly oversaw shipment, in that I received
10  information from clients and relayed that information to
11  the carriers, the assigned carriers.  And then I would
12  watch the shipment, pick up and delivery was in a timely
13  fashion, and if there were any delays or if there were any
14  problems I would receive that information from the carriers
15  and relay that to the customer.
16    Q    Now, during the nine months that you were with
17  Trans-Expo, who were the assigned carriers that you worked
18  with?
19    A    Airways and Arpin.
20    Q    Anybody else that you recall?
21    A    I don't recall any other carriers.
22    Q    Is it fair to say that Arpin was the only
23  domestic van line carrier that you utilized?
24    A    That's correct.
25    Q    And what was the distinction between work given
```

7

```
 1  clients and sell the trade show moves internationally.
 2      Q    So he was really the marketing salesman?
 3      A    (No audible response.)
 4  MS. O'DONNELL:  You need to say "yes" or "no."
 5  THE WITNESS:  Yes.
 6      Q    BY MR. STRATTON:  Where did you work out of?
 7      A    I worked out of the office in Rancho Bernardo.
 8      Q    Were you the only employee other than Mr. Kovac?
 9      A    I believe so.
10      Q    And would you utilize a computer?
11      A    Yes.
12      Q    E-mail?
13      A    Yes.
14      Q    Was that your primary form of contact or did you
15  utilize the phone?
16      A    Used the phone as well.
17      Q    Where did you get -- did you have forms that were
18  given to you that should be utilized?
19      A    Yes, the shipment booking form was our primary
20  form that we used.
21      Q    And tell me about the shipment booking form, what
22  was the purpose of that form?
23      A    The form is the information that most of the
24  carriers needed in order to pick up a shipment and deliver
25  a shipment.  So it required general pick up information,
```

1  such as address and date and times and delivery
2  information.
3      Q    And the information on a shipment booking form,
4  was that always inputted by you during the time that you
5  were working with Trans-Expo?
6      A    No.  Mike, as well, would enter information on
7  the forms.
8      Q    But the information that we generally see is
9  someone from Trans-Expo would put it on to the shipment
10 booking form?
11     A    It would be information we received and then
12 relayed that information to the carrier.
13     Q    So in all cases it would be information that you
14 received from a client?
15     A    Correct.
16     Q    Now, when you say "client," what does client
17 mean?  What sorts of companies would be clients of
18 Trans-Expo?
19     A    I'm not familiar with Mike, his strategy of how
20 he obtained clients completely.  I know that oftentimes we
21 would call on exhibitor lists going to trade shows and then
22 if they choose to use our services through our carriers we
23 would, you know, put that information down that they gave
24 to us and then move their shipment to the show.
25     Q    Now, do you know who your contact was at Festo

1   Q   On the shipment booking?

2   A   Shipment booking form is written on here, but
3   that's the only thing I really recognize.

4   Q   But this is not a Trans-Expo form?

5   A   No.

6   Q   Now, does this Exhibit 42 does that refresh your
7   recollection about a job that was done in delivering an
8   item from Festo to Naugatuck Valley Community College?

9       MR. OSWALD:   Object to the form.

10      THE WITNESS:  The address is the address that I wrote
11  on the booking form, but other than that it's not -- again,
12  anything that I would have -- it's not a form that I'm
13  familiar with.

14  Q   BY MR. STRATTON:  Do you recall a job whereby
15  Festo needed to have a workstation and some other equipment
16  delivered to Naugatuck Valley Community College back around
17  October 2001?

18  A   Yes, I recall that shipment.

19  Q   Now, is it fair to say that what was occurring
20  there was Festo wanted to deliver a workstation and some
21  other related equipment to Naugatuck Valley Community
22  College for a presentation and then they wanted to have it
23  picked up from Naugatuck and come back to Hauppauge?

24      MS. O'DONNELL:  Objection to form.

25      MR. OSWALD:  Object to form.

19

