UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN POULIOT                      :        CIVIL ACTION
                                           NO. 3:02 CV1302 (DJS)

V.                                :

PAUL ARPIN VAN LINES, INC.,
ET AL.

V.

THE FESTO CORPORATION,                 
ET AL.                           :        DECEMBER 15, 2004

## DEFENDANTS / THIRD PARTY DEFENDANTS MICHAEL D. KOVAC d/b/a TRANS-EXPO INTERNATIONAL and ERICA RAMIREZ'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and D. Conn. L. Civ. R. 7(a), the Defendants / Third Party Defendants, Michael D. Kovac d/b/a Trans-Expo International and Erica Ramirez (hereafter "Trans-Expo" and/or "Ramirez"), hereby submit this Memorandum of Law in Support of their Motion for Summary Judgment.

I.    **INTRODUCTION**

This case arises from an accident that occurred on October 23, 2001, when the Plaintiff, Shawn Pouliot ("Pouliot" or "Plaintiff"), a truck driver, was injured while unloading a large piece of equipment from the rear of an Arpin Logistics truck. Pouliot was utilizing a device known as a "lift gate" to lower the equipment from the back of the truck to the ground. The equipment being unloaded, a Learnline workstation trolley, had

One Goodwin Square
225 Asylum Street
Hartford. CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

been trucked from Festo Corporation in Hauppauge, New York to Naugatuck Valley Community College in Waterbury, Connecticut. Arpin Logistics, Inc. (hereinafter "Arpin") was the commercial trucking company that dispatched Pouliot to New York to pick up the load and deliver it. Trans-Expo was a sales agent of Arpin with offices in San Diego, California, and Ramirez was Trans-Expo's employee. As a result of his injuries, Pouliot filed suit against Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter collectively "Arpin"). Thereafter, Arpin filed claims as Third Party Plaintiffs against Festo Corporation ("Festo"), Trans-Expo and Ramirez and these parties were later added by Plaintiff as direct defendants to Pouliot's suit against Arpin. Pouliot then asserted direct claims of negligence against Festo, Trans-Expo and Ramirez. Although it had already pled claims as Third-Party Plaintiffs, Arpin thereafter filed Cross Claims against Festo, Trans-Expo, and Ramirez. For the reasons articulated below, Trans-Expo and Ramirez are entitled to judgment as a matter of law on all of Arpin's claims against them for common law indemnification.[1]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The undisputed material facts supporting this motion for summary are set forth in the accompanying Local Rule 56(a)(1) Statement and supporting materials.

The operative Third Party Complaint filed by Arpin as against Trans-Expo and Ramirez is the "Second Amended Third-Party Complaint Pursuant to FRCP 15(a),"

---

[1] Although they are in many ways redundant, the Court, on motion, has declined the strike the duplicative claims. (See doc #240, pg 3). Thus, these Defendants assume that the claims by Arpin are still currently contained in both the operative Third-Party Complaint and the Cross-Claims

– 2 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

dated June 9, 2003 (doc. # 108). That complaint asserts four counts against Trans-Expo and Ramirez sounding in indemnification: **Count Two** (Common Law Indemnification and/or Equitable Indemnification against Michael D. Kovac d/b/a Trans-Expo International),[2] **Count Three** (Common Law Indemnification and/or Equitable Indemnification against Erica Ramirez), **Count Five** (Common Law and/or Equitable Indemnity in Vicarious Liability as to Michael D. Kovac, d/b/a Trans-Expo International), and **Count Eight** ("Common Law and/or Equitable Indemnity for Misrepresentation against Michael D. Kovac, d/b/a Trans-Expo International and Erica Ramirez").

Arpin also asserts indemnification claims in the Cross Claims it filed against Trans-Expo, after Trans-Expo was added as a party by the Plaintiff. The current operative complaint is "Plaintiff's Fifth Amended Complaint" dated October 7, 2003 (doc. # 201), which complaint includes a Count against Trans-Expo and Ramirez sounding in negligence. In its current operative "Amended Answer and Cross Claims" dated October 6, 2004, (doc. #314), Arpin asserts cross-claims against Trans-Expo and Ramirez which generally mirror the third-party claims Arpin previously asserted in its Third Party Complaint. In the current operative Cross Claim, Arpin pleads as follows:

**Count Seventeen** (Common Law Indemnification against Michael D. Kovac d/b/a Trans-Expo International in Negligence);

**Count Eighteen** (Common Law Indemnification against Michael D. Kovac d/b/a Trans-Expo International in Vicarious Liability for Negligence);

