As discussed above, where a claim for indemnification is grounded in tort, the law requires that the party seeking it establish the following four elements:

> (1) that the other tortfeasor was negligent; (2) that his negligence, rather than the party seeking indemnity, was the direct, immediate cause of the accident and injuries; (3) that he was in control of the situation to the exclusion of the party seeking indemnity; and (4) that party seeking indemnity did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent.

See generally, Kyrtatas v. Stop & Shop, Inc., 205 Conn. 694, 698 (1988)(citing Kaplan v. Merberg Wrecking Corp., 152 Conn. at 416.

As this Court has previously noted, although the third prong of the foregoing test is ordinarily a question of fact, nonetheless, "the exclusive control test can be construed as a matter of law under 'special circumstances.'" See doc. #259, pg. 7 (citing Skuzinski v. Bouchard, 240 Conn. 694, 694 A.2d at 794.). Furthermore, as this Court also noted, the reasoning behind the holding in Skuzinski, supra, allowing the "exclusive control test" to be construed as a matter of law, is that such a construal is appropriate where there is no "meaningful dispute about the alleged facts." Id. (citing Skuzinski, supra, 694 A.2d at 794). [9]

As discussed in detail below, the undisputed facts in this case leave no meaningful dispute as to whether Trans-Expo or Ramirez were in exclusive control of the dangerous condition that gave rise to the Plaintiff's injury, to the exclusion of Arpin.

---

[9] Although this Court stated in its 2/9/04 Memorandum of Decision, doc. #259, pg. 8, that "even if this Court treats the facts as undisputed, Festo cannot satisfy the test for determining exclusive control as a matter of law as established in Skuzinski," that ruling was made in the context of Festo's 12(b)(6) motion to dismiss [doc. #241]. Trans-Expo and Ramirez did not construe that statement as a bar to presenting a Motion for Summary Judgment for the Court's consideration following the completion of discovery.

- 18 -

One Goodwin Square
225 Asylum Street
Hartford. CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

No reasonable jury could find that either Trans-Expo or Ramirez was in exclusive control of the situation, and summary judgment in their favor is appropriate as to the indemnification claims filed against them by Arpin.

First, it is undisputed that at all times relative to the shipment giving rise to this accident, Michael D. Kovac was a sole proprietor doing business as Trans-Expo International. It is also without dispute that Michael D. Kovac did not personally have any involvement in the shipment transaction which forms the basis of this lawsuit. Michael D. Kovac did not make any representations to Arpin, either oral or written, in connection with this shipping transaction. Because Arpin cannot establish any negligence on the part of Michael D. Kovac, those individual claims against him should be eliminated as a matter of law. Those counts are alleged in Arpin's Second Amended Third Party Complaint (doc. #108) at Count Two (Common Law and/or Equitable Indemnification against Michael D. Kovac d/b/a Trans-Expo International) and those portions containing individual claims against Kovac in Count Eight (Common Law and/or Equitable Indemnification for Misrepresentation Against Michael D. Kovac d/b/a Trans-Expo International and Erica Ramirez); as well as in Arpin's Amended Answer and Cross-Claims (doc. #314) at Count Seventeen (Common Law Indemnification against Michael D. Kovac d/b/a Trans-Expo, International in Negligence) and Count Twenty-Five (Common Law Indemnification against Michael D. Kovac d/b/a Trans-Expo, International for Negligent Misrepresentation).

- 19 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

The claims against Erica Ramirez, and against Trans-Expo based on vicarious liability for the conduct of Ramirez as an employee, must fail as a matter of law under the criteria set forth in Skuzinski. In Skuzinski, the Court was presented with the question of whether a shopkeeper could be considered to be in exclusive control of an injury-causing accident that occurred in the street in front of the shop. A third-party common law indemnification claim was asserted against the defendant shopkeeper on the theory that the shopkeeper's failure to clear snow and/or ice from its sidewalk forced the plaintiff, a pedestrian, to walk on the street instead of the sidewalk, where the plaintiff was struck by a truck operated by the co-defendant Bouchard.

