UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION |
| | | NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| | | |
| PAUL ARPIN VAN LINES; | | |
| ARPIN LOGISTICS INC. | | |
| | | |
| V. | | |
| | | |
| THE FESTO CORPORATION; | | |
| MICHAEL D. KOVAC d/b/a | | |
| TRANS-EXPO INTERNATIONAL; | | |
| ERICA RAMIREZ IN HER CAPACITY | | |
| AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT A

Westlaw.

Not Reported in A.
2003 WL 22333005 (Conn.Super.)
(Cite as: 2003 WL 22333005 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of New Haven.

Michael GOTT,
v.
GREED-MONARCH, INC.

No. CV000274741S.

Sept. 30, 2003.

Farrell & Leslie & Grochowski, Wallingford, Williams, Walsh & O'Connor, LLC, North Haven, for Michael Gott.

Clark D. Peter, Law Offices, Shelton, Clendaniel B. Scott, Law Office, Hartford, for Production Equipment Co. Inc.

Kenny & Brimmer, Hartford, for Creed-Monarch Inc.

PETER EMMETT WIESE, Judge.

I
*PROCEDURAL HISTORY*

*1 The plaintiff, Michael Gott, commenced this action by service of process on the defendant, Creed-Monarch, Inc. (Creed-Monarch), on November 8, 2000. In the complaint, Gott alleges the following facts. On March 1, 1999, Gott was on Creed-Monarch's premises to service some equipment owned by Creed-Monarch. Creed-Monarch provided Gott with a piece of equipment known as a crank-down platform ladder. At the time the ladder was furnished to Gott, it was in poor condition from overuse or because Creed-Monarch failed to properly maintain it. Specifically, some parts of the ladder were loose or unstable. As a result of the condition of the ladder, Gott fell and suffered injuries.

On December 21, 2000, Production Equipment Company (Production) filed a motion to intervene, which the court granted on January 12, 2001. In the intervening complaint, Production alleges that Gott was its employee at the time of his injuries, which arose out of and in the course of his employment. Production further alleges that Gott's injuries were caused by the poor condition of Creed-Monarch's crank-down platform ladder. Production seeks to recover amounts that it has paid and has become obligated to pay under the Workers' Compensation Act, General Statutes § 31-275 et seq.

Creed-Monarch filed an answer and counterclaim to Production's complaint on April 2, 2001. In paragraph five of its counterclaim, Creed-Monarch alleges that "[a]t the time of the incident giving rise to [Gott's] claim, there existed an independent legal relationship between [Creed-Monarch] and [Production] by virtue of signed agreements ... dated December 17, 1998 and December 18, 1998." Creed-Monarch has made those alleged agreements part of the counterclaim by attaching them as exhibit A. [FN1] In addition, Creed-Monarch alleges that Production and its employees used Creed-Monarch's crank-down platform ladder because Production did not bring the proper equipment for the necessary work, and that Production and its employees were in complete control of the ladder during the entire course of the project during which Gott was injured. Creed-Monarch further alleges that Gott's injuries were caused by the negligence of Production or its employees in that they failed to inspect and secure the equipment, failed to read safety warnings, failed to warn Gott of the dangerous condition of the ladder, failed to provide the necessary equipment to complete the job, thus requiring Gott to use unfamiliar equipment, and failed to adequately train employees. Creed-Monarch seeks indemnification from Production for any judgment rendered against Creed-Monarch in favor of Gott.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A..
2003 WL 22333005 (Conn.Super.)
(Cite as: 2003 WL 22333005 (Conn.Super.))

Page 2

> FN1. Practice Book § 10-29 provides in relevant part: "(a) Any plaintiff desiring to make a copy of any document a part of the complaint may, without reciting it or annexing it, refer to it as Exhibit A, B, C, etc., as fully as if it had been set out at length ... (b) When either the plaintiff or the defendant in any pleading subsequent to the complaint desires to make a copy of any document a part of his or her pleading, such party may, without reciting it therein, either annex it thereto, or refer to it therein ..."

On January 27, 2003, Production filed a motion for summary judgment on Creed-Monarch's counterclaim. In support of its motion, Production has filed a total of three memoranda of law, five uncertified excerpts of deposition testimony, [FN2] two certified excerpts of deposition testimony, [FN3] two unauthenticated documents that are identical to the alleged agreements incorporated in Creed-Monarch's counterclaim, and the affidavit of Rebecca S. Davis, the president of Production. Creed-Monarch has filed two memoranda in opposition, the affidavit of Paul Stawarz, Creed-Monarch's production manager, and two certified excerpts of deposition testimony. [FN4]

> FN2. The five uncertified excerpts are from the depositions of Stanley Walas, Mark Rolan and Gott.

> FN3. The two certified excerpts are from the depositions of Gott and Jim Lundebjerg.

> FN4. The two certified excerpts are from the depositions of Jim Lundebjerg and Deborah Boynton.

II
*DISCUSSION*

\*2 "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party ... The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Gould v Mellick & Sexton,* 263 Conn. 140, 146, 819 A.2d 216 (2003). "[T]he party moving for summary judgment ... is required to support its motion with supporting documentation, including affidavits." *Heyman Associates No. 1 v Ins. Co. of Pennsylvania,* 231 Conn. 756, 796, 653 A.2d 122 (1995).

