UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 11

**REDIFORM** SHORT FORM STRAIGHT BILL OF LADING 6S675/6P675
CARBONLESS SPEEDISET 3-PART

**STRAIGHT BILL OF LADING – SHORT FORM – Original – Not Negotiable**   Ro Pin Logistics

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are available to the shipper, on request;

Carrier ~~[struck through]~~

Carrier's Pro No. _____
Shipper's Bill of Lading No. _____
Consignee's Reference/PO No. _____
Carrier's Code (SCAC) _____

~~FESTO CORPORATION~~
~~430 WIRELESS BLVD.~~
~~HAUPPAUGE, NY 11788~~

at _____ from _____

the property described below in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination. If on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of, said property over all or any portion of said route to destination and as to each party at any time interested in all or any said property, that every service to be performed hereunder shall be subject to all the Terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment.

Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

Consigned to _NAUGATUCK VALLEY COMMUNITY COLLEGE_
(Mail or street address of consignee—For purposes of notification only.)
Destination _WATERBURY_  State _CT_  Zip Code _06708_  County _____
Delivery Address ★ _750 CHASE PARKWAY_
( ★ To be filled in only when shipper desires and governing tariffs provide for delivery thereat.)

Route _____
Delivering Carrier _____   Car or Vehicle Initials _____   No. _____

| No. Packages | HAZ MAT | [Description] | *Weight (Sub. to Cor.) | Class or Rate | Check Column |
|---|---|---|---|---|---|
| 1 | | TROLLEY 72H 33W 59L | | | |
| 1 | | TRI-WALL 47L 32W 37H | 755 | | |
| | | CONTACT RAY CASTELLANI | | | |
| | | PHONE 203-596-8741 | | | |
| | | MUST BE DELIVERED OCT. 22 OR OCT. 23 | | | |

Subject to Section 7 of Conditions of applicable bill of lading, if this shipment is to be delivered to the consignee, the consignor shall sign the following statement:
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

_____ (Signature of Consignor)

Freight charges are PREPAID unless marked collect.
CHECK BOX IF COLLECT ☐

**PLACARDS PROVIDED FOR THIS LOAD**

This is to certify that the above named materials are properly classified, packaged, marked and labeled and are in proper condition for transportation according to the applicable regulations of the Department of Transportation. IMPORTANT! When shipping hazardous materials this information must be provided:

EMERGENCY CONTACT: _____   24 HOUR PHONE NUMBER: _____

Received $ _____ to apply in prepayment of the charges on the property described hereon.

If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading state whether it is "carrier's or shipper's weight."
NOTE - Where the rate is dependent on value shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____

Liability Limitation for loss or damage on this shipment may be applicable. See 49 U.S.C. § 14706(c)(1)(A) and (B)

_____ per _____

"The fibre boxes used for this shipment conform to the specifications set forth in the box maker's certificate thereon, and all other requirements of Uniform Freight Classification."
* Shipper's imprint in lieu of stamp; not a part of bill of lading approved by the Interstate Commerce Commission.

Shipper, per _[signature]_   Agent, per _[signature]_

Agent or Cashier _____
Per _____
(The signature here acknowledges only the amount prepaid.)

Charges Advanced: $ _____

Permanent post-office address of shipper _____

REDIFORM® 6S675/6P675 Rev. 5/98   **carbonless**
POLYPAK (50 SETS) 6S675

EXH 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 12

```
 1                        Zierau                       19
 2        A     Yes.
 3        Q     When it's shipped in a crate and
 4   it's disassembled, are the wheels on it?
 5        A     Yes.
 6        Q     This unit is manufactured in
 7   Germany.  Do the wheels have brakes?
 8        A     Yes.
 9        Q     How many wheels have brakes?
10        A     I can't answer that.
11        Q     Is it fair to say that some have two
12   brakes and some have four brakes?
13        A     Yes.
14        Q     Come through both ways, right?
15        A     The specifications say that there's
16   two brakes, diagonally opposed.
17        Q     Now, when you say "diagonally
18   opposed," could you explain to me what that
19   means?
20        A     What it means is the -- the wheels,
21   they're -- there is a locking wheel on this side
22   of the trolley on the bottom and this side of the
23   trolley on the bottom (indicating).
24        Q     You're using your hands to show a
25   diagonal; they're catercorner.
```

