**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                    :          CIVIL ACTION
                                                            NO. 3:02 CV1302 (DJS)

                                                 :

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L       :          DECEMBER 15, 2004


# EXHIBIT 21

Depo. of Erica Ramirez - 10/24/03

1  clients and sell the trade show moves internationally.

2      Q    So he was really the marketing salesman?

3      A    (No audible response.)

4  MS. O'DONNELL:  You need to say "yes" or "no."

5  THE WITNESS:  Yes.

6      Q    BY MR. STRATTON:  Where did you work out of?

7      A    I worked out of the office in Rancho Bernardo.

8      Q    Were you the only employee other than Mr. Kovac?

9      A    I believe so.

10     Q    And would you utilize a computer?

11     A    Yes.

12     Q    E-mail?

13     A    Yes.

14     Q    Was that your primary form of contact or did you

15  utilize the phone?

16     A    Used the phone as well.

17     Q    Where did you get -- did you have forms that were

18  given to you that should be utilized?

19     A    Yes, the shipment booking form was our primary

20  form that we used.

21     Q    And tell me about the shipment booking form, what

22  was the purpose of that form?

23     A    The form is the information that most of the

24  carriers needed in order to pick up a shipment and deliver

25  a shipment.  So it required general pick up information,

9

Depo. of Erica Ramirez - 10/24/03

1   such as address and date and times and delivery

2   information.

3        Q    And the information on a shipment booking form,

4   was that always inputted by you during the time that you

5   were working with Trans-Expo?

6        A    No.  Mike, as well, would enter information on

7   the forms.

8        Q    But the information that we generally see is

9   someone from Trans-Expo would put it on to the shipment

10  booking form?

11       A    It would be information we received and then

12  relayed that information to the carrier.

13       Q    So in all cases it would be information that you

14  received from a client?

15       A    Correct.

16       Q    Now, when you say "client," what does client

17  mean?  What sorts of companies would be clients of

18  Trans-Expo?

19       A    I'm not familiar with Mike, his strategy of how

20  he obtained clients completely.  I know that oftentimes we

21  would call on exhibitor lists going to trade shows and then

22  if they choose to use our services through our carriers we

23  would, you know, put that information down that they gave

24  to us and then move their shipment to the show.

25       Q    Now, do you know who your contact was at Festo

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                    :        CIVIL ACTION
                                                          NO. 3:02 CV1302 (DJS)
                                                 :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L       :        DECEMBER 15, 2004


# EXHIBIT 22

Volume I, Pages 1-80
Exhibits NONE

UNITED STATES DISTRICT
DISTRICT OF CONNECTICUT

C.A. NO. 3:02 CV1302 (DJS)

SHAWN POULIOT,
          Plaintiff,

**CERTIFIED COPY**

          vs.

PAUL ARPIN VAN LINES, INC.
AND ARPIN LOGISTICS,INC.,
          Defendants/Third-Party Plaintiffs,

vs.

THE FESTO CORPORATION,
MICHAEL D. KOVAC D/B/A TRANS-EXPO INTERNATIONAL
AND ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INTERNATIONAL,
          Third-Party Defendants

          DEPOSITION OF:  WILLIAM F. MOTTLA,JR.
                    LENIHAN, GRADY & STEELE
                      Six Canal Street
                   Westerly, Rhode Island 02891

          July 27, 2004 2:25 p.m. - 3:58 p.m.


ATKINSON-BAKER, INC. COURT REPORTERS

330 North Brand Boulevard, Suite 250

Glendale, California  91203

800.228.3376

REPORTED BY:  Linda A. Menard
                 Registered Professional Reporter
                 Certified Shorthand Reporter
JOB NO. 9E05C35

1                    C E R T I F I C A T E

2

3    COMMONWEALTH OF MASSACHUSETTS

4    COUNTY OF BRISTOL, ss.

5

6         I, Linda A. Menard, a Registered

7    Professional Reporter and Notary Public in and for

8    the Commonwealth of Massachusetts, do hereby certify

9    that the foregoing transcript of the deposition of

10   William F. Mottla, Jr., having been duly sworn, on

11   Tuesday, July 27, 2004, is true and accurate to the

12   best of my knowledge, skill and ability.

13         IN WITNESS WHEREOF, I have hereunto set my

14   hand and seal this 11th day of August, 2004.

