**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION |
| | | NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| | | |
| PAUL ARPIN VAN LINES; | | |
| ARPIN LOGISTICS INC. | | |
| | | |
| V. | | |
| | | |
| THE FESTO CORPORATION; | | |
| MICHAEL D. KOVAC d/b/a | | |
| TRANS-EXPO INTERNATIONAL; | | |
| ERICA RAMIREZ IN HER CAPACITY | | |
| AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 28

Depo. of Wm. Mottla - 7/27/04

1    his dispatch happened or what his normal situation

2    would be.

3        Q.    We understand that the procedure -- and

4    tell me if I'm wrong -- is that information comes in

5    from an agent such as what we see here in Exhibit E;

6    that information is supposed to be put into the

7    computer so it appears on an unaccepted screen?

8        A.    Um-hm.

9        Q.    And then somebody in operations or Mike

10    Montgomery decides to accept the job?

11        A.    Yes.

12        Q.    And then it becomes part of the operations

13    screen?

14        A.    Yes.

15        Q.    And then drivers are assigned, vehicles

16    are assigned?

17        A.    Yes.

18        Q.    The job is done and then it ends up in a

19    billing screen?

20        A.    Yes.

21        Q.    And then after it's paid, it goes into a

22    history screen?

23        A.    Yes.

24        Q.    Is that all fair to say?

1    left Arpin other than saying hi to him?

2         A.    No, not really.

3         Q.    And Heidi, you saw her here maybe last

4    time?

5         A.    No, I didn't even see her.

6         Q.    And have you seen Bill Tweedy at all?

7         A.    No.

8         Q.    What was your relationship with Bill

9    Tweedy like at Arpin?

10        A.    Professional.

11        Q.    I don't have any further questions for

12   right now.

13             MS. O'DONNELL:  Want me to go?

14   **EXAMINATION BY MS. O'DONNELL:**

15        Q.    Mr. Mottla, good afternoon.  My name is

16   Susan O'Donnell.  I represent Michael Kovac doing

17   business as Trans-Expo and Erica Ramirez in this

18   case.

19             MR. STRATTON:  Go ahead, Susan.

20        Q.    Do you know, Mr. Mottla, which employee at

21   Arpin was responsible for inputting the information

22   that was transmitted from Trans-Expo into the

23   computer system at Arpin with respect to the

24   transaction that we have been referencing so far?

22

```
 1          A.    Yes, I mean, in looking at this exhibit.

 2          Q.    And that's which one?

 3          A.    Exhibit F.  My initials are on it.

 4          Q.    So may we assume from that that it was you

 5   as opposed to Heidi or some of these other employees

 6   who actually input the information into the

 7   computer?

 8          A.    Yes.

 9          Q.    Do you recall any specific discussions

10   with either Mr. Kovac or Erica Ramirez regarding

11   this particular transaction?

12          A.    No.

13          Q.    Did you personally have any contact with

14   Erica Ramirez during the shipment window of this

15   particular Festo equipment?

16          A.    I don't recall.

17          Q.    Can you tell me what a registration number

18   is?

19          A.    That would be the pro number on the top of

20   the page on Exhibit F.

21          Q.    Exhibit F?

22          A.    Yes.

23          Q.    Where do you see that?

24          A.    Top of the page.  It's A-L and then
```

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                          :          CIVIL ACTION
                                                            NO. 3:02 CV1302 (DJS)
                                                   :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L          :          DECEMBER 15, 2004

# EXHIBIT 29

Depo. o. Wm. Mottla - 7/27/04                    14

1    information we see in Exhibit E, obviously that's

2    not all going to fit in that little space called

3    shipment information; is that fair to say?

4        A.    Correct.

5        Q.    So you are forced to go into the F7

6    function which is notes, correct?

7        A.    Yes.

8        Q.    So if there's information that doesn't fit

9    in this small area, you go into notes and you put it

10   into notes?

11       A.    Yes.

12       Q.    Is there any reason here why an Arpin

13   customer service representative would leave out the

14   fact that this job required a lift gate?

15       A.    I can't answer that.

16       Q.    Well, rather than thinking about this

17   particular instance, why don't we just talk about

18   generally.  Was it proper standard procedure within

19   customer service that if a lift gate was needed,

20   that would be indicated in the computer system?

21       A.    Yes.

22       Q.    And if it was going to be an inside

23   delivery, would that also be information that should

24   be stored in the computer?

Depo. of Wm. Mottla - 7/27/04

1    A.    Yes.

2    Q.    And the fact that the wheels needed to be

3    protected and that the unit was on wheels, would

4    that be something that needed to get into the

5    computer?

6    A.    Yes.  However, you know, drivers were

7    responsible for strapping, for padding and strapping

8    a unit anyway; so that would be pretty much standard

9    practice.

