UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 38

Page 89

A. Correct.
Q. He immediately fired you as a result of that incident?
A. No, the following day. He told me not to show up for work the following day. I still showed up, then he terminated me that day.
Q. Would you consider the statement, you know, "Don't come back to work," a termination or notice of a termination?
A. No, it was going to be a suspension at the time, and have I a job to do, and I showed up to do it.
Q. Prior to that incident had you had any disciplinary issues with Arpin?
A. No.
Q. You mentioned that you might have spoken to Shawn about a half dozen times since this accident happened, is that your testimony?
A. Yes.
Q. You have refused to take a number of his calls when you know it's him from caller I.D., is that true?
A. Yes.
Q. Is it because you don't want to get dragged into the litigation or is there another reason why

Page 90

you're not taking his calls?
A. It's a combination of not getting dragged into the litigation and a combination of you talk to him and you're more depressed than he is by the time you get off the phone with him. He doesn't talk about anything positive. It's all negative stuff. I just don't feel like getting dragged into all that.
Q. Okay. We understand that you held a video camera while Mark Pouliot operated the rear lift of the truck which is the subject of this case, correct?
A. Correct.
Q. And that you just happened to be having your lunch in the lot when Mark Pouliot came and asked you to help, correct?
A. Yes.
Q. This wasn't set up in advance or anything like that?
A. No.
Q. And then do I understand that you did not tell Arpin that you were involved in making that video because you were afraid you would have lost your job?
A. I would have been terminated, yes.

Page 91

Q. Why did you believe that, that you would have been terminated?
A. With ongoing litigation and everything else, and if I'm trying to help, you know, somebody else out for any particular reason, then I just know the way Mike Montgomery is, and I would have been terminated.
Q. Now, this video was taken within days of the accident, correct?
A. Yes.
Q. Did you anticipate at that point that there was going to be some kind of lawsuit resulting from this injury?
A. Oh, yeah.
Q. And that's the way Mike Montgomery was, he would have fired you if he knew you helped out?
A. Yes.
Q. Now, this Shipment Booking Order that was transmitted from my client's company to Arpin, my understanding is you have never seen this prior to today?
A. Correct.
Q. And it's your testimony that as a dispatcher you would generally not see any Shipment Booking

Page 92

Orders of this type?
A. Correct. They went to customer service to Bill Mottla or Heidi, and they would enter them into the computer.
Q. Because I think Attorney Grady asked you something about the shipment needing a liftgate, and you'll see on the Shipment Booking Order that under "Consignee" there's information, "Needs palletjack and liftgate for delivery." Do you see that?
A. Correct.
Q. And as well as "Requirements", "Liftgate" is checked off, correct?
A. Yes.
Q. But if you didn't see this information, how would you know to tell Joe Rocha or whoever else was loading the truck that a liftgate was going to be required?
A. It's in the computer system, in the AS/400 computer system. Bill Mottla would receive this from your company, take this information, give it to Heidi. Heidi would enter all this information into the computer. So when I pull up the order number in the computer --
Q. Right.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES; ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION; MICHAEL D. KOVAC d/b/a TRANS-EXPO INTERNATIONAL; ERICA RAMIREZ IN HER CAPACITY AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 39

**Volume I, Pages 1-250**
**Exhibits A-M**

UNITED STATES DISTRICT
DISTRICT OF CONNECTICUT

C.A. NO. 3:02 CV1302 (DJS)

SHAWN POULIOT,
Plaintiff,

CERTIFIED COPY

vs.

PAUL ARPIN VAN LINES, INC.
AND ARPIN LOGISTICS, INC.,
Defendants/Third-Party Plaintiffs,

vs.

THE FESTO CORPORATION,
MICHAEL D. KOVAC D/B/A TRANS-EXPO INTERNATIONAL
AND ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INTERNATIONAL,
Third-Party Defendants

**DEPOSITION OF: JOSEPH E. ROCHA**

LENIHAN, GRADY & STEELE
Six Canal Street
Westerly, Rhode Island 02891

July 26, 2004 9:00 a.m. - 3:27 p.m.

ATKINSON-BAKER, INC. COURT REPORTERS

330 North Brand Boulevard, Suite 250

Glendale, California 91203

800.228.3376

REPORTED BY: Linda A. Menard
Registered Professional Reporter
Certified Shorthand Reporter

JOB NO. 9E05C32

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF BRISTOL, ss.

I, Linda A. Menard, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that the foregoing transcript of the deposition of Joseph E. Rocha, having been duly sworn, on Monday, July 26, 2004, is true and accurate to the best of my knowledge, skill and ability.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 9th day of August, 2004.

Linda A. Menard, RPR
Notary Public
My commission expires:
September 17, 2004

Q. So that piece is at the edge of the lift gate?

A. Yes.

Q. Towards the road?

A. Yes.

Q. If I said that that was a sort of like a cart retention system, would that ring any bells?

A. I have never heard the phrase used before.

Q. Do you know whether -- the straight truck that was involved in Shawn's accident, do you know whether that lift gate -- do you know what type of lift gate that was?

