**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                     :        CIVIL ACTION
                                                            NO. 3:02 CV1302 (DJS)
                                                  :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L      :        DECEMBER 15, 2004


# EXHIBIT 43

Depo. of Shawn Pouliot - 12/3/02

68

1    invoice manifest lease form out of Rhode

2    Island, is this your handwriting with your name

3    at the top?

4       A.    No, it isn't.

5       Q.    Do you recognize whose handwriting it

6    is?

7       A.    No, I don't.

8       Q.    How about down below?  Do you recognize

9    the handwriting?

10             MR. STRATTON:  Where down below?

11             MR. GRADY:  All down in the three

12   lines.

13             MR. STRATTON:  The question is does

14   he recognize the handwriting anywhere on this

15   page?

16             THE WITNESS:  I recognize no

17   handwriting.

18   BY MR. GRADY:

19      Q.    No handwriting at all?  So what happened

20   when you arrived at Festo?

21      A.    Backed up to a dock, went inside the

22   building.  Found a dock worker, told him what I

23   need to pick up and where it was going.  He got

24   someone else.  I believe I signed some of their

25   paperwork.  I don't know.  I was in such a rush

Pouliot - 12/3/02

69

1    because I had to get that machine to where it

2    had to go by strict orders from Mike

3    Montgomery.

4              I don't know if I signed any of

5    their paperwork, but I put it on the truck -- I

6    rolled it off of the truck on the dock onto my

7    truck or Arpin's truck, the Peterbuilt.  I

8    padded it, I strapped it to the wall and I

9    left.

10   Q.    Did anybody from Festo help you?

11   A.    They helped me get it to the back of the

12   truck.  I put it in the truck and I strapped it

13   and padded it.

14   Q.    So when you say how they helped you get

15   it to the back of the truck, are you telling me

16   that you -- how many people helped you?

17   A.    Just myself and one other.  He just

18   helped me move it four or five feet and that

19   was it.  I did the rest.

20   Q.    When you say on the back of the truck,

21   are you talking up behind the cab?  Is that

22   what you mean by back of the truck?  Where do

23   you mean by back of the truck?

24   A.    He never stepped off his dock.

25   Q.    He never stepped off his dock?

70

1     A.    No.   I'm the one that took it from the

2     dock to the back of the truck.   I rolled it in.

3        Q.    And after you rolled it in you said you

4     padded it and strapped it to the side?

5        A.    Yes, sir.

6        Q.    Which side did you strap it to?

7        A.    The driver's side.

8        Q.    Now, how many units were there?

9        A.    From where, Festo?

10       Q.    Yes.

11       A.    There was two.

12       Q.    Two units?

13       A.    Yes, sir.

14       Q.    What was the other unit?

15       A.    Just a skid with a few boxes on it, I

16    believe.   I don't know.   I just remember it was

17    a skid of some sort.

18       Q.    And how did that get onto the truck?

19       A.    I just pulled it on.   It was very --

20    very small, lightweight.

21       Q.    What size was the skid?

22       A.    Standard -- standard skid.   I wouldn't

23    be able to tell you how big, how small.

24       Q.    Can you describe the machine that was on

25    wheels?

**Shawn Pouliot**
**vs.**
**Paul Arpin Van Lines, Inc., Arpin Logistics,**
**Inc., Festo Corporation, Michael D. Kovac**
**d/b/a Trans-Expo International and**
**Erica Ramirez**

**United States District Court**
**District of Connecticut**
**Case No. 3:02 CV 1302**

**Deposition of Shawn L. Pouliot**
**Tuesday - June 29, 2004**



**Bish & Associates, Inc.**
**Stenotype Reporters**
**159 South Main Street**
**Suite 812**
**Akron, Ohio 44308**
**(330) 762-0031**
**Fax (330) 762-0300**
**(800) 332-0607**

