UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 1302 (DJS) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY AS | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL | : | January 5, 2004 |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS/THIRD PARTY DEFENDANTS MICHAEL D.
KOVAC d/b/a TRANS-EXPO INTERNATIONAL AND ERICA
RAMIRES' MOTION FOR SUMMARY JUDGMENT AS TO THE
COMMON LAW INDEMNITY COUNTS ALLEGED BY PAUL
ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(a), Defendants

Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter collectively "Arpin" or

"Arpin Defendants") submit this Memorandum of Law in opposition to the Motion for

Partial Summary Judgment of Michael D. Kovac d/b/a Trans-Expo International and

Erica Ramires (hereinafter collectively "Trans-Expo").[1]

I.    FACTS

On Saturday, October 20, 2001, Plaintiff was dispatched from Arpin's

headquarters in Rhode Island with directions to pick up a shipment at Festo Corporation

---

[1] Trans-Expo seeks judgment on a number of counts in both the Third Party Complaint and the Cross-Claims of Arpin. Each of those counts, however, arises out of Trans-Expo's common law duty to indemnify Arpin. Trans-Expo does not challenge Arpin's apportionment claims. Accordingly, while not styled as such, its Motion is actually one for partial summary judgment.

**ORAL ARGUMENT REQUESTED**

in Hauppauge, New York and deliver it to Naugatuck Valley Community College in Waterbury, Connecticut. Local Rule 56(a)(2) Statement, at ¶ 35. The shipment consisted of two pieces. One of the items was a Festo Learnline 2000 unit used for teaching engineering students. Local Rule 56(a)(2) Statement, at ¶ 14. During the process of unloading the Learnline 2000 unit, the unit fell on top of the Plaintiff, injuring the Plaintiff. Local Rule 56(a)(2) Statement, at ¶ 50.

At the time Arpin dispatched the Plaintiff to pick-up and deliver the shipment, Arpin believed that the delivery consisted of two items, together totaling 400 pounds. Local Rule 56(a)(2) Statement, at ¶ 56.   Arpin did not know that one of the items, the Festo Learnline 2000 unit, actually weighed 812 pounds. Local Rule 56(a)(2) Statement, at ¶ 56.

Based upon the information provided to Arpin, it assigned one driver, the Plaintiff, for this pick-up and delivery. Local Rule 56(a)(2) Statement, at ¶ 58. Had Arpin been aware that the Learnline 2000 unit alone weighed in excess of 800 pounds, it would have required a second person to accompany the Plaintiff for the pick-up and delivery. Local Rule 56(a)(2) Statement, at ¶ 58. With a second person present, the Plaintiff's accident is not likely to have occurred, even if the same vehicle had been used. Local Rule 56(a)(2) Statement, at ¶ 59.

The information indicating that both parcels together weighed 400 pounds was transmitted to Arpin by Trans-Expo. Local Rule 56(a)(2) Statement, at ¶ 25. Festo was, however, obligated to inform Trans-Expo of the correct weight of the shipment. Local Rule 56(a)(2) Statement, at ¶ 64. Trans-Expo, in turn, was obligated to provide Arpin with the accurate weight of the two parcels. Local Rule 56(a)(2) Statement, at ¶ 65. It is

disputed whether Trans-Expo received correct information regarding the shipments weight from Festo Corporation or whether Festo provided incorrect information to Trans-Expo. Local Rule 56(a)(2) Statement, at ¶ 55. It is incontrovertible that Arpin was provided inaccurate information and that accurate information is imperative to the safe pick-up and delivery of shipments by a carrier such as Arpin. *See* Local Rule 56(a)(2) Statement, at ¶ 56.

It is also undisputed that Festo was solely responsible for the design and manufacture of the Learnline 2000. Local Rule 56(a)(2) Statement, at ¶ 9. Moreover, the Learnline unit was on moving wheels. Local Rule 56(a)(2) Statement, at ¶ 12. Two of the wheels had locks. Local Rule 56(a)(2) Statement, at ¶ 12. There is no record evidence that the fact that the wheels had locks was disclosed to the driver or to Arpin, even though Festo employees helped the Plaintiff roll the unit to his truck. Indeed, the very nature of wheels was never disclosed; the only information disclosed was "protect wheels." Local Rule 56(a)(2) Statement, at ¶¶ 30, 77. Moreover, the wheels and wheel brakes that Festo installed on the Learnline 2000 contained a defect in that one did not lock properly in any event. Local Rule 56(a)(2) Statement, at ¶ 57.

