UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT : | |
| : | |
| Plaintiff : | |
| : | CIVIL ACTION NO. |
| v. : | 3:02 CV 1302 (DJS) |
| : | |
| PAUL ARPIN VAN LINES, INC.; : | |
| ARPIN LOGISTICS, INC.; THE  FESTO : | |
| CORPORATION; MICHAEL D. KOVAC : | |
| d/b/a TRANS-EXPO INTERNATIONAL, : | |
| ERICA RAMIREZ, IN HER CAPACITY AS : | |
| EMPLOYEE OF TRANS-EXPO : | |
| INTERNATIONAL : | January 5, 2005 |
| : | |
| Defendants : | |

## *LOCAL RULE 56(a)(2) STATEMENT IN SUPPORT OF PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'S OPPOSITION TO TRANS-EXPO'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

Pursuant to Rule 56(a)2 of the Local Rules of the United States District Court for the District of Connecticut, Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter "Arpin") submit the following statement in response to Festo Corporation's Local Rule 56(a)1 Statement in support of Trans-Expo's Motion For Summary Judgment. In accordance with Local Rule 56(a)2, each paragraph of Arpin's statement corresponds to the numbered paragraphs of Festo's Statement of Facts.  Also in accordance with Local Rule 56(a)2, Arpin submits its Statement of Disputed Issues of Material Fact.

## STATEMENT IN RESPONSE TO TRANS-EXPO'S LOCAL RULE 56(A)1 STATEMENT

1. Admitted.

2. Denied.  Defendant Arpin denies any and all facts contained within this paragraph

on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions. There is no evidence in the citation afforded by movant that Michael Kovac had a personal residential address and a business address in San Diego, California prior to October 23, 2001. The record speaks for itself.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Denied. The Festo Short Form Bill of Lading doesn't specifically identify the Festo Learnline Workstation. *See* "Festo Short Form Bill of Lading" (*Attached hereto at Tab 1 is copy of the "Festo Short Form Bill of Lading"*).

12. Admitted in part and Denied in part. The photos taken by the Naugatuck Valley Community College Safety Department (Officer Blalock) at the scene immediately after the accident show that the brakes were on the same long side of the Festo Learnline workstation involved in the accident and not diagonally opposed. Depo. of James Blalock, Page 45, Line 20-Page 46, Line 3 (*Attached hereto at Tab 2 is a copy of all referenced excerpts of the deposition transcript of James Blalock taken on March 3, 2003*).

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted, with qualification. Erica Ramirez denies that Petra Milks provided any information to her about the weight. She (Ramires) claims that Festo was the source of the information appearing on the Shipment Booking Order. *See* Depo. of Erica Ramires,

Page 48, Lines 19-21; Page 53, Line 24-Page 54, Line 12; Page 77, Line 7-Page 81, Line 2 *(Attached hereto at Tab 3 is a copy of all referenced excerpts of the deposition transcript of Erica Ramirez taken on October 24, 2003)*.

19.  Admitted.

20.  Admitted in part and Denied in part.  Although admitted as true from Petra Milks, Erica Ramires would state that all the information on the Shipment Booking Order came from Petra Milks not just the majority.  Depo. of Erica Ramires, Page 48, Lines 19-21; Page 53, Line 24-Page 54, Line 12; Page 77, Line 7-Page 81, Line 2; Page 10, Lines 8-18.  *See Tab* 3.

21.  Admitted in part, and Denied in part.  Denied as to the meaning of "in order to pick up and deliver a shipment."

22.  Admitted.

23.  Admitted.

24.  Admitted in part and Denied in part.  The record demonstrates that William Mottla quoted a price of $400.00, not $537.65. Depo. of William Mottla, Pages 8-9 *(Attached hereto at Tab 4 is a copy of all referenced excerpts of the deposition transcript of William Mottla taken on July 27, 2004)*; *See also* "Shipment Booking Form" *(Attached hereto at Tab 5 is a copy of "Shipment Booking Form")*.

