UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 1302 (DJS) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE  FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY AS | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL | : | January 5, 2005 |
| | : | |
| Defendants | : | |

## LOCAL RULE 56(a)(2) STATEMENT IN SUPPORT OF PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'S OPPOSITION TO FESTO CORPORATION'S MOTION FOR SUMMARY JUDGMENT AS TO THE COMMON LAW INDEMNITY COUNTS ALLEGED BY ARPIN

Pursuant to Rule 56(a)2 of the Local Rules of the United States District Court for the District of Connecticut, Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter "Arpin") submit the following statement in response to Festo Corporation's Local Rule 56(a)1 Statement in support of Festo Corporation's Motion For Summary Judgment as to the Common Law Indemnity Counts Alleged By Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc.  In accordance with Local Rule 56(a)2, each paragraph of Arpin's statement corresponds to the numbered paragraphs of Festo's Statement of Facts. Also in accordance with Local Rule 56(a)2, Arpin submits its Statement of Disputed Issues of Material Fact.

1

## STATEMENT IN RESPONSE TO FESTO CORPORATION'S LOCAL RULE 56(A)1 STATEMENT

The Parties

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted, with qualification.  Arpin "had" moved pieces of equipment on wheels.

9.      Admitted, with qualification.  The record demonstrates that Mr. Rocha testified that Arpin did not require that wheeled cargo be transported on a pallet. *See*  Depo. of Joseph Rocha, Page 101, Lines 20-24; Page 102, Line 1 *(Attached hereto at Tab 1 is a copy of all referenced excerpts from the transcript of the deposition of Joseph Rocha taken on July 26, 2004).*

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

Festo Contacts Trans-Expo to Arrange for the Festo Shipment

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Denied.  Erica Ramirez stated she did not know who told her details about the shipment, including that an item was a workstation, and denies knowing what a workstation is. Depo. of Erica Ramirez Page 26, Lines 20-24 *(Attached hereto at Tab 4is a copy of all referenced excerpts of the deposition transcript of Erica Ramirez taken on October 24, 2003*).  Furthermore, the Shipment Booking Order also does not state that the Learnline unit was on wheels, it could have been either piece of cargo.  *(Attached hereto at Tab 5 is a copy the "Shipment Booking Order" sent from Trans-Expo to Arpin Logistics, Inc.).*

21.     Admitted.

22.     Admitted.

23.     Admitted in part and Denied in part to the extent that Paragraph "23" of Festo's Local Rule 56(a)1 Statement  excludes the fact that the information the shipment broker [Trans-Expo] relayed to the carrier [Arpin Logistics, Inc.] was provided by the shipper [Festo].  Depo. of Erica Ramirez, Page 9, Lines 8-25; Page 10, Lines 1-25.  *See Tab 4.*

24.     Admitted.

The Shipment Booking Form

25.     Admitted.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.     Admitted.

31.     Admitted.

32.     Admitted.

33.     Admitted.

34.     Denied.  The Shipment Booking Order does not state specifically which unit, and in particular that a "workstation," was on wheels.  Shipment Booking Order; *See Tab 5*

35.     Admitted, with qualification.  The Shipment Booking Order does not reference the unit of measure.

36.     Admitted in part and Denied in part.  The Shipment Booking Order does not state that the numerical values listed under the heading "Dimensions" are denominated as "inches."  Shipment Booking Order; *See Tab 5*.

37.     Admitted in part and Denied in part.  The Shipment Booking Order does not state that the numerical values listed under the heading "Dimensions" are denominated as "inches."  Shipment Booking Order; *See Tab 5*.

38.     Admitted.

39.     Admitted.

40.     Admitted.

41.     Admitted.

42.     Admitted in part and Denied in part.  Defendant denies that the record supports such assertion that Arpin was "required" to call Ray Castellani in advance of its delivery of the Festo shipment.  Shipment Booking Order; *See Tab 5.*

43.     Admitted, with qualification.  Arpin employees have a number of sources of information available in order to aid them in effectuating a move.  *See* Depo. of Michael Montgomery, Page 32, Lines 5-17, Page 51, Lines 6-17, Page 62, Lines 8-22; Page 66 Line 23 to Page 67 Line 1 *(Attached hereto at Tab 2  is a copy of the transcript of the deposition of Michael Montgomery taken on July 27, 2004)*;  *See* Depo. of Joseph Rocha, Page 221, Line 9 to Page 222, Line 4*; See Tab 1*; *See* Depo. of William Tweedy, Page 159, Line 4-12 *(Attached hereto at Tab 6 is a copy of all referenced excerpts from the transcript of the deposition of William Tweedy taken on October 5, 2004).*

44.     Admitted in part, denied in part.  Denied as to the meaning of "responsible."

45.     Admitted.

46.     Denied.  Arpin dispatchers, in addition to the computer system have available a file folder which can also be used in preparing a shipment plan as well as oral information which can be obtained by word of mouth.  *See* Depo. of Michael Montgomery, Page 32, Lines 5-17, Page 51, Lines 6-17, Page 62, Lines 8-22; Page 66 Line 23 to Page 67 Line . *See Tab* 2; *See* Depo. of Joseph Rocha, Page 221, Line 9 to Page 222, Line 4*; See Tab 1*; *See* Depo. of William Tweedy, Page 159, Line 4-12*; See Tab 2*.  William Tweedy states that he gave "warehouse" a manifest and bill of lading. These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24, through Page 27, Line

19; *See Tab 6.*

47.    Admitted in part and Denied in part.  Nowhere on Page 11 of William Mottla's Deposition transcript does he state that it was his "responsibility to ensure that all relevant information from the Shipment Booking Form was inputted into the Arpin computer system." Depo. of William Mottla, Page 11 *(Attached hereto at Tab 7 is a copy of all referenced excerpts from the transcript of the deposition of William Mottla taken on July 27, 2004)*

