**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SHAWN POULIOT | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) 3:02 CV 1302 (DJS) |
| | ) |
| PAUL ARPIN VAN LINES, INC., | ) |
| ET AL. | ) JANUARY 10, 2005 |

<u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE ARPIN
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

The plaintiff files this memorandum of law in opposition to the Arpin defendants'

motion for summary judgment.  The motion should be denied since: 1. Arpin simply

attempts to rehash its previously rejected arguments on the issue of workers'

compensation exclusivity which were fully dealt with by this court in its ruling on the

motion to dismiss [Doc. # 217]; 2. The owner/operator agreement nowhere indicates

that Mr. Pouliot released Arpin for Arpin's future negligent acts that may injure Mr.

Pouliot; 3.  Pouliot has established that a dispute of fact exists as to whether

Festo/Trans Expo are agents of Arpin, whether they were engaged in a joint venture

and whether Arpin is liable for the actions of Festo and Trans Expo; and 4.  A question

of fact exists whether Arpin's misconduct could be classified by a jury as reckless.  As

such, the motion for summary judgment must be denied.

**I.    ARPIN'S ARGUMENT THAT THE PLAINTIFF IS AN AN EMPLOYEE AND NOT AN INDEPENDENT CONTRACTOR IS FALLACIOUS**

The plaintiff was hired by Arpin at Arpin's insistence as an "independent contractor". During the course of this litigation Arpin has attempted to magically transform him into an employee so as to avoid paying damages as assessed by a jury for causing him to be rendered a paraplegic. Arpin relies on the law of Rhode Island - but the plaintiff disputes the application of Rhode Island law for analysis of the exclusivity defense since Connecticut law should apply – but even if Rhode Island law is applied Arpin cannot prevail since it is not entitled to judgment as a matter of law and since there are disputes of material facts.[1] Initially, the plaintiff will address the applicable law and then discuss the substance of Arpin's claims.

"A federal court sitting in diversity must follow the choice-of-law rules of the forum state to resolve conflict-of-law questions. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); AroChem International, Inc. v. Buirkle, 968 F.2d 266, 269-70 (2d

---

[1] Even if the court rules that workers' compensation exclusivity is a viable defense the motion cannot be granted since the inquiry is one of fact based on the circumstances of the case. See Antignani v. Britt Airways, 58 Conn. App. 109, 113, cert. denied, 254 Conn. 911 (2000) (improper to strike workers' compensation defense – inquiry is usually one of fact). The same is true in Rhode Island. See Pietrafesa v. Board of Governors, No. 91-0083, 1992 U.S. Dist. LEXIS 10175, at *5 (D.R.I. June 29, 1992) (employer/employee relationship is a question of fact).

Cir. 1992); <u>Economu v. Borg-Warner Corp.</u>, 652 F.Supp. 1242, 1246 (D.Conn.), <u>aff'd</u>, 829 F.2d 311 (2d Cir. 1987)."  <u>Valtec International, Inv. v. Allied Signal Aerospace Co.</u>, No. 3:93cv01171(WWE), 1997 U.S.Dist. LEXIS 7670, at *3-4 (D.Conn. 1997).

"Although the Connecticut courts have traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury or *lex loci delecti*, in <u>O'Connor v. O'Connor</u>, 201 Conn. 632 (1986), the Connecticut Supreme Court explicitly abandoned 'categorical allegiance' to this doctrine in tort cases.  201 Conn. at 648.  Recognizing that there are circumstances in which strict application of this rule will frustrate the legitimate expectations of the parties and will undermine important state policies, the Court adopted the choice-of-law rules promulgated in the Restatement (Second) of Conflict of Laws as the governing principles for those cases 'in which application of the doctrine of lex loci would produce an arbitrary, irrational result.'  201 Conn. at 649-50."  <u>Valtec International, Inc.</u>, 1997 U.S.Dist.LEXIS 7670, at *4.

