UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SHAWN POULIOT,
   Plaintiff,

v.                                               C.A. No. 3:02 CV1302 (JCH)

PAUL ARPIN VAN LINES, INC.
AND ARPIN LOGISTICS, INC.,
THE FESTO CORPORATION, MICHAEL
D. KOVAC, D/B/A TRANS-EXPO
INTERNATIONAL AND ERICA
RAMIREZ,IN HER CAPACITY AS
EMPLOYEE OFTRANS-EXPO
INTERNATIONAL,
   Defendants.                          February 3, 2005

## REPLY MEMORANDUM OF LAW IN SUPPORT OF FESTO CORPORATION'S MOTION FOR SUMMARY JUDGMENT AS TO THE COMMON-LAW INDEMNITY COUNTS ALLEGED BY PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.

Notwithstanding Arpin's creative attempt in its opposition papers to deny damaging facts, Arpin cannot escape the following fact: <u>it improperly provided Plaintiff with a lift gate, designed to tilt downward as it descended, to unload large, heavy machinery on wheels, because Arpin's customer service representative failed to record either the dimensions of the machinery or the fact that it was on wheels</u>. Nor can Arpin escape the import of this fact: its claims for indemnity fail as a matter of law, because under these facts Arpin cannot establish that its own negligence was merely "passive" or that Arpin had 0% control and Festo had 100% control over the situation that gave rise to Plaintiff's injuries.

## I. ARPIN CANNOT CARRY ITS BURDEN OF ESTABLISHING THAT ITS OWN WRONGDOING WAS MERELY PASSIVE AND THAT IT HAD ZERO CONTROL OVER THE SITUATION GIVING RISE TO THE ACCIDENT

In its opposition to Festo's Motion for Summary Judgment, Arpin concedes that it has the burden of establishing each element under the test for common-law indemnity in order to recover from Festo. See Arpin's Memorandum of Law in Opposition to Festo's Motion for Summary Judgment ("Arpin Mem.") at 5. Yet from a review of Arpin's opposition papers, one would hardly realize that the issue before the Court is the legal insufficiency of Arpin's claim for common-law indemnity. In its Memorandum of Law, Arpin strenuously avoids addressing the question of whether it can establish its claim for indemnity in light of the undisputed evidence establishing that it learned of, but failed to communicate to Plaintiff or to the relevant Arpin personnel, the fact that the Festo machinery was too large for the "tilt-down" lift gate and on wheels. Indeed, in 16 pages of argument, Arpin does not mention, much less discuss, the uncontroverted evidence that its employee, William Mottla, "dropped the ball" by failing to input the dimensions of the Festo equipment, and the fact that it was on wheels, into the Arpin computer system. Instead, Arpin spends 16 pages attempting to explain why Festo is purportedly negligent (indeed, Arpin spends half of its Memorandum arguing two elements of the indemnity claim not argued by Festo in its Motion for Summary Judgment).

Simply stated, Arpin's Memorandum (studiously) misses the point. The issue on Festo's Motion for Summary Judgment is not whether Festo is also purportedly negligent, but rather whether Arpin – in light of the undisputed facts that its customer service representative failed to record critical information regarding the shipment – can establish that its negligence was not active but merely passive, and that it had zero control of the situation giving rise to the accident.

As set forth in Festo's Memorandum of Law, Arpin cannot establish either element needed for its indemnity claim. This conclusion is supported by Arpin's opposition papers. Arpin <u>concedes</u> that its customer service department received from Trans-Expo the Shipment Booking Document containing critical information regarding the Festo shipment, including the fact that the shipment consisted of one workstation and one pallet (Arpin Local Rule 56(a)2 Statement ("Arpin 56(a)2 Statement"), at ¶¶ 22, 27, 30); the dimensions of each piece (<u>id.</u>, ¶¶ 35-36); the fact that a lift gate was needed for delivery of the shipment (<u>id.</u>, ¶ 40); and the fact that Arpin was to take extra caution to protect the workstation and the wheels (<u>id.</u>, ¶¶ 31-33). Arpin <u>concedes</u> that William Mottla, Arpin's customer service representative, did not enter critical information regarding the Festo shipment into the Arpin computer system (<u>id.</u>, ¶¶ 52, 73-74, 101, 117-118).[1] Arpin <u>concedes</u> that Joe Rocha, who chose the "tilt-down" lift gate for this delivery, was not informed that the shipment included machinery on wheels (id., ¶ 83).[2] Arpin <u>concedes</u> that Mr. Rocha testified as follows:

