UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT, | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02-cv-1302 (JCH) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; ARPIN | : | |
| LOGISTICS, INC.; THE FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY | : | |
| AS EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL, | : | |
|     Defendants. | : | MAY 2, 2005 |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 359, 364, and 366]**

Shawn Pouliot ("Pouliot") initiated this lawsuit against Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (collectively "Arpin") alleging that Arpin is liable to him for physical injuries sustained by Pouliot on October 23, 2001. Arpin filed a Third-Party Complaint against The Festo Corporation ("Festo"), Michael D. Kovac d/b/a Trans-Expo International, Inc. ("Trans-Expo"), and Erica Ramirez ("Ramirez"). Thereafter, Pouliot asserted direct claims against the three third-party defendants. Festo, Trans-Expo, and Ramirez seek summary judgment on Arpin's common law indemnification claims against them. Arpin seeks summary judgment on Pouliot's claims against it. Festo, Trans-Expo, and Ramirez' motions are hereby granted. Arpin's motion is granted in part and denied in part.

I.    **FACTS**

Shawn Pouliot ("Pouliot"), a resident of South Carolina, and Arpin Logistics, Inc. ("Arpin"), incorporated in Rhode Island, entered into an Owner-Operator Agreement on

1

March 16, 2001.  Owner Operator Agreement [Dkt. No. 376, Ex. C].  The agreement defined Pouliot as the Contractor and Arpin as the Carrier.  The agreement provided that Pouliot would "pick up, transport and deliver all shipments as directed and instructed by the Carrier."  Id. at 4.  Under the terms of the agreement, Pouliot was required to "represent[], warrant[] and covenant[] that he is an independent contractor only, and is not an employee."  Id. at 2.  Furthermore, Pouliot, under the terms of the agreement, reserved the right to hire employees to help him carry out work on behalf of Arpin, to create his own schedule, and to "accept or reject any assignments tendered to him by the Carrier."  Id.

Pouliot generally used his own vehicle when transporting and delivering shipments on behalf of Arpin.  From October 20 through October 23, 2001, however, Pouliot drove a 1989 Peterbuilt straight truck owned by Paul Arpin Van Lines, Inc., because his own truck was being repaired.  On Saturday, October 20, 2001, Pouliot left Arpin's headquarters in Rhode Island with instructions to pick up a shipment in Hauppauge, New York, and to deliver that shipment to Naugatuck Valley Community College in Waterbury, Connecticut.  Pouliot picked up two pieces of equipment in Hauppauge on the morning of October 23, 2001.  The parties dispute whether Arpin provided Pouliot with all relevant information and equipment with respect to one of the two items to be picked up and delivered, the Learnline 2000.  That unit weighed eight hundred and twelve pounds.  Arpin provided Pouliot five to six straps with which to secure the unit.  Pouliot contends that the truck provided to him for the purposes of pick-up and delivery was defective and not properly equipped.  Specifically, Pouliot claims that the liftgate was defective and that the truck ought not to have been in use.

2

While unloading the Learnline 2000, Pouliot was seriously injured. The unit shifted on the liftgate platform while Pouliot attempted to lower the liftgate. Pouliot attempted to adjust the unit. The parties dispute the details of what exactly occurred as Pouliot attempted to do so. He failed, however, to adjust the placement of the unit which continued to move and seriously injured Pouliot.

II.    DISCUSSION

A.    Standard of Law

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the

3

non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### B.     Arpin's Common Law Indemnity Claim (Counts One and Two)

In a Memorandum of Decision dated February 7, 2004, the court (Squatrito, J.) previously rejected the third party defendants' motions to dismiss Arpin's common law indemnity claims against them on the basis that, construed in the light most favorable to Arpin, Arpin's complaint stated a claim for common law indemnity. The third party defendants now argue that following extensive discovery Arpin has failed to create a question of material fact with respect to these claims and that summary judgment is appropriate.

Arpin cannot seek indemnity from Festo, Trans-Expo, or Ramirez on the basis of a contractual agreement to indemnify. Therefore, its claims are based on the alleged negligence of the third party defendants. "A party seeking indemnification based on a tort theory of liability must prove that the injury resulted from the active or primary negligence of the party against whom reimbursement is sought." Williams v. Hoffman/New Yorker, Inc., 923 F.Supp. 350, 352 (D. Conn. 1996) (internal quotation marks omitted). In order for Arpin's claims against Festo, Trans-Expo, and Ramirez to survive summary judgment, Arpin must provide evidence to support findings of four elements of the claim of common law indemnity. These are the following:

> (1) that the [third party] defendant[s] [were] negligent; (2) that the [third party] defendant[s'] negligence, rather than the negligence with which [Arpin was] found chargeable, was the direct and immediate cause of the

>accident; (3) that the [third party] defendant was in exclusive control of the situation; and (4) that [Arpin] did not know of the [third party defendants'] negligence, had no reason to anticipate it and could reasonably rely on the defendant not to be negligent.

