UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 MAY -5  A 11: 24
U.S. DISTRICT COURT
BRIDGEPORT. CONN

SHAWN POULIOT )
 )  CIVIL ACTION NO.
VS. )  3:02 CV 1302 (JCH)
 )
PAUL ARPIN VAN LINES, INC., )
ET AL. )  APRIL 29, 2005

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE ARPIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff files this supplemental memorandum of law in opposition to the Arpin defendants' motion for summary judgment to further address the issue of the release defense asserted by Arpin.

The clauses in the agreement that Arpin relies on in an effort to immunize itself for its own tortuous conduct do not, by their vague terms, eliminate the plaintiff's cause of action. At best, its vague wording would require the plaintiff to indemnify Arpin for injuries sustained by third parties - but not himself. But vagueness is not the only basis for denying summary judgment in this case. Public policy prohibits enforcement of the clause.

The law prohibits releases of this nature in the employment/independent contractor work context. It is important to understand that this prohibition against enforcement of such contracts is not limited to cases only involving employees (or independent contractors[1]). To the contrary, such agreements are invalid in a wide range of circumstances including cases involving health care providers and their patients; landlords and tenants; schools and students; public utilities, common carriers and innkeepers;

---

[1] See Bunia v. Knight Ridder, 544 N.W.2d 60, 63 (Minn. App. 1996) (refusing to enforce exculpatory agreement between independent-contractor news carrier and defendant newspaper, and observing that the same public-policy rationale applies regardless of technical employment status of plaintiff as employee or independent contractor).

bailors and bailees; and banks and depositors.  See generally 8 Williston on Contracts §§ 19-27 through 19-32 (R. Lord ed., 4th ed. 1998) (collecting cases); 2 Farnsworth on Contracts § 5.2, at 14-19 (3d ed. 2004) (collecting cases); Prosser & Keeton on Torts § 68 at 482-83 (5th ed. 1984) (collecting cases).  Indeed, as set forth below, the only circumstance in which these exculpatory contracts are typically allowed are those involving purely recreational activities.

The rationale underlying the Restatement Rule in Restatement, Contracts § 195(2), in these many non-recreational contexts – including the workplace context – varies slightly from jurisdiction to jurisdiction, but always involves one or more of three overlapping points:

First, courts will not permit a party with heightened bargaining power from taking advantage of certain classes of potential negligence victims – employees, independent contractors, medical patients, passengers on common carriers, students and minors are examples – who cannot fairly be said to have "assumed the risk" allocated to them in contractual waivers of this kind.  See Restatement (Second) of Torts § 496B, comment f ("The basis for such a result usually is stated to be the disparity in bargaining power and the economic necessity which forces the employer to accept the employer's terms."); Restatement (Second) Contracts § 195, comment a (referring to "protected class" of victims who cannot prospectively waive negligence claims).  In the words of the Illinois Appellate Court:

> The requirement [that plaintiff sign the waiver as a condition of being considered for the job] put her, as a job applicant, at the mercy of her employer's negligence, no matter how great.  Defendants contend that plaintiff freely chose to apply for the position; that they did not have a monopoly on the job market, as plaintiff could apply elsewhere; and, therefore, that plaintiff had reasonable alternatives than to sign the exculpatory agreement.  These arguments ignore the economic compulsion

2

facing those in search of employment. To suppose that plaintiff here had any bargaining power whatsoever defies reality.

White v. Village of Homewood, supra, 628 N.E.2d at 620-21; see also Bunia, 544 N.W. 2d at 63 (noting that plaintiff/independent contractor's need for income "was essential, not discretionary, to her, and she assented to the exculpatory clause from a position of inferior bargaining power").

Second, and relatedly, courts and commentators alike have emphasized that there is a crucial difference between waivers involving risky voluntary conduct such as recreational activities on the one hand, and activities involving a necessary endeavor such as employment, housing, education, or health care on the other hand. See, e.g., Vodopest v. MacGregor, 128 Wash.2d 840, 913 P.2d 779 (1996) (en banc) (noting that while Washington appellate courts have consistently upheld exculpatory agreements in the context of adults engaging in "voluntary high-risk sports situations," they also have consistently found such agreements to violate public policy in cases involving activities outside of that category);[2] Restatement (Second) of Contracts § 195, Reporter's Note to comment a ("Courts are more likely to uphold clauses exculpating negligence when a

---

[2] In Vodopest, the Washington Supreme Court ruled that an agreement prospectively waiving negligence claims was unenforceable on public policy grounds where plaintiff had signed the agreement as part of a mountain trek undertaken to conduct medical research on high-altitude breathing. The Williston treatise calls Vodopest "an exceptionally thoughtful opinion" on the subject of exculpatory agreements. S. Williston, Williston on Contracts § 19:32, at 287 (R. Lord ed., 4th ed. 1998).

voluntary dangerous activity such as sports is involved than when a less voluntary activity such as a medial procedure is involved.") (citations omitted).

