UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff | ) | 3:02 CV 1302 (JCH) |
| | ) | |
| v. | ) | JUDGE JANET C. HALL |
| | ) | |
| | ) | |
| PAUL ARPIN VAN LINES, INC. et al. | ) | July 30, 2005 |
| | ) | |
| Defendants | ) | |
| | ) | |

### *<u>DEFENDANTS PAUL ARPIN VAN LINES, INC.'S AND ARPIN LOGISTICS, INC.'S MOTION IN LIMINE FOR AN ADVERSE INFERENCE AS TO EARNINGS AND INCORPORATED MEMORANDUM OF LAW</u>*

**INTRODUCTION**

Defendants, Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc., (hereinafter "Arpin") move *in limine* for a ruling that imposes an adverse inference with regard to Plaintiff's ability to work and earn an income. The reasons for such a ruling are fully set forth below.

**FACTUAL BACKGROUND**

This action arises out of an October 23, 2001 accident in which Plaintiff was injured while unloading a truck owned by Paul Arpin Van Lines, Inc. In Plaintiff's deposition dated June 29, 2004, he testified that he had begun a paint striping business with his brother in 2004. Depo. of Shawn Pouliot, pg. 209, ln. 11-15; ln. 22-25, pg. 210, ln. 1-2; pg. 211, ln. 4-23 (attached hereto as Exhibit A). In response to this testimony, on January 19, 2005, Defendants' trial counsel sent a letter to Plaintiff's counsel requesting the production of "all wage, employment, earnings, and business records pertaining to the parking lot striping business that Mr. Pouliot started with his brother in mid-2004." (Attached as Exhibit B).

*ORAL ARGUMENT REQUESTED*

As of the date of this motion, Plaintiff has yet to turn over such documents, nor has he notified Defendants' counsel of any reason for delay or need for an extension of time. It is anticipated that Plaintiff will testify at trial that he is unable to work or make a living because of the injuries he has sustained. The requested documents were of key importance with regard to this issue, as they may have shed light on Plaintiff's present and future earning capacity.

**ARGUMENT**

Courts in the Second Circuit have considered the issue of when it is appropriate to impose an adverse inference ruling. They have held that "the legal standard for the imposition of an adverse inference instruction is essentially the same whether the party controlling the evidence destroyed it or simply failed to produce it." *Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc.*, 212 F.R.D. 94, 105 (2d Cir. 2002). The courts have stated that the standard requires that "the party seeking such an instruction must show that its opponent had an obligation to preserve or produce the evidence, that the opponent had a 'culpable state of mind,' and that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

**1. The Plaintiff had an obligation to produce the missing evidence.**

As is stated above, Defendant must show that Plaintiff had an obligation to produce the documents in question. *Id.* The courts have held that parties have an "obligation to timely produce . . . evidence" when it is "duly requested . . . in . . . discovery demands." *Id.* The courts further hold that "at the very least, [parties must] make a good faith effort to search their files and accurately and timely respond to the discovery demands." *Id.* In cases in which there has been a "failure to produce documents," the courts, thus, hold that an "adverse inference instruction is . . . warranted." *Id.*

2

In this case, Defendants' counsel requested the production of the documents in question in January of 2005. While the Plaintiff has had seven months to turn over the documents, he has failed to do so. Moreover, he has failed to "at the very least . . . to timely respond to [this] discovery demand." *Id.* As the request for such documents was duly made by Defendants' counsel, Plaintiff has failed to meet his obligation in producing the documents. Thus, the first prong of the adverse inference test is met. *See id.* (stating that obligation requirement is met when "failure to produce was the result of . . . a discovery default.").

**2. Plaintiff had the requisite "culpable state of mind."**

Courts in the Second Circuit have held that "the 'culpable state of mind' factor could be satisfied without intent." *Id.* (quoting *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 108-109 (2d Cir. 2001)). Further, the courts have "expressly held that a finding of intent or gross negligence [is] not necessary" and that "an adverse inference provides the necessary mechanism for restoring evidentiary balance." *Id.* (citing *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002)). The courts have extrapolated on this, stating that "[t]he inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that evidence would have been detrimental rather than favorable should fall on the party responsible for its loss." *Id.* at 107 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991) and citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). Notably, the courts have held that even when a party claims that documents are "missing" and he or she has "no idea of how they were lost or discarded . . . [a]t the very least, the circumstances amount to negligence in the preservation of evidence." *Id*.

Here, rather than giving any reason for failing to produce the requested documents, Plaintiff has chosen to remain silent on the issue for seven months. As is stated above, intent is

3

not a necessary element of the culpable state of mind requirement. *Id.* at 108. Rather, this requirement may be fulfilled by a showing of mere negligence. *Id.* Thus, in this case, Plaintiff's inaction over the course of seven months, in which it has failed to produce documents that were duly requested by Defendants' counsel, "at the very least amounts to negligence in the preservation of evidence." *Id.* As it is likely that the "evidence would [be] detrimental rather than favorable" to the Plaintiff, this risk should fall on Plaintiff, as he is the "party responsible for its loss." *Id.* at 107 (quoting *Turner*, 142 F.R.D. at 75 and citing *Kronisch*, 150 F.3d at 126). Therefore, the second prong of the adverse inference test is met.

### 3. The missing documents are relevant to this lawsuit.

With regard to the third element of the test, the courts have held that "[t]he party seeking the instruction must adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Id.* (quoting *Residential Funding Corp.*, 306 F.3d at 109 and citing *Kronisch*, 150 F.3d at 127; *Byrnie*, 243 F.3d at 110). The courts are careful "to not hold a party to too strict a standard of proof regarding the likely contents of the missing evidence, since to do so would 'subvert' the purposes of the adverse inference and 'would allow parties who have destroyed evidence to profit from that destruction.'" *Id*. (quoting *Kronisch*, 150 F.3d at 128; *Byrnie*, 243 F.3d at 110).

In this case, the requested documents would likely provide information regarding Plaintiff's finances and ability to make a living. Such information will be at the core of each party's economic analyses regarding Plaintiff's future earning capacity, a key damages component. In particular, defense counsel, if provided with the requested documents, may use them to demonstrate Plaintiff's capacity to work and earn an income, despite his injuries. As the

requested documents could support an argument pertaining to Plaintiff's present and future earning capacity, it is likely that the "unavailable evidence would [be] of the nature alleged by the party affected by its destruction," namely the Defendants in this case.  *Id.* (quoting *Residential Funding Corp.*, 306 F.3d at 109 and citing *Kronisch*, 150 F.3d at 127; *Byrnie*, 243 F.3d at 110).  Thus, the third and final prong of the standard is met, and this court should impose an instruction of an adverse inference against Plaintiff for his failure to produce duly requested documents.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant this motion *in limine* and rule that an adverse inference should be drawn with regard to Plaintiff's ability to work and earn an income, as he has failed to produce documents that were duly requested by Defense counsel.

Dated this 30th day of July 2005.

Respectfully submitted,

    /s/ Karen Frink Wolf
Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207) 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 30th day of July 2005 to the following:

Michael A. Stratton, Esq.  
Stratton Faxon  
59 Elm Street  
New Haven, CT  06510

Roland F. Moots, Jr., Esq.  
Moots, Pellegrini, Spillane & Mannion  
46 Main Street, PO BOX 1319  
New Milford, CT 06776-1319

Thomas J. Grady, Esq.  
Lenihan Grady & Steele  
6 Canal Street  
PO Box 541  
Westerly, RI 02891-0541

              _____/s/ Karen Frink Wolf ___ _____  
              Karen Frink Wolf, Esq. # 26494