UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

- - -

SHAWN POULIOT,                )
     Plaintiff,               )
                              )
     vs.                      )
                              )
PAUL ARPIN VAN LINES,         )
INC., ARPIN LOGISTICS,        ) Case No. 3:02 CV1302
INC., FESTO CORPORATION,      )
MICHAEL D. KOVAC, D/B/A       )
TRANS-EXPO INTERNATIONAL,     )
and ERICA RAMIREZ,            )
     Defendants.              )

- - -

Deposition of MARK BIBBEE, a Witness herein, called by the Plaintiff for cross-examination pursuant to the Rules of Civil Procedure, taken before me, the undersigned, Kelley E. Spears, RPR and Notary Public in and for the State of Ohio, at the offices of Bish & Associates, 159 South Main Street, Suite 812, Akron, Ohio, on Friday, the 19th day of November, 2004, at 2:03 o'clock p.m.

---

BISH & ASSOCIATES, INC.
812 Key Building
Akron, Ohio 44308-1303
(330) 762-0031
(800) 332-0607
FAX (330) 762-0300
E-Mail: bishassociates@neo.rr.com

1    Q.    No, this upper paragraph.
2    A.    Oh, I'm sorry. I read the wrong
3    paragraph.
4    Q.    That's okay. I frequently do that.
5    A.    What this should more accurately say is
6    that I thought my wife had told me that it
7    really wasn't an accident. We discussed that
8    and she said that Shawn never told her that
9    this was not an accident.
10   Q.    All right. So --
11   A.    Okay. And then as far as the other part
12   of this, that was supposition.
13   Q.    Supposition?
14   A.    It was like well, if it was an accident,
15   maybe he only intended to break a couple legs,
16   but the machine got away from him.
17   Q.    And that was just your supposition?
18   A.    Right.
19   Q.    All right. For the record -- and just
20   bare with me for a minute and I'll get you out
21   of here -- this disclosure indicates that on
22   June 14th of 2003 that you claimed that you
23   were at Mark Pouliot's house on Mount Vernon
24   Street in Akron, Ohio. Is that a correct
25   statement?

1   A.   Yes.
2   Q.   All right.  "The Plaintiff, Shawn
3   Pouliot, was also at the house at that time."
4   A.   Correct.
5   Q.   "That Mark Bibbee claims that Shawn
6   Pouliot and he discussed Shawn Pouliot's
7   accident which occurred on October 23, 2001
8   which resulted in Shawn Pouliot's being
9   paralyzed and confined to a wheelchair."
10  A.   Correct.
11  Q.   Mark Bibbee claims he specifically
12  recalls Shawn Pouliot saying it wasn't really
13  an accident.  Is that a true statement, sir?
14  A.   No, that is not a true statement.
15  Q.   Do you ever recall Shawn Pouliot making
16  any statement to you --
17  A.   No, not to me.
18  Q.   -- concerning his accident and that it
19  wasn't really an accident?
20  A.   Correct.
21  Q.   You don't recall?
22  A.   No.
23  Q.   And you cannot testify that you recall?
24  A.   Correct.
25  Q.   Further it goes on, it says "Mark Bibbee

1    claims that Pouliot specifically told him that
2    he was supposed to break a couple of legs when
3    the machine fell" -- by the way, that's in
4    quotes -- "but it got away from him and the
5    machine crushed him."
6             Is that a true statement?
7    A.   No.
8    Q.   Did Shawn Pouliot ever say those words?
9    A.   No.
10   Q.   It was just supposition on your part?
11   A.   Yes.
12   Q.   And that supposition was simply based on
13   what he may have thought about if, in fact,
14   this was a staged accident, correct?
15   A.   Correct.
16   Q.   But you have no knowledge that this is a
17   staged accident?
18   A.   No, I don't.  I have no evidence at all.
19   Q.   And Mark Bibbee said that Shawn Pouliot
20   told him that the accident would have been
21   worth it if he got ten million dollars; is that
22   true?
23   A.   I think Shawn mentioned that that
24   accident could be worth up to ten million
25   dollars.

1   Q.   I see.  But not a staged accident?
2   A.   Right.
3   Q.   Correct.  All right.  So subsequent to
4   your discussion with Mr. Grady, you and your
5   wife talked this over and decided that there is
6   no basis in fact in the statement it wasn't
7   really an accident?
8   A.   Correct.
9   Q.   And as you sit here today, you have no
10  knowledge of how this accident even occurred;
11  is that correct?
12  A.   Correct.
13  Q.   You have no -- no recordings, no
14  statements?
15  A.   Nothing.
16  Q.   Nothing?
17  A.   Nothing.
18  Q.   Where Mark -- Shawn Pouliot indicates
19  that this was a staged accident, correct?
20  A.   Correct.
21         MR. DENISON:  Thank you.  I have no
22  further questions.
23         Your witness.
24              - - -
25         (Defendant's Exhibit Bibbee 1

1   misunderstanding, that the two agents
2   misunderstood what you said?
3       A.   Yes.
4       Q.   But the other three statements that you
5   claim Pouliot made to you are true?
6       A.   Yes.
7       Q.   You also indicated that you're afraid of
8   Shawn Pouliot; is that correct?
9       A.   No, I'm not afraid of him.  I fear for
10  the repercussions that he does against my wife.
11  My two boys are deceased so he can't possibly
12  hurt them anymore.
13      Q.   Are you retracting your statement in
14  subparagraph 4 because of any feared
15  retaliation that you may feel that Shawn or
16  Mark Pouliot will bring against your wife or
17  your family?
18      A.   I am retracting it because I have no
19  proof of that statement and that is a serious
20  statement to make with no proof whatsoever, my
21  word against his word.
22      Q.   In other words, you don't have a tape?
23      A.   That's right.
24      Q.   You thought you had a tape?
25      A.   I thought I had a tape.

