UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff | ) | 3:02 CV 1302 (JCH) |
| | ) | |
| v. | ) | JUDGE JANET C. HALL |
| | ) | |
| | ) | |
| PAUL ARPIN VAN LINES, INC. et al. | ) | July 30, 2005 |
| | ) | |
| Defendants | ) | |

### *DEFENDANTS PAUL ARPIN VAN LINES, INC.'S AND ARPIN LOGISTICS, INC.'S MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM PLAINTIFF'S LIABILITY EXPERT ROLAND RUHL AND INCORPORATED MEMORANDUM OF LAW*

### INTRODUCTION

Defendants, Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc., ("Arpin") move *in limine* for a ruling excluding testimony from Plaintiffs' proposed liability/causation expert, Roland L. Ruhl, Ph.D., P.E.  A memorandum in support of this motion is incorporated herein.

### BACKGROUND

This action arises from an occurrence on October 23, 2001 in which Plaintiff was injured while unloading a workstation from a truck owned by Arpin.  Plaintiff has, pursuant to Fed.R.Civ.P. 26(a)(2), designated Roland L. Ruhl to provide expert testimony pertaining to the alleged negligence of the Defendants in this action.

*ORAL ARGUMENT REQUESTED*

Dr. Ruhl's written report (Attached as Exhibit A) provided by Plaintiff pursuant to Fed.R.Civ.P. 26(a)(2)(B) enumerates the opinions to be expressed by Dr. Ruhl.[1]  In sum, those opinions as set out in the conclusions section of Dr. Ruhl's report are that:

1) Plaintiff is considered an employee of Defendant Arpin, that Arpin had a duty to ensure that Plaintiff had the requisite knowledge and skills to safely drive, and a duty to perform systematic maintenance and repair on its truck;

2) The liftgate attached to the truck was damaged, causing "droop" which in turn caused the workstation to roll off the liftgate;

3) In the absence of a cart retention system, the liftgate should never be used with a wheeled load;

4) Arpin's failure to dispatch Plaintiff with a properly selected and maintained lift and proper rigging equipment, and failure to ensure that Plaintiff had knowledge and skills to safely complete the job were "errors" that were causes of this accident; and

5) But for the failure to adjust the platform to meet manufacturer's specification for platform angles, the accident would not have occurred.

(Exhibit A, p. 6, ¶¶ 1-5).

Dr. Ruhl's background and experience is in mechanical engineering.  Dr. Ruhl has taught undergraduate freshman engineering design and graphics along with mechanisms and kinematics of machinery and vibrations, and has taught component design and project design.  Dr. Ruhl has never worked for a motor freight carrier, freight broker or worked as a freight driver.  Dr. Ruhl's design experience does not include either design or consultation on truck liftgates.

---

[1] Notably Dr. Ruhl's report is titled as a preliminary report.  As of this filing, no final or supplemental report has been provided to Defendant.

2

**ARGUMENT**

I. **DR. RUHL'S OPINIONS LACK RELIABILITY SUFFICIENT TO SATISFY THE REQUIREMENTS OF EVIDENCE RULE 702 AND SHOULD THEREFORE BE EXCLUDED.**

Dr. Ruhl's proffered opinions lack scientific reliability and, are beyond the scope of his expertise. The admissibility of expert testimony is controlled by F.R.Evid. 702 which provides:

> If scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R. Evid. 702. The U.S. Supreme Court has held that Rule 702 imposes a "gatekeeping" responsibility on federal trial courts. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L.Ed. 2d 469 (1993), the Supreme Court made clear that it is the role of the trial judge in the first instance is to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Zaremba v. General Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004). In order to fulfill this "gatekeeping" function, courts must assess both scientific reliability – "whether the reasoning or methodology underlying the testimony is scientifically valid" and relevance – "whether that reasoning or methodology properly can be applied to the facts at issue." *Daubert* at 592-93. The burden to establish admissibility rests with the proponent of the expert testimony. *Id*. at 593.

