

EXHIBIT B

# ARPIN LOGISTICS

## OWNER OPERATOR AGREEMENT

THIS AGREEMENT ("Contract") made this 16th day of MARCH, 2001 by and between SHAWN LEO POULIOT with his address at 570 Orangeburg Road, City of Summerville, State of South Carolina 29983 ("Contractor"), and ARPIN LOGISTICS at West Warwick Industrial Park, P.O. Box 1302, Town of East Greenwich, State of Rhode Island 02818-0998 ("Carrier").

### WITNESSETH:

WHEREAS, the Carrier is engaged in the business of interstate transportation by motor vehicle, under certificates(s) duly issued by the Department of Transportation ("DOT"); and

WHEREAS, the Contractor is the owner or lessor of the motor vehicle equipment ("Equipment") described below and desires to operate the Equipment on behalf of the Carrier:

| YEAR | MAKE | TYPE | SERIAL NUMBER | REGISTRATION NUMBER |
|---|---|---|---|---|
| 2000 | Frightliner | Classic | | |
| | | | | |
| | | | | |
| | | | | |

NOW, THEREFORE, in consideration of the mutual covenants and conditions hereinafter stated, the parties agree as follows:

1.(A) The Contractor hereby furnishes said motor vehicle equipment to the Carrier and any substituted or added vehicles, as required by the Carrier in its business, that Contractor possesses, all upon the terms, conditions and provisions herein set forth, and it is agreed that control and responsibility for the operation of the equipment with respect to complying with the rules and regulations of the Department of Transportation ("DOT"), and any other Federal or State regulatory body, shall be that of the Carrier while the equipment is operating under the authority of the Carrier.

(a) The Contractor represents, warrants and covenants that he is an independent Contractor only, and is not an employee of the Company.

(b) Contractor is not required to purchase or rent any products, equipment, or services from the Carrier as a condition of entering into or performing this Contract.

(c) The Contractor reserves the right, at all times, to:

(1) employ any qualified person selected by him to operate the Equipment and to employ helpers of his own choice and selection and to supervise, discipline, discharge or otherwise deal with any such driver or helper and to fix and establish rates of pay for such drivers and helpers; it being understood and agreed that the Contractor is solely responsible for such personnel and shall provide all workers' compensation insurance and be responsible for all payroll taxes;

(2) maintain such records as he elects to do, in addition to those required by applicable rules, regulations or laws set forth by the Federal and State authorities that regulate the transportation industry;

(3) operate over any route or combination of routes which he selects in performing the services under the terms of this Contract and determine the number of hours he or his employees work; holiday and vacation periods; provided that all such work shall comply with all laws, rules and regulations relating to safety of operations and limitations of hours of employment that are set forth by the DOT;

(4) select such time schedules as he deems best, provided the same comply with applicable rules, regulations and requirements as aforesaid;

(5) accept or reject any assignments tendered to him by the Carrier;

(6) store, maintain, repair the Equipment and purchase any fuel oil and gasoline at such times and places as he selects, and otherwise conduct the operations of the Equipment as an independent Contractor, subject only to such provisions of the DOT which require control with respect to service, territory to be served, rates to be assessed, documents to be executed and delivered, be vested in the Carrier.

(d) At the request of the Carrier, the Contractor will furnish true copies of all tax returns and reports required under the laws of the Federal, State and Local Governments.

(B) (a) The Contractor represents and warrants that the Equipment is now in good mechanical condition and repair and meets the requirements, rules and regulations of all local, State and Federal authorities, including, those of the DOT and the Contractor agrees that at his own cost and expense, will, at all times maintain the Equipment in good operating condition and in compliance with said rules and regulations of the Carrier.

(b) Before commencing operation of the Equipment hereunder, and from time to time thereafter, the Carrier may inspect it or require it inspected by such persons as the Carrier may designate. If the Equipment does not meet with the rules and regulations of the Carrier the rules and regulations of the DOT, it shall not be operated for the Carrier, and, in such event, the Contractor agrees to repair and remedy the defects in order that the Equipment is satisfactory to the Carrier and complies with the aforesaid rules and regulations.

(c) The Carrier may fine the Contractor for failure to (1) submit logs in the form and manner prescribed by the DOT and the Carrier, failure to complete and submit the appropriate and necessary vehicle inspections, (2) notify the Carrier of vehicle inspections performed on the Equipment by the DOT or any other regulatory or Government body; it being agreed that the Contractor may be required to reimburse the Carrier for fines and penalties assessed against Contractor, COD drivers or helpers and/or his Equipment by any Federal, State or Local Government body which the Carrier is required to pay.

