UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 1302 (DJS) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY A | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL, | : | OCTOBER 27, 2004 |

## *PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'S MOTION TO COMPEL MORE RESPONSIVE ANSWERS TO DEFENDANTS' FIFTH REQUEST FOR PRODUCTION PROPOUNDED TO PLAINTIFF*

Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter "Arpin") hereby submit

this Motion to Compel More Responsive Answers to Defendants' Fifth Request For Production

of Documents Propounded to Plaintiff.

In support of this Motion are attached a Memorandum of Law and an affidavit of good

faith efforts to resolve this discovery dispute without court intervention.

Arpin hereby moves that its requested relief be granted.

DEFENDANT/THIRD PARTY
PLAINTIFF/CROSS-CLAIM PLAINTIFF

Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street, P.O. Box 541
Westerly, RI 02891
(401) 596-0183
(401) 596-6845 (Fax)

### *CERTIFICATION OF NOTICE*

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this 27th day of October 2004 to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street, New Haven, CT 06510, Roland F. Moots, Jr., Esquire of *Moots, Pellegrini, Mannion, Martindale & Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire *Halloran & Sage*, One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and James R. Oswald, Esquire of *Adler, Pollack & Sheehan*, P.C., 2300 Financial Plaza, Providence, RI 02903-2443.

Thomas J. Grady, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:02 CV 1302 (DJS) |
| | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE  FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY A | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL, | : | OCTOBER 27, 2004 |

### *PAUL ARPIN VAN LINES, INC.  AND ARPIN LOGISTICS, INC.'S MOTION TO COMPEL MORE RESPONSIVE ANSWERS TO DEFENDANTS' FIFTH REQUEST FOR PRODUCTION PROPOUNDED TO PLAINTIFF*

Pursuant to Local Rule 7(a), Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc.

(hereinafter "Arpin") hereby submit this Memorandum of Law in Support of its Motion to

Compel More Responsive Answers to Defendant's Fifth Request For Production of Documents

Propounded to Plaintiff.

On September 23, 2004, Plaintiff served four separate requests for production upon the

Plaintiff.  The Plaintiff provided Arpin counsel with the documents relevant to the first request of

the Fifth Request For Production of Documents.  (GMAB, Inc. Tax Returns).

On October 7, 2004, Plaintiff served objections to Requests 2-4 of Arpin's Fifth Request For Production.

Arpin has attached its Fifth Request For Production of Documents to this memorandum as Exhibit 1. Arpin has attached the Plaintiff's Objections as Exhibit 2.

Request 2 of Arpin's Fifth Request For Production seeks the corporate charter of GMAB, Inc. (See Exhibit 1). Paragraph 3 of Arpin's request seeks Shawn Pouliot's cellular phone records from July 1, 2001 to December 31, 2001. (See Exhibit 1). Paragraph 4 of Arpin's request seeks all of Shawn Pouliot's credit card bills for each and every month of 2000 and 2001. (See Exhibit 1)

To each of these requests Plaintiff has served a blanket objection as follows: **"Beyond the scope of documents reasonably calculated to lead to admissible evidence."** See Exhibit 2.

Arpin moves to compel more responsive answers to these three requests.

## II.    LAW AND ARGUMENT

The Federal Rules of Civil Procedure permit broad discovery of "any matter, not privileged, which is relevant." Fed.R.Civ.P. 26(b)(1). "The information which is sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Id. This rule is construed liberally. Blount v. Wake Elec.

2

Membership Corp., 162 F.R.D. 102, 104 (E.D.N.C. 1993).

Federal Rule of Civil Procedure 26(b)(1) states that "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . " Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. See Daval Steel Products v. M/V Fakerdine, 951 F.2d 1357, 1367 (2d Cir. 1991). A valid discovery request need only "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see Hickman v. Taylor, 329 U.S. 495, 501 (1947); Gary Plastic Packaging Corp. v Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 236 (2d Cir. 1985).

"A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less expensive; or (3) the burden of expense of the proposed discovery outweighs its likely benefit." Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002) (citing Fed.R.Civ.P. 26(b)(2)). The party resisting discovery bears the burden of demonstrating that its objections should be sustained, and

> pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. An objection to a document request must clearly set forth the specifics

3

of the objection and how that objection relates to the documents being demanded. Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D.N.Y. 1996). The objecting party must "show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. Compagnie Francaise D'Assurance Pour Le Commerce Extrerieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984).

The Plaintiff has asserted an identical blanket objection to Requests 2-4. The Objection conclusively reads, "Beyond the scope of documents reasonably calculated to lead to admissible evidence" for each of Requests No. 2-4.

