UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT, | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:02 CV 1302 (DJS) |
| | ) | |
| PAUL ARPIN VAN LINES | ) | |
| ARPIN LOGISTICS, INC. | ) | |
| et al., | ) | |
| Defendants. | ) | OCTOBER 7, 2004 |

## PLAINTIFF, SHAWN POULIOT'S, OBJECTIONS TO DEFENDANT'S FIFTH REQUEST FOR PRODUCTION PROPOUNDED TO PLAINTIFF

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 33 & 34, the plaintiff objects to the defendant, Arpin's, discovery requests dated September 23, 2004 as set forth below:

## DOCUMENT REQUESTS

2.    The corporate charter of GMAB, Inc.;

**OBJECTION:**    Beyond the scope of documents reasonably calculated to lead to admissible evidence.

3.    Shawn Pouliot's cellular phone records from July 1, 2001 to December 31, 2001.

**OBJECTION:**    Beyond the scope of documents reasonably calculated to lead to admissible evidence.

4.    All of Shawn Pouliot's credit card bills for each and every month of 2000 and 2001.

**OBJECTION:**    **Beyond the scope of documents reasonably calculated to lead to admissible evidence.**

THE PLAINTIFF,

BY_____

Michael A. Stratton
Stratton Faxon
59 Elm Street
New Haven, CT 06510
Federal Bar No. ct08166
Tel:  (203) 624-9500
Fax: (203) 624-9100
E-mail:mstratton@strattonfaxon.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been forwarded via U.S regular first class mail to:

Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street
P.O. Box 541
Westerly, RI  02891

Susan O'Donnell, Esq.
Halloran & Sage, LLP
One Goodwin Square
Hartford, CT  06103

James R. Oswald, Esq.
Adler, Pollock & Sheehan, PC
2300 Financial Plaza
Providence, RI  02903-2443

Michael A. Stratton

# EXHIBIT 3

Shawn Pouliot
vs.
Paul Arpin Van Lines, et al.

United States District Court
District of Connecticut
Case 3:02 CV1302

Deposition of Mark A. Sipos

Wednesday - September 22, 2004



ORIGINAL

Bish & Associates, Inc.
Stenotype Reporters
159 South Main Street
Suite 812
Akron, Ohio 44308
(330) 762-0031
Fax (330) 762-0300
(800) 332-0607

1428 Market Avenue, North
Canton, Ohio 44714
(330) 580-9181
Fax (330) 580-9183

Email: bishassociates@neo.rr.com
www.bish-associates.com

5

1  Mr. Pouliot's lawyer dated September 16, 2004
2  with a letter enclosing three tax returns,
3  2001, 1999 and 2000 that's been marked as
4  Exhibit B.  Can you identify this document,
5  please?
6      A.  Yes.  These are the returns I sent to
7  Mr. Stratton's office.
8      Q.  Now, was that the complete extent of
9  documents in your file on this case?
10     A.  Yes, it is.
11     Q.  You didn't have any documents in your
12 file with respect to support for deductions or
13 exemptions or any of those kinds of
14 necessities in preparing the tax return?
15     A.  The only return I prepared was 2001.
16     Q.  Well, do you have those documents for
17 2001?
18     A.  The only document provided from my
19 client was the 1099 that is in the exhibit.
20     Q.  Well, how did you prepare the rest of
21 the return?
22     A.  Through conversations with Mr.
23 Pouliot, he indicated to me that all records
24 were unavailable to him.  They were in the
25 custody of his ex-wife so we -- my advice to

6

1  him was to go ahead and prepare the return
2  based on certain facts that we could recall by
3  memory such as lease payments for the truck,
4  the highway use tax, days on the road and
5  those type of things.
6      Q.  So that everything that appears in
7  the 2001 tax return that is reflected in
8  Schedule C other than the gross income
9  section --
10     A.  Correct.
11     Q.  -- which is supported by the 1099 is
12 based on oral representations by him to you?
13     A.  That is correct.
14     Q.  You saw no documents that supported
15 any of those deductions at all?
16     A.  Correct.
17     Q.  Is that an unusual way to prepare a
18 tax return?
19     A.  It's not the standard way we
20 typically will prepare a return.
21     Q.  What is the standard way you prepare
22 a return?
23     A.  Typically, with a normal client, we
24 send out an organizer at the beginning of
25 every tax season and that's a detail of what

