UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02 CV 1302 (JCH) |
| | : | |
| v. | : | JUDGE JANET C. HALL |
| | : | |
| PAUL ARPIN VAN LINES, INC. et al. | : | |
| | : | September 8, 2005 |
| Defendants | : | |

### *DEFENDANTS PAUL ARPIN VAN LINES, INC.'S AND ARPIN LOGISTICS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE*

Defendants Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter collectively "Arpin") hereby submit the following Memorandum of Law in Opposition to Plaintiff's Motion *in Limine*.  Plaintiff's motion and supporting memorandum fail to comply with the requirements of Fed. R. Civ. P. 7(b), Rule 7(a) of the Local Rules, and paragraph 13 of the Court's May 9, 2005 Final Pre-Trial Order in that they do not state with any particularity the grounds on which Plaintiff seeks to exclude certain evidence at trial.  Plaintiff has basically asked the Court to keep out any evidence that does not help his case, without providing any specifics or legal support for his requests.  For that reason, alone, the Court should deny Plaintiff's motion.  The additional grounds for Arpin's opposition are set forth more fully below.

## ARGUMENT

### 1.    EVIDENCE OF SETTLEMENT

####    a.    Relevant Background Facts

Plaintiff filed separate Motions to Dismiss the former Co-Defendants on June 30,

2005 and July 28, 2005.[1]  In each, he alleged that his claims against them "have been settled and releases have been signed."  In his Memorandum in support of this section of his Motion *in Limine*, Plaintiff asked the Court to preclude Arpin from introducing evidence of the fact or amount of those settlements "as this type of evidence is prohibited by state statute and is irrelevant."  Memorandum in Support of Plaintiff's Motion *in Limine* ("Plaintiff's Memorandum"), at p. 1.

The Court should deny Plaintiff's Motion.  First, the evidence is admissible under the Federal Rules of Evidence, which apply to the determination of the issue.  Additionally, even if the Court was to consider the state statute in question, C.G.S. § 52-216a, it would not automatically have to conclude that the statute trumps the well established right of a litigant to use this kind of evidence for purposes of rebuttal, impeachment, or to show the bias or self-interest of a witness.

      **b.**    **Argument**

          **i.**    Federal Law Does Not Prohibit Admission of Evidence Concerning Settlement.

In support of his argument for excluding the evidence of settlement, Plaintiff stated:

> Further there is a Connecticut state statute which prohibits bringing settlements to the attention of the jury.  C.G.S. Section 52-216a.  *See also Yuzari v. Southern Auto Sales*, 688 F. Supp. 825 (D. Conn. 1988) (applying Connecticut collateral source law and settlement rules to a negligence action in federal court).

Plaintiff's Memorandum, at p. 1.

---

[1] Plaintiff's failure to correctly denominate one of the parties he previously sued necessitated his filing the second Motion to Dismiss.

Aside from the fact that the case law cited by Plaintiff is inapposite,[2] the more fundamental problem with his argument is that Connecticut law does not govern the admissibility of the evidence; federal law does. "With the adoption of the Federal Rules of Evidence, Civil Rule 43 was amended substantially *to reflect that the admissibility of evidence [is] now governed by the Federal Rules of Evidence*."[3] Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, 19 Fed. Prac. & Proc. Juris.2d § 4508 (emphasis added). Or, as the Second Circuit has specifically held in a case involving diversity jurisdiction, "under Federal Rule 43(a), evidence, incompetent under the law of the state where the trial is had, may yet be received in a federal court." *Phelan v. Middle States Oil Corp.*, 220 F.2d 593, 605 (2d Cir. 1955), *cert. denied*, *Cohen v. Glass*, 349 U.S. 929, 99 L. Ed. 1260, 75 S. Ct. 772 (1955).

    ii.    <u>Defendants Should Not Be Prevented From Presenting Settlement Evidence for a Purpose Other than Establishing Liability.</u>

Even if the Court concludes that it must give some consideration to C.G.S. § 52-216a,[4] Plaintiff cannot seriously argue that it trumps the provisions of Fed. R. Evid. 408,

---

[2] C.G.S. § 52-216a addresses not only the admissibility of evidence concerning a release, but also the trial court's ability to order remittitur. In *Yuzari*, the Court only considered Defendant's Motion for Remittitur and not anything pertaining to a released co-defendant or other tortfeasor. *Yuzari*, 688 F. Supp. at 826-29.

[3] *Accord Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 829 (6th Cir. 2000), *citing Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) ("[i]n a diversity case, the admissibility of evidence is a procedural matter governed by federal law"). *Accord Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997), *rehearing and suggestion for rehearing en banc denied*, 136 F.3d 143 (11th Cir. 1998), *quoting Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1207 (11th Cir. 1995) *and citing Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir. 1985) ("regarding diversity jurisdiction cases, the admissibility of evidence is a procedural issue, and therefore is governed by the Federal Rules of Evidence. '[F]ederal rules apply to procedural matters, including the admissibility of evidence'") (brackets supplied by *Heath* Court).

[4] The enactment of C.G.S. § 52-216a "was intended to ensure that jury verdicts would not be influenced by the knowledge of a partial settlement." *Civiello v. Owens-Corning Fiberglass Corp. Reinforced Cement Prods. Div.*, 208 Conn. 82, 93, 544 A.2d 158 (1988). In the opinion of one commentator, offering settlement-related evidence for purposes other than establishing liability should be permitted under the statute. *See* Colin C. Tait, *Tait's Handbook of Connecticut Evidence*, § 4.25.2 (3d ed. 2001 & Supp. 2005) (offering settlement "to show bias, not to influence the jury [is] a purpose that would seem proper and not

which governs admissibility of settlements and offers to settle, and makes a specific exception allowing admission "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness …."

As an initial matter, it is significant for purposes of the Court's analysis that the evidence in question concerns Plaintiff's claims against the former Co-Defendants, rather than Arpin, because "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated…" *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (citations omitted).  Related to this is the Second Circuit's explicit statement that "evidence of a settlement agreement and its surrounding circumstances 'though otherwise barred by Rule 408, can fall outside the Rule if it is offered for 'another purpose,' i.e., for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle.'" *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 294 (2d Cir. 1999), *quoting Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 510 (2d Cir. 1989) (brackets supplied by *Starter* Court).

