UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02 CV 1302 (JCH) |
| | : | |
| v. | : | JUDGE JANET C. HALL |
| | : | |
| PAUL ARPIN VAN LINES, INC. et al. | : | |
| | : | September 8, 2005 |
| Defendants | : | |

### *DEFENDANTS PAUL ARPIN VAN LINES, INC.'S AND ARPIN LOGISTICS, INC.'S SUBMISSION OF INFORMATION REGARDING THEIR EXPERT WITNESSES*

Pursuant to paragraph 8 of the Court's May 9, 2005 Final Pre-Trial Order, Defendants Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. (hereinafter collectively "Arpin") submit the following information regarding their expert witnesses.

1. William H. Burke, Ph.D. (William H. Burke Associates, Inc., Portsmouth, NH)

Dr. Burke is a certified rehabilitation counselor. His biographical sketch is set forth in his *curriculum vitae*, attached as Exhibit A to this Submission. Dr. Burke's expert Report and Life Care Plan were submitted to the Court with Arpin's Pretrial Compliance. Dr. Burke will testify about Plaintiff's abilities, care and treatment needs, and life care plan, as fully set forth in his Report and Life Care Plan, and he may rebut the testimony of any expert witness called by Plaintiff on those issues. He will testify that Plaintiff is independent with self-care and basic activities of daily living but that, secondary to his wheelchair dependence, will require some amount of assistance with homemaking activities and household chores. Dr. Burke will also testify about Plaintiff's future care and treatment needs, including routine medical follow up, potential surgical

intervention, medications, medical supplies, medical and mobility equipment, transportation, and ongoing therapeutic intervention and support services.

In formulating his opinions in this matter, Dr. Burke reviewed Plaintiff's medical records and the depositions of Plaintiff, a number of his treating physicians, and Plaintiff's expert Lawrence Forman.  *See* complete list of sources set out in Dr. Burke's Report.  Dr. Burke testified at deposition that he based his opinions regarding Plaintiff's needs on "what's been prescribed, what his medical doctors have recommended, what the clinical standards have said and what we can anticipate with spinal cord patients."  Deposition of William H. Burke, taken June 14, 2005 ("Burke Dep."), at p. 94 (cited excerpts from Dr. Burke's deposition are attached as Exhibit B to this Submission).  In addition, Dr. Burke "relied upon the whole body of literature regarding spinal cord injury and the care and treatment of spinal cord injured patients that [he has] amassed over 30 years."  Burke Dep., at p. 5.

2. <u>Allan S. McCausland, Ph.D. (McCausland Economic Associates, LLC, Contoocook, NH)</u>

Dr. McCausland is an economist.  His biographical sketch is set forth in his *curriculum vitae*, attached as Exhibit C.  Dr. McCausland's expert Report was submitted with Arpin's Pretrial Compliance.  Dr. McCausland will testify about the components and valuation of Plaintiff's economic loss and he may rebut the testimony of any expert witness called by Plaintiff on those issues.  He will testify about the present values of Plaintiff's net lost after-tax earning capacity and net lost fringe benefits, as fully set forth in his Report.  He will also testify about the present value of the life care plan prepared by Dr. Burke, also as set forth in his Report.

In formulating his opinions in this matter, Dr. McCausland relied upon his entire

education, experience, and background, as well as Dr. Burke's life care report; information from Plaintiff's experts Gary M. Crakes, Ph.D., Lawrence S. Forman, Anthony M. Gamboa, Ph.D., and Robert L. Thompson, M.D.; the depositions of several witnesses; Plaintiff's tax returns and other IRS information; and various U.S. Government statistical data. *See* complete list of sources set out in Dr. McCausland's Report. At his deposition, Dr. McCausland testified that he based his opinions on Plaintiff's earning capacity on Plaintiff's age, education, employment history, and a comparison of his pre-incident earning capacity versus his post-incident earning capacity, as well as on Dr. Burke's life care report and a report prepared by Plaintiff's expert, Mr. Forman.[1] *See* Deposition of Allan S. McCausland, Ph.D., taken June 15, 2005 ("McCausland Dep."), at p. 83 (cited excerpts from Dr. McCausland's deposition are attached as Exhibit D to this Submission).

3. V. Paul Herbert (Western Motor Carrier Safety Institute, Inc., Quincy, CA)

Mr. Herbert is a trucking industry and safety expert. His biographical sketch is set forth in his *curriculum vitae*, attached as Exhibit E. He will testify about the operation of the subject liftgate, its components, and its proper use, as well as transportation and safety considerations regarding the subject accident. His complete expert Report, dated July 30, 2004, was submitted with Arpin's Pretrial Compliance, and sets forth each opinion to which he will testify. Mr. Herbert performed extensive testing on the subject liftgate and truck involved in the accident. *See* Herbert Report. Based upon his investigation, and information he obtained from a variety of sources, Mr. Herbert will testify regarding the industry standards that apply to the safe transportation

---

[1] On August 1, 2005, Arpin filed with the Court a motion *in limine* to preclude the testimony of certain of Plaintiff's experts, including Dr. Gamboa and Mr. Forman.

3

and loading and unloading of cargo, as well as the underlying causes of the subject accident, including Plaintiff's negligence. *Id.* at 4-6.

