UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT, <br>     Plaintiff | ) <br> ) <br> ) | CIVIL ACTION NO. <br> 3:02 CV 1302 (JCH) |
| v. | ) <br> ) <br> ) | |
| PAUL ARPIN VAN LINES, INC. et al. <br>     Defendants | ) <br> ) <br> ) | DECEMBER 21, 2005 |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO MOTION IN LIMINE RE: SPOLIATION**

As set forth in the attached deposition of plaintiff's expert, Roland L. Ruhl, Ph.D., the defendant altered and modified the subject liftgate after the 10/23/01 accident and after their own expert inspected it.

THE PLAINTIFF,

By: _____
Michael A. Stratton
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Federal Bar No: ct08166
Telephone: 203-624-9500
Fax: 203-624-9100
mstratton@strattonfaxon.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. Mail, postage prepaid, on this day to:

Karen Frink Wolf, Esq.
Harold J. Friedman, Esq.
Friedman, Gaythwaite, Wolf & Leavitt
Six City Center
P.O. Box 4726
Portland, ME 04112-4726

Thomas J. Grady, Esq.
Lenihan, Grady & Steele
Six Canal Street
P.O. Box 541
Westerly, RI 02891

Roland F. Moots, Esq.
Moots, Pellegrini, Mannion, Martindale & Dratch, PC
46 Main Street
P.O. Box 1319
New Milford, CT 06776-1319

_____
Michael A. Stratton, Esq.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 3:02 CV 1302 (DJS) |
| ) | |
| PAUL ARPIN VAN LINES, INC. and ) | |
| ARPIN LOGISTICS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| AND RELATED ACTIONS. ) | |

DEPOSITION OF ROLAND L. RUHL, PH.D., P.E.

Phoenix, Arizona
April 13, 2004



Prepared for:

MICHAEL A. STRATTON, ESQ.

(Copy)

Reported by:

PAUL GROSSMAN
Arizona Certified
Court Reporter #50028
CA CSR #1487

Cropper & Associates, Inc. - (602) 277-8882

1  tire is in the direction that it would move.
2  We then need to have to make some assumptions
3  about the vibration of the platform and you certainly
4  need to know something about if he is moving or the
5  platform is bouncing or wiggling, and all of these
6  things will make it easier to start to move because
7  there's two problems. One is the calculations are
8  easier to move -- are easy to make for steady state
9  motion, but the problem is the start of the avalanche
10 and, in other words, getting it moving. It is
11 conditionally stable, but once it starts to move it can
12 keep going. Getting it to move generally takes a higher
13 force than keeping it moving, and also you have the
14 vagaries of the check-plate deck and the irregularities
15 of the platform's geometry to start with. All of these
16 things come into play.
17 The only thing you can say with certainty
18 from an engineering or scientific standpoint is that
19 having the brakes on couldn't hurt, but one would have
20 much more difficulty suggesting what improvement one
21 might have and, furthermore, what improvement one might
22 have in the subject ad hoc case, that is much more
23 difficult.
24 And I also would point out it was one of the
25 reasons I was critical of the greasing of the unit after

the accident and before my test because that is precisely one of the conditions which will assist in dislodging an object which is conditionally stable and that's the sticking of the linkage itself.

Q. How long after the accident was the test done?

A. The test was considerably after the accident, but based on the condition of the grease, as I discussed in my report, the greasing was much more recent.

Q. You're not able to say what the condition of those joints were at the time of the accident, are you?

A. Yeah. I look at the photographs and they are dry. They don't have brand new grease on them.

Q. At the time of the accident you took photographs?

A. Well, I can see the difference between my photographs at the time of my inspection and the time of the accident. I do not see any active grease. I certainly don't see blue grease coming out, so I know it's been greased since the accident. In fact, greased very closely to the time of my actual test.

Q. But, I mean, it was a substantial period of time where the unit was not used from the time of the accident to the time you saw it, right, over a year?

A. It could be. I don't know. I did not have

1 control of the unit. I don't think it was on the road.

2 Q. Well, I mean, you don't know but what at the
3 time of the accident the unit had been greased a day
4 before? You don't know that?

5 A. There's no indication in the photographs. I
6 don't -- in the actual unit I don't see in the police
7 photographs any indication of grease coming out of the
8 joints that I would expect to see if it's been recently
9 greased and it's not there, so it does not look to be
10 freshly greased and one can look at my photographs and
11 look at the police ones and see that there's no real
12 grease coming out.

13 Q. Now, I've had your preliminary report marked
14 for identification as Exhibit L. In the course of
15 making your report did you review a document that was
16 entitled a Trans-Expo International Shipment Booking
17 Order?

18 A. Yes. There's several versions of this
19 floating around and, yes -- and I think I had seen it at
20 the time the report was written. I'm not sure that I
21 had actually seen the depositions of Ramirez and Kovac
22 at the time.

23 Q. The Shipment Booking Order here has been
24 marked as Exhibit K.

25 A. It may have been marked in Pouliot's dep,