UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT | : | |
| | : | CIVIL ACTION NO. |
| Plaintiff | : | 3:02 CV 1302 (JCH) |
| | : | |
| v. | : | JUDGE JANET C. HALL |
| | : | |
| PAUL ARPIN VAN LINES, INC. et al. | : | |
| | : | December 30, 2005 |
| Defendants | : | |

## DEFENDANTS PAUL ARPIN VAN LINES, INC. AND ARPIN LOGISTICS, INC.'s FURTHER SUBMISSIONS REGARDING CO-DEFENDANT'S FESTO CORPORATION'S DUTY

To address concerns raised at the Pretrial Conference on December 22, Defendants Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. ("Arpin") submit this brief to further supplement their opposition to the portion of Plaintiff's Motion *in Limine* seeking to preclude evidence of Festo Corporation's ("Festo's") negligence.

In addition to its duty to package the Learnline unit in a manner in which it could be safely shipped, *Lewis v. Stran Steel Corp.*, 311 N.E.2d 128, 132 (Ill. 1974); *Craine v. Oliver Chilled Plow Works*, 280 F. 954, 956-57 (9th Cir. 1922); 1 DAVID N. NISSENBERG, THE LAW OF COMMERCIAL TRUCKING: DAMAGES TO PERSONS AND PROPERTY § 12-4 at 520 (2nd ed. 1998)[1], Festo owed Arpin a duty to warn Arpin of any reasonably foreseeable danger posed by transporting the unit. *E.J. Lakatosh v. Diamond Alkali Co.*, 208 N.W.2d 910, 914 (Iowa 1973) (noting that a shipper was obligated to warn a carrier "of any reasonably foreseeable danger from the property to be transported); *see also Seaboard Coast Line R.R. Co. v. Freight Delivery Serv., Inc.*, 210 S.E.2d 42, 45 (Ga. App. 1974) (noting that the negligence of a shipper in warning or

---

[1] Festo's duty to package the Learnline unit in a manner in which it could be safely shipped has been discussed in detail in Arpin's previous submissions in opposition to Plaintiff's Motion *in Limine*, and this brief should be deemed to incorporate those arguments. Moreover, as noted at the pretrial conference, Festo witnesses will testify they could package the unit in different ways, and indeed have packaged similar units in more stable boxes and pallets.

failing to warn a driver of the nature of freight was a question for the jury). Imposing such a duty does not, as Plaintiff laments, require Festo to do Arpin's job; rather, the duty to warn stems from recognition of the fact that carriers can properly perform their jobs only if fully informed about the nature of their freight.[2]

In fact, in a case involving injury to goods, the Connecticut Supreme Court held that "a carrier is not an insurer of goods entrusted to it as to damage which results from the fault of the shipper, such as improper packaging of the merchandise or the failure to warn the carrier of some condition which requires special care in handling and of which the carrier cannot be presumed to be aware." *Wells Laundry & Linen Supply Co. v. ACME Fast Freight, Inc.*, 138 Conn. 458, 461-62, 85 A.2d 907, 909 (1952). Thus, in an analogous case, Connecticut has already recognized the duties Festo owed to Arpin, and this Court should not countenance Plaintiff's arguments that no such duties exist.[3]

In this case, Festo breached its duties owed to Arpin and its driver, the Plaintiff, by failing to inform Arpin of the accurate weight and center of gravity of the cargo, and by failing to advise Arpin of the acceptable lift points and lash points on the cargo and of the locking castor wheels on the cargo. Had this information been provided, Arpin would have proceeded differently, including by sending additional personnel and instructions. As a general proposition, the determination of negligence is a matter for the jury. *Weintraub v. Richard Dahn, Inc..* 188

---

[2] The only other argument made by Plaintiff, either orally or in writing, to support his contention that Festo owed no duty to Arpin was his claim that Festo hired Arpin as a specialty moving company, that Festo is not involved in shipping, and that Festo does not have its own trucks. The evidence presented at trial will indicate that Festo is, in fact, involved in shipping and has its own trucks.

