UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAWN POULIOT, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:02-cv-1302 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PAUL ARPIN VAN LINES, INC. | : | JANUARY 18, 2006 |
| and ARPIN LOGISTICS, INC, | : | |
| Defendants. | : | |

**JURY CHARGE**

I.     INTRODUCTION

You have now heard all of the evidence in the case and the final arguments of the parties.  This brings us to the stage in the trial where you will soon undertake your final function as jurors.  First, however, it is my duty to instruct you concerning the law that applies to this case.

You must take the law as I give it to you.  Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any view of the law other than the view instructed by me.  If any party or any witness or any exhibit has stated a legal principle different from one that I state to you in these instructions, it is my instructions that you must follow.  My instructions are the only ones that establish the law for your deliberations.  You must take the law as I give it to you.

When you recess to deliberate, you will have your copy of my instructions on the law for your reference.  You must remember, though, that the instructions as a whole constitute the law of this case; you should not single out any one instruction.

At the outset of this trial, I gave you some preliminary instructions that were intended to serve as an introduction to the trial and to orient you to the particular case under consideration.  The instructions that I now will give are the final and complete instructions.  If you believe that what I am going to tell you now is not consistent with the instructions I gave you at the start of the trial, you should not

rely on anything different that I may have said in the preliminary instructions.  The

instructions I am now giving you must guide your deliberations in this case.

## II.    ROLE OF JURORS

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them. In determining these issues, no one may invade your province or function as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence.

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, solely upon the evidence in the case and the applicable law. All persons and parties stand equal before the law and are to be dealt with as equals in this, a court of justice. I know that you will do this and in that way reach a just and true verdict.

You should be guided solely by the evidence presented during trial, without regard to the consequences of your decision. You have been chosen to try the issues of fact and to reach a verdict on the basis of the evidence or lack of evidence. If you let sympathy or bias interfere with your clear thinking, there is a risk that you will not arrive at a fair and just verdict.

Because you are the sole and exclusive judges of the facts, I have not expressed, nor do I now indicate in this charge, any opinion as to the facts or as to what your verdict should be. The rulings I have made during the trial are not

any indication of a view of what your decision should be as to whether or not Mr. Pouliot has proven his case. Of course, you will dismiss from your mind completely any evidence which has been ruled out of the case by the court, and you will refrain from speculation or conjecture or any guesswork about the nature or effect of any colloquy between the court and counsel held out of your hearing.

I also instruct you to draw no inference from the fact that, upon occasion, I asked questions of or gave instructions to certain witnesses. These questions and instructions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinion on my part as to the verdict you should render, or as to whether any of the witnesses may have been more or less credible than any other witnesses.

You may also not draw any inference from the mere fact that the Mr. Pouliot has filed this lawsuit.

As to the facts, you are the exclusive judges, and you are to perform the duty of finding the facts fairly, without bias or prejudice to any party.

## III.    ROLE OF ATTORNEYS

_____It is the duty of the parties, and their lawyers, to object when the other side offers testimony or other evidence that they believe is not properly admissible. Each side also has the right and duty to ask the court to make rulings of law.

All those questions of law must be decided by the court.  You should not show any prejudice against a party because the party or an attorney objected to the admissibility of evidence, or asked the court to rule on the law.

IV.    BURDEN OF PROOF

In a civil case such as this case is, any party with a burden of proof must prove his claim or special defense by a preponderance of the evidence.  The burden of proof is on Mr. Pouliot to prove his claim of negligence.  Thus, in order to prove his claim, Mr. Pouliot must prove each of the elements of his claim of negligence, as I will describe them to you, by a preponderance of the evidence.  Paul Arpin Van Lines and Arpin Logistics do not have to prove that they are not liable; the burden of proof for Mr. Pouliot's claim is on Mr. Pouliot.

In determining whether a party has satisfied his or its burden, bear in mind that you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

To prove a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  Therefore, on his claim, a plaintiff must prove more than simple equality of evidence.  If, after considering all of the evidence and testimony on a given issue, you find that both sides of the issue are equally probable, then the plaintiff has failed to sustain its burden, and you must decide that issue against that party.

However, a plaintiff need prove no more than a preponderance.  As I indicated, a preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the

number of witnesses or documents. So long as you find that the scales tip, however slightly, in favor of a party who has the burden of proof on an element, then that element will have been proven by a preponderance of the evidence.

You may have heard the phrase "proof beyond a reasonable doubt" in connection with other cases. That standard is the proper standard of proof in a criminal trial.  That standard does not apply to a civil case, such as this, and you should not consider it in this case.

Throughout these instructions to you, I may use the word "prove" from time to time, with reference to the burden of proof.  I may also speak of your "finding" various facts as to elements of the claims made in this case.  You are to understand my use of the word "prove" to mean "prove by a preponderance of the evidence"  even if I do not always repeat all these exact words.  Similarly, when I say that you must "find" a fact in order to return a verdict in favor of a plaintiff or a defendant, you must find that fact to have been proven by a preponderance of the evidence even if I simply use the word "find."

