UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) 3:02 CV 1302(JCH) |
| | ) |
| PAUL ARPIN VAN LINES, INC., ET AL. | ) FEBRUARY 17, 2006 |

## MEMORANDUM IN OPPOSITION TO MOTION FOR NEW TRIAL AND FOR JUDGMENT AS A MATTER OF LAW

The plaintiff files this consolidated memorandum of law in opposition to the Arpin defendants' motion for a new trial under Fed. R. Civ. P. 59 and motion for judgment as a matter of law under Fed. R. Civ. P. 50. The court should deny both motions based on its prior rulings and the jury's verdict.

### I.    Summary of Objection

The defendants make several claims in the motion for a new trial. First, they claim that the trial court should have bifurcated the trial. Bifurcation, however, is an issue solely within the trial court's sound discretion, and the defendant cites not a single case where a trial court was reversed for deciding not to bifurcate liability and damages. Any error would clearly be harmless.

Second, the defendants argue that a curative instruction should have been given related to the Federal Motor Carrier Safety Act. The challenge is baseless. The jury charge was very clear that liability was based upon common law negligence, not upon the violation of any statute. Moreover, not only did the defendants fail to object to Dr. Ruhl's single reference to the regulations, Arpin's own management team and expert witness repeatedly indicated that the defendants were required to "systematically inspect, repair and maintain their

equipment." These statements were made without reference to any federal regulation requiring that conduct. Thus, there was no error and even if there were it was harmless.

Third, the defendants again claim error in the court's refusal to give a curative instruction. This time they claim that a "golden rule" argument by counsel during closing statements required a cautionary instruction. In fact, the Court did give a cautionary charge about not being bound by arguments of counsel relating to damages. Most significantly, the challenged argument was not a golden rule argument, and even if it were the defendants never asserted a timely objection to it.

Next, Arpin complains about the admission of Dr. Cremer's examination of the plaintiff during a video deposition. The court noted, however, on the record, that this examination was highly probative, and that any prejudice was mitigated by Dr. Cremer and the plaintiff's extremely professional demeanor during the exam. The admission of this exam was well within the court's discretion.

Further, the defendants claim that there was insufficient evidence to support the jury's verdict on apportionment. At no time, however, did the defendants ever ask for a directed verdict on the liability of the apportionment parties, so the argument has not been preserved. Moreover, there was ample evidence for the jury's verdict and disposition of the case as to all parties.

Finally, the defendants argue that the verdict was excessive. The damage evidence and other comparable cases amply demonstrate that the verdict was well within a range of reason, and certainly does not shock the conscience.

2

Moreover, the conduct of the jury in laboring over its unanimous verdict on liability and damages for some 17-18 hours demonstrates that it was not the product of bias, sympathy or corruption. Additionally, even where the court adds into the equation the settlements obtained from the apportionment defendants, no reduction of the verdict is required.

With respect to the motion for judgment as a matter of law, under Fed. R. Civ. P. 50,[1] on the issues of workers' compensation immunity and waiver of claim, the plaintiff reasserts the arguments set forth in response to the defendants' motion for summary judgment and relies on this court's Ruling thereon.

## II.  Legal Standard

"A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Densberger v. United Technologies Corp., 125 F.Supp.2d 585, 597 (D.Conn. 2000), aff'd, 297 F.3d 66 (2d Cir. 2002), cert. denied, 537 U.S. 1147 (2003). "Rulings on motions under [Rule 59(a)] are committed to the sound discretion of the District Court." Id.

In LiButti v. United States, 178 F.3d 114, 118-19 (2d Cir. 1999), the Court set forth an alternative test for deciding a motion for a new trial under Rule 59(a):

> Rule 61 sets out a workable test for when to grant a new trial, counseling that no error is ground for granting a new trial "unless refusal to take such action appears to the court inconsistent with substantial justice."

---

[1] The plaintiff agrees to a voluntary dismissal, under Fed. R. Civ. P. 41, of the recklessness claim that this court ruled had survived the defendants' motion for summary judgment. See Pouliot v. Arpin Van Lines, Inc., 367 F.Supp.2d. 267, 272-73 (D.Conn. 2005).

