Gamboa testified that he used $62,500 as the likely average annual earnings for
Shawn Pouliot. After doing a present value calculation, this amounted to
$1,738,530. At least 4 years of this amount would be deducted for past
economic loss ($250,000) leaving $1,488,530 for future economic damages. The
jury was not, however, limited to awarding amounts suggested by Gamboa.
They could have projected much higher lost earnings based on evidence of
actual earnings ($75,000 a year) or based on his desire to build a trucking
company. If Gamboa's numbers are raised by just $12,500 a year, this would
add another $375,000 to future lost earnings and $60,000 to the past.

Larry Forman testified that the total life care plan cost $4,084,423.57 and
that another $390,712 would be needed to cover the plaintiff through age 77. If
the jury believed that the inflation costs equaled the savings rate, the present
value of the future life care needs would be $4,475,135.50. Adding the lost
earning capacity to this life care plan, the total future economic damages could
have been as high as $5,963,665.50--much greater than the amount actually
awarded.

Next the defendants attacks past economic damages awarded of
$993,100. Again no interrogatories were requested so it is difficult to determine
how the jury allocated the funds and this award must be viewed in the light most
favorable to sustaining it. See Densberger, 125 F.Supp.2d at 602. Regardless,
the amount can be justified by the evidence. Dr. Gamboa testified about lost
earnings, and it was within the jury's power to award an annual amount greater
or less than this amount. Based on Gamboa's statistical average, Shawn lost at

16

least $62,500 a year for 4.3 years ($268,750). Based on actual pre-accident earnings this amount could rise to ($322,500), and if the jury credited all of the testimony related to Shawn's extraordinary work ethic and desire to build a business, the number could be much higher---perhaps $120,000 a year ($516,000).

In addition to testifying about a future life care plan, Larry Forman testified about Shawn's needs generally since the time of the accident, and how he had already purchased a van, a bed, and made improvements to make his home accessible. In addition, Shawn's family testified about the round the clock attendant and child care they had personally provided. If the jury credited this testimony, they could easily have awarded an amount equivalent to 4.3 years times the average yearly amount of the life care plan (116, 697.80 x 4.3 equals $501,800). This in conjunction with the one time expenditures for vans, beds, home accessories, as well as the acute and sub acute periods following the accident certainly justifies the total amount awarded for past economic damages. Even if the jury's award seems generous it should not be disturbed. Densberger, 125 F.Supp.2d at 601-02.

Additionally, the defendants claim that the non-economic damages verdict "shocks the conscience" and should be reduced. In determining whether the jury's verdict is reasonably supported by the evidence, the evidence before the jury must be viewed in the light most favorable to the plaintiff. Milligan v. Gundeck, 2005 WL 1971320, at *1 (Conn. Super. Jun. 30, 2005) (Alander, J.). "The court's determination that the jury exercised poor judgment or that the court

17

would have ruled differently is an insufficient basis for ordering a remittitur. . . . The court's proper function is to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict." (Citation omitted; internal quotation marks omitted). Id.

The amount of an award is a matter uniquely and peculiarly within the province of the trier of fact. Angelica v. Fernandes, 174 Conn. 534, 535 (1978); Johnson v. Flammia, 169 Conn. 491, 499 (1975). As such, the Court must not "interfere with the jury's determination except when the verdict is plainly excessive or exorbitant." Pisel v. Stamford Hospital, 180 Conn. 314, 342-43 (1980). This is because "litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded." Ham v. Greene, 248 Conn. 508, 536 (1999); see Densberger, 125 F.Supp.2d at 600 ("the amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. "The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.").

The size of the verdict alone does not determine whether the verdict is excessive. Id. Rather, the test is whether the award "falls somewhere within the

18

necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to *compel* the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Emphasis added.). Id. In particular, as this court has noted, "[t]he award of damages for pain and suffering is peculiarly within the province of the trier, and will be sustained, even though generous, if it does not shock the sense of justice." Densberger, 125 F.Supp.2d at 600. Clearly here the jury carefully and deliberately attended to the evidence and rendered its constitutionally mandated verdict.