```
 1       Q    BY MR. STRATTON:  I've shown you Exhibit 25 and
 2  Exhibit 50, are those -- with slight differences are those
 3  both the shipment bookings involved in the job that's
 4  reflected on Exhibit 42?
 5       MS. O'DONNELL:  If you know.
 6       Q    BY MR. STRATTON:  If you know.
 7       A    Again, I don't know who did the short form bill
 8  of lading.  I never received it, but I -- on the shipment
 9  booking forms you've provided to me, I know that those are
10  related to the shipment moving to Naugatuck Valley
11  Community College.
12       Q    Looking at Exhibit 50, is that the shipment
13  booking form that you created for this job which was
14  delivering various equipment from Festo to Naugatuck Valley
15  Community College?
16       A    Yes, I would have created this shipment booking
17  form.
18       Q    Is there any information on that form that was
19  inputted by Michael Kovac or somebody other than yourself?
20       A    No.
21       Q    And can you go through -- well, actually looking
22  up at the top there are various fax numbers up on top.
23       A    Yes.
24       Q    Would that have been -- would those fax numbers
25  have appeared on your copy or appeared on Arpin's copy?
```

```
 1  Castellani is the contact.  And, again, I note "must call
 2  in advance of delivery" with a telephone number.
 3       Q    Let's move to the box that says, "shipper," what
 4  information was provided and who was it provided by?
 5       A    Festo Regional Logistics Center is the shipper.
 6  Where I would pick up -- where I would request Arpin to
 7  pick up the shipment and that would have been provided by
 8  Festo along with the 430 Wireless Boulevard.
 9            And then under that I noted have 10 to 12 pads,
10  some straps and to protect --  bring equipment to protect
11  the wheels.  That would have been noted by me, in that I
12  was told that the equipment did not have any protection and
13  then the straps would have been requested solely by me
14  because in that it didn't have any protection and that it
15  was on wheels it needed to be strapped to the side of the
16  truck, and they would need that to me.  That would mean
17  that they bring straps as well as the truck should have
18  logistics to strap the shipment to the side.
19            Then it says, "Hauppauge, New York" and the zip
20  code, contact there is Faye Devito, I noted she's the
21  manager, phone number to contact her and then I noted also
22  that they have a dock.
23       Q    They have a dock and that's Festo has a dock?
24       A    Only Festo, yes.
25       Q    Does it say "only Festo"?
```

```
 1    A    No, but it's on the shipper side of the document
 2 so that's what it would relate to.
 3    Q    So it only relates to Festo?
 4    A    Yes.
 5    Q    Now, Faye Devito, she's another person you had
 6 contact with at Festo?
 7    A    I don't recall talking to Faye.  I was given her
 8 name and the phone number.
 9    Q    Okay.
10    A    But I remember Petra said she was the one in
11 charge at the warehouse.
12    Q    Now, let's move to the right-hand side of the
13 page continuing on.
14    A    The consignee is Naugatuck Valley Community
15 College.  I was given that by Festo, they provided the
16 address as well, which is 750 Chase Parkway.  The
17 additional information on there is, "need a palletjack and
18 lift gate for the delivery."  And I would have stated that
19 because I was not told if there was a dock at the
20 destination, as well as I didn't know if they had to
21 deliver on the street, or what have you, to get the stuff
22 into the community college.
23    Q    Is this because Festo didn't tell you one way or
24 the other whether they had a dock?
25    MR. OSWALD:  Object to the form.
```

1  THE WITNESS: Either they didn't know or I wasn't
2  told, but in this case I noted those things because I
3  didn't know.
4     Q    BY MR. STRATTON: So you indicated that you
5  needed a palletjack and a lift gate. What does a
6  palletjack do?
7     A    I was under the understanding that there was some
8  items on a pallet and that pallet needed to be lifted off
9  the lift gate of the truck and then moved into the
10 community college. And that jack would have lifted up the
11 pallet and brought it in. And the lift gate, the same, the
12 items had to be taken off the truck and then either taken
13 on to the street or whatever delivery facility they had
14 there.
15    Q    Now, this wasn't the first time that you had been
16 involved in a delivery of a workstation unit for Festo?
17    A    I believe this was the first one. I don't recall
18 any communication with them prior to that for any of the
19 product moves.
20    Q    Did you understand when you created this shipment
21 booking form that this was a workstation?
22    A    I was told it was a workstation. I don't know
23 exactly what that meant for them, but that it was a
24 workstation on wheels.
25    Q    Now, continue on down the page on the left-hand

26