---

[2] This Court has stricken Arpin's Cross-Claim counts seeking equitable indemnification (See 1/14/04 Memorandum of Decision, doc. #240, pg. 7) As such, the mere reference to "Equitable Indemnification" in the caption of Arpin's Third-Party Complaint should not be considered controlling.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**Count Twenty-Five** (Common Law Indemnification against Michael D. Kovac d/b/a Trans-Expo International for Negligent Misrepresentation);

**Count Twenty-Six** (Common Law Indemnification Against Michael D. Kovac d/b/a Trans-Expo International in Vicarious Liability for Negligent Misrepresentation);

**Count Thirty-Three** (Common Law Indemnification against Erica Ramirez in her Capacity as an employee of Michael D. Kovac d/b/a Trans-Expo International in Negligence); and

**Count Thirty-Seven** (Common Law Indemnification against Erica Ramirez in her Capacity as an employee of Michael D. Kovac d/b/a Trans-Expo International for Negligent Misrepresentation).

Trans-Expo and Ramirez direct the present motion to all the foregoing common law or active/passive indemnification claims asserted against it by Arpin. The present motion is not directed to Arpin's claims for contribution. [3]

## III.   LEGAL STANDARD

Summary judgment must be granted when the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). However, the non-moving party raises a genuine issue of material fact only if the jury could

---

[3] This Court has indicated that it will apply Connecticut law regarding contribution when it fashions a judgment. See Memorandum of Decision, dated 1/14/04, pg. 6 (doc. #240) Pursuant to Conn. Gen. Stats. §52-572h(h) a right of contribution exists only in parties who are required to pay more than their proportionate share of a judgment. An action for contribution does not arise until after judgment and after a finding that there are uncollectible amounts Jaye v. Gluck, 5 Conn. L. Rptr. 327 (1992)

One Goodwin Square          HALLORAN          Phone (860) 522-6103
225 Asylum Street                                     Fax (860) 548-0006
Hartford, CT 06103          & SAGE LLP          Juris No. 26105

reasonably find for that party. <u>Id.</u> (citation omitted). Furthermore, the burden on the

non-moving party in opposing summary judgment is such that it "must come forward

with enough evidence to support a jury verdict in its favor [as] the motion will not be

defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of

conjecture or surmise." <u>Id.</u> (citations omitted). "[T]he mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of

material fact." <u>Id.</u> "One of the principal purposes of the summary judgment rule is to

isolate and dispose of factually unsupported claims... [and] it should be interpreted in a

way that allows it to accomplish this purpose." <u>Crown Theaters, L.P. v. Daly</u>, 331

F.Supp.2d 89, 92 (D. Conn., 2004) (citation omitted).

## IV.     ARGUMENT

### A.   Arpin's Claims for Active/Passive Indemnification As a Mechanism to Apportion Liability Are Unsupportable As a Matter of Law

The procedural history of this case and this state's applicable law regarding

indemnification and apportionment of damages among tortfeasors mandates that

summary judgment be granted in favor of Trans-Expo and Ramirez on Arpin's common

law indemnification claims. By pleading active/passive indemnification claims, Arpin is

essentially seeking to apportion liability between itself and other allegedly liable

tortfeasors. A claim for indemnity is not the appropriate mechanism by which to

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

achieve apportionment of liability. As such, Arpin's claims for indemnification are unsupportable must fail as a matter of law.

The procedural history of this case reveals the following: By way of a Complaint filed in June of 2002, Plaintiff commenced this action in the Connecticut Superior Court against Arpin. That Complaint pled negligence on the part of Arpin. In that simply pled Complaint, Plaintiff alleged or about October 23, 2001 he worked as an independent contractor delivery driver for Arpin. Pouliot alleged that Arpin provided him with a truck and with loads to deliver. Pouliot further alleged that during the delivery of a piece of furniture to Naugatuck Valley Community College, the load fell directly onto him, pinning him to the ground and causing him severe and permanent injuries. [See Plaintiff's Third Revised Complaint, dated 8/12/02, doc. #13 ]. Plaintiff alleged that Arpin was negligent by providing him with a truck which had a defective liftgate, which liftgate Arpin failed to inspect, service, replace or warn him about. Plaintiff also alleged that Arpin sent him on a job without proper equipment and/or support staff. [See doc. #13].