The Skuzinski Court stated that, "[it] is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident." 240 Conn. 694, 706, 694 A.2d. at 794. The Court held that, even assuming "(1) that the third party defendants had exclusive control over the snow covered sidewalk in front of their premises; (2) that they negligently had failed to clear the sidewalk or to warn the plaintiff of the danger created by their failure to do so; (3) and that their negligence had 'forced' the plaintiff to walk on Hall Avenue," still no reasonable juror could find that the third-party defendant shopkeeper had exclusive control over the dangerous condition that gave rise to the accident.

Likewise, several trial courts in Connecticut have followed this reasoning, and dismissed indemnification claims, either at the pleading stage or on summary judgment, where it was clear that no reasonable juror could find that the party against whom an

- 20 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

indemnification claim was made was in "exclusive control" of the dangerous condition. One such case, Adley v. Connecticut Post Ltd. Partnership, 1999 WL 30593, *5 (Conn. Super. Ct., January 4, 1999) (Corradino, J.) (copy attached hereto as Exh. B), provides useful analysis of the position adopted by the Supreme Court in Skuzinski, supra.

In Adley, supra, the plaintiff, Grace Adley, an automobile operator, was involved in a collision with another motor vehicle operated by Richard Samu. The collision occurred in a mall parking lot. Adley settled her claims against Samu. Adley named the mall owner and snow plow contractors as defendants. Adley alleged, in essence, that those defendants failed to properly clear snow from the parking lot and that the snow was plowed in such a manner as to block the view of motorists. The mall defendants filed an indemnification claim against the adverse operator of a motor vehicle, Samu.

In Adley, Judge Corradino began the examination of the "exclusive control" test by looking to the allegations of negligence claimed by the plaintiff. The court noted that "the plaintiff's complaint against Bridgeport Paving which will limit and define her proof sounds in allegations of active negligence: the snow was not properly removed, it was plowed in such a way as to block the vision of motorists, no warnings as to conditions were posted, the snow was allowed to dangerously accumulate, the defendant did not comply with its obligation to remove snow under its contract with Post Mall." Id. at *5. Based on the allegations of negligence against the paving company, the court concluded, as a matter of law, that "Samu, vis-a-vis Bridgeport Paving, could not have had exclusive control of the circumstances which led to the accident because the only

- 21 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

allegations against Bridgeport Paving lie in active negligence." Id. This meant, as the court noted that "if the plaintiff does not [prove her claim against the paving company], there will be no indemnification; if she does, the claims lie in active negligence and no indemnification claim will lie." Id.

The logic of the foregoing is inescapable. If the plaintiff's allegations of negligence against the party seeking indemnification make clear that that party, in order to be found liable, would have to be found to have maintained control over the dangerous condition which caused the injury, then, as a matter of law, the party against whom the indemnification claim is made cannot have had "exclusive control over the situation."

Other courts have employed this logic implicitly. In Lee v. Brave Industries, Inc., 34 Conn. L. Rptr. 96, 2003WL 716598, (Conn. Super. Ct., February 18, 2003) (Doherty, J.) (copy attached hereto as Exh. C) the plaintiff was injured when her forearm was trapped in a log splitter. The manufacturer of a log splitter (co-defendant Brave Industries) sought common law indemnification from the co-purchaser of the device (co-defendant, Erickson), on the theory that Erickson failed to properly provide the plaintiff, Lee, Erickson's co-purchaser, with the instructions and the manual, which failure was the cause of the accident. The court held: "Erickson's control over the circumstances in which Lee used the log splitter does not equate to his exercise of exclusive control of the condition that caused her to be injured. . . . [consequently] no reasonable juror could find that Erickson was in control of the situation to the exclusion of Brave Industries." Id.

– 22 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

at *4. See also, e.g., Gott v. Creed-Monarch, Inc., 2003 WL 22333005 (Conn. Super. Ct., 2003) (party who provided injured plaintiff with an unsafe ladder could not, as a matter of law, prevail on an indemnification claim against co-defendant, the plaintiff's employer, on a theory that the employer's failure to provide other equipment caused the plaintiff to use the unsafe ladder, because plaintiff's employer could not be found to be in exclusive control of the dangerous condition of the ladder.) (copy attached hereto as Exh. A); Hanover Ins. Co. v. Valley Elec. Supply Co., Inc., 2002 WL 31943462, *3 (Conn. Super. Ct., December 24, 2002) (Schuman, J.) ("even assuming that the heating unit at 218-20 Main Street caused the fire at 202-10 Main Street, the undisputed evidence . . . demonstrates that Custom Air did not have exclusive control over the heating unit. Thus, Custom Air is entitled to summary judgment on [the indemnification claim]) (copy attached hereto as Exh. D); Crown Theaters, L.P. v. Daly, 331 F. Supp.2d 89, 93 (D.Conn., 2004) (common law indemnification claim dismissed on summary judgment because party seeking indemnification failed to raise an issue of fact with regard to element of exclusive control).