As an initial matter, the court will address the admissibility of the various documents submitted by the parties. It is well established that "[o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) *Great County Bank v. Pastore,* 241 Conn. 423, 436, 696 A.2d 1254 (1997). As stated, Production has submitted both certified and uncertified excerpts of deposition testimony in support of its motion. As this court has previously indicated, "[t]he trend in the Superior Courts is to consider certified but not uncertified deposition testimony when ruling on a motion for summary judgment ... Courts following this trend reason that the court cannot consider ... uncertified deposition testimony for the purposes of [a] motion for summary judgment because the transcript is not independently admissible as evidence and it fails to comply with the requirements of the Practice Book ... This court has followed the trend and previously refused to consider uncertified deposition testimony." (Internal quotation marks omitted.) *Shapiro v Hillside Village Condominium Ass'n,* Superior Court, judicial district of New Haven at Meriden, Docket No. CV 00 0274597 (March 7, 2003, Wiese, J.) (34 Conn. L. Rptr. 262). Therefore, the court will consider the certified deposition excerpts but not the uncertified deposition excerpts.

Production has also submitted unauthenticated documents. This court has previously stated: " Practice Book § 17-46 provides that '[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters

Copr © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
2003 WL 22333005 (Conn.Super.)
**(Cite as: 2003 WL 22333005 (Conn.Super.))**

Page 3

stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto.' [U]ncertified copies of documents to which no affidavit exists attesting to their authenticity ... do not constitute proof of documentary evidence for purposes of a motion for summary judgment." (Internal quotation marks omitted.) *Aherne v Lifeline Systems, Inc.*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV 99 0269317 (March 21, 2003, Wiese, J.). In the present case, however, the unauthenticated documents submitted by Production in support of its motion are identical to the documents that Creed-Monarch affirmatively alleges in its counterclaim to be agreements between the parties, and that Creed-Monarch has incorporated in the counterclaim. Because Production has submitted those documents and Creed-Monarch has itself asserted that they are authentic, the court will consider them in ruling on Production's motion for summary judgment.

*3 The court, having resolved those evidentiary issues, turns to the merits of Production's motion for summary judgment. Production first argues that it is entitled to summary judgment on Creed-Monarch's counterclaim because Production did not have an independent legal duty to Creed-Monarch. In response, Creed-Monarch argues that there is a genuine issue of material fact as to whether Production had either an express or implied duty to provide the necessary equipment for the installation job on Creed-Monarch's premises.

"In an action for indemnity, as distinguished from an action for contribution, one tortfeasor seeks to impose total liability upon another [tortfeasor]. The doctrines of indemnification and contribution are based on fundamentally different principles. [I]ndemnity involves a claim for reimbursement in full from one on whom a *primary liability* is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others ... Ordinarily there is no right of indemnity or contribution between joint tortfeasors ... Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury ... Under the circumstances described, [our Supreme Court has] distinguished between active or primary negligence and passive or secondary negligence ... Indemnity *shifts the impact of liability* from passive tortfeasors to active ones." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Crotta v Home Depot, Inc*, 249 Conn. 634, 641-42, 732 A.2d 767 (1999).

An additional showing is required of a defendant tortfeasor seeking indemnification from a plaintiff's employer. General Statutes § 31-284 "provides that an employer that complies with the requirements of the workers' compensation laws shall not be liable for any action for damages on account of personal injuries sustained by an employee arising out of and in the course of employment. Under the Workers' Compensation Act, both the employer and the employee have relinquished certain rights to obtain other advantages. The employee no longer has to prove negligence on the part of the employer, but, in return, he has to accept a limited, although certain, recovery ... The employer, in turn, guarantees compensation to an injured employee in return for the exclusivity of the workers' compensation liability to its employees." (Internal quotation marks omitted.) *Barry v. Quality Steel Products, Inc*, 263 Conn. 424, 450-51, 820 A.2d 258 (2003). "Because of the importance of the exclusivity provisions of the Workers' Compensation Act, [the Supreme Court] has limited a third party's right to seek indemnification from an employer to those situations where there is an independent legal relationship between the third party and the employer, thereby generating a legal duty from the employer to the third party seeking indemnification. *Ferryman v. Groton*, 212 Conn. 138, 144-45, 561 A.2d 432 (1989)." *Barry v Quality Steel Products, Inc.. supra*, 263 Conn at 451.

*4 Creed-Monarch's sole allegation in the counterclaim regarding the existence of an independent legal relationship between itself and Production is that "[a]t the time of the incident giving rise to the plaintiff's claim, there existed an independent legal relationship between the defendant and the intervening plaintiff, *by virtue of*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
2003 WL 22333005 (Conn.Super.)
(Cite as: 2003 WL 22333005 (Conn.Super.))