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 13

15

P. MILKS

2  Q.  But the wheels were not dropped down,
3  it would be crated?
4  A.  They would be in the crate.
5  Q.  Then when it comes to your facility,
6  what would your facility do with that unit?
7  A.  If it's already sold to a customer, it
8  would go out the way it is, that's generally what
9  happens.
10 Q.  So it would be shipped out to a
11 customer crated?
12 A.  Correct, provided the customer was
13 looking for a brand-new piece of equipment, they
14 would order it that way and it would come from
15 Germany that way.
16 Q.  Would you explain to me what your job
17 was in October 2001?
18 A.  Product coordinator.
19 Q.  What did you do?
20 A.  I answered the phone, help customers,
21 do order entry, order items from Germany, I verify
22 those items are shipped properly and put into
23 stock.  I take care of just the general office
24 functions within the department, dealing with
25 distributors.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 14

```
 1                        P. MILKS
 2        A.     No, I do not.
 3        Q.     In the course of your dealing with
 4   Trans-Expo, did you mostly deal with Erica Ramirez?
 5        A.     Yes.
 6        Q.     Cheryl Sabatelli told us that her job
 7   with Festo was to ship materials from Festo to
 8   trade shows and that United Van Lines was a
 9   different marketing venue, that you handled your
10   own shipments?
11        A.     That's correct.
12        Q.     You know what the subject matter of
13   this case is?
14        A.     Yes.
15        Q.     Looking at Exhibit 1, can you tell me
16   what those two units are; do they have names so we
17   can talk about the same thing?
18        A.     The first one, yes, has a name, and the
19   second one does not.
20        Q.     What is the name of the first one?
21        A.     First one is actually a Festo Learnline
22   trolley, Workstation.  It's used for educational
23   purposes.
24        Q.     And the second unit, what is the second
25   item?
```

```
 1                      P. MILKS
 2      A.      The second item is what we call a
 3 Triwall, it's generally a cardboard box,
 4 corrugated, heavy-duty box with a lid.
 5      Q.      Is there anything in the box?
 6      A.      Yes.
 7      Q.      What's in the box?
 8              MR. OSWALD:  In this particular
 9      shipment?
10              MR. GRADY:  Yes.
11      A.      In this shipment I'm not sure what was
12 in the box, but being that this was for a
13 presentation, it was probably presentation
14 materials.
15      Q.      Would it be the accessories that go
16 with the first item of cargo?
17      A.      It could be.  I'm sure there were some
18 items that were for the trolley put into the
19 cardboard box.
20      Q.      Now directing your attention again to
21 that exhibit in front of you, can you describe the
22 handwriting on that exhibit?
23              MR. OSWALD:  Do you mean the
24      handwriting in the middle of the exhibit?
25      Q.      Any handwriting.
```

24

```
 1                       P. MILKS
 2   doing?
 3              MR. OSWALD: Objection to the form.
 4        Q.    Is that correct?
 5        A.    Yes.
 6        Q.    Do you know what a Shipment Booking
 7   Order is?
 8        A.    Do I know what a Shipment Booking Order
 9   is? I have seen one.
10        Q.    Have you seen more than one?
11        A.    Yes.
12        Q.    Was it the general practice of
13   Trans-Expo to provide you with a Shipment Booking
14   Order after they have prepared it so you could
15   review it?
16              MS. O'DONNELL: Objection to the form.
17              MR. OSWALD: Objection to the form.
18        Q.    You can answer the question.
19        A.    Yes.
20        Q.    In this particular case, directing your
21   attention to Defendant's Exhibit C, have you seen
22   that document before?
23        A.    Yes, I have.
24        Q.    Do you recall whether or not that's the
25   Shipment Booking Order that Erica Ramirez provided
```

```
 1                        P. MILKS
 2    you prior to undertaking the shipment?
 3          A.    Yes.
 4          Q.    The information that appears on that
 5    document, do you know how the information got
 6    there?
 7          A.    No.
 8          Q.    Did you have a conversation with Erica
 9    Ramirez prior to the receipt of that document
10    relative to the subject matter of that document?
11          A.    Yes.
12          Q.    Were they oral or written?
13          A.    The initial conversation that I recall
14    was oral.
15          Q.    Can you explain to me what happened in
16    that initial conversation?
17          A.    That conversation was more or less to
18    introduce myself to her, let her know that I had
19    spoken with my colleague, Cheryl Sabatelli, who had
20    given me the referral that Cheryl was using Arpin
21    Logistics and gave me her number and that's when I
22    phoned her and spoke with her about a shipment I
23    had coming up.
24          Q.    Did you, at that time, tell Erica
25    Ramirez about the particulars of the shipment?
```

26

```
 1                    P. MILKS
 2       A.      I don't recall.
 3       Q.      Did you at any time prior to receiving
 4   that Shipment Booking Order back from her that's
 5   represented by Defendant's C, tell her what, if
 6   anything, should be in the document?
 7       A.      What information should be in this
 8   document?
 9       Q.      Yes.
10       A.      No.
11       Q.      You didn't.  So with respect to the
12   information in that document, do you know how it
13   got there?
14       A.      I know how the majority of it got
15   there.
16       Q.      How did the majority get there?
17       A.      I gave it to her.
18       Q.      Tell me what you gave her?
19       A.      I gave her the pickup location, where
20   the shipment was going to be picked up.  I gave her
21   the address to where it was going to be delivered,
22   a contact name and phone number and most
23   importantly, when it needed to be delivered by.
24       Q.      Did you give her the dimensions?
25       A.      Yes, the dimensions and the units,
```

27

1              P. MILKS

2    which was one trolley and one Triwall.