15

16

17                        Linda A. Menard, RPR
18                        Notary Public
                          My commission expires:
19                        September 17, 2004

20

21

22

23

24

1    either yourself or someone in customer service?

2        A.    Yes.

3        Q.    It generally wouldn't go to somebody

4    outside of your department?

5        A.    Right.

6        Q.    And then all of that relevant information

7    would be input into a computer?

8        A.    Yes.

9        Q.    Now, taking a look at what's been marked

10   as Exhibit E, do you recognize this document?

11       A.    This would be what Trans-Expo would fax

12   over regarding an order for input.

13       Q.    Now, this indicates -- in the upper

14   right-hand corner it says, Attention Bill and Heidi?

15       A.    Right.

16       Q.    I'm assuming that's you and Miss Hopkins?

17       A.    Yes.

18       Q.    So this document would have been sent to

19   your attention or to Heidi's attention?

20       A.    Correct.

21       Q.    Down in the bottom right-hand corner I see

22   there's a quoted $400 by Bill Mottla?

23       A.    Yes.

24       Q.    What does that mean?

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                          :        CIVIL ACTION
                                                NO. 3:02 CV1302 (DJS)
                                       :

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L       :        DECEMBER 15, 2004


# EXHIBIT 23

Depo. of Wm. Mottla - 7/27/04

1      Q.   We have marked some exhibits here, I
2   believe they're A through O from other depositions
3   of various former Arpin personnel; and so if I refer
4   to an exhibit, it's something that's already been
5   pre-marked.
6      A.   Okay.
7      Q.   Can you tell me, when did you first start
8   working for Arpin?
9      A.   Let me think.  Wait a minute now.  I want
10   to say it was '97.
11      Q.   And when did you leave Arpin?
12      A.   May of 2001.
13      Q.   May of 2001.  This incident occurred in
14   October of 2001.
15      A.   So it was 2002 then.
16      Q.   So around May of 2002?
17      A.   Yes.
18      Q.   In October of 2001, what was your job at
19   Arpin Logistics?
20      A.   I was customer service manager.
21      Q.   And give me the job description of that,
22   the customer service manager?
23      A.   I had several people working for me.  I
24   also handled a vast amount of customers myself.  And

6

1   that would also include outside sales people who

2   would call orders in or fax orders in.  And we would

3   input those into the system, do the pricing,

4   interface with operations as to the feasibility of

5   handling the order.

6          MR. GRADY:  I ask you to speak up, please.

7      Q.   In October of 2001, how many people did

8   you have working under you within customer service?

9      A.   I believe it was three.

10     Q.   Was one of the people a Heidi?

11     A.   Yes.

12     Q.   What was her name?

13     A.   Heidi Hopkins.

14     Q.   Now her name is Heidi Kern?

15     A.   Okay.

16     Q.   Who else was in that department?

17     A.   There was a young man.  I don't recall his

18   name.  And then there was another woman.  I don't

19   recall her name either.

20     Q.   Now, did everybody, including yourself,

21   work Monday through Friday the day shift?

22     A.   Yes.

23     Q.   Was there anybody there on weekends?

24     A.   Not in customer service.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN POULIOT                              :        CIVIL ACTION
                                                    NO. 3:02 CV1302 (DJS)
                                           :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L     :        DECEMBER 15, 2004


# EXHIBIT 24

Mottla

1   either yourself or someone in customer service?

2       A.   Yes.

3       Q.   It generally wouldn't go to somebody

4   outside of your department?

5       A.   Right.

6       Q.   And then all of that relevant information

7   would be input into a computer?

8       A.   Yes.

9       Q.   Now, taking a look at what's been marked

10  as Exhibit E, do you recognize this document?

11      A.   This would be what Trans-Expo would fax

12  over regarding an order for input.

13      Q.   Now, this indicates -- in the upper

14  right-hand corner it says, Attention Bill and Heidi?

15      A.   Right.

16      Q.   I'm assuming that's you and Miss Hopkins?

17      A.   Yes.

18      Q.   So this document would have been sent to

19  your attention or to Heidi's attention?

20      A.   Correct.

21      Q.   Down in the bottom right-hand corner I see

22  there's a quoted $400 by Bill Mottla?