10    Q.    Right.  In fact Exhibit F says in the

11    shipment information, twelve pads required, straps?

12    A.    Um-hm.

13    Q.    But if a unit is on wheels, was going to

14    be delivered on wheels, is that something that

15    should generally make it into the computer screen?

16    A.    Not necessarily.

17    Q.    And why is that?

18    A.    Because that's the business that we were

19    in basically.  And that's why it would be pads and

20    straps.  Depending on the shipment, it could be

21    palletized; it could be on wheels.  That would not

22    necessarily be something that would be spelled out.

23    Q.    But if somebody in customer service was

24    provided with Exhibit E, for example, and knew that

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                          :        CIVIL ACTION
                                                 NO. 3:02 CV1302 (DJS)
                                       :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L       :        DECEMBER 15, 2004


# EXHIBIT 33

Depo. of Wm. Mottla - 7/27/04

```
 1        A.   Yes.

 2        Q.   Were there any protocols or procedure,

 3   handbooks or training that was done within customer

 4   service to assure that the people who worked in

 5   customer service put all the relevant information

 6   into the unaccepted screen or into the computer?

 7        A.   That was definitely a very crucial

 8   element.  Now the one thing I will say is that on

 9   the input screen, there was some limited space

10   basically to put down pertinent information; and

11   many times we had to go to second page or into notes

12   section to complete all of the information.  So it

13   wouldn't necessarily show on the first page of an

14   order.

15        Q.   Let me show you what's been marked as

16   Exhibit F.  And does this appear to be the same job

17   that we see described in Exhibit E?

18        A.   Yeah, it would appear to be.

19        Q.   And as I understand it, if we look at

20   Exhibit F down in the lower right-hand corner, we

21   see something called shipment information and

22   there's three lines here, very short lines?

23        A.   Yeah.

24        Q.   Is what you are saying that if -- the
```

DEC-11-2003  09:18        NIHAN GRADY & STEELE        4015966845    P.04/23

Pro#: AL __123854__    Div: __SLS__ Status: __PST__ Bill ·  Date: _____
                                                Ctl Branch: __AL__ Div: __OTR__
                                                          CSR: __BM__
Customer: __22861 FESTO CORP.__           Phone: __631-435-0800__
Called In By: _____    Extra P/U ?: __    Extra DLV ?: __
                    Extra P/U ?: __       Destination: _____
Origin: _____                          Name: __NAUGATUCK VALLEY COLLEGE__
Name: __FESTO REGIONAL LOGISTICS__        Addl: __750 CHASE PARKWAY__
Addl: __430 WIRELESS BLVD__               Add2: _____
Add2: _____                            City: __WATERBURY__        St: __CT__
City: __HAUPPAUGE__        St: __NY__      Zip: __06708__    Phone: __203-596-8741__
Zip: __11788__    Phone: __631-435-9417__ Contact: __RAY CASTELLANI__
Contact: __FAYE DEVITO__                  Dates: __10/22/2001__ to __10/24/2001__
Dates: __10/22/2001__ to __10/22/2001__   Times: __8:00__ to __15:00__
Times: __8:00__ to __16:00__
Terms: __3__  P/C/3           Qty: _____  BillQty: _____  CubeFt: _____
                                                                         2
Bill To: __22861__  Split ?: __N__    Wt: __400__ As Wt: __400__ Dims: __100__ Pcs: ____
Name: __FESTO CORP.__          Cmdy: _____
Addl: __395 MOORELAND RD.__         Additional Valuation: _____
Add2: __ATTN: CHERYL SABATELLI__    Shipment Information
City: __HAUPPAUGE__        St: __NY__  CALL PRIOR TO DEL. 12 PADS REQUIRED
Zip: __11788__                       STRAPS
            Ready To Settle ?: __N__  CALL B/4 PICKUP
                                     Prj/Lease#: _____       Svce Type: ____
PO#: _____                        SID#: _____       Dsc%: ____
SID#: _____       Type: __LTL__ SvcWnd: __STD__ Mls: __119__ Trf: ____
ENTER=Proceed                        F05=Documents  F06=POD  F07=Notes
F08=Dimensions    F09=Commodity Dtl              F24=More Keys





**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                          :        CIVIL ACTION
                                                 NO. 3:02 CV1302 (DJS)
                                       :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L      :        DECEMBER 15, 2004

# EXHIBIT 36

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


SHAWN POULIOT
    Plaintiff,

VS.
                         CIVIL ACTION
                         NO.3:02 CV 1302(DJS)

PAUL ARPIN VAN LINES, INC.;
ARPIN LOGISTICS, INC.;
THE FESTO CORPORATION; MICHAEL
D. KOVAC, d/b/a TRANS-EXPO
INTERNATIONAL, ERICA RAMIREZ,
IN HER CAPACITY AS EMPLOYEE
OF TRANS-EXPO INTERNATIONAL,
    Defendants.