A. I believe it was a Maxon gate.

Q. Do you know what kind of lift gate it is?

A. No. Couldn't tell you.

Q. Do you know whether it was a level lift?

A. Couldn't tell you; never used it.

Q. Do you know whether it had anyplace where Logistics straps could be tied in?

A. I have never seen a gate that had that foundation.

Q. Do you know whether it had any sort of -- you indicated on the Interlift that it had a flip-up to prevent things from rolling off. Do you know

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT : CIVIL ACTION
NO. 3:02 CV1302 (DJS)

:

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L : DECEMBER 15, 2004

# EXHIBIT 40

Q. And the tuck-away lift gates that you had, you think were on maybe around four percent of the trailers?

A. About that.

Q. And those tuck-aways, were those larger than the tuck-away that was on the straight truck involved in this accident?

A. About the same size platform.

Q. Do you know whether those tuck-away lift gates, whether they had any kind of cart retention system?

A. No, they did not.

Q. If you had a job involving an item on wheels, which type of trailer would you send out? What kind of a --

A. Either the rail gate or an Interlift type gate.

Q. You wouldn't send out the tuck-away gates?

A. No.

Q. Why not?

A. Just because of the nature of the way it operates.

Q. In that its angle changes as it moves up and down?

A. Correct.

Q. Do you know how tuck-away lift gates are supposed to be maintained?

A. No.

Q. Have you ever done maintenance on a lift gate?

A. No.

Q. Do you know what the proper angle at the top of the tuck-away gate is at the top of its range meaning level with the back of the truck? Do you know what angle it's supposed to be at?

A. I would say flush with the floor of the truck, so flat.

Q. So it's your understanding that at the top the tuck-away lift gate, it ought to be flat?

A. Yes.

Q. And so if you saw a lift gate that was a tuck-away lift gate that was flat at the top, meaning at the same angulation as the back of the truck, you would say that was appropriate?

A. Correct.

Q. That would be your understanding back in October of 2001?

A. Yes.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHAWN POULIOT : CIVIL ACTION
NO. 3:02 CV1302 (DJS)
:

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L : DECEMBER 15, 2004

# EXHIBIT 41

A. East Greenwich, Rhode Island -- I'm sorry West Warwick, Rhode Island.

Q. How long had you been at that job?

A. Eighteen years.

Q. And what were the various roles you had within Arpin during the time that you were there?

A. I originally started as a customer service rep, warehouse manager, for approximately 13 years, fleet operations manager for the logistics division for approximately 6 to 8 years.

Q. And you left as a fleet operations manager?

A. Correct.

Q. Do you have a CDL license?

A. Yes, I do.

Q. How long have you had that?

A. Approximately 19 years.

Q. Did you ever drive truck for Arpin?

A. Yes.

Q. And during what period of time?

A. The whole time I was there.

Q. What prompted you to leave Arpin?

A. A better job offer.

Q. And were you ever terminated from Arpin at

operations.

Q. And do you mean fleet operations?

A. Dispatch operations.

Q. But didn't I understand that it was you who made the selection of this particular truck and lift gate for this delivery circuit; is that correct?

A. For this particular situation, correct.

Q. Why you for this particular situation as opposed to dispatch?

A. Because I'm responsible for the equipment in our yard. I was also in charge of local operations.

Q. Can you tell me if there's any other information, other than what's provided to Arpin by a booker, that is utilized in creating a shipping plan by Arpin?

A. No.

Q. Just whatever the booker tells you?

A. Yes.

Q. Back in October of 2001, did Arpin Logistics ever rely on any other source to determine what type of equipment should go on a particular job? I mean, did you let someone else tell you what

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION<br>NO. 3:02 CV1302 (DJS) |
| | : | |
| V. | | |
| PAUL ARPIN VAN LINES;<br>ARPIN LOGISTICS INC. | | |
| V. | | |
| THE FESTO CORPORATION;<br>MICHAEL D. KOVAC d/b/a<br>TRANS-EXPO INTERNATIONAL;<br>ERICA RAMIREZ IN HER CAPACITY<br>AS EMPLOYEE OF TRANS-EXPO INT'L | : | DECEMBER 15, 2004 |

# EXHIBIT 42

after the injury.

Q. So would it be fair to say that the first time you saw the document that you have in front of you was after Arpin had retained counsel in connection with Shawn's accident?

A. Correct.

MS. O'DONNELL: Can I have that marked as the next exhibit by the court reporter.

(Marked for identification, Exhibit E, Trans-Expo International Shipment Booking.)

Q. Would you agree with me, Mr. Rocha, that the documents that you have in front of you make reference on at least two occasions to protecting the wheels?

A. Handwritten on the bottom of the form, yes.

Q. And do you see where it says shipper, Festo Regional Logistics Center.

A. Um-hm.

Q. Would you agree with me at that location of the document where it says address, there's an indication on this order form to have ten to twelve pads, slash, straps, slash, protect wheels?

A. Um-hm.

Q. Would you agree with me?
A. Yes.
Q. But at no point was any information put on the bill of lading form that any piece of cargo coming from Festo was on wheels; is that correct?
A. Correct.
Q. And you weren't told by dispatch that any piece of cargo was on wheels, correct?
A. Correct.
Q. Now, you said something about a, I think you called it an information screen?
A. Um-hm.
Q. What is the information screen?
A. When the order is called in or faxed in, there's certain information that's on the screen that -- you know, where we're picking up, where we're delivering to, contact names, phone numbers, who we're billing, that type of stuff.
Q. What is the screen? What are you referring to?
A. In Arpin's computer system, there's a data entry screen that you have to put all this information into when you register an order.
Q. Who has access to that information screen?