**1428 Market Avenue, North**
**Canton, Ohio 44714**
**(330) 580-9181**
**Fax (330) 580-9183**

**Email: bishassociates@neo.rr.com**
**www.bish-associates.com**

**135**

1    Q.  So you were coming from Secaucus, you
2    think from Secaucus, to go out to Long Island?
3    A.  Yes.
4    Q.  Tell me what you can remember about when
5    you arrived at Festo to pick this up.
6    A.  I opened the door, backed up to their
7    dock.
8    Q.  Do you remember how many bays they had?
9    A.  A few.
10   Q.  Okay.  Don't worry.
11   A.  I went inside, told them who I was, what
12   I was picking up, and they said there's the
13   machine right there.  It was approximately, you
14   know, basically right there by the dock doors.
15   Q.  Okay.
16   A.  I did an inspection, looked at the
17   machine and they gave me a weight slip and
18   their paperwork per se, their manifest,
19   whatever.  They just confirmed the same address
20   and it needed to be there.
21   Q.  Okay.
22   A.  And --
23   Q.  When you say their manifest, are you
24   talking about their bill of lading?
25   A.  Their bill of lading.

**136**

1    Q.  Okay.
2    A.  I believe I signed it.  I pushed it.  I
3    pushed it, pushed in the trailer, strapped it
4    to the wall and I left.
5    Q.  Okay.  Now, you said when you testified
6    earlier too that you had done an inspection of
7    the machine.  I think you said you walked
8    around the machine to look at it.  Did you
9    notice at that time that the machine was on
10   wheels?
11   A.  Yes.
12   Q.  Okay.  Now, there was a second thing
13   that you were transporting, a second item that
14   you were transporting from Festo as well,
15   correct?
16   A.  Yes.
17   Q.  It was a -- what's been described at
18   least in this lawsuit as a Tri-Wall.  You ever
19   hear that expression before?
20   A.  No.
21   Q.  That's a Festo word, I think.  Do you
22   remember it being a box basically that was on a
23   pallet?
24   A.  Yes.
25   Q.  And with stuff inside the box?

283

                                    SHAWN L. POULIOT

-Page-|-Line-|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------
------|------|-----------------------------------

282

        I, SHAWN L. POULIOT, do verify that

I have read this transcript consisting of

two-hundred eighty-one (281) pages and that the

questions and answers herein are true and

correct with corrections as noted on the errata

sheet.


            ------------------------------
                SHAWN L. POULIOT

        Sworn to before me, ------------------,

a Notary Public in and for the State of

-----------, this ------- day of ---------------,

2004.


            ------------------------------
            Notary Public in and for the
            State of ----------------.

My commission expires -----------------------.

284

                    C E R T I F I C A T E

STATE OF OHIO.     )
                   ) SS:
SUMMIT COUNTY .    )

        I, Kelley E. Spears, RPR and Notary
Public within and for the State of Ohio, duly
commissioned and qualified, do hereby certify
that the within named witness, SHAWN L.
POULIOT, was by me first duly sworn to testify
the truth, the whole truth and nothing but the
truth in the cause aforesaid; that the
testimony then given by the witness was by me
reduced to Stenotypy in the presence of said
witness, afterwards transcribed upon a
computer; and that the foregoing is a true and
correct transcription of the testimony so given
by the witness as aforesaid.

        I do further certify that this
deposition was taken at the time and place in
the foregoing caption specified, and was
completed without adjournment.

        I do further certify that I am not a
relative, employee of or attorney for any of
the parties in the above-captioned action; I am
not financially interested in the action; and I
am not, nor is the court reporting firm with
which I am affiliated, under a contract as
defined in Civil Rule 28(D).

        IN WITNESS HEREOF, I have hereunto
set my hand and affixed my seal of office at
Akron, Ohio on this 6th day of July, 2004

            ------------------------------
            Kelley E. Spears, RPR and Notary
            Public in and for the State of Ohio.
            My Commission expires June 4, 2009

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                    :        CIVIL ACTION
                                                          NO. 3:02 CV1302 (DJS)

                                                 :

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L        :        DECEMBER 15, 2004


# EXHIBIT 44

73

1    know.

2         Q.    Did you lock the wheels?

3         A.    I don't recall.  If they had locks,

4    that's a standard protocol to lock them and I

5    would have.  But I don't remember if the

6    machine even had locks.

7              (Defendant's Exhibit F was

8              marked for identification.)