Defendants Trans-Expo and Festo have both moved for Summary Judgment against Arpin on the issue of whether either must indemnify Arpin. As is discussed in the respective Oppositions to those Motions, there exist multiple genuine issues of material fact that preclude the entry of summary judgment.

II.     SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sec. Ins. Co. v. Old Dominion Freight Line, Inc.*, 391 F.3d 77 __ (2d Cir. 2004), *citing* Fed. R. Civ. P. 56(c); *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Summary judgment must be denied for any issue where "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party." *Old Dominion Freight Line, Inc.*, 391 F.3d at __, *quoting Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996), *cert. denied*, 517 U.S. 1190, 134 L. Ed. 2d 780 (1996); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (Summary judgment is proper only when "there can be but one reasonable conclusion as to the verdict.") .

As the party seeking summary judgment, Trans-Expo has "the burden of showing that no genuine factual dispute exists." *Old Dominion Freight Line, Inc.*, 391 F.3d at __; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986) (to succeed on a motion for summary judgment, the moving party must demonstrate an absence of evidence to support the nonmoving party's case). "In assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Old Dominion Freight*

*Line, Inc.*, 391 F.3d at __, *citing Liberty Lobby, Inc.*, 477 U.S. at 255; *Stern v. Trustees of Columbia University*, 131 F.3d 305, 312 (2d Cir. 1997); *see also Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004).

As is discussed herein, when all ambiguities and permissible inferences are drawn in favor of Arpin there exist issues of material fact that preclude summary judgment being entered against Arpin.

III.   ARGUMENT

    A.   **Introduction**

Trans-Expo essentially raises two issues in its Motion – that Arpin cannot meet the standard enunciated by Connecticut courts for common law indemnity and that it cannot meet its burden for negligent misrepresentation. Trans-Expo's Memorandum of Law convolutes what is otherwise a straightforward, four-part test for determining whether a common law duty to indemnify exists. This Memorandum addresses each of Trans-Expo's points in the context of that four-part test.[2]

In particular, Trans-Expo engages in a lengthy analysis of whether the alleged negligence of Arpin was active or passive prior to actually discussing the four-part test for determining whether a common law duty to indemnify exists. The determination of whether a party is actively or passively negligent is not, however, a condition precedent to applying the test for common-law indemnity, but, rather, is the end result of that test.

As the court held in *Skuzinski v. Bouchard Fuels, Inc.*, 240 Conn. 694, 694 A.2d 788, 794 (Conn. 1997):

---

[2] Trans-Expo also provides a history of the law of joint and several liability and its relationship to indemnification. As the Connecticut courts have enunciated a test for establishing a common-law duty to indemnify and the legislature has enacted tort reforms regarding joint and several liability to impose comparative responsibility and apportionment, Arpin does not address this historical context.

5

> The question that we must decide is whether [the] third party complaint is legally sufficient to state a cause of action for common law indemnity. "Ordinarily there is no right of indemnity or contribution between joint tort-feasors. . . . Where, however, one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury. . . . Under the circumstances described, we have distinguished between 'active or primary negligence,' and 'passive or secondary negligence.' . . . Indemnity shifts the impact of liability from passive joint tortfeasors to active ones." (Citations omitted; internal quotation marks omitted.) *Kyrtatas v. Stop & Shop, Inc.*, 205 Conn. 694, 697-98, 535 A.2d 357 (1988); *Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 74, 579 A.2d 26 (1990); *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412-16, 207 A.2d 732 (1965).
>
> For the purposes of the present appeal, the parties agree that, under these precedents, [the] third party complaint must allege facts sufficient to establish at least four separate elements in order to maintain a common law action for indemnity. These elements are: "(1) that the other tortfeasor was negligent; (2) that [that] negligence, rather than [third-party plaintiff0, was the direct, immediate cause of the accident and injuries; (3) that [the other tortfeasor] was in control of the situation to the exclusion of [third-party plaintiff]; and (4) that [third-party plaintiff] did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent." *Kyrtatas v. Stop & Shop, Inc., supra*, 205 Conn. 698; *Burkert v. Petrol Plus of Naugatuck, Inc., supra*, 216 Conn. 74; *Kaplan v. Merberg Wrecking Corp., supra*, 152 Conn. 416.