25.  Admitted.

26.  Admitted.

27.  Denied.  Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions. There is no evidence in the citation afforded by movant to support the inference that, "……followed the oral conversation between Erica Ramires and William Mottla…..".  *See* Shipment Booking Form. *See Tab* 5.

28.  Admitted.

29.  Admitted in part, Denied in part.  Defendant denies any and all facts contained within the paragraph indicating that William Mottla "failed" to do anything.  William Mottla testified about the general practices within customer service and not about the facts or circumstances surrounding the accident which is the subject of this lawsuit. Depo. of William Mottla, Pages 14-15. *See Tab* 4.

30.  Admitted in part, Denied in part.  Defendant denies any and all facts contained

3

within the paragraph indicating that an Arpin customer service representative "failed" to do anything. The record speaks for itself.

31.     Admitted.

32.     Admitted, with qualification. The shipment booking form indicates "actual weight" of 400 lbs., not just "weight". There is a material factual dispute between Petra Milks of Festo and Erica Ramirez of Trans-Expo International regarding the source of the "actual weight of 400 lbs." each alleging the other provided the materially false weight to Arpin, which is understated by 625 lbs. Depo. of Erica Ramirez, Page 48, Lines 19-21; Page 53, Line 24-Page 54, Line 12; Page 77, Line 7-Page 81, Line 2; Page 10, Lines 8-18. *See Tab* 3; Festo Corporation's Answers to Arpin's Interrogatories, ¶ 48 *(Attached hereto at Tab 9 are Defendant Festo Corporation's Answers to Defendant Arpin's Interrogatories dated May 23, 2003).*

33.     Admitted.

34.     Admitted.

35.     Admitted.

36.     Admitted.

37.     Admitted.

38.     Admitted, with qualification. Denied in that Joseph Rocha knew something about the load, but did not know all the facts. William Tweedy states that he gave "warehouse" a manifest and bill of lading. These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24-Page 27, Line 19 (*Attached hereto at Tab 10 is a copy of all referenced excerpts of the deposition transcript of William Tweedy taken on October 5, 2004*). Arpin was not aware at the time that Shawn Pouliot was dispatched that the liftgate may have been insufficient to hold the weight of the Learnline 2000 unit. Depo. of Joseph Rocha, Page 28, Lines 2-12 (*Attached hereto at Tab 11 is a copy of all referenced excerpts of the deposition transcript of Joseph Rocha taken on July 26, 2004*). Based on the information provided to Arpin prior to delivery regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually. Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab 10*; Depo. of Joseph Rocha, Page 63, Lines 10-24; Page 64, Lines 1-5*; See Tab 11.*

39.     Admitted, with qualification. Nowhere within the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate. Depo. of Joseph Rocha, Page 71; *See Tab 11.*

40.     Admitted, with qualification. The Maxon 72-25A Tuk-A-Way liftgate is designed

4

to tilt to the rear. Depo. of V. Paul Herbert, Page 39, Lines 23-25; Page 40, Lines 1-5 (*Attached hereto at Tab 12 is a copy of all referenced excerpts of the deposition transcript of V. Paul Herbert taken on August 19, 2004);* Depo. of Arnold Kowal, Page 32, Lines 10-19 (*Attached hereto at Tab 13 is a copy of all referenced excerpts of the deposition transcript of Arnold Kowal taken on April 12, 2004);* Depo. of Terry Morgan, Page 41, Lines 20-24 *(Attached hereto at Tab 14 is a copy of all referenced excerpts of the deposition transcript of Terry Morgan taken on August 17, 2004).* The truck liftgate used by Shawn Pouliot on the truck involved in the accident was in working order. Depo. of Irving Ojalvo, Page 100, Lines 15-23; *Attached hereto at Tab 15 is a copy of all referenced excerpts of the deposition transcript of Irving Ojalvo taken on July 29, 2004.*