48.    Denied.  Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually. Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab* 6; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab* 1. Michael Montgomery states that depending on the delivery site he would have had no problem delegating this truck for the delivery.  Depo of Michael Montgomery, Page 68, Lines 1-5; *See Tab 2.*  If Mr. Montgomery had all the information from the Shipment Booking Order he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment.  Depo. of Michael Montgomery, Page 127, Lines 19-23; *See Tab 2.*  In addition, whether a delivery location has a loading dock is only important if the carrier is provided with the accurate weight. Depo. of V. Paul Herbert, Page 43, Lines 12-22 *(Attached hereto at Tab 8  is a copy of all referenced excerpts of the deposition transcript of V. Paul Herbert taken on August 19, 2004).*

49.    Admitted.

50.    Admitted.

51.    Admitted.

52.    Admitted in part and Denied in part, in that, the Shipment Booking Order does not indicate that the pieces of Festo cargo had dimensions of 59 inches long by 33 inches wide by 72 inches high and 47 inches long by 32 inches wide by 37 inches high; the Shipment Booking Order does not state that the "workstation" was on wheels; the Shipment Booking Order does not contain the phrase "must . . . protect wheels." Shipment Booking Order; *See Tab 5.*  Otherwise agreed.

53.    Admitted.

54.    Admitted in part and Denied in part, insofar as Festo implies that only Arpin made such statements about the liftgate.  The lift gate on the truck selected by Arpin Logistics, Inc. for the Festo shipment was a model 72-25A Maxon Tuk-A-Way lift gate which tilts downward, toward the rear, during descent by the nature of the way it operates according to Arpin transportation safety expert V. Paul Herbert, Arnold Kowal, the individual designated by Maxon as the person most knowledgeable about the Maxon 72-25A Tuk-A-Way lift gate, and Festo's own transportation safety expert, Terry Morgan.

Depo. of V. Paul Herbert, Page 39, Lines 23-25, Page 40, Lines 1-5, *See Tab 8* ; Depo. of Arnold Kowal, Page 32, Lines 10-19 *(Attached hereto at Tab 9 is a copy of all referenced excerpts of the deposition transcript of Arnold Kowal taken on April 12, 2004);* Depo. of Terry Morgan, Page 41, Lines 20-24 (*Attached hereto at Tab10 is a copy of all referenced excerpts of the deposition transcript of Terry Morgan taken on August 17, 2004).*

55.    Admitted.

56.    Admitted in part and Denied in part.  Joseph Rocha's never refers to Maxon 72-25A lift gate as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 99 and 165, *See Tab 1.*

57.    Admitted.

58.    Denied in that Joseph Rocha knew something about the load.  Depo. of Joseph Rocha, Page 69, Lines 3-6; *See Tab1.*  The information that Mr. Rocha possessed included that a liftgate would be needed to make the delivery, and that the delivery consisted of two items, together equaling four hundred pounds. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 1.  William Tweedy states that he gave "warehouse" a manifest and bill of lading.  These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24, through Page 27, Line 19; *See Tab 6*. Joseph Rocha identifies that he had these documents and read them and placed them in the front seat of the truck. Depo. of Joseph Rocha, Page 30, Line 11, through Page 31 Line 11; Page 33, Line 18, through Page 34, Line 4; *See Tab 1.*

59.    Admitted in part and Denied in part.  Arpin dispatch informed both Joe Rocha and Shawn Pouliot that a rear lift was required to unload the Festo unit at the point of delivery. Depo. of William Tweedy Page 71, Lines 13-20; *See Tab* 6.  Arpin was not aware at the time that Shawn Pouliot was dispatched that the liftgate may have been insufficient to hold the weight of the Learnline 2000 unit. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 1.  Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab* 6; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab* 1.

60.    Admitted.

61.    Admitted in part and Denied in part.  The record demonstrates that Mr. Rocha did not inspect the truck because it was his understanding that the Department of Transportation had conducted an inspection of the truck prior to the transfer of the truck to Arpin. Depo. of Joseph Rocha, Page 23, Lines 2-25; *See Tab 1*.  In addition, Mr. Rocha stated that "There was a minor repair done to it.  The latch that secures the lift gate to the platform, they were having issues with it.  It was getting stuck.  So it would have

been inspected that time for operation." Depo. of Joseph Rocha, Page 23, Lines 6-9; *See Tab* 1.

62.     Admitted.

63.     Admitted.

64.     Admitted, with qualification.  The record demonstrates that only minor repairs were preformed on the lift. Depo. of Joseph Rocha, Page 23, Lines 6-9; *See Tab1*.

65.     Admitted.

66.     Admitted.

67.     Denied on the basis that Tweedy's statement is inadmissible hearsay pursuant to FRE 801 as it is based solely upon out of court statements allegedly made by unidentified drivers from West Virginia to Mr. Tweedy which are being offered to prove the truth of the matter asserted.  William Tweedy concedes that he has no responsibility for motor vehicles at Arpin. Depo. of William Tweedy, Page 19, Lines 12-15; Page 157, Lines 11-15; *See Tab 6*.  Mr. Tweedy also states that he never inspected or operated the liftgate prior to the accident and infers that all the information he had on the liftgate was from truckers in West Virginia and an Arpin agent down there. Depo. of William Tweedy, Page 64, Line 24, through Page 65, Line 13; *See Tab 6*.

68.     Denied on the basis that Tweedy's statement is inadmissible hearsay pursuant to FRE 801 as it is based solely upon an out of court statement allegedly made by Michael Montgomery to Mr. Tweedy which is being offered to prove the truth of the matter asserted.  William Tweedy concedes that he has no responsibility for motor vehicles at Arpin. Depo. of William Tweedy, Page 19, Lines 12-15; Page 157, Lines 11-15, *See Tab 6*.  Mr. Tweedy also states that he never inspected or operated the liftgate prior to the accident and infers that all the information he had on the liftgate was from truckers in West Virginia and an Arpin agent down there. Depo. of William Tweedy, Page 64, Line 24, through Page 65, Line 13; *See Tab 6*.

69.     Denied on the basis that Tweedy's statement is inadmissible hearsay pursuant to FRE 801 as it is based solely upon out of court statements allegedly made by unidentified drivers from West Virginia to Mr. Tweedy which are being offered to prove the truth of the matter asserted.  William Tweedy concedes that he has no responsibility for motor vehicles at Arpin. Depo. of William Tweedy, Page 19, Lines 12-15; Page 157, Lines 11-15; *See Tab 6*.  Mr. Tweedy also states that he never inspected or operated the liftgate prior to the accident and infers that all the information he had on the liftgate was from truckers in West Virginia and an Arpin agent down there. Depo. of William Tweedy, Page 64, Line 24, through Page 65, Line 13; *See Tab 6*.