"<u>O'Connor</u> instructs that a court should first ascertain whether the doctrine of *lex loci* should be applied in its entirety based on the facts of the particular case.  If not, then the relative significance of the various factors set forth in §§ 145 & 6 of the Restatement (Second) Conflict of Laws should be weighed.  201 Conn. at 650-51."  <u>Id.</u> In this case, the rules of *lex loci* would not produce an arbitrary, irrational result,

particularly, as set forth above there is significant contact in this case with the State of Connecticut, thus Connecticut law applies and does not immunize Arpin from Mr. Pouliot's claims.  Even if this court applies Rhode Island law, the exclusivity defense is inapplicable.

Under Connecticut law, when a defendant claims to be a principal employer of the plaintiff, the exclusivity provisions only apply if the defendant has paid workers' compensation to the plaintiff.  See General Statutes § 31-291; Pelletier v. Sordoni/Skanska Const. Co., 264 Conn. 509, 520 (2003) (refusing to immunize employer where no compensation paid).  Here, no compensation has been paid to Mr. Pouliot, the independent contractor.  Thus, no exclusivity attaches.

Moreover, under Rhode Island law, to the extent that Arpin claims that Mr. Pouliot is an employee, this claim was never asserted to Mr. Pouliot by an employee of Arpin until during depositions that occurred on September 16, 2003.  At that time, Arpin produced to Mr. Pouliot, during the deposition of Ms. Silva, for the first time, first reports of injury claiming that Mr. Pouliot was an employee.  See Appendix A, Exhibits 11-14 (Appendix A attached the the plaintiff's Local Rule 56(a)(2) Statement is the documentary evidence submitted by the plaintiff in opposition to Arpin's Motion to Dismiss and is reproduced for the ease of the court).  Under Rhode Island law, a person

claimed to be an employee can opt out of the workers' compensation system and preserve his or her common law rights if a filing is made with the workers' compensation board within 10 days.  <u>See</u> R.I.G.L. § 28-29-17.  After receiving a claim that he was an employee, Mr. Pouliot immediately filed the opt out form with the state within the 10 day period allowed by statute.  <u>See</u> Appendix A, Exhibit 21.  Thus, Mr. Pouliot has preserved his common law rights as against Arpin.  The law of Connecticut and Rhode Island do not preclude the claims by Mr. Pouliot in this case.

Moreover, in Arpin's "Eleventh Defense: Independent Contractor" asserted in the Amended Answer dated August 15, 2003, Arpin alleges that "The Plaintiff, Shawn Pouliot, was an independent contractor who undertook the pickup and delivery of equipment in his capacity as an independent contractor . . . ."  Admissions in pleadings such as this are judicial admission binding on the party making the statement.  <u>See</u> <u>Keller v. United States</u>, 58 F.3d 1194, 1198 n.8 (2d Cir. 1995); <u>Peckham Materials Corp.</u> <u>v. Raima Corp.</u>, 90 Civ. 4134(JSM), 1995 U.S. Dist. LEXIS 10046, at *1 (S.D.N.Y. July 18, 1995) (prohibiting plaintiff from contradicting at trial statements of fact made in complaint).  Arpin now disingenuously asserts (as it has a history of doing in this litigation similar to the claim that the plaintiff intentionally and premeditatedly caused himself to be rendered paralyzed) that he is not, in fact, an independent contractor but rather an employee – to suit its legal needs.  Arpin should be estopped from denying

this allegation and appropriate sanctions should be ordered against Arpin for the plaintiff being required to respond to this portion of the motion.

The plaintiff was rendered a paraplegic as a result of the defendants' negligent maintenance and inspection of the lift gate on a truck that they had provided to the plaintiff.  The defective leased vehicle was registered in Connecticut as was the vehicle that the plaintiff usually operated which was out of service at the time of the injury. Appendix A, Tr. of Anita Labossiere at 6-8.  Prior to the date of the plaintiff's injuries the parties entered into an "Owner Operator Agreement", see Appendix A, Exhibit 10, whereby Mr. Pouliot, in ¶ 1(A)(a) "represents, warrants and covenants that he is an independent Contractor only, and is not an employee of the Company."  Further, the "Owner Operator Agreement" states at ¶ 13 that "nothing contained in this contract shall be deemed to create an agency, joint venture, partnership, or any other legal relationship except that of the carrier and independent contractor."  Appendix A,Tr. of Joseph Rocha at 8.  Mr. Pouliot was paid on a 1099, had no taxes withheld, see Appendix A, Exhibit 2, had no benefits provided by Arpin and in order to get workers' compensation he would have to buy his own because his is not included within the Arpin policy.  See Appendix A, Exhibit 10, ¶ 6(d); Appendix A, Tr. of Michael Killoran, at 6, 17.  Mr. Pouliot had to pay for his own helpers (lumpers), had to pay his own fuel