> Q. If you had a job involving an item on wheels, which type of trailer would you send out? What kind of a –
> A. Either the rail gate or an Interlift type gate.
> Q. You wouldn't send out the tuck-away gates?
> A. No.
> Q. Why not?
> A. Just because of the nature of the way it operates.
> Q. In that its angle changes as it moves up and down?
> A. Correct.

---

[1] Arpin concedes that Mr. Mottla did not input this information into the Arpin computer system, but denies that Mr. Mottla "failed" to enter the information. Arpin 56(a)2 Statement, ¶ 71. According to Arpin, when Mr. Mottla testified that "the fact that the wheels needed to be protected and that the unit was on wheels [was] something that needed to get into the computer" (Mottla Dep. at 15), he was only "testif[ying] about the general practices within customer service," rather than the facts and circumstances surrounding this accident. Arpin 56(a)2 Statement, ¶ 71. Arpin fails to explain why the "general practices within customer service" concerning the need to enter critical information into the Arpin computer system should not also have been followed in this case.

[2] Although Arpin "denies" the statement in Paragraph 83 of Festo's 56(a)1 Statement, its 13 single-spaced lines of purported explanation cannot obscure Arpin's admission that Mr. Rocha was not informed that the Festo machinery was on wheels. <u>See</u> Arpin 56(a)2 Statement, ¶ 83.

3

Rocha Dep. (Exh. 1 to Festo's 56(a)1 Statement) at 48, lines 13-24, and at 49, line 1. Arpin concedes that Mr. Rocha also testified as follows:

> Q. Based on your conversations with the dispatchers, did you know the units would be on wheels?
> A. No.
> Q. They didn't tell you that?
> A. No.
> Q. Would that have been important for you to know?
> A. Yeah.

Rocha Dep. (Exh. 1 to Festo's 56(a)1 Statement) at 37, lines 16-24. Arpin concedes that Michael Montgomery, the director of Arpin Logistics, testified as follows:

> Q. [A "tilt-down" lift gate] wouldn't be fine for a six-foot machine?
> A. Right.
> Q. But again nobody told – the dispatcher didn't relay to Shawn that it was a six-foot machine?
> A. Right. At that point Shawn should have called when he looked at the machine. If there's any question with the delivery, that's when the driver calls the dispatcher.
> Q. In any event you agree that a machine above two or three hundred pounds that's on wheels that's six feet, that ought to go down on a rear lift gate with leveling capacity?
> [Objection]
> A. Yes.

Montgomery Dep. (Exh. 3 to Festo's 56(a)1 Statement) at 154, lines 14-24, and at 155, lines 1-5.[3] Arpin concedes that Mr. Rocha also testified as follows:

> Q. So it's not the weight alone that would be a factor [in choosing a lift gate]?
> A. Yeah, right. It's the item.
> Q. Is it on wheels, is it top heavy? So whether it was 400 pounds or 800 pounds, that wouldn't alone have led you to make a change with respect to this particular truck and lift gate?
> A. Correct.

Rocha Dep. (Exh. 1 to Festo's 56(a)1 Statement) at 89, lines 23-24, and at 90, lines 1-6.