City of Bristol v. Dickau Bus Co., 63 Conn. App. 770, 775 (2001). Where a tortfeasor can prove each of these elements against another tortfeasor, he is entitled to indemnity as an exception to the general rule that "[o]rdinarily there is no right of indemnity or contribution between joint tort-feasors." Kaplan v. Merberg Wrecking Corp.. 152 Conn. 405, 412 (1965).

The third party defendants argue that as a matter of law, there is no material question of fact with respect to the third element of Arpin's claim and that Arpin cannot prove that they were in exclusive control of the situation. While the fact of exclusive control is generally a question of fact, "the issue may properly be decided as a question of law" where it does not "turn upon any meaningful dispute about the alleged facts." Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 705 (1997).

Arpin is charged with "[p]ersonal independent negligence," Kaplan, 152 Conn. at 415, specifically, providing Pouliot with a truck and liftgate inadequate to the task of safely transporting a very large piece of equipment. This fact, however, does not preclude a finding that Arpin may be entitled to common law indemnification. "Personal independent negligence may be passive or secondary negligence." Id.; see also Weintraub v. Richard Dahn, Inc., 188 Conn. 570 (1982). Where, as in this case, however, it is the negligence charged to Arpin that was the "direct, immediate cause of the accident and the resulting injuries," Arpin is not entitled to common law indemnification. Kaplan, 152 Conn. at 416. Furthermore, Arpin has not come forward

5

with evidence that could support a finding that any of the third party defendants was "in control to the exclusion of" Arpin, as is required in order to support a claim for common law indemnification. Id. The Connecticut Supreme Court has stated that "[i]t is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident." Skuzinski, 240 Conn. at 706. The relevant "dangerous condition" is Pouliot's use of an allegedly defective truck and liftgate. The third party defendants had no control over this condition. While their actions may have contributed to Arpin's provision of the truck and liftgate to Pouliot, these allegations do not support a finding of exclusive control on the part of the third party defendants. Arpin argues that its own allegedly negligent actions would not have occurred had it not been for the actions of the third party defendants. Determining whether a party had exclusive control does not turn, however, on whether that party's actions were a "but for" cause of the damages. Viewing the evidence in the light most favorable to Arpin, there is no material question of fact concerning Arpin's common law indemnity claim against from Festo, Trans-Expo, or Ramirez. The third party defendants are entitled to summary judgment on this claim.

    **C.**    **Choice of Law**

Arpin argues that Rhode Island law governs the tort claims; Pouliot argue that Connecticut law applies. While Connecticut has "traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delicti . . . in certain circumstances in which the traditional doctrine does not apply, the better rule is the analysis contained in the Restatement (Second) of the Conflict of Laws." Williams v.

State Farm Mutual Automobile Insur. Co., 229 Conn. 359, 370 (1994); see O'Connor v. O'Connor, 201 Conn. 632 (1986).  In cases where the principle of lex loci delicti results in "an arbitrary, irrational result," Connecticut courts will look to the Restatement (Second) of Conflicts of Laws.  O'Connor, 201 Conn. at 649-50.

The Restatement (Second) requires that this court consider which state "has the most significant relationship to the occurrence and the parties."  Such determination will require consideration of factors, including "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Id.  The relative importance of these factors is determined with respect to the instant issue.

In the instant case, lex loci delicti requires that this court apply Connecticut law as the injury undisputedly occurred in Connecticut.  Such result is not irrational as Connecticut has an interest in protecting workers and ensuring general safety within the state.  Furthermore, while Arpin is incorporated in Rhode Island, it is licensed to transport goods in Connecticut.  Therefore, Connecticut has an interest in its operations and the manner in which those operations are performed.  In this case, therefore, because the application of lex loci delicti does not yield an "arbitrary, irrational result" the court will apply the law of Connecticut to Pouliot's tort claims.

### D.    Worker's Compensation

In a Memorandum of Decision dated November 26, 2003, this court (Squatrito, J.) previously rejected Arpin's motion to dismiss on the ground that federal laws classifying Pouliot as an employee covered by the worker's compensation provision of

Rhode Island law pre-empted the instant action. [Dkt. No. 217]. The court noted that a factual dispute existed with respect to whether Pouliot was an employee or independent contractor of Arpin. Id. at 16-17.