Third, the rationale underlying the prohibition against exculpatory agreements sometimes focuses on the "public" nature of the services or undertaking being performed by the party seeking the waiver. Thus, "one who is charged with a duty of public service, such as a common carrier or a public utility, and who undertakes to perform it for compensation, is not permitted to exempt himself from liability to the one to be served for negligent breach of that duty." Restatement (Contracts) § 195, comment a. See also Wagenblast v. Odessa School District, 110 Wash. 2d 845, 758 P.2d 968 (1988) (en banc) (school district may not require students to sign prospective waiver form as condition to allowing students to participate in interscholastic athletic activities).

The Restatement Rule has the universal support of the commentators, and has been adopted in every jurisdiction – save one[3] – that has addressed the issue of exculpatory agreements in the employment/independent contractor context. The bottom line is this: permitting people who employ workers to extract such waivers workers as a condition of employment removes the employer's incentive to provide a reasonably safe workplace, and forces injured workers – the persons least able to pay the price – to shoulder the entire cost of workplace accidents. This is horrendous social policy, and

---

[3] It appears that in Texas, where an employer's participation in the workmen's compensation system is voluntary, the Texas Supreme Court held that an employee may, by contract, prospectively waive his rights to sue the employer for negligence. See Lawrence v. CDB Services, Inc., 44 S.W.3d 544 (Tex. 2001). The Lawrence case was overruled by statute. See Tex. Lab. Code Ann. § 406.033(e) (Vernon Supp. 2004-05).

4

would stand in direct conflict with the fundamental principles underlying workplace safety laws.[4]

There are additional factors strongly indicating that the legal principles embodied in the Restatement Rule would prohibit the waiver asserted in this case.

First, while Connecticut courts have not yet addressed exculpatory agreements specifically in the employment context (whether direct employment or independent contractors), the enforceability of such agreements as a general matter has been addressed by this Court in a way that distinctly foreshadows receptivity to the Restatement Rule in employment cases. See Hyson v. White Water Mountain Resorts of Connecticut, Inc., 265 Conn. 636 (2003). Hyson involved a high-risk recreational activity (snowtubing) rather than an employee like Mr. Pouliot trying to earn a living. See above (citing authorities stating that exculpatory waivers are less likely to be enforced outside of the recreational context). But even in the recreational context, this Court in Hyson announced a rule recognizing the "well established principle [that] . . . '[t]he law does not favor contract provisions which relieve a person from his own negligence." Id. at 643 (quoting Griffin v. Nationwide Moving & Storage Co., 187 Conn. 405, 413 (1982)). Still more importantly for present purposes, the Hyson Court arrived at its holding by explicitly relying

---

[4] Our society has advanced far beyond the days when employers were allowed to impose indecent conditions on workers under the rubric of "freedom of contract." Cf. Lochner v. New York, 198 U.S. 45, 67 (1905) ("I take it to be firmly established that what is called liberty of contract may, within certain limits, be subjected to regulations designed and calculated to promote the general welfare, or to guard the public health, the public morals, or the public safety.") (Harlan, J., dissenting).

Case 3:02-cv-01302-JCH    Document 408    Filed 05/05/2005    Page 5 of 11

would stand in direct conflict with the fundamental principles underlying workplace safety laws.[4]

There are additional factors strongly indicating that the legal principles embodied in the Restatement Rule would prohibit the waiver asserted in this case.

First, while Connecticut courts have not yet addressed exculpatory agreements specifically in the employment context (whether direct employment or independent contractors), the enforceability of such agreements as a general matter has been addressed by this Court in a way that distinctly foreshadows receptivity to the Restatement Rule in employment cases. See Hyson v. White Water Mountain Resorts of Connecticut, Inc., 265 Conn. 636 (2003). Hyson involved a high-risk recreational activity (snowtubing) rather than an employee like Mr. Pouliot trying to earn a living. See above (citing authorities stating that exculpatory waivers are less likely to be enforced outside of the recreational context). But even in the recreational context, this Court in Hyson announced a rule recognizing the "well established principle [that] . . . '[t]he law does not favor contract provisions which relieve a person from his own negligence." Id. at 643 (quoting Griffin v. Nationwide Moving & Storage Co., 187 Conn. 405, 413 (1982)). Still more importantly for present purposes, the Hyson Court arrived at its holding by explicitly relying

---

[4] Our society has advanced far beyond the days when employers were allowed to impose indecent conditions on workers under the rubric of "freedom of contract." Cf. Lochner v. New York, 198 U.S. 45, 67 (1905) ("I take it to be firmly established that what is called liberty of contract may, within certain limits, be subjected to regulations designed and calculated to promote the general welfare, or to guard the public health, the public morals, or the public safety.") (Harlan, J., dissenting).
5

on the <u>same</u> section of the Restatement of Contracts (§ 195) relied upon here by plaintiff. 265 Conn. at 642. <u>Hyson</u> fully supports the striking of the waiver in this case.