1   Q.   But you can't find it?
2   A.   And if I thought I had a tape and
3   listened to the tape and that's what came out
4   on the tape, I'd say that's a true statement.
5   Q.   But because you can't find a tape to
6   support number four, you're retracting the
7   statement?
8   A.   Correct.
9   Q.   So as a result, are you telling me that
10  you're not sure exactly what he did tell you in
11  number four?
12  A.   Yes.
13  Q.   You do remember being at Mark Pouliot's
14  house on June 14, 2003?
15  A.   Yes.
16  Q.   And you do remember sitting on the porch
17  with Shawn Pouliot alone; is that correct?
18  A.   Yes, and his brother came out from time
19  to time and later on my oldest son and his
20  girlfriend showed up.
21  Q.   And you had made other statements in the
22  past that he did indicate to you past crimes
23  that he had been successful in getting away
24  with; is that right?
25  A.   Correct.

1  Q. He told you that that night?
2  A. Yes.
3  Q. And he was telling you that as the -- as
4  a foundation for telling you that this accident
5  on October 23rd, 19- -- strike that -- 2001 was
6  a staged accident and not a real accident,
7  right?
8           MR. DENISON: Objection.
9           THE WITNESS: To me it was more like
10 he was just blurting out things that happened
11 in the past.
12 BY MR. GRADY:
13 Q. And after he blurted --
14 A. I don't think there was any format to it
15 at all.
16 Q. And after he had blurted out these
17 claims that he had done in the past, he came to
18 the accident of October 23, 2001, right?
19 A. Correct.
20 Q. So he was saying that he got away with
21 all these other crimes and so he's going to get
22 away with this one, too, right?
23 A. Right.
24 Q. Wasn't that the idea that he was trying
25 to plant with you?

1  A. I never really -- I never really took it
2  that way to be honest with you. I took it that
3  the guy's just blurting out.
4  Q. I'm not sure I understand what you mean.
5  Just blurting out? He wasn't trying to make a
6  point with you?
7  A. No, I don't think so.
8  Q. Did he tell you on that night when you
9  were sitting on the porch with him that the
10 accident of October 23rd, 2001 wasn't really an
11 accident?
12 A. I am fairly certain that he did, but I
13 have no proof of that.
14 Q. When you say you have no proof, you mean
15 you have nothing to back up what your word or
16 testimony is other than the words out of your
17 mouth?
18 A. That is correct.
19 Q. Okay. But when you say you have no
20 proof, you do have the proof that comes out of
21 your mouth, right?
22 A. Yes.
23 Q. What you mean to say is that you have no
24 corroborating truth?
25           MR. DENISON: Objection.

1          THE WITNESS: Right.

2  BY MR. GRADY:

3    Q.   You have no other independent source to

4  validate the truthfulness of your statement?

5    A.   Correct.

6    Q.   But you do believe that he said to you

7  that this was not really an accident; isn't

8  that right?

9    A.   Yes, yes.

10    Q.   And you do believe that he said to you

11  that it was supposed to break a couple of legs

12  when the machine fell, but the machine got away

13  from him and the machine crushed him; isn't

14  that true?

15    A.   Yes.

16    Q.   So what you're really saying is that he

17  said that, but you're retracting it because you

18  have no other independent way of supporting the

19  truthfulness of your statement?

20          MR. DENISON: Objection.

21  BY MR. GRADY:

22    Q.   Is that right?

23    A.   Correct.

24    Q.   You wish you had a tape?

25    A.   Correct.

98

1   Q. You don't have the tape?

2   A. Correct.

3   Q. You can't find the tape?

4   A. Correct.

5   　　　MR. GRADY: Thank you.

6   　　　MR. CURCIO: I don't have any

7   questions.

8   　　　MR. DENISON: Couple.

9   　　　　　　- - -

10  BY MR. DENISON:

11  Q. When I was questioning you before, Mr.

12  Bibbee, you indicated that you discussed your

13  statements --

14  　　　THE WITNESS: Whose is this?

15  　　　MR. GRADY: That's mine.

16  　　　MR. DENISON: Probably Mr. Grady's.

17  BY MR. DENISON:

18  Q. Your statements of -- the statements to

19  the investigator it wasn't really an accident,

20  and you told me that this was something that

21  your wife may have told you. Is that true,

22  that was your prior testimony?

23  A. Yes. I had thought that during the time

24  that we were married and before her deposition

25  that she had mentioned this, but when I later