Moreover, the court's obligation applies equally to testimony based on "technical" or "other specialized knowledge," as it does to "scientific" knowledge. *Zaremba* at 358, citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L.Ed. 2d 238 (1999). The imposition of the *Daubert* gatekeeping function is the court's recognition that expert

3

testimony "can be both powerful and quite misleading" to a jury. *Daubert* at 595. Accordingly, the objective of the gatekeeping requirement of *Daubert* and *Rule 702* is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Zaremba* at 358, quoting *Kumho Tire Co.,* at 152. It is therefore incumbent on the trial court to engage in a inquiry that will ensure that the expert testimony is reliable and relevant. *Daubert* at 597.

In determining reliability, factors to be considered include (1) whether the theory or technique relied upon has been tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a high known or potential rate of error; and (4) whether it is generally accepted in the relevant scientific community. *Id*. The factors are neither exhaustive nor exclusive, and the trial court enjoys significant latitude in determining how to test an expert's reliability. *Id*.

Against this backdrop, Dr. Ruhl's testimony lacks the requisite reliability under *Daubert*, and/or proffers opinions that go beyond the domain of his expertise.

### A. Dr. Ruhl should be Precluded from Testifying About Any Legal Duty Arpin Allegedly Owed Plaintiff.

It is expected, based on Dr. Ruhl's written report, that he intends to testify that the Plaintiff was considered an employee of Arpin, that Arpin had a duty to ensure that Plaintiff possessed the knowledge and skills to "safely drive", and a "duty to ensure that the truck was subjected to a systematic maintenance and repair program." (Ruhl Report p. 8, Exhibit A).

4

### 1.     There is no foundation for Dr. Ruhl's testimony.

The first, and most basic flaw in Dr. Ruhl's analysis is that foundationally, his conclusions depend on the Plaintiff's employee status. Dr. Ruhl completely ignores Plaintiff's explicit independent contract with Arpin. *See* Owner/Operator Agreement attached as Exhibit B. Moreover, as a matter of law, this Court has now ruled that Plaintiff was an independent contractor, and <u>not</u> an employee. *See* Rulings on Motion for Summary Judgment, May 2, 2005. Accordingly, Dr. Ruhl's opinions are flawed in terms of their sole foundational premise.

### 2.     Dr. Ruhl cannot subvert the role of the Court and the jury as to any negligence or recklessness of Arpin.

Fed. R. Evid. 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Dr. Ruhl's report opines that Arpin had certain legal "duties," and that it failed in those duties, making "errors" that caused the Plaintiff's accident. This is just another way of saying Arpin was negligent

Any such testimony will <u>not</u> assist the trier of fact in understanding the evidence or in determining a fact in issue. In fact, the Second Circuit, applying Connecticut law, has held that it is improper to allow an expert to testify as to whether a company's conduct was negligent or otherwise. In *Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705 (2d Cir. 1989), the Court unambiguously rejected the idea that a purported expert witness could testify that "the railroad was negligent." *Id.* at 709 ("This prejudicial testimony should not have been allowed.").

> Although testimony that embraces an ultimate issue to be decided by the jury is not inadmissible *per se*, it should not be received if it is based on inadequately explored legal criteria. The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury….We find the admission of [the expert]'s authoritative pronouncement that the defendants were negligent to be particularly troublesome because his qualifications as an expert in this area were questionable at best.

*Andrews* 882 F.2d at 709 (internal citations omitted).

Based upon the foregoing, Dr. Ruhl's testimony concerning the legal duties, negligence, or recklessness of Arpin will not aid the trier of fact in its determination. It calls for a legal conclusion within the province of the Court in its instructions, and substitutes the judgment of the expert for that of the trier upon the facts in evidence. Accordingly, the Court should rule such testimony inadmissible.

### 3. Dr. Ruhl's opinions are not within the scope of his expertise.

Next, even if Dr. Ruhl had a proper foundation for his purported opinions, he is not qualified to give them. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *U.S. v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994) quoting *U.S. v. Lewis*, 954 F.2d 1386, 1390 (7th Cir. 1992). The court's initial inquiry on the admissibility of expert testimony pertains to the expert's qualifications to proffer his opinions. *Trumps v. Toastmaster, Inc.*, 969 F. Supp. 247, 251-252 (S.D.N.Y. 1997) (holding mechanical engineer was not qualified to provide expert opinion concerning electrical engineering matter).