(d) The Carrier may charge the Contractor for investigation services performed for the Contractor relating to COD drivers or helpers associated with the Contractor. All such fines, penalties or charges are contained in the Schedule of Compensation attached hereto and made a part hereof which from time to time may be changed at will by the Carrier on notice to the Contractor.

(e) The Carrier reserves the right to revise, amend, reduce, or add to the fines, penalties or charges herein contemplated resulting by changed regulatory requirements or rules or the Carrier's revised rules.

(C) (a) The Contractor agrees that no substitutions of the Equipment shall be made without the written consent of the Carrier being first had and obtained. Contractor agrees that, in the event another piece of Equipment is substituted, all the terms and conditions of this Contract shall apply to such substitute Equipment, as if specifically named herein. When the Equipment is withdrawn from the service of the Carrier, the Contractor shall immediately, at his own expense, remove all the Carrier's colors, insignia, and advertising therefrom, and eliminate all permit and certificate numbers which may designate said vehicle as operating in the service of the Carrier.

(b) The Contractor shall furnish the Carrier sufficient notice of not less than twenty-one (21) calendar days, of his intention to replace the Equipment so that necessary applications and proper registration can be made to properly qualify it in Carrier's service. In the event Carrier has already furnished the Contractor with the necessary permits, licenses, certificates and franchises necessary to operate the Equipment under any Federal or State law, the Contractor shall pay any additional fees or costs incurred for qualifying the replacement Equipment.

(c) The Contractor is to pay for any and all expenses accrued for duplication of lost, misplaced, or stolen permits or plates and, in addition, all expenses of wire authorities needed until duplicate plates and permits can be secured.

(d) Upon execution of this Contract, it is the Contractor's responsibility to paint and letter his unit or units with the Carrier's standard specifications.

2. Subject to the provision of Paragraph "1(A) (c)" hereof, the Contractor agrees:

(a) that all operations with the Equipment are and shall be subject to the exclusive control and direction of the Carrier to the extent required by the DOT;

(b) that transportation will be conducted under the Carrier's waybills, bills or lading, freight bills, manifests, and other shipping documents as required by Federal and State regulations.

(c) That he will pick up, transport, and deliver all shipments as directed and instructed by the Carrier, and understands all expenses for loading and unloading shall be borne solely by the Contractor;

(d) to prepare, maintain, and file with the Carrier all logs, records, reports, and other documents required by Federal and State laws and to deliver these at the place and within the time specified by rules governing such operations. In the event Contractor does not comply with regulations in regard to such logs, records, reports, and other documents, the Contractor authorizes the Carrier to deduct from any and all compensation due or to become due the Contractor hereunder, the additional expense and handling charges incurred by the Carrier by reason of the lateness or non-delivery of such logs, records, reports, or other documents; and the Carrier reserves the right to forthwith terminate this Contract on 24 hours' notice;

(e) to return and deliver forthwith to the Carrier, or such person or persons as Carrier shall designate, at any time upon demand by the Carrier, any and all shipments being transported by Contractor under this Contract, any and all documents relating to such shipments and any and all property of the Carrier, in Contractor's possession or under his immediate possession of the shipments, documents, and property under any and all circumstances whatsoever. The Contractor acknowledges that, under no circumstances whatsoever, does he acquire any right or interest in the said documents, equipment, or shipments;

(f) to notify the Carrier within two (2) hours after occurrence of any accident, by telephone, to enable the Carrier to conform with the requirements of public authority and the Carrier's insurers; and within five (5) days of the date of accident, either in writing or confirmed in writing, in accordance with the Carriers current practice, to give notice of any accident involving any Equipment operated in the business of the Carrier under this Contract, and of any situation or occurrence within the Contractor's knowledge which effects, or is likely to affect, the interests of the Carrier, including any damage to, loss of, or delay in, delivery of cargo in the custody or possession of the Contractor;

(g) to assume full financial responsibility for the cost of recovery, transportation and repair of the of the Carrier's owned equipment assigned to him which he abandons or causes to be abandoned; but nothing herein shall be deemed to permit or sanction abandonment.