As discussed above, "Fed.R.Civ.P. 26(b) allows broad discovery of any non-privileged information that is "reasonably calculated to lead to admissible evidence. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (relevance under Rule 26(b)(1) must be construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case") Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Md., 122 F.R.D. 447, 449 (S.D.N.Y. 1988) ("reasonably calculated" means "any possibility that the information sought may be relevant to the subject matter of the action") (quoting Mallinckrodt Chemical Work v. Goldman, Sachs, 58 F.R.D. 348, 353 (S.D.N.Y. 1973))

(emphasis in original). See also <u>Zanowic v. Reno</u>, No. 97 Civ. 5292, 2000 WL 1376251, at *2

(S.D.N.Y. Sept. 25, 2000) ("There can be no dispute that although, not unlimited, relevance for

the purposes of discovery, is an extremely broad concept".)" <u>In re Ashanti Goldfields Securities</u>

<u>Litigation</u>, No. 00 CV 717 at *5 (E.D.N.Y. January 7, 2003).

     The following analysis will address each Request to which the Plaintiff has posed the

same identical objection.

1.    <u>GMAB Corporate Charter</u>

     Arpin's second document request is "[t]he corporate charter of GMAB, Inc." See Exhibit

1. The Plaintiff objected to this request by stating that the request is "[b]eyond the scope of

documents reasonably calculated to lead to admissible evidence." See Exhibit 2.

     This conclusive objection is insufficient. Plaintiff offers no particular evidence or

argument which would indicate why this request is not "reasonably calculated to lead to

admissible evidence." For that reason, the Plaintiff's objection should not be upheld by the

Court.

     Furthermore, Arpin's request is "reasonably calculated to lead to admissible evidence."

     Arpin first learned of Plaintiff's corporation GMAB, Inc. through the deposition of his

accountant Mark Sipos on September 22, 2004. This deposition revealed the following:

     Q: Do you know whether or not he owns any corporations?

A: I do know of one.

Q: And what is that?

A: It's the letters GMAB Incorporated.

Q: What is that corporation?  What is it?  Do you know what the purpose of the corporation is?

A: Yes.  He used that corporation to receive monies, from I believe, Workers' Comp and then they in turn pay all his household bills.

Q: So he has a service that pays these bills, is that what it is?

A: The corporation is, yes.

Q: Well, is it a service that's doing this or is he doing it through the corporation?

A: No, he actually - - he does it through the corporation.

Q: Were you involved in the formulation of that corporation.

A: No, I came in after the corporation was formed and I assisted him in setting up a bookkeeping system, told him what receipts to keep for verification for when he prepared the end of the year Key Bank statement.  Helped him set up the files.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

Q: Is there any tax reasons why it would be to his benefit to formulate that corporation?

A: No.  I believe he incorporated just for asset protection.  The corporation would pay income tax on their level and any monies he would take out of the corporation he would have to pay tax again.  So it really wasn't the best tax setup, but I believe his attorney advised him for asset protection to do so.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

Q: Did that have to do with the divorce case?

A: I believe all monies received were from the Workers' Compensation settlements.

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

Q: Do you know who the stockholders are in that company?

A: I believe that Mr. Pouliot is solely.

Q: Shawn Pouliot.

A: I believe.

See Exhibit 3, Mark A. Sipos Deposition page 38, line 11 through page 39, line 13; page 38 line

20 through page 40 line 4; page 40, lines 8-11; page 40, line 24 through page 41 line 3.

As the excerpt above provides, Mr. Sipos, though knowing that GMAB, Inc. exists, knows very little about this corporation. Shawn Pouliot might or might not be the sole shareholder of GMAB, Inc. Shawn Pouliot might or might not be receiving worker's compensation payments, while throughout this litigation he has stated that he is an independent contractor.

Arpin is entitled to know the purpose of GMAB, Inc..

Pouliot claims that his injuries have rendered him incapable of earning any source of income whatsoever. Arpin is entitled to know if GMAB, Inc. was formed to receive any other sources of income other than what Mr. Sipos referred to as worker's compensation payments. This inquiry is relevant as to Mr. Pouliot's claims of loss of earning capacity. If Mr. Pouliot is in fact capable of earning income through this corporation, this contradicts the conclusions of his vocational expert. The Federal Rules allow Arpin to discover information which impeaches the Plaintiff's experts.