7

1  was on the return the prior year and also
2  gives them the ability to fill in any
3  information for the current tax return that
4  we're going to prepare.  And based on that, we
5  prepare the return.
6          Sometimes the client simply fills
7  out the organizer, sometimes they include
8  backup documentation.  If a number looks out
9  of line, we might request additional backup
10 information from them.
11     Q.  So that the standard way of doing
12 that is to have backup information that you
13 review to support the various deductions that
14 you cite in the Schedule C?
15     A.  That is correct.
16     Q.  And any other deductions that you
17 would take on the Schedule B or elsewhere?
18     A.  Correct.
19     Q.  Now, did you see any kinds of fuel
20 slips or credit card statements or any kind of
21 support at all to support any of these?
22     A.  No, I did not.
23     Q.  None?
24     A.  No.  We basically tried to recreate
25 based on the mileage and what the fuel prices

8

1  were at that time.  I also compared it to
2  prior returns to try to get a feel for how
3  much of a percentage that expense was related
4  to the gross income.
5      Q.  How were you retained to do this?
6      A.  I don't understand the question.
7      Q.  Who retained you to do this?
8      A.  Mr. Pouliot.
9      Q.  He did himself?
10     A.  Yes.
11     Q.  Directing your attention to -- well,
12 before we get to that, let's go to the 1999
13 return.  I noticed on that return it indicates
14 that it was self-prepared?
15     A.  Yes.  I noticed that as well.
16     Q.  Was this return prepared and
17 presented to you completed?
18     A.  Yes, it was.  It was just as the
19 exhibit shows.
20     Q.  And do you know when that was
21 submitted to you to the Internal Revenue
22 Service?
23     A.  I guess I do.  It was submitted in --
24 it was in '03.  I don't have the exact date
25 with me.

**37**

1  A. Based on memory, I believe it was in
2  the fall of 2003. Later fall, I believe.
3    Q. What did he tell you at that time?
4    A. At that time he indicated to me that
5  he has a potential client that he'd like me to
6  meet with. He may be receiving funds from a
7  settlement lawsuit pending and wanted to get
8  my advice on setting up trusts for his
9  children and asset protection for the
10  settlement.
11        He also indicated that he may be
12  looking into developing some businesses once
13  that money was received.
14    Q. Did you have any conversations with
15  Mr. Shawn Pouliot between the time you spoke
16  to Mr. Wagner and the July 8th date?
17    A. Yes.
18    Q. And on how many occasions did you
19  talk to Shawn Pouliot?
20    A. I mean, several occasions. I
21  wouldn't even hazard a guess. We were in
22  contact, you know, pretty much monthly.
23    Q. And did you give him any advice about
24  any businesses that he was contemplating?
25    A. Yes, yes. He was interested in a

**38**

1  parking lot striping business that he actually
2  did get involved with. They would -- a
3  gentleman he a contact with that was
4  contracted through several fast food
5  restaurants where they would go in and stripe
6  the parking lot for parking spaces, he would
7  sort of franchise that to Mr. Pouliot for him
8  to do the actual work.
9    Q. Did he form a corporation to do that?
10    A. Not to my knowledge, no.
11    Q. Do you know whether or not he owns
12  any corporations?
13    A. I do know of one.
14    Q. And what is that?
15    A. It's the letters GMAB Incorporated.
16    Q. What is that corporation? What is
17  it? Do you know what the purpose of the
18  corporation is?
19    A. Yes. He used that corporation to
20  receive monies from, I believe, Workers' Comp
21  and then they in turn pay all his household
22  bills.
23    Q. So he has a service that pays these
24  bills, is that what it is?
25    A. The corporation is, yes.

**39**

1    Q. Well, is it a service that's doing
2  this or is he doing it through the
3  corporation?
4    A. No, he actually -- he does it through
5  the corporation.
6    Q. Were you involved in the formulation
7  of that corporation?
8    A. No. I came in after the corporation
9  was formed and I assisted him in setting up a
10  bookkeeping system, told him what receipts to
11  keep for verification for when we prepared the
12  end of the year Key Bank statement. Helped
13  him set up the files.
14    Q. Does GMAB have an address, do you
15  know?
16    A. Yes. It's the same as his current
17  residence, 717 Danner, D-a-n-n-e-r, Road.
18  That's Tallmadge, T-a-l-l-m-a-d-g-e, Ohio
19  44278.
20    Q. Is there any tax reasons why it would
21  be to his benefit to formulate that
22  corporation?
23    A. No. I believe he incorporated just
24  for asset protection. The corporation would
25  pay income tax on their level and any monies