"In applying the 'another purpose' exception to Rule 408, 'the trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations.'" *Id*., *quoting Trebor Sportswear,* 865 F.2d at 510-11.  "The balance is especially likely to tip in favor of admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered." *Zurich Am. Ins. Co. v. Watts Indus.*, Inc., 417 F.3d 682 (7th Cir.2005), *citing Towerridge*, 111 F.3d at 770.

---

within the scope of the legislative policy behind C.G.S. § 52-216a").

Plaintiff's settlements with the former Co-Defendants arise out of a dispute distinct from the one for which the evidence will be offered.  Arpin has requested agreements and documents requesting these settlements.[5]  Arpin may use evidence of the settlements for rebuttal, impeachment, or to show the bias or self-interest of one or more witnesses.[6]  It is well established that offers or agreements to settle or compromise claims are admissible for the foregoing purposes, *see Freidus v. First Natl. Bank*, 928 F.2d 793, 795 (8th Cir. 1991) (rebuttal); *County of Hennepin v. AFG Indus., Inc.*, 726 F.2d 149, 153 (8th Cir.1984) (impeachment), and by its own terms, Fed. R. Evid. 408 explicitly allows such evidence to prove a witness's bias or prejudice.  *See also Butler v. Dagney*, 2001 WL 521821, *2 (S.D. Ind. March 5, 2001) (denying defendants' motion *in limine* to exclude evidence of a judgment that they previously allowed to be taken against them and noting that the evidence was "relevant under Rule 402 to the extent that it goes to show bias or prejudice of a witness.  Bias of a witness is certainly a relevant topic").  *See also id.*, *quoting U.S. v. Frankenthal,* 582 F.2d 1102, 1106 (7th Cir.1978) ("'[b]ecause of the importance of evidence of bias or interest, inquiry into the area is never collateral'").  These concepts are especially important here in view of the fact that the jury must apportion the fault of the settling defendants, and Plaintiff will be seeking to reduce any such apportionment.

Based upon the foregoing, Defendants respectfully request that Plaintiff's Motion

---

[5] On September 2, 2005, counsel for Arpin wrote to counsel for Plaintiff requesting "copies of all settlement agreements and all information relating to settlement terms between Shawn Pouliot, Festo Corporation, Michael Kovac, d/b/a Trans-Expo International, and Erica Ramirez," and reminding counsel for Plaintiff of his duty to supply this information pursuant to Fed. R. Civ. P. 26(e)(2).  A copy of counsel for Arpin's September 2, 2005 correspondence is attached hereto as Exhibit A.

[6] In his initial pleadings, Plaintiff alleged that Festo and Trans-Expo were negligent.  Now, seeking to rebut Arpin's apportionment claim against the two former co-defendants, Plaintiff is trying to take the opposition position.  Clearly, that he once had these claims, and now has resolved them by settlement, is relevant.

*in Limine* to preclude the introduction of evidence that Plaintiff has settled with the Co-Defendants be denied.[7]

## 2.    **COLLATERAL SOURCES**

Plaintiff seeks to exclude evidence of unspecified "collateral sources" at trial. Defendants agree that if Plaintiff has received any payments from collateral sources, as they are defined by the Connecticut statutes, evidence of such payments will be inadmissible at trial.  *See* C.G.S. 52-225b.[8]  Under Connecticut law, however, "amounts received by a claimant as a settlement" are not collateral source payments.  *Id.*[9, 10]

---

[7] Arpin also intends that this Opposition preserve its right to introduce Plaintiff's superseded pleadings against the former Co-Defendants, something that is clearly allowed under both Connecticut and federal law.  *See Schenck v. Pelkey*, 176 Conn. 245, 248 (1978); *Bower v. D'Onfro*, 38 Conn.App. 685, 706 (1995); *Kunglig v. Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929), *citing* 2 Wigmore, *Evidence* § 1067; *U.S. v. McKeon*, 738 F.2d 26, 31(2d Cir. 1984).

[8] Under Connecticut law, collateral sources are:

> Any payments made to the claimant, or on his behalf, by or pursuant to:
> (1) Any health or sickness insurance, automobile accident insurance
> that provides health benefits…or (2) any contract or agreement of any
> group, organization, partnership or corporation to provide, pay for or
> reimburse the costs of hospital, medical, dental or other health care
> services.

C.G.S. 52-225b.  The statutes further provide that "(a) [i]n any civil action . . . the court shall reduce the amount of such award which represents economic damages...by an amount equal to the total [amount of collateral source payments]."  C.G.S. 52-225a.  The procedure by which the court should perform this reduction is as follows: "Upon a finding of liability of an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment."  C.G.S. 52-225a(b).

[9] The admissibility of evidence of settlement is addressed in Section 1 of this Opposition, above.

[10] Under Conn. Gen. Stat. § 52-216a, "[i]f the court at the conclusion of trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur."  C.G.S. § 52-216a.  "In making its postverdict determination on the issue of any claimed excessiveness..., the trial court [must] consider the amount of money paid to a plaintiff as the result of" settlement with other defendants.  *Peck v. Jacquemin*, 196 Conn. 53, 71 (1985).

3.    **PAUL HERBERT'S TESTIMONY REGARDING APPLICABLE RULES AND REGULATIONS AND PLAINTIFF'S CONDUCT**

a.    **Applicable Rules and Regulations**

In his Motion *in Limine*, Plaintiff states that Paul Herbert's testimony regarding federal and state rules or regulations should be precluded because such testimony invades the province of the court.  However, Plaintiff fails to identify or reference the federal and state rules about which he wishes to preclude Mr. Herbert from testifying.  Mr. Herbert should be allowed to testify about any applicable and relevant federal or state regulations since he is an expert qualified to do so.

The Federal Rules of Evidence permit opinion testimony by a qualified expert witness if (1) the expert's testimony is based upon sufficient facts or data; (2) the expert's testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  Plaintiff's objection to Mr. Herbert's possible testimony as to rules or regulations appears solely to be that rules or regulations are within the province of the court, only.  Arpin disagrees.  Certainly, rules and regulations, to the extent otherwise relevant, are for the fact finder's consideration.