In accordance with the results of his investigation, Mr. Herbert is expected to testify that Festo failed to properly prepare the subject shipment to be transported by motor carrier. Mr. Herbert will opine that Festo and/or Trans-Expo misstated the weight of the workstation. In addition, somewhere during the course of arranging for the subject shipment vital information was omitted, including but not limited to, the true nature of the subject shipment. Both the accurate weight and description of the cargo is information necessary for the safe loading and unloading of the subject unit.

Mr. Herbert will also testify that Plaintiff acted carelessly when unloading the unstable and heavy workstation. Plaintiff was familiar with and had used fold-away liftgates before. Despite his knowledge, Plaintiff did not attempt to secure the workstation, lock the wheels, seek assistance, or address alternative methods for unloading. Plaintiff should have ceased his attempts at lowering the unit once noticing its instability, and he was additionally careless by placing himself in a precarious position on the lift with the workstation.

Mr. Herbert reviewed and relied upon the deposition testimony of numerous eye witnesses, including Plaintiff, who were able to describe the position of Plaintiff immediately before and after the accident. *See* Herbert Report. In addition, Mr. Herbert reviewed accident scene photos, which were taken soon after the accident occurred. *Id*. Mr. Herbert also took a number of measurements and performed numerous tests in order assist in the reconstruction of the subject accident. *Id.* Mr. Herbert also inspected, photographed and measured the subject work station; and inspected, measured and tested

the subject truck and liftgate. *Id*. A complete list of materials relied upon by Mr. Herbert is referenced in his report. *Id*. at 2-3.

   4. Irving Ojalvo (Connecticut Technology Associates, Stamford, CT)

Dr. Ojalvo is a licensed professional engineer. His biographical sketch is set forth in his *curriculum vitae*, attached as Exhibit F. Dr. Ojalvo will testify about the operation of the liftgate, its components, and proper use, as well as the mechanics involved in the subject accident based upon his accident reconstruction of the event. His complete expert Report was submitted with Arpin's Pretrial Compliance. Dr. Ojalvo performed extensive testing on the subject liftgate and truck involved in the accident and conducted an accident reconstruction based upon engineering and biomechanical principles and information he obtained from a variety of sources. *See* Ojalvo Report.

In accordance with the results of his investigation and accident reconstruction, Dr. Ojalvo is expected to testify that if wheels of the workstation had been locked, it would have been very stable for lift-gate angles. Dr. Ojalvo will opine that Festo and/or Trans-Expo misstated the weight of the workstation, and that accurate information was necessary for the safe loading and unloading of the subject unit.

Dr. Ojalvo is expected to testify that the Plaintiff's actions were careless in that he failed to follow safe procedures while lowering the Festo workstation. Plaintiff was familiar with and had used fold-away liftgates before. Despite his knowledge, Plaintiff did not attempt to secure the workstation in any way or lock the wheels prior to unloading it. In addition, Plaintiff failed to ask for assistance once realizing the nature and the weight of the cargo he was unloading.

Dr. Ojalvo will also testify that Arpin provided Plaintiff with proper equipment for raising, transporting and lowering the specified cargo. In addition, the truck and lift gate provided by Arpin were in proper working order, and the condition and maintenance of that equipment did not contribute to the accident.

Dr. Ojalvo also criticizes the methodology and conclusions of Plaintiff's expert, Dr. Ruhl. He states that Dr. Ruhl's attempt to categorize the incident liftgate as defective is inappropriate, and any alleged "imperfections" were not the cause of the accident. Dr. Ruhl also failed to assign any responsibility for the accident to Plaintiff, an experienced truck driver, who placed a large, heavy, wheeled load on a tilting lift gate without securing it.

Dr. Ojalvo reviewed, and relied upon, the deposition testimony of numerous eye witnesses, including Plaintiff, who were able to describe the position of Plaintiff immediately before and after the accident. *See* Ojalvo Report, at pp. 2-6. In addition, Dr. Ojalvo reviewed accident scene photos, which were taken soon after the accident occurred. *Id*. Dr. Ojalvo also took a number of measurements and performed numerous tests in order to create a reconstruction of the subject accident. *Id*. at 7-16. Dr. Ojalvo took measurements of the accident site, and compared them to the deposition testimony and photographs; inspected, photographed and measured the subject work station; and inspected, measured and tested the subject truck and liftgate. *Id*. By recreating a realistic accident environment, Dr. Ojalvo was able to formulate detailed numerical force and motion results, based upon geometric and inertial properties. *Id*. A list of materials relied upon by Dr. Ojalvo in the course of his investigation in referenced in his report. *Id*. at 4-5.

6

Dated September 8, 2005.

        Respectfully submitted,

/s/ Karen Frink Wolf
Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF &
LEAVITT
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207) 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

       This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 8th day of September, 2005 to the following:

Michael A. Stratton, Esq.  
Stratton Faxon  
59 Elm Street  
New Haven, CT 06510

Roland F. Moots, Jr., Esq.  
Moots, Pellegrini, Spillane & Mannion  
46 Main Street, PO BOX 1319  
New Milford, CT 06776-1319

Thomas J. Grady, Esq.  
Lenihan Grady & Steele  
6 Canal Street  
PO Box 541  
Westerly, RI 02891-0541

Daniel J. Krisch, Esq.  
Horton, Shields & Knox, P.C.  
90 Gillett Street  
Hartford, CT 06105

    /s/ Karen Frink Wolf  
    Karen Frink Wolf, Esq. # 26494