[3] It should also be noted that the federal regulations placing upon carriers the final responsibility to properly secure their loads, *see, e.g.*, 49 C.F.R. § 392.9, do not apply to this situation. This is not a case in which injury resulted because freight was improperly secured for transportation; for example, the Learnline unit did not roll out the back of a truck because it had not been properly tethered. Instead, this case involves a situation in which the carrier was not able to safely unload the unit because it had not been provided with required information regarding the nature of the unit. Moreover, even if applicable, the regulations apply to carriers, not shippers, and Festo can still be held liable pursuant to common law claims of negligence. *Medeiros v. Whitcraft*, 931 F. Supp. 68, 73-74 (D. Mass. 1996); *Locciero v. Interpace Corp.*, 266 N.W.2d 423, 426-27 (Wis. 1978).

Conn. 570, 573, 452 A.2d 117, 120 (1982). Therefore, evidence regarding Festo's breach of its duties owed to Arpin and the Plaintiff should not be precluded pursuant to Plaintiff's Motion *in Limine*.[4]

Respectfully submitted,

_____
Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center, P.O. Box 4726
Portland, ME 04112-4726
(207) 761-0900
(207) 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

---

[4] Moreover, the present case does not involve a shipper's claim for damages to its goods, and it has been held that, with respect to non-shipper claims, a carrier's negligence does not necessarily bar the carrier from recovering any of its damages. *See Symington v. Great W. Trucking Co.*, 668 F. Supp. 1278, 1282 (S.D. Iowa 1987) (distinguishing between shipper and carrier claims, concluding that the "common-law-carrier-as-insurer rule does not apply" to the latter, and thus applying comparative negligence principles in determining the parties' respective liability). Accordingly, apportionment of liability between Festo and Arpin is appropriate.

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail this 30th day of December, 2005 to the following:

Michael A. Stratton, Esq.
Stratton Faxon
59 Elm Street
New Haven, CT 06510

Thomas J. Grady, Esq.
Lenihan Grady & Steele
6 Canal Street
PO Box 541
Westerly, RI 02891-0541

Daniel J. Krisch, Esq.
Horton, Shields & Knox, P.C.
90 Gillett Street
Hartford, CT 06105

Roland F. Moots, Jr., Esq.
Moots, Pellegrini, Spillane & Mannion
46 Main Street, PO BOX 1319
New Milford, CT 06776-1319

_____
Karen Frink Wolf, Esq. CT 26494

(g) A box fell from a truck while traveling on a highway, and a bus stopped to pick it up. Another truck rear-ended the bus, killing the truck driver. The court held that the action of the bus driver was not an independent, intervening, efficient cause as to break the chain of causation between the original act of negligence and the ultimate injury to the truck driver, since the owner of the first truck owed a duty to the road-using public to guard against objects falling from its trucks on the streets since such objects could foreseeably cause injury when other users of the road either ran into or attempted to avoid the falling objects.[35]

(h) A log fell off a truck loaded with pulpwood and crashed through the windshield of a car.[36]

### § 12-3(c). Other Examples of Improper Loading.

Carriers have been held liable in the following situations for other acts of improper loading which include overloading, traveling on the highway with a protruding load, and hauling a load that was too high:

(a) A dump truck loaded with asphalt mix beyond its rated capacity rear-ended a car stopped in traffic. The court held that the company that overloaded the truck was liable for the plaintiff's injuries.[37]

(b) There was a failure to display a red flag.[38]

(c) There was a failure to have lights burning at the rear of a load of pipe.[39]

(d) Triangular steel girders were transported in such a manner that there was eight feet of overload extending over the center line of the highway.[40]

(e) Carrying a load that was stacked too high in violation of state statute resulted in its striking an overpass, dropping into the highway, and causing a collision between the other motorists.[41]

(f) A shipment of steel beams protruding from the rear of a tractor-trailer was not secured with the proper number of chains required by federal safety regulations and lacked either a flag or lights, as required by state law.[42]

### § 12-4. Liability of the Shipper.

When the shipper becomes involved in the loading process, it risks liability for its negligence in either providing improper instructions to the carrier on the