Only if you first find that Mr. Pouliot has proven his claim of negligence by a preponderance of the evidence should you consider the special defense asserted by Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc., which I will discuss later. With regard to their special defense, Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. have the burden of proof by a preponderance of the evidence.

V.     WHAT IS AND IS NOT EVIDENCE

The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence, as full exhibits, without regard to which side offered the witness or exhibit.

It is the witnesses' answers and not the lawyers' questions that are evidence. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and then asked the witness if the statement was true. If the witness admitted the truth of the statement, then you may consider it true. If the witness denied the truth of the statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question. Similarly, if an party described a witness's testimony, you should not accept that as the witness's testimony. It is your recollection of the witness's testimony that controls.

The lawyers are not witnesses, and the parties are not witnesses except when they are on the witness stand and testifying as witnesses. What the lawyers and parties have said in their closing arguments, in their objections, or in their questions is not evidence. What they have said in their closing arguments is intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from what a party says, it is your recollection that controls.

Testimony that has been stricken or excluded by the court is also not evidence and may not be considered by you in rendering your verdict. In certain instances evidence was admitted only for a particular purpose and not generally for all purposes. For the limited purpose for which it has been received, you may give such evidence the weight you decide it deserves. You may not, however, use this evidence for any other purpose not specifically mentioned by the court.

Anything I may have said during the trial, or what I may convey in these instructions, is not evidence. My rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. Finally, anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at trial.

VI.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Generally speaking, there are two types of evidence.  One type of evidence is direct evidence.  Direct evidence is evidence presented by a witness who testifies to what he or she saw, heard or observed.  In other words, when a witness testifies about something he or she knows by virtue of his or her own senses, such as seeing, touching, or hearing, that is called direct evidence. Direct evidence may also be in the form of an exhibit where the fact to be proved is the existence or content of the exhibit.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  That is, circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  Remember my rain example –  it would be reasonable and logical for you to conclude that it is raining.  It is not the only conclusion you could reach, nor would you have to reach that conclusion, but you could do so reasonably and logically.  All there is to circumstantial evidence is that you infer on the basis of reason, experience, and common sense, from one or more established facts—in my example, people with wet umbrellas and raincoats, and the forecast—the existence or non-existence of some other fact—that it is raining.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a

preponderance of all the evidence presented.

VII.   INFERENCES

In their arguments, the parties may have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.  An inference is not a suspicion or a guess or speculation.  It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether those facts are proven by direct or circumstantial evidence.  Mr. Pouliot asks you to draw one set of inferences, while Paul Arpin Van Lines and Arpin Logistics ask you to draw another.  It is a deduction or conclusion which you, the jury, are permitted to draw, but are not required to draw, from the facts which have been established by either direct or circumstantial evidence.  It is for you, and you alone, to decide what inferences you will draw.  In drawing inferences, you should exercise your common sense.

VIII.   DETERMINING THE CREDIBILITY OF WITNESSES

You have had the opportunity to observe all the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You and you alone are the judges of the credibility of each witness, which testimony to believe and which not to believe, and the importance of a witness's testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness?  When you watched a witness testify, everything a witness said or did on the witness stand counts in your determination.  What impression did the witness give you?  Did he or she appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear?  What was his or her demeanor, that is, his or her carriage, behavior, bearing, manner and appearance while testifying?  Often it is not what a person says, but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party.  You should consider the opportunity the witness had to see, hear and know the things about which he or she testified; the accuracy of the witness's

memory; his or her candor or lack of candor; and his or her intelligence or the lack thereof; and, the reasonableness and probability of his or her testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

If you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with care. Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons participating in an event or witnessing an incident or transaction may see or hear it differently; an innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an insignificant detail, and whether the discrepancy results from innocent error or from intentional falsehood.

- 15 -

You are not limited to just the factors I have mentioned. You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. Always remember that in assessing a witness's testimony, you should use your common sense, your good judgment, and your own life experience.

IX.    IMPEACHMENT OF A WITNESS

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely concerning a matter, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony.  It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding what credence you will attach to that witness's testimony.  Considering that fact and all other relevant evidence, you may accept or reject the testimony of such a witness, in whole or in part.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; and whether the witness had an explanation for the inconsistency, and whether that explanation made sense to you.

X.    USE OF MEDICAL RECORDS

In this case, some medical evidence has been presented in the form of reports written by doctors who treated Mr. Pouliot.  There is a statute that provides that such written reports may be used in court.  That statute was enacted so that persons claiming injury would not have to take doctors away from their medical duties to testify in court.

XI.    EXPERT WITNESSES

The rules of evidence ordinarily do not permit witnesses to testify as to their

own opinions or their own conclusions about issues in the case.  An exception to

this rule exists as to those witnesses who are described as "expert witnesses."

An "expert witness" is someone who, by education or by experience, has become

knowledgeable in some technical, scientific, or very specialized area.  If such

knowledge or experience may be of assistance to you in understanding some of

the evidence or in determining a fact, an "expert witness" in that area may state

an opinion as to relevant and material matter in which he claims to be an expert.

You should consider each expert opinion received in evidence in this case

and give it such weight as you may think it deserves.  You should consider the

testimony of expert witnesses just as you consider other evidence in this case.