> Fed. R. Civ. P. 61. That is to say, a trial court should be most reluctant to set aside that which it has previously decided unless convinced that it was based on a mistake of fact or clear error of law, or that refusal to revisit the earlier decision would work a manifest injustice.... [citation omitted] Certainly, the trial court should not grant a new trial simply because, like the proverbial second bite at the apple, the losing party believes it can present a better case if afforded another chance.

As this court ruled in Densberger, while the trial court is free to weigh the evidence itself, "where the resolution of the issues depended on assessment of the credibility of witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." Densberger 125 F.Supp.2d at 599. The court should follow that precedent here.

### III.  There is No Basis for Requiring a New Trial

The court should deny, in its entirety, the defendants' baseless motion for a new trial under Fed. R. Civ. P. 59.

#### A.  *The Court's refusal to bifurcate is not a proper basis for a new trial.*

The decision to bifurcate liability and damages is soundly within this Court's discretion. Moreover, there is no case cited by defendants, or located by the plaintiff, wherein a trial court is reversed for failing to bifurcate a trial. Thus, at most, any error in that regard must be characterized as harmless under Fed. R. Civ. P. 61.

In the present case, the Court refused to bifurcate reasoning that the jury would see the extent of the plaintiff's injuries even if liability was separated out, and because it would result in cumulative testimony. The usual excuse for bifurcation is that the length of trial will be substantially curtailed saving judicial resources were bifurcation allowed. In this case, however, the parties presented

4

a streamlined case that was substantially shorter than originally projected. Bifurcation is a matter of discretion that should not be disturbed. See, e.g., Getty Petroleum Corp. v. Island Transportation Corp., 862 F.2d 10, 15 (2d Cir. 1988) ("Whether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court." Refusal to bifurcate trial affirmed where claim was that defendant's wealth prejudiced jury), cert. denied, 490 U.S. 1006 (1989); Barry v. Quality Steel Products, 263 Conn. 424, 448-49 (2003) (affirming denial of motion to bifurcate in product liability case where trial took several weeks). There is nothing to suggest that the failure to bifurcate changed the result of the case, especially in light of the jury spending many hours deliberating liability.

### B.  It was entirely proper to refuse to give a specific curative instruction concerning the Federal Motor Carrier Act.

The defendants argue that this Court should have given a curative instruction related to the inapplicability of the Federal Motor Carrier Safety Administration regulations (FMSCA), and that the failure to give this instruction entitles them to a new trial.

The only mention, however, of the FMSCA regulations occurred during Dr. Ruhl's testimony where he noted that the regulations require that a motor carrier systematically inspect, maintain and repair their equipment. The defendant did not object to that testimony when given. As such, there was no opportunity for the plaintiff or the Court to rectify any "error" at that time. The defendants waived any objection to the admission of the evidence. Fed. R. Evid. 103(a)(1) ; Jacquin v. Stenzil, 886 F.2d 506, 508 (2d Cir. 1989) ("Specificity in an evidentiary

5

objection is . . . required in federal courts to preserve an issue for appeal."); see United States v. Perez, 2003 U.S.Dist. LEXIS 15968, at *5 (D.Conn. 2003) (Arterton, D.J.) (no objection to inadmissible character evidence and appropriate time for curative instruction had passed thus new trial denied). Moreover, the defendant's failure to object implies that this issue was not one of any substantial significance. "[M]ost of the remarks were not even the subject of objections at the time of trial . . . a telling fact not only because it constitutes waiver for most purposes but also because it evidences how immaterial defense counsel actually perceived most of the alleged improper comments to be at the time they were uttered." Martin v. Town of Westport, 2005 U.S. Dist. LEXIS 125, at *7 (D.Conn 2005) (Kravitz, D.J.).

The request for a curative instruction came only after this Court decided not to charge on the FMSCA regulations as had been initially requested by both the plaintiff and defendant. The net effect of this decision was that negligence per se would not be charged to the jury. As such, the jury was only charged with regard to common law negligence.