The jury awarded  $20,000,000 in noneconomic damages to Mr. Pouliot. As the Connecticut Supreme Court astutely observed in Pisel v. Stamford Hospital, 180 Conn. 314, 344 (1980), "[w]hile the amount of the verdict is substantial, in a relative sense it is no more substantial than the plaintiff's injury." The Pisel Court's observation is premised on the inherent inability to assess noneconomic damages with mathematical computation, in that such damages "defy exactitude."    A damages award, therefore, is always fact intensive, and necessarily requires a case-by-case examination of the evidence.

The jury reached its verdict for noneconomic damages on the basis of the substantial evidence of Mr. Pouliot's pain and suffering (harms and losses), as well as his 92% whole person disability and loss of enjoyment of life's activities. Although these phrases have devolved, to some extent, into mere legal terms of art, the jury in this case was presented with palpable and extensive evidence of Mr. Pouliot's true *loss* of enjoyment of his life, and, perhaps even more striking in this case, the jury heard extensive and corroborated factual and medical

19

evidence of Mr. Pouliot's constant battle with pain and the suffering it has brought him. The jury reasonably reached its verdict on the basis of evidence properly presented to it at trial, and it must be upheld. See Campbell, 194 Conn. at 41; Goral v. Kenney, 26 Conn. App. 231, 240-41 (1991).

The jury heard testimony from Mr. Pouliot's physicians, including Dr. Mushaweh and Dr. Cremer, who explained the nature and extent of Mr. Pouliot's pain and noted that the pain is treated "badly," explaining that this type of pain is "very difficult to treat." The jury also heard Mr. Pouliot and his family's first-hand testimony describing his pain and suffering, including the pain he suffered following his bowel surgery and skin ulcers.

The jury also heard testimony about how Mr. Pouliot's life was totally and permanently changed as a result of the accident. There was testimony about how his wife left him, how he has had full custody of his children, how he cannot work, how when he has skin ulcers he must lie on his side for months and even at the time of trial, several years after the crushing injury, for the vast majority of the day.

The defendants argue that the jury's verdict, which was reached on the basis of the indisputable testimony regarding Mr. Pouliot's real and constant pain and his loss of enjoyment of life's activities, "should shock this Court's sense of justice." To the contrary, it is the defendants' request that this Court to set aside the jury's verdict and substitute its own "personal predilections as to what would be fair or appropriate"; Ham, 248 Conn. at 537; that truly should shock this Court's sense of justice. As this Court is well aware, whether it would have

awarded the same amount as the jury did is not the proper test of determining whether the verdict was excessive. See Campbell, 194 Conn. at 41.[4] Moreover, the fact that the amounts awarded were considerably higher than what Arpin anticipated "offers no reason to set them aside under our law." Streeter v. Executive Jet, Superior Court, Complex Litigation Docket at Waterbury, Doc. No. 02-179481, at 31 (Nov. 10, 2005, Sheedy, J.) (Exhibit A). Rather, this Court must review the evidence that was before the jury in the light most favorable to sustaining the verdict to determine whether that evidence reasonably supports the verdict reached in this case. Id., at 22; Campbell, 194 Conn. at 41.