On July 29, 2002 Arpin removed the action to this Court. Thereafter, Arpin filed a Motion to Dismiss for Plaintiff's failure to join parties needed for a just adjudication: namely, Festo Corporation and Michael D. Kovac d/b/a Trans-Expo International. [Arpin's Memorandum of Law in Support of Motion to Dismiss, dated 8/16/02, doc. #16]. In that motion, Arpin expressed its concerns that if Festo and Trans-Expo were not added, that "prejudice will accrue to [Arpin], because the injuries are catrostrophic [sic] and the Plaintiff's lawyer's skill coupled with the jury's sympathy will surely cause a

- 6 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

devastating verdict against [Arpin] without the whole story ever having been told." Arpin complained that it "will be the sole scapegoat, even if no liability on [Arpin's] part could be proven against them." [See doc. #16 at pg. 13] On 10/31/02 this Court denied Arpin's motion to dismiss.

Following this Court's denial of the motion to dismiss, on November 5, 2002 Arpin filed a Third-Party Complaint against Festo, Trans-Expo and Ramirez [doc. #36]. The Third Party Complaint contained three counts. Count One was entitled Common Law Indemnification against Festo; Count Two entitled Contribution against Festo and Trans-Expo; and Count Three entitled Common Law Indemnity for Misrepresentation against Trans-Expo and Ramirez. [See doc. #36, Counts 1-3]. In essence, Arpin's Third-Party Complaint alleged negligence and misrepresentation with respect to Festo, Trans-Expo and/or Ramirez. Arpin alleged that Trans-Expo and Ramirez failed to accurately inform Arpin about the allegedly dangerous characteristics of the Learnline unit; [4] failed to warn Arpin about the need for a safe method of unloading the unit; and misrepresented the weight of the cargo. [Id., paras. 16, 17, 19, 36]. More specifically, the claim was that Ramirez, on behalf of Trans-Expo, sent deficient shipment booking instructions to Arpin relative to the Festo equipment.[5] Arpin attached the subject Trans-

---

[4] The cargo that injured the Plaintiff was a Festo Learnline mobile workstation unit, which is a piece of engineering training equipment on wheels, not a piece of furniture as originally described by Pouliot. Plaintiff later amended his Complaint to correct that allegation. A copy of a Learnline catalog is found at Exhibit B to Arpin's 8/16/02 Memorandum of Law in Support of Motion to Dismiss, doc. #16, at Exh. B

[5] Arpin claims that the booking instructions were deficient because they failed to specify the type of lift gate required; failed to disclose the true weight of the Learnline workstation; and contained inadequate instructions

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Expo Shipment Booking form as an exhibit to its pleading. [See doc.#36 at Exh. B].
Although Arpin has amended and expanded on the factual allegations of its Third Party
Complaint, the causes of action for indemnity and contribution remained essentially
unchanged. [See doc. #s 35, 53, 62, 108].   However, in its Second Amended Complaint
(initially dated 2/11/03), Arpin also added counts against Trans-Expo, Festo and
Ramirez which were entitled "Apportionment Complaint." [See doc. #62, counts 6 & 7].
Following a motion made by Festo, this Court ordered that Counts 6 and 7 entitled
"Apportionment" be stricken on the grounds that they were untimely filed. [See 5/30/03
Memorandum of Decision, doc. #97]. Moreover, despite the extensive discovery that
had been conducted by the parties over the past two years, Arpin has never
distinguished the factual allegations of negligence it makes against Festo, the
manufacturer and shipper of the equipment, from the allegations it makes against
Trans-Expo in Ramirez, the sales agent.[6]  Rather, an examination of Arpin's operative
Third Party Complaint (doc. #108) reveals that Arpin's factual allegations against these
parties are identical. Indeed, Arpin's identical factual underpinnings of negligence
against Festo, Trans-Expo and Ramirez belie the claim that any one of those parties
was in "exclusive control" of the situation, an essential condition of establishing
entitlement to indemnification.  In response to the addition of Festo, Trans-Expo and

regarding brakes on wheels on the Learnline [See Arpin's Memorandum in Opposition to Trans-Expo's Motion to Dismiss, dated 3/7/03, pgs 3-4, doc. #72]

[6] Except to the extent that Count Eight of the June 9, 2003 Second Amended Third-Party Complaint alleges fraudulent misrepresentation on the part of Trans-Expo and Ramirez. See doc. #108, Count Eight, para 58.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

Ramirez, on February 19, 2003 Plaintiff filed a Second Amended Complaint in which he added direct claims against the "Apportionment Defendants." [See 2/19/03 Second Amended Complaint, doc. #64]. The third-party defendants sought to prevent these direct claims. However, by a ruling dated June 27, 2003 this Court permitted Pouliot to join Festo, Trans-Expo and Ramirez as additional parties, permitted direct claims to be filed against them, and ordered that those "direct claims" include in the caption the theory of liability (i.e. negligence)[See Memorandum of Decision dated 6/27/03, doc. #124, pg. 3].