As these cases indicate, the first step in examining the issue of whether exclusive control can be established by Arpin herein – either theoretically on the pleadings, or as a question of fact about which a reasonable jury could conclude in favor of Arpin – is to examine the nature of the negligence claims asserted by Pouliot against Arpin.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

In this case, the Plaintiff's allegations of negligence against Arpin are as follows.[10] Arpin provided Pouliot with a truck and with loads to deliver. Pouliot's injuries were caused by Arpin's negligence in that Arpin provided him with a defective liftgate; failed to adequately inspect, service, or replace the liftgate; failed to equip the truck with proper equipment for securing loads; sent Pouliot on a job without proper equipment and/or support staff; failed to obtain pertinent or correct information from the shipper as to the condition of the cargo; failed to warn Pouliot of the dangers of transporting the cargo; failed to inform Pouliot that the cargo was on wheels, required a pallet jack, palleting, and a proper liftgate; failed to inform Pouliot that he should call in advance for delivery at the college for special delivery instructions, despite being warned by the shipper's agent [Trans-Expo] to do so; provided Pouliot with a truck with an inadequate liftgate despite knowing an adequate liftgate would be necessary; failed to convey to Pouliot the necessity of having the correct equipment given the requirements of the job; and failed to comply with federal safety requirements under the Federal Motor Carrier Act. ( See doc. #201, Counts One, Two & Five)

---

[10] The Plaintiff's allegations of negligence against Arpin are contained in Counts One and Two of his Fifth Amended Complaint, doc. #201, (which counts contain identical allegations, with Count One directed to Paul Arpin Van Lines Inc , and Count Two directed to Arpin Logistics, Inc.) The Plaintiff also alleges recklessness against Arpin in Counts Five and Six. The theory of recklessness alleged in these counts demonstrates unequivocally that if Arpin were found to be liable, it could have no recourse in indemnification against Trans-Expo. The theory of liability asserted is that Arpin was "provided with information by the shipper's agent [Trans-Expo] that special equipment and packaging was necessary for the safe performance of this delivery, and [Arpin] made no effort to convey this critical information to Shawn Pouliot prior to the job being performed. Moreover [Arpin] actually provided [Pouliot] with a broken liftgate in complete disrepair . . ." Id , Count Five, ¶ 7, Count Six, ¶ 7.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

Significantly, each of these allegations centers on a theory that the lift gate from which the subject unit allegedly fell, injuring the plaintiff, was defective in some way, and/or that Arpin failed to convey information which had been provided to it. Any of the foregoing theories of negligence, if proven, would demonstrate that Trans-Expo was not, and could not as a matter of law, have been in exclusive control over the dangerous condition giving rise to the Plaintiff's injuries. This is apparent when examining the allegations Arpin asserts against Trans-Expo in support of its common law indemnification claims.

Arpin alleges that Trans-Expo inaccurately represented the weight of the unit; failed to warn of the existence of a braking system; failed to instruct on the safe use of the braking system; failed to provide a cargo ready for shipment on wheels with an adequately safe braking system; failed to warn of the potential danger during the unloading process if brakes were not secured; failed to inform about the dangerous propensities of the unit; failed to warn about the need for a safe method of unloading; failed to properly prepare the unit for shipment; failed to warn about dangerous risks to the driver in the process of unloading; failed to provide adequate shipping instructions; and failed to inform that the carrier's van should have a rear lift which levelly descended to the ground. See Arpin's Second Amended Third-Party Complaint at Counts Two, Three, Five, and Eight; see also Arpin's Amended Answer and Cross claims to Plaintiff's Fifth Amended Complaint, at Cross Claim Counts Seventeen, Eighteen, Twenty-Five, Twenty-Six, Thirty-Three and Thirty-Seven.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