Page 4

*signed agreements* ... dated December 17, 1998 and December 18, 1998." (Emphasis added.) It is that alleged relationship that Creed-Monarch now argues gave Production a duty to provide all the necessary equipment for Gott's work on Creed-Monarch's premises. Creed-Monarch further argues that the duty to provide all necessary equipment created in turn an implied duty to indemnify Creed-Monarch in the event that Production failed to provide the proper equipment. Because Creed-Monarch relies solely on the December 17, 1998 and December 18, 1998 documents as the basis for the existence of an independent legal duty, Production may obtain summary judgment by demonstrating that there is no genuine issue regarding the fact that those documents did not create a duty to indemnify. Furthermore, because Creed-Monarch argues that the alleged implied duty to indemnify arises from a contractual duty to provide all necessary equipment, [FN5] Production is entitled to judgment on the counterclaim if it establishes that there is no issue as to the fact that the alleged agreements between the parties did not require Production to provide all necessary equipment. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.) *Gould v Mellick & Sexton, supra,* 263 Conn. at 153. Because the existence of a duty is a question of law, it is an appropriate matter for summary judgment. See *Mozeleski v Thomas,* 76 Conn.App. 287, 290, 818 A.2d 893, cert. denied, 264 Conn. 904, 823 A.2d 1221 (2003).

> FN5. Although Creed-Monarch cites case law regarding a contractor's duty to perform work with due care, it does not argue that Production or Gott failed to perform the installation on its property with due care. Rather, Creed-Monarch argues that Production breached its contract by failing to supply all of the equipment necessary for the installation.

Production has submitted the affidavit of Rebecca S. Davis, its president. Davis states that Production "agreed to install certain equipment at Creed-Monarch pursuant to a proposal dated December 17, 1998 and a one page list of 'General Conditions'" and that Production "has not through [the December 17, 1998 proposal] or any other document agreed to indemnify Creed-Monarch for [Production's] action or for the actions of its employees." The documents consist of two letters from Production to Creed-Monarch, dated December 17, 1998 and December 18, 1998 respectively, quoting the cost of materials and labor for the installation of certain equipment. Each of the letters has an attachment labeled "General Conditions" signed by Roswell Davis on behalf of Production and not signed by Creed-Monarch. The court concludes that, even if those documents constitute an enforceable contract, they do not establish the existence of a duty to indemnify as Creed-Monarch argues.

*5 A review of the documents themselves reveals that they do not contain any express promise to indemnify. Furthermore, the documents do not expressly require Production to provide all of the equipment necessary to complete the job on Creed-Monarch's premises. Creed-Monarch argues that the phrase "all the above equipment" in each letter required Production to provide all equipment needed for completion of the installation project. The actual language of the letters, however, is that "[t]he Production Equipment Company will *install* the above equipment." [FN6] (Emphasis added.) Thus, the language cited by Creed-Monarch refers to the equipment to be installed on Creed-Monarch's premises, not the equipment, such as the ladder involved in this action, that was necessary to enable Production and its employees to perform the installation. There is no statement in the letters indicating whether Production or Creed-Monarch would provide the equipment necessary for the installation.

> FN6. It is not clear why Creed-Monarch quotes the letters as referring to "*all* the above equipment." (Emphasis added.)

Creed-Monarch also cites to the following language in the letters: "Clear access of work area will be required for field crew and equipment during installation. Limited access to work area, or unclear work area will incur a 15% increase to cost of installation." Creed-Monarch suggests that this language created a duty on the part of Production to provide all necessary equipment. Contrary to

Copr © 2004 West. No Claim to Orig. U.S. Govt. Works

Not Reported in A.
2003 WL 22333005 (Conn.Super.)
(Cite as: 2003 WL 22333005 (Conn.Super.))

Page 5

Creed-Monarch's assertion, the language appears simply to require Creed-Monarch to provide clear access to the working area so that Production could complete its work.

Nevertheless, Creed-Monarch has submitted the affidavit of Paul Stawarz, its production manager. Stawarz states that "[o]n or about December 17 and 18 of 1998, Creed-Monarch entered into a contract with Production ... for the extension of Creed-Monarch's crane runway system. As a condition of the contract, Production ... was to bring all the equipment necessary to complete the performance of the job, required to install the crane rail at Creed-Monarch." Stawarz' conclusory statement regarding the terms of the alleged contract does not raise a genuine issue of material fact. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact ... [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Niehaus v. Cowles Business Media, Inc.*, 263 Conn. 178, 188, 819 A.2d 765. As stated, the documents that Creed-Monarch alleges comprise the contract do not contain any language indicating who was responsible for providing the equipment needed to complete the installation.

The court finds that Production has met its burden of demonstrating that there is no genuine issue regarding the fact that the alleged written agreement between the parties did not require Production to provide the equipment necessary for the installation. This court has previously held that where a defendant bases a claim for indemnification from a plaintiff's employer on an implied duty to indemnify arising from an express contract, the employer is entitled to summary judgment upon demonstrating the absence of genuine issues of material fact regarding the nonexistence of the contract. See *Fialho v. Guglielmo*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV 99 0268224 (November 25, 2002, Wiese, J.) (31 Conn. L. Rptr. 371). In the present case, Creed-Monarch's counterclaim relies solely on the alleged written agreements as the source of an independent legal relationship between the parties. In addition, Creed-Monarch, in its memoranda of law, relies solely on Production's alleged failure to provide the necessary equipment as the basis for establishing that Production breached an independent legal duty to Creed-Monarch. Accordingly, by showing the absence of a genuine issue regarding the fact that it was not required under the alleged agreements to provide all necessary equipment, Production has established the nonexistence of the very contract provision that Creed-Monarch argues created an implied duty to indemnify. Accordingly, Creed-Monarch's counterclaim seeking indemnification from Production is barred by the exclusive remedy provision of the Workers' Compensation Act and that Production's motion for summary judgment is granted on that basis.