3         Q.     Did you provide any information to her

4    about the weight?

5         A.     I did not.

6         Q.     Did you tell Erica anything about the

7    weight?

8         A.     I did not.

9         Q.     Had you handled these transactions

10   before with Trans-Expo International?

11        A.     This was the first time.

12        Q.     This first time dealing with Trans-Expo

13   International?

14        A.     Yes.

15        Q.     Were you aware that weight was an

16   important factor that needed to be conveyed so that

17   safety could be properly safeguarded?

18               MR. OSWALD:  Objection to the form.

19               MS. O'DONNELL:  Join.

20        A.     No.

21               MR. STRATTON:  Objection to the form.

22        Q.     Were you aware that the law requires a

23   shipper to state the weight of the contents

24   accurately?

25               MR. OSWALD:  Objection to the form.

DIAMOND REPORTING -718-624-7200- 16 Court St., B'klyn, NY

27

1              P. MILKS

2    which was one trolley and one Triwall.

3         Q.     Did you provide any information to her

4    about the weight?

5         A.     I did not.

6         Q.     Did you tell Erica anything about the

7    weight?

8         A.     I did not.

9         Q.     Had you handled these transactions

10   before with Trans-Expo International?

11        A.     This was the first time.

12        Q.     This first time dealing with Trans-Expo

13   International?

14        A.     Yes.

15        Q.     Were you aware that weight was an

16   important factor that needed to be conveyed so that

17   safety could be properly safeguarded?

18               MR. OSWALD:  Objection to the form.

19               MS. O'DONNELL:  Join.

20        A.     No.

21               MR. STRATTON:  Objection to the form.

22        Q.     Were you aware that the law requires a

23   shipper to state the weight of the contents

24   accurately?

25               MR. OSWALD:  Objection to the form.

DIAMOND REPORTING -718-624-7200- 16 Court St., B'klyn, NY

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 15

Arpin www.705-1510

Attention: Bill/Heidi
Fax 401.828.3773
(3)

# Trans-Expo International SHIPMENT BOOKING

| AGENT NO: | | Pickup Date: | Delivery date: |
|---|---|---|---|
| AGENT NAME: | Trans-Expo Intl | 10/19/01 | No later than 10/25 |
| SUBMITTED BY: | Erica Ramirez | Time Ready: Ready now | Delivery Time: 0800-1500 only |
| | | Call prior to arrival | |
| TEL: | 858.376.2300 | Time Close: | |
| FAX: | 858.376.2308 | | |

| SHIPPER | Festo Regional Logistics Ctr | CONSIGNEE | Naugatuck Valley Community College |
|---|---|---|---|
| ADDRESS | 430 Wireless Blvd | ADDRESS | 750 Chase Parkway |
| ADDRESS | Must have 10-12 pads/Straps/protect wheels | ADDRESS | Need Palletjack and liftgate for delv. |
| CITY, ST, ZIP | Hauppauge NY 11788 | CITY, ST, ZIP | Waterbury CT 06708 |
| Customer Name | Faye Devito-MGR. | Customer Name | Ray Castellani-Must call in advance of delivery |
| TELEPHONE | 631.435.9417 | TELEPHONE | 203.596.8741 |
| BOOTH | They have a dock | BOOTH | |
| Tradeshow | | Tradeshow | |
| Contractor | | Contractor | |

| BILL TO: | BILLING PARTY | Festo Corporation-New Account New Contact |
|---|---|---|
| ☐ SHIPPER | ADDRESS | 395 Mooreland Road |
| ☐ CONSIGNEE | ADDRESS | |
| ☒ THIRD PARTY | CITY, ST, ZIP | Hauppauge, NY 11788 |
| | CONTACT | Petra Milks |
| | TELEPHONE | 631.404.3182 |

| DIMENSIONS: | | | Pieces & Weight: | | REQUIREMENTS: |
|---|---|---|---|---|---|
| L | W | H | Pieces | 2 | x Liftgate |
| 59 | 33 | 72 | Actual Wt. | 400 | x Inside Delivery |
| 47 | 32 | 37 | Volume Wt. | | Other |

1 workstation requires pads/1 pallet (protect corners of pallet please

Commodity:
Declared Value:
Insurance:

Special Instructions: Please take extra caution to protect workstation. We are getting these orders because United damaged so much of their shipments. So please tell driver to have correct equipment and pad/strap well. Call prior to p/u and delivery. Ray @ the destination will provide delivery instructions/ Thanks Bill I Erica

Quoted Amount:
Quoted $400.00 by Bill Mottla 10/18/01

Please bill client
L/H $512.05
Fuel $25.60
Total $537.65

Protect wheels!

TOTAL P.01