23      A.   Yes.

24      Q.   What does that mean?

1    A.   Based on the information, if my memory

2  serves me right, Erica would normally call and ask

3  for a quote based on what she might have.  In this

4  case, you know, based on the 400 pounds, I quoted

5  her a price of $400.

6    Q.   Now, the price that was quoted here on

7  Exhibit E, how can you be sure as to how that amount

8  was arrived at?

9    A.   We had some different formulas a lot of

10 times depending on the need of the operation.  We

11 would give spot pricing, where we would not

12 necessarily use any established rates.  It would be

13 at my discretion which Mike was fine with, Mike

14 Montgomery was fine with.

15   Q.   So spot pricing is pricing based on a

16 sense of what the market will bear?

17   A.   Correct.

18   Q.   And in this case, on Exhibit E, we see

19 various dimensions given here.

20   A.   Um-hm.

21   Q.   We see it's two pieces; we see an actual

22 weight of 400 pounds.

23   A.   Right.

24   Q.   We see there's going be an inside delivery

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                              :        CIVIL ACTION
                                                    NO. 3:02 CV1302 (DJS)
                                           :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L        :        DECEMBER 15, 2004

# EXHIBIT 25

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| V. | : | |
| PAUL ARPIN VAN LINES, INC.<br>AND ARPIN LOGISTICS, INC. | : | |
| V. | : | |
| FESTO CORPORATION, MICHAEL D.<br>KOVAC D/B/A TRANS-EXPO<br>INTERNATIONAL, AND ERICA RAMIREZ IN<br>HER CAPACITY AS EMPLOYEE OF TRANS-<br>EXPO INTERNATIONAL | :<br>:<br>:<br>:<br>: | FEBRUARY 28th, 2003 |

### *AFFIDAVIT OF MICHAEL MONTGOMERY, ARPIN LOGISTICS, INC. IN SUPPORT OF THE OBJECTION OF ARPIN LOGISTICS, INC. TO THIRD PARTY DEFENDANT ERICA RAMIREZ AND THIRD PARTY DEFENDANT MICHAEL D. KOVAC'S MOTION TO DISMISS ON JURISDICTIONAL GROUNDS*

Now comes Michael Montgomery, General Manager, Arpin Logistics, Inc., of the Town of East Greenwich, State of Rhode Island and upon oath duly states as follows:

1. He was the General Manager at Arpin Logistics, Inc. in October of 2001;

2. For approximately 6 months prior to October 23, 2001, Erica Ramirez as Agent and Servant of Michael D. Kovac, d/b/a Trans-Expo International of San Diego,

California transmitted approximately 26 different shipping orders to Arpin

Logistics Inc.;

3. On or about the morning of October 18, 2001, Erica Ramirez called in an order to

Arpin Logistics, Inc. at East Greenwich, Rhode Island for a shipment to be

undertaken by Arpin Logistics from the Festo Corporation at Hauppauge, New

York to Naugatuck Valley Community College in Waterbury, Connecticut;

4. On or about October 18th at 11:21 a.m., Erica Ramirez on behalf of Trans-Expo

International prepared and faxed the order referred to heretofore to Bill Mottla,

customer service representative at Arpin Logistics, Inc. in East Greenwich, Rhode

Island. See Exhibit A.

5. That the Shipping Order (Exhibit A) contained shipping instructions regarding the

Festo cargo which were false, namely that the two units weighed 400 lbs.;

6. Based upon the content of the shipping order (Exhibit A) and paragraph 14 of the

Erica Ramirez affidavit of January 22, 2003, in which she said, "The only contact

I would have made, as an employee of Trans-Expo, with anyone in Connecticut

would have been a brief telephone contact with a representative at the consignee

to confirm the delivery information which was provided by Festo.", Erica

Ramirez for herself and on behalf of Mr. Kovac, her employer knew or should

have known that the Learnline 2000 unit was to be shipped from Hauppauge, New York into Waterbury, Connecticut where it would be unloaded from a shipping vehicle;

7.     Erica Ramirez for herself and on behalf of Mr. Kovac, her employer expected or should have reasonably expected the act of shipping this Learnline 2000 unit from Hauppauge, New York into Waterbury, Connecticut, where it was to be unloaded, would have consequences in the State of Connecticut;

8.     On or about October 20, 2001, operations at Arpin Logistics, Inc. dispatched Shawn Pouliot to this Festo job from Hauppauge, New York to Waterbury, Connecticut;