          DEPOSITION OF WILLIAM TWEEDY, taken on
behalf of the Defendants (Paul Arpin Van Lines,
Inc. and Arpin Logistics, Inc.) pursuant to Rule
30 of the Federal Rules of Civil Procedure, on
October 5, 2004, at the offices of Adams & Haydon,
1050 Main Street, Suite 22, East Greenwich, Rhode
Island, before Frances D. Young, Notary Public,
convening at 9:45 a.m.




            FRANCES D. YOUNG
           Court Stenographer

# CONDENSED
# TRANSCRIPT

Page 9

1  A.  No.
2  Q.  Have you had any training in the transportation
3      industry?
4  A.  Yes.
5  Q.  What training have you had?
6  A.  As far as chemicals and hazardous materials and
7      stuff like that, I've been trained by Citgo,
8      Mobil, Shell, Texaco, Northland Environmental, and
9      also Fish-Callahan Chemical.
10 Q.  Have you been trained in anything else other than
11     chemicals and hazardous waste?
12 A.  I've been trained in operations and dispatch and
13     stuff of that nature with Paul Arpin Van Lines,
14     Arpin Logistics, and W.J. Donovan.
15 Q.  Are you currently employed?
16 A.  No.
17 Q.  What was the last employment that you had?
18 A.  W.J. Donovan.
19 Q.  In what capacity?
20 A.  I was a planner/dispatcher.
21     MR. OSWALD: Sorry?
22     THE DEPONENT: Planner/dispatcher.
23     MR. OSWALD: Planner?
24     THE DEPONENT: Yes.

Page 10

1  Q.  And what was W.J. Donovan?
2  A.  Trucking company.
3  Q.  And where are they located?
4  A.  Franklin, Massachusetts.
5  Q.  Were they a moving van company or were they
6      strictly commercial?
7  A.  Trade shows and exhibits.
8  Q.  And do you know the dates that you were there
9      employed by them?
10 A.  I was there from March 1 --
11 Q.  Of what year?
12 A.  March 1 of 2003 till July 23, 2004.
13 Q.  And is there any reason that you left there?
14 A.  Yeah. I wasn't happy.
15 Q.  Who did you work for prior to Donovan?
16 A.  Arpin Logistics.
17 Q.  And do you know the dates that you worked for
18     them?
19 A.  I left in December 2001. I want to say I worked
20     there in May 2001, somewhere around there; April,
21     May.
22 Q.  So you were only there six months?
23 A.  Yeah. I came over from the Van Lines.
24 Q.  How long were you with the Van Lines?

Page 11

1  A.  I was with the Van Lines from August 2000 until
2      May 2001.
3  Q.  What kind of work did you do at Logistics?
4  A.  I was a dispatcher.
5  Q.  And what were the duties that you had?
6  A.  Basically take the orders from the operations
7      manager, assign them out to the drivers, and make
8      sure the drivers knew what they had to do.
9  Q.  Now, would you have a meeting with the drivers
10     before the assignment? How would you do that?
11 A.  Just call them on the phone and tell them what
12     they had to do, normally.
13 Q.  Now, would that be true if a shipment was
14     originating at your warehouse?
15 A.  No. The driver would come in, I would hand him a
16     trip sheet, show him what he had to do. But
17     basically the same conversation you would have on
18     the phone you would have in person.
19 Q.  What kind of work did you do for Paul Arpin Van
20     Lines?
21 A.  I was a dispatcher.
22 Q.  In the whole time?
23 A.  Yes.
24 Q.  Were the duties any different at Paul Arpin Van

Page 12

1      Lines?
2  A.  Other than being trade shows and equipment and
3      stuff like that, it would be household. That
4      would be the only difference.
5  Q.  Where did you work prior to May of 2001?
6  A.  Pro Oil.
7  Q.  Shell?
8  A.  Pro Oil.
9  Q.  Pro?
10 A.  Yes, P-r-o.
11 Q.  What did you do for Pro Oil?
12 A.  Delivered gas to service stations.
13 Q.  How long were you with Pro Oil?
14 A.  I'm trying to remember now. I think it was
15     from -- about a year and a half.
16 Q.  Now, you -- with respect to training in the
17     transportation industry, you indicated to me that
18     you worked for Citgo, Mobil, Shell, Texaco,
19     Northland Environmental, and some chemical
20     company. They were all in the petroleum industry?
21 A.  Petroleum and hazardous waste industry, yes.
22 Q.  Prior to coming to Arpin, did you have any
23     experience in the household moving goods --
24 A.  No.

6 (Pages 9 to 12)

Page 165

1    turned in that day. I don   now.