9    BY MR. GRADY:

10        Q.    I'm going to show you that document.

11   I'll ask you if you can identify that document.

12        A.    It's definitely my signature on the

13   document.  Looks familiar.

14        Q.    Other than your signature on the bottom

15   of that document which is marked as Defendant's

16   F, is any other handwriting yours?

17        A.    No, just the signature I believe.

18        Q.    Do you know where that document came

19   from?

20        A.    I can't recollect where it came from.

21        Q.    That's the document I received from your

22   lawyer.  Do you know how you got that document?

23              MR. STRATTON:  Objection, but you

24   can answer if you can.

25              THE WITNESS:  No.

**REDIFORM®**
CARBONLESS SPEEDISET

3-PART

**STRAIGHT BILL OF LADING –SHORT FORM–Original– Not Negotiable**    *Rapin Logistics*

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have been established by the carrier and are on file.

Carrier ~~*(illegible)*~~

Carrier's Pro No. _____
Shipper's Bill of Lading No. _____
Consignee's Reference/PO No. _____
Carrier's Code (SCAC) _____

**FESTO CORPORATION**
**430 WIRELESS BLVD.**
**HAUPPAUGE, NY 11788**

at _____    from _____

the property described below in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination and as to each party at any time interested in all or any said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment.

Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

Consigned to _NAUGATUCK VALLEY COMMUNITY COLLEGE_    (Mail or street address of consignee–For purposes of notification only.)

Destination _WATERBURY_,    State _CT._    Zip Code _06708_    County _____

Delivery Address ★ _750 CHASE PARKWAY_
( ★ To be filled in only when shipper desires and governing tariffs provide for delivery thereat )

Route _____

Delivering Carrier _____    Car or Vehicle Initials _____    No. _____

| No. Packages | HAZ MAT | | *Weight (Sub. to Cor.) | Class or Rate | Check Column | |
|---|---|---|---|---|---|---|
| 1 | | _TROLLEY 72H 33W 59L_ | | | | Subject to Section 7 of Conditions of applicable bill of lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement. |
| 1 | | _TRI-WALL 47L 32W 37H_ | _755_ | | | The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. |
| | | _CONTACT RAY CASTELLANI_ | | | | _____ (Signature of Consignor) |
| | | _PHONE 203-596-8741_ | | | | Freight charges are PREPAID unless marked collect |
| | | _MUST BE DELIVERED OCT. 22 OR OCT. 23_ | | | | CHECK BOX IF COLLECT ☐ |

**PLACARDS PROVIDED FOR THIS LOAD**

This is to certify that the above named materials are properly classified, packaged, marked and labeled and are in proper condition for transportation according to the applicable regulations of the Department of Transportation. IMPORTANT! When shipping hazardous materials this information must be provided:

EMERGENCY CONTACT: _____    24 HOUR PHONE NUMBER: _____

* If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading state whether it is "carrier's or shipper's weight."
NOTE - Where the rate is dependent on value shippers are required to state specifically in writing the agreed or declared value of the property

**The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding**

Liability Limitation for loss or damage on this shipment may be applicable  See 49 U S C § 14706(c)(1)(A) and (B)

_____ per _____

† The fibre boxes used for this shipment conform to the specifications set forth in the box maker's certificate thereon, and all other requirements of Uniform Freight Classification."
† Shipper's imprint in lieu of stamp; not a part of bill of lading approved by the Interstate Commerce Commission.

Received $ _____ to apply in prepayment of the charges on the property described hereon

Agent or Cashier _____

Per _____ (The signature here acknowledges only the amount prepaid.)

Charges Advanced:
$ _____

Shipper, per _____    Agent, per _Rapin_

Permanent post-office address of shipper _____

**REDIFORM® 6S675/6P675  Rev, 5/98**
POLYPAK (50 SETS) 6S675

*carbonless*

Ex F.
Pouliot
depo.