*Skuzinski,* 240 Conn. at, 697-98, 694 A.2d at 790-91 (footnotes omitted). Thus, passive or active negligence is not a precursor to a finding of a duty to indemnity, but the result of the indemnity analysis. *See, e.g., Weintraub,* 188 Conn. at 573, 452 A.2d at 119-120 (holding that the essential elements for a finding of primary, or active, negligence are the four factors for finding a common law duty to indemnify).

Because the only relevant test for determining Trans-Expo's common-law duty to

indemnify is the well-settled test enunciated by the Connecticut courts, this Opposition will analyze that test and ultimately demonstrate that genuine issues of material fact exist sufficient to preclude the entry of summary judgment.

> **B.  Trans-Expo's Motion for Summary Judgment must be denied because there are genuine issues of material fact regarding its common law duty to indemnify Arpin.**

Trans-Expo seeks summary judgment on the limited issues of whether it has any common law obligation to indemnify Arpin and whether Arpin can meet its burden for negligent misrepresentation.  Trans-Expo's Motion fails as to both the law and facts and must, therefore, be denied.[3]

Under Connecticut law, a third-party plaintiff may be indemnified by a third-party defendant where the third-party plaintiff is found to be secondarily liable to the underlying plaintiff.  *See Weintraub v. Dahn*, 188 Conn. 570, 573, 452 A.2d 117, 119 (1982).  It is important to note that "[t]he question of whether a party is primarily negligent and thus liable to indemnify another tortfeasor is a question of fact." *Williams v. Hoffman/New Yorker, Inc.*, 923 F. Supp. 350, 355 (D. Conn. 1996), *citing Weintraub*, 188 Conn. at 573-574, 452 A.2d at 120.

Trans-Expo is primarily liable and, therefore, has a common law duty to indemnify Arpin, if Arpin establishes that:

(1) [Trans-Expo] was negligent;

---

[3] In its Motion for Summary Judgment, Trans-Expo seeks judgment as a matter of law for Mr. Kovac because he purportedly was not personally involved in the transaction at issue.  Even if it were true that Mr. Kovac was not involved in the transaction at issue, Trans-Expo was a sole proprietorship serving as Mr. Kovac's alter ego.  Mr. Kovac, as a sole proprietor, was the direct employer of Ms. Ramires.  As the direct employer of Ms. Ramires, Mr. Kovac is vicariously liable for her conduct.  *See Mullen v. Horton,* 46 Conn. App. 759, 764, 700 A.2d 1377, 1380 (Conn. App. 1997).  As the employer of Ms. Ramires and as the sole proprietor of Trans-Expo, Mr. Kovac is clearly a proper party to this suit and his motion for judgment as a matter of law should be denied.

>   (2)   [Trans-Expo's] negligence, rather than [Arpin's] negligence, was the direct, immediate cause of the accident and injuries;
>
>   (3)   [Trans-Expo] was in control of the situation to the exclusion of [Arpin]; and
>
>   (4)   [Arpin] did not know of [Trans-Expo's] negligence, had no reason to anticipate it, and could reasonably rely on [Trans-Expo] not to be negligent.

*Fifield v. South Hill Limited Partnership,* 20 F. Supp. 2d 366, 368 (D. Conn. 1998), *citing Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412, 207 A.2d 732, 736 (1965).

### 1. Trans-Expo was negligent by failing to communicate appropriate and necessary information concerning the Learnline 2000 unit.