41. Admitted.

42. Admitted, with qualification. Denied in that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate. Rocha Dep., Page 71, *See Tab 11.* Denied in that Joseph Rocha knew something about the load, but did not know all the facts. Depo. of Joseph Rocha, Page 69, Lines 3-6; *See Tab 11.* The information that Mr. Rocha possessed included that a liftgate would be needed to make the delivery, and that the delivery consisted of two items, together equaling four hundred pounds. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 11. William Tweedy states that he gave "warehouse" a manifest and bill of lading. These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24-Page 27, Line 19. *See Tab* 10. Joseph Rocha identifies that he had these documents and read them and placed them in the front seat of the truck. Depo. of Joseph Rocha, Page 30, Line 11-Page 31 Line 11; Page 33, Line 18-Page 34, Line 4. *See Tab* 11. Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually. Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab* 10; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab* 11.

43. Admitted.

44. Admitted.

45. Denied. Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions. There is no evidence in the citation afforded by movant that demonstrates that the copy of the Festo Corporation Bill of Lading reflects the weight of the cargo as 755. The record speaks for itself.

46. Admitted.

47. Denied. Defendant Arpin denies any and all facts contained within this paragraph

5

on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions. There is no evidence in the citation afforded by movant demonstrating what the Plaintiff did following loading the Festo shipment onto the Arpin truck. The record speaks for itself.

48.   Admitted, with qualification. Shawn Pouliot states that he "positioned the workstation "completely" on the liftgate. Depo. of Shawn Pouliot, Page 5, Line 22 (*Attached hereto at Tab 6 is a copy of all referenced excerpts of the deposition transcript of Shawn Pouliot taken on December 3, 2002*).

49.   Admitted in part and Denied in part. Defendant Arpin objects to the use of the phrase "Pouliot noticed the shift in the Learnline unit that he [sic] was not to his liking….." There is no record evidence that Plaintiff knew what happened to the machine as he lowered it, after he had placed it completely on the lift. He claims, "I don't know whether it was the wheels or not". Depo. of Shawn Pouliot, Pages 93-94; *See Tab* 6 (*December Depo.*). Depo. of Shawn Pouliot deposition, Pages 254-255 (*Attached hereto at Tab 7 is a copy of all referenced excerpts of the deposition transcript of Shawn Pouliot taken on June 29, 2004*).

50.   Admitted.

51.   Denied. There is no record evidence that he did not personally have any "involvement in the shipment transaction which is the subject of this lawsuit." This inference is far broader than the statements made on Pages 45, 75-76 of Michael Kovac's deposition. In fact Statement of Fact #5 indicates that Erica Ramirez was his employee. These Statement of Facts show that she was very much involved in the shipment transaction certainly to the extent that Michael Kovac was her employer.

52.   Denied. Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions. Depo. of Michael Kovak, Page 65 (*Attached hereto at Tab 8 is a copy of all referenced excerpts of the deposition transcript of Michael D. Kovac taken on October 23, 2003*).

53.   Denied. Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions; and, (c) calls for a conclusion of law.

54.   Admitted.

## **DISPUTED ISSUES OF MATERIAL FACT**

55.     There is a disputed material fact about whether the accurate weight of the Learnline 2000 unit was communicated by Petra Milks of Festo Corporation to Erica Rameriz of Michael D. Kovac, d/b/a Trans-Expo International.  Petra Milks states that she communicated the fact that it weighed between 700 and 900 lbs. and that it was on wheels to Erica Ramirez. Depo. of Petra Milks, Page 17, Lines 8-25; Page 28, Line 22-Page 29, Line13; *See Tab* 16.  Erica Ramirez states that the only information which she received from Festo Corporation was that which appears on the Shipment Booking Order.  Depo. of Erica Ramirez, Page 4, Lines 19-21; Page 53, Line 24-Page 54, Line 12; Page 77, Line 7-Page 81, Line 2; Page 10, Lines 8-18; *See Tab*  3.  On the Shipment Booking Order appears that the actual weight of all cargo (2 pieces) is 400 lbs. Shipment Booking Order.  Although wheels are mentioned, it does not state which of the two pieces of cargo is on wheels. Shipment Booking Order. *See Tab 5.*

56.     At all times between October 18 and 23 the Shipment Booking Order reference to "actual weight" of 400 was the only source of information which Arpin Logistics, Inc. had respecting the weight of the Learnline 2000 trolley. See Depo. of V. Paul Herbert, Page 61, Line 14-Page 62, Line 22. *See Tab* 12.