70.     Denied on the basis that Tweedy's statement is inadmissible hearsay pursuant to FRE 801 as it is based solely upon an out of court statement allegedly made by William

Tweedy to Michael Montgomery to the extent to which it is being offered to prove the truth of the matter asserted.  Furthermore, William Tweedy concedes that he had no responsibility over motor vehicles while employed at Arpin Logistics, Inc. thus calling into question whether Tweedy would have been in the position to make such a statement to Michael Montgomery.  Depo. of William Tweedy, Page 19, Lines 12-15; *See Tab 6.* This statement should also be discounted as Tweedy's likely source for his information on the condition of the vehicle consists of hearsay as described in Paragraph 68 above.

71.     Admitted in part, Denied in part.  Defendant denies any and all facts contained within the paragraph indicating that William Mottla "failed" to enter "required" information, on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions.  William Mottla testified about the general practices within customer service and not about the facts or circumstances surrounding the accident which is the subject of this lawsuit. *See* Depo. of William Mottla, Pages 14-15; *See Tab 7.*

72.     Denied.  The Shipment Booking Order does not state that the Festo Learnline 2000 unit was on wheels, therefore Mr. Mottla did not "fail" to input this information. Shipment Booking Order; *See Tab* 5.

73.     Admitted.

74.     Admitted.

75.     Denied.  Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions; and, (c) calls for a conclusion of law. Furthermore, there was no information from Festo or Trans-Expo that the Festo Learnline 2000 Mobile workstation was on wheels.  Shipment Booking Order; *See Tab 5.*

76.     Denied.  If a unit on wheels was going to be delivered, the fact that it was on wheels would not necessarily make it into the Arpin information screen.  Depo. of William Mottla, Page 15, Lines 13-16; *See Tab 7.*

77.     Admitted in part and Denied in part.  Admitted to the extent that in William Mottla's opinion, it is fair to say that, there are some lift gates that are appropriate for things on wheels and there are lift gates that are maybe not so appropriate.  Depo. of William Mottla, Page 16, Line 11-15; *See Tab 7.* Denied as to the definition of the word "proper."

78.     Denied.  If a unit on wheels was going to be delivered, the fact that it was on wheels would not necessarily make it into the Arpin information screen.  Depo. of William Mottla, Page 15, Lines 13-16; *See Tab 7.*  Denied as to the definition of the word "violated."

79.    Denied.  Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions; and, (c) calls for a conclusion of law. Depo. of William Mottla, Page 72; *See Tab 7.*

80.    Admitted in part, and Denied to the extent that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 69; *See Tab 1.*

81.    Admitted.

82.    Admitted, with qualification.  Arpin was not aware at the time that Shawn Pouliot was dispatched that the liftgate may have been insufficient to hold the weight of the Learnline 2000 unit. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 1.  William Tweedy states that he gave "warehouse" a manifest and bill of lading.  These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24, through Page 27, Line 19; *See Tab 6.*

83.    Denied in that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 71; *See Tab 1.* Denied in that Mr. Rocha, the Arpin Logistics employee who selected the truck and the Maxon 72-25A Tuk-A-Way lift gate for the Festo shipment did not know that "any piece of cargo" was on wheels, not specifically the Learnline 2000 unit.  Depo. of Joseph Rocha, Page71, Lines 7-9; *See Tab 1.*  The information that Mr. Rocha possessed included that a liftgate would be needed to make the delivery, and that the delivery consisted of two items, together equaling four hundred pounds. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 1.  Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab* 6; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab* 1.

84.    Denied in that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 69-70; *See Tab 1.* Otherwise agreed.

85.    Denied in that in his deposition transcript at page 69, Michael Montgomery does not say that Joe Rocha did not confirm the accuracy of any of the information in the Arpin computer system, or confirm that the information was all of the available information, by either consulting with Arpin customer service or by looking at the Shipment Booking Form in the Arpin files, nor does he claim to have any personal knowledge as to whether Mr. Rocha took such actions.  Depo. of Michael Montgomery, Page 69; *See Tab2.*  Furthermore, the information provided by Festo and Trans-Expo

never stated that the workstation was on wheels.  Shipment Booking Order; *See Tab 5*.
Furthermore, there would be no necessity to confirm the accuracy when UCC 7-301(5)
states that the shipper guarantees the weight and the Shipment Booking Order states
"Actual weight 400".  Shipment Booking Order; *See Tab5;* Depo. of V. Paul Herbert,
Page 62 Lines 14-22; Page 63, Lines 3-22, *See Tab 8.*

86.     Admitted.

87.     Denied.  It would be appropriate to use a Maxon 72-25A Tuk-A-Way lift gate if
an item was on wheels and fit on the lift gate platform.  Depo. of Joseph Rocha, Page 27,
Lines 5-18; *See Tab 1*.  The Festo Learnline 2000 unit did in fact fit "completely" on the
platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot,  Page 5, Lines
20-22 *(Attached hereto at Tab 12  is a copy of all referenced excerpts of the deposition
transcript of Shawn Pouliot taken on December 3, 2002).*  Joe Rocha would have no
hesitation in using a Maxon 72-25A lift gate with a piece of cargo that weighed 400 lbs.
and was on wheels.  Depo. of Joseph Rocha Page 64, Lines 1-5; *See Tab1*.  Denied, in
that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor
anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to
as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Pages 48-49; *See Tab .*