taxes, social security taxes, payroll taxes, property taxes, fines or penalties incurred while driving, carry his own MCS-90 endorsement, and placed his own money in the Arpin escrow account to pay for overhead, including his own workers' compensation insurance if he elected to purchase it.  Appendix A, Tr. of Michael Killoran, at 17-19. Mr. Killoran, identified by Arpin as the person most knowledgeable concerning workers' compensation policies at Arpin, stated that he was not aware of Arpin ever paying for workers' compensation coverage for an owner operator like Mr. Pouliot.  Id. at 19. Killoran was not aware of Arpin ever telling anyone that Mr. Pouliot was an employee. Id. at 20.

At the time Mr. Pouliot signed the owner operator agreement in the presence of Mr. Rocha (wherein he specifically warranted that he was not an employee) he also had to fill out a NAIT Membership Application.  Appendix A, Exhibit 15.  The application permitted him to purchase workers' compensation insurance out of his own funds.  On the second page of the form Mr. Pouliot had to swear "I am not now, nor will I become an employee of a motor carrier [i.e. Arpin] while this contract is in force."  Id.  The workers' compensation premium is deducted from Mr. Pouliot's paycheck.  Appendix A, Tr. of Joseph Rocha at 15-16.  As indicated on Appendix A, Exhibit 16, Mr. Pouliot purchased his own workers' compensation and occupational accident insurance from American Automobile Ins. Co.  American Automobile Ins. Co. is not the company that

Arpin submitted Mr. Pouliot's claim to some 20 months after the injury.  Beacon

Insurance, Arpin's Rhode Island carrier, is the company that Arpin contacted after this

case had been pending for some time.  See Appendix A, Exhibits 11 & 12.

On the date of the injury Mr. Pouliot was starting a delivery in New York and

ending in Connecticut at the location where he sustained his injuries.  Appendix A, Tr. of

Joseph Rocha, at 14.  Shortly after the injury Mr. Rocha and other executives at Arpin

became aware of his injury.  Id. at 21.  The employer, however, filed no workers'

compensation claim or first report of injury.  Id. at 22.  Connecticut law requires the

employer to provide medical care and compensation to the employee as soon as it has

knowledge of the injury.  General Statutes § 31-294d (a) (1).  Here, despite having

immediate knowledge of the injury Arpin did nothing.

The filing of a workers' compensation claim was not contemplated until July of

2003, nearly two years after the incident, when Mr. Grady, defense counsel, instructed

clerical employee Patricia Silva to file a workers' compensation claim with the state on

behalf of Mr. Pouliot.  Appendix A, Tr. of Patricia Silva at 12.  Ms. Silva, the workers'

compensation filing coordinator, has never before filed a comp. claim for an owner

operator.  Id. at 9.  Silva prepared the first report of injury on July 24, 2003.  Appendix A,

Exhibit 12.  The claim was made with Beacon Insurance Company, the carrier that Arpin

uses exclusively for Rhode Island employees.  Appendix A, Exhibits 3-6; Appendix A,

Tr. of Michael Killoran at 10, 13-14.  Non-Rhode Island employees are covered under a

policy issued by the Travelers.  Appendix A, Exhibit 8.  If a hypothetical employee was

on the road and injured in another state he or she would not be covered under the

Beacon policy.  Tr. of Michael Killoran at 14.  Despite this lack of coverage, Arpin, at its

counsel's instigation, filed a claim on Mr. Pouliot's behalf in July of 2003 in order to

trump up a workers' compensation defense.[2]  At the very least, a question of fact exists

as to whether the plaintiff was an employee.  See Antignani, 58 Conn. App. at 113

(improper to strike workers' compensation defense – inquiry is usually one of fact).[3]

The court should deny the motion for the reasons set forth above, but it should also

deny it since the C.F.R. sections cited by Arpin do not immunize the defendants from

liability as previously decided by Judge Squatrito in the Ruling on the Motion to Dismiss

[Doc. # 217].