---

[3] Arpin denies that "[f]or a six-foot unit on wheels weighing more than two or three hundred pounds, it was unsafe to use a Maxon tuck-away lift gate that tilts down as it descends to the ground" (Arpin 56(a)2 Statement, ¶ 94). Despite Mr. Montgomery's testimony that a six-foot machine above two or three hundred pounds on wheels "ought to go down on a rear lift gate with leveling capacity," Arpin claims that according to Mr. Montgomery, "a rear lift

4

Arpin <u>concedes</u> that Mr. Montgomery also testified as follows:

> Q. Now, looking at F, Exhibit F which is the [computer printout of the Arpin] operations board, does that contain all of the information that was provided on the shipment booking order on Exhibit E?
> A. No.
> Q. There's nothing in Exhibit F regarding the need for a lift gate; is that correct?
> A. No.
> Q. There's nothing there indicating this is an inside job or inside delivery?
> A. No.
> Q. There's nothing there indicating that the item is on wheels?
> A. No.
> Q. There's nothing there indicating that the item requires extra caution?
> A. No.
> Q. And do you know why that is?
> A. No.
> Q. Is that information that should have made it onto Exhibit F [the Arpin computer operations board]?
> A. Yes.

Montgomery Dep. (Exh. 3 to Festo's 56(a)1 Statement) at 35, lines 8-24, and at 36, lines 1-5.

Arpin <u>concedes</u> that Mr. Rocha also testified as follows:

> Q. What is it about the picture [of the mobile trolley workstation] that leads you to conclude that you would not have sent out that truck?
>    \*   \*   \*
> A. Just the overall size, and you really can't base it against anything; but just the overall width of it looks like, to be close to, if not more than, five foot wide which is pretty closed to the limit of that platform that he did work on.
>    \*   \*   \*
> Q. You say that that is approaching the limit of the lift gate that was on this particular truck, right?
> A. Correct.
> Q. So you were given an example earlier where you said if something was ten feet long, you probably would have chosen this; but if something is approaching the limits of the particular lift gate, that would also discourage you from using this particular lift gate, correct?
> A. Correct.
> Q. Why?
> A. From a safety standpoint, you are going to be able to raise – it's going to interfere with the operation of the lift gate. If it's overhanging, it's going to hang off one way or the other and it's just not good safety practice.

---

gate with leveling capacity would be 'safer,' not 'unsafe,' for use with a six-foot machine than a lift gate which tilts to the rear." (<u>Id.</u>)

> Q. That safety issue that you just described, is that accentuated by an item that is approaching the limits of the lift gate that's on wheels?
> A. Yes.
> Q. In what sense?
> A. You are very close to the edge. If those wheels aren't secured or even if they are secured, it's just too close to the edge, too close for comfort.

Rocha Dep. (Exh. 1 to Festo's 56(a)1 Statement) at 160, lines 1-3, 14-18, and at 161, lines 3-24, and at 162, lines 1-4.

In light of this testimony and the other extensive record evidence as set forth in Festo's Rule 56(a)1 Statement, as a matter of law Arpin cannot establish that its negligence was merely passive, "pass-through" type negligence required to completely absolve it of liability through an indemnity claim. In light of the overwhelming evidence to the contrary, as a matter of law Arpin cannot establish that it had <u>zero</u> control over the situation that gave rise to Plaintiff's injuries, and that Festo had 100% control, as would be needed to prove its indemnity claim.[4]

Again, the issue on this motion for summary judgment is not whether Festo was or was not also negligent; the issue is whether, in light of the uncontroverted evidence to the contrary, Arpin can prove that (1) its own negligence was merely passive and Festo's was active, and (2) Arpin had zero control, and Festo had 100% control, over the situation giving rise to Plaintiff's injuries, thereby absolving itself of <u>all</u> liability for Plaintiff's injuries. Although Arpin tries to claim that since the denial of Festo's motion to dismiss "nothing has changed as to the issue at hand" (Arpin Mem. at 6), this contention completely ignores the vast quantity of evidence revealed in discovery demonstrating that Arpin knew critical information about the Festo shipment; that its customer service representative failed to record this information; that Arpin failed to convey this information to either the Plaintiff or the Arpin personnel responsible for

---

[4] In its opposition to Trans-Expo's motion for summary judgment, Arpin simultaneously claims that Trans-Expo had 100% control over the situation giving rise to Plaintiff's injuries. Apparently, Arpin believes that everyone is in exclusive control of the situation, except Arpin.