The Connecticut Supreme Court has stated that, in the context of worker's compensation law, choice of law depends on an interests analysis approach. Simaitis v. Flood, 182 Conn. 24, 31-33 (1980). Furthermore, "the state of the injury has an interest in compensating employees injured within its borders." Id. (citing Carroll v. Lanza, 349 U.S. 408 (1955)). In the instant case, while Connecticut maintains an interest in compensating Pouliot because he was injured in this state, Rhode Island has an interest in limiting the liability of Arpin, a Rhode Island corporation, for Pouliot's injury.

The Owner-Operator Agreement entered into by Pouliot and Arpin provides that Pouliot is "an independent Contractor only, and is not an employee of the Company." Owner Operator Agreement [Dkt. No. 376, Ex. C] at 2. The term "employee" is defined by Rhode Island statute to include "any person who has entered into the employment of or works under contract of service or apprenticeship with any employer . . . ." R.I. Gen Laws § 28-29-2(4); see DiRaimo v. DiRaimo, 117 R.I. 703, 707-08 (1977). While the determination of whether an individual is an employee is highly fact-determinative, Laliberte v. Salum, 503 A.2d 510, 513 (R.I. 1986), the fact that the parties to this action contracted that Pouliot was an independent contractor and not an employee is highly relevant. In fact, Arpin concedes as much in its Amended Answer, wherein it asserts that Pouliot was "an independent contractor who undertook the pickup and delivery of equipment in his capacity as an independent contractor . . ." Am. Answer and

Crossclaims of Def. Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. to Fifth Am. Compl. of Shawn Pouliot [Dkt. No. 314] at 16.

Furthermore, the following facts support a finding that Pouliot was not an employee subject to the exclusivity provisions of Rhode Island's worker's compensation law: Pouliot hired and paid his own helpers; he paid his own taxes, including social security taxes; and, notably, held his own workers' compensation policy. Arpin's argument that federal law requires that Pouliot be considered an employee has been previously addressed and rejected by this court. [Dkt. No. 217] Pouliot, an independent contractor, has the right to enforce his common law rights with respect to the October 23, 2001 accident.[1]

### E.     Negligence

Arpin argues that it cannot be liable for any negligence on its part because the Owner-Operator Agreement limits such liability. The Owner-Operator Agreement includes a choice of law clause which provides that it "shall be interpreted under the laws of the State of Rhode Island." Owner Operator Agreement [Dkt. No. 376, Ex. C] at 16. Under Rhode Island law, "exculpatory indemnification clauses relieving a person from his or her own negligence" are enforceable so long as such clauses are

---

[1] Pouliot argues that he effectively opted out of Rhode Island's Workers' Compensation system by filing a notice pursuant to Rhode Island General Law §28-19-17 following notification by Arpin that it intended to allege that Pouliot was an employee and, therefore, subject to the workers' compensation exclusivity provision. Rhode Island General Law §28-19-17 provides that an employee must provide such notice within ten days of the time of the contract of hire or appointment. Pouliot filed his notice within ten days after Arpin indicated its intention to argue Pouliot was an employee but well after such ten day period would have expired had he been hired as an employee. Because the court finds that Pouliot was not hired as an employee, the court need not decide whether Pouliot successfully opted out pursuant to §28-19-17.

"sufficiently specific." Corrente v. Conforti & Eisele Co., Inc., 468 A.2d 920, 922 (R.I. 1983) (citing Dower v. Dower's Inc., 217 A.2d 437 (1966)); see also Crowther v. Mariner Square Condominium Ass'n, 667 A.2d 789, 790 (R.I. 1995) (per curiam). Rhode Island law provides for enforcement of "exculpatory-indemnification clauses that negate liability for an individual's own negligence if the clause is sufficiently specific." Rhode Island Hospital Trust Nat'l Bank v. Dudley Service Corp., 605 A.2d 1325, 1327 (R.I. 1992) (emphasis added). The relevant clause need not, however, specifically include the term "negligence." Best Impressions v. Port Edgewood, Ltd., 641 A.2d 1323, 1324 (R.I. 1994). Instead, the court considers "the intent of the parties as expressed in the contract." Id.

The court concludes that the relevant provisions of the Owner-Operator Agreement are not sufficiently precise to excuse Arpin from liability for its own negligence. The first provision cited by Arpin provides that "[i]t is expressly understood by [Pouliot] that in no event does [Arpin] assume any liability of any nature whatsoever to [Pouliot] for any loss or damage . . ." Owner Operator Agreement [Dkt. No. 376, Ex. C] at 11. The provision could be read to state either one of two principles. It could be read, as Arpin argues, to provide that Arpin has no liability for damages suffered by Pouliot. Alternatively, it could be read to provide that Arpin will not indemnify Pouliot for liability to him for losses or damages sustained by third parties. As the provision is not clear, it will not, under Rhode Island law, be read to disclaim Arpin's liability for its own negligence.