Second, as noted above, the background laws of this State relating to workplace safety strongly support plaintiff's public policy argument against enforcement of the waiver. Employers cannot contract away their requirements of providing a safe workplace. See, e.g., General Statutes § 31-376, et seq. (workplace safety statutes).

Third, indirect but not insignificant support for plaintiff's position here can be derived from the fact that our state legislature, as part of the "tort reform" revisions to Connecticut law governing negligence claims for personal injuries, has abolished the defense of "assumption of risk" in favor of a comparative negligence system. See General Statutes § 52-572h. This does not necessarily mean that parties cannot contractually opt-out of that comprehensive system of tort law under certain limited circumstances; it does, however, add a further note of caution to remind courts that any such contracts must be scrutinized with great care to ensure that the public policies underlying the legislative scheme are not being violated.

In this particular case, the Waiver Form contravenes the public policy of the State of Connecticut for all of the reasons set forth above.

As stated in the main opposition to the motion for summary judgment, the waiver also violates the essential requirement that any contractual provision waiving negligence must be expressed in "clear, unambiguous, unmistakable, and conspicuous language." Hyson v. White Water Mountain Resorts of Connecticut, Inc., supra, 265

Conn. at 642 (quoting <u>Alack v. Vic Tanny Int'l of Missouri</u>, 923 S.W.2d 330, 337 (Mo. 1996)).[5]

The wording is confusing and vague at best. The striking of the waiver (if it is found to be one at all) makes good sense. If a party wants to contract out of legal responsibility for its conduct – to the point where it can avoid all legal liability for its failure to exercise a duty of care – then the law demands that the party seeking to avoid its responsibilities be required to adhere strictly to basic rules of linguistic precision. Indeed, this is the lesson of <u>Hyson</u>. Defendants in the present case did not abide by those rules. To the contrary – rather than use a contract that explained its meaning, scope and applicability in plain, understandable and unambiguous terms, the Arpin defendants' release contained typos, makes not sense and does not clearly even apply to the plaintiff. The law requires greater care.

---

[5] <u>See also, e.g.</u>, <u>Restatement (Second) Contracts</u> § 195, comment b "Language inserted by a party in an agreement for the purpose of exempting him from liability for negligent conduct is scrutinized with particular care . . . ."); 17A Am. Jur.2d Release, § 282, at 276 (2004) (reciting in detail the requirement of linguistic clarity and specificity); <u>Yauger v. Skiing Enterprises, Inc.</u>, 206 Wis. 2d 75, 557 N.W.2d 60 (1996) (finding waiver unenforceable" because it failed to clearly, unambiguously, and unmistakably inform [the signer] of the rights he is waiving."); <u>Baker v. Stewarts' Inc.</u>, 433 N.W.2d 706 (Iowa 1988) (release not sufficiently clear to exculpate school from negligence of teachers rather than negligence of students).

Based on the foregoing evidence and law, Arpin's motion for summary judgment should be denied.

THE PLAINTIFF

By_____
Michael A. Stratton
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Federal Bar No. ct 08166
Tel: (203) 624-9500
Fax: (203) 624-9100
mstratton@strattonfaxon.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. Mail, postage prepaid, on this date to:

**Thomas J. Grady, Esq.**
**Lenihan, Grady & Steele**
Six Canal Street
P.O. Box 541
Westerly, RI 02891
Fax No. (401) 596-6845

**Roland F. Moots, Esq.**
**Moots, Pellegrini, Mannion, Martindale & Dratch, PC**
46 Main Street
P.O. Box 1319
New Milford, CT 06776-1319
Fax No. (860) 355-8487

**Susan J. O'Donnell, Esq.**
**Halloran & Sage**
One Goodwin Square
225 Asylum St.
Hartford, CT 06103
Fax No. (860) 548-0006

**James R. Oswald, Esq.**
**Adler, Pollock & Sheehan, PC**
2300 Financial Plaza
Providence, RI 02903-2443
Fax No. (401) 751-0604/351-4607

**Harold J. Friedman, Esq.**
**Karen Wolf, Esq.**
**Friedman, Gaythwaite, Wolf & Leavitt**
6 City Center
P.O. Box 4726
Portland, ME 04101-4726
Fax No. (207)-761-0186

_____
Michael A. Stratton