In this matter, there is nothing in Dr. Ruhl's background or experience that would provide him the basis to proffer expert opinions concerning any duties Arpin allegedly owed to Plaintiff. Dr. Ruhl opines that Plaintiff is "considered an employee of . . . Arpin." (Exhibit A at p. 6). Dr. Ruhl offers nothing in either his report or in his deposition testimony that provides a basis for

this legal conclusion. He merely asserts the conclusion, and apparently relies upon it to opine that Arpin had a legal duty to insure that Plaintiff had the knowledge and skills to "safely drive," and a duty to insure a "systematic maintenance and repair" of the vehicle.

Dr. Ruhl is a mechanical engineer. He has no background in the trucking industry sufficient to qualify him to provide expert opinions on Plaintiff's legal status as an employee or concerning information or knowledge that Arpin may or may not have been obligated to provide Plaintiff. Moreover, nothing in Dr. Ruhl's engineering background, or practical experience, provides sufficient background to allow Dr. Ruhl to proffer an opinion on any maintenance issues pertaining to the Arpin truck. "[T]he expert must 'stay within the reasonable confines of his subject area, and cannot render expert opinion on an entirely different field or discipline." *Dreyer v. Ryder Automotive Carrier Group*, 367 F.Supp. 2d 413, 425 (W.D.N.Y. 2005) (holding defendant's mechanical engineering expert not qualified to provide testimony that autohauler was appropriately designed and not defective).

Moreover, Dr. Ruhl makes no attempt to identify how his particular expertise in engineering qualifies him to opine on trucking industry standards. The only authority he relies upon to support his contention that Arpin owed particular maintenance obligations is certain Federal Motor Carrier Regulations. To the extent the motor carrier regulations are relevant, their use requires no particular technical knowledge, nor does Dr. Ruhl's engineering background aid in the determination of their applicability. *See e.g. Dreyer*, supra (noting that defendant's expert's reference to OSHA regulations as a source for product design required no special knowledge of an engineering background). Moreover, Dr. Ruhl has testified that these regulations concern matters during the course of transit are not applicable to the unloading of a vehicle. (Ruhl Depo. p. 202, Exhibit C).

Because Dr. Ruhl does not possess sufficient background or experience in the trucking industry, he should be precluded from expressing any opinions on any trucking industry standards or on any duties imposed upon Arpin.

**B. Dr. Ruhl should be precluded from testifying that the liftgate was defective and that the defect caused Plaintiff's injuries.**

Dr. Ruhl's anticipated testimony as expressed at paragraphs 2 and 5 of his report is that damage to the liftgate caused "droop," which he says in turn caused the freight to roll off the liftgate. Paragraph 5 is Dr. Ruhl's attempt to bolster his roll off theory by suggesting that Arpin was obligated to adjust the liftgate platform to eliminate "droop." However, Dr. Ruhl's opinion that "droop" was the cause of Plaintiff's injuries is based on flawed methodology that does not meet the riggers of *Daubert*.[2] Accordingly, this testimony should be excluded.

Dr. Ruhl's task in this matter was to "inspect the condition of the liftgate… and test it to the extent that we can reproduce the accident and make sure that we thereby sort of understand how this all occurred." (Ruhl Depo. pp. 133-134). To complete this assignment and determine "sort of how this all occurred" Ruhl performed two tests. The first test was performed on the actual vehicle using a surrogate workstation constructed by Dr. Ruhl. Using the surrogate, Dr. Ruhl performed so-called "roll-off" testing. (Ruhl Depo. pp. 145-147). That Dr. Ruhl performed only "roll-off" testing is a critical flaw in his methodology. It assumes the cause before testing has been carried out, and fails to exclude alternative causes. Compounding this flaw, the workstation created by Ruhl was not sufficiently similar to the actual workstation, precluding any reliable extrapolation concerning what actually occurred. It is Plaintiff's burden, as the proponent of Dr. Ruhl's testimony, to demonstrate that his opinions meet Rule 702 and

---

[2] Clearly, Dr. Ruhl is not qualified to opine on the cause of Plaintiff's injuries. This motion is directed at the expectation that Ruhl intends to testify on the cause of the workstations fall, and will leave testimony concerning injuries to experts appropriately qualified.

*Daubert* requirements. *Dreyer*, *supra* at 425 (internal citations omitted). He must demonstrate that there is a legitimate scientific basis to extrapolate from his test findings to any reliable conclusions concerning what actually occurred. Moreover, even if the exemplars are sufficiently similar, Ruhl's test fails to satisfy the *Daubert* reliability prong because the tests are internally inconsistent, and fails to consider the effect the use of the workstation's wheel brakes would have had on this accident.[3]

Dr. Ruhl constructed a platform and loaded sandbags on the platform. That platform was to be a substitute for the workstation. However, Dr. Ruhl's workstation did not duplicate the height of the workstation, nor did it include wheel brakes. (Ruhl Depo. p. 152). He chose not to replicate the height of the workstation or its center of gravity because he was conducting a roll-over test rather than a tip-over test. (Ruhl Depo. p. 152). He conducted the roll-over test because "[t]his was not a tip-over accident." (Ruhl Depo. pp. 151-152). This unsupported conclusion is fatal to Dr. Ruhl's ultimate opinions. He fails to identify how he has determined that this accident was not the result of a tip-over.

"[A]n expert must rule out other possible causes, or the expert's opinion is inadmissible." *Thurman v. Missouri Gas Energy*, 107 F. Supp. 2d 1046, 1050 (W.D. Mo. 2000) quoting *Hesc v. Chicago Northwestern Transportation Co.*, 70 F.3d 968 (8th Cir. 1995). In *Thurman*, the Plaintiff asserted a claim for injuries sustained in a gas explosion. Plaintiff offered his expert to testify on possible causes of the explosion. The court precluded the expert from offering these opinions because the expert had "not really excluded other causes or performed tests for affirmatively determining the cause." *Id*. at 1056. The *Thurman* court also excluded the

---

[3] Dr. Ruhl's second testing was performed by his associate on a substituted liftgate, and was apparently designed to measure the "sag" and angle of the liftgate as it moves. It is Arpin's contention here that Dr. Ruhl's first testing was so scientifically flawed that no meaningful conclusions can be drawn from either test.

9

Defendant's expert on causation issues because the expert failed to identify how he arrived at his conclusion. *Id*. at 1050.

Like the experts in *Thurman*, Dr. Ruhl has not identified how he ruled out tip-over as a possible cause. He merely asserts, in conclusory fashion, that this was a roll-over accident. His failure to demonstrate how his engineering expertise leads him to rule out tip-over as a possible cause renders his opinion inadmissible. *Dreyer* at 442 (finding experts testimony failed to meet Rule 702 requirements where he failed to consider alternative product designs), ("[expert's] opinion that the [product] design was 'appropriate' and that [plaintiff's] negligence caused the accident amounts to a personal *ipse dixit* unsupported by any reliable engineering principles or methods.") *Id*. at 438.

Moreover, the internal inconsistencies in Dr. Ruhl's testing demonstrate the fallacy of his roll-over theory and renders his conclusions insufficiently reliable to be admissible. Dr. Ruhl's written report explains that he ran four tests utilizing his substitute platform unit. In those four tests, the test load fell off the platform three times, but at varying heights: 28 inches; 18 inches and 12 inches. On the fourth test the load moved at 18 inches, but did not fall. These are grossly significant differences in the tests that render it impossible to reliably extrapolate to the actual conditions existing at the time of Plaintiff's fall. Dr. Ruhl makes no attempt to explain why the results varied each time, and how these inconsistent results can inform the jury on the actual events.

Finally, Dr. Ruhl specifically choose not to test a unit with wheel brakes. It is undisputed that brakes were present on the actual unit that the Plaintiff was unloading. (Ruhl Depo. p. 170). He cannot state that the accident would or would not have occurred if wheel brakes had been utilized. The most he is able to state is that "it would not have hurt, and he would do additional

10

testing only if asked by Plaintiffs' counsel." (Ruhl Depo. p. 142). The failure to account for, and eliminate, an alternative cause renders his opinion unreliable under *Daubert* standards. Dr. Ruhl's opinions on the effect of "droop" on the fall of the workstation should therefore be excluded.

> **C. Dr. Ruhl Should Be Precluded From Testifying About A Cart Retention System Or Concerning The Use Of Alternative Means To Secure The Workstation To The Liftgate.**

According to Dr. Ruhl's report, he intends to testify that the liftgate should never be used without a "cart retention system" (Exhibit A, p. 6, ¶ 3). Dr. Ruhl's expected testimony that the liftgate should never be used with a wheeled load goes beyond the scope of his expertise, and should be excluded. Again, Dr. Ruhl fails to identify how these opinions are based on his expertise in engineering. His sole apparent support for this assertion is literature provided by the manufacturer of the liftgate. (Exhibit A p. 8). "[W]here an expert's opinion exceeds the scope of his qualifications, the witness's opinions are subject to exclusion." *Dreyer, supra* at 425 (internal citations omitted). In *Dreyer*, the court held that the defendant's expert was not qualified to testify that the plaintiff had improperly loaded a vehicle onto an autohauler where the experts knowledge on the operation of the autohauler was based upon his review of manuals, and videotapes. He had no experience in operating an autohauler, and failed to demonstrate how his engineering background qualified him to proffer testimony on the proper use of the autohauler.

As in *Dreyer*, the plaintiff's expert here does not demonstrate expertise in the use of a liftgate. Dr. Ruhl has testified that his entire experience is limited to the investigation of two or three rear lift accidents but fails to identify that he has experience in the proper use of a liftgate. Dr. Ruhl offers nothing to suggest that even this limited experience gives him a foundation to offer any opinion concerning whether this liftgate was suited for the task involved in this matter.

11

(Ruhl Depo. p. 8). Rather than point to any particular expertise, Dr. Ruhl points to the manufacturers manual to support his opinion. "While experience can provide the basis to qualify a witness as an expert, the experience must be demonstrated and have direct relevance to the issues in the case." *Dreyer*, at 430. Dr. Ruhl offers no evidence that he has sufficient experience to opine on the appropriateness of the liftgate for its use in this matter.

Similarly, Dr. Ruhl's opinions expressed in his report concerning the use of cribs or strapping ought to be excluded. *See* Exhibit A, p. 6, ¶ 4. Again, these opinions do not rely on any engineering expertise. Here Dr. Ruhl opines that strapping could not be used because it may have damaged the workstation. His opinion at paragraph 4 is merely intended to support his assertion at paragraph 3. He offers nothing to support this contention, let alone any suggestion that it is somehow based on engineering principles.

Dr. Ruhl also does not identify any prior knowledge or experience dealing with the workstation product. He performed no tests or evaluations on the workstation product that could provide a basis for this opinion. Dr. Ruhl has no background, training or experience in the methods of loading or unloading heavy equipment from a commercial truck. Accordingly, Dr. Ruhl should be precluded from testifying about any issues concerning the use of the liftgate, cart retention systems, or the means for securing the workstation to the liftgate.

## **CONCLUSION**

The opinions of Plaintiffs' liability expert Dr. Ruhl fail to meet the threshold standard of Rule 702. Dr. Ruhl lacks sufficient qualifications outside of mechanical engineering that would provide a legitimate basis for his testimony on trucking industry standards, or pertaining to the appropriateness of the liftgate equipment at issue here. In addition, Dr. Ruhl's testing

methodology is insufficiently reliable under *Daubert* and renders his testimony irrelevant to matters at issue in this trial.

For the foregoing reasons, Arpin respectfully requests that this Court exclude Dr. Ruhl from testifying as an expert in this matter.

Dated this 30th day of July, 2005.

Respectfully submitted,

/s/ Karen Frink Wolf
Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF &
LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207) 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

       This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 30th day of July, 2005 to the following:

| | |
|---|---|
| Michael A. Stratton, Esq.<br>Stratton Faxon<br>59 Elm Street<br>New Haven, CT  06510 | Roland F. Moots, Jr., Esq.<br>Moots, Pellegrini, Spillane & Mannion<br>46 Main Street, PO BOX 1319<br>New Milford, CT 06776-1319 |
| Thomas J. Grady, Esq.<br>Lenihan Grady & Steele<br>6 Canal Street<br>PO Box 541<br>Westerly, RI 02891-0541 | |

                                                   /s/ Karen Frink Wolf
                                           Karen Frink Wolf, Esq. CT 26494