(h) to assume full financial responsibility for delay claims occasioned by departure from the transit or delivery schedule established by the Carrier, unless the delay is communicated to the Carrier prior to the end of the next working day following the departure from schedule and a new schedule is established by the Carrier.

(i) to furnish base state license on the power unit. All property tax, Federal Highway Use Tax, or other assessments arising out of ownership of the Equipment will be the responsibility of the Contractor and all costs of such assessments shall be paid by the Contractor.

3. (a) The Contractor agrees to pay all operating expenses arising from the use and operation of the Equipment during the time it is operated on behalf of the Carrier, including, without limiting the generality of the foregoing, wages of drivers and helpers, workers' compensation insurance, fuel taxes payable at time of fuel purchase, Social Security taxes, payroll taxes, property taxes, fines, penalties, or charge of any kind arising in connection with the procurement and servicing of said equipment and its operation hereunder.

(b) If the Equipment shall consist of a tractor only and the Carrier leases the Contractor a semi-trailer, the Contractor agrees that he will use the semi-trailer only in the performance of his obligations under this Contract, and agrees to keep and maintain the Carrier-owned and semi-trailer in the same good repair and condition as when delivered to him, normal wear and tear excepted, and to keep washed, greased and cleaned as needed. In the care and maintenance of the Carrier-owned semi-trailer, the Contractor agrees to comply with the rules and regulations of the Carrier in respect to said maintenance and care. The Carrier will reimburse the Contractor for any and all expenses incurred with respect to the Carrier-owned semi-trailer except expenses created as a result of any negligent act or omission of the Contractor. See separate lease agreement regarding leased trailer if applicable.

(c) The Carrier agrees to provide the Contractor with accessorial equipment Carrier deems necessary in connection with the operation of any Carrier-owned semi-trailer. The Contractor assumes responsibility for all such accessorial equipment and agrees to maintain it in good condition and repair; and upon the return thereof to Carrier, pay for any loss, shortage, or damage thereto or thereof, normal wear and tear excepted.

4. (a) The Carrier, as required by 49 U.S.C. S10927, will maintain insurance coverage for the protection of the public, the Contractor authorizes the Carrier, its agents or its insurance company to contest or settle all claims arising with respect to shipments under this Contract, to determine the liability for damage or losses, and Contractor agrees to reimburse Carrier the applicable deductible as outlined below:

(b) When damage is determined by existing documents and/or investigation by claims representative to be the Contractor's responsibility, such determination of liability to be final and binding, the Contractor will be charged for the cost to the Carrier of the damaged article(s) at a rate of $1,500.00 per shipment or not to exceed a maximum of $.60 per pound per article.

(c) When the Contractor's responsibility for shortage is fully documented under (b) above, the Contractor will be charged the full amount of the loss.

(d) The Contractor will deposit, or accumulate with the Carrier, a cash reserve in the amount of $2,500.00 upon which the Carrier will pay quarterly an annual interest to Contractor equal to the average yield on 91-day, 13-week T-bills as established in weekly auctions at the Department of Treasury. The cash reserve shall be deposited with Carrier before any unit of Equipment furnished by Contractor is operated in the business of Carrier under this Contract, or, in the alternative, the Carrier may permit the cash reserve to be accumulated by deduction by the Carrier from the portion of the transportation charges (excluding fuel surcharge) to be credited to Contractor's reserve account and arising from each settlement, $250.00 of total portion due Contractor until the cash reserve is fully accumulated. The cash reserve and accrued interest, less any amounts then remaining due to the Carrier from the Contractor shall be refunded to the Contractor no later than 45 days from the effective date of termination. The Contractor shall comply with all provisions relating to termination of this agreement before the termination is effective.

(e) The Contractor agrees that, upon termination of this Contract, the Carrier may deduct from the Contractor's account with the Carrier and place in the cash reserve such sum as might be needed to establish an accumulated cash reserve of $1,600.00. The $500.00 cash reserve shall be held by the Carrier and refunded to the Contractor pursuant to the provisions of paragraph (c) hereof.

(f) The Carrier shall provided the Contractor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation earned by Contractor hereunder.

5. (a) Contractor, as a trustee, will collect and account for, in cash or by good and valid certified check or money order payable to the Carrier all monies due to the Carrier for the transportation of goods, wares and merchandise, together with any and all charges arising out of or in connection with said transportation, in accordance with bill of lading, shipping contract, or other written instructions covering the shipment(s) transported hereunder. The Contractor will promptly remit all collected monies, together with properly signed bills of lading and all other shipping documents to the offices of the Carrier. The Contractor is not authorized to extend credit or make any adjustments in any of the items of collections except under prior written authorization of the Carrier. The Contractor agrees that no shipment(s) hereunder will be delivered until all C.O.D. charges have been collected in cash, or by good and valid certified check, or money order, unless otherwise instructed in writing, by the Carrier. Any losses resulting from thefts, defalcation, or failure by drivers or other employees of the Contractors relative to the return and transmittal of monies so collected shall be borne solely by the Contractor.

(b) The Contractor expressly agrees that all monies herein referred to, are the exclusive property of the Carrier, regardless of the status of the account between the Carrier and may not be used as an offset against claims of the Contractor and the retention or use by the Contractor of any part thereof for any purpose whatsoever, other than to pay it over to the Carrier as herein provided or as otherwise authorized in writing by the Carrier, shall be deemed a misappropriation of the Carrier's property whether done by the Contractor directly or by any of his agents, servants or employees.

6. (a) The Carrier shall pay the Contractor the compensation provided for the Schedule of Compensation attached hereto and a part provided for in the Schedule of Compensation attached hereto and a part hereof on shipment(s) assigned to him for transportation services proportionally as he performs the required and assigned services on such shipment(s). In effecting a payment for services performed and compensation earned under this Contract, each shipment assigned shall be considered separately, and shall be fully earned only on the completion of all transportation services by the Contractor and the delivery by him to the Carrier of all necessary transportation documents, fully executed, as may be required by the Carrier to properly substantiate the services performed by the Contractor.

(b) The required transportation documents, which are required to be delivered to the Carrier as a condition precedent to payment of earned compensation thereon are as follows:

(1) Standard Logistics bill of lading and freight bill.

(c) Within fifteen (15) business days of receipt of said documents, accomplished by a "trip settlement record" from the Contractor, the Carrier shall make full payment to the Contractor of all compensation earned for services performed and completed prior thereto, less all compensation drawn in advance of said settlements and less all expenses incurred by the Contractor and charged to his account under the terms of this Contract, and shall furnish to the Contractor a current statement of the latter's account with the Carrier, together with copies of the supporting rated freight bills, except that upon the termination or cancellation of this Contract by either party, whether or not for cause, it is understood and agreed that the Carrier shall have a period of forty five (45) days in which to make a final accounting and settlement of all sums earned by the Contractor under this Contract.

(d) The following specified items may be charged back to and/or deducted from the Contractor's compensation at the time of payment or settlement as provided herein and may also be charged back (deducted) to/from the cash reserve account as provided herein. The Carrier shall provided an accounting in the case of chargebacks or deductions of any transaction earned by the Contractor pursuant to this Contract. The accounting shall be set forth in individual settlement sheets showing the amount and description of any chargeback or deduction. The Contractor may demand an accounting for transactions involving the cash reserve account at any time.

    i.    additional fees or costs incurred in the process of qualifying replacement equipment as provided herein.

    ii.    any and all expenses, expenses for duplication of loss, misplaced or stolen permits, plates and wire authorities as provided herein.

    iii.    paint and labor as provided in this Contract;

    iv.    additional expense and handling charges incurred by Carrier incurred by reason of lateness or non-deliver of logs and other documents as provided in paragraph 3(c) hereof;

    v.    all expenses, charges, and fees whatsoever incurred by Carrier in obtaining possession of shipments, documents relating to such shipments, and any and all property of Carrier herein provided;

    vi.    expenses, charges, and fees whatsoever incurred in recovery, transportation and repair of abandoned equipment as provided herein;

    vii.    delay claim payments occasioned by Contractor as provided herein;

    viii.    assessments and costs of assessments on Contractor equipment as provided in paragraph 4(j) hereof;

    ix.    license, registration, permit, identification insignia, and all other such fees and/or taxes as provided herein;

    x.    repair and/or maintenance expenses on Carrier equipment resulting from negligence of Contractor in accordance with this Contract;

    xi.    loss, shortage or damage to van equipment as provided herein;

    xii.    cargo loss and damage claims as provided herein;

xiii. C.O.D. transportation charges and any other transportation charges required to be collected by Contractor as provided herein;

xiv. expense and all other operating, maintenance and insurance advances made to Contractor as provided herein;

xv. performance bonds, damages and losses to Carrier trailer and van equipment as provided in this Contract;

xvi. insurance premiums and charges which may be required as provided herein;

xvii. indemnification for any and all items impliedly or expressly set forth as provided in this Contract;

xviii. termination charges, costs and expenses as provided herein;

xix. liquidated damages associated with termination and the removal of Carrier identifying marks, colors, etc., as provided herein;

xx. communication expenses and charges as provided herein;

xxi. real property damages as provided herein;

xxii. safety department fines, penalties and charges as provided herein;

7. The Carrier, will, on demand of the Contractor, at the Carrier's option, either provide the Contractor with a copy of, or make reasonable arrangements for the Contractor to inspect Carrier's existing tariff(s).

8 (a) The Carrier may carry any and all insurance which it shall deem necessary to protect itself hereunder, and the Contractor agrees to cooperate fully with the Carrier in furnishing any and all information necessary for the bonding of the Contractor or any of the Contractor's employees furnishing services hereunder. In addition thereto, the Contractor hereby authorizes insurance on any Carrier-owned semi-trailer and all Carrier-owned equipment furnished to the Contractor. The Contractor agrees to pay the Carrier the first $500.00 of repair cost to Carrier's semi-trailer or equipment if damage is occasioned by negligent act or omission. A $50.00 deductible will be charged on tire and trailer repairs on Company owned Equipment.

(b) It is expressly understood by the Contractor that in no event does the Carrier assume any liability of any nature whatsoever to the Contractor for any loss or damage which the Contractor may sustain in the operation of his Equipment whether such loss or damage may result from fire, theft, collision, or other casualty. Contractor may purchase insurance independently or through the Carrier.

(c) Whenever the Contractor is required under the terms of this Contract, or by a written request made by the Carrier during the term hereof, to obtain and maintain insurance, copies of the insurance or a certificate thereof shall be furnished to Carrier. All such insurance shall name the Carrier as an assured and shall contain a provision to the effect that it may not be modified, canceled, revoked, amended or in any other manner altered except upon thirty (30) days advance written notice to the Carrier. In any instance in which the Contractor is required to obtain insurance but fails to do so, the Carrier may obtain it and charge the cost thereof to the Contractor. The Contractor will, upon request by Carrier, furnish the Carrier with evidence, satisfactory to the Carrier, of compliance with the provisions of this paragraph.

(d) During the term of this Contract, the Contractor shall obtain and maintain in force policies of Workers' Compensation Insurance covering all persons employed or engaged by him and shall in all other respects, comply with all the laws relating to the employment of personnel, including, but not limited to, Social Security, unemployment insurance, withholding taxes, disability benefits and the like. Contractor may purchase Workers' Compensation Insurance required hereunder through the Carrier at the rates published in the Schedule of Compensation hereto but the Carrier is not obliged to provide this in any other insurance to the Contractor or arrange to procure it.

(e) During the term of this Contract, the Contractor shall maintain and keep in force public liability and property damage insurance covering both the bob tail operations of the Equipment and operations when in the exclusive control and direction of the Carrier. The Contractor may purchase the insurance required hereunder through the Carrier at the rates published in the Schedule of Compensation hereto.

(f) The Contractor may, solely at Contractor's option, through the Carrier, purchase life and health insurance policies.

(g) The Carrier shall provide the Contractor, upon the request of the Contractor, a copy of each insurance policy required hereunder to be maintained in force by the Contractor. As to each such insurance policy, the Carrier shall provide to a Contractor a Certificate of insurance for each such policy.

9. Contractor agrees to indemnify, save and hold Carrier free and harmless from and against any and all claims, demands, liabilities, damages, losses, judgments, awards, causes of action at law or in equity, including but not limited to those involving injury to, or death of, Contractor's employees and/or third parties and damages to property including but not limited to, cargo, and attorney's fees and all reasonable costs of litigation, and from and against any obligation whatsoever arising out of or attributable to any act or omission of the Contractor or of any of the persons engaged or employed by Contractor in connection with the operation or maintenance of the Equipment, and in connection with Contractor's performance of transportation of other services hereunder.

10. (a) The term of this Contract shall be for one (1) year from the date hereof, and to be renewed, an addendum must be signed by both parties stating they have agreed to extend the Contract for an additional year, unless terminated as follows:

(b) Either party may, upon no less than thirty (30) days written notice to the other, prior to the expiration of the term of this Contract or any extended term, terminate this Contract.

(c) Should the Contractor become insolvent, or make a general assignment for the benefit of creditors or should a receiver be appointed for him or should the Contractor commit any act of bankruptcy, or in the Carrier's sole judgment, be deemed financially insecure or the Carrier deems itself financially insecure respecting Contractor's finances or operations hereunder, this Contract may be terminated by the Carrier without notice, immediately upon the happening of any of such event(s).

(d) This Contract shall terminate forthwith upon any attempted assignment or subletting hereof by Contractor, whether voluntary, by operation of law, or otherwise.

(e) In the event of any breach of the terms, provisions, conditions, or covenants of this Contract by the Contractor, Carrier may, at its option and without prior notice, terminate this Contract immediately upon the happening thereof.

(f) (1) At option of Carrier, a temporary suspension of operation may be imposed or granted of one calendar month per year. (2) In addition to the said month, the Carrier may, in lieu of cancellation of this Contract, impose temporary suspensions for violations of contractual obligations. (3) During any period of suspension, the Contractor shall place the Carrier's trailer(s) on Carrier's premises at West Warwick Industrial Park, Box 1302, East Greenwich, Rhode Island 02818-0998 or at such other location as may be designated by Carrier, and shall remove and place in Carrier's possession all license plates, and permits, other than those purchased by the Contractor from the tractor unit(s), and further, shall cover Carrier's name, symbols, insignia and identification, on each tractor unit in such manner as to prevent identification of the Carrier with the tractor unit during the period of suspension.

(g) Upon receipt of any notice of termination from the Carrier, the Contractor shall:

i. Immediately discontinue all operation under this Contract provided, however, that upon the written request of Carrier, the Contractor shall complete delivery of any goods, wares and merchandise which he may then have in his possession being transported under the terms of this Contract, and the Contractor shall forthwith thereafter return to Carrier's premises at West Warwick Industrial Park, West Warwick, Rhode Island 02893 or at such other location as may be designated by the Carrier, the Carrier's trailer and all equipment, including bills or lading, inventories, and any and all shipping documents, materials, and other evidences of operating authority in the Contractor's possession. Should the Contractor fail or refuse to complete the aforesaid delivery of goods, wares and merchandise, when so requested by the Carrier or fail or refuse to make the aforesaid forthwith delivery to Carrier's premises at West Warwick Industrial Park, West Warwick, Rhode Island 02893 or other designated location, the Contractor shall pay to Carrier forthwith upon written demand all costs and expenses (including reasonable attorney's fees) of the Carrier in effecting the return or replevin of the aforesaid trailer, etc., or to such location as may have been designated by the Carrier. The Contractor will also execute and deliver to Carrier all documents and papers which may be required to effect a transfer of, or to secure from the Governmental agencies involved a refund for, such licenses and registrations, and upon failure or refusal of the Contractor to cooperate promptly with the Carrier to effect such transfers or secure such refunds, the Carrier may, at its option, charge to the Contractor the amount of any refund to which the Carrier might otherwise be entitled, or the cost of replacing such items for their unexpired terms.

ii. Forthwith, no later than five (5) days after termination, the Contractor shall remove all identifying trademarks, signs, color combinations and lettering referring to the Carrier from said vehicle and Equipment. In the event, the Contractor fails to comply with this provision within a five (5) days' period, the Contractor shall pay to the Carrier the sum of $50.00 per unit for each day of non-compliance; and, in addition thereto, Carrier may withhold payment of any and all amounts due to the Contractor or which may thereafter become due to the Contractor until evidence is furnished the Carrier by the Contractor that compliance has been accomplished in accordance with the Carrier's instructions or requirements.

In the event this Agreement is terminated prior to time of expiration of any license and/or registration plates or other identification insignia, cards, or papers and/or registration fees and/or taxes for which the Carrier has either paid or credited the Contractor's account or otherwise furnished, the Contractor will deliver to the Carrier such license and/or registration plates or other identifying insignia, cards, or papers pertaining thereto with any signatures which may be required to effect a transfer hereof or secure a refund from the Governmental agencies involved. Upon failure of the Contractor to cooperate with the Carrier to effect such transfer to secure such refund, the Carrier may, at its option, charge to the Contractor's account the amount of any refund the Carrier might otherwise receive or the cost of replacing or again paying for the license and/or registration fees and/or taxes for its or their unexpired terms.

11. Repossession: If Purchaser shall at any time default in any of the payments or breach any of the terms, provisions, conditions, or covenants of this agreement or the Purchasers Contract Agreement with PAVL, or the Purchasers Promissory Note, Loan Agreement, or Security Agreement with PAVL, or if Purchaser becomes bankrupt or insolvent, or if a petition in bankruptcy is filed by or against Purchaser, or if Purchaser be a party as a debtor or bankrupt to any proceeding under any bankruptcy act, or if said purchased property or any part thereof is levied upon or seized by any public officer by reason of any obligation of Purchaser, then, in any such event, PAVL at its option may forthwith and without notice terminate this Loan Agreement retaining all proceeds therefor collected by PAVL and shall have the right to take immediate possession of said purchased property wherever it may be found, with or without process of law, and in that connection may enter into any premises of or under the control or jurisdiction of Purchaser, or any agent of Purchaser, where said purchased property, is located or any part thereof disconnecting and separating all thereof from any property. Purchaser hereby expressly waives all claims for injury suffered throughout or loss caused by such repossession.

12. Except as otherwise provided in this Contract, as relates to the cash reserve account, in the event of termination of this Contract, the Carrier is authorized and reserves the right to deduct from and set-off from any monies due or to become due to Contractor under this Contract or any other contract or agreement now existing or which may hereinafter be entered into by and between the Carrier and the Contractor. The Carrier is further authorized to withhold payment of any and all sums due to Contractor hereunder until the Contractor has fully complied with all the terms of this Contract on his part to be performed. Except as may otherwise be provided herein, the Carrier and the Contractor agree that the Carrier shall render an accounting to the Contractor not later than forty-five (45) days from the termination date of this Contract.

13. Neither of the parties hereto shall, without the written consent of the other, pledge the name or credit of the other or incur debts, obligations, or liabilities for which the other will be charged and nothing contained in this Contract shall be deemed to create an agency, joint venture, partnership or any other legal relationship except that of the Carrier and independent Contractor.

14. Any and all notices required under this Contract to be given by either party to the other shall be deemed to have been given within two (2) days after the mailing of same in a sealed envelope by Certified Mail to the parties hereto as follows:

    To the Contractor at 570 Orangeburg Road, City of Summerville, State of South Carolina 29983.

15. It is hereby agreed by and between the Carrier and the Contractor that the Schedules attached hereto and made a part hereof may be amended from time to time by Carrier. The amended Schedule or Schedules shall become effective as provided for in paragraph "12" hereof.

16. The failure of either party to enforce at any time any of the provisions of this Contract, or to exercise any option which is herein provided, or to require at any time performance by either party of any of the provisions hereof, shall in no way be construed to be a waiver of part thereof, nor in any way affect the validity of this Contract or any part thereof, or the right of either party to thereafter enforce each and every such provision.

17. Contractor covenants that he will not assign or transfer this Contract and any attempt on the part of the Contractor to assign or sublet whether by operation of law, voluntary or otherwise, shall terminate this Contract forthwith.

18. In the event the Carrier shall be required to institute or defend any action at law or in equity brought against or by the Contractor and arising out of this Contract, the Contractor agrees to pay such amounts as the Court shall determine as and for reasonable attorney's fees for Carrier in commencing or defending any such action or suit.

19. It shall be the responsibility of the Contractor to provide ongoing telephone communication of loading, delivery, and transit schedules to the Carrier's customers and agents, as directed by the Carrier.

20. When performance hereunder by the Contractor, his employees or agents has resulted in damage either to the interior or exterior of the premises, or to driveways, curbs, lawns, shrubbery or any other real property of a shipper or consignee, the Contractor agrees to pay or be charged the cost of all repair, such cost not to exceed a maximum of $500.00 for damage to the interior, and a maximum of $500.00 for the damage to the exterior, or both.

21. It is expressly understood and agreed between the parties to this Contract that the same shall be interpreted under the laws of the State of Rhode Island and shall be subject to all Federal and State statutes, and the rules and regulations of the DOT, and all State regulatory bodies and agencies; and in the event of any conflict therewith, this Contract shall continue in full force and effect as to the parties hereto and subject to the remaining terms.

IN WITNESS WHEREOF, the parties hereto have executed this Contract on date hereinafter set forth.

WITNESS

CONTRACTOR

By: _____
Shawn L. Pouliot

ARPIN LOGISTICS

By: _____
Joe Rocha
Fleet Operations Manager