Arpin is also entitled to know if there are any other shareholders of GMAB, Inc. other than Shawn Pouliot. This could also reveal evidence that GMAB, Inc. has a purpose other than to pay Shawn Pouliot's bills, which would contradict and impeach the testimony of the Plaintiff's vocational expert. This shareholder might also have further admissible evidence relevant to this case.

For the foregoing reasons, Arpin moves the court to compel the production of the corporate charter of GMAB, Inc.

2.    Plaintiffs Cellular Phone Records

Arpin's third document request is "Shawn Pouliot's cellular phone records from July 1, 2001 to December 31, 2001." See Exhibit 1. The Plaintiff objected to this request by stating that the request is "[b]eyond the scope of documents reasonably calculated to lead to admissible evidence." See Exhibit 2.

This conclusive objection is insufficient. Plaintiff offers no particular evidence or argument which would indicate why this request is not "reasonably calculated to lead to admissible evidence." For this reason, the Plaintiff's objection should not be upheld by the Court.

Furthermore, Arpin's request is reasonably calculated to lead to admissible evidence.

Mark Pouliot was hired by Arpin Logistics, Inc. on August 29, 2001, upon his brother Shawn Pouliot's recommendation. Shortly before Shawn's accident, Mark Pouliot was sent to California on a job by Arpin. Mark Pouliot came to New Jersey and spent the night with his brother Shawn on October 22, 2001. The following day, Shawn's injury occurred.

Three days after the accident, Mark Pouliot appeared in East Greenwich, Rhode Island at Arpin headquarters. The straight truck, which Shawn was using when his injury occurred, was

located at Arpin headquarters. Mark filmed the liftgate on the Arpin straight truck that day. Mark quit his job at Arpin Logistics, Inc. on the day after filming the liftgate. It is believed that Mark might have purchased the video camera prior to the accident.

Prior to Shawn Pouliot's injuries, Mark and Shawn has been planning on starting their own trucking business and would have needed additional money to buy equipment. Arpin, through Court approval on October 18, 2004, added an affirmative defense of fraud which alleges that Shawn Pouliot intentionally caused his own injuries with the intention of filing a personal injury claim against the Arpin defendants.

It is believed that there may have been discussions between Mark and Shawn about this subject matter. The cellular phone records of Shawn Pouliot may indicate whether such discussions took place.

The discovery of Shawn Pouliot's cellular phone records is relevant to Arpin's affirmative defense of fraud against the Plaintiff. Shawn Pouliot's phone records are likely to lead to admissible evidence regarding the fraud defense.

For the foregoing reasons, Arpin moves the Court to compel the Plaintiff to produce his telephone records from July 1, 2001 through December 31, 2001.

3.   Plaintiff's Credit Card Bills

Arpin's fourth request is "[a]ll of Shawn Pouliot's credit card bills for each and every

month of 2000 and 2001." See Exhibit 1. Plaintiff objected on grounds that the request is

"[b]eyond the scope of documents reasonably calculated to lead to admissible evidence." See

Exhibit 2.

This conclusive objection is insufficient. Plaintiff offers no particular evidence or

argument which would indicate why this request is not "reasonably calculated to lead to

admissible evidence." For that reason, the Plaintiff's objection should not be upheld by the

Court.

Furthermore, Arpin's request is "reasonably calculated to lead to admissible evidence."

At his deposition, Pouliot's accountant, Mark A. Sipos, was asked the following:

Q: You didn't have any documents in your file with respect to support for
deductions or exemptions or any of those kinds of necessities in preparing the tax
return
A: The only return I prepared was 2001.
Q: Well do you have those documents for 2001?
A: The only document provided from my client was the 1099 that was in the
exhibit.
Q: Well, how did you prepare the rest of the return?
A: Through conversations with Mr. Pouliot, he indicated to me that all records
were unavailable to him. They were in the custody of his ex-wife so we - - my
advice to him was to go ahead and prepare the return based on certain facts that
we could recall by memory such as lease payments for the truck, the highway use
tax, days on the road and those types of things.
Q: So that everything that appears in the 2001 tax return that is reflected in
Schedule C other than the gross income section - -
A: That is correct.

Q:  You saw no documents that supported any of those deductions at all?
A:  Correct.
Q:  Is that an unusual way to prepare a return?
A:  It's not the standard way we will typically prepare a return.
Q:  What is the standard way you prepare a return?
A:  Typically, with a normal client, we send out an organizer at the beginning of every tax season and that's a detail of what was on the return the prior year and also gives them the ability to fill in any information for the current returns that we're going to prepare.  And based on that, we prepare the return.  Sometimes the client simply fills out the organizer, sometimes they include backup documentation.  If a number looks out of line, we might request additional backup information from them.
Q:  So that the standard way of doing that is to have backup information that you review to support the various deductions that you cite in the Schedule C?
A:  That is correct.
Q:  And any other deductions that you would take on the Schedule B or elsewhere?
A:  Correct.
Q:  Now did you see any kinds of fuel slips or credit card statements or any kind of support at all to support any of these?
A:  No, I did not.
Q:  None?
A:  No. We basically tried to recreate based on the mileage and what the fuel prices were at that time.  I also compared it to prior returns to try to get a feel for how much of a percentage that was related to the gross income.

See Exhibit 3, Mark A. Sipos Deposition, page 5, line 11 through page 8 line 4.

In his deposition, Mark A. Sipos also stated that he would want to amend Shawn Pouliot's

2001 Tax Return to reflect the information he reviewed at the deposition from Arpin Logistics,

Inc. Settlement Sheets to include expenses.  See Exhibit 3, Mark A Sipos Deposition, page 33,

line 15-18.

11

Shawn Pouliot's 2001 income tax return is relevant evidence toward the amount of lost earnings Shawn Pouliot claims in this case. Shawn Pouliot's vocational expert bases his analysis on Shawn Pouliot's 1999 and 2000 tax returns. Arpin is entitled to argue that Shawn Pouliot's earnings in 2001 are a more accurate indicator of Pouliot's projected future earnings. Arpin is also entitled to argue that Plaintiff's vocational expert should have at the very least included the 2001 tax return in his analysis.

As the above cited excerpts from the deposition of Shawn Pouliot's accountant indicate, Pouliot's 2001 return must be amended to reflect expenses. It is very likely that these expenses will have been recorded in a credit card statement. The additions of these expenses will reduce the total earnings reflected in Pouliot's 2001 tax return.

These credit card statements are therefore relevant to Shawn Pouliot's claim for lost future earnings and are admissible to contradict the testimony of his vocational expert and his accountant should they be called upon to testify.

Shawn Pouliot's vocational expert also relies upon Pouliot's 2000 tax return to establish his lost future earnings. The 2000 credit card statements are likely to provide a basis to reduce the amount of earnings which Shawn Pouliot can claim for the year 2000. This has the potential of reducing the amount of damages Pouliot can claim. For this reason, the year 2000 income tax return is reasonably calculated to lead to admissible evidence.

For the foregoing reasons, Arpin moves to compel the production of Shawn Pouliot's

credit card statement from each and every month of 2000 and 2001.

Arpin counsel has attached an affidavit demonstrating its good faith efforts at resolving

this discovery dispute. See Exhibit 4.

DEFENDANT/THIRD PARTY
PLAINTIFF/CROSS-CLAIM PLAINTIFF


Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street, P.O. Box 541
Westerly, RI 02891
(401) 596-0183
(401) 596-6845 (Fax)

### *CERTIFICATION OF NOTICE*

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this 27th day of October 2004 to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street, New Haven, CT 06510, Roland F. Moots, Jr., Esquire of *Moots, Pellegrini, Mannion, Martindale & Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire *Halloran & Sage*, One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and James R. Oswald, Esquire of *Adler, Pollack & Sheehan,* P.C., 2300 Financial Plaza, Providence, RI 02903-2443.

Thomas J. Grady, Esq.

13

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02 CV 1302 (DJS) |
| | : | |
| v. | : | |
| : | : | |
| PAUL ARPIN VAN LINES, INC.; | : | |
| ARPIN LOGISTICS, INC.; THE FESTO | : | |
| CORPORATION; MICHAEL D. KOVAC | : | |
| d/b/a TRANS-EXPO INTERNATIONAL, | : | |
| ERICA RAMIREZ, IN HER CAPACITY AS | : | |
| EMPLOYEE OF TRANS-EXPO | : | |
| INTERNATIONAL, | : | SEPTEMBER 23, 2004 |

## *FIFTH REQUEST FOR PODUCTION OF DOCUMENTS TO BE PROPOUNDED BY DEFENDANTS, THIRD-PARTY PLAINTIFFS, AND CROSS-CLAIMANTS PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS INC. TO PLAINTIFF, SHAWN POULIOT UNDER RULE 34*

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants, Third-Party Plaintiffs and Cross-Claimants Paul Arpin Van Lines and Arpin Logistics, Inc. propound the following document requests to Plaintiff, Shawn Pouliot to be answered separately and full in writing under oath within thirty (30) days after service hereof.

## PRELIMINARY STATEMENT

In answering these document requests, furnish all information available to you, including information in the possession of your attorneys, their investigators and all other persons acting in

your behalf, and not merely such information known of your personal knowledge. Each document request, and each subsection of each document request, is to be fully and separately answered in accordance with the duties set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure. As to any document request for which an exact, complete and entirely accurate answer cannot be made at this time after having made reasonable efforts to provide the information, so state, give the reason why a further response cannot be made at this time, and give as complete and precise an answer as is possible.

<u>DEFINITIONS</u>

For the purpose of these Document Requests and answers thereto the following definitions shall apply:

A.    "Document" means any paper or other writing and any items of graphic material, however recorded or reproduced, including all drafts, copies or other preliminary material which are different in any way from the executed or final document, regardless of whether designated "confidential", "privileged" or otherwise restricted, wherever located, whether an original or a copy, including but not limited to agreements, contracts, financial statements, invoices, minutes, work sheets, work papers, summaries, and other written records or recordings of any conferences, minutes, visits, interviews or telephone conversations, financial and statistical data, analyses, surveys, transcripts of testimony, statements, interviews, affidavits, press releases, memoranda,

drafts, memo pads, notes, indices, tabulations, graphs, reports, papers, records, interoffice

communication, electronic data processing cards, tapes, print-outs, papers or other recordings,

tables, compilations, catalogues, telegrams, letters, photographs, diaries, calendars, drawings,

data-reports, printed matter, correspondence, communications received or sent, books, brochures,

advertisements, circulars, mailings and publications; and any copy containing thereon or having

attached thereto any alterations, notes, comments or other material shall be deemed a separate

document from the original or any other copy not containing such materials within the foregoing

definition.

      B.    "Person" shall mean the plural as well as the singular and shall include any natural

person, and any firm, association, partnership, joint venture, business trust, corporation,

governmental or public entity, department, agency, office or any other firm or legal entity.

      C.    "You" "Your" or "Festo" is defined as meaning Festo Corporation or any other

person acting on behalf or under the direction or control of either or both of these entities.

      D.    "Date" means the exact date, month and year if ascertainable or, if not, the closest

approximation that can be made thereto by means of, if necessary, location in relationship to

other events.

      The words in this document have been selected for their common meanings, and no

particular manner of punctuation or sentence construction is intended.  Please resolve any doubt

3

about the meaning or intent of any phrase or combination of phrases by arriving at an interpretation that permits the request to address a relevant, even productive, area of inquiry. (If you cannot resolve any such doubt, you are invited to call the counsel to resolve the ambiguities through discussion rather than simply state an object for vagueness and wait for judicial resolution of the discovery objection.)

PRIVILEGE

With respect to any requested information, as to which any claim of privilege is made or as to which any claim of protection from discovery is made under Rule 26(b) of the Rules of Civil Procedure, identify the privilege or Rule upon which you rely and set forth the facts upon which such claim is based on sufficient detail to enable Plaintiffs to form a judgment as to the basis and validity of the claimed privilege.

DOCUMENT REQUESTS

1. All Federal and State Tax Returns of GMAB, Inc. for the years 2001, 2002 and 2003.

2. The corporate charter of GMAB, Inc.;

3. Shawn Pouliot's cellular phone records from July 1, 2001 to December 31, 2001;

4. All of Shawn Pouliot's credit card bills for each and every month of 2000 and 2001.

DEFENDANT/THIRD PARTY
PLAINTIFF/CROSS-CLAIM PLAINTIFF

Thomas J. Grady, Esq., CT 17139
Lenihan, Grady & Steele
Six Canal Street
P.O. Box 541
Westerly, RI 02891
(401) 596-0183
(401) 596-6845 (Fax)

### *CERTIFICATION OF NOTICE*

I hereby certify that a copy of the foregoing was forwarded, via U.S. First Class Mail this
23 day of September 2004 to Michael A. Stratton, Esquire of *Stratton Faxon*, 59 Elm Street,
New Haven, CT 06510, Roland F. Moots, Jr., Esquire of *Moots, Pellegrini, Mannion, Martindale
& Dratch*, 46 Main Street, New Milford, CT 06776, Susan O'Donnell, Esquire *Halloran & Sage*,
One Goodwin Square, 225 Asylum Street, Hartford, CT 06103 and James R. Oswald, Esquire of
*Adler, Pollack & Sheehan*, P.C., 2300 Financial Plaza, Providence, RI 02903-2443

Thomas J. Grady, Esq.

5

# EXHIBIT 2