**40**

1  he would take out of the corporation he would
2  have to pay tax again. So it really wasn't
3  the best tax setup, but I believe his attorney
4  advised him for asset protection to do so.
5    Q. Do you know which attorney advised
6  him to do that?
7    A. Mr. Wagner.
8    Q. Did that have to do with the divorce
9  case?
10    A. I believe all monies received were
11  from the Workers' Compensation settlements.
12    Q. Have you seen the corporate papers?
13    A. I'm trying to recall if I have a copy
14  in my permanent file. I may have a copy in my
15  permanent file, but I do recall seeing papers.
16    Q. What do you mean by permanent file?
17  What's a permanent file?
18    A. A permanent file is one we keep on
19  any business. It has records, as you
20  indicated the corporation papers, maybe the
21  federal identification filing if we prepare
22  it, certain things. The start-up of the
23  business, assets, records.
24    Q. Do you know who the stockholders are
25  in that company?

**41**

1    A. I believe Mr. Pouliot is solely.
2    Q. Shawn Pouliot?
3    A. I believe.
4    Q. Now, assume that with respect to the
5    2001 return and the 2000 return Shawn doesn't
6    have any records and Charity Pouliot doesn't
7    have any records to support deductions or
8    exemptions. What's the basis for the
9    deductions and exemptions from the 2000
10    return?
11    A. In the 2000 return?
12    Q. Right.
13    A. Not having prepared it, I'm not sure
14    what they used for their basis.
15    Q. With respect to the item that you
16    listed as a deduction for cellular and long
17    distance calls, do you know that Shawn had a
18    cellular phone?
19    A. Not for a fact, no.
20    Q. Do you know what his phone number,
21    cellular phone number was?
22    A. No, I do not.
23    Q. Would you have that listed in your
24    records?
25    A. No, I do not. The only cellular

**42**

1    phone I have is his current phone number.
2    Q. Now, if it were true that Shawn and
3    Charity Pouliot were receiving Medicaid in
4    2000, is that an item that would be reported
5    as income on the tax return?
6    A. Any type of Social Security, Medicaid
7    or disability benefits typically are reported
8    on line 20(a). They could or could not be
9    taxable depending on the income level, but
10    that's where it should be reported.
11    Q. So on line 20(a) of the Shawn Pouliot
12    tax return for 2000, is there any such entry?
13    A. No. The line is blank.
14    Q. And on the same line, line 20(a) for
15    the tax return for 2001, is there any such
16    entry?
17    A. No, there is not.
18    Q. And on the same return for the year
19    1999, same line 20(a), is there any such
20    entry?
21    A. No, there is not.
22    Q. Directing your attention now to the
23    year 1999 and the returns from the -- returns
24    that you received from the Internal Revenue
25    Service -- I think it would be Exhibit G?

**43**

1    A. Yes.
2    Q. Did Shawn Pouliot receive an income
3    from the Triton Transport Services of
4    Westlake, Ohio?
5    A. Triton?
6    Q. Yes.
7    A. According to the IRS, there was no
8    such income received.
9    Q. Did he have any W-2 income for that
10    year?
11    A. Yes, he did. $2,908.
12    Q. And that was from?
13    A. Champion Auto Transport.
14    Q. Is there an address listed?
15    A. No, there is not.
16    Q. Do you know where they're from?
17    A. No, I do not.
18    Q. Is that an Akron company?
19    A. No. The report doesn't indicate a
20    state or a ZIP code. They do give a federal
21    identification number.
22    Q. And what's the federal identification
23    number?
24    A. 341557530.
25    Q. Now, directing your attention to your

**44**

1    2001 tax return which would be Schedule B --
2    Exhibit B -- on the bottom of the back side of
3    the 1040 cover page, front page in the bottom
4    there are listed beside the DAA a number of
5    entries?
6    A. Yes.
7    Q. Can you explain to me what those
8    entries mean beginning with 8/16?
9    A. May I see the document please? Thank
10    you. The first number next to 8/16 is the
11    amount of interest that the IRS will charge
12    him because the return was filed late which is
13    $1,272.
14    Q. What does FTF mean?
15    A. FTF is failure to file timely.
16    Q. Yes.
17    A. $2,819. And FTP is failure to pay
18    timely. In other words, he paid no estimated
19    taxes and it's $1,816. So when you take line
20    70 which was the total tax of $12,855 and add
21    up the numbers across for the penalties and
22    interest, the total due is $18,762. And that
23    would be through the due date of August 15th.
24    Q. Of 2004?
25    A. Correct.

49

```
 1          MR. GRADY:  Thank you.
 2          MR. STRATTON:  Regarding the
 3   Nationwide subpoena -- we're still on the
 4   record here -- regarding the Nationwide
 5   subpoena, Judge Squattritro's not available to
 6   rule on my objection, but I just want to put
 7   on the record that I would like to get a copy
 8   of anything that you receive, you know, within
 9   a day of when you receive it.
10          MR. GRADY:  Okay.
11          MR. STRATTON:  Okay?
12          MR. GRADY:  Yes.
13              - - -
14   (Deposition concluded at 11:03 o'clock a.m.)
15              - - -
16
17
18
19
20
21
22
23
24
25
```

50

C E R T I F I C A T E

STATE OF OHIO, )
             ) SS:
SUMMIT COUNTY. )

          I, Kelley E. Spears. RPR and
Notary Public within and for the State of
Ohio, duly commissioned and qualified, do
hereby certify that the within named witness,
MARK SIPOS, was by me first duly sworn to
testify the truth, the whole truth and nothing
but the truth in the cause aforesaid; that the
testimony then given by the witness was by me
reduced to Stenotypy in the presence of said
witness, afterwards transcribed upon a
computer; and that the foregoing is a true and
correct transcription of the testimony so
given by the witness as aforesaid.

          I do further certify that this
deposition was taken at the time and place in
the foregoing caption specified, and was
completed without adjournment.

          I do further certify that I am not
a relative, employee of or attorney for any of
the parties in the above-captioned action; I
am not financially interested in the action;
and I am not, nor is the court reporting firm
with which I am affiliated, under a contract
as defined in Civil Rule 28(D).

          IN WITNESS HEREOF, I have hereunto
set my hand and affixed my seal of office at
Akron, Ohio on this 23rd day of September,
2004.

          _Kelley E. Spears_____
          Kelley E. Spears. RPR and Notary
          Public in and for the State of Ohio.
          My Commission expires June 4. 2009.

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | CIVIL ACTION |
|     Plaintiff | : | NO. 3:02 CV1302 (DJS) |
| | : | |
| v. | : | |
| | : | |
| PAUL ARPIN VAN LINES, INC. AND | : | |
| ARPIN LOGISTICS, INC. | : | |
| FESTO CORPORATION, MICHAEL | : | |
| D. KOVAC, D/B/A TRANS-EXPO | : | |
| INTERNATIONAL, AND ERICA RAMIREZ | : | |
| IN HER CAPACITY AS EMPLOYEE | : | |
| OF TRANS-EXPO INTERNATIONAL | : | |
|     Defendants | : | OCTOBER 27, 2004 |

### *AFFIDAVIT OF MOVANT'S GOOD FAITH EFFORTS TO RESOLVE THIS DISCOVERY DISPUTE RELATIVE TO PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.FIFTH REQUEST FOR PRODUCTION OF DOCUMENTS*

I, Thomas J. Grady, upon oath being duly sworn as follows:

1.     On October 18, 2004, Arpin counsel sent a letter to Plaintiff's counsel in an

attempt to resolve a discovery dispute regarding Plaintiff's Answers and Objections to Paul

Arpin Van Lines, Inc. and Arpin Logistics, Inc. Fifth Request for Production of Documents

2.    As of October 21, 2004, the Plaintiff's counsel has not responded.

The aforesaid facts are true and correct to the best of my knowledge and belief.

IN WITNESS THEREOF, I hereunto set my hand and seal this ___ day of October, 2004.

Thomas J. Grady

STATE OF RHODE ISLAND
COUNTY OF WASHINGTON

In Westerly, Rhode Island on the 27 day of October 2004 before me personally appeared Thomas J. Grady to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, by he so executed to be his free act and deed.

Notary Public:
My Commission Expires: 04/04/06

ROBERT M. DRISCOLL
NOTARY PUBLIC
My Commission Expires April 4, 2007

# Stratton Faxon

*Connecticut's Firm for Trial Law*

New Haven Office
59 Elm Street
New Haven, CT 06510
(203) 624-9500  Phone
(203) 624-9100  Fax
(866) 351-9500  Toll-free
www.strattonfaxon.com

| | |
|---|---|
| **Date:** | January 4, 2005 |
| **To:** | Tom Grady, Esq.<br>Susan O'Donnell, Esq.<br>James Oswald, Esq.<br>Harold Friedman, Esq. |
| **From:** | Shannon Wickham, Legal Assistant to Attorney<br>Michael Stratton |
| **Fax:** | 401-596-6845<br>860-548-0006<br>401-351-4607<br>207-761-0186 |
| **Pages (including cover):** | 2 |
| **Re:** | Pouliot v. Paul Arpin, et al. |

**Message:**

# Stratton Faxon

*Connecticut's Firm for Trial Law*

59 Elm Street

New Haven, CT  06510

(203) 624-9500   Phone

(203) 624-9100   Fax

(866) 351-9500   Toll-free

www.strattonfaxon.com

Michael A. Stratton*

Joel T. Faxon

Michael R. Denison

* Certified Civil Trial Advocate
   National Board of Trial Advocacy

Legal Assistants

Carol A. Girard

Shel Swanson, RN

Sheila Geen, RN

Kristi E. Biondo

Jason K. Gamsby

Shannon Wickham

January 4, 2004

Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street
P.O. Box 541
Westerly, RI  02891

**Re: <u>Shawn Pouliot v. Paul Arpin Van Lines, Inc., et al.</u>**

Dear Tom:

The plaintiff requests an Extension of Time to file an opposition to the motion for Summary Judgment until January 10, 2005 pertaining to the above referenced matter.

If you oppose this extension of time please inform my office by 5:00 p.m., January 4, 2005, otherwise I will note your consent on the motion.

Very Truly Yours,

ATTORNEY MICHAEL A. STRATTON

Cc:  Susan O'Donnell, Esq.
      James Oswald, Esq.
      Harold Friedman, Esq.

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              3126
DESTINATION TEL #     12077610186
DESTINATION ID
ST  TIME             01/04 10:15
TIME USE             00'44
PAGES SENT              2
RESULT               OK
```

# **Stratton Faxon**

*Connecticut's Firm for Trial Law*

New Haven Office
59 Elm Street
New Haven, CT 06510
(203) 624-9500  Phone
(203) 624-9100  Fax
(866) 351-9500  Toll-free
www.strattonfaxon.com

| | |
|---|---|
| **Date:** | January 4, 2005 |
| **To:** | Tom Grady, Esq. |
| | Susan O'Donnell, Esq. |
| | James Oswald, Esq. |
| | Harold Friedman, Esq. |
| **From:** | Shannon Wickham, Legal Assistant to Attorney Michael Stratton |
| **Fax:** | 401-596-6845 |
| | 860-548-0006 |
| | 401-351-4607 |
| | 207-761-0186 |
| **Pages (including cover):** | 2 |
| **Re:** | Pouliot v. Paul Arpin, et al. |

```
                       ********************************
                       ***   MULTI TX/RX REPORT   ***
                       ********************************

TX/RX NO             3124
PGS                    2
TX/RX INCOMPLETE     -----
TRANSACTION OK       (1)   14015966845
                     (2)   18605480006
                     (3)   14013514607
ERROR INFORMATION    (4)   12077610186
```

# Stratton Faxon

*Connecticut's Firm for Trial Law*

New Haven Office
59 Elm Street
New Haven, CT 06510
(203) 624-9500  Phone
(203) 624-9100  Fax
(866) 351-9500  Toll-free
www.strattonfaxon.com

| | |
|---|---|
| **Date:** | January 4, 2005 |
| **To:** | Tom Grady, Esq. |
| | Susan O'Donnell, Esq. |
| | James Oswald, Esq. |
| | Harold Friedman, Esq. |
| **From:** | Shannon Wickham, Legal Assistant to Attorney Michael Stratton |
| **Fax:** | 401-596-6845 |
| | 860-548-0006 |
| | 401-351-4607 |
| | 207-761-0186 |
| **Pages (including cover):** | 2 |
| **Re:** | Pouliot v. Paul Arpin, et al. |