Courts in the Second Circuit have held that "a violation of a[] . . . regulation is properly admissible at trial as evidence of negligence."  *Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 596 (2d Cir. 1998) (discussing OSHA violation).  In evaluating whether such a violation has occurred, courts often look to the experts on a certain subject matter to opine on the conduct of a party with regard to the applicable regulation.  *See Executive Airlines v. Electric Boat Corp.*, 2005 WL 1656848 (D. Conn. 2005) (noting that defendant's expert "concluded that [plaintiff] violated FAA regulations such that the

plane crash occurred . . ."); *Mead v. Western Slate, Inc.*, 176 Vt. 274, 282 (2004) (stating

that "Plaintiff's expert, a former inspector for the Federal Mine Safety and Health

Administration, also opined that another fall was substantially certain to follow the first,

and that allowing the drilling to proceed violated at least two federal safety regulations.");

*Barry v. Quality Steel Products, Inc.*, 262 Conn. 424 (2003) (noting that "[t]he defendants

also introduced evidence, through expert testimony, that DeLuca had violated the federal

Occupational Safety and Health Administration (OSHA) regulations by failing to provide

additional fall protection for the plaintiffs.").

Appropriately, Plaintiff has raised no objection to Mr. Herbert's qualifications or

methods.  Mr. Herbert is a trucking industry expert; he will testify about the operation of

the subject liftgate, its components, and proper use, as well as transportation and safety

considerations regarding the subject accident.  *See* Herbert Report, dated July 30, 2004

(previously submitted with Arpin's Pretrial Compliance).  Mr. Herbert has testified as an

expert witness in numerous cases involving industrial and commercial trucking accidents,

as well as commercial vehicle equipment operation and maintenance standards.  *See*

Herbert *Curriculum Vitae*.[11]  He performed extensive testing on the subject liftgate and

truck involved in the accident.  *See* Herbert Report.  Mr. Herbert will testify regarding the

industry standards that apply to the safe transportation and loading and unloading of

cargo, as well as the underlying causes of the subject accident.  *Id*. at 4-6.  Clearly, Mr.

Herbert, a trucking industry expert, is qualified to testify regarding any applicable

regulations and any impact they may have.

### b.  Negligence or Carelessness

Plaintiff suggests that Mr. Herbert's testimony regarding whether Plaintiff was

---

[11] Attached hereto as Exhibit B.

negligent or careless should be precluded because it invades the province of the court or jury. Notwithstanding Plaintiff's argument, a qualified expert's testimony on a Plaintiff's negligence may be admissible if it is based on adequately explored legal criteria. *See Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705, 709 (2d Cir. 1989).

Mr. Herbert should be allowed to testify regarding Plaintiff's conduct and to make conclusions regarding it, including, but not limited to, Plaintiff's carelessness. Based upon his expert qualifications and investigation, Mr. Herbert is expected to testify about Plaintiff's actions immediately before and during the incident. Such testimony is admissible, as "expert[s] may opine on an issue of fact within the jury's province." *U.S. v. Ruggiero*, 928 F.2d 1289, 1305 (2d Cir. 1991). Moreover, such testimony is relevant, as it provides insight on the events of the day and sheds light on Plaintiff's comparative negligence. *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) ("relevant evidence is that 'having any tendency to make the existence of any fact…of consequence to the determination of the action' more or less probable" and "relevant evidence is generally admissible."). Therefore, testimony by Mr. Herbert regarding Plaintiff's actions and conduct on the day in question should be admitted at trial.

### 4.    DR. OJALVO'S TESTIMONY REGARDING USE OF LIFTGATES AND LOADING AND UNLOADING FREIGHT

#### a.    Expertise Regarding Procedures and Protocols for Using Liftgates and Loading and Unloading Freight

Plaintiff baldly asserts that Dr. Ojalvo does not have experience in the trucking industry or with liftgates in general, and he should be precluded from testifying on those matters. Dr. Ojalvo has testified as an expert witness in numerous cases involving biomechanics, industrial and automobile accidents, and consumer products liability. *See*

Dr. Ojalvo Curriculum Vitae.[12]  He has been an industry consultant in the areas of

industrial and roadway safety and human factors engineering.  *Id*.  He has also designed

warnings that are used for a variety of industrial equipment.  *Id*.  Dr. Ojalvo has also

published numerous articles regarding the application of engineering principles to

accident reconstruction.  *See* Dr. Ojalvo List of Publications.[13]  Dr. Ojalvo also

performed extensive testing on the subject liftgate and truck involved in the accident and

conducted an accident reconstruction based upon engineering principles.  *See* Dr. Ojalvo

Report[14].

        The Federal Rules of Evidence permit opinion testimony by an expert witness

when the witness is "qualified as an expert by knowledge, skill, experience, training, or

education," and "[i]f scientific, technical, or other specialized knowledge will assist the

trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid.

702.  Dr. Ojalvo is a licensed professional engineer; he will testify about the operation of

the liftgate, its components, and proper use, as well as the mechanics and engineering

principles involved in the subject accident.  *See* Dr. Ojalvo Report.  Likewise, Dr. Ojalvo

is certainly qualified to testify about Plaintiff's use of the liftgate, and the engineering

principles he has applied to that usage.

        Finally, Plaintiff will have an opportunity to conduct thorough cross-examinations

of Dr. Ojalvo at trial.  The objections raised by Plaintiff are matters for these cross-

examinations, not preclusion.  *Calovine v. City of Bridgeport*, No. 3:94CV00379 (WWE),

1998 WL 171443, *8 (D. Conn. January 27, 1998) (trial court properly refused to

preclude expert's testimony where opposing party cross-examined expert at length,

---

[12] Attached hereto as Exhibit C.
[13] Attached hereto as Exhibit D.
[14] Submitted with Arpin's Pretrial Compliance.

"giving the jury the opportunity to disregard [expert]'s testimony" if it chose to do so).

Because Plaintiff's objections to Dr. Ojalvo's testimony go to the weight of that

testimony rather than to its admissibility, this Court should deny Plaintiff's Motion *in*

*Limine* and permit Dr. Ojalvo to give opinion testimony regarding the safe operation of

the subject liftgate and liftgates in general at trial.  See *Tyler v. Bethlehem Steel Corp.*,

958 F.2d 1176, 1188 (2d Cir. 1992) (opposing party's objection to assumptions relied

upon by expert "go to the weight, not the admissibility, of the testimony).

### b.  Negligence or Carelessness

In his Motion *in Limine*, Plaintiff states that Dr. Ojalvo's testimony regarding

whether Plaintiff was negligent or careless should be precluded because it invades the

province of the jury.  Dr. Ojalvo should be allowed to testify regarding Plaintiff's

conduct, and make conclusions regarding it, including, but not limited to, the Plaintiff's

carelessness.  Dr. Ojalvo anticipated testimony about Plaintiff's conduct immediately

before and during the incident is based on his accident reconstruction.  Such testimony is

admissible, as "expert[s] may opine on an issue of fact within the jury's province."  *U.S.*

*v. Ruggiero*, 928 F.2d 1289, 1305 (2d Cir. 1991).  Moreover, such testimony is relevant,

as it provides insight on the events of the day and sheds light on Plaintiff's comparative

negligence.  *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) ("relevant

evidence is that 'having any tendency to make the existence of any fact…of consequence

to the determination of the action' more or less probable" and "relevant evidence is

generally admissible.").  Therefore, testimony by Dr. Ojalvo regarding Plaintiff's actions

should be admitted at trial and Plaintiff's motion should be denied.

5.     **EVIDENCE OF FESTO'S NEGLIGENCE**

    **a.  Relevant Background Facts**

    Plaintiff has requested that the Court preclude Arpin from offering "argument or expert testimony that Festo was negligent for failing to properly prepare the unit for delivery or for failing to have locking wheels on the Learnline unit."  In support of his contention Plaintiff asserts only that "Festo has no legal requirement or basis in the facts for having to have done so."  Plaintiff's Memorandum, at p. 3.  Plaintiff's argument is meritless and his motion *in limine* pertaining to negligence of Festo should be denied.

    **b.  Argument**

    Although Plaintiff asserted claims against Festo, and eventually entered into a settlement agreement with it, he now claims that Festo had no "legal requirement or basis in the facts" to properly prepare the unit for delivery or to ensure that the Learnline unit had locking wheels.  Even in Plaintiff's Fifth Amended Complaint, Plaintiff asserts a number of claims against Festo that demonstrate otherwise.  For example, Plaintiff claims that Festo was negligent and caused his injuries because it misrepresented the weight of the Learnline unit to the shipping agent.  Fifth Amended Complaint at ¶18a.  Plaintiff also claims that Festo was negligent because it failed to provide a cargo ready for shipment on wheels with an adequately safe braking system. *Id.* at ¶18b.  Plaintiff asserts that Festo failed to ascertain and accurately inform the Plaintiff of the need for special handling in unloading of this dangerous cargo. *Id.* at ¶18c.  Finally, Plaintiff states that Festo failed to prepare the subject unit for shipment in such a manner that it would be safely transported to its destination without exposing others to unreasonable danger of personal injury.

Indeed, Plaintiff is correct, legally and factually, in the assertions of his Complaint as to Festo. A shipper has an obligation to prepare cargo in a manner such that it can be safely shipped to its destination. *See Lewis v. Stran Steel,* 311 N.E.2d 128 (Ill. 1974); *Wright v. B.F. Huntley Furniture Co.*, 197 F. Supp. 117, 121 (D.C.N.C. 1961); *See also Joblonowski v. U.S.*, 230 F. Supp. 740, 742 (D.C. Pa. 1964).

Festo, as the shipper of the Learnline unit, had control over the unit. Festo's own representative testified that Festo can package and ship the Learnline unit any way it wants. Deposition of Petra Milks, taken March 29, 2004 ("Milks Dep."), at pp. 22-23 (cited excerpts from Ms. Milks's deposition are attached as Exhibit E to this Memorandum). In addition, Festo should provide all the information regarding its freight, including information regarding the wheels and any locking mechanisms, to the shipping agent. Milks Dep., at pp. 26, 29, 30.

Plaintiff's own expert, Dr. Roland Ruhl, even recognizes that Festo had a duty to provide loading/unloading instructions, and failed to provide critical information that Arpin required in order to provide proper equipment. *See* Ruhl Report, dated January 14, 2004, submitted with Plaintiff's Pretrial Compliance. Festo's failure to provide information to Arpin, including, but not limited to, the accurate weight, center of gravity, overall dimensions of the Learnline unit, acceptable lift points, acceptable lash points, and use and locking of caster wheels are all identified by Dr. Ruhl as demonstrating Festo's negligence. *See* Ruhl Report pp. 6-7. It is not surprising that Plaintiff now, after entering into a settlement agreement with Festo, wishes to direct his claim elsewhere; however, this tactical decision does not alter Festo's position and responsibility as the manufacturer, seller, and shipper of the Learnline unit in question.

Furthermore, in view of Plaintiff's settlement with Festo, apportionment of Festo's negligence is a question that will be submitted to the jury. *See* Defendant Arpin's Submission In Response to Plaintiff's Renewed or Second Motion to Dismiss Co-Defendant's Festo Corp., dated August 18, 2005. Arpin has made explicit its intention to introduce evidence in order to retain its right to have the fault of any Co-Defendant(s) apportioned by the jury. *See* Conn. Gen. Stat. § 52-572h(n) ("the total award of damages is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section").[15] Festo's negligence will be a component of Arpin's case, whether that evidence is introduced through experts or lay witnesses. In view of the apportionment requirement, it is obvious that Plaintiff wants to preclude evidence against Festo in order to maximize recovery, if any, against Arpin. That, however, does not form a basis for excluding unfavorable evidence. Plaintiff's motion should be denied.

6.    **DR. OJALVO'S TESTIMONY REGARDING THE POSITION OF PLAINTIFF WHEN THE UNIT FELL**

Plaintiff's motion to preclude Dr. Ojalvo's trial testimony regarding the position of Plaintiff when the unit fell is based on Plaintiff's assertion that there is no "hard data" as to the position of Plaintiff at rest, and Plaintiff was moved immediately after the accident. Dr. Ojalvo performed an accident reconstruction based upon extensive investigation as well as sound engineering and biomechanical principles. In the course of his investigation and the creation of his accident reconstruction model, Dr. Ojalvo reviewed, and relied upon, the deposition testimony of numerous eye witnesses, including

---

[15] As the Court knows, "[a]pportionment does not arise automatically, but must be based on evidence at trial." *Ayalon v. Breakstone*, 2003 WL 23025399, at *4 (Conn. Super. Dec 05, 2003), *citing Baxter v. Cardiology Assocs. of New Haven, P.C.*, 46 Conn. App. 377, 381-82, 699 A.2d 271, *cert denied*, 243 Conn. 933, 702 A.2d 640 (1997).

Plaintiff, himself who were able to describe Plaintiff's position immediately before and after the accident. *See* Dr. Ojalvo Report, at pp. 2-6.

In addition, Dr. Ojalvo reviewed accident scene photos, which were taken soon after the accident occurred. *Id*. Dr. Ojalvo also took a number of measurements and performed numerous tests in order to create a model of the subject accident. *Id*. at 7-16. Dr. Ojalvo took measurements of the accident site, and compared them to the deposition testimony and photographs; inspected, photographed and measured the subject work station; and inspected, measured and tested the subject truck and liftgate. *Id*. By recreating a realistic accident environment, Dr. Ojalvo was able to formulate detailed numerical force and motion results, based upon geometric and inertial properties. *Id*. Additionally, as indicated above, Dr. Ojalvo is certainly qualified to testify about the position of the Plaintiff when the unit fell. See Dr. Ojalvo Curriculum Vitae. As demonstrated by the brief synopsis of Dr. Ojalvo's accident reconstruction, it is apparent that Dr. Ojalvo's opinions are scientifically reliable, and his methodology may be properly applied to the facts in issue. Fed. R. Evid. 702; *Daubert* at 592-93.

In any event, Plaintiff will have an opportunity to conduct thorough cross-examinations of Dr. Ojalvo at trial. *See Calovine v. City of Bridgeport*. The objections raised by Plaintiff regarding Dr. Ojalvo's opinions are matters for these cross-examinations, not preclusion. *See Tyler v. Bethlehem Steel Corp.* Because Plaintiff's objections to Dr. Ojalvo's testimony go to the weight of that testimony rather than to its admissibility, this Court should deny Plaintiff's Motion *in Limine* and permit Dr. Ojalvo to give opinion testimony regarding the position of the Plaintiff when the unit fell at trial.

7. **TESTIMONY OF "UNDISCLOSED EXPERTS" REGARDING USE OF LIFTGATE AND LOADING AND UNLOADING OF FREIGHT**

At the outset, Arpin clearly states that it does not have any "undisclosed experts." Arpin does intend to call lay witnesses – persons employed or previously employed by Arpin, and persons who work on Arpin trucks. These witnesses will indeed discuss the use of liftgates, and the loading and unloading of trucks, which is, after all, what this litigation is all about.

Federal Rule of Evidence 701 provides that lay witnesses may offer

> testimony in the form of opinions or inferences . . . which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific technical, or other specialized knowledge within the scope of Rule 702.

The courts in the Second Circuit have elaborated on this Rule and have held that "as the advisory committee's notes explain, the first prong requires that a witness meet 'the familiar requirement of first-hand knowledge or observation'" and the "second prong requires that 'testimony be helpful to the jury's clear understanding of the witness' testimony." *U.S. v. Urlacher*, 979 F.2d 935, 939 (2d Cir. 1992). In this case, certain lay witnesses familiar with the truck and liftgate in question are well positioned to describe for the jury the operation and use of the liftgate and should be permitted to do so. *See Newport Electronics, Inc. v. Newport Corp.*, 157 F. Supp. 202, 208 (D. Conn. 2001) (court interpreted Rule 701 to allow certain witnesses to testify with regard to the "products [their] company sells" because "such testimony stems from [their] own experience" and is "relevant to the issue of what knowledge . . . [the] employees had, and when they had it regarding . . . [the] products.").

Likewise, such witnesses will testify as to procedures for loading and unloading, and Plaintiff's awareness of such procedures. Such testimony is "rationally based on the perception of the witness" and "not based on scientific technical, or other specialized knowledge," as it "stems from [their] own experience" working with and around liftgates. *See* Fed. R. Evid. 701(a), (c)*; Newport Electronics, Inc.*, 157 F. Supp. at 208. Finally, such testimony will be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue" as the core issue in this case involves the use of liftgates. *See* Fed. R. Evid. 701(b).

The entire case is about the use of liftgates and loading and unloading procedures and methods. As such, it is absurd not to expect that both parties will call various witnesses – both experts and lay witnesses – to testify with regard to their knowledge and understanding of these matters, both generally, and as to the job in question. Indeed, Arpin's witnesses have previously been deposed at length by Plaintiff with regard to such issues.

For the foregoing reasons, Arpin respectfully requests that this Court deny this portion of Plaintiff's Motion *In Limine* and permit Arpin's lay witnesses to testify about the use of liftgates and loading or unloading freight.

**8.    PLAINTIFF'S FAILURE TO FILE TAX RETURNS**

   **a.  Relevant Background Facts**

Plaintiff filed his 1999, 2000, and 2001 tax returns late, <u>after</u> he commenced this lawsuit. *See* Deposition of Shawn Pouliot, taken December 3, 2003 ("Pouliot Dep., Vol. 1"), at pp. 114, 123 (cited excerpts from Mr. Pouliot's December 3, 2003 deposition are attached as Exhibit F to this Memorandum); Deposition of Shawn Pouliot, taken June 29, 2004 ("Pouliot Dep., Vol. 2"), at pp. 270 (cited excerpts from Mr. Pouliot's June 29,

2004 deposition are attached as Exhibit G to this Memorandum).  Plaintiff now asks the Court to exclude evidence of his late tax filings, based only on his conclusory assertion that such evidence is irrelevant and more prejudicial than probative.[16]  The Court should deny this portion of Plaintiff's motion *in limine*.

### b.  Argument

#### i.  Plaintiff's Tax Returns are Relevant to and Probative of his Damages Claims.

Plaintiff's tax returns are central to his damages claims.  They show his purported earnings history and are therefore relevant to his claim for diminished earnings and earning capacity.  That Plaintiff chose to file his tax returns late does not render them irrelevant.

Plaintiff's economic experts based their opinions of the amount of those losses on the earnings Plaintiff reported in his 1999 and 2000 tax returns, even though those returns, as well as Plaintiff's 2001 return, were filed <u>after</u> he commenced this lawsuit.  *See, e.g.*, Deposition of Anthony M. Gamboa, Ph.D., taken October 12, 2004 ("Gamboa Dep."), at pp. 81-84 (cited excerpts from Dr. Gamboa's deposition are attached as Exhibit H to this Memorandum).[17]  Arpin's expert economist, Allan S. McCausland, Ph.D., challenges the legitimacy of the 1999 and 2000 tax returns as a basis for calculating Plaintiff's lost earnings in that those returns do not appear to deduct the expenses Plaintiff would have incurred as a truck driver.  Deposition of Allan S. McCausland, Ph.D., taken

---

[16] Without providing specifics, Plaintiff seeks exclusion of evidence of his failure "to meet IRS requirements" and, in his Memorandum, he asserts that Arpin has "made claims that the plaintiff violated IRS rules."  Arpin has not made such claims, nor has it pursued any type of IRS enforcement action against Plaintiff.

[17] Arpin filed a motion *in limine* to preclude the testimony of certain of Plaintiff's experts, including Dr. Gamboa, at trial.

June 15, 2005 ("McCausland Dep."), at pp. 48-49 (cited excerpts from Dr. McCausland's deposition are attached as Exhibit I to this Memorandum). Arpin should be permitted to explore at trial whether Plaintiff submitted inflated, inaccurate, and improperly accounted-for numbers in his late tax returns, filed after this litigation was started, in order to bolster his damages claim.

> ii.    Evidence that Plaintiff Filed his Tax Returns Late is Relevant and Probative on the Issue of Plaintiff's Credibility.

Plaintiff's failure to file these returns on time is evidence upon which the jury may assess his credibility, which, like the credibility of any witness, is clearly at issue. Moreover, Plaintiff offers no argument supporting his contention that evidence of his late tax filings is unduly prejudicial or will cause the jury to reach a decision on an improper basis. That the evidence may be adverse does not render it inadmissible under the balancing test required by Fed. R. Evid. 403.

In this matter, Plaintiff's failure to file his tax returns until after the commencement of litigation bears directly on his credibility and on the credibility of his damages claims. The jury's assessment of Plaintiff's damages claims should include its analysis of the evidence on the content and untimeliness of Plaintiff's tax return filings. "Evidence that a witness has failed, for years, to file a tax return is a matter which affects the witness's credibility." *Chamblee v. Harris, Inc.* 154 F. Supp.2d 670, 681 (2d Cir. 1993) citing *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993) (total failure to file tax returns for eight years admissible on issue of medical malpractice plaintiff's truthfulness); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 208 (E.D. N.Y. 1996) (noting that failure to pay income taxes bears "directly on a plaintiff's propensity for truthfulness" and can be admitted for impeachment purposes). Plaintiff is free at trial to

offer his explanation for his untimely filings, and the jury may determine the value of the evidence. It is, however, admissible in the first instance, and Plaintiff's motion on this issue should be denied.

**9.     EVIDENCE OF PLAINTIFF'S PRIOR SOCIAL SECURITY DISABILITY FILING; HIS USE OF VIAGRA PRIOR TO THE INCIDENT; HIS PERSONNEL RECORDS AT OTHER COMPANIES; AND HIS INVOLVEMENT IN A FRAUD OR CRIME**

Pursuant to Federal Rule of Evidence 402, "[a]ll relevant evidence is admissible" unless deemed inadmissible by the United States Constitution, an Act of Congress, the Federal Rules of Civil Procedure or by the Supreme Court pursuant to its statutory authority. *See* Fed. R. Civ. P. 402; *see also Davis v. Rodriguez*, 364 F.3d 424, 436 (2d Cir. 2004). Relevant evidence is defined as "that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.'" *U.S. v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004), *quoting* Fed. R. Civ. P. 401. Exceptions to the rule admitting all relevant evidence "are not to be read broadly because, otherwise, evidence that is relevant…would be inadmissible." *Griffith,* 385 F.3d at 126, *citing U.S. v. Nixon*, 418 U.S. 683, 710, 94 S. Ct. 3090, 41 L.Ed.2d 1039 (1974)("Whatever their origins…exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth.").

Here, Plaintiff attempts to cut a wide swath of inadmissible evidence in a single motion *in limine* based upon a theory that it is, or must be, irrelevant or unfairly prejudicial and collateral. Plaintiff has not, however, identified much of the evidence with any specificity, nor has he provided the Court or Arpin with any explanation for his claim that the evidence is either irrelevant or unduly prejudicial. In this regard, it is

important to note that all probative evidence is prejudicial; only unduly prejudicial

evidence is excludable.  "The question is one of 'unfair' prejudice – not of prejudice

alone."  *Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987).  If all prejudicial

evidence harmful to a party's claim were excluded, "there would be precious little left in

the way of probative evidence in any case."  *Id*.

      Prior to the accident, Plaintiff filed a claim for Social Security disability benefits.

*See* Plaintiff's Answers to Interrogatories, dated September 19, 2003 (referenced excerpts

from these Answers to Interrogatories are attached as Exhibit J to this Memorandum).

That fact is relevant to his present claim of permanent disability.  If, on the other hand, he

was found to have filed a false or frivolous claim, that too may have relevance to the

issues before this Court.  Again, Plaintiff did not demonstrate any undue prejudice and, as

such, the relevance of this evidence outweighs its prejudicial nature, if any, and it should

not be deemed inadmissible.

      Plaintiff also requests that evidence of his use of Viagra prior to the accident be

excluded.[18]  While it is concededly a subject matter that requires a certain degree of

delicacy, Plaintiff alleges that the incident in question has rendered him impotent.  Prior

use of the erectile dysfunction syndrome drug Viagra is therefore directly relevant to the

claims made by Plaintiff.  Plaintiff has made no showing that his prior use of Viagra is

unduly prejudicial and, as such, there is no basis for rendering this evidence inadmissible.

      Plaintiff's request to exclude his personnel records from other companies should

also go unheeded.  Arpin's affirmative defenses include a claim that Plaintiff was

---

[18] At his deposition, Plaintiff's treating urologist, Dr. Joseph Dankoff, testified that Plaintiff had used
Viagra prior to the accident at issue in this case.  Deposition of Joseph S. Dankoff, M.D., taken April 7,
2004 ("Dankoff Dep."), at pp. 9, 13 (cited excerpts from Dr. Dankoff's deposition are attached as Exhibit K
to this Memorandum).

comparatively negligent.  To the extent that Plaintiff's personnel records demonstrate that he has engaged in careless conduct or been involved in accidents, that evidence may well be relevant.  There may well be other relevant evidence contained in Plaintiff's personnel files from prior employers.  Plaintiff's motion is conspicuous in the absence of any detail regarding the purportedly prejudicial information contained in his personnel files.   As the exceptions to the general rule that all relevant evidence is admissible are narrowly construed, Plaintiff's vague statement that his personnel records are overly prejudicial cannot be evaluated on this record.  Again he has made no showing of prejudice and, as such, his motion with regard to personnel records must be denied.

Finally, Plaintiff asks that this Court grant a blanket prohibition against reference to Plaintiff being involved in a fraud or crime.[19]  As with the request for the prohibition against his personnel records, Plaintiff offers no explanation as to what he seeks excluded.  Similarly, he makes no showing that such evidence is unduly prejudicial or, to the extent it is prejudicial, that the prejudice outweighs the probative value.  Without evidence as to what fraud or crimes Plaintiff seeks to exclude from evidence, the Court has no ability to determine whether it is prejudicial or weigh its prejudicial nature against its probative value.  As such, Plaintiff has not met his burden and this portion of his motion must be denied.

In sum, Plaintiff has failed to demonstrate that the evidence he seeks to exclude is prejudicial or, if it is prejudicial, that its prejudicial nature outweighs its probative value.  Therefore, this "kitchen sink" motion must be denied.

---

[19] With regard to previously alleged fraud arising out of this incident, Arpin has no intention of making any such claim or reference and has filed a motion *in limine* seeking the exclusion of any reference to the previously asserted affirmative defense of fraud.

**10. and 11.     TESTIMONY OF ARPIN'S EXPERTS ALLAN S. McCAUSLAND, Ph.D. AND WILLIAM H. BURKE, Ph.D.**

The Federal Rules of Evidence permit a qualified expert witness to offer opinion testimony if (1) the expert's testimony is based upon sufficient facts or data; (2) the expert's testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702.  Pursuant to Rule 702, Arpin will call Allan S. McCausland, Ph.D. and William H. Burke, Ph.D. as expert witnesses at trial.  Dr. McCausland is an economist; he will testify about the components and valuation of Plaintiff's economic loss.  Dr. Burke is a certified rehabilitation counselor; he will testify about Plaintiff's abilities, care needs, and life care plan.

In his Motion *in Limine*, Plaintiff raised no objection to Dr. McCausland's or Dr. Burke's qualifications, or to the principles or methods they applied in formulating their opinions in this case.  Rather, Plaintiff's objections, although not clearly stated, appear to be to the substance of Dr. McCausland's and Dr. Burke's opinions.[20]  As grounds for his objections, Plaintiff suggests, without explanation, that both experts' opinions are "unhelpful and baseless."  Plaintiff's Memorandum, at p. 6.

---

[20] Plaintiff mischaracterizes both experts' testimony.  Notwithstanding those mischaracterizations, it appears that Plaintiff objects to Dr. McCausland's opinions on the deductibility of taxes and residual work capacity from Plaintiff's future earnings and on the applicability of unemployment data, data on the earnings of truck drivers in Ohio, and a discount rate to Plaintiff's loss of earnings claims.  *See* Plaintiff's Memorandum, at pp. 5-6.  Plaintiff provides no analysis for these objections.  Again without analysis, Plaintiff seems to object to Dr. Burke's opinions on the State and community resources available to Plaintiff and to Dr. Burke's "opinion" that Plaintiff has some work capacity.  *See* Plaintiff's Memorandum, at p. 6.  *But see* Deposition of William Burke, Ph.D., taken June 14, 2005 ("Burke Dep."), at p. 93 (noting that Plaintiff's own treating physiatrist Dr. Cremer considered Plaintiff capable of returning to the labor market in a sedentary capacity) (cited excerpts from Dr. Burke's deposition are attached as Exhibit L to this Opposition).

Contrary to Plaintiff's assertion, Dr. McCausland's and Dr. Burke's opinions are far from baseless.[21]  At his deposition, Dr. McCausland testified that he based his opinions on Plaintiff's earning capacity on Plaintiff's age, education, employment history, and a comparison of his pre-incident earning capacity versus his post-incident earning capacity, as well as on Dr. Burke's life care report and a report prepared by Plaintiff's own expert, Lawrence Forman.[22]  *See* McCausland Dep., at p. 83.  Dr. Burke testified at deposition that he based his opinions regarding Plaintiff's needs on "what's been prescribed, what his medical doctors have recommended, what the clinical standards have said and what we can anticipate with spinal cord patients."  Burke Dep., at p. 94.  In addition, in formulating his opinions in this matter, Dr. Burke "relied upon the whole body of literature regarding spinal cord injury and the care and treatment of spinal cord injured patients that [he has] amassed over 30 years."  Burke Dep., at p. 5.

Plaintiff will have an opportunity to conduct thorough cross-examinations of Dr. McCausland and Dr. Burke at trial.  The objections raised by Plaintiff are matters for these cross-examinations, not preclusion.  *Calovine v. City of Bridgeport*, No. 3:94CV00379 (WWE), 1998 WL 171443, *8 (D. Conn. January 27, 1998) (trial court properly refused to preclude expert's testimony where opposing party cross-examined expert at length, "giving the jury the opportunity to disregard [expert]'s testimony" if it

---

[21] In addition, Dr. McCausland's and Dr. Burke's testimony is not "unhelpful."  Rather, it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Dr. Burke and Dr. McCausland will testify that it is their opinion that Plaintiff's economic damages, including his care needs and lost earning capacity, are in the $1.8 million to $2.3 million range, not in the $7 million to $8.3 million range that Plaintiff's experts claim.  Their testimony will provide the jury with critical evidence about the extent and value of Plaintiff's damages.  Surely, Dr. McCausland's and Dr. Burke's testimony does not <u>support</u> Plaintiff's claims.  That, however, does not form the basis for exclusion.

[22] On August 1, 2005, Arpin filed with the Court a motion *in limine* to preclude the testimony of certain of Plaintiff's experts, including Mr. Forman.

chose to do so).  Quibbles about the substance of an expert's opinions go to the weight of the expert's testimony, not to its admissibility.  *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992) (opposing party's objection to assumptions relied upon by expert "go to the weight, not the admissibility, of the testimony"); *Calovine*, 1998 WL 171443 at *8, *citing McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (addressing a challenge to an expert's qualifications).

Because Plaintiff's objections to Dr. McCausland's and Dr. Burke's testimony go to the weight of that testimony rather than to its admissibility, this Court should deny Plaintiff's Motion *in Limine* and permit Dr. McCausland and Dr. Burke to give opinion testimony at trial.

12.    **EVIDENCE OF PLAINTIFF'S CONTRIBUTORY NEGLIGENCE AND STATUS AS AN INDEPENDENT CONTRACTOR**

a.   **Relevant Background Facts**

In his Memorandum in support of this section of his Motion *in Limine*, Plaintiff asks the Court to preclude "any arguments or evidence regarding the doctrines . . . [of] contributory negligence [and] independent contractor . . .."[23]  As indicated below, to the extent that Plaintiff is seeking to preclude Arpin from raising the issue of his comparative fault for the accident, his argument is unsupported by Connecticut law.  Additionally, the Court has already found that Plaintiff was an independent contractor, which is thus the law of the case.

b.   **Argument**

---

[23] Plaintiff also seeks to preclude arguments or evidence regarding "contribution," "contractual indemnity," and "release."  The contribution claims were extinguished by Plaintiff's settlements with the Co-Defendants.  *See* Final Pretrial Memorandum dated August 1, 2005.  Release is not asserted as a defense. *Id.*  Arpin has made explicit its intention to introduce evidence against the settled Co-Defendants in order to retain the right to have the fault of those Co-Defendants apportioned by the jury.  *Id.*

     i.     <u>To the Extent That Plaintiff is Seeking to Preclude Arpin From Raising his Comparative Fault, His Argument is Unsupported by Connecticut Law.</u>

In his Memorandum in support of this section of his Motion *in Limine*, Plaintiff requested exclusion of arguments or evidence concerning contributory negligence because it "has been abolished and replaced with comparative negligence pursuant to C.G.S. Section 52-572h." Plaintiff's Memorandum, at p. 7.

Actually, Conn. Gen. Stat. Ann. § 52-572h(b) states in relevant part that "[i]n causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or the person's legal representative to recover damages resulting from personal injury, wrongful death or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section." Moreover, Connecticut's courts still regularly use the term "contributory negligence," in the context of discussing what is, in reality, comparative fault. *See Clennon v. Hometown Buffet, Inc.*, 84 Conn. App. 182, 188-89, 852 A.2d 836, 840 (2004) (citations omitted); *Rogers v. Northeast Utils.*, 45 Conn. App. 23, 25, 692 A.2d 1301, 1302-03 (1997), *cert. denied*, 241 Conn. 924, 696 A.2d 1266 (1997) (citation omitted); *Bradford v. Herzig*, 33 Conn. App. 714, 638 A.2d 608 (1994), *cert. denied*, 229 Conn. 920, 642 A.2d 1212 (1994).

Accordingly, Arpin opposes Plaintiff's Motion to the extent that Plaintiff seeks to preclude Arpin from raising principles of comparative fault, however denominated.

     ii.     <u>The Court has Already Concluded that Plaintiff was an Independent Contractor at the Time of the Accident.</u>

In his Memorandum in support of this section of his Motion *in Limine*, Plaintiff

claims that "[t]he defense[] of independent contractor . . . [has] been stricken by this Court in its memorandum of decision on the motion for summary judgment." Plaintiff's Memorandum, at p. 7. This is incorrect. As Arpin noted in their Motion *in Limine* to preclude at trial any evidence of or reference to Plaintiff being its employee, the Court has already found that Plaintiff was an independent contractor. *See* Rulings on Motions for Summary Judgment, dated May 2, 2005, at p. 9.[24] As such, Plaintiff's status as an independent contractor is the law of the case and the issue need not, and should not, be re-litigated at trial. *See Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) ("[u]nder the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances"); *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964), *cert. denied*, 377 U.S. 934, 12 L. Ed.2d 298, 84 S. Ct. 1338 (1964) ("where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").[25]

Because Plaintiff's status as an independent contractor is the law of the case, the Court must deny his Motion *in Limine* and instead grant Arpin's request that it issue an Order precluding at trial any evidence of or reference to Plaintiff being an employee of Arpin.

---

[24] As indicated in its previously filed Motion *in Limine* concerning Plaintiff's employment status, for purposes of that pleading as well as the instant Opposition, while conceding that the Court has found that Plaintiff was an independent contractor, Arpin expressly reserves all appellate rights relative to the Court's May 2, 2005 Rulings on Motions for Summary Judgment, as well as to the Court's November 26, 2003 decision on Defendants' Motion to Dismiss.

[25] As indicated in its previously filed Motion in Limine concerning Plaintiff's employment status, for purposes of that pleading as well as the instant Opposition only, Arpin concedes that no "unusual circumstances" or "good reasons" for departing from the law of the case rule have been suggested in this case. As noted above, Arpin expressly reserves all appellate rights relative to the Court's May 2, 2005 Rulings on Motions for Summary Judgment, as well as to the Court's November 26, 2003 decision on Defendants' Motion to Dismiss.

## CONCLUSION

For all of the foregoing reasons, Arpin respectfully requests that the Court deny each part of Plaintiff's Motion *in Limine*.

Dated September 8, 2005.

Respectfully submitted,

_____

DANIEL J. KRISCH
**Horton, Shields & Knox, P.C.**
90 Gillett Street
Hartford, CT 06105
(860) 522-8338
*fax* (860) 728-0401
Fed. Bar ID#CT 21994
dkrisch@hsklawfirm.com

Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207) 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 8th day of September, 2005 to the following:

Michael A. Stratton, Esq.
Stratton Faxon
59 Elm Street
New Haven, CT  06510

Roland F. Moots, Jr., Esq.
Moots, Pellegrini, Spillane & Mannion
46 Main Street, PO BOX 1319
New Milford, CT 06776-1319

Thomas J. Grady, Esq.
Lenihan Grady & Steele
6 Canal Street
PO Box 541
Westerly, RI 02891-0541

Karen Frink Wolf, Esq.
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726

_____
Daniel J. Krisch