---

[35] Railway Express Agency, Inc. v. Garland, 269 So. 2d 708 (Fla. App. 1972).
[36] Black Belt Wood Co. v. Sessions, 455 So. 2d 802 (Ala. 1984).
[37] Dill v. Gamble Asphalt Materials, 594 S.W.2d 719 (Tenn. App. 1979).
[38] Frischertz Elec. Co. v. State Farm Mut. Auto. Ins. Co., 357 So. 2d 1323 (La. App. 1978).
[39] O'Neal v. Kelly Pipe Co., 76 Cal. App. 2d 577, 173 P.2d 685 (1946).
[40] Curtis v. Q.R.S. Neon Corp., 147 Cal. App. 2d 186, 305 P.2d 294 (1956).
[41] Lesniewski v. Fowler Trucking Co., 471 So. 2d 916 (La. App. 2d Cir. 1985).
[42] Deaton, Inc. v. Burroughs, 456 So. 2d 771 (Ala. 1984).

proper way to secure the load,[43] by loading the cargo itself in a haphazard manner,[44] by taking on the responsibility of securing the load itself and then when questioned by an inexperienced truck driver as to its propriety giving assurances that it was done correctly,[45] by negligently securing the load,[46] or by having loaded the truck itself in such a manner that the defects in its loading are latent and not obvious to the carrier upon a reasonable inspection.[47]

When the shipper, however, does not become involved in the loading process that circumstance may not form the basis for a finding of liability on a theory of failing to provide help to the truck driver in the loading of a truck or inadequately supervising the loading in the absence of terms in the sales invoice, i.e., "F.O.B. vessel, car, or other vehicle," obligating the shipper to provide this type of assistance.[48]

On some occasions a manufacturer may ship a product that requires special care and preparation so that it can be transported to its destination without exposing others to unreasonable danger. When that occurs, the manufacturer is held to the degree of knowledge and skill of an expert, and if the bundling or packaging of its product is improperly done causing injury to others, it may be held liable under a theory of either negligence or strict liability.[49]

---

[43] See Locicero v. Interpace Corp., 83 Wis. 2d 876, 266 N.W.2d 423 (1978).
[44] See Stalik v. United States, 247 F.2d 136 (10th Cir. 1957) (applying Oklahoma law). But see Green v. GS Roofing Prods. Co., 928 S.W.2d 265 (Tex. App.-Houston [14th Dist.] 1996), where the allegation was made that roofing materials were negligently loaded on a truck, causing the load to shift, which then required the truck driver to pull over and park on the shoulder of an interstate. When an automobile upon approaching the truck slowed down, it was rear-ended by a tractor-trailer which resulted in the death of the automobile driver. On the issue of whether the shipper was liable for the death of the motorist for having created a hazardous road condition, held: no liability since the shipper's conduct was too remotely connected with the death to constitute legal causation, i.e., the foreseeability element of proximate cause was unsatisfied.
[45] See Gunn v. International Harvester Co., 366 F.2d 349 (6th Cir. 1966) (applying Tennessee law).
[46] See Sears v. Kois Bros. Equip., Inc., 110 Ill. App. 3d 884, 66 Ill. Dec. 531, 443 N.E.2d 214 (1982).
[47] See General Elec. Co. v. Moretz, 270 F.2d 780 (4th Cir. 1959) (applying Virginia law); United States v. Savage Truck Line, 209 F.2d 442 (4th Cir. 1953) (applying Virginia law); American Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc., 689 F.2d 295 (1st Cir. 1982).
[48] See Pagano v. Occidental Chem. Corp., 257 Ill. App. 3d 905, 196 Ill. Dec. 24, 629 N.E.2d 569 (1st Dist. 1994).
[49] See Lewis v. Stran Steel Corp., 57 Ill. 2d 94, 311 N.E.2d 128 (1974) (bands on bundle of nailable steel flooring came loose, allowing sheets of flooring to slide out and strike worker when wheel of forklift truck being used to transport bundle fell into a hole causing load to tilt).