You should resolve any conflicts between the experts in the same way that you

decide other fact questions and in the same way you decide whether to believe

ordinary witnesses.  If you decide that the opinion of an expert witness is not

based upon sufficient education or experience, or if you conclude that the

reasons given in support of the opinion are not sound, or if you conclude that the

opinion is outweighed by other evidence, you may disregard the opinion in part or

in its entirety.

You should not accept an expert witness's testimony merely because he is

an expert.  Nor should you substitute it for your own reason, judgment, and

common sense.  The determination of the facts in this case rests solely with you.

XII.   STATEMENT OF THE CASE

The plaintiff in this action is Shawn Pouliot.  The defendants are Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc.  Paul Arpin Van Lines owned the truck from which Mr. Pouliot was unloading the freight that injured him on October 23, 2001, and Arpin Logistics is the company that assigned Mr. Pouliot to this delivery.

The plaintiff, Mr. Pouliot, alleges that he has suffered damages as a result of the incident, and that such damages were caused by negligent actions or omissions on the part of the defendants, Paul Arpin Van Lines and Arpin Logistics.  He claims that Paul Arpin Van Lines and Arpin Logistics provided him with a defective liftgate that they had failed to adequately inspect and service, and that they failed to replace such liftgate with a safe alternative.  Arpin Van Lines and Arpin Logistics assert that they were not negligent in any way.  They claim that Mr. Pouliot was negligent in the manner in which he delivered the freight and caused or contributed to his own injuries.  They also claim that the company who owned the item being shipped, Festo Corporation, was negligent and caused Mr. Pouliot's injuries in that it did not provide certain information to Paul Arpin Van Lines and Arpin Logistics.

XIII.   CORPORATIONS

Both Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc. are corporations. Corporations stand equal with any person before the law and thus are to be dealt with as equals in this, a court of justice.

A corporation cannot act otherwise than through its officers, employees, or other agents.  The law holds a corporation responsible for acts or omissions of its officers, employees, or other agents.  In order for a corporation to be held responsible, however, such acts or omissions must be done within scope of the authority of the officers, employees, or agents, as would usually be true if the act is done in the ordinary course of their duties for the corporation.

Authority to act for a corporation in a particular matter, or in some particular way or manner, may be inferred from the surrounding facts and circumstances shown by the evidence in the case. Authority to act for a corporation, like any other fact in issue in a civil case, need not be established by direct evidence, but may be established by circumstantial evidence

XIV.   TWO DEFENDANTS TO BE TREATED AS ONE

Defendant Arpin Logistics is a division of Defendant Paul Arpin Van Lines. The parties have agreed that these two defendants will be treated as a single party for the purposes of this trial.  You should treat the two defendants as if they were a single party – that is, a single corporation – for the purposes of your deliberations on Mr. Pouliot's claim against them both.

I will refer to both defendants collectively as "Arpin," and speak of them in the singular.

XV.    SPOLIATION OF LIFTGATE

Mr. Pouliot claims that Arpin failed to preserve the subject liftgate and made repairs to it after the defendant's expert inspected the gate, but before Mr. Pouliot's expert could examine it.  If you find: (1) that the original condition of the liftgate is relevant to the claims asserted by Mr. Pouliot; (2) that the liftgate was repaired or altered from its original post-incident condition before Mr. Pouliot's experts were permitted to inspect it; and (3) that, at the time the liftgate was repaired or altered, Arpin knew or reasonably should have known that the condition of the liftgate immediately after the incident would be relevant to litigation that was reasonably foreseeable, then you may infer that the condition of the liftgate after the incident was harmful to Arpin's position in this case.

You do not have to draw this inference; I merely instruct you that, if you make these three findings, you may draw the inference I have just described.

XVI.   NEGLIGENCE: SUMMARY OF ELEMENTS

As I have already stated, Mr. Pouliot has asserted a claim of negligence against Arpin.  To recover for negligence, Mr. Pouliot must prove, by a preponderance of the evidence, that (1) Arpin owed a duty to him; (2) Arpin breached that duty; (3) in breaching that duty, Arpin's actions were a proximate cause of Mr. Pouliot's injuries; and (4) Mr. Pouliot was actually injured.  Mr. Pouliot may not recover on his negligence claims against Arpin unless he has proven by a preponderance of the evidence each and every one of these four elements as to Arpin.

## XVII.  NEGLIGENCE:  SPECIFIC ALLEGATIONS

Mr. Pouliot has asserted several bases for his claim of negligence in this case.  Mr. Pouliot has alleged that Arpin was negligent in that it did the following:

(a)     provided him with a defective liftgate;

(b)     failed to adequately inspect the liftgate;

(c)     failed to properly service the liftgate;

(d)     failed to replace the liftgate with a safe alternative;

To establish that Arpin was negligent, Mr. Pouliot need not prove all of the specific allegations of negligence he asserts.  The proof of any one of these specific bases of negligence is sufficient to prove negligence by Arpin, so long as Mr. Pouliot proves all four elements of his negligence claim – duty, breach, causation, and injury – as to a particular basis of negligence.  Let me address in some detail these four elements of a claim of negligence.

XVIII. NEGLIGENCE: DUTY: IN GENERAL

Negligence consists of a failure to use reasonable care, that is, the care which a reasonably prudent person would use under the circumstances of the particular case.  In order to prove negligence by Arpin, Mr. Pouliot must first prove that Arpin owed him a duty to use such reasonable care.  The law does not require Arpin to anticipate every possible situation, but rather requires it to guard against foreseeable risks.  These foreseeable risks are risks of which Arpin knew, or through the exercise of reasonable care, should have known.  To be foreseeable, a risk need not be a risk of the precise harm that the injured person in fact suffered, but must be a risk of harm of the same general nature.

If a particular risk exists, how do you determine whether Arpin knew or, through the exercise of reasonable care, should have known about that particular risk? The test is: would a reasonably prudent person in the position of Arpin or one of its agents or employees, knowing what that person knew or in the reasonable exercise of his or her mental faculties, have anticipated that, unless he or she used reasonable care, harm was likely to result?

Negligence consists either in doing something that a reasonably careful person would not do under like circumstances, or in failing to do something that a reasonably careful person would do under like circumstances.  A reasonably careful person is a hypothetical person who acts sensibly, does things without serious delay, and takes proper but not excessive precautions. You must

- 27 -

determine the question of whether Arpin acted as a reasonably prudent person would have under like circumstances by placing an ordinarily careful person in the situation of Arpin and then asking yourselves, what would such a person have done?

"Reasonable care" is the care which such a person would have used under the surrounding circumstances, in view of the facts he knows or as such a person should have perceived or known. If a party has knowledge of dangers that it can foresee will be hidden to others to whom it owes a duty, this is also one of the circumstances to be considered in determining whether the party acted with reasonable care.

The standard of care required, that of a reasonably prudent person under the circumstances, never varies. However, the degree of care varies with the circumstances. Reasonable care is care proportionate to the danger existing in the surrounding circumstances.

All of the surrounding circumstances must be considered. In circumstances of slight danger, a slight amount of care might be sufficient to constitute reasonable care, while in circumstances of great danger a correspondingly greater amount of care would be required to constitute reasonable care. It is up to you to make a finding as to the level of danger that may be present in this case and the corresponding duty of care required.

XIX.   NEGLIGENCE:  BREACH: REASONABLE CARE

If you find that Arpin owed a duty of care to Mr. Pouliot, you must next consider the second element of a negligence claim, whether Arpin breached that duty by failing to exercise reasonable care.

XX.   NEGLIGENCE:  CAUSATION

If you find that Arpin was negligent in any of the ways claimed by Mr.
Pouliot – in other words, you find that Mr. Pouliot has proven that Arpin owed a
duty to him and that it breached that duty – you must then address the third
element of a negligence claim, if that negligence was a proximate cause of any of
Mr. Pouliot's claimed injuries.

Something is a proximate cause if it is a substantial factor in causing Mr.
Pouliot's injuries.  This means that the negligent conduct of Arpin must either
have caused the injury itself, alone, or it must have materially contributed to the
injury in conjunction with the negligent actions, if any, of Mr. Pouliot, Festo Corp,
or both.  Therefore, if negligent conduct by Arpin combines together with one or
more other causes to produce an injury, such negligent conduct is a proximate
cause of the injury if its contribution to the production of the injury, in comparison
to all other causes, is material or substantial.

In determining whether certain conduct was a cause of Mr. Pouliot's
injuries, you should ask whether Mr. Pouliot's injuries followed in a natural
sequence from that conduct.  By natural sequence, I mean a sequence which
proceeds in accordance with the common experiences in life.

Mr. Pouliot does not need to prove that Arpin's negligence was the sole or
exclusive factor resulting in his damages, but only that it was a substantial factor.

## XXI.   NEGLIGENCE:  ACTUAL DAMAGES

Finally, in order to prove a claim of negligence, Mr. Pouliot must prove the fourth element, that he suffered actual damages.  I will tell you more about the types of damages that this element includes, (pp. 42-53), and how to calculate the extent of Mr. Pouliot's damages, after I discuss several other issues.  At this point, you must only determine if Mr. Pouliot has proven that he suffered some actual harm as a proximate cause of Arpin's negligence.

XXII.  SPECIAL DEFENSE: PLAINTIFF'S NEGLIGENCE

If you have found that Mr. Pouliot has proven by a preponderance of the evidence the four elements of his claim of negligence as to Arpin, you must next consider the special defense asserted by Arpin.  Arpin alleges that Mr. Pouliot's injuries were caused, in whole or in part, by his own negligence.  Mr. Pouliot was under a duty to use the same standard of care to avoid suffering injuries as that which was incumbent upon Arpin, that is, the care which a reasonably prudent person would use in the circumstances.  In considering this special defense, you should follow the instructions I have given to you on duty and reasonable care, breach and proximate cause. (See pp. 25, 27-31).

I also want to add something to those earlier instructions in connection with considering Mr. Pouliot's conduct and the standard of care.  A person to whom a duty of care is owed has a right to assume that the person who owes that duty will fulfill it,  in the absence of circumstances indicating that the person owing the duty will not fulfill it.  The person to whom a duty of care is owed is relieved of the duty to take active measures such as looking, listening and making inspection, if he proves that another party owed him a duty of care and that he relied upon that other party performing such duty in deciding whether to take these active measures.

In considering the circumstances surrounding Mr. Pouliot, you are to remember that his conduct is to be judged in the light of all the relevant facts he

perceived or ought to have perceived in the exercise of the care of a reasonably prudent person.  Mr. Pouliot was entitled to assume that Arpin would use reasonable care until Mr. Pouliot perceived, or ought in the reasonable exercise of its faculties to have perceived, that Arpin was not going to do so or had not done so.

With respect to Mr. Pouliot's actions at the time of the incident, if you find that Mr. Pouliot was confronted with a sudden emergency which required a rapid decision, that is another factor you should consider in determining whether his actions or failures to act were reasonable under the circumstances, in connection with your consideration of whether Arpin has proven its special defense of contributory negligence by Mr. Pouliot.  To consider this factor, the sudden emergency must not have been caused by Mr. Pouliot's own conduct.

If you find that Mr. Pouliot breached a duty of care, Arpin must also prove that Mr. Pouliot's negligence contributed to produce his injuries, that is, was a proximate cause of them.  Here again, the question of whether any negligence on Mr. Pouliot's part did cause his injuries is to be determined by the same test on which I instructed you (on page 30) with reference to the negligence of Arpin, that is, was the negligence of Mr. Pouliot a substantial factor in causing his injuries?

In determining whether Mr. Pouliot was negligent, you are to consider only such conduct on his part as fairly falls within the scope of the matters alleged by Arpin.  The burden of proof is upon Arpin to satisfy you by a fair preponderance of

the evidence that Mr. Pouliot was negligent in one or more of the ways alleged and that this negligence was a proximate cause of his injuries.

Of course, if you find that there was no negligence on the part of Arpin, you have no need to consider the question whether Mr. Pouliot was guilty of contributory negligence, because, whether he was or not, he cannot recover.

## XXIII.  SPECIAL DEFENSE: PLAINTIFF'S NEGLIGENCE: SPECIFIC ALLEGATIONS

Arpin has asserted several bases for its special defense of contributory negligence by Mr. Pouliot.  Arpin has alleged that Mr. Pouliot was negligent in that he did one or more of the following:

(a)     stepped in front of a falling load;

(b)     failed to fully inspect the load;

(c)     failed to properly assess the true weight of the load;

(d)     failed to lock the brakes to the wheels on the bottom of the cargo load;

(e)     failed to strap the load securely and in such a manner that would prevent movement before commencing descent;

(f)     knowingly placed himself in the path of falling cargo in an attempt to prevent a fall of an extremely heavy weight load on wheels with brakes not secured, he not having the physical strength, size and capacity to restrain it;

(g)     failed to request and wait for additional available assistance to assist him in safely removing the load from the back of the van to the ground;

(h)     failed to make a timely and accurate initial assessment of the Learnline 2000 unit and to refuse to transport the load because he did not have sufficient personnel and/or equipment to safely unload it at its destination;

(I)     failed to take the necessary actions that a reasonable driver of ordinary prudence would have taken for his own personal safety.

To establish that Mr. Pouliot was contributorily negligent, Arpin need not prove all of the specific allegations of negligence it asserts.  The proof of any one

of these specific bases of negligence is sufficient to prove contributory negligence by Mr. Pouliot, so long as Arpin proves duty, breach, and causation as to a particular basis of negligence.

XXIV.  COMPARATIVE NEGLIGENCE RULE

If you find that Mr. Pouliot was negligent and that such negligence was a proximate cause of his injuries, you must then consider what is called the comparative negligence rule.  It provides that, in a cause of action based on negligence, the contributory negligence by Mr. Pouliot shall not bar recovery if such negligence was not greater than the combined negligence of Arpin plus that of the Festo Corporation (if any), but any damages allowed shall be diminished in the proportion of the percentage of negligence attributable to Mr. Pouliot and Festo.  Thus, before you can proceed to consider the comparative negligence rule, you must consider Festo's conduct.

XXIVa.  COMPARATIVE NEGLIGENCE:  FESTO

If you find that Mr. Pouliot has proven his claim of negligence, and whether
or not you have found that Mr. Pouliot is negligent, you must consider whether
the third party that I have mentioned, Festo Corporation, was also negligent in a
manner that caused Mr. Pouliot's injuries.  Although Festo is not a defendant and
therefore no award of damages can be made against Festo in this case, the
amount of damages that Mr. Pouliot can recover from Arpin will be reduced in
proportion to Festo's negligence.  The burden of proving Festo's negligence rests
on Arpin, and it must prove such negligence by a preponderance of the evidence.
You must apply the same negligence test that I discussed earlier (pp. 25, 27-31).

Arpin has asserted that Festo was negligent in that it did the following:

(a) failed to provide Arpin with a reasonably accurate statement of the
unit's true weight;

(b) failed to inform Arpin that the unit was on four castor wheels;

(c) failed to inform Arpin that two of the wheels on the unit had brakes.

To establish that Festo was negligent, Arpin need not prove all of the
specific allegations of negligence it asserts.  The proof of any one of these
specific bases of negligence is sufficient to prove negligence by Festo, so long as
Arpin proves all four elements of a negligence claim – duty, breach, causation,
and injury – as to a particular basis of negligence.

In addition, with respect the bases for Arpin's claim that Festo was

- 38 -

negligent for failing to warn Arpin of certain dangers, you should bear in mind that a duty of reasonable care does not require Festo to warn others of conditions or dangers that are open and obvious. That is, Festo does not have a duty to warn of a danger that is known to others or so obvious that a person may be expected to discover it.  However, even if a danger is obvious, there may still be a duty to warn of the existence of a safer alternative, if any, that is not generally known.

XXIVb.        APPLICATION OF COMPARATIVE NEGLIGENCE RULE

Having determined whether Festo was negligent in connection with the incident, you are in a position to apply the comparative negligence rule.  If you find that Mr. Pouliot proved his claim of negligence against Arpin, and that the negligence of Mr. Pouliot or Festo Corp., or both, was a proximate cause of Mr. Pouliot's injuries, you must decide the relative percentages by which each of these parties were negligent.  If you find that Mr. Pouliot proved his claims of negligence against Arpin, you must assign one percentage to the combined negligence of the two defendants to which I have, in these instructions, been referring jointly as Arpin, that is, Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc.  You should then assign a percentage of fault, if any has been proven, to Mr. Pouliot and also assign a percentage of fault, if any has been proven, to Festo Corp., adding up to a total of 100%.  In other words, you should assign a percentage of negligence to any party you find to be negligent, including Festo if you find it was negligent, so that, in combination with Arpin's negligence, the total percentage of negligence equals 100%.

There are essentially two parts to the comparative negligence rule. The first part concerns what is called in the law a complete bar to recovery.  If you combine every negligent act and omission of Mr. Pouliot, Arpin, and Festo that you find to be a proximate cause of Mr. Pouliot's injuries, you then have a total of 100% of the negligence involved for the purposes of this case.  If the negligence

of Mr. Pouliot is more than 50% of that total, he cannot recover any damages. His recovery would be barred.

The second part of the rule explains the effect upon awards of damages in those actions in which the person seeking damages is fifty percent or less at fault in causing his own injuries, again taking 100 % as the combined negligence of Arpin, and Mr. Pouliot and Festo, if any.  It provides for a reduction of whatever sum of money would fairly compensate such person for his injury, based on the extent to which a person caused his own injuries or a named non-party did.

Based upon these findings that you will make, and your assessment of the total amount of damages that Mr. Pouliot suffered as a result of the incident, the court will calculate the final damage award.  In calculating the damage award that Mr. Pouliot would receive on his claim of negligence, the court will reduce any total amount of damages that you find Mr. Pouliot suffered by an amount proportionate to the percentage of his injuries you attribute to his own negligence, and by an amount proportionate to the percentage you attribute to Festo Corp. Arpin would be required to pay the fraction of the total damages equal to the percentage of fault that you find attributable to it.

XXV.  DAMAGES: GENERALLY

You should consider whether and to what extent Mr. Pouliot suffered damages only if you find that he has proven all of the other elements of his claim of negligence, and you find that Arpin has either failed to prove that Mr. Pouliot's negligence was a proximate cause of his injuries, or you find Arpin proved this special defense, but you find that Mr. Pouliot was responsible for 50% or less of the total negligence of Arpin, himself and Festo, if any.  The fact that I charge you on the law governing damages should not be taken as a suggestion that you should necessarily reach the question of damages.  It is your function to decide the issue of liability; I am instructing you on elements of damages only so that you will have guidance should you decide that Mr. Pouliot is entitled to recover damages on his claim.  You should not consider the question of damages unless and until you find Mr. Pouliot has proven his claim of negligence against Arpin.

As with the other elements of Mr. Pouliot's claims, Mr. Pouliot bears the burden of proving his damages by a preponderance of the evidence.  With regard to damages, he must present evidence which is not merely subjective or speculative, but which allows for some objective decision of the amount of money that would compensate him for his injuries.  The mere fact that damages may be difficult to assess, in itself, is not enough reason for you to refuse to award them, if Mr. Pouliot has proved he has a right to damages.

If you find that Mr. Pouliot has proven his claim of negligence against Arpin,

Mr. Pouliot's total damages would include all damages proximately caused by the the negligence of Arpin and of Mr. Pouliot and Festo, if they were negligent, whether or not the results were reasonably to be anticipated from the actions of Arpin or any other negligent parties.  If you find that such negligence increased the risk that Mr. Pouliot may suffer future complications or injuries, you may take that risk into account in calculating his damages.

In a personal injury action, there are two general types of damages with which you must be concerned: economic and non-economic damages. The law requires you to make a separate finding as to the amount of each type of damages.  Economic damages are monies awarded to compensate for expenses related to lost earnings and necessary medical and support care incurred in the past and reasonably likely to be incurred in the future, as a result of negligence. Non-economic damages are monies awarded to compensate for harms and losses to the person, that he has suffered in the past or is reasonably likely to suffer in the future, as a result of negligence.  Non-economic damages compensate for loss of function and disability.  They are awarded for such things as impairment of ability to enjoy life's activities, mental suffering,  inconvenience, and physical pain.

With respect to both types of damages, economic and non-economic, you must determine the amount of past losses, that is, losses suffered up until the time of trial, as well as future losses, that is, those likely to be incurred over Mr.

Pouliot's remaining life expectancy.    The general rule on damages is that Mr.

Pouliot is entitled to get fair and just compensation for the injuries he has

suffered.   There is no fixed rule which you can apply.  You have to apply sound,

common sense in reaching the amount of your verdict.

XXVI.        DAMAGES:  ECONOMIC DAMAGES

Economic damages are medical and earnings losses suffered or to be suffered by Mr. Pouliot. A plaintiff is entitled to be compensated for all these costs in the past and the future which are the result of the injuries suffered in the incident, including but not limited to, the cost of reasonable and necessary medical care, equipment, drugs, support care, attendant care, and lost earnings and lost earning capacity in the future. If you find in favor of Mr. Pouliot, you must award damages for these types of losses, if you find that the losses have been proven by a preponderance of the evidence.

Although Mr. Pouliot bears the burden of proving damages he has incurred or will incur, you should presume that the amount of any expense he has proven is reasonable unless you find that this amount is unreasonable on the basis of all the other evidence that you have heard. If you find that some or all of the medical expenses sought by Mr. Pouliot are not reasonably necessary or are not related to the incident, then you are not to compensate for the amount of such expenses.

XXVII.        DAMAGES:  NON-ECONOMIC DAMAGES: GENERALLY

You must also compensate Mr. Pouliot for any non-economic losses and harms he has sustained. That is, if you find that Mr. Pouliot has been proven by a fair preponderance of the evidence all of his claims against the defendant, you must compensate him for all of this type of damage that he has suffered or will suffer to his person. In other words, you must compensate him for loss of function and disability, impairment or loss of ability to enjoy life's activities, mental suffering, inconvenience, and physical pain that he has proven that he has suffered in the past or will likely suffer in the future. In this case, money is the measure for these losses. It is for you, in the exercise of your best judgment, to say what is fair and just compensation for all of his losses past and future, and he must be compensated with money for all of the non-economic harms and losses, past and future, which he proves by a preponderance of the evidence.

It is for you, in the exercise of your best judgment, to say what is fair and just compensation insofar as money will compensate for any injury that Mr. Pouliot has suffered.  The same is true of future non-economic damages.  You must, as best you can in your honest judgment, compensate Mr. Pouliot for such damages as are reasonably probable.

XXVIII.     DAMAGES:  NON-ECONOMIC DAMAGES: TYPES OF NON-
            ECONOMIC DAMAGES

In this case, all  loss of function and disability, impairment or loss of ability to

enjoy life's activities, mental suffering, inconvenience, and physical pain that Mr.

Pouliot has suffered or will suffer in the future may be compensated. Factors to be

considered, if proven, are the incident itself; hospitalizations; limitations in his

activities of daily living; medical care and hospitalizations he has undergone or

may require in the future; the daily inconvenience of treating his disabilities; the

physical pain that he suffers, any activities that he can no longer enjoy or is limited

in because of the incident; losses of relationships; sexual function; any shortened

life expectancy caused by the incident; any fear or mental anguish that he has or

will endure; and, any other injury you find proven to Mr. Pouliot's function as a

person.

Determining the amount of these losses must be done in terms of money.

This is the only measure of justice that the law can provide. While difficult, it is

your responsibility to fairly and justly compensate for all of these losses if you find

that they have been proven by a preponderance of the evidence. You will

determine the extent, intensity, duration and character of these types of losses.

You will make an award which in your good judgment you deem fair and

reasonable to compensate him for the non-economic damages that you find he

has endured and for that you find he will continue to endure.   In assessing

damages, you must consider all of the evidence that you have heard and apply your life's experiences and judgment in evaluating the extent of these losses.

XXIX.     LIFE EXPECTANCY

It is up to you to make a finding as to Mr. Pouliot's life expectancy for the purpose of calculating any future damages, considering all the evidence on the issue. Among the evidence to be considered in this regard is a method of estimating average life expectancy through the use of what are called "mortality tables." These are actuarial tables containing statistical averages of life expectancies of all American persons of certain ages, races and genders.

No one can predict with certainty whether a particular person will live until the average age specified for those in his category on a mortality table. He may die before the average age, or live beyond it. But you may consider this average, together with any evidence presented as to Mr. Pouliot's physical condition or as to other methods for predicting life expectancy, in estimating his personal life expectancy.

XXX.  DAMAGES: NOT SPECULATION, GUESSWORK OR SYMPATHY

With regard to the determination of damages, you must not speculate or guess.  You must bear in mind at all times that the burden is on Mr. Pouliot to prove that any claimed element of damage was a proximate consequence or result of the incident, as well as to prove the reasonable amount of any damages with respect to any such element.

Also remember that your decision cannot be based on sympathy. Sympathy can play no part in your decision.  Sympathy, bias, or prejudice for or against any party should not have any influence upon you in reaching your verdict.

XXXI.        CONSIDERATION OF PAYMENTS FROM OTHER SOURCES

The law does not permit a jury to know whether Mr. Pouliot's bills were paid by someone else or not.  You should know that there are procedures that I handle after the verdict to ensure that there is no double recovery to the extent any bills were so paid by someone other than Mr. Pouliot.  You should not consider this issue at all.  If you award damages, you should know that I will make the necessary adjustments, if any, under the law.

XXXII.     PRESENT VALUE OF FUTURE DAMAGES

You have heard some testimony from expert witnesses who have discussed ways in which you might adjust your estimation of damages to account for certain economic factors such as inflation (that is, the idea that a service that costs a dollar today will cost more in the future) and the time value of money (that is, the idea that one dollar received today is worth more than the right to receive a dollar in the future).  As I mentioned before, you should weigh the experts' testimony just as you will weigh other evidence.  You are permitted to take economic factors into account in calculating a damage award, but you are not required  to make any particular adjustments or to credit any witness's testimony regarding the present value of a future award.

XXXIII.        DAMAGES: AMOUNTS SUGGESTED BY ATTORNEYS

In closing argument, counsel suggested some formulas or amounts that might figure in your verdict.  I caution you that any sums or mathematical formulas suggested by a lawyer in this case are not evidence but only argument:  the determination of the amount of damages to be awarded, if any, is solely the jury's function.

XXXIV.     NOTE TAKING

I have now concluded the instructions relating to the specific claims in this case.  In closing, I must add a few general instructions concerning your deliberations.  You were permitted to take notes during the course of the trial.  Any notes you have taken should be used only as memory aids; do not give your notes precedence over your independent recollection of the evidence.  If you did not take notes, you should rely on your own recollection of the proceedings and should not be influenced by the notes of other jurors.

XXXV.    CLOSING REMARKS

Let me now say a few words about your deliberations.

First, keep in mind that nothing I have said in these instructions—indeed, nothing I have said or done during this trial—is intended to suggest to you in any way what I think your verdict should be.  That is entirely for you to decide.

When you retire to the jury room, it is your duty to discuss the case with your fellow jurors for the purpose of reaching agreement if you can do so.  Each of you must decide the case for yourself, but you should do so only after considering all the evidence, listening to the views of your fellow jurors, and discussing the case fully with the other jurors.

It is important that you reach a verdict if you can do so conscientiously.  You should not hesitate to reconsider your own opinions from time to time and to change them if you are convinced that they are wrong.  However, do not surrender an honest conviction as to the weight and effect of the evidence simply to arrive at a verdict.

Remember that your verdict must be unanimous.  If you take a vote during deliberations and you are not unanimous, then you have not reached a final decision one way or another and should continue to deliberate.

Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, not on anything else.  Closing arguments, or other statements or arguments of counsel, are not evidence.  If your

recollection differs from the way counsel has stated the facts, then your recollection controls.

Remember at all times that you are not partisan. Rather, you are the judges of the facts, and your sole interest is to seek the truth from the evidence in this case.

The instructions that I gave you at the beginning of the case about outside factors apply during your deliberations. Do not discuss this case with anyone outside the jury deliberation room, even with your fellow jurors. Also, do not read or listen to any outside information about the case during your deliberations. And do not try to do any research or make any investigation. And, of course, continue to refrain from speaking to the parties, their attorneys, the witnesses, and me.

Upon retiring to the jury room you should first elect one among you to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court.

A verdict form has been prepared for your convenience. The verdict form is made up of questions concerning the important issues in this case. The verdict form is not evidence in this case, nor should you view it as supplementing or modifying in any way my instructions to you on the law. Your answers must reflect the conscientious judgment of each juror and must be unanimous. The verdict form includes instructions to guide you in filling it out and follows the order of these instructions. You should answer every question, except where the verdict form

indicates otherwise.  I suggest that you start at the beginning, and work your way through, following the instructions carefully.

You will take the verdict form to the jury room and answer the questions asked.  When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, and then date and sign the verdict form.  Then inform the court security officer that you have reached a verdict.  I stress that each of you must be in agreement with the verdict as contained in the verdict form and announced in court.  Your verdict must be unanimous.

You are about to go into the jury room to begin your deliberations.  Please wait to begin deliberations until the deputy clerk brings the verdict form and exhibits in to you.  It will take a few minutes to gather the exhibits.  If you want any of the testimony read back to you, you must request that.  Please remember that it is not always easy to locate what you might want.  It can take a long time to find it, so please consider that.  If you feel you really need testimony read back, be as specific as possible in your request.  Any communication with the court should be made to me in writing, signed by your foreperson, and given to the court security officer seated outside the jury room.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may, if you can, continue your deliberations while waiting for the answer to any question.  I will respond to your request as promptly as possible either in writing or by having you return to the  courtroom so that I can address you orally.

I must also caution you that, in your communications with the court, you should never indicate in any way how the jury stands, numerically or otherwise. Never disclose any vote count in any note to the court.

It is proper to add a final caution.

Nothing that I have said in these instructions—and nothing that I have said or done during the trial has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

This completes my instruction to you. Thank you for your service so far and thank you in advance for your careful and thoughtful deliberations.