In relation to common law negligence, the defendant's own witnesses including Michael Montgomery, Joseph Roche, and Paul Herbert had all testified unequivocally that the defendant had an obligation to "systematically inspect, repair and maintain their equipment" including the liftgate. In fact, not one witness at trial disagreed that this was the standard and duty of the defendant. Given this complete lack of disagreement over the defendant's duty, and their failure to object to Dr. Ruhl's testimony, it is hard to imagine how the defendant

6

was prejudiced in any way by the failure of this Court to give a curative instruction. Without prejudice any error would be harmless. Fed. R. Civ. P. 61.

The only case cited by the defendant on this issue is the Fifth Circuit's Bode Decision which is completely distinguishable. In that case, the district court failed to charge on the elements of recoverable damages, and instead simply issued a "terse" two sentence charge indicating the jury could award monies for any emotional distress. The court provided no guidance on what constituted recoverable emotional distress damages, and therefore called for a new trial on that element of damages. In the present case, this Court gave an extensive charge on common law negligence and the only claims that could be considered. There was no negligence claim relating to the FMCSA regulation, nor was there a negligence per se charge, in any form, given. The jury, then, could only find the defendant liable under one of the four specific common law negligence claims. Given this charge, the jury clearly understood that violation of the regulations was not one of the claims of negligence that could be considered. The jury is presumed to have followed the court's instructions. Richardson v. Marsh, 481 U.S. 200, 208 (1987); United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993). An additional curative charge was unnecessary and probably would have caused jury confusion especially in light of the fact that no negligence per se charge had been given. The jury is presumed to follow the charge.

Finally, Rule 61 of the Federal Rules of Civil Procedure defines harmless error: "No error . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court .

7

. . must disregard any error or defect . . which does not affect the substantial rights of the parties." The Second Circuit has stated "we have come a long way from the time when all trial error was presumed prejudicial . . . . The harmless error rules . . . embody the principle that courts should . . . ignore errors that do not affect the substantial fairness of the trial. This means that 'if when all is said and done the conclusion is such that error did not influence the jury, or had but a very slight effect the verdict and judgment should stand'. Kotteakos v. United States, 328 U.S. 750 (1946)." Bonner v. Guccione, 178 F.3d 581, 591-92 (2d. Cir. 1999).

      Dr. Ruhl's one time, un-objected to, reference to the regulations played an insignificant part in the dozens of hours of testimony heard by the jury. Moreover, the nature of the defendants' duty to maintain and repair was not an issue in contention. At no time did the defendants argue that they did not have this duty. Rather, the issue in serious dispute was whether the liftgate was in safe operating condition or not. This was the issue that both parties argued vociferously, not whether the defendants did or did not have a duty in the first place. So while the plaintiff believes that there was no error, even if there was, it would be a huge stretch to suggest that the defendants were substantially prejudiced.

### C. There was no "golden rule" argument requiring a curative instruction and the court's instructions properly directed the jury to not consider counsel's arguments as evidence.

The defendants also claim that the trial court should have given a curative instruction related to plaintiff's counsel's purported "golden rule" argument,[2] and that the failure to do so is now cause for a new trial. Their sole objection now is that no curative instruction was given. It is notable that no objection was lodged against counsel's argument at the time it was given.

Notwithstanding the above untimely assertion of error, this Court gave extensive charges relating to how argument of counsel relating to damage calculations was not evidence and that determining damages was solely within the province of the jury. Moreover, at both the beginning and end of the case, this Court told the jury that their verdict was to be rational and objective, and not based on sympathy, prejudice or bias. This Court also instructed the jury on all of the elements that could be considered in relation to non-economic damages.

Hence, to the extent that a curative instruction was necessary, it was given based on the court's repeated admonitions to base the decision on the evidence. As stated earlier, it is presumed that the jury followed these instructions. Richardson, 481 U.S. at 208; United States v. Castano, 999 F.2d at 618.

---

[2] This court ruled in the first instance that counsel's argument was not an improper invocation of the "golden rule" or "bag of gold" rule citing Judge Conner's decision in Marcoux v. Farm Serv. & Supplies, Inc., 290 F.Supp.2d 457, 463-64 (S.D.N.Y. 2003). The plaintiff fully agrees with the court's prior ruling based on Marcoux.

9

In <u>Johnson v. Celotex</u>, 899 F.2d 1281, 1289 (2d Cir. 1990), the Court expressly addressed the type of instruction that could overcome even an improper golden rule argument: "Throughout the normal course of the trial and in his final charge, the trial judge instructed the jury to decide the case in a rational manner based on the evidence presented and not on emotions, sympathy, prejudice, or bias." This was exactly the type of charge repeated by this Court on several occasions. Thus, any failure to give the defendants' charge would be harmless and not a basis for a new trial. Fed. R. Civ. P. 61.

Further, the <u>Johnson</u> Court noted that remarks of counsel had to be looked at in the context of the entire trial and summation, and that "[g]reat discretion is to be given the judge who was present throughout the trial and is best able to determine the effect of the conduct of counsel on the jury." 899 F.2d at 1289. In the present matter, the jury deliberated over the better part of 18 hours and spent a great deal of that time painstakingly reviewing all of the liability and damage evidence. Furthermore, at no point in time did plaintiff's counsel make inflammatory or over the top emotional appeals for sympathy, or punishment. Any argument related to damages was rather an attempt to give the jury a more analytical method for making difficult intangible non-economic damage determinations. Imagining that Shawn Pouliot's disabilities amounted to a job is not the same as asking the jury to award Shawn what they themselves would want to be awarded if they were the victim.

Finally, there is no evidence that this argument substantially prejudiced the defendant, and warrants a new trial. As set forth above, Fed. R. Civ. P. 61

10

requires that the "error" effect the "substantial rights" of the defendant. The extensive deliberations and reasoned damages verdict demonstrate that this argument, even if improper, did not prejudice in any substantial way the defendant's rights. If the jury adopted any of counsel's arguments, it is most likely that they decided that non-economic damages be a multiple of the economic damages awarded. In this case, the non-economic damages equal roughly three times the economic damages—not an excessive multiple, and one that is commonly used in determining settlement values of personal injury cases. There was no harmful error on this point.

### D. The admission of Dr. Cremer's examination was well within this court's discretion.

Next the defendants contend that the admission of Dr. Cremer's examination of the plaintiff demands a new trial. The defendant, however, cannot cite to one case where a court determined that such an examination was improper or that the showing of such an examination resulted in reversible error. The court has substantial discretion in admitting the evidence under Fed. R. Civ. P. 403. See Dawes v. VanBenschoten, 21 Fed. Appx. 29, 30 (2d Cir. 2001) ("We review evidentiary decisions for abuse of discretion, granting the district court wide deference. Nora Beverages, Inc. v. Perrier Group of Am., 269 F.3d 114, 2001 U.S. App. LEXIS 19003, 2001 WL 958057, at *9 (2d Cir. 2001). Rule 403 does not proscribe admission of all prejudicial evidence, just evidence that is more prejudicial than probative."). In fact, case law going back over a century suggests such examinations are entirely proper. The New York Court of Appeals, for exampled, ruled, in the case of Mulhaldo v. Brooklyn C.R. Co., 30

11

N.Y. 370, 372 (1864), concerning an in court examination of the injured plaintiff as follows:

> There is no force in the exception that the physician called to describe the injury to the plaintiff's arm should not have exhibited to him, in the presence of the jury, the arm so injured. Such exhibition certainly tended to make the description of the injury more intelligible, and it cannot be supposed that it could have had any undue influence upon the feelings or sympathies of the jury. As well might it be contended that a man who had lost an arm or a leg, by a similar injury, should not be permitted to appear before a jury to testify in relation to it, lest thereby their feelings might be influenced, and under the undue excitement created thereby they might do injustice. We cannot assume that any such consequences will follow such a course of examination; and we can not perceive that it was objectionable in the present instance.

The decision to allow this examination occurred after this Court examined the videotape and made a finding that its relevance far outweighed any prejudicial effect. This is exactly the type of analysis required by Rule 403 of the Federal Rules of Evidence. There is no basis for upsetting the verdict.

### E. The jury's verdict on apportionment cannot be disturbed.

The defendants challenge the jury's verdict related to apportionment, and asks for a new trial on this basis. Their only substantive claim is that the jury should have apportioned some negligence to the plaintiff because there was some testimony related to a loading dock at the delivery site.

First and foremost, the defendant has not preserved this argument on appeal. Rule 50(a) requires that "[t]o make a sufficiency argument on appeal, a party must have challenged the sufficiency of the evidence to support the particular element in question before the jury retires." Kirsch v. Fleet, 148 F.3d 149,164 (2d Cir. 1998). In this case, the defendants never moved for a directed

12

verdict on their comparative negligence claim, and as such cannot now challenge the jury's verdict.

Furthermore, the only facts cited by the defendants as establishing the plaintiff's negligence do not support a finding that the plaintiff was negligent as a matter of law. Putting aside credibility issues which could have led the jury to completely ignore the testimony of the single witness who testified about a loading dock, the jury had ample other evidence to conclude use of the loading dock was inappropriate including: 1) evidence from the shipment booking order that no loading dock was available and that an inside delivery was required; 2) that Shawn could not locate an available dock; 3) no direct evidence that the loading dock was in fact available on the date of the incident; and 4) the fact that Shawn was working with high level employees from the college who directed him to deliver the work station to the area in question. Certainly reasonable people could disagree as to whether the plaintiff was negligent or not in failing to use the loading dock. Given that it was a genuine issue of material fact, the plaintiff cannot be held liable as a matter of law. Fox v. Town of Glastonbury, 20 Conn. 204 (1860). The Second Circuit has repeatedly cautioned that, in ruling on a motion like that urged here, "[t]he court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." Kirsch, 148 F.3d at 164. A jury verdict should be set aside only where there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the

movant that reasonable and fair minded men could not arrive at a verdict against him.'" Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992) (omission in original) (quoting Mattivi v. S. African Marine Corp., 618 F.2d 163, 168 (2d Cir. 1980)). In this case it is clear that the evidence supported the jury's verdict. The judgment must stand.

### F. The jury's verdict on damages is proper and should not be disturbed.

The defendants challenge the damage verdict on several bases. First they claim that the jury did not properly discount future economic damages to present value. In particular, they argue that the jury was somehow compelled to adopt their expert McCausland's methodology on determining present value. The Supreme Court, however, has cautioned that the decision on how to discount (if at all) is up to the trier of fact and that "the average accident trial should not be converted into a graduate seminar on economic forecasting." Monessen Co. v. Morgan, 486 U.S. 330, 341-42 (1988). The Second Circuit has ruled specifically that there is no hard and fast method for discounting – in many cases no discount at all is appropriate - and that the decision is one for the trier of fact based on the evidence. See O'Rourke v. Eastern Airlines, Inc., 730 F.2d 842, 857-58 (2d Cir. 1984) (approving use of total off-set method based on evidence presented at trial).

This Court charged the jury that it was their job, not an expert's job, to determine present value and consider the interest that could be earned on a lump sum award, as well as the impact of inflation on the cost of future needs in making their future economic damages award. The defendant did not object to

14

this charge or request a charge mandating a particular method. As such any claim at this point that a given methodology was required has been waived. See Fed. R. Evid 103. Moreover, ordering the jury to utilize a specific method would be an improper invasion of the jury's function. Monessen Co., 486 U.S. at 341; O'Rourke, 730 F.2d at 857-58.

Moreover, the evidence on the record as adduced from McCausland was clear that the rate of return on a 90 day T-bill was less than the inflationary impact on prices, so that medical inflation often outstripped what one could earn in the safest of investments—sometimes by as much as 3-5% per annum.[3] McCausland testified that there were inflation adjusted treasury products that paid 2% on top of the general inflation rate, but then was forced to admit that the medical inflation rate was historically always much higher than the general inflation rate. McCausland then admitted that if inflation outstripped the savings rate by 1% per annum, another $880,000 would be necessary today to meet the needs set forth in Mr. Forman's life care plan. Conversely, if the savings rate was 1% higher than inflation, $880,000 less would be needed.

It is difficult to determine exactly how the jury calculated its future economic award since no interrogatories were requested, but the award can certainly be justified by looking at the evidence presented. The jury awarded $5,313,276. This presumptively includes future lost earnings testified to by Dr. Gamboa and future life care needs testified to by Lawrence Forman. Dr.

---

[3] "The discount rate should be based on the rate of investment that would be earned on the best and safest investments." Jones & Laughlin v. Pfeifer, 462 U.S. 523, 538 (1983).

15