Arpin asks this Court to remit the non-economic portion of the verdict on the ground that it is excessive when compared to verdicts reached in similar cases. At the outset, it must be recognized that each plaintiff, and each trial, is unique. Each trial presents a different universe of facts for the jury's consideration, and this Court must not substitute its own personal view in lieu of the jury's verdict solely on the ground that this jury may have awarded higher damages than another jury did in an entirely different case. See Wochek v. Foley, 193 Conn. 582, 587 (1984) ("[O]ther cases are not determinative of the proper amount of damages in this case, [although] they do offer some

---

[4] Our Supreme Court held: "The fact that the jury returns a verdict in excess of what the trial judge would have awarded does not alone establish that the verdict was excessive. In considering a motion to set aside the verdict as excessive, *the court should not act as the seventh juror with absolute veto power. Whether the court would have reached a different [result] is not in itself decisive. . . .* The court's proper function is to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict." (Citations omitted; emphasis added; internal quotation marks omitted.). Campbell, 194 Conn. at 41.

guidance"). If juries were so constrained, then it would serve little purpose to have a jury at all, and the plaintiff's constitutional right to have his factual issues decided by a jury would exist in name only.

It is only where the size of the verdict "so shocks the sense of justice as to *compel* the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption," (emphasis added) Ham, 248 Conn. at 536, that a remittitur should be granted. The Arpin defendants have not shown—and cannot colorably claim—that the jury in this case was influenced by any of these improper motives or factors, and the mere fact that the award was substantial cannot compel this Court to reach such a conclusion here. Rather, Judge Sheedy's observation in Streeter that, "[n]othing in the jurors' conduct throughout trial permits the conclusion they were other than thoughtful, fair-minded people who carefully considered the evidence . . . and the charge on the law," Streeter, supra, at 30-31, applies equally to this case.

In addition, the two cases the defendants proffers as useful comparisons are not factually similar to this case, and both were decided over a decade ago. The defendant's first purportedly comparable case is Gladstone v. Grinnan, 1995 WL 780887, at *9 (Conn. Super. Dec. 15, 1995) (Martin, J.). The plaintiff in Gladstone was a paraplegic, like Mr. Pouliot, but the economic damages awarded to her were substantially lower than Mr. Pouliot's—$1,600,000 as compared to $6.3 million. Id., at *8. The Gladstone defendants argued that because the noneconomic damages awarded were four times as much as the economic damages awarded—more than the same ratio present in this case—

22

they were excessive and should be remitted. Id., at *9. The Court rejected the

defendant's remittitur request in light of the evidence presented at trial of the

plaintiff's specific injuries and circumstances, concluding that the damages were

not unreasonable. Id. Notably, although the Court listed myriad physical injuries,

including paraplegia, it did not note that the plaintiff continued to suffer severe

*pain* on a constant basis, which does not affect all paraplegics, but does affect

Mr. Pouliot. Comparison with Gladstone does not support a remittitur of the non-

economic damages awarded here; if anything, it lends further credence to the

reasonableness of the jury's finding.[5]

The verdict reached by the jury in Milligan, supra, 2005 WL 1971320, a

wrongful death action wherein the court denied the defendant's motion for

remittitur as to the noneconomic damages awarded by the jury, id., at *3,

similarly supports the reasonableness of the jury's verdict in this case. The jury

in Milligan awarded $1.3 million in economic damages to the estate of the

decedent, and awarded $7.25 million in noneconomic damages to the estate—

approximately five and one-half times the amount of economic damages. Id., at

*2. The Court upheld the jury's award for noneconomic damages on the basis of

the evidence presented at trial, including evidence of the decedent's physical and

mental pain and suffering prior to his death. Id., at *3. So, too, should this Court

uphold the jury's award for non-economic damages to Mr. Pouliot. The jury's

economic damages award in this case was $6.3 million, significantly higher than

_____

⁵ In addition, it should be noted that the plaintiff in Gladstone suffered
from low self-esteem and psychological injuries, whereas Mr. Pouliot has not.
The presence of psychological injuries is far more likely to induce sympathy from
the jury and create the risk that an award will be granted on that improper basis.

in Milligan. As a result, the noneconomic damages award in this case was proportionally *lower* than the noneconomic damages award in Milligan. The noneconomic damages award in this case was reached on the basis of the evidence, and was not unreasonable.

Arpin also argues that the verdict in Mather, 207 Conn. at 125, supports its position. Mather was decided in 1988—eighteen years ago—on a general verdict. As such, it is nearly impossible to determine how the Mather jury's award in any way compares to the jury's award in this case, if at all. In addition, the facts and circumstances of this case are vastly different than in Mather. The plaintiff in Mather was a child who was injured at birth through medical malpractice, and Mr. Pouliot is a grown man with a wife that left him and custody of his children. Contrary to Arpin's argument, it is not necessarily true that a child plaintiff necessarily would receive a higher award of damages than an adult plaintiff. The jury is required to examine the unique damages suffered by the specific plaintiff in the case before it; one type of damage is not categorically worth more than another. The changes to Mr. Pouliot's life caused by the accident are difficult to quantify with mathematical precision, but it was uniquely within the province of the jury in this case to evaluate the evidence and compensate Mr. Pouliot accordingly in a fair, just and reasonable manner. Streeter, supra, at 22; Ham, 248 Conn. at 536. These factors negate any useful comparison with Mather.[6]

---

[6] Moreover, a $36,500,000. jury verdict that was awarded on November 23, 2005, in Cowles v. Doegler, Waterbury Superior Court, Docket No. CV-00-0168303-S (Matasavage, J.). Cowles was a medical malpractice action brought

The plaintiff urges the Court to examine instead a comparable verdict reached in November, 2005, in the Connecticut Superior Court, Pelletier v. Sordona (see Complaint and Verdict Form, attached as Exhibit B). In Pelletier, which involved a plaintiff who was rendered a paraplegic by the defendant's negligence, the jury awarded the plaintiff damages in the amount of more than $32,000,000. The jury in the instant case awarded Mr. Pouliot a lesser total amount of damages (even when the settlements with the apportionment defendants are concerned), even though Mr. Pelletier did not have flaccid paraplegia which makes the injury much more difficult to treat and endure.

This jury's verdict is also consistent with the verdict entered in Streeter, supra, which included awards of $17 million for loss of filial consortium and $10 million for emotional distress and other economic damages. See Verdict Form attached as Exhibit C. Although Streeter is distinguishable on its face, in that it involved a negligence claim against a private airline for aiding and abetting the abduction of the plaintiff's children, it is comparable in that the basis of the jury's award was non-economic and defied mathematical computation. The plaintiff in Streeter suffered the loss of her children's affection and endured severe emotional pain. Streeter, supra, at 22-23. The Court rejected the defendant's

---

by the parents of a child who was severely injured at birth, seeking damages on his behalf. The jury awarded the Cowles' $500,000 for past economic damages, $19.5 million for future economic damages and $16.5 million in noneconomic damages. There is no reason to believe that the plaintiff in Mather would not have received a reasonably similar verdict if the case had been tried in 2005 rather than 1988.

arguments that the jury's awards were duplicative, excessive, and punitive in nature, and denied the motion for remittitur, concluding:

> No reason presents for this court to substitute her judgment for that of the jury to whom the parties entrusted this unique case and thus to become the seventh juror. Where, as here, there was sufficient evidence for the jury to find as it did, the litigants' right to have factual issues determined by a jury is sufficient reason for this court not to tamper with its assessment of damages.

(Footnote omitted.). Id., at 32-33.

Accordingly, this Court should look to Pelletier, the most recent and most factually similar verdict awarded in Connecticut, to its reasoning employed in sustaining the verdict of noneconomic damages in Milligan, and to the guidance afforded in Streeter, in conjunction with the extensive and compelling evidence presented at trial all of Mr. Pouliots's injuries and losses—both economic and noneconomic—in considering Arpin's motion. In recognition of the heavy burden the defendants must meet in requesting this Court to set aside the jury's well-founded verdict and remit the jury's carefully considered award, which Arpin has failed to satisfy here, this Court must deny the defendants' motion for remittitur regarding non-economic damages.

The defendants also ask the Court to consider the settlement monies received by the plaintiff from the apportionment defendants. While it is true that these amounts can be added to the total verdict to determine whether the entire amount shocks the conscience, there is no automatic set off. See Imbrogno v. Chamberlain, 89 F.3d 87, 90 (2d. Cir 1996); see also Densberger, 125 F.Supp.2d. at 601. Adding another $1.3 million to the total verdict (less than 5%

of the gross) would not alter the arguments made above regarding the verdict being entirely reasonable and not "shocking" or excessive.  Moreover, the defendants attempted to reduce their percentage of liability by seeking apportionment.  Now having lost that battle, they want a reduction anyway. This seems unfair and inequitable, as well as cantary to law.  See Nash v. Yap, 247 Conn. 638, 652 (1999) (settlements with third parties under Tort Reform II are not collateral sources requiring a reduction of the verdict).

Finally, the defendants ask for a collateral source reduction. The jury's verdict, however, did not identify what items the jury was compensating the plaintiff for, and the defendants never asked for a more specific jury verdict form. As such, it is impossible to apply collateral source reductions. The Connecticut Supreme Court expressly ruled that unless the verdict form lists the economic items being compensated, there can be no collateral source reduction. Jones v. Kramer, 267 Conn. 336, 340 (2004).  Accordingly, the defendants failed to preserve their claim to any reduction.

## IV.    The motion for judgment as a matter of law is nothing but a rehashing of a prior decision of this court and must be denied.

This court previously held in its Ruling denying the defendants' motion for summary judgment that workers' compensation exclusivity did not bar plaintiff's claims since he was (as asserted by Arpin) an independent contractor[7] and the

---

[7] Arpin should also be barred by the principles of judicial estoppel from arguing another position.  The Arpin defendants specifically pleaded that Mr. Pouliot was an independent contractor, see Pouliot 367 F.Supp.2d at 272, and later changed their position to suit their litigation needs in an attempt to immunize themselves from their own negligence.  This disingenuous approach should be rejected.  See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (rejecting, on

independent contractor "waiver of claim" did not provide the Arpin defendants with immunity from suit.  <u>Pouliot v. Paul Arpin Van Lines, Inc.</u>, 367 F.Supp.2d 267, 272-74 (D.Conn. 2005).  The plaintiff incorporates his arguments in opposition to the motion for summary judgment and urges the court to rule, in accordance with its prior decision, <u>id.</u>, that Arpin's present motion is nothing more than a "second bite at the apple"; <u>Densberger</u>, 125 F.Supp.2d. at 579, which must be rejected.

## CONCLUSION

Based on the foregoing, and the evidence received at trial as well as the jury verdict compelled by the Seventh Amendment to the United States Constitution, the motion for a new trial should be denied as should the defendants' motion for judgment as a matter of law.

THE PLAINTIFF

By_____
Michael A. Stratton CT-08166
Joel T. Faxon CT-16255
STRATTON FAXON
59 Elm Street
New Haven, CT 06510
Tel:  (203) 624-9500
Fax: (203) 624-9100

judicial estoppel grounds, inconsistent positions taken by litigants to secure advantage in litigation to prejudice the opponent).

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent, via U.S. Mail,

postage prepaid, on this day to:

**Karen Frink Wolf, Esq.**
**Harold J. Friedman, Esq.**
Friedman, Gaythwaite, Wolf & Leavitt
Six City Center
P.O. Box 4726
Portland, ME 04112-4726

**Daniel Krisch**
Horton, Shields & Knox
90 Gillett Street
Hartford, CT 06105

**Thomas J. Grady, Esq.**
**Lenihan, Grady & Steele**
Six Canal Street
P.O. Box 541
Westerly, RI  02891

**Roland F. Moots, Esq.**
**Moots, Pellegrini, Mannion, Martindale & Dratch, PC**
46 Main Street
P.O. Box 1319
New Milford, CT  06776-1319

Michael A. Stratten