The current operative Complaint is the October 7, 2003 Fifth Amended Complaint (doc. #201). In that Complaint, Plaintiff makes a direct claim against Trans-Expo and Ramirez sounding in negligence. Plaintiff alleges that Trans-Expo and/or Ramirez negligently represented the weight of the Learnline unit; failed to provide cargo ready for shipment on wheels with a safe braking system; failed to ascertain and accurately inform Plaintiff of the need for special care and handling in unloading the cargo; and failed to prepare the unit for shipment in a manner such that it could be safely transported. [See doc. #201, Count Four, para. 18].

It is apparent from the procedural history of this case that by filing the Third-Party Complaint Arpin sought to have parties named as defendants to avoid exposure for that portion of Plaintiff's damages for which Arpin believed it was not responsible. As noted above, Arpin had earlier lamented in its motion to dismiss for Pouliot's failure to join Festo and Trans-Expo that, without the addition of other parties, Arpin would "be the

- 9 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

sole scapegoat." However, filing claims sounding in active/passive indemnification is not the appropriate mechanism by which to apportion liability.[7]

It is well established that prior to October 1, 1986, this state adhered to the rules of joint and several liability with no right of indemnity or contribution between joint tortfeasors. See Caviote v. Shea, 116 Conn. 569 (1933); Donner v. Kearse, 234 Conn. 660, 666 (1995). This doctrine can be stated succinctly: If the conduct of each of the defendants was a proximate cause of the plaintiff's injuries, they would be jointly and severally liable, and the plaintiff would have a right to recover the entire amount of damages from either, and if the plaintiff did so, the defendant paying them would have no right of contribution from the other. See Babes v. Bennett, 247 Conn. 256 (1998). Under joint and several liability, therefore, even a defendant whose degree of fault was comparatively small could be held responsible for the entire amount of damages, as long as his negligence was a proximate cause of the plaintiff's injuries. Donner, id. p. 667.

The rule of no contribution or indemnity between joint tort-feasors had certain limited exceptions. In this setting it is important to note that indemnity involves a claim for reimbursement in full on one whom primary liability is claimed to rest. See Kaplan v. Merberg Wrecking Company, 152 Conn. 405, 412 (1965)(emphasis added). Ordinarily there was no right of indemnity between tortfeasors. "Where, however, one of the

---

[7] Clearly, Arpin has struggled to find the right "fit" for its attempts to shift liability. It has filed claims against these defendants sounding in indemnification, equitable indemnification (which have been stricken), contribution, and apportionment. As discussed below, apportionment and indemnification are entirely inconsistent concepts.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

defendants is in control of the situation and his negligence <u>alone</u> is the direct immediate cause of the injury, and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely on the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury . . . .Under the circumstances described, [our Supreme Court] has distinguished between 'active or primary negligence,' and 'passive or secondary negligence' . . . "<u>Skuzinski v. Bouchard Fuels, Inc.</u>, 240 Conn. 694, 697 (1997)(citations omitted); <u>see also</u> <u>Kaplan</u> at 412-416. This exception did not abolish the rule of no indemnification: That is, as long as the conduct of a tortfeasor was <u>a</u> proximate of plaintiff's injuries, even if that tortfeasor's degree of fault was relatively small, that defendant would bear the burden of the entire award. Under those circumstances, indemnity would not, and does not, apply under the common law.

   Despite the exception carved out for what is now a so-called "active/passive indemnification" claim, in an attempt to ameliorate the harsh consequences of joint and several liability, the Connecticut legislature undertook to reform the tort recovery provisions of our civil system. With the enactment of the Tort Reform Act, which was codified in part at Connecticut General Statutes section 52-572h, the legislature adopted comparative principles for negligence actions. The purpose of [the comparative fault portion of Tort Reform] was to prevent the unfairness of requiring a tortfeasor who is only minimally liable, as compared to other parties, to bear all of the damages. (<u>See</u> <u>Bhinder v. Sun Co., Inc.</u>, 246 Conn. 223 (1998) for a discussion on the

One Goodwin Square
225 Asylum Street
Hartford. CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No  26105

history of tort reform.)   Connecticut General Statutes §52-572h provides for apportionment of liability in negligence cases, if the damages are determined to be proximately caused by the negligence of more than one party.  That statute provides, in pertinent part, that:  "(c) In a negligence action to recover damages resulting from personal injury, if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the damages. . ."  Conn. Gen. Stats. § 52-572h(c).  Thus, under our present statutory scheme, where damages are proximately caused by the negligence of more than one party, each party is liable only for his proportionate share, and a party whose degree of fault is small, pays only his proportional amount of an award.

Trans-Expo and Ramirez do not suggest that by enacting tort reform and apportionment of liability in negligence actions the legislature has expressly overridden the common law of indemnity.  However, comparative responsibility is inconsistent with indemnification because the former (apportionment) allows the jury to assess liability in specific proportions among several defendants on the basis of the evidence presented, while the latter doctrine (active/passive indemnity) arose in response to the common law prohibition against contribution among joint tortfeasors, and applies only in situations in which a passive joint tortfeasor has no actual responsibility for a tort.  See Kyrtatas v. Stop & Shop, Inc., 205 Conn. 694, 700 (1988).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

The case before this Court does not present a situation where Arpin's conduct was merely passive and bearing no actual responsibility in tort. Trans-Expo and Ramirez can be liable to Arpin for indemnification only if Arpin is found liable under Pouliot's complaint. "Consequently, the court looks to [the plaintiff's] complaint in order to determine the situation allegedly giving rise to [plaintiff's] injuries." Gott v. Creed-Monarch, Inc., 2003 WL 22333005 at *6 (Conn. Super. Sept. 30, 2003)(attached as Exh. A). Pouliot has alleged in his complaint that Arpin furnished him with a truck which had a defective liftgate; [doc. #201, Count One, para. 7]; that Arpin sent him on a job without proper equipment and/or support staff; [id.,Count One, para. 7(e)-(f)], and further that Arpin was provided information by [Trans-Expo and/or Ramirez] that special equipment and packaging was necessary for the safe performance of this delivery, and [yet] Arpin made no effort to convey this critical information to Pouliot. [see id. Count One, para. 7(i),(j),(l) and Count Five, para. 7]. Further that Arpin provided Pouliot with an inadequately designed lift gate for the job [7(k], and "actually provided him with a broken lift gate in complete disrepair when they knew that it would be utilized in the delivery of the Learnline unit." [id.,Count Five, para. 7].

It is undisputed that Arpin provided Pouliot with the truck and dispatched him to pick up the load. Joe Rocha, the Arpin fleet operations manager, selected the subject straight truck which was equipped with a lift gate that tilts to the rear during descent. Mr. Rocha never saw the shipment information that had been transmitted by Trans-Expo prior to selecting the subject truck and lift gate. Furthermore, the Arpin dispatcher

– 13 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

who communicated with Pouliot about the job never saw the Shipment Booking form (Id.

#35). The information submitted by Trans-Expo to Arpin indicated that at least one item

of cargo was at least 6 feet in height and almost 5 feet in length. The Shipment Booking

form in at least two places indicated the need to "protect wheels." A reasonable

conclusion from this information was that one of the pieces of cargo was on wheels.

The Shipment Booking form contained critical information which was never entered by

Arpin's customer service representative into the Arpin computer system. As against

Arpin, Pouliot alleges that Arpin failed to convey critical information him, which

information had been provided to Arpin by Trans-Expo, prior to the job being performed.

When Pouliot arrived at Festo, he personally rolled and/or pushed the Learnline

workstation from the dock onto the truck, padded it and strapped it to the wall of the

truck. When he arrived at the Connecticut delivery location, Pouliot moved or rolled the

Learnline unit out of the truck and positioned it onto the lift gate. Pouliot also signed a

Bill of Lading describing the cargo. If Pouliot had determined either at the shipment or

delivery location that he did not have the proper equipment and/or support staff, he

could have contacted Arpin's dispatcher to make other appropriate arrangements.

Trans-Expo was a sales agent whose role was to solicit customers for Arpin. Neither

Kovac nor Ramirez made the decision regarding what type of a lift gate would be

required for a shipment. Neither Trans-Expo nor Ramirez selected the truck and lift

gate used by Pouliot. And Pouliot alleges that the lift gate sent for this job was defective

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

and in disrepair.  Arpin cannot claim that any information provided to it by Trans-Expo or Ramirez caused Arpin to choose a defective and broken lift gate for the Festo job.

In assessing Arpin's claim for indemnification, this Court 'must look for personal participation, personal culpability, personal knowledge.  If [the Court] does not find these circumstances, but finds only a liability in the eye of the law, growing out of a mere relation to the perpetrator of the wrong, the maxim of law that there is no [indemnification] among wrong doers is not to be applied.' Preferred Accident Ins. Co. of New York v. Musante, Berman & Steinberg Co., Inc., 133 Conn. 536, 542 (1947). There can be no genuine dispute that the situation here plainly involves one of personal participation and knowledge on the part of Arpin, and not merely liability only in the 'eye of the law.'  The undisputed facts of this case, in view of the allegations of the Plaintiff's Complaint, establish as a matter of law, that this is not a proper "active/passive" indemnification situation.

Although Arpin's attempts to file apportionment claims against Festo and Trans-Expo failed, this will not bar the application of Connecticut's apportionment scheme. Rather, this Court has recognized that "Pouliot brought Festo [and Trans-Expo] into this case as a defendant and placed the Court on notice that liability could be subject to apportionment among Arpin, Festo and any other defendant joined as parties to this case." [2/9/04 Memorandum of Decision, doc. # 259, pg. 4].

Should this Court grant summary judgment on the indemnification claims, Arpin is not without a remedy.  Connecticut General Statutes § 52-572h(c) provides that all

- 15 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

parties against whom recovery is permitted are liable only for their proportionate share of damages. Because Trans-Expo and Ramirez have been made parties directly by the Plaintiff, their percentage of negligence, if any, will be considered by the jury. Conn. Gen. Stats. § 52-572h.

Section 52-572h "sets forth two classes of persons whose negligence must be considered by the trier of fact: (1) the 'parties' to the action; and (2) 'settled or released persons' as that term is illuminated in subsection (n)." Richard Gallagher, Jr. vs. Square D Co., et al., 33 Conn.L.Rptr. 67 (Conn. Super. Aug. 27, 2002, at FN 2)(citing Donner v. Kearse, 662 A.2d. 1269 (Conn. 1995). As such, a ruling in favor of Trans-Expo and Ramirez on this motion for summary judgment would not bar Arpin from presenting to the finder of fact for consideration at trial the issue of Trans-Expo and/or Ramirez's alleged liability. [8] Rather, Arpin could present evidence of such purported negligence to the trier of fact and seek an apportionment of liability pursuant to Section 52-572h(f). This would be so even Pouliot settled and released his claims against Trans-Expo and Ramirez prior to trial. If such a settlement occurs between Pouliot and these Defendants, then Section 52-272h(n) calls for the total award of damages to be reduced by the amount of the released person's negligence which has been proven to the trier of fact. See Gallagher v. Square D Co, id. Summary judgment in favor of Trans-Expo and Ramirez would, however, eliminate unnecessary confusion, avoid the depletion of

---

[8] Indeed, this Court, although striking Arpin's cross-claims for apportionment, has stated "nothing in the Court's opinion should be construed as a bar to Arpin presenting to the finder of fact for consideration at trial the issue of apportionment of damages." See doc #259, pg 4, FN 2

One Goodwin Square        HALLORAN        Phone (860) 522-6103
225 Asylum Street                                Fax (860) 548-0006
Hartford, CT 06103        & SAGE LLP        Juris No. 26105

judicial resources, and dispose of claims, where, as here, the active/passive indemnity claims are unsupportable as a matter of law.

### B. Trans-Expo and Ramirez Were Not In Control of the Dangerous Conditions Giving Rise to the Plaintiff's Accident to the Exclusion of Arpin

Even if this Court concludes that Arpin presents a procedurally viable active/passive indemnification claim, no reasonable juror could find that Trans-Expo or Ramirez had exclusive control over the situation giving rise to the plaintiff's injuries. As a result, Arpin's indemnification claims against Trans-Expo and Ramirez must fail as a matter of law and should be dismissed.

"[A] party is entitled to indemnification, in the absence of a contract to indemnify, only upon proving that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct." Burkert v. Petrol Plus of Naugatuck, Inc. 216 Conn. 65, 74, 579 A.2d 26 (1990) (citing Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405, 411, 207 A.2d 732 (1965). In the instant case, Arpin does not allege that Trans-Expo contracted to indemnify Arpin. Arpin also does not allege that Trans-Expo dishonored any contractual provision of the Sales Agent agreement. Furthermore, the Sales Agent agreement does not contain an indemnity clause (Rule 56 Statement #2, 4, copy of agreement). Rather, Arpin bases its various indemnification claims on alleged tortious conduct on the part of Trans-Expo and Ramirez.

- 17 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105