In sum, Arpin's allegations of negligence against Trans-Expo generally allege that Trans-Expo failed to inform and/or warn Arpin about certain characteristics of the cargo which was to be transported by Pouliot, particularly with respect to weight. What is especially notable about Arpin's allegations of negligence against Trans-Expo is what they do not assert. There is no allegation that Trans-Expo had any control over the process of loading or unloading the subject unit. There is no allegation that Trans-Expo had any control over the condition of the subject unit. There is no allegation that Trans-Expo had any control over the manufacture or production of the subject unit. There is no allegation that Trans-Expo had any control over the condition or operation of the lift gate on Arpin's truck. There is no allegation that Trans-Expo had any control over Pouliot's not being informed that he should contact the receiver of the cargo prior to his arriving with the shipment.

Further, in examining the "exclusive control" prong and Arpin's plea for indemnity, these Defendants suggest that the Court should also look to allegations in Arpin's other pleadings. Specifically, Arpin has alleged in its recently filed October 6, 2004 Amended Answer that "Plaintiff's injury of October 23, 2001 was not the result of the accident but was rather the result of his intentional act, undertaken by the Plaintiff for the purpose of inflicting injury on himself and filing a fraudulent personal injury claim." [See doc. #314, pg. 19, Eighteenth Affirmative Defense (Fraud)]. Such a claim by Arpin, in consideration of the requirements of Federal Rule of Civil Procedure

– 26 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

11(b)(3), must eliminate any doubt regarding Arpin's entitlement to indemnity from Trans-Expo and Ramirez.

The pleadings alone demonstrate that, if Arpin were to be held liable under any of the theories of negligence asserted against it by the Plaintiff, it would be a logical impossibility for Trans-Expo to have had exclusive control over the dangerous condition to the exclusion of Arpin.

Thus, on the pleadings alone, Arpin's common law indemnification claims against Trans-Expo fail as a matter of law. However, the present motion for summary judgment provides an even greater burden for Arpin than merely *pleading* a viable indemnification claim. On summary judgment, Arpin must put forward genuine issues of material fact which remain in dispute in order to maintain its indemnification claims. Given the following undisputed facts, Arpin cannot carry that burden.

At all times relevant to this situation, Arpin did business as commercial movers and truckers. Trans-Expo was Arpin's sales agent with the role of generating sales and soliciting customers for Arpin. On or about October 18, 2001, Ramirez, an employee of Trans-Expo, contacted William Mottla, a customer service representative at Arpin, to book the proposed Festo shipment with Arpin. On that date, a written Shipment Booking form was transmitted to Arpin which contained information about the order for input. Arpin accepted the job and dispatched Pouliot and one of its trucks to do the Festo job.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

Although Arpin had been informed that the cargo was two pieces; that at least one piece had dimensions of 6 feet by 5 feet; that one piece of cargo was a workstation that required pads; that extra caution was requested to protect workstation; that care was needed to protect wheels; that an inside delivery was required; and that a pallet jack and lift gate were needed for delivery, Arpin did not inform Pouliot of any of the characteristics of the unit to be delivered or pertinent shipping information which Trans-Expo had relayed to Arpin. Rather, the Arpin employee who selected the truck, and the dispatcher who communicated with Pouliot, never saw this booking form.

On or about October 23, 2001, Pouliot drove the Arpin truck to Festo's Hauppauge, New York facility. After arriving at Festo's facility, Pouliot rolled and/or pushed the subject unit onto the Arpin truck. After loading the Learnline unit onto the Arpin truck, Pouliot transported the cargo, which also included a heavy-duty cardboard box, to Naugatuck Community College in Waterbury Connecticut. At the delivery location, Pouliot brought the workstation out of the truck onto the lift gate and began to lower the lift gate. The lift gate selected by Arpin, by its very design, changed angle as it moved up and down. The lift tilts to the rear during descent. Moreover, Plaintiff alleges that the lift gate was defective and in disrepair. At a point during the process of unloading the workstation on the lift gate, the unit landed on Shawn Pouliot causing him the severe and tragic personal injuries which are the subject of this case.

It is undisputed that Trans-Expo (now referring collectively to Michael D. Kovac and Erica Ramirez as employee) did not provide, drive, manufacture, maintain,

– 28 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

possess, or ever have any contact whatsoever with the truck which Arpin provided to Pouliot. Trans-Expo did not manufacture or maintain the lift gate on the truck from which the subject unit fell. Although Trans-Expo indicated that a lift gate was required, it was not responsible for make the decision regarding the type of lift gate required for a shipment. Trans-Expo did not manufacture, maintain, possess or have any contact whatsoever with the subject unit itself, or any braking component thereof. Trans-Expo had no role in preparing the cargo for shipment. Trans-Expo was not present when the subject unit was loaded onto the truck at Festo's facility in New York. A bill of lading has been produced in discovery bearing Pouliot's signature which reflects a weight of the cargo as 755 pounds. To date, neither Plaintiff nor Arpin have produced the carbonless copy of that bill of lading, which document was most likely in Pouliot's possession when he left the Festo warehouse. Trans-Expo was not present at the situs of the accident in Waterbury, Connecticut, nor has Trans-Expo ever even been present in the State of Connecticut.

As the undisputed facts demonstrate, even assuming that Trans-Expo was negligent in representing that the weight of the cargo was 400 pounds, and that Arpin relied on that weight statement in formulating its shipping plan – issues which Trans-Expo vigorously dispute – no reasonable juror could conclude that "but for" that information regarding the cargo's weight, this tragic accident would not have occurred. Thus, in view of the setting of the accident producing events and the relationship of the parties inter se, Trans-Expo did not "exclusive control over the dangerous condition that

– 29 –

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

[gave] rise to the accident." See Skuzinski, supra, 240 Conn at 794. No reasonable jury could find that Trans-Expo was in control of the situation to the exclusion of Arpin. As such, Trans-Expo and Ramirez submit that they do comfortably fit into Skuzinski tent and that Arpin's claims of common law indemnification against them fail as a matter of law.

### C. Arpin Claim's for Negligent and Fraudulent Misrepresentation Are Insufficient As a Matter of Law

As noted above, "[a] party is entitled to indemnification, in the absence of a contract to indemnify, only upon proving that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct." Burkert v. Petrol Plus of Naugatuck, Inc. 216 Conn. 65, 74, 579 A.2d 26 (1990) (citing Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405, 411, 207 A.2d 732 (1965). In certain of the counts alleged against Trans-Expo and Ramirez, Arpin pleads negligence and fraudulent misrepresentation. Count Eight of the Second Amended Third Party Complaint (doc. #108) alleges that Erica Ramirez made representations "relative to the weight of the cargo and the generic nature of a rear lift" (para. 55) and that the "representation was made fraudulently" (para. 58). In its Cross-Claims, Arpin pleads the following: Count Twenty-Five (Common Law Indemnification against Michael D. Kovac d/b/a Trans-Expo International for Negligent Misrepresentation); Count Twenty-Six (Common Law Indemnification Against Michael D. Kovac d/b/a Trans-Expo International in Vicarious Liability for Negligent Misrepresentation); and Count Thirty-Seven

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

(Common Law Indemnification against Erica Ramirez in her Capacity as an employee of Michael D. Kovac d/b/a Trans-Expo International for Negligent Misrepresentation).

Should this Court find that Arpin's claims for indemnification are viable, and further that material and genuine issues of fact exist regarding exclusive control – a result which Trans-Expo and Ramirez implore would be unjust- then, at a minimum, Arpin's underlying misrepresentation claim are inadequate as a matter of law.

Under Connecticut law, the tort of negligent misrepresentation is committed when "one who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Williams Ford, Inc. vs. Hartford Courant Company, 232 Conn. 559, 575-576 (1995)(quoting § 552 of the Restatement (Second) of Torts (1977)); see also Boucher v. Valus, 6 Conn. Cir. Ct. 661, 298 A.2d 238 (1972).

In this case, Arpin's claim for negligent misrepresentation must fail because it has not suffered a "pecuniary loss." "Pecuniary" can be defined as injuries or damages that are estimated by a money standard. See Broughel v.SNET Co., 73 Conn. 614, 621 (1901). Moreover, in order for liability to be imposed, the harm must be suffered by 'the person or . . .the class of persons for whose guidance the information was supplied." Boucher, id. at 666 (quoting Restatement of Torts, § 552). On October 18, 2001, William Mottla of Arpin quoted a price of $537.65 to be charged to Festo Corporation for

- 31 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

undertaking of the subject shipment. (See Shipment Booking form). Arpin has been paid that amount in full. The fact that Arpin has been sued by the Plaintiff, and may face substantial exposure to the Plaintiff if a jury finds that Arpin's own conduct caused this tragic accident, this does not constitute pecuniary loss to Arpin in connection with this shipment for which Arpin is entitled to be compensated. If the failure to provide an accurate weight and/or other adequate shipping instructions is determined by the trier of fact to be a proximate cause of Pouliot's injuries, then, because Plaintiff has made a direct claim against Trans-Expo and Ramirez, they will be obligated to pay any judgment rendered against them to the Plaintiff on the basis of that alleged conduct. The pecuniary losses to Shawn Pouliot, in that sense, are not pecuniary losses to Arpin.

Furthermore, Count Eight of the Third-Party Complaint purports to plead fraudulent misrepresentation. Under the common law, it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." Russack-Baker v. Billings P. Learned Mission, Inc. 2004 WL 2361801 (Conn. Super. Sept. 29, 2004, *2 (attached as Exh. E) citing Leonard v. Commissioner of Revenue Services, 264 Conn. 286, 296 (2003).

While the parties dispute whether the statement of weight contained on the Shipment Booking form was intended as a statement of fact, there is plainly no evidence to support the necessary element that "the statement was known to be untrue"

- 32 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

by Erica Ramirez who was acting in the course of her employment for Trans-Expo. In fact, Arpin has not even alleged that Ramirez knew the statement was untrue. Arpin cannot and will not support this essential element of fraud. As such, Count Eight of the Second Amended Complaint, which alleges fraudulent misrepresentation as the basis for an active-passive indemnification claim, should be dismissed as a matter of law.

## IV.  CONCLUSION

An honest assessment of the undisputed facts and procedural history of this case should lead this Court to conclude that Arpin's claims for indemnification against Trans-Expo and Ramirez must fail as a matter of law. For all the foregoing reasons, Trans-Expo and Ramirez hereby respectfully requests that this Court grant its Motion for Partial Summary Judgment as directed to each claim of common law indemnification asserted against it by Arpin, in particular, Counts Two, Three, Five and Eight of Arpin's Second Amended Third-Party Complaint Pursuant to FRCP 15(a); as well as Counts Seventeen, Eighteen, Twenty-Five, Twenty-Six, Thirty-Three and Thirty-Seven of Arpin's Cross Claims, as contained in its Amended Answer and Cross claims to Plaintiff's Fifth Amended Complaint.

- 33 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

DEFENDANTS / THIRD PARTY DEFENDANTS,
MICHAEL D. KOVAC D/B/A
TRANS-EXPO INTERNATIONAL AND
ERICA RAMIREZ, IN HER CAPACITY AS
EMPLOYEE OF TRANS-EXPO INT'L.

BY: /s/ Susan O'Donnell
Susan O'Donnell of
**HALLORAN & SAGE LLP**
Fed. Bar No. ct07539
One Goodwin Square
Hartford, CT 06103
Tel. No. (860) 522-6103
Fax No. (860) 548-0006
email: odonnell@halloran-sage.com

- 34 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105

## CERTIFICATION

This is to certify that on this 15th day of December, 2004 a copy of the foregoing was either mailed, postpaid, or hand-delivered to:

**Shawn Pouliot**
c/o Michael A. Stratton, Esquire
Stratton Faxon
59 Elm Street
New Haven, CT 06510
Tel. No. (203) 624-9500
Fax No. (203) 624-9100

c/o Roland F. Moots, Jr., Esquire
Moots, Pellegrini, Spillane & Mannion
46 Main Street, P.O. Box 1319
New Milford, CT 06776-1319
Tel. No. (860) 355-4191
Fax No. (860) 355-8487

**Paul Arpin Van Lines, Inc and Arpin Logistics, Inc.**
Thomas J. Grady, Esquire
Lenihan, Grady & Steele
6 Canal Street, P.O. Box 1319
Westerly, RI 02891-0541
Tel. No. (401) 596-0183
Fax No. (401) 596-6845

**The Festo Corporation**
c/o James Oswald, Esquire
Adler, Pollock & Sheehan
One Citizen's Plaza- 8th Floor
Providence, RI 02903-2443
Tel: (401) 274-7200
Fax: (401) 751-0604

*/s/ Susan O'Donnell*
Susan O'Donnell

615679

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No 26105