*6 In addition, Production argues that it is entitled to **summary judgment** on Creed-Monarch's counterclaim because Production was not in exclusive control of the situation that allegedly injured the plaintiff. As stated previously, a claim of common-law **indemnification** requires proof that the indemnitor was in **control** of the situation giving rise to the injury to the **exclusion** of the indemnitee. Ordinarily, the question of exclusive control is a question of fact. *Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 704, 694 A.2d 788 (1997). "Nonetheless, special circumstances may give rise to the question of whether, in light of the facts ... any reasonable juror could find that the [**indemnification**] defendants had exclusive control of the situation Under such circumstances, this issue becomes a question of law." *Id.*, at 705.

As stated, a claim for indemnification arises when a joint tortfeasor who is passively negligent seeks complete reimbursement from a joint tortfeasor who is primarily liable. *Crotta v. Home Depot, Inc.*, *supra*, 249 Conn. at 641-42. Production therefore can be liable to Creed-Monarch for indemnification only if Creed-Monarch is found liable under Gott's complaint. Consequently, the court looks to Gott's complaint in order to determine the situation allegedly giving rise to Gott's injuries. As stated, Gott has alleged in his complaint that Creed-Monarch furnished him with a ladder that was in an unsafe condition. Gott specifically alleges that "[t]he ... ladder *at the time it was furnished to the plaintiff by the defendant, its agents, servants and employees* was in poor condition ..." (Emphasis added.) It is clear from that allegation that the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
2003 WL 22333005 (Conn.Super.)
**(Cite as: 2003 WL 22333005 (Conn.Super.))**

Page 6

situation giving rise to Gott's injuries was Creed-Monarch's alleged failure to ensure that the ladder it provided to Gott was in good condition.

In its answer to Production's intervening complaint, Creed-Monarch has admitted that on or about March 1, 1999, it provided Gott with the ladder, which it owned. "An admission in a defendant's answer to an allegation in a complaint is binding as a judicial admission. A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Citations omitted; internal quotation marks omitted.) *Isaac v. Truck Service, Inc.*, 52 Conn.App. 545, 550-51, 727 A.2d 755 (1999), aff'd., 253 Conn. 416, 752 A.2d 509 (2000). Because Creed-Monarch's judicial admission has conclusively established that Creed-Monarch provided Gott with the ladder, there is no genuine issue as to that fact. That fact makes it clear that Production was not in exclusive control of the situation giving rise to Gott's claim. Therefore, Production's motion for summary judgment should be granted on that additional basis.

*CONCLUSION*

The intervening plaintiff, Production Equipment Company, has met its burden of demonstrating that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the counterclaim of the defendant Creed-Monarch, Inc. Accordingly, Production's motion for summary judgment on the counterclaim is granted.

*7 So ordered.

2003 WL 22333005 (Conn.Super.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT B

Westlaw.

Not Reported in A.  
1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13  
**(Cite as: 1999 WL 30593 (Conn.Super.))**

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Grace ADLEY,  
v.  
CONNECTICUT POST LIMITED PARTNERSHIP et al.

No. CV 970060913S.

Jan. 4, 1999.

MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

CORRADINO.

*1 This action was brought by the plaintiff Grace Adley against Connecticut Post Mall Partnership and Bridgeport Paving Co., Inc. The claim is made that the two defendants did not properly remove snow from a parking lot. The plaintiff had been driving her vehicle on December 22, 1995 in the lot and had a collision with a Richard Samu. The plaintiff brought a prior action against Samu which was settled.

The defendant Bridgeport Paving has filed an apportionment claim against Samu alleging that the injuries and damages to the plaintiff were caused by the negligence of Samu.

Since Samu has already settled, the proper method for seeking apportionment is the notice provision of § 52-102(b)(c) of the General Statutes. Apparently, notice has been filed by the defendant Bridgeport Paving Company.

(1)

After the apportionment complaint was filed, each of the defendants filed a third-party complaint seeking indemnification from Richard Samu--the indemnification claims are based on active/passive negligence. Mr. Samu, by means of this motion for summary judgment, seeks to have the third-party complaints dismissed. He relies on *Kaplan v Merberg Wrecking Corp.*, 152 Conn. 405, 207 A.2d 732 (1965) and refers to the four factors that must be alleged to properly plead an active/passive theory of negligence. *Id.* p. 416, 207 A.2d 732. Mr. Samu argues that no such claim can be made here for indemnification based on an active/passive theory of negligence in a multi-vehicle accident "because no one can be in conclusive control"--the third *Kaplan* requirement for such a claim. The case of *Sanclemente v Wlaz*, 6 C ONN.L.RPTR. 405 (1992) is cited which relies on *Mahoney v. Gibson*, 10 CLT 47, p. 13 (1984). "Moreover," argues Samu, "the plaintiff alleges that the Connecticut Post Mall parking lot was in a defective condition and it was that situation which caused the accident. Richard Samu could not have been in exclusive control of the 'situation' which the plaintiff alleges caused the accident between her vehicle and the Samu vehicle."

The two defendants rely on *Carter v. Rental Car Resources, Inc., et al*, 9 CSCR 74 (1993). In *Carter*, the action arose out of a motor vehicle collision between a car operated by Brenda Carter and owned by Rental Car Resources, Inc. (RCR) and a vehicle operated by Corin Bligh. Gwen Carter, who was a passenger in the vehicle driven by Brenda Carter, claimed injuries and filed suit against Brenda Carter, RCR, and Bligh. Another passenger in the car operated by Brenda Carter, Devery Smith, also filed suit against the previously mentioned defendants.

RCR then filed cross claims in both suits which sought indemnification--these actions alleged that Brenda Carter was in control and possession of the vehicle to the exclusion of RCR at the time of the collision and had no reason to know of or anticipate Brenda Carter's negligence (alluding to third and fourth *Kaplan* factors for active/passive negligence claim).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13
(Cite as: 1999 WL 30593 (Conn.Super.))

Page 2

*2 Brenda Carter then filed a motion for summary judgment against the indemnification cross claim filed by RCR and in part relied on *Mahoney v. Gibson, supra*. She argued RCR's indemnity claim, based on allegations of her active negligence, was not viable because there could not have been exclusive control of the "situation" giving rise to the accident--i.e., a collision involving two drivers.

*Carter* refused to use *Mahoney* as a basis to bar the indemnity claim. Analyzing *Mahoney*, the court said that in that case a defendant operator of the car in which the plaintiff passenger was seated filed a third-party indemnity claim against the defendant operator of the other vehicle involved in the accident and its owner. The *Carter* court noted that *Mahoney* reasoned that this other operator in a multi-vehicle collision could not have had control over the situation involved in the accident to the exclusion of the other defendant operator who filed the third-party indemnification accident. Also, the defendant operator bringing the indemnity action was involved in the accident and, as such, could have been actively negligent.

The *Carter* court, however, reasoned that in the case before it, the rental company, RCR, did not allege that the defendant Brenda Carter had control of the car to the exclusion of the operator of the other vehicle involved in the accident; "rather, RCR alleged that it was the owner of the rental vehicle and that defendant [Brenda] Carter as the operator of the rental vehicle was actively negligent because she had exclusive control of the rental vehicle at the time of the accident."

The *Carter* court went on to say
  In the present actions, RCR has satisfied the "exclusive control" requirement, because ... "exclusive control of the situation" is analogous to exclusive control of the operation of the rental vehicle, and because the present cross claims for indemnity are being asserted by RCR in its capacity as the owner-lessor of the vehicle, and not as an operator of the vehicle that was involved in the underlying accident. Thus, RCR is not precluded as a matter of law from asserting that defendant [Brenda] Carter was in "exclusive control of the situation."
But *Mahoney* and *Carter* are of limited value for deciding the issue now before the court.

What *Kaplan v. Merberg Wrecking Corporation, supra*, requires and *Carter* and *Mahoney* make clear is that in deciding whether an indemnification action between joint tortfeasors is viable on an active passive negligence theory, the criterion that the tortfeasor against whom indemnification is sought must be in control of the situation to the exclusion of the other tortfeasor depends on the factual setting of the accident producing event and the relationship of the parties involved inter se to the accident producing evidence. A case *Kaplan* relies on heavily and which can be looked to for guidance in applying the active/passive theory of negligence as an exception to the common law rule barring contribution between joint tortfeasors is *Preferred Accident Ins Co. v. Musante, Berman & Steinberg Co.*, 133 Conn. 536, 52 A.2d 862 (1947). That case quoted an early case, *Bailey v. Bussing*, 28 Conn. 455, 459 (1859), which said
  *3 We must look for personal participation, personal culpability, personal knowledge. If we do not find these circumstances, but perceive only a liability in the eye of the law, growing out of a mere relationship to the perpetrator of the wrong, the maxim of the law that there is no contribution among wrongdoers is not to be applied. [FN1]

    FN1. This succinctly explains the result in *Carter v. Rental Car Resources, Inc., supra*

The court went on to quote from 38 ALR 566 which said "... the applicability of the rule is negatived, wherever it appears that the party seeking indemnity was himself [sic] guilty of affirmative misconduct which was a proximate cause of the injury in question." *Preferred Accident* itself at page 543 said
  Where there are two joint tortfeasors and each is guilty of intentional wrongdoing, there may be sound justification for a denial of contribution because either party in seeking it would have to take his [sic] stand upon his [sic] own wrong. We have held that where the negligence of each of two defendants enters immediately and directly into the production of the accident, neither should have a right to contribution. [FN2]

    FN2. The second sentence of this quote if not the first (from which the second sentence does not necessarily follow)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13
**(Cite as: 1999 WL 30593 (Conn.Super.))**

Page 3

justifies the result in *Mahoney v. Gibson, supra.* The second sentence provides the basis for the third or exclusive control requirement in *Kaplan v. Merberg Wrecking Corp.,* 152 Conn. at p. 416, 207 A.2d 732.

(2)

Using the foregoing reasoning to examine the indemnification claim made by Connecticut Post Mall Limited Partnership (Post Mall) against the third-party defendant, Richard Samu, the "situation" or factual setting of the accident in light of the allegations of the amended complaint and the indemnification cross complaint must be examined. Three factors are involved as predicates to the cause of this accident--the negligence, if any, of Samu and the claimed negligence of the Post Mall and the company it hired for snow removal, Bridgeport Paving. The basis of the plaintiff's claim against Post Mall is that the negligence of Post Mall contributed to the causation of the accident which caused her injury, apart from any negligence on Samu's part. As between Samu and Post Mall, could it be said that Post Mall is only passively negligent as opposed to Richard Samu's active negligence?

Giving every favorable inference to the nonmoving party, the court will assume that the Post Mall will prevail, at trial, in rebutting every claim made against it that it actively created the conditions of danger by not posting warning signs to drivers about snow conditions, by plowing the snow in such a way as to obstruct the vision of drivers and by not properly removing the snow.

But despite these assumptions, the Post Mall is the owner-occupier of the land and an aspect of the claim against it is based on a theory of premises liability. It appears to be the general rule that a party who fails to make a dangerous condition safe after having notice of the condition cannot be regarded as passively negligent for purposes of applying the principles of common law indemnification. Thus, "... when a tortfeasor has knowledge of a dangerous situation, he [sic] is not entitled to indemnification for damages." 41 Am.Jur.2d §§ 27, 29. "Indemnity," cf., *Oregon Farm Bureau Ins Co v E L Caldwell & Sons, Inc,* 306 F.Supp. 835, 839 (D Ore., 1969); *Slemmons v*

*Ciba-Gligy Corp.,* 57 Ohio App.2d 43, 385 N.E.2d 298, 307 (Oh., 1978); *Foss v Moskowitz.* 359 So.2d 24, 25 (Fla., 1978).

*4 True, it has also been held that "a vendee-user of a product is not entitled to indemnity from a manufacturer for damages the former is required to pay a third party, when as here, the vendee's fault gives beyond the mere negligent failure to discover a product defect." *General Motors Corp v. County of Dade,* 272 So.2d 192, 194 (Fla., 1973) (passenger injured by brick thrown through bus window which had a type of glass that shattered, indemnity claim by bus owner against bus manufacturer not allowed where bus owner knew of nature of glass yet allowed bus to be driven in area where rock throwing could be anticipated).

But the obligations of an owner of premises to business invitees goes beyond the requirement of actual notice necessary to impose liability in other contexts. It is true that a party in control of premises can be held liable for defective conditions of which it had not only actual but constructive notice, *Smeriglio v. Connecticut Savings Bank,* 129 Conn. 461, 462, 29 A.2d 443 (1942). But the possibility that liability could be imposed where there is only constructive notice (should have known of icy conditions, for example) cannot be used as a pretext to argue that therefore it is feasible to posit the possibility that a property owner could be only passively negligent for indemnification analysis. The requirement of notice runs with a corresponding duty to inspect in premises liability law. *Phenning v. Silansky,* 144 Conn. 223, 226, 129 A.2d 224 (1957). In other words, the question of whether there is constructive notice of defective conditions--should the party in control of the premises have known of these conditions, is dependent on the reasonableness of inspections in terms of frequency and thoroughness that the owner is obligated to make as part of its duty of reasonable care. Thus, the imposition of liability on Connecticut Post Mall Limited, at the very least, will depend on a finding of failure to make reasonable inspection of the premises which obviously involves a finding of active negligence. Under the reasoning of *Preferred Accident Insurance Co* and *Bailey v Bussing,* it cannot be said that a failure to make reasonable inspection of one's property does not involve "personal

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13
(Cite as: 1999 WL 30593 (Conn.Super.))

Page 4

culpability" or "personal participation" in the circumstances that might have caused the accident. Such failure is "affirmative misconduct." To allow indemnification in such a case would permit Post Mall to "stand upon [its] own wrong" so as an active co-tortfeasor Post Mall should not be permitted to bring an indemnification action.

In other words, the only negligence the plaintiff can prove to establish liability against Post Mall would be, for definitional purposes in indemnification terms, active negligence. If active negligence is not proven, then the indemnification does not arise. The motion is granted and the indemnification action by Post Mall against the third-party defendant, Richard Samu, is dismissed.

(3)

*5 The indemnification claim of Bridgeport Paving must also be examined in the context of the factual setting or "situation" presented by this accident and whether an active/passive negligence theory as between Samu and Bridgeport Paving makes any sense in light of the prospective evidence that can be admitted under the pleadings.

The plaintiff's complaint against Bridgeport Paving which will limit and define her proof sounds in allegations of active negligence: the snow was not properly removed, it was plowed in such a way as to block the vision of motorists, no warnings as to conditions were posted, the snow was allowed to dangerously accumulate, the defendant did not comply with its obligation to remove snow under its contract with Post Mall.

It is difficult for the court to posit a scenario surrounding this accident and its occurrence whereby it could be found that (1) Bridgeport Paving was negligent in any of the ways alleged in the plaintiff's complaint; (2) Samu was negligent in any of the ways alleged in Bridgeport Paving's third-party complaint, but given these predicates, Richard Samu's negligence was "active" and that of Bridgeport Paving was "passive."

Ordinarily, the question of active/passive negligence or, for example, the question of exclusive control of the situation by the party against whom an indemnification claim is made is a question for the jury. But here, the plaintiff's complaint and the third-party cross complaint seeking indemnification indicate Samu, vis-a-vis Bridgeport Paving, could not have had exclusive control of the circumstances which led to the accident because the only allegations against Bridgeport Paving lie in active negligence. As has been said "... where the negligence of each of two defendants enters immediately into the production of the accident, neither should have a right to contribution." *Preferred Accident Ins Co. v. Steinberg Co.*, supra at 133 Conn., page 543, 52 A.2d 862.

The issue of indemnification only arises if the plaintiff proves her claim of negligence against Bridgeport Paving--if she does not, there will be no indemnification; if she does, the claims lie in active negligence and no indemnification claim will lie. The very wording of the third-party complaint by Bridgeport Paving echo this factual scenario. The motion for summary judgment is also granted as to the third-party indemnification complaint by Bridgeport Paving against Richard Samu. [FN3]

> FN3. One other matter should be discussed. The Post Mall and Bridgeport Paving in opposition to the motion for summary judgment argue that, in effect, the motion is being used to test the sufficiency of the complaint which is not permissible under *Burke v Avitable*, 32 Conn.App. 765, 768, 630 A.2d 624 (1993). But *Boucher Agency, Inc. v. Zimmer*, 160 Conn. 404, 408, 279 A.2d 540 (1971) suggests otherwise. Why not permit such a procedure at least where, by no possible construction of the pleadings or inferences to be drawn from them, can the nonmoving party successfully resist the motion *and* the factual circumstances out of which the case arises do not suggest that any possible amendment of the pleadings could forestall the granting of the motion. If the latter is not the case, the nonmoving party should be allowed to amend the pleadings and allege the factual circumstances which justify this and would otherwise prevent the granting of the motion. Here, no factual allegations beyond the factual allegations of the pleadings have been raised by way

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13
**(Cite as: 1999 WL 30593 (Conn.Super.))**

Page 5

of amendment to the pleadings, affidavits, depositions, documents, et cetera, and the court believes there is probably good reason why this is so--given the circumstances of which happened here, no such allegations could be raised that would forestall the granting of the motion.

1999 WL 30593 (Conn.Super.), 24 Conn. L. Rptr. 13

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT C

Westlaw.

Not Reported in A.
2003 WL 716598 (Conn.Super.), 34 Conn. L. Rptr. 96
(Cite as: 2003 WL 716598 (Conn.Super.))

Page 1

C
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Fairfield.

Sarah LEE,
v.
BRAVE INDUSTRIES, INC.

No. CV000378016.

Feb. 18, 2003.

Maher & Murtha, Bridgeport, for Sarah Lee.

Brian Del Gatto, Ephraim Fink, White Plains, Maher & Murtha, Bridgeport and Kernan & Henry, LLP, Waterbury, for Brave Industries, Inc.

JOSEPH W. DOHERTY, Judge.

*1 On October 6, 2000, the original plaintiff, Sarah Lee, filed a one-count complaint against the defendant, Brave Industries, Inc. (Brave Industries), for damages she allegedly sustained when she was operating a log splitter that was sold and manufactured by Brave Industries. Lee alleges that on or about April 10, 1999, while she was using the log splitter as it was intended to be used, her right forearm became trapped in the splitter, causing multiple crush and fracture injuries to her arm. Lee brought this action pursuant to the Product Liability Act, General Statutes § 52-572 et seq., alleging that her injuries were a result of Brave Industries' design, manufacture, and distribution of a defective product as well as its failure to provide adequate warnings.

On September 13, 2002, Brave Industries filed a one-count revised third-party complaint asserting a common-law indemnification claim against Eric A. Erickson, a consumer who allegedly loaned the log splitter to Lee on several occasions, including on or about the date of the accident. Brave Industries alleges that Erickson was in control of the situation and events of the date of the accident, to the exclusion of Brave Industries and that Erickson did not properly provide Lee with physical instructions or an instruction manual for the log splitter.

On October 11, 2002, Erickson filed a motion to strike the revised third-party complaint, together with a supporting memorandum of law, on the ground that the indemnification claim is legally insufficient because Brave Industries fails to allege sufficient facts to establish that Erickson was in "exclusive control" of the situation, an element necessary to maintain a common law claim of indemnification. Erickson maintains that the situation that gave rise to Lee's injuries is the design and manufacture of the log splitter, rather than Erickson's mere failure to properly instruct Lee as to its use.

On November 1, 2002, Brave Industries filed a memorandum of law in opposition to Erickson's motion to strike, in which it contends that whether Erickson was in exclusive control of the situation is a question of fact that cannot be decided on a motion to strike. Additionally, Brave Industries argues that a reasonable jury could find Erickson's conduct in purchasing and loaning the log splitter to Lee, as well as his negligence in instructing Lee on its use, or his failure to properly instruct her, to be the direct, primary and active cause of the accident.

"The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any [complaint] ... to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Peter-Michael, Inc. v. Sea Shell Associates,* 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the [nonmovant] ... If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Faulkner v. United Technologies Corp.,*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
2003 WL 716598 (Conn.Super.), 34 Conn. L. Rptr. 96
(Cite as: 2003 WL 716598 (Conn.Super.))

Page 2

240 Conn. 576, 580, 693 A.2d 293 (1997). On the other hand, "[a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems v. BOC Group, Inc.*, 224 Conn. 210, 618 A.2d 25 (1992).

*2 "In an action for indemnity ... one tortfeasor seeks to impose total liability upon another ... [I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest ..." *Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 697-98 n. 3, 694 A.2d 788 (1997). "Indemnity shifts the impact of liability from passive joint tortfeasors to active ones." (Internal quotation marks omitted.) *Id.*, at 697. Accordingly, in order to maintain a common law action for indemnity against Erickson, Brave Industries must allege facts sufficient to establish: "(1) that [Erickson] was negligent; (2) that [Erickson's] negligence, rather than [Brave Industries'], was the direct, immediate cause of the accident and injuries; (3) that [Erickson] was in control of the situation to the exclusion of [Brave Industries]; and (4) that [Brave Industries] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on [Erickson] not to be negligent." (Internal quotation marks omitted.) *Id.*, at 698.

Erickson's motion to strike is premised on his contention that Brave Industries' third-party complaint fails to allege sufficient facts to support the element of exclusive control. Erickson argues that although the question of exclusive control is ordinarily one of fact and not appropriately resolved on a motion to strike, in special circumstances, such as exist in the present case, the issue becomes a question of law if no reasonable juror could find that the third-party defendant had control of the situation that gave rise to the accident to the exclusion of the third-party plaintiff. Accordingly, Erickson argues that the motion to strike should be granted.

The general rule is that the question involving the absence or presence of exclusive control is not resolved by a motion to strike because it presents a question of fact. *Id.*, at 704. "Nonetheless, special circumstances may give rise to the question of whether, in light of the facts alleged in the third-party complaint, any reasonable juror could find that the third-party defendants had exclusive control of the situation. Under such circumstances, this issue becomes a question of law." *Id.*, at 705. "The question thus posed is whether, if these facts were proven, any reasonable juror could find that the third-party defendants were in exclusive control of 'the situation.' " *Id.*

Our Supreme Court has stated that, "[it] is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident." *Id.*, at 706. For example, in *Skuzinski v. Bouchard,* the Supreme Court found that under the facts alleged in that case, the third-party defendants' exercise of exclusive control over a sidewalk could not be equated to their exercise of exclusive control over an accident that was caused by an unrelated party and occurred in the adjoining public roadway even though the third-party defendants' failure to remove snow from the sidewalk caused the plaintiff to walk on the street. *Id.* The Supreme Court decided, as a matter of law, that under the facts alleged in the third-party complaint, no reasonable juror could find that the third-party defendant had exclusive control of the situation. *Id.*

*3 Even more factually analogous to the present case is *Skrzyniarz v. Votto,* Superior Court, complex litigation docket of Norwich-New London at Norwich, Docket No. X04 CV 00 0122390 (August 29, 2001, Koletsky, J.). In *Skrzyniarz,* the plaintiffs commenced an action against the defendants for damages they sustained when their son was injured by the blade of a lawn tractor after he fell off the tractor, which was being operated by the defendants' minor son. The defendants subsequently filed an apportionment complaint against, *inter alia,* Husqvarna, who designed, manufactured and distributed the tractor. Husqvarna filed a cross claim against the defendants seeking indemnification due to their negligence in failing to supervise their son and failing to provide him with sufficient training in the use of the tractor. Husqvarna alleged that such negligence was the direct and immediate cause of the plaintiffs' injuries. The defendants moved to strike the cross claim. The court granted the motion to strike stating: "The Husqvarna defendants will be found liable only if they have manufactured, designed or distributed a

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.
2003 WL 716598 (Conn.Super.), 34 Conn. L. Rptr. 96
**(Cite as: 2003 WL 716598 (Conn.Super.))**

Page 3

defective product. If the plaintiffs fail to prove defective design or failure to provide adequate warnings, the Husqvarna defendants will prevail and indemnification will not be an issue. Conversely, if the Husqvarna defendants are found liable under the product liability act, it is beyond cavil that the Votto defendants, as purchasers of that product, were not in control of the design, manufacture or distribution of the product. [Under such a scenario] no reasonable juror could find that the Votto defendants had exclusive control over that situation." *Skrzyniarz v. Votto, supra,* Docket No. X04 CV 00 0122390. The court found the issue of control to be a question of law and held that the cross claim failed to allege sufficient facts to establish that the defendants were in control of the situation to the exclusion of Husqvarna, thus the court granted the defendants' motion to strike Husqvarna's cross claim.

In the present case, as in *Skrzyniarz v. Votto,* the issue of exclusive control is properly decided as a matter of law. In the instant case, the facts alleged in the third-party revised complaint, taken to be true for purposes of this motion, indicate that Erickson purchased the log splitter purchased for his joint use with Lee and that Lee had borrowed the log splitter from Erickson on several prior occasions. Brave Industries also alleges that Erickson provided Lee with the operator's manual and instructed her on how to use the log splitter, but does not allege that Lee used the log splitter in an improper or unsafe manner. Rather, Brave Industries alleges that it was Erickson's failure to *properly* provide Lee with the instructions and the manual that was the cause of the accident. (Revised Third-Party Complaint, ¶ 7 and 9.) As previously noted, however, Erickson's control over the circumstances in which Lee used the log splitter does not equate to his exercise of exclusive control of the condition that caused her to be injured. Moreover, Brave Industries does not allege that the log splitter was not defective when it was manufactured or sold to Erickson or that it was altered or modified after Erickson purchased it.

*4 Even assuming the truth of Brave Industries' factual allegations, no reasonable juror could find that Erickson was in control of the situation to the exclusion of Brave Industries.

For the foregoing reasons, the motion of the third-party Erickson to strike the third-party complaint is hereby granted.

2003 WL 716598 (Conn.Super.), 34 Conn. L. Rptr. 96

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.