9.     On or about October 23, 2001 in the morning, Shawn Pouliot picked up the cargo at Festo Corporation in Hauppauge, New York for delivery to Naugatuck Valley Community College in Waterbury, Connecticut;

10.    At all times material Arpin Logistics, Inc. in accepting the terms of the Shipping Order from Michael D. Kovac, d/b/a Trans-Expo International was undertaking to pick up and deliver cargo for Festo Corporation, Michael D. Kovac, d/b/a Trans-Expo International, acting as the shipping agent of Festo Corporation for the shipment of this Festo Corp. cargo;

11. At all times material, Arpin Logistics, Inc. relied upon the representations of Michael D. Kovac, d/b/a Trans-Expo International that he was acting as the agent of Festo Corporation; and the cargo weighed 400 lbs.;

12. At all times material, between October 18th at 11:21 a.m. through October 23rd at 15:00 p.m. Arpin Logistics relied upon the shipping instructions and that the cargo weighed 400 lbs., provided by Erica Ramirez on behalf of Michael D. Kovac, d/b/a Trans-Expo International, as shipping agent of Festo Corporation, all as described in the Shipping Order (Exhibit A);

13. That reliance on their shipping instructions as aforesaid was a continual process continuing through the period of time described above (October 18 through October 23rd);

14. If Arpin Logistics, Inc. had known that the Festo Learnline unit 2000 Workstation weighed 755 lbs., it would have sent two men for purposes of moving the cargo;

15. If Arpin Logistics, Inc. had known that the 755 lb. Festo Learnline unit 2000 Workstation was on wheels it would have, additionally, sent a rear lift with leveling capacity;

16. If Arpin Logistics, Inc. had known that the 755 lb. unit on wheels had brakes on two of the wheels it would have instructed Shawn Pouliot to lock the wheels through use of the brakes during the unloading process on the rear lift;

17. Michael D. Kovac, d/b/a Trans-Expo International did not disclose to Arpin Logistics, Inc. that the Festo Learnline 2000 workstation weighed 755 lbs. was on wheels, and that two of the wheels had brakes, at any time prior to the accident, and therefore Arpin Logistics was not forewarned in a timely manner of the dangers and risks in unloading this cargo so that it could safeguard against them;

18. Consequently Shawn Pouliot's injuries did not result from any negligence attributable to Arpin Logistics, Inc., but rather resulted from the negligence of Michael D. Kovac, d/b/a Trans-Expo International and Erica Ramirez, as aforesaid;

19. On or about October 23, 2001 at or about 2:30 p.m. Shawn Pouliot, the driver of the Paul Arpin Van Lines van truck and the plaintiff herein was injured at Naugatuck Valley Community College in Waterbury, Connecticut while unloading the Festo Learnline 2000 workstation from the Arpin van truck;

20. That Arpin Logistics, Inc. undertook a number of shipments for Festo Corporation, which had been engaged by Michael D. Kovac, d/b/a Trans-Expo

International, Inc. beginning on August 30, 2001 and extending to April of 2002 as described on the enclosed documents entitled Arpin Logistics, Inc. Customer Service Board, for customer Festo Corp. (See Exhibit B);

21.   At least three of the shipments, each with separate bills of lading, were arranged by Michael D. Kovac, d/b/a Trans-Expo International for Festo Corporation, as described in paragraph #18 and Exhibit B involved the state of Connecticut, one originating in New York and terminating in Connecticut (AL 123854), the second originating in Connecticut and terminating in Ohio (AL 124089), and the third originating in Connecticut and terminating in New York (AL 124088);  (See Exhibits C, D, & E)

22.   That work which was engaged by Michael D. Kovac, d/b/a Trans-Expo International on behalf of Festo Corporation as described in Exhibit B, related to shipments involving the states of Massachusetts, New York, Georgia, Ohio, New York, Connecticut, Nevada, Illinois, Pennsylvania, Texas, Nebraska, Rhode Island and North Carolina;

23.   During the period of time that Arpin Logistics, Inc. were doing business with Festo Corporation, Michael D. Kovac, d/b/a Trans-Expo International acted as a

shipping agent and broker for Festo Corporation on many transactions in

interstate commerce;

24.    Based upon the contents of paragraph 18 herein and Exhibit B, Michael D. Kovac,

d/b/a Trans-Expo International and Erica Ramirez conducted business in interstate

commerce;

25.    Based upon other provisions herein and the content and representations of the

Trans-Expo International Exhibitors letter posted on the internet respecting the

Shopa Show in Atlanta, Georgia of November 12 – 14, 2002 (Exhibit F 1 and 2

attached), Michael D. Kovac and Erica Ramirez derived substantial revenue from

transactions in interstate commerce and international commerce.

The aforesaid facts are true and correct to the best of my knowledge and belief.

IN WITNESS THEREOF, I hereunto set my hand and seal this _28_ day of February, 2003.

ARPIN LOGISTICS, INC.

BY: MICHAEL MONTGOMERY

STATE OF _RI_
COUNTY OF _Kent_

In _West Warwick_ on the _28_ day of February, 2003 before me personally appeared Michael Montgomery to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, by he so executed, to be his free act and deed.

Notary Public: _Kerry M. Shine_
My Commission Expires: _4-10-05_

# EXHIBIT A

11/02/2001 15:38 FAX 4018280320    PAVL CORP AFFAIRS
10/31/2001 14:21 FAX 401 886 7.    ARPIN LOGISTICS SYSTEMS    ☒009
                                                              ☒008/015

OCT-19-2001  11:21
ArP'm  uvv. YDJ-1JLU                                           P.01/01

# Trans-Expo International
# SHIPMENT
# BOOKING

*Attention: Bill / Heidi*

*Fax 401. 828. 3773*

③

| | | Pickup Date: | Delivery date: |
|---|---|---|---|
| **AGENT NO:** | | **10/19/01** | No later than 10/25 |
| **AGENT NAME:** | Trans-Expo Intl | Time Ready: Ready now | Delivery Time: 0800-1500 |
| **SUBMITTED BY:** | Erica Ramirez | Call prior to arrival | only |
| **TEL:** | 858.376.2300 | Time Close: | |
| **FAX:** | 858.376.2308 | | |

| | | | |
|---|---|---|---|
| **SHIPPER** | Festo Regional Logistics Ctr | **CONSIGNEE** | Naugatuck Valley Community College |
| **ADDRESS** | 430 Wireless Blvd | **ADDRESS** | 750 Chase Parkway |
| **ADDRESS** | Must have 10-12 pads/Straps/protect wheels | **ADDRESS** | Need Palletjack and liftgate for delv. |
| **CITY, ST, ZIP** | Hauppauge NY 11788 | **CITY, ST, ZIP** | Waterbury CT 06708 |
| **Customer Name** | Faye Devito-MGR. 631.435.9417 | **Customer Name** | Ray Castellani-Must call in advance of delivery |
| **TELEPHONE** | | **TELEPHONE** | 203.596.8741 |
| **BOOTH** | They have a dock | **BOOTH** | |
| **Tradeshow** | | **Tradeshow** | |
| **Contractor** | | **Contractor** | |

| BILL TO: | BILLING PARTY | Festo Corporation-New Account  New Contact |
|---|---|---|
| ☐ SHIPPER | ADDRESS | 395 Mooreland Road |
| ☐ CONSIGNEE | ADDRESS | |
| ☒ THIRD PARTY | CITY, ST, ZIP | Hauppauge, NY 11788 |
| | CONTACT | Petra Mills |
| | TELEPHONE | 631.4043182 |

| DIMENSIONS: | | | Pieces & Weight: | | REQUIREMENTS: | |
|---|---|---|---|---|---|---|
| L | W | H | Pieces | 2 | x | Liftgate |
| 59 | 33 | 72 | Actual Wt. | 400 | x | Inside Delivery |
| 47 | 32 | 37 | Volume Wt. | | | Other |
| | | | 1 workstation requires pads/1 pallet (protect corners of pallet  please | | | |
| | | | Commodity: | | | |
| | | | Declared Value: | | | |
| | | | Insurance: | | | |

**Special Instructions:** Please take extra caution to protect workstation. We are getting these orders because United damaged so much of their shipments. So please tell driver to have correct equipment and pad/strap well. Call prior to p/u and delivery. Ray @the destination will provide delivery instructions/ Thanks Bill ! Erica

**Quoted Amount:**
Quoted $400.00by Bill Mottla 10/18/01

Please bill client
L/H$512.05
Fuel $25.60
Total $537.65

*Protect Wheels !*