2    Q.   Suppose I represent to you that the first time the

3         handwritten bill of lading showed up was at Shawn

4         Pouliot's deposition, and he produced it.

5    A.   I have no idea. No idea. Unless he made copies

6         for his own records. I don't know.

7    Q.   In any event, you're certain that you gave him the

8         printed bill of lading --

9    A.   Yes.

10   Q.   -- before he went out on this job?

11   A.   Correct.

12   Q.   And that he knew that he was supposed to pick up

13        this unit at Festo on the 22nd?

14   A.   Correct.

15             MR. GRADY:  I don't have any further

16        questions.

17

18        (The deposition was concluded at 1:31 p.m.)

19

20

21

22

23

24

Page 166

C E R T I F I C A T I O N
     I, Frances D. Young, RMR, do hereby
certify:
     That the foregoing proceedings were taken
before me at the time and place therein set forth,
at which time the witness was put under oath by
me;
     That the testimony of the witness and all
objections made at the time of the examination
were recorded stenographically by me and were
thereafter transcribed;
     That the foregoing is a true and correct
transcript of my shorthand notes so taken.
     I further certify that I am not a relative
or employee of any attorney or of any of the
parties, nor financially interested in the action.
     I declare under penalty of perjury under
the laws of the State of Rhode Island and
Providence Plantations that the foregoing is true
and correct.
     IN WITNESS WHEREOF I have hereunto set my
hand this 8th day of October 2004


          Frances D. Young, RMR


My commission expires:
August 26, 2005



     )

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                  :        CIVIL ACTION
                                                        NO. 3:02 CV1302 (DJS)

                                               :

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L     :        DECEMBER 15, 2004


# EXHIBIT 37

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

- - -

SHAWN POULIOT,                    )

     Plaintiff,             )CIVIL ACTION

     vs.                       )Case No. 3:02 CV1302

PAUL ARPIN VAN LINES,    )

INC., and ARPIN             )    COPY

LOGISTICS, INC.,            )

     Defendants.             )

- - -

Deposition of SHAWN L. POULIOT, Plaintiff

herein, called by the Defendants for

cross-examination pursuant to the Ohio Rules of

Civil Procedure, taken before me, the

undersigned, Kelley E. Spears, a Notary Public

in and for the State of Ohio, at the offices of

A. Russell Smith Law Offices, 159 South Main

Street, Akron, Ohio, on Tuesday, the 3rd day of

December, 2002, at 9:52 o'clock a.m.

-------------------------------------------------
BISH & ASSOCIATES, INC.
812 Key Building
Akron, Ohio  44308-1303
(330) 762-0031
(800) 332-0607
FAX (330) 762-0300
E-Mail: bishassociates@neo.rr.com

127

C E R T I F I C A T E

STATE OF OHIO,    )
                    ) SS:
SUMMIT COUNTY.    )

        I, Kelley E. Spears, a Notary Public within and for the State of Ohio, duly commissioned and qualified, do hereby certify that the within named witness, SHAWN L. POULIOT, was by me first duly sworn to testify the truth, the whole truth and nothing but the truth in the cause aforesaid; that the testimony then given by the witness was by me reduced to Stenotype in the presence of said witness, afterwards transcribed upon a computer; and that the foregoing is a true and correct transcription of the testimony so given by the witness as aforesaid.

        I do further certify that this deposition was taken at the time and place in the foregoing caption specified, and was completed without adjournment.

        I do further certify that I am not a relative, employee of or attorney for any of the parties in the above-captioned action; I am not financially interested in the action; and I am not, nor is the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

        IN WITNESS HEREOF, I have hereunto set my hand and affixed my seal of office at Akron, Ohio on this 9th day of December, 2002.

_Kelley E. Spears_____
Kelley E. Spears, a Notary Public in and for the State of Ohio.
My Commission expires June 3, 2004.

65

1     the question.

2               THE WITNESS:  I agree it says

3     that.

4     BY MR. GRADY:

5       Q.    Okay.  Is there any explanation as to

6     why you didn't pick up that load on October

7     22nd?

8       A.    Yeah, because I wasn't verbally

9     dispatched to pick it up till the 23rd in the

10    morning.

11      Q.    So Mike Montgomery never told you about

12    the Festo load when he called you up before at

13    the hotel?

14      A.    No.

15      Q.    And it's your testimony that you were

16    verbally dispatched on October 23rd?

17      A.    Yes, I believe so.  I was verbally

18    dispatched in the morning to go pick it up and

19    to deliver it right away to Naugatuck Valley

20    Community College.

21      Q.    And who verbally dispatched you?

22      A.    His name's Bill Tweedy.

23      Q.    He's a friend of yours, right?

24      A.    No, no, he's a dispatcher.  His nickname

25    is Bullet.