ExH 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                  :        CIVIL ACTION
                                                        NO. 3:02 CV1302 (DJS)
                                               :
V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L    :        DECEMBER 15, 2004

# EXHIBIT 45

1                                                    1

2    UNITED STATES DISTRICT COURT
     DISTRICT OF CONNECTICUT
3    ---------------------------------------------
     SHAWN POULIOT,
4
                                    Plaintiff,
5
               - against -
6
     PAUL ARPIN VAN LINES, INC. and ARPIN
7    LOGISTICS, INC., FESTO CORPORATION,
     MICHAEL D. KOVAC D/B/A TRANS-EXPO
8    INTERNATIONAL, AND ERICA RAMIREZ IN
     HER CAPACITY AS EMPLOYEE OF TRANS-EXPO
9    INTERNATIONAL,

10                                  Defendants.
     ---------------------------------------------
11

12                             114 Old County Road
                               Mineola, New York
13

14                             March 30, 2004
                               10:42 A.M.
15

16

17         DEPOSITION of FESTO CORPORATION, a

18    Defendant herein, by AGATHA DEVITO, taken by the

19    Adverse Parties, pursuant to Article 31 of the

20    Civil Practice Law and Rules of Testimony, and

21    Notice, held at the above-mentioned time and

22    place, before Martha Trikas, a Notary Public of

23    the State of New York.

24

25

     DIAMOND REPORTING (718) 624-7200 16 Court St., B'klyn, NY

```
 1                         DeVito                    7
 2                  In other words, can you identify
 3            this writing right there?
 4                  THE WITNESS:  No.
 5                  That's not mine.
 6       Q        How did you get Exhibit 1?
 7                  MR. OSWALD:  This one here
 8            (indicating).
 9       A        How did I get it?
10       Q        Yes.
11       A        Well, these bills of lading are kept
12   at my desk, and when freight has to be written
13   up, I take one and write all the information on
14   it pertaining to that freight.
15       Q        So you wrote up that document?
16       A        Yes.
17       Q        In the lower right-hand corner,
18   there is a name.
19                  What is that name?
20       A        This looks like when the driver
21   picks up the freight, he usually signs the bill
22   of lading and leaves one copy at Festo for our
23   records.
24       Q        Who signed for Festo?
25                  MR. OSWALD:  Do you know?
```

DIAMOND REPORTING (718) 624-7200 16 Court St., B'klyn, NY

```
 1              C E R T I F I C A T E              66

 2

 3              I, MARTHA TRIKAS, a Notary Public in

 4    and for the State of New York, do hereby certify:

 5              THAT the witness whose examination

 6    is hereinbefore set forth was duly sworn and

 7    that such examination is a true record of the

 8    testimony given by that witness.

 9              I further certify that I am not

10    related to any of the parties to this action by

11    blood or by marriage and that I am in no way

12    interested in the outcome of this matter.

13              IN WITNESS WHEREOF, I have hereunto

14    set my hand this 30th day of March, 2004.

15

16                    _____

17                           MARTHA TRIKAS

18

19

20

21

22

23

24

25
```

DIAMOND REPORTING (718) 624-7200 16 Court St., B'klyn, NY

**STRAIGHT BILL OF LADING—SHORT FORM—Original—Not Negotiable**

~~RoPin Logistics~~

Carrier's Pro No. _____
Shipper's Bill of Lading No. _____
Consignee's Reference/PO No _____
Carrier's Code (SCAC) _____

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing
between the carrier and shipper, if applicable, otherwise to the rates, classifications and rules that have
been established by the carrier and are available to the shipper, on request.

~~FESTO CORPORATION~~
~~430 WIRELESS BLVD.~~
~~HAUPPAUGE, NY 11788~~

Carrier ~~_____~~

t _____    **from** _____

the property described below in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below, which said carrier (the word carrier being understood
throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route
to said destination. It is mutually agreed as to each carrier of all or any of, said property over all or any portion of said route to destination and as to each party at any time interested in all or any of said property, that every service to be
performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the
applicable motor carrier classification or tariff if this is a motor carrier shipment

Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those set forth on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment and the said
terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

Consigned to _NAUGATUCK VALLEY COMMUNITY COLLEGE_

(Mail or street address of consignee—For purposes of notification only)

Destination _WATERBURY_ _____ State _CT._ Zip Code _06708_ County _____

Delivery Address ★ _750 CHASE PARKWAY_

(★ To be filled in only when shipper desires and governing tariffs provide for delivery thereof)

Route _____

Delivering Carrier _____    Car or Vehicle Initials _____    No. _____

| No.<br>Packages | HAZ<br>MAT | | *Weight<br>(Sub. to Cor.) | Class<br>or Rate | Check<br>Column | Subject to Section 7 of Conditions of<br>applicable bill of lading, if this shipment is to<br>be delivered to the consignee without<br>recourse on the consignor, the consignor<br>shall sign the following statement |
|---|---|---|---|---|---|---|
| / | | TROLLEY 72H 33W 59L | | | | |
| / | | TRI-WALL 47L 32W 37H | 755 | | | The carrier shall not make delivery of this<br>shipment without payment of freight and all<br>other lawful charges. |
| / | | CONTACT RAY CASTELLANI | | | | |
| | | PHONE 203-596-8741 | | | | _____ (Signature of Consignor) |
| | | MUST BE DELIVERED OCT. 22 OR OCT. 23 | | | | Freight charges are PREPAID unless marked collect<br>CHECK BOX IF COLLECT ☐ |
| | | **PLACARDS PROVIDED FOR THIS LOAD** | | | | |

This is to certify that the above named materials are properly classified, packaged, marked and labeled and are in proper condition for transportation
according to the applicable regulations of the Department of Transportation. IMPORTANT! When shipping hazardous materials this information must be provided:

Received $ _____ to
apply in prepayment of the charges on the
property described hereon.

EMERGENCY CONTACT: _____    24 HOUR PHONE NUMBER: _____

If the shipment moves between two ports by a carrier by water, the law requires that the bill of lading state
whether it is "carrier's or shipper's weight."
NOTE - Where the rate is dependent on value shippers are required to state specifically in writing the agreed or
declared value of the property

The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

_____ per _____

liability Limitation for loss or damage on this shipment may be applicable  See 49 U.S.C § 14706(c)(1)(A) and (B)

Agent or Cashier

Per _____
(The signature here acknowledges only the
amount prepaid.)

"The fibre boxes used for this shipment conform to the specifications set forth in the box maker's certificate thereon,
and all other requirements of Uniform Freight Classification."
" Shipper's imprint in lieu of stamp; not a part of bill of lading approved by the Interstate Commerce Commission.

Charges Advanced:

$ _____

_____ Shipper, per _____    Agent, per _____

Permanent post-office address of shipper

REDIFORM® 6S675/6P675  Rev, 5/98
POLYPAK (50 SETS) 6S675

*carbonless*

EXH 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SHAWN POULIOT                                    :        CIVIL ACTION
                                                          NO. 3:02 CV1302 (DJS)

                                                 :

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L        :        DECEMBER 15, 2004


# EXHIBIT 46

1  Q.  What can you tell us about that communication?
2  A.  Well, we talked to receiving down there, and
3      security, and because he had to have an
4      appointment to come in, and that they were sitting
5      there waiting for him to show up. It was only a
6      two-hour ride up there, so --
7  Q.  Do you know when that communication was that the
8      college was waiting for him? Would that have been
9      on the 23rd?
10 A.  It was on the 23rd.
11 Q.  Okay. You indicate you never arranged for labor
12     to help Shawn at the destination (college)?
13 A.  Correct.
14 Q.  Would that have occurred if Shawn had asked you to
15     arrange for labor?
16 A.  Shawn would have told me that he needed additional
17     labor or anything of such, and I would have
18     arranged it.
19 Q.  Would there be any other circumstances under which
20     you would arrange for additional labor to help a
21     driver at a destination?
22 A.  Only unless it was required in the order.
23 Q.  And that would be required by who?
24 A.  By the order itself, as far as whoever entered it

Page 102

1      in customer service, or shipping people said that
2      they would need destination labor or --
3  Q.  What about an order would require additional
4      labor?
5  A.  Size, size of a shipment, awkwardness of a
6      shipment, number of pieces. Obviously, you're not
7      going to stick a guy there with 2,000 pieces to
8      deliver by himself.
9  Q.  What about weight?
10 A.  Well, weight would -- 300 pounds or probably more
11     would, you know, require having someone else to
12     help somebody.
13 Q.  300 pounds or more?
14 A.  Yes.
15 Q.  But this was a 400-pound --
16 A.  Two-piece order.
17 Q.  -- job?
18 A.  So a couple hundred pounds apiece.
19 Q.  Was there some kind of a standard or protocol at
20     Arpin for the sending of additional labor?
21 A.  No.
22 Q.  Even regardless of weight?
23 A.  Correct.
24 Q.  How often during your employment as a dispatcher

Page 103

1      for the logi    company would you be -- would
2      you as a dispatcher be arranging for labor to go
3      with an independent, an owner-operator?
4  A.  Many times
5  Q.  And can you give me some examples of some of the
6      circumstances which led you to arrange for
7      additional labor to go with an owner-operator?
8  A.  Mostly at trade shows it would be, you know,
9      separate instances such as this with machinery.
10     We would have a driver stop off at an agency
11     somewhere, pick up, you know, one or two men. I
12     don't have any specifics to give you right
13     now -- I wasn't prepared for that -- but I've had
14     drivers, you know, deliver maybe 5,000 pounds of
15     separate machinery, like, you know, clean-room
16     environments and such with all shelving and walls.
17     I've had like a crew of four or five waiting there
18     to meet a driver.
19 Q.  Okay. So that would be an example?
20 A.  Yes.
21 Q.  All right. And you indicate you were not aware of
22     any equipment being on the truck to assist him due
23     to the truck being pre-loaded by the warehouse
24     crew?

Page 104

1  A.  Correct. Other than pads and straps, there was no
2      additional equipment on there that I was aware of.
3  Q.  Okay. And whatever pads and straps were on the
4      truck should have been in conformity with the
5      information on the shipment?
6  A.  Correct.
7  Q.  Okay. And that would have been the responsibility
8      of whoever was loading the truck?
9  A.  Yes. In this instance it would have been Joe
10     Rocha.
11 Q.  We've talked a lot today about these various bills
12     of lading. I don't have all of them. I don't
13     think I have the Arpin one. Can I borrow yours,
14     Mike? This particular Arpin bill of lading which
15     has been marked as an exhibit, you have it in
16     front of you too, Mr. Tweedy, if you need to look
17     at it. There's a handwritten one and there's a
18     typed one that I think you indicated is generated
19     by the Arpin computer.
20 A.  Yes.
21 Q.  Is there any way for us to determine in any
22     fashion when this bill of lading was printed?
23 A.  No.
24 Q.  So much like the handwritten bill of lading that

29 (Pages 101 to 104)

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAWN POULIOT                              :        CIVIL ACTION
                                                    NO. 3:02 CV1302 (DJS)

                                           :

V.

PAUL ARPIN VAN LINES;
ARPIN LOGISTICS INC.

V.

THE FESTO CORPORATION;
MICHAEL D. KOVAC d/b/a
TRANS-EXPO INTERNATIONAL;
ERICA RAMIREZ IN HER CAPACITY
AS EMPLOYEE OF TRANS-EXPO INT'L        :        DECEMBER 15, 2004


# EXHIBIT 48

5

1    A.    I'm on Neurontin.

2    Q.    Do you know how many milligrams and how

3    often?

4    A.    400 milligrams each pill, but I take 800

5    three times a day.  They're 400 milligram

6    pills.

7    Q.    Okay.

8    A.    And I have to look here.  Hold on.  Then

9    I take Ultracet which is 200 milligrams three

10   times a day.  I take Prilosec one time a day

11   which is 40 milligrams.  I take Zanaflex twice

12   a day which I believe is 50 milligrams.  I take

13   Xanax twice a day which is .5 milligrams.  And

14   for pain, Vicodins which are 500 milligrams,

15   pain as needed.  That should be all.

16   Q.    Okay.  And before I get into all the

17   questions that I have, why don't you tell me in

18   your own words as best you can how the accident

19   happened?

20   A.    Well, I brought the machine out of the

21   truck onto the lift gate, positioned it

22   completely on the lift gate, stepped out and I

23   lowered the -- I lowered the lift gate.  I

24   don't know the exact -- what extent or how high

25   from the ground it was at that point, but I