It is axiomatic that negligence is established by demonstrating a duty, the breach of that duty, causation and damages. Ordinarily, the existence of negligence is a question of fact. *Weintraub,* 188 Conn. at 573, 452 A.2d at 120. Here, there is no question that Arpin has raised sufficient facts to avoid judgment on this first factor of the four part indemnity test.[4]

As the shipping agent, Trans-Expo had an obligation to provide Arpin with accurate and complete information. Local Rule 56(a)(2) Statement, at ¶ 65. This information includes, but is not limited, to the weight of the product to be shipped. Local Rule 56(a)(2) Statement, at ¶ 65. In this instance, Trans-Expo represented to Arpin that the total weight of two separate parcels was 400 pounds. Local Rule 56(a)(2) Statement, at ¶ 56. In fact, the weight of the Learnline 2000 unit alone exceeded 800 pounds. Local

---

[4] Trans-Expo's Memorandum of Law discusses only two of the four factors required for common law indemnification: the alleged negligence of Arpin and the exclusive control of the situation. As Trans-Expo's Memorandum of Law does not address the remaining two issues – its own negligence and whether Arpin knew of or could reasonably anticipate Trans-Expo's negligence – Trans-Expo has, for purposes of its summary judgment motion, waived any argument that it was not negligent or that Arpin knew of or had reason to anticipate Trans-Expo's negligence. *Accord Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).. Despite this waiver, Arpin discusses these issues herein to preserve its rights should this Court find that there was no waiver.

Rule 56(a)(2) Statement, at ¶ 58.  Had Arpin been aware of the actual weight of the shipment it would have provided the Plaintiff with an assistant.  Local Rule 56(a)(2) Statement, at ¶ 58.  If Plaintiff had been provided an assistant, this accident could have been averted.  Local Rule 56(a)(2) Statement, at ¶ 59.  As such, a jury could find that Trans-Expo's failure to provide the correct weight was the proximate cause of the accident.

With all inferences taken in favor of Arpin, as they must be on a motion for summary judgment, it is clear that Trans-Expo's failure to apprise Arpin of the correct weight of the Learnline 2000 unit was a direct, proximate cause of the accident.  As such, a reasonable jury could find that Trans-Expo's conduct was negligent.

> 2. **Trans-Expo's negligence was the direct, immediate cause of the accident and injuries**.

Trans-Expo makes various allegations in its Motion for Summary Judgment regarding the bases for Arpin's negligence.  A question of fact remains on this issue, however, because a reasonable jury could conclude that Trans-Expo's negligence was the direct, immediate cause of the Plaintiff's accident and injuries.

Trans-Expo, as the shipping agent with direct contact to the manufacturer, Festo, had an obligation to provide Arpin with complete and accurate information regarding the Learnline 2000 unit so that it could be safely transported.  Local Rule 56(a)(2) Statement, at ¶ 65.  As discussed above, Arpin was caused to believe that the _entire_ shipment consisting of two separate parcels weighed approximately 400 pounds.  Local Rule 56(a)(2) Statement, at ¶ 56.  In fact, the Learnline 2000 unit alone weighed over 800 pounds.  Local Rule 56(a)(2) Statement, at ¶ 58.  The evidence demonstrates that had Arpin been apprised of the correct weight it would have provided an assistant to the

9

Plaintiff, which would have avoided the accident. Local Rule 56(a)(2) Statement, at ¶¶ 58, 59. As such, a jury could reasonably find that the misrepresentation of the weight was the direct, immediate cause of the accident.

Again, there exist questions of fact with regard to Trans-Expo's liability for Plaintiff's injuries. Based upon the misrepresentations of facts and the failure to disclose facts, a reasonable jury could conclude that Festo was negligent and that its negligence was the direct and immediate cause of Plaintiff's injuries.

### 3. Trans-Expo was in control of the situation to the exclusion of Arpin.

The question of exclusive control is ordinarily a question of fact. *Williams*, 923 F. Supp. at 355. The Connecticut Supreme Court has defined "exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident." *Skuzinski,* 240 Conn. at 706 A.2d at 794.[5] Moreover, Connecticut Courts are "unwilling to conclude, as a matter of law, that the parting with possession of the products by [the third-party defendants] prevents them from being in exclusive control of the situation." *Williams*, 923 F.Supp. at 355, *quoting Torrington Country Club v. Ply Gem*, No. CV92-0061340, Conn. L. Rptr. 53, 55 (Conn. Super. Ct. Aug. 8, 1994). "In product liability actions, the Connecticut courts have defined 'exclusive control' to include not only control over the premises where the injury occurred, but also control over the condition or defect causing the injury." *Williams,* 923 F. Supp. At 355

---

[5] Although the issue of exclusive control was determined as a matter of law in *Skuzinski v. Bouchard Fuels, Inc.,* 240 Conn. 694, 694 A.2d 788 (1997), the *Skuzinski* court specifically held that the circumstances of that case were "one of the rare examples in which the issue may properly be decided as a question of law." *Skuzinski*, 240 Conn. at 705, 694 A.2d at 794. As noted above, this Court determined in its Order on Festo's Motion to Dismiss that "[t]his case does not fit comfortably in the rare example tent raised by the *Skuzinski* court." *Pouliot*, 303 F. Supp. 2d at 140 (D. Conn., 2004). Nothing in Trans-Expo's purportedly undisputed facts or uncovered through discovery places this case in "that rare example tent raised by the *Skuzinski* court."

10

(emphasis added).[6]

In its Memorandum of Law, Trans-Expo acknowledges that when this Court ruled on Festo's Motion to Dismiss, it held that "even if this court treats the facts as undisputed, Festo cannot satisfy the test for determining exclusive control as a matter of law as established in *Skuzinski*." Memorandum of Law at fn. 9. Trans-Expo then states that it does not read that finding by the Court as serving as a bar to a summary judgment motion. *Id.* While the statement by this Court may not serve as a bar to summary judgment, nothing has changed as to the issue at hand. Based upon the existing record, the issue of control remains a contested issue of fact.[7]

Trans-Expo claims that Arpin is primarily negligent because it allegedly provided an inadequate vehicle with an allegedly defective lift-gate. A jury, on the other hand, could reasonably conclude that the dangerous condition that caused the accident was the fact that a shipment weighing in excess of 800 pounds is properly handled by two, rather than one delivery person. Obviously, the dangerous condition that caused the accident is very different under these two scenarios. The fact that the dangerous condition could be two vastly different things does not, however, entitle Trans-Expo to summary judgment.

---

[6] Although this matter is not a products liability action *per se*, the facts underlying the potential liability of Trans-Expo make this analogous to a products liability case. Much like a products liability case, if a jury finds that Trans-Expo misrepresented facts concerning the Learnline 2000 unit and that the accurate information would have caused Arpin to act in a way that would have prevented the accident, there is no reason to absolve Trans-Expo of liability simply because Trans-Expo did not have possession of the unit. Assuming, *arguendo,* that Festo provided correct information to Trans-Expo, Trans-Expo had exclusive control over of the correct information that could have saved Plaintiff from suffering his injuries.

[7] At page 8 of its Memorandum of Law, Trans-Expo claims that Arpin's claim for indemnification must fail because Arpin's factual allegations against each party are the same, it demonstrates that no one party had "exclusive control." Trans-Expo takes nothing from this argument. It is well-known and well-settled that pleadings may be made in the alternative and that only a general notice of what is claimed is required. Where causation is at issue, a plaintiff or third-party plaintiff will obviously argue multiple theories, which may, or may not be mutually exclusive. Exclusive control is not undone because multiple parties are alleged to have had exclusive control. It is for the jury to decide the mechanics of the accident and then determine who had exclusive control over the dangerous condition that gave rise to the accident and injuries.

More specifically, if the court assumes for purposes of this summary judgment motion that the failure to disclose the proper weight was the dangerous condition, and that Arpin, if it had been told of the true weight would have sent two delivery persons, Arpin does not have exclusive control over the mechanism that caused the injury. Rather, Trans-Expo or Festo had exclusive control over the information regarding the true weight of the Learnline 2000 unit.

As there is no dispute that Arpin did not have accurate information regarding the weight, the only question of fact in this regard is whether Festo misrepresented the weight to Trans-Expo, or Trans-Expo failed to provide Arpin with the information provided to Trans-Expo by Festo. Under either scenario, Arpin did not have exclusive control over the dangerous condition that gave rise to the accident.

### 4. Arpin did not know of Trans-Expo's negligence, had no reason to anticipate it, and could reasonably rely on Trans-Expo not to be negligent.

As with the other factors for determining primary and secondary liability, the issue of "[a] party's actual knowledge and the reasonableness of his reliance on others are also to be determined by the trier of fact." *Weintraub*, 188 Conn. at 573-574, 452 A.2d at 120. Here, a jury could find that Arpin did not know of Trans-Expo's negligence, had no reason to anticipate it and could reasonably rely on Trans-Expo to meet its duty of care.

It is undisputed that Arpin had no knowledge of the actual weight of the unit at the time it instructed Plaintiff to pick up the Learnline 2000 and that Trans-Expo misrepresented the weight of the unit at the time it engaged Arpin to ship the Learnline unit. Arpin had no reason to believe that Trans-Expo misrepresented the weight. Local Rule 56(a)(2) Statement, at ¶ 69. Also, Trans-Expo has provided no evidence that

Arpin's reliance on a shipping agent's representation as to the weight of its product was unreasonable.

In sum, there remain genuine issues of material fact for each factor enunciated by the Connecticut courts for Trans-Expo's common law obligation to indemnify Arpin. When, as is required on a summary judgment motion, the facts are viewed in the light most favorable to Arpin with all inferences taken in favor of Arpin, a reasonable jury could find that Trans-Expo was negligent, that Trans-Expo's negligence was the immediate, direct cause of Plaintiff's injuries, that Trans-Expo had exclusive control over the dangerous condition that caused the accident and that Arpin had no reason to know of or anticipate Trans-Expo's negligence.  As such, there is at very least a material factual dispute as to whether Trans-Expo was primarily, or actively negligent.  Summary judgment should be denied.

> **C.    Trans-Expo's Motion for Summary Judgment on the issue of negligent and fraudulent misrepresentation must be denied where there are genuine issues of material fact.**

Connecticut courts have

> long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth....The governing principles are set forth in similar terms in §§ 552 of the RESTATEMENT (SECOND) OF TORTS (1977): "One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 575-576 (Conn., 1995)(citations omitted).  As noted in *Updike, Kelly & Spellacy, P.C. v. Beckett*, 269

Conn. 613, damages for negligent misrepresentation, as defined in Section 552B (1) of the RESTATEMENT (SECOND) OF TORTS include:

    (a)    the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

    (b)    pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

*Updike, Kelly & Spellacy, P.C. v. Beckett*, 269 Conn. 613, 645 (Conn., 2004).

It is Memorandum of Law, Trans-Expo seeks summary judgment on this issue based solely on whether Arpin suffered pecuniary loss. As such, the Motion must be denied if there is any question of fact regarding Arpin's pecuniary loss.

To the extent that Arpin is found responsible for Plaintiff's injuries and damages, pecuniary or otherwise, Arpin suffers pecuniary losses that are directly related to Trans-Expo's negligent misrepresentation as to the weight of the Learnline 2000 unit. Simply put, any damages Arpin pays as a result of Trans-Expo's misrepresentation are suffered by Arpin "as a consequence of [Arpin's] reliance upon [Trans-Expo's] misrepresentation." Consequently, Arpin has pled and can prove its claim of negligent misrepresentation and summary judgment is inappropriate.[8]

Similarly, there are questions of fact that preclude the entry of judgment on Arpin's claims against Trans-Expo for fraudulent misrepresentation. Here, Trans-Expo rests its arguments solely on whether Ms. Ramires knew that the statement regarding the weight of the shipment was untrue. Memorandum of Law at p. 32-33.[9] Thus, if there is a

---

[8] In addition, Defendant Trans-Expo's Rule 56(a)(1) statement does not contain a single reference to whether Arpin has suffered a pecuniary loss. The omission of this fact from the Rule 56(a)(1) statement is fatal to its Motion for Summary Judgment on this issue, as Trans-Expo has failed to demonstrate that this fact is undisputed. *See Local Rule 56(a)(1)(3).*

[9] It is well-settled in Connecticut that the essential elements for common law fraud are: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party

question of fact regarding Ms. Ramires' knowledge, this aspect of the Motion must also be denied.

There is undeniably a question of fact as to Ms. Ramires' knowledge of the true weight of the Learnline 2000 unit. Notably, Trans-Expo concedes this. In its Rule 56(a)(1) Statement, Trans-Expo acknowledges that "[t]he Shipment Booking form indicates a weight of 400 pounds for two pieces of cargo…. However, there is a <u>material factual dispute</u> regarding the source of that information." Trans-Expo Rule 56(a)(1) Statement, at ¶ 32 (emphasis added). In fact, a representative of Festo testified that she told Ms. Ramires the correct weight of the shipment. Rule 56(a)(2) Statement, at ¶ 55. These statements leaves open the possibility that Ms. Ramires knew the correct weight of the Learnline 2000, but provided false information to Arpin.

Moreover, conspicuous by its absence in Trans-Expo's Rule 56(a)(1) Statement is anything that indicates that Ms. Ramires did <u>not</u> know that the weight on the Shipment Booking Order was untrue. Trans-Expo has not cited to any deposition testimony or affidavit indicating Ms. Ramires' understanding as to the real weight of the Learnline 2000. As Trans-Expo has not provided the Court with any record citation regarding Ms. Ramires' knowledge of the weight of the shipment, the Motion should be denied. *See Local Rule 56(a)(1)(3).*

---

making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Leonard v. Comm'r of Revenue Servs.*, 264 Conn. 286, 296 (Conn. 2003)(citations omitted); *see also Grigorenko v. Pauls,* 297 F. Supp. 2d 446, 449 (D. Conn. 2003). As noted, however, Trans-Expo challenges only whether Ms. Ramires knew that her statement regarding the weight of the shipment was false.

15

IV.     CONCLUSION

For the reasons set forth herein and because there exist genuine issues of material fact in the Local Rule 56(a)(1) Statement, Trans-Expo's Motion for Summary Judgment must be denied.

Dated this 5th day of January, 2005.

>	Defendants Paul Arpin Van Lines, Inc. and
>	Arpin Logistics, Inc.,
>	By their attorneys:
>
>	         /s/ Thomas J. Grady
>	Thomas J. Grady, Esq. CT 17139
>	LENIHAN, GRADY & STEELE
>	6 Canal Street, P.O. Box 541
>	Westerly, R.I.  02891
>	(401) 596-0183
>	(401) 596-6845 (Fax)
>	tjg@aol.com
>
>
>	         /s/ Karen Frink Wolf
>	Harold J. Friedman, Esq. CT 23785
>	Karen Frink Wolf, Esq. CT 26494
>	FRIEDMAN GAYTHWAITE WOLF & LEAVITT
>	Six City Center, P.O. Box 4726
>	Portland, ME  04112-4726
>	(207) 761-0900
>	(207 761-0186 (Fax)
>	hfriedman@fgwl-law.com
>	kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

       This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 5${}^{th}$ day of January, 2005 to the following:

Michael A. Stratton, Esq.  
Stratton Faxon  
59 Elm Street  
New Haven, CT  06510

Roland F. Moots, Jr., Esq.  
Moots, Pellegrini, Spillane & Mannion  
46 Main Street, PO BOX 1319  
New Milford, CT 06776-1319

Thomas J. Grady, Esq.  
Lenihan Grady & Steele  
6 Canal Street  
PO Box 541  
Westerly, RI 02891-0541

John Tarantino, Esq.  
James R. Oswald, Esq.  
Adler, Pollock & Sheehan  
One Citizen's Plaza, 8${}^{th}$ Floor  
Providence, RI  02903-2443

Susan O'Donnell, Esq.  
Halloran & Sage  
One Goodwin Sq., 225 Asylum St.  
Hartford, CT  06103

                                                          /s/ Karen Frink Wolf  
                                           Karen Frink Wolf, Esq. CT 26494