57.     Also, one of the wheels on the Learnline 2000 trolley was defective and appeared to be an inherent manufacturing defect.  Depo. of Irving Ojalvo, Page 64, Lines 7-18; Page 65, Lines 10-22; Page 66, Lines 17-24. *See Tab 15.*

58.     If Arpin had known that the true weight of the Festo Learnline 2000 workstation was actually 812 lbs., it would have assigned an additional helper to assist Plaintiff in removing the Learnline 2000 unit from the straight truck. Depo. of V. Paul Herbert, Page 95, Line 23-Page 96, Line 13. *See Tab 12*; Depo. of William Tweedy, Page 34, Lines 5-18. *See Tab 10.*

59.     If an additional helper had been assigned by Arpin to assist in the unloading of the Festo Learnline 2000 workstation, this accident would not have occurred.  V. Paul Herbert, Page 65*,* Lines 8-20; Page 71, Line 1 to Page 72, Line 5; *See Tab 12.*

60.     The most critical piece of information for a carrier to know is the weight of the cargo.  Depo. of V. Paul Herbert, Page 43, Lines 5-11; Page 97, Line 16-Page 98, Line 2*; See Tab 12.*

61.     Whether a loading destination has a dock is only critical information if the carrier has knowledge of the weight of a piece of cargo.  Depo. of V. Paul Herbert, Page 43, Lines 12-22; *See Tab 12.*

62.     A Maxon 72-25A Tuk-A-Way lift gate was appropriate for assignment to Shawn Pouliot in accomplishing the delivery of the Festo Learnline 2000.  Depo. of V. Paul Herbert, Page 46, Lines 15-21; *See Tab 12.*

7

63. The Maxon 72-25A Tuk-A-Way lift gate was adequate to support the Festo Learnline 2000 unit.  Depo. of V. Paul Herbert, Page 48, Lines 4-17, *See Tab 12*.

64. Festo had an obligation to communicate an accurate weight to Trans-Expo.  Depo. of V. Paul Herbert, Page 64, Line 20-Page 65, Line 3; *See Tab 12*.

65. Trans-Expo had a duty to pass on information such as weight to Arpin.  Depo. of V. Paul Herbert, Page 61, Line 20-Page 62, Line 6; *See Tab 12*.

66. Either Michael Montgomery or William Tweedy would have decided to send two men on the Festo pickup, if they had known that the Learnline 2000 unit weighed over 700 lbs.  Depo. of Joseph Rocha, Page 123, Lines 2-13*; See Tab 11*

67. If a piece of Festo cargo was either 33 inches wide or 32 inches wide, this would not have posed a problem with the Maxon 72-25A lift gate which Joe Rocha selected for use on the Festo shipment.  Depo. of Joseph Rocha, Page 209, Lines 15-22; *See Tab 11*

68. A "workstation" does not have a fixed or exact definition and can mean "anything in any given business."  Depo. of Joseph Rocha, Page 217, Line 19 to Page 218, Line 2; *See Tab 11*.

69. Mr. Rocha had never observed an occasion where the weight would be listed as less than the actual weight in order to justify a lower price.  Depo. of Joseph Rocha, Page 226, Lines 16-19; *See Tab 11*.

70. Given the facts that Bill Mottla had in customer service, no additional labor would have been needed.  Depo. of Joseph Rocha, Page 243, Lines 10-16; *See Tab 11*.

71. The $400 charge quoted by William Mottla for the Festo shipment was based upon the 400 lb. weight provided by Festo. Depo. of William Mottla, Page 9, Lines 1-5*; See Tab 4*.

72. When Arpin received the weight of a product from a shipper, this weight would not be an estimate.  Depo. of William Mottla, Page 56, Lines 12-17, *See Tab 4*.

73. Mr. Mottla interprets the term "actual weight" as "what the shipment weighs."  Depo. of William Mottla, Page 58, Lines 10-16; *See Tab 4*.

74. Knowledge that the Festo cargo weighed a total of 1,020 pounds and that one of the pieces weighed 812 lbs. would be important information for Arpin to know with respect to its planning.  Depo. of William Tweedy, Page 33, Lines 4-11; *See Tab 10*.

75. William Tweedy told Joe Rocha and Shawn Pouliot that a rear liftgate would be required for the delivery because that is what was "specified in the instructions"  Depo. of William Tweedy, Page 71, Lines 13-20; *See Tab 10*.

8

76.     In his conversations with Festo prior to the accident no one told William Tweedy that the weight of the Learnline 2000 unit was 812 lbs.  Depo. of William Tweedy, Page 72, Lines 4-8; *See Tab 10.*

77.     Prior to Plaintiff's injuries, Arpin was never told that the Festo Learnline 2000 unit weighed 812 lbs. and was on wheels that rotated 360 degrees.  "Shipment Booking Order"*; See Tab 5.*

78.     If Michael Montgomery had all the information from the Shipment Booking Order, he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment.  Depo. of Michael Montgomery, Page 127, Lines 11-23; *See Tab 17.*

79.     At the time of the delivery, the liftgate on the truck involved in the accident was in working order.  Depo. of Irving Ojalvo, Page 100, Lines 15-23; *See Tab 15.*

80.     The Maxon 72-25A Tuk-A-Way liftgate is designed to tilt to the rear. Depo. of V. Paul Herbert, Page 40, Lines 1-5*; See Tab 12;* Depo. of Arnold Kowal, Page 32, Lines 10-19; *See Tab 13;* Depo. of Terry Morgan, Page 41, Lines 20-24; *See Tab 14*.

81.     The liftgate used by Mr. Pouliot on the truck involved in the accident had a weight capacity up to 2,500 pounds.  Depo. of Irving Ojalvo, Page 174, Lines 6-15; *See Tab 15*.

82.     Based on the information provided to Arpin prior to delivery regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab 10*; Depo. of Joseph Rocha, Page 63, Lines 10-24; Page 64, Lines 1-5*; See Tab 11*.

83.     It was Festo and Trans-Expo's duty to ensure that the correct weight of the Learnline unit was provided to Arpin. Depo. of V. Paul Herbert, Page 61, Lines 20-25; Page 62, Lines 1-6; Page 63, Lines 20-25; *See Tab 12*.

84.     The accident would not have happened if the correct information had been provided by Festo and Trans-Expo to Arpin.  Depo. of V. Paul Herbert, Page 65, Lines 17-20; *See Tab 12.*

9

Defendants Paul Arpin Van Lines, Inc. and
Arpin Logistics, Inc.,
By their attorneys:


_____/s/ Thomas J. Grady_____
Thomas J. Grady, Esq. CT 17139
LENIHAN, GRADY & STEELE
6 Canal Street, P.O. Box 541
Westerly, R.I.  02891
(401) 596-0183
(401) 596-6845 (Fax)
tjg19872@aol.com



_____/s/ Karen Frink Wolf_____
Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF &
LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

      This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 5th day of January, 2005 to the following:

Michael A. Stratton, Esq.  
Stratton Faxon  
59 Elm Street  
New Haven, CT 06510

Thomas J. Grady, Esq.  
Lenihan Grady & Steele  
6 Canal Street  
PO Box 541  
Westerly, RI 02891-0541  
401-596-0183

James R. Oswald, Esq.  
Adler, Pollock & Sheehan  
2300 BankBoston Plaza  
Providence, RI 02903

Susan O'Donnell, Esq.  
Halloran & Sage  
One Goodwin Sq., 225 Asylum St.  
Hartford, CT 06103

Roland F. Moots, Jr., Esq.  
Moots, Pellegrini, Spillane & Mannion  
46 Main Street, PO BOX 1319  
New Milford, CT 06776-1319

    /s/ Karen Frink Wolf  
Karen Frink Wolf, Esq. CT 26494