88.     Denied.  It would be appropriate to use a Maxon 72-25A Tuk-A-Way lift gate if
an item was on wheels and fit on the lift gate platform.  Depo. of Joseph Rocha, Page 27,
Lines 5-18; *See Tab1*.  The Festo Learnline 2000 unit did in fact fit "completely" on the
platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot, Page 5, Lines
20-22; *See Tab 12*  Joseph Rocha would have no hesitation in using a Maxon 72-25A lift
gate with a piece of cargo that weighed 400 lbs. and was on wheels.  Depo. of Joseph
Rocha, Page 64, Lines 1-5; *See Tab 1*.   The Maxon 72-25A Tuk-A-Way liftgate is
designed to tilt to the rear. Depo. of V. Paul Herbert, Page 39, Lines 23-25; Page 40,
Lines 1-5; *See Tab 8;* Depo. of Arnold Kowal, Page 32, Lines 10-19; *See Tab __;* Depo.
of Terry Morgan, Page 41, Lines 20-24; *See Tab 10.*  The truck liftgate used by Shawn
Pouliot on the truck involved in the accident was in working order. Depo. of Irving
Ojalvo, Page 100, Lines 15-23 *(Attached hereto at Tab 14  is a copy of all referenced
excerpts of the deposition transcript of Irving Ojalvo taken on July 29, 2004).*

89.     Denied.  It would be appropriate to use a Maxon 72-25A Tuk-A-Way lift gate if
an item was on wheels and fit on the lift gate platform.  Depo. of Joseph Rocha, Page 27,
Lines 5-18; *See Tab 1*.  The Festo Learnline 2000 unit did in fact fit "completely" on the
platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot, Page 5, Lines
20-22; *See Tab 12.*  Joseph Rocha would have no hesitation in using a Maxon 72-25A lift
gate with a piece of cargo that weighed 400 lbs. and was on wheels.  Depo. of Joseph
Rocha, Page 64, Lines 1-5; *See Tab 1.*

90.     Admitted in part and Denied in part.  Mr. Rocha states his belief that Arpin had
other trucks at its disposal, but does not state that these were straight trucks.  Depo. of
Joseph Rocha, Page 38; *See Tab 1.*  Otherwise agreed.

91.     Admitted.

92.     Admitted.

93.     Admitted in part and Denied in part.  It would be appropriate to use a Maxon 72-25A Tuk-A-Way lift gate if an item was on wheels and fit on the lift gate platform. Depo. of Joseph Rocha, Page 27, Lines 5-18; *See Tab 1*.  The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*.   Denied in that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 37-38; *See Tab 1*.

94.     Denied.  In Michael Montgomery's opinion, a rear lift gate with leveling capacity would be "safer", not "unsafe", for use with a six-foot machine than a lift gate which tilts to the rear.  Depo. of Michael Montgomery, Page 154, Lines 2-13; *See Tab 2*.   If Michael Montgomery had all the information from the Shipment Booking Order, he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment. Depo. of Michael Montgomery, Page 127, Line 15-23; *See Tab 2*.

95.     Denied.  A Maxon 72-25A Tuk-A-Way lift gate was appropriate for assignment to Shawn Pouliot in accomplishing the delivery of the Festo Learnline 2000 unit.  *See* Depo. of V. Paul Herbert, Page 46, Line 15 to Page 47, Line 2; *See Tab 8*.  If Mr. Rocha had known that the height of the workstation was 72 inches and was aware of the other dimensions, this would not cause him any concerns.  *See* Depo. of Joseph Rocha, Page 230, Lines 15-19; *See Tab 1*.  At the time he selected the truck, Mr. Rocha believed that actual weight of the cargo was a combined 400 lbs. and believed that the 72-25A liftgate was appropriate for such items.  Depo. of Joseph Rocha, Page 63, Lines 10-19*; See Tab 1.*

96.     Denied.  The selection of a truck and liftgate depends on a number of factors including weight and the nature of the freight. Depo. of Joseph Rocha, Page 89, Lines 2-24; *See Tab 1*.  If Mr. Rocha had known that the height of the workstation was 72 inches and was aware of the other dimensions, this would not cause him any concerns.  See Depo. of Joseph Rocha, Page 230, Lines 15-19; *See Tab 1*.  At the time he selected the truck, Mr. Rocha believed that the actual weight of the cargo was a combined 400 lbs. and believed that the 72-25A liftgate was appropriate for such items.  Depo. of Joseph Rocha, Page 63, Lines 10-19, *See Tab 1.*

97.     Denied.  The selection of a truck and liftgate depends on a number of factors including weight and the nature of the freight. Depo. of Joseph Rocha, Page 89, Lines 2-24; *See Tab 1*.  If Mr. Rocha had known that the height of the workstation was 72 inches and was aware of the other dimensions this would not cause him any concerns.  *See* Depo. of Joseph Rocha, Page 230, Lines 15-19; *See Tab 1*.  At the time he selected the truck, Mr. Rocha believed that the actual weight of the cargo was a combined 400 lbs. and believed that the Maxon 72-25A liftgate was appropriate for such items. Depo. of

Joseph Rocha, Page 63, Lines 10-19; *See Tab 1*.

98.     Denied.  A Maxon 72-25A Tuk-A-Way lift gate was appropriate for assignment to Shawn Pouliot in accomplishing the delivery of the Festo Learnline 2000 unit.  *See* Depo. of V. Paul Herbert, Page 46, Line 15 to Page 47, Line 2; *See Tab 8*.  Based on the information provided to Arpin prior to delivery regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab 6*; Depo. of Joseph Rocha, Page 63, Lines 10-24; Page 64, Lines 1-5*; See Tab 1*.

99.     Admitted.

The Dimensions of the Festo Equipment

100.     Admitted in part and Denied in part.  William Mottla was provided with dimensions for two pieces of Festo cargo which were not labeled as either a "Learnline mobile workstation" or a tri-wall thus he could not "fail" to input that information into the Arpin computer system.  Shipment Booking Order, *See Tab 5*.

101.     Admitted, with qualification.  The notation indicated the "actual weight" as 100 pounds. Depo. of Michael Montgomery, Page 36, 2-24; *See Tab 2*.

102.     Denied.  Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions; and, (c) calls for a conclusion of law.  Also denied in that Mr. Montgomery states that the dimensions of the Learnline unit were not included on the operations board, but offers no opinion as to whether or not the dimensions should have been.  Depo. of Michael Montgomery, Page 36, Line 6-8; *See Tab 2*.

103.     Denied in that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 37, 69, 84, *See Tab 1*.  Defendant denies any and all facts contained within the paragraph indicating that William Mottla "failed" to enter information, on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions. Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab 6*; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab* 1.

104.     Admitted, with qualification.  William Tweedy states that he gave "warehouse" a manifest and bill of lading.  These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery.  Depo. of William Tweedy, Page 26, Line 24, to Page 27, Line 19; *See Tab 6*.

105.    Admitted in part, and Denied in part.  Denied in that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate. Depo. of Joseph Rocha, Pages 69, 151-152; *See Tab 1*.  Denied in that Joseph Rocha knew something about the load, but did not know all the facts. Depo. of Joseph Rocha, Page 69, Lines 3-6; *See Tab 1*.  The information that Mr. Rocha possessed included that a liftgate would be needed to make the delivery, and that the delivery consisted of two items, together equaling four hundred pounds. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 1.  William Tweedy states that he gave "warehouse" a manifest and bill of lading.  These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24 to Page 27, Line 19; *See Tab 1*.  Joseph Rocha identifies that he had these documents and read them and placed them in the front seat of the truck. Depo. of Joseph Rocha, Page 30, Line 11, to Page 31 Line 11; Page 33, Line 18, to Page 34, Line 4, *See Tab 1*.

106.    Admitted.

107.    Denied in that in his deposition testimony at page 69, Michael Montgomery does not state that Joe Rocha did not confirm the accuracy of any of the information in the Arpin computer system, or confirm that the information was all of the available information, by either consulting with Arpin customer service or by looking at the Shipment Booking Form in the Arpin files as stated by Festo Corporation.  See Depo. of Michael Montgomery, Page 69; *See Tab 2*.  Furthermore, Mr. Montgomery does not state that he has any personal knowledge of Joseph Rocha's failure to confirm the accuracy of any of the information in the Arpin computer system or confirm that the information was all of the available information, by either consulting with Arpin customer service or by looking at the Shipment Booking Form in the Arpin files.

108.    Denied.  Mr. Rocha did not see anything wrong with moving a 400-pound item on wheels using the Maxon 72-25A Tuk-A-Way liftgate.  Depo. of Joseph Rocha, Page 63, Lines 6-19; *See Tab 1*.  Denied to the extent that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 63; *See Tab 1*.  A Maxon 72-25A Tuk-A-Way lift gate was appropriate for assignment to Shawn Pouliot in accomplishing the delivery of the Festo Learnline 2000.  Depo. of V. Paul Herbert, Page 46, Lines 15-18; *See Tab 8*.  The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*.

109.    Denied.  Mr. Rocha did not see anything wrong in moving a 400-pound item on wheels using the Maxon 72-25A Tuk-A-Way liftgate.  Depo. of Joseph Rocha, Page 63, Lines 6-19; *See Tab1*.  Denied to the extent that nowhere in the excerpts of Joseph Rocha's deposition transcript cited by Festo, nor anywhere else within Joseph Rocha's deposition is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Depo. of Joseph Rocha, Page 63; *See Tab 1*.  A Maxon 72-25A Tuk-A-Way lift gate was appropriate for assignment to Shawn Pouliot in accomplishing the delivery of the Festo

Learnline 2000.  Depo. of V. Paul Herbert, Page 46, Lines 15-18; *See Tab 8*.  The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*.

110.    Denied.  If a piece of Festo cargo was either 33 inches wide or 32 inches wide, this would not have posed a problem with the Maxon 72-25A lift gate which Joseph Rocha selected for use on the Festo shipment. Depo. of Joseph Rocha, Page 209, Lines 16-22; *See Tab 1*.  If Mr. Rocha had known that the height of the workstation was 72 inches and was aware of the other dimensions this would not cause him any concerns. *See* Depo. of Joseph Rocha, Page 230, Lines 15-19; *See Tab 1*.  The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony. Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*.

111.    Denied.  A liftgate of the dimension of the subject Maxon 72-25A Tuk-A-Way lift gate for the Festo shipment was appropriate for assignment to Shawn Pouliot in accomplishing the delivery.  *See* Depo. of V. Paul Herbert, Page 46, Line 15 to Page 47, Line 2; *See Tab 8.*

112.    Denied.  Defendant denies any and all facts contained within the paragraph indicating that the "danger of using the liftgate was aggravated," on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions.  A liftgate of the dimension of the subject Maxon 72-25A Tuk-A-Way lift gate for the Festo shipment was appropriate for assignment to Shawn Pouliot in accomplishing the delivery.  *See* Depo. of V. Paul Herbert, Page 46, Line 15 to Page 47, Line 2; *See Tab 8.*

113.    Denied.  Dimensions are only important to a carrier relative to the loading/unloading process when a piece of cargo is greater than the dimensions of the lift gate platform. Depo. of V. Paul Herbert, Page 44, Lines 8-12; Page 42, Lines 20 to Page 45, Line 5*; See Tab 8*.  If Mr. Rocha had known that the height of the workstation was 72 inches and was aware of the other dimensions this would not cause him any concerns. *See* Depo. of Joseph Rocha, Page 230, Lines 15-19; *See Tab 1*.  The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony. Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*

114.    Denied.  William Tweedy, the Arpin dispatcher who dispatched Plaintiff for the Festo shipment, believed that the lift gate used for the Paul Arpin Van Lines truck used for the Festo shipment was only too small to unload both items of cargo at the same time. Depo. of William Tweedy, Page 67, Line 12-17; *See Tab 6*.  Based on the information provided to Arpin prior to delivery regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab 6*; Depo. of Joseph Rocha, Page 63, Lines 10-24; Page 64, Lines 1-5*; See Tab 1*.

115.    Denied.  Dimensions are only important to a carrier relative to the loading/unloading process when a piece of cargo is greater than the dimensions of the lift

gate platform. Depo. of V. Paul Herbert, Page 44, Lines 8-12; Page 42, Lines 20 to Page 45, Line 5; *See Tab 8*. If Mr. Rocha had known that the height of the workstation was 72 inches and was aware of the other dimensions this would not cause him any concerns. *See* Depo. of Joseph Rocha, Page 230, Lines 15-19; *See Tab 1*. The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony. Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*.

116.    Admitted in part and Denied in part. Defendant denies any and all facts contained within the paragraph indicating that an Arpin customer service representative "failed" to enter information, on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions.

117.    Admitted

118.    Admitted.

119.    Denied. Mr. Mottla does not state that Arpin Logistics "violated" its proper standard procedure when it failed to input into its computer system that the Festo shipment required a lift gate in the deposition excerpts cited by Festo nor anywhere else. Depo. of William Mottla, Page 14; *See Tab 7*.

120.    Admitted in part and Denied in part. On Page 66 of William Mottla's deposition, he states in general, the opinion that whether a liftgate is needed is important information for a shipment, and does not address the circumstances surrounding the basis for this case. Depo. of William Mottla, Page 66, Lines 16-20; *See Tab 7*. Arpin was not aware at the time that Shawn Pouliot was dispatched that the liftgate may have been insufficient to hold the weight of the Learnline 2000 unit. Depo. of Joseph Rocha, Page 28, Lines 2-12; *See Tab* 1. Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually. Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab* 6; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab 1*. In addition, whether a delivery location has a loading dock is only important if the carrier is provided with the accurate weight. Depo. of V. Paul Herbert, Page 43, Lines 12-22; *See Tab 8*.

121.    Denied. Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions; and, (c) calls for a conclusion of law. The record speaks for itself.

122.    Admitted.

123.    Admitted in part, and Denied in part. On Saturday, October 20, 2001, Arpin dispatcher William Tweedy met with Shawn Pouliot, gave him the printed bill of lading and manifest and orally told him what was required of him. Depo. of William Tweedy Page 25, Lines 8-24; Page 26, Lines 1-14; *See Tab* 6. Arpin dispatch informed both Joe

Rocha and Shawn Pouliot that a rear lift was required to unload the Festo unit at the point of delivery. Depo. of William Tweedy Page 71, Lines 13-20; *See Tab* 6. William Tweedy states that he gave "warehouse" a manifest and bill of lading. These documents indicate: two pieces, weight of 400 lbs., 12 pads required, straps, and call before delivery. Depo. of William Tweedy, Page 26, Line 24, to Page 27, Line 19; *See Tab 6*. When loading the Paul Arpin Van Lines, Inc. van, Joseph Rocha placed the manifest and bill of lading for the Festo delivery in the front seat. Depo. of Joseph Rocha, Page 30, Lines 11-25; Page 31, Lines 1-7. *See Tab* 1.

124.    Denied. Defendant Arpin denies any and all facts contained within this paragraph on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions; and, (c) calls for a conclusion of law. Based on the information provided to Arpin prior to delivery, regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab* 6; Depo. of Joseph Rocha; Page 63, Lines 10-24; Page 64, Lines 1-5; *See Tab* 1.  In addition, whether a delivery location has a loading dock is only important if the carrier is provided with the accurate weight. Depo. of V. Paul Herbert, Page 43, Lines 12-22; *See Tab 8.*

125.    Admitted in part and Denied in part.  Defendant denies any and all facts contained within the paragraph indicating that a lift gate was "required," on the grounds that: (a) the statement lacks any record citation to support it; and (b) the record lacks facts to support movant's assertions.  Michael Montgomery states that depending on the delivery site he would have had no problem delegating this truck for the delivery.  Depo. of Michael Montgomery, Page 68, Lines 1-5; *See Tab 2*  If Mr. Montgomery had all the information from the Shipment Booking Order he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment. Depo. of Michael Montgomery, Page 127, Lines 19-23; *See Tab 2.*

126.    Denied. Michael Montgomery states that depending on the delivery site he would have had no problem delegating this truck for the delivery.  Depo. of Michael Montgomery, Page 68, Lines 1-5; *See Tab 2.*  If Mr. Montgomery had all the information from the Shipment Booking Order he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment. Depo. of Michael Montgomery, Page 127, Lines 19-23; *See Tab 2.*

127.    Admitted, with qulaification.  The most critical piece of information for a carrier to know is the weight of the cargo.  *See* Depo. of V. Paul Herbert, Page 43, Lines 5-11; Page 97, Line 16 to Page 98, Line 2*; See Tab 8.* Whether a delivery location has a loading dock is only important if the carrier is provided with the accurate weight. Depo. of V. Paul Herbert, Page 43, Lines 12-22; *See Tab 8.*  If Mr. Montgomery had all the information from the Shipment Booking Order he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment. Depo. of

Michael Montgomery, Page 127, Lines 19-23; *See Tab 2*.


128.    Denied.  Michael Montgomery merely states the general proposition that the more information a driver has,  the safer and more efficient the job will be.  Depo. of Michael Montgomery, Page 71, Lines 14-17, *See Tab 2*.  The most critical piece of information for a carrier to know is the weight of the cargo.  *See* Depo. of V. Paul Herbert, Page 43, Lines 5-11; Page 97, Line 16 to Page 98, Line 2*; See Tab 8*.

129.    Admitted.

130.    Admitted, with qualification.  Mr. Mottla states that he has no explanation why "most of this information with some exceptions" on the Shipment Booking Form, not "all of the relevant information" as stated by Festo in paragraph "130" of Festo's Local Rule 56(a)1 Statement, was not inputted into the Arpin Logistics computer system. Depo. of William Mottla, Page 19, Lines 9-12; *See Tab 7*.

131.    Denied.  In October 2001, there were three people in the Arpin Logistics customer service department in addition to Mr. Mottla.  Depo. of William Mottla, Page 6, Lines 7-9; *See Tab 7*.

132.    Admitted, with qualification.  In October 2001, "on any given day", the <u>four</u> (not three) people in Arpin Logistics' customer service department "certainly could" have been processing approximately 100-125 orders per person, per day.  As to the balance, agreed but irrelevant.  Depo. of William Mottla, Page 40, Lines 18-23; *See Tab 7*.

133.    Admitted, with the exceptions noted in Paragraph 132 above.

134.    Admitted.

135.    Admitted, with the exceptions noted in Paragraph 132 above.

136.    Denied.  William Mottla actually stated that if a customer had a lot of pertinent information they would have to either edit it out or incorporate it into the notes or special instructions.  Depo. of William Mottla, Page 36, Lines 17-21; *See Tab 7*.

137.    Admitted.

138.    Admitted.

139.    Denied insofar as nowhere in Arpin's October 6, 2004 Answer to Plaintiff's Fifth Amended Complaint is the Maxon 72-25A lift gate referred to as a "tilt-down" liftgate.  Arpin's October 6, 2004 Answer to Plaintiff's Fifth Amended Complaint.

140.    Admitted, with qualification.  Arpin Logistics would not hire drivers unless they possessed at least three years experience within the specialty moving industry.  Depo. of

Michael Montgomery, Page 107, Lines 1-24; *See Tab 2*.  Arpin Logistics confirmed that the Plaintiff possessed this training and experience prior to his hiring. Depo. of Michael Montgomery, Page 107, Lines 1-24; *See Tab 2*.

141.    Admitted, with the exceptions noted in Paragraph 140 above.

142.    Admitted, with the exceptions noted in Paragraph 140 above.

143.    Admitted.

144.    Admitted.

145.    Admitted.

146.    Admitted.

147.    Admitted.

148.    Denied. There is a dispute of fact as to which Bill of Lading is the appropriate one.  See Paragraph 46 of Arpin's Disputed Issues of Material Fact.

149.    Denied in that a genuine issue of material fact exists as to which Bill of Lading is the appropriate one.  See Paragraph 46 of Arpin's Disputed Issues of Material Fact.

150.    Denied, in that a genuine issue of material fact exists as to what the indicated weight was when Shawn Pouliot received the Bill of Lading.  See Paragraph 46 of Arpin's Disputed Issues of Material Fact.

151.    Admitted.

152.    Admitted, with qualification.  The Festo Learnline 2000 unit did in fact fit "completely" on the platform according to the Plaintiff's testimony.  Depo. of Shawn Pouliot, Page 5, Lines 20-22; *See Tab 12*.

153.    Admitted in part and Denied in part.  Defendant Arpin objects to the use of the phrase "Pouliot noticed the shift in the Learnline unit that he [sic] was not to his liking….."  There is no record evidence that Plaintiff knew what happened to the machine as he lowered it, after he had placed it completely on the lift.  He claims, "I don't know whether it was the wheels or not".  *See* Depo. of Shawn Pouliot, Pages 93 to 94; *See Tab 12* (December Depo.); *See* Depo. of Shawn Pouliot, Pages 254 to 255 (*Attached hereto at Tab 19 is a copy of all referenced excerpts of the deposition transcript of Shawn Pouliot taken on June 29, 2004*).

154.    Admitted.

155.    Denied insofar as the Maxon 72-25A lift gate is nowhere in the record referred to

as a "tilt-down" lift gate.

156.     Admitted.

## DISPUTED ISSUES OF MATERIAL FACT

157.     There is a disputed material fact about whether the accurate weight of the Learnline 2000 unit was communicated by Petra Milks of Festo Corporation to Erica Rameriz of Michael D. Kovac, d/b/a Trans-Expo International.  Petra Milks states that she communicated the fact that it weighed between 700 and 900 lbs. and that it was on wheels to Erica Ramirez. Depo. of Petra Milks, Page 17, Lines 8-25; Page 28, Line 22-Page 29, Line13; *See Tab* 13.  Erica Ramirez states that the only information which she received from Festo Corporation was that which appears on the Shipment Booking Order. Depo. of Erica Ramirez, Page 4, Lines 19-21; Page 53, Line 24-Page 54, Line 12; Page 77, Line 7-Page 81, Line 2; Page 10, Lines 8-18; *See Tab* 4.  On the Shipment Booking Order appears that the actual weight of all cargo (2 pieces) is 400 lbs. Shipment Booking Order.  Although wheels are mentioned, it does not state which of the two pieces of cargo is on wheels. Shipment Booking Order. *See Tab 5.*

158.     At all times between October 18 and 23 the Shipment Booking Order reference to "actual weight" of 400 was the only source of information which Arpin Logistics, Inc. had respecting the weight of the Learnline 2000 trolley. See Depo. of V. Paul Herbert, Page 61, Line 14-Page 62, Line 22. *See Tab 8.*

159.     Also, one of the wheels on the Learnline 2000 trolley was defective and appeared to be an inherent manufacturing defect.  Depo. of Irving Ojalvo, Page 64, Lines 7-18; Page 65, Lines 10-22; Page 66, Lines 17-24. *See Tab 14.*

160.     If Arpin had known that the true weight of the Festo Learnline 2000 workstation was actually 812 lbs., it would have assigned an additional helper to assist Plaintiff in removing the Learnline 2000 unit from the straight truck. Depo. of V. Paul Herbert, Page 95, Line 23-Page 96, Line 13. *See Tab 8*; Depo. of William Tweedy, Page 34, Lines 5-18. *See Tab 6.*

161.     If an additional helper had been assigned by Arpin to assist in the unloading of the Festo Learnline 2000 workstation, this accident would not have occurred.  V. Paul Herbert, Page 65*, Lines 8-20; Page 71, Line 1 to Page 72, Line 5; *See Tab 8* .

162.     The most critical piece of information for a carrier to know is the weight of the cargo.  Depo. of V. Paul Herbert, Page 43, Lines 5-11; Page 97, Line 16-Page 98, Line 2*; See Tab 8.*

163.     Whether a loading destination has a dock is only critical information if the carrier has knowledge of the weight of a piece of cargo.  Depo. of V. Paul Herbert, Page 43, Lines 12-22; *See Tab 8.*

164.     A Maxon 72-25A Tuk-A-Way lift gate was appropriate for assignment to Shawn

Pouliot in accomplishing the delivery of the Festo Learnline 2000. Depo. of V. Paul Herbert, Page 46, Lines 15-21; *See Tab 8.*

165.    The Maxon 72-25A Tuk-A-Way lift gate was adequate to support the Festo Learnline 2000 unit. Depo. of V. Paul Herbert, Page 48, Lines 4-17, *See Tab 8.*

166.    Festo had an obligation to communicate an accurate weight to Trans-Expo. Depo. of V. Paul Herbert, Page 64, Line 20-Page 65, Line 3; *See Tab 8.*

167.    Trans-Expo had a duty to pass on information such as weight to Arpin. Depo. of V. Paul Herbert, Page 61, Line 20-Page 62, Line 6; *See Tab 8.*

168.    Either Michael Montgomery or William Tweedy would have decided to send two men on the Festo pickup, if they had known that the Learnline 2000 unit weighed over 700 lbs. Depo. of Joseph Rocha, Page 123, Lines 2-13*; See Tab 1.*

169.    If a piece of Festo cargo was either 33 inches wide or 32 inches wide, this would not have posed a problem with the Maxon 72-25A lift gate which Joe Rocha selected for use on the Festo shipment. Depo. of Joseph Rocha, Page 209, Lines 15-22; *See Tab 1.*

170.    A "workstation" does not have a fixed or exact definition and can mean "anything in any given business." Depo. of Joseph Rocha, Page 217, Line 19 to Page 218, Line 2; *See Tab 1.*

171.    Mr. Rocha had never observed an occasion where the weight would be listed as less than the actual weight in order to justify a lower price. Depo. of Joseph Rocha, Page 226, Lines 16-19; *See Tab 1.*

172.    Given the facts that Bill Mottla had in customer service, no additional labor would have been needed. Depo. of Joseph Rocha, Page 243, Lines 10-16; *See Tab 1.*

173.    The $400 charge quoted by William Mottla for the Festo shipment was based upon the 400 lb. weight provided by Festo. Depo. of William Mottla, Page 9, Lines 1-5*; See Tab 7.*

174.    When Arpin received the weight of a product from a shipper, this weight would not be an estimate. Depo. of William Mottla, Page 56, Lines 12-17, *See Tab 7.*

175.    Mr. Mottla interprets the term "actual weight" as "what the shipment weighs." Depo. of William Mottla, Page 58, Lines 10-16; *See Tab 7.*

176.    Knowledge that the Festo cargo weighed a total of 1,020 pounds and that one of the pieces weighed 812 lbs. would be important information for Arpin to know with respect to its planning. Depo. of William Tweedy, Page 33, Lines 4-11; *See Tab 6.*

177.    William Tweedy told Joe Rocha and Shawn Pouliot that a rear liftgate would be

required for the delivery because that is what was "specified in the instructions"  Depo. of William Tweedy, Page 71, Lines 13-20; *See Tab 6.*

178.    In his conversations with Festo prior to the accident no one told William Tweedy that the weight of the Learnline 2000 unit was 812 lbs.  Depo. of William Tweedy, Page 72, Lines 4-8; *See Tab 6.*

179.    Prior to Plaintiff's injuries, Arpin was never told that the Festo Learnline 2000 unit weighed 812 lbs. and was on wheels that rotated 360 degrees.  "Shipment Booking Order"*; See Tab 5.*

180.    If Michael Montgomery had all the information from the Shipment Booking Order, he would have provided Shawn Pouliot with the same equipment that Pouliot was provided with for the Festo shipment.  Depo. of Michael Montgomery, Page 127, Lines 11-23; *See Tab 2.*

181.    At the time of the delivery, the liftgate on the truck involved in the accident was in working order.  Depo. of  Irving Ojalvo, Page 100, Lines 15-23; *See Tab 14.*

182.    The Maxon 72-25A Tuk-A-Way liftgate is designed to tilt to the rear. Depo. of V. Paul Herbert, Page 40, Lines 1-5*; See Tab 8;* Depo. of Arnold Kowal, Page 32, Lines 10-19; *See Tab 9;* Depo. of Terry Morgan, Page 41, Lines 20-24; *See Tab 10.*

183.    The liftgate used by Mr. Pouliot on the truck involved in the accident had a weight capacity up to 2,500 pounds.  Depo. of Irving Ojalvo, Page 174, Lines 6-15; *See Tab 14.*

184.    Based on the information provided to Arpin prior to delivery regarding the weight and size of the Festo unit, the liftgate on the truck was big enough to hold each unit of the delivery individually.  Depo. of William Tweedy, Page 67, Lines 12-17; *See Tab 6*; Depo. of Joseph Rocha, Page 63, Lines 10-24; Page 64, Lines 1-5*; See Tab 1.*

185.    It was Festo and Trans-Expo's duty to ensure that the correct weight of the Learnline unit was provided to Arpin. Depo. of V. Paul Herbert, Page 61, Lines 20-25; Page 62, Lines 1-6; Page 63, Lines 20-25; *See Tab 8.*

186.    The accident would not have happened if the correct information had been provided by Festo and Trans-Expo to Arpin.  Depo. of V. Paul Herbert, Page 65, Lines 17-20; *See Tab 8.*

Defendants Paul Arpin Van Lines, Inc. and
Arpin Logistics, Inc.,
By their attorneys:


_____/s/ Thomas J. Grady_____
Thomas J. Grady, Esq. CT 17139
LENIHAN, GRADY & STEELE
6 Canal Street, P.O. Box 541
Westerly, R.I.  02891
(401) 596-0183
(401) 596-6845 (Fax)
tjg19872@aol.com


_____/s/ Karen Frink Wolf_____
Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF &
LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 5th day of January, 2005 to the following:

Michael A. Stratton, Esq.
Stratton Faxon
59 Elm Street
New Haven, CT  06510

Roland F. Moots, Jr., Esq.
Moots, Pellegrini, Spillane & Mannion
46 Main Street, PO BOX 1319
New Milford, CT 06776-1319

Thomas J. Grady, Esq.
Lenihan Grady & Steele
6 Canal Street
PO Box 541
Westerly, RI 02891-0541
401-596-0183

James R. Oswald, Esq.
Adler, Pollock & Sheehan
2300 BankBoston Plaza
Providence, RI  02903

Susan O'Donnell, Esq.
Halloran & Sage
One Goodwin Sq., 225 Asylum St.
Hartford, CT  06103

_____/s/ Karen Frink Wolf_____ _____
Karen Frink Wolf, Esq. CT 26494