    While Arpin cites several cases that do not attack the issue head-on, the

---

[2]  Arpin secretly filed the notice of compensation in July, 2003 and never provided a copy to Mr. Pouliot in violation of R.I.G.L. § 28-35-15 (even though Arpin claims R.I. law applies).

[3]  Arpin argues with no persuasive basis that the law of Rhode Island applies to the workers' compensation inquiry.  There is no reason that the tort law of Connecticut should not apply given the fact that the most significant contacts concerning the plaintiff's injuries were clearly in Connecticut.  See Valtec International, Inc., 1997 U.S.Dist.LEXIS 7670, at *4.

Supreme Court of Pennsylvania has addressed the issue in the context of a workers'

compensation claim and held, as a matter of law, that the Federal Regulations relied on

by Arpin do not create an employer/employee relationship and permit the parties to

make independent contractor agreements consistent with 49 C.F.R. § 376.12(c)(4).

See Universal Am. Can Ltd. v. Workers' Compensation Appeals Board, 762 A.2d 328,

334 (Pa. 2000).  The Court held that the regulations are designed to protect the

motoring public, not mandate federal workers' compensation benefits on states, id. at

335, an area traditionally controlled by the States.  In Universal, the claimant was an

owner operator who was hurt while unloading a truck.  The court examined the

relationship and held that "[s]imply stated, we agree with Universal Am-Can that based

upon the unequivocal language contained in § 376.12(c) (4), the regulation found at §

376.12(c) (1), relating to possession, control, and use does not mandate a

determination of employee status."  Id. at 332.  The court placed in proper perspective

the Federal Regulations by indicating (in reliance on courts in other jurisdictions):

> Restrictions upon a workers' [sic] manner and means of performance that spring
> from government regulation (rather than company initiatives) do not necessarily
> support a conclusion of employment status. Indeed, employer efforts to ensure
> the workers' compliance with government regulations, even when those efforts
> restrict the manner and means of performance, do not weigh in favor of
> employee status. "The employer cannot evade the law . . . and in requiring
> compliance with the law he is not controlling the driver. It is the law that controls
> the driver." North American Van Lines, Inc. v. National Labor Relations Board,

869 F.2d 596, 599 (D.C. Cir. 1989) (citations omitted). <u>See</u> <u>also</u> <u>National Trailer</u>
<u>Convoy, Inc. v. Employment Security Agency of Idaho</u>, 360 P.2d 994, 996 (Idaho
1961) ("Requirements that truck and driver meet Interstate Commerce
Commission standards . . . point toward compliance with governmental
regulations, and are not indicia of an employer-employee relationship.").

<u>Id.</u> at 335. The law is clear that Federal Regulations do not mandate state workers'

compensation benefits and do not immunize Arpin. As such, Arpin's motion for

summary judgment on this point must be rejected in its entirety.

## II.  <u>THE OWNER/OPERATOR AGREEMENT DOES NOT ABSOLVE ARPIN FROM LIABILITY</u>

The clauses in the agreement that Arpin relies on in an effort to immunize itself

for its own tortuous conduct do not, by their vague terms, eliminate the plaintiff's cause

of action. At best, its vague wording would require the plaintiff to indemnify Arpin for

injuries sustained by third parties - but not himself. The first clause is extremely vague

but appears to deal with damage to the vehicle or its contents. The text is set out here:

It is expressly understood by the Contractor that in no event does the
Carrier assume any liability of any nature whatsoever to the contractor for any
loss or damage which the Contractor may sustain in the operation of his
Equipment whether such loss or damage may result from fire, theft, collision,
or other casualty. Contractor may purchase insurance independently or through
the Carrier.

Appendix A, Exhibit 10, Page 11, ¶ 8(b). This text does not clearly and unambiguously

immunize Arpin for its negligent acts causing the plaintiff permanent personal injury.

Further, the plain language of the second clause is incomprehensible but appears to apply to injuries or death to the Contractor's employees or third parties or acts or omissions of the contractor in connection with the operation of the equipment – but does not immunize Arpin for its negligent acts causing catastrophic injury to the plaintiff.  The language of this clause appears to apply to claims by third parties against Arpin for which the Contractor, Mr. Pouliot, would be responsible.  It is far from clear that direct torts by Arpin against Mr. Pouliot are covered by the language of the clause. The text is set out below.

> Contractor agrees to indemnify, save and hold Carrier free and harmless from and against any and all claims, demands, liabilities damages, losses, judgments, awards, causes of action at law or in equity, including but not limited to **those involving injury to, or death of, Contractor's employees and/or third parties and damages to property** including but not limited to, cargo, and attorney's fees and all reasonable costs of litigation and from and against any obligation, whatsoever arising out of or attributable to any act or omission of the Contractor in connection with the operation or maintenance of the Equipment, and **in connection with Contractor's performance of transportation of other Services hereunder.**

Appendix A, Exhibit 10, Page 12, ¶ 9 (emphasis added).  The underlined passages do not clearly and unambiguously provide Arpin with immunity.  The second passage, relied on by Arpin, has no comprehensible meaning.  Arpin would like itself to be immunized in connection with "performance of transportation of other services

hereunder." What in the world does that mean? The law does not condone the provision of immunity to a defendant based on such weak and ridiculous drafting.

It is well established that ambiguities in agreements are resolved against their drafters and in favor of the plaintiff here. ZAKS v. TES Franchising, No. 3:01cv2266(JBA), at 5 (D.Conn. July 9, 2004). The law relating to exculpatory agreements requires a strict construction and ambiguities will nullify the purported exculpatory agreement. See B&D Associates v. Russell, 73 Conn. App. 66, 72 (2002). As the Supreme Court recently held, "[i]n keeping with the well established principle that 'the law does not favor contract provisions which relieve a person from his own negligence' we conclude the better rule is that a party cannot be released from liability for injuries resulting from its future negligence in the absence of language that expressly so provides." See Hyson v. White Water Mountain Resorts, 265 Conn. 636, 642-43 (2003) (quoting Griffin v. Nationwide Moving, 187 Conn. 405, 413 (1982)). "Because releases from future damages caused by negligence are not favored, 'if possible, the contract will be construed not to confer this immunity.' 8 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 19:24, at 301-03 (4th ed. 1998) ("Willston"). The law disfavors exculpatory contracts 'because they tend to allow conduct below the acceptable level of care.' Yauger v. Skiing Enterprise, Inc., 557 N.W.2d 60, 62 (Wis. 1996). This does not mean that contracts of this description are

automatically void and unenforceable.  Rather, the courts closely examine the particular

agreements in question.  'Language inserted by a party in an agreement for the purpose

of exempting him from liability for negligent conduct is scrutinized with particular care

and a court may require specific and conspicuous reference to negligence under the

general principle that language is interpreted against the draftsman.'  RESTATEMENT

(SECOND) OF CONTRACTS § 195 cmt. b (1981)."  <u>Malin v. White Water Mountain

Resorts, Inc.</u>  Superior Court, judicial district of New Haven, 2001 Conn. Super. LEXIS

768, at *4-5 (Mar. 16, 2001, Blue, J.).

 In addition to the above arguments, the plaintiff disputes whether the law of

Rhode Island applies to this inquiry.  Under Connecticut law the exculpatory agreement

is *per se* insufficient to immunize Arpin since it does not specifically state that even if

Arpin was "negligent" it would not have liability.   <u>See</u> <u>Hyson,</u> 265 Conn. at 642-43.

 Even under Rhode Island law the clause is insufficient to insulate Arpin for

liability for its own negligence due to its ambiguity.  <u>See</u> <u>Dower v. Dower's Inc.</u>, 214

A.2d 437, 439 (R.I. 1966) (strict construction of exculpatory clauses construed against

the drafter - indemnification denied due to vague language similar to this case).

Moreover, there are no cases in Rhode Island that specifically deal with the issue of an

exculpatory clause in a personal injury action where the victim of a tortfeasor is stripped

of his right to bring a claim.  In such circumstances more demanding exculpatory clauses are usually required as compared to non-personal injury situations.  See Hyson, 265 Conn. at 642 n.6 (issues of acquisition of casualty loss insurance for damages and equality of bargaining power considered where personal injuries not involved).  Here, in a situation where the injury occurred in Connecticut and the clause is asserted to defend against a tort claim in Connecticut, the court should require the release to comport with Connecticut law.  Accordingly, since it is vague, ambiguous and lacks the required content to immunize Arpin the motion for summary judgment on this point should be denied.

### III.     ARPIN IS LIABLE FOR THE ACTS OF THE CO-DEFENDANTS

Under Federal Trucking Regulations and as assumed by the owner/operator agreement, Arpin is liable for the acts of the agents it hires in connection with the actions of a for-hire motor carrier even if the agents are not strictly employees of the motor carrier.

In this case federal law makes Arpin liable for the actions of the co-defendants in connection with their actions related to the delivery of the load that ultimately injured the plaintiff.  Arpin utilized the co-defendants in connection with its actions in interstate commerce and chose to delegate to them certain responsibilities in connection with the safe shipping of the products.  Per the contract with the plaintiff, Arpin represented that

it had exclusive control over the shipments, and that they would provide all the information relevant to such shipments.

Arpin then contracted with Trans Expo to meet those responsibilities including: 1) entering into contracts with shippers; 2) determining original destination address; 3) nature of item to be shipped; 4) the particular requirements of each job, i.e., need for liftgate, inside job, weight, dimensions.

According to federal regulation and the contract, Trans Expo performed responsibilities that were the ultimate obligation of Arpin.  Arpin cannot escape liability to the plaintiff because their contractor arguably performed these jobs poorly. The law is clear that under certain circumstances there are non-delegable duties and when negligence is committed by a surrogate (in this case Festo and Trans-Expo) liability attaches to the entity in charge. The fact that the surrogate is not a common law agent of Arpin is irrelevant - the liability on the entity with the non-delegable duty, here Arpin, is vicarious in nature.  See, e.g., Gazo v. Stamford, 255 Conn. 245, 252-53 (2001).  In this case federal law imposes vicarious liability.

The FMCSA does not permit the motor carrier to pawn off its liability for operation and negligence in connection with its actions as a for-hire motor carrier.  In this case that is what Arpin is attempting to do.  It is liable for the actions of the co-defendants

since it relied on them, in part, in an effort to comply with the cargo securement and safety requirements of 49 C.F.R. §§ 392.9, 393.1, et. seq. & 396.3. Furthermore, under the contract, Appendix A, ¶ 2(a) & (b), Arpin assumes exclusive control over "all operations with the Equipment" and states that "transportation will be conducted under [Arpin's] waybills, bills of lading, freight bills, manifests, and other shipping documents as required by Federal and State regulations." Under federal law and the contract Arpin has assumed and is charged with a non-delegable duty of safety that it must execute.

Under Restatement (Second) of Torts § 428 (1965), "a corporation carrying on an activity which can be lawfully carried on only under a franchise created by public authority and which involves unreasonable risk of harm to others is subject to liability for physical harm caused to such others by negligence of the contractor employed to do work in carrying on the activity." See also Engelke v. Eugene Wheatley, 148 Conn. 398, 405-06 (1961) (liability on for hire carrier for acts of independent contractor in trucking context). The liability imposed by the Restatement is accepted in trucking law as evidenced by the content of the treatise 1 D. Nissenberg, The Law of Commerical Trucking § 7-15, at 351 (1998).[4]

---

[4] Even if Rhode Island law were to apply, an issue of fact exists whether the co-defendants are agents of Arpin for purposes of liability based on the content of the owner/operator agreement and Arpin's assumption of exclusive control and direction over the operation. Arpin relies on a disclaimer of agency in its agreements with the co-defendants, but that is not dispositive since a "party cannot simply rely on statements in

Based on the foregoing the motion for summary judgment as to Arpin's vicarious liability for the acts of the co-defendants should be denied.

## IV.    THE JURY MUST DECIDE THE ISSUE OF RECKLESSNESS

Arpin insisted that the plaintiff perform the subject job and had the right to terminate him if he did not.  Arpin's only responsibility was to insure that critical information be conveyed to the plaintiff regarding the shipment <u>and</u> that the equipment provided to the plaintiff was safe.

Arpin failed on both counts.  They knew that the job required a liftgate, and that there would be no dock at the destination.  They also knew that the truck given to the plaintiff was inadequate for this job.  <u>See</u> Appendix D.  They gave the plaintiff none of this information, and required that he do the job anyway.  This rises to the level of recklessness.

Arpin clearly knew of the defects with the truck it provided to the plaintiff and the crucial need the plaintiff had for a properly functioning lift gate but elected to not tell him.  This knowledge of the risk posed to the plaintiff is sufficient to create an issue of

---

an agreement to establish or deny agency."  <u>Butler v. McDonald's Corp.,</u> 110 F.Supp.2d 62, 66 (D.R.I. 2000).  An inquiry into the facts must be made in this case by the jury to determine whether the co-defendants acted as agents or joint venturers of Arpin.  <u>See also</u> <u>In re PCH Assoc.,</u> 949 F.2d 585, 598 (2d Cir. 1991) ("whether a joint venture exists is generally a question of fact").

material fact for the jury.  The Second Circuit recently held that issues such as recklessness and gross negligence (the equivalent of recklessness) are factual determinations particularly suited for the jury under the Seventh Amendment.  <u>See</u> <u>Kerman v. New York</u>, 374 F.3d 93, 116-17 (2d Cir. 2004); <u>Frillici v. Westport</u>, 264 Conn. 266, 277 (2003) (recklessness issue of fact); <u>Grenier v. City of Norwalk</u>, Superior Court, Complex Litigation Docket at Waterbury, 2004 Conn. Super. LEXIS 1659, at *33-36 (June 22, 2004, Alander, J.) (whether police officers' misconduct amounted to reckless action was a question of fact for the jury - summary judgment denied).

## V.    <u>CONCLUSION</u>

Based on the foregoing evidence and law, Arpin's motion for summary judgment should be denied.

THE PLAINTIFF

By_____
Michael A. Stratton
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Federal Bar No. ct 08166
Tel:  (203) 624-9500
Fax: (203) 624-9100
mstratton@strattonfaxon.com

CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. Mail,

postage prepaid, on this date to:

**Thomas J. Grady, Esq.**
**Lenihan, Grady & Steele**
Six Canal Street
P.O. Box 541
Westerly, RI  02891
Fax No. (401) 596-6845

**Roland F. Moots, Esq.**
**Moots, Pellegrini, Mannion, Martindale & Dratch, PC**
46 Main Street
P.O. Box 1319
New Milford, CT  06776-1319
Fax No. (860) 355-8487

**Susan J. O'Donnell, Esq.**
**Halloran & Sage**
One Goodwin Square
225 Asylum St.
Hartford, CT 06103
Fax No. (860) 548-0006

**James R. Oswald, Esq.**
**Adler, Pollock & Sheehan, PC**
2300 Financial Plaza
Providence, RI  02903-2443
Fax No. (401) 751-0604/351-4607

**Harold J. Friedman, Esq.**
**Karen Wolf, Esq.**
**Friedman, Gaythwaite, Wolf & Leavitt**
6 City Center
P.O. Box 4726
Portland, ME 04101-4726
Fax No. (207)-761-0186

_____
Michael A. Stratton