6

dispatching Plaintiff to unload the Festo shipment; and that, as a result, Arpin personnel chose a "tilt-down" lift gate for heavy, wheeled machinery that Mr. Rocha conceded was not appropriate simply "because of the nature of the way it operates" in that "its angle changes as it moves up and down." (Festo 56(a)1 Statement, ¶¶ 87-88)

Arpin cannot manufacture a genuine issue of material fact regarding its indemnity claim by simply ignoring the facts, or by admitting them only "in part" or "with qualification."[5] See, e.g., Gottlieb v. The County of Orange, 84 F.3d 511, 519 (2d Cir. 1996) (granting defendant's motion for summary judgment where plaintiff's opposition "ignores the record"). As the United States Supreme Court has held, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [and] it should be interpreted in a way that allows it to accomplish this purpose." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). Connecticut courts have not hesitated to grant summary judgment against unsupported indemnity claims such as Arpin's. See Festo Memorandum of Law in Support of Summary Judgment, at 11, 17-18 and cases cited therein. The testimony set forth above and the other undisputed evidence set forth in Festo's moving papers demonstrate that Arpin cannot prove its indemnity claim as a matter of law. Summary judgment should be granted.

---

[5] Arpin's Rule 56(a)2 Statement is rife with other examples of Arpin's creative – though futile – attempts to simply ignore damaging facts. For example, Arpin admits that Mr. Mottla did not "input into the Arpin Logistics computer the fact that the Festo shipment required a lift gate" (Arpin 56(a)2 Statement, ¶ 116), and admits that "[i]t was proper standard procedure at Arpin Logistics to indicate in the computer system that the Festo shipment required a lift gate" (id., ¶ 118) – yet denies that "Arpin Logistics violated its proper standard procedure when it failed to input into its computer system that the Festo shipment required a lift gate" (id., ¶ 120). Likewise, Arpin denies that "if Mr. Rocha saw a photo of that machine and saw how big it was, he would not have chosen that truck with its Maxon "tilt-down" lift gate for the Festo shipment" (id., ¶ 58) – despite Mr. Rocha's testimony, cited by Festo, that "if I saw a photo of that machine and saw how big it was, no, I wouldn't have used that vehicle." (Rocha Dep. (Exh. 1 to Festo's 56(a)1 Statement) at 63, lines 7-9). Additionally, Arpin uses the "Disputed Issues of Material Fact" section of its 56(a)2 Statement not to "list . . . each issue of material fact as to which it is contended there is a genuine issue to be tried" (as required by Local Rule 56(a)2), but rather to manufacture its own set of purportedly undisputed "facts", which it then sets forth in an attempt to defeat summary judgment. See, e.g., Arpin 56(a)2 Statement, ¶ 185 (stating as a "fact" that "[i]t was Festo's and Trans-Expo's duty to ensure that the correct weight of the Learnline unit was provided to Arpin").

## II. ARPIN SHOULD NOT BE PERMITTED TO USE UNSUPPORTED INDEMNITY CLAIMS IN PLACE OF THE PROPER REMEDY OF APPORTIONMENT

Arpin asserts that summary judgment must be denied so that Arpin can present "evidence to a jury and allow the jury to weigh" evidence of Festo's purported wrongdoing. Arpin Mem. at 10-11. However, Arpin will be permitted to present to the jury whatever alleged evidence of Festo's purported "negligence" that it wants – even if summary judgment on the indemnity claims is granted. See Conn. Gen. Stat. § 52-572h(f). As this Court has already found, because Plaintiff "placed the court on notice that liability could be subject to apportionment among Arpin, Festo and any other defendants joined as parties in this case," Arpin will not be precluded from "presenting to the finder of fact for consideration at trial the issue of the apportionment of damages" among the defendants. February 9, 2004 Memorandum of Decision, at 4, and 4 n.2. As Festo noted in its moving papers, this would be true even if Plaintiff were to settle and release his claims with Festo prior to trial. See Conn. Gen. Stat. § 52-572h(n).

Thus, contrary to Arpin's assertions, granting summary judgment to Festo on Arpin's legally deficient indemnity claims does not "absolve [Festo] of liability." Arpin Mem. at 13 n.5. If the Court grants summary judgment to Festo on Arpin's indemnity claims, as it should, Arpin can still present to the jury whatever evidence it desires of Festo's alleged "negligence," and the jury will still apportion liability among the present defendants. Thus, under Connecticut's Tort Reform, even with the indemnity claims dismissed, Arpin will have to pay no more than its apportioned share of liability, and Arpin is more than adequately protected.

Even were the indemnity claims were not legally deficient – which they are – the claims are inappropriate in light of the apportionment of liability that will occur in any event. Arpin should not be permitted to manufacture and pursue unwarranted indemnification claims simply to allay its own unfounded fears of a disproportionate damage award.

8

## CONCLUSION

As Arpin states, "accurate information is imperative to the safe pick-up and delivery of shipments by a carrier such as Arpin" (Arpin Mem. at 3) – particularly when the delivery includes a heavy, six-foot by five-foot by three-foot piece of machinery on wheels, that the Plaintiff is supposed to safely unload with a lift gate designed to tilt downward as it descends.

Arpin concedes that the Shipment Booking Document provided it with critical accurate information about the Festo shipment. Arpin concedes that its customer service representative neglected to record that information in the Arpin computer system. Arpin concedes that the Arpin employees who dispatched Plaintiff on this delivery with this lift gate did not know the dimensions of the machinery or the fact that it was on wheels. Arpin concedes that it had other trucks available for the Festo shipment with lift gates that descended horizontal to the ground. Arpin concedes that Mr. Rocha testified that he "wouldn't send out the tuck-away gates" for a delivery "involving an item on wheels," "because of the nature of the way [this lift gate] operates," in that "its angle changes as it moves up and down." Arpin concedes that Mr. Rocha also testified that "whether [the machinery] was 400 pounds or 800 pounds, that wouldn't alone have led [Mr. Rocha] to make a change with respect to this particular truck."

These undisputed facts prove that as a matter of law Arpin cannot establish either that its negligence was merely passive and not active, or that it had <u>zero</u> control (and Festo had 100% control) over the situation that gave rise to Plaintiff's injuries. The undisputed facts prove as a matter of law that Arpin cannot establish its indemnity claims – claims that in any event are unnecessary given the apportionment of liability that this Court has already decided will occur at trial.

For the aforementioned reasons, and the reasons set forth in its Memorandum of Law, Festo's Motion for Summary Judgment should be granted.

                Defendant,
                THE FESTO CORPORATION,
                By Its Attorneys,

                _____
                JOHN A. TARANTINO, #15980
                JAMES R. OSWALD, #20936
                ADLER POLLOCK & SHEEHAN P.C.
                2300 Citizens Plaza, 8th Floor
                Providence, RI 02903-2443
                Tel: (401) 274-7200
                Fax: (401) 751-0604/351-4607
                Dated: February 3, 2005

## CERTIFICATION

TO:    Michael A. Stratton, Esq.                 Thomas J. Grady, Esq.
Stratton Faxon                            Lenihan, Grady & Steele
59 Elm Street                               6 Canal Street
New Haven, CT 06510             P.O. Box 541
                                            Westerly, RI 02891

Roland F. Moots, Jr., Esq.
Moots, Pellegrini, Mannion, Martindale    Susan O'Donnell, Esq.
  & Dratch                               Halloran & Sage
46 Main Street                            One Goodwin Square
New Milford, CT 06776            225 Asylum Street
                                            Hartford, CT 06103

Harold J. Friedman, Esq.
Karen Frink Wolf, Esq.
Friedman Gaythwaite Wolf & Leavitt
Six City Center
P.O. Box 4726
Portland, ME 04112-4726

      I hereby certify that I caused a true copy of the within, to be mailed, via regular First Class mail, to the above-named counsel of record on this 3rd day of February, 2005.

*323329_1.doc*

11