The second provision cited by Arpin to support its claim that it cannot be held liable for negligence is explicitly related to injury to Pouliot's employees and any third

10

parties. See Owner Operator Agreement [Dkt. No. 376, Ex. C] at 12. That provision provides that:

> [Pouliot] agrees to indemnify, save and hold [Arpin] harmless from and against any and all claims, demands, liabilities, damages, losses, judgments, awards, causes of action at law or in equity, including but not limited to those <u>involving injury to or death of, [Pouliot]s employees and/or third parties and damages to property</u> including but not limited to, cargo and attorney's fees and all reasonable costs of litigation, and from and against any obligation whatsoever <u>arising out or attributable to any act or omission of [Pouliot] or any of the persons engaged or employed by [Pouliot]</u> in connection with the operation or maintenance of the Equipment, and in connection with [Pouliot's] performance of transportation of [sic] other services hereunder.

Owner Operator Agreement [Dkt. No. 376, Ex. C] at 12 (emphasis added). A reasonable reading of this less-than-clear clause would be that Pouliot indemnifies Arpin for damages to persons other than Pouliot resulting from the negligence of Pouliot or one of his employees. The second portion of the clause holds Arpin harmless from liability arising from Pouliot's actions, not, as in suit here, Arpin's acts or omissions. Certainly, given the standards under Rhode Island law for reading such provisions, neither provision is "sufficiently specific" under Rhode Island law to excuse Arpin from liability for its own negligence. Therefore, a genuine issue of material fact exists with respect to Arpin's negligence and any liability arising therefrom.

    F.    **Vicarious Liability**

Pouliot claims that Arpin is vicariously liable for any acts of Festo, Trans-Expo, or Ramirez that resulted in injury to Pouliot. Pouliot argues that federal trucking regulations impose liability on Arpin for the acts of individuals it hires in connection with its work as a for-hire motor carrier. Pouliot cites no statute or case law for this conclusion. The treatises cited do not address the situation here, where a trucking

company hires a freight forwarder, like Trans-Expo, or picks up and delivers a shipment on behalf of a shipper, like Festo. Instead, they address the company's hiring of a trucker to make the shipment.

Pouliot argues that it is the responsibility of the finder of fact to determine whether Festo, Trans-Expo, and Ramirez were agents of Arpin or, instead, whether they were engaged in a joint venture with Arpin. It cites to no evidence, however, on which a jury could make such a factual determination in its favor. Pouliot has failed to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Therefore, Arpin is entitled to summary judgment on Count Seven of the Fifth Amended Complaint [Dkt. No. 201].

### G.     Recklessness

Arpin argues that Pouliot has failed to allege sufficient facts to support a claim for recklessness. "Recklessness is a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence." Dubay v. Irish, 207 Conn. 518, 532 (1988) (internal citations, quotation marks and alterations omitted). Under Connecticut law, recklessness may be inferred from a party's conduct. Id. Whether conduct is reckless is a question of fact to be determined by the trier of fact. Frillici v. Town of Westport, 264 Conn. 266, 277-278 (2003) (holding that trial court's factual finding regarding recklessness was not clearly erroneous). Summary judgment may, however, be appropriate where the relevant facts are

undisputed and "when the mind of a fair and reasonable man could reach but one conclusion" on the basis of those facts.  Dubay, 207 Conn. at 535 n. 10.

When determining whether a plaintiff has alleged a cause of action sounding in recklessness, Connecticut courts consider whether the plaintiff has sufficiently alleged that the defendant's behavior was wilful, wanton, or reckless.  "[W]illful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."  Craig v. Driscoll, 262 Conn. 312, 342-343 (2003) (internal quotation marks omitted).  Such conduct "must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or simply inattention."  Id. at 343 (internal quotation marks omitted).  In the instant case, relevant and material facts are disputed.  Furthermore, a rational fact-finder could infer, from the facts as alleged by Pouliot, that Arpin's actions were reckless.  Providing an individual with a defective vehicle with which to transport an 800-pound piece of equipment may be considered reckless behavior, undertaken with a wanton disregard for the possibility of injury to that individual, in a situation where danger is apparent.

### III.   CONCLUSION

For the reasons discussed above, Arpin's motion for summary judgment [Dkt. No. 364] is DENIED in part and GRANTED in part.  Festo's motion for summary judgment [Dkt. No. 359] is GRANTED.  Trans-Expo and Ramirez' motion for summary judgment [Dkt. No. 366] is GRANTED.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 2nd day of May, 2005.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge