DOCKET NO. X01-02-0179481-S      :      SUPERIOR COURT

CORNELIA STREETER, on her own behalf    :      COMPLEX LITIGATION
and on behalf of her minor children H and V          DOCKET

V.                                     

                                          :      JUDICIAL    DISTRICT    OF
                                              WATERBURY

EXECUTIVE JET MANAGEMENT, INC.,
a/k/a AMERICAN AIR SERVICES, INC.,
ANWAR ERNEST ZAKI WISSA, JR., a/k/a    :      November 10, 2005
"NURI"

2005 NOV 10  A 10: 28

COMPLEX LITIGATION
400 GRAND ST
WATERBURY CT 06702

## MEMORANDUM OF DECISION RE: POST-VERDICT MOTIONS
### (#192.20; #197.30; #197.40; #209)

### Factual Background

       The centerpiece of this action is the kidnapping of two (2) minor children ("H" and "V") from

their Massachusetts home by their natural father, Anwar Wissa, Jr. via a flight from Bradley Airport

in this state to Cairo, Egypt. At the time of the abduction, the plaintiff-mother had primary physical

custody under valid and enforceable orders of the Probate and Family Court of the Commonwealth

of Massachusetts; the plaintiff and defendant Wissa then shared legal custody. Under the same

orders, defendant Wissa had regularly scheduled visitation to include overnights. The flight to Cairo

was on a privately chartered airliner operated by defendant Executive Jet Management (EJM) whose

employees or agents made the arrangements with Wissa on less than thirty (30) hours notice; they

flew the plane. The children were taken to Egypt without the mother's knowledge or consent on

August 23, 2001, and were not recovered until twenty-two (22) months later on June 25, 2003, in

Cuba. During their absence, the plaintiff was able to speak with them by telephone only irregularly

for the first two-four (2-4) months and thereafter had no contact with them until they were recovered.

Recovery efforts required the expenditure of millions of dollars for the services of lawyers (both here

and abroad), interpreters, investigative agencies, and for travel and accommodations for trips to

Egypt, Turkey, Cuba, New York, London, Houston, and Washington, D.C. as the mother explored every lead and as she pursued - and eventually obtained - sole custody of her children in an Egyptian court. The abduction of the children, then six (6) and seven (7) years of age, facilitated as the jury found it was by EJM, deprived the plaintiff-mother of the custodial rights she enjoyed under the Commonwealth's decree, caused her severe emotional distress and depression/anxiety for which she was medically treated, and the loss of her children's consortium as recognized by Massachusetts law.

At trial, she testified - and the jury believed - that she continued to fear her children will again be kidnapped and to worry that they may not in the future be able to cope with life's stresses and challenges or be able to form lasting, loving bonds with life partners. There was evidence that, during the separation period, the children were told their mother did not want to visit them and, when recovered in Cuba, they exhibited hostile and aggressive behavior toward her. Her son screamed at her, shouted obscenities, hit and kicked her, and ran to the other side of the room when he first saw her; he presented then as "wild-haired," "wild-eyed," "filthy," and "scrawny." Both children had been living on a boat for six (6) months and "showering" every other day with a garden hose. There was evidence also that the son now expresses anger toward his father and that the daughter continues to be afraid to go upstairs at home alone and has had academic problems as a result of memory losses. Both children continue regularly to be seen by therapists and other medical providers.

The case against EJM was tried to a jury from April 15 - April 26, 2005.[1] The jury found for the plaintiff-mother on all three (3) counts and returned verdicts as follows:

| | | |
|---|---|---|
| a) Count One: Interference With Custodial Relations | $ 10 mil. |
| b) Count Two:  Negligence | " Same" |

---

[1] The case against Wissa was tried to the court and that memorandum of decision is also published this date.

c) Count Three: Loss of Filial Consortium[2]          $ 17 mil.

       Total Verdict :          $ 27 mil.

### Post-Trial Motions

The parties filed three (3) separate post-trial motions (with supporting and supplemental briefs) as follows:

    a) Motion to Set Aside Verdict and For New Trial (#197.30);

    b) Motion to Set Aside the Verdict and For New Trial or Remittitur (#197.20);

    c) Motion to Set Aside Verdict and For Judgment Notwithstanding the Verdict (#197.40).

    d) Motion for Assessment of Prejudgment Interest (#209); and

    e) Setoff

Memoranda in opposition were filed as were Reply Memoranda with lengthy attachments to include documents, excerpts of trial testimony, affidavits, cases, etc. The court heard argument on August 3, 2005, and the parties subsequently filed supplemental memoranda.

### Motion to Set Aside Verdict and For New Trial (#197.30)

The trial court has the inherent power to set aside a jury verdict which is against the law or evidence. *O'Brien v. Seyer*, 183 Conn. 199, 208 (1981). It should not set aside a verdict where it is apparent that there was some evidence upon which the jury could reasonably have reached their conclusion but should not refuse to set it aside where the manifest injustice of that verdict is so plain as to clearly denote that some mistake was made in the application of legal principles or that the jury

---

    [2] Though this cause of action was originally asserted as Count Six of the Second Revised Complaint, it went to the jury as Count Three.

(or some of them) were influenced by prejudice, corruption, or partiality. *Howard v. MacDonald*, 270 Conn. 111, 126 (2004) (Citation omitted.). The right to a jury trial "is one obviously immovable limitation on the legal discretion of the court . . . since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." *Id.*, at 128 (Citation omitted.). "[I]f there is a reasonable basis in the evidence for the jury's verdict . . . , the trial court should let the jury work their will." *Business Alliance Capital Corp. v. Fuselier*, 88 Conn. App. 720, 731 (2005) (Citations omitted.). Only if the jury could not reasonably and legally have reached their conclusion should its verdict be set aside. *Cohen v. Yale-New Haven Hosp.*, 260 Conn. 747, 761 (2002). The conclusion merely that the jury exercised poor judgment is not a sufficient basis upon which to set the verdict aside. *Wochek v. Foley*, 193 Conn. 582, 587 (1984). In determining whether the jury's verdict is reasonably supported by the evidence, the evidence must be viewed in the light most favorable to the plaintiff. *Johnson v. Chaves*, 78 Conn. App. 342, 346 (2003).

The defendant has raised ten (10) grounds, many of which have been earlier raised either by way of a substantive motion which was fully briefed and adjudicated[3] or by way of discovery or pre-trial motions also briefed and decided. As to those stated grounds, the court has already articulated the basis of her opinions and, since no argument raised in this motion dictates a different result, there presents no reason to iterate what has already been articulated. With regard to the argument these causes of action are preempted by federal law, see Ruling and Order of Underhill, J. In Docket #02-CV-1003 (D. Conn., Dec. 5, 2002) and this court's Memorandum of Decision on Motion to Dismiss dated 11/3/03. In its post-trial motion, EJM bases this claim on the Airline Deregulation Act - not

---

[3] The defendant EJM removed this case to federal court, which court returned the matter to state court. It argued preemption - raised again here - before the federal court; the claim was there rejected. Thereafter, the defendant filed a Motion to Dismiss, a Motion to Strike, and a Motion for Summary Judgment; the court adjudicated each such motion and issued Memoranda of Decision.

argued earlier - and likens this case to fraud and breach of contract claims (neither of which is claimed here). While this court believes the argument under the ADA is abandoned, she is not persuaded the ADA intended to preempt common law state tort claims - particularly where as here there is no showing the assertion of the claims conflict with federal oversight or regulation of air travel. Further, most federal cases considering preemption clauses conclude they do not implicate the court's subject matter jurisdiction but are at best waivable affirmative defenses. See, e.g., *Saks v. Franklin Covey Co.*, 316 F. 3d 337 (2d Cir. 2003), which relied heavily upon the case the defendant here cites (*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992). A state claim whose relationship to an air carrier's service is "too tenuous, remote, or peripheral" does not have preemptive effect. *American Airlines, Inc. V. Wolens*, 513 U.S. 219, 224 (1995). This court is persuaded by the reasoning of *Pittman v. Grayson*, 869 F. Supp., 1065 (S.D.N.Y. 1944) (in which the plaintiffs sued Icelandair for its participation in the abduction of minors). *Pittman* rejected the argument here raised; it concluded that allowing the suit before it "would not frustrate the ADA's economic deregulation of the airlines nor significantly impact the airline's competitive posture." *Id*, at 1074. Because the better view is that the issue of preemption should be evaluated from the standpoint of the impact of the asserted claim on the economic competitiveness of airlines, because there can be no showing EJM competes in the industry on the basis of the ease with which a parent may abduct his children in violation of court orders by use of its aircraft, and since, in enacting the ADA, Congress "did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct" (*Chavas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 [9th Cir. 1998]), the preemption argument (if not abandoned as this court believes) is not persuasive.

In its related JNOV motion, the defendant has argued its preemption argument is reviewable under the plain error doctrine. However, "[p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of

and public confidence in the judicial proceedings." *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 326, fn. 24. (Internal quotation marks and citation omitted.) This court believes the plain error doctrine is inapplicable because, assuming arguendo an error in the court's decision re preemption, it is not so obvious an error or so truly extraordinary a situation as to represent fundamental unfairness or diminish public confidence in these proceedings where, as here, the defendant had - and exercised - the opportunity to brief the preemption doctrine on numerous occasions and rested its argument on each such occasion, not on the ADA, but on the Warsaw Convention and where, as here, there are numerous and logical reasons to reject defendant's argument. See earlier referenced motions and rulings.

Regarding the claim there is no cause of action for aiding and abetting Wissa's interference with the plaintiff's custodial relations, this court fully considered the argument raised by way of both a Motion to Strike and a Motion for Summary Judgment and rejected it. See memoranda of decisions dated June 29, 2004, and December 27, 2004.[4] Regarding the claim the verdict should be set aside and a new trial granted because Connecticut substantive law should have been applied to all counts and because EJM owed no duty to the plaintiff-mother, the court fully articulated her analysis and the applicable case law. The parties are again referred to the twenty-seven (27) page Memorandum of Decision on Motion for Summary Judgment wherein the court rejected the defendant's argument Connecticut substantive law should apply under the doctrine of lex loci delicti[5] (because the flight originated in this state). Applying §§ 145 and 6 of the Restatement (Second) of Conflict of Laws, she concluded Massachusetts substantive law, which by statute and common law

---

[4] In fact, this state has recognized aiding and abetting as an appropriate vehicle for imposing civil liability in *Carney v. DeWees*, 136 Conn. 256 (1949). See also *Efthimiou v. Smith*, 268 Conn. 499 (2004); Restatement (Second) of Torts, § 876.

[5] This state's own Supreme Court abandoned categorical allegiance to that doctrine in tort cases in *O'Connor v. O'Connor*, 201 Conn. 632 (1986).

recognizes a cause of action for filial consortium, should apply. Interestingly, as the plaintiff notes, EJM is a citizen of Ohio which, like Massachusetts, recognizes a cause of action for filial consortium. See e.g., *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244, 251, 617 N.E. 2d 1052, 1057 (1993). Its preference for the application of Connecticut law as opposed to the law of either Massachusetts (where the children and both parents had continuously resided, where all family members were born, and from which state Wissa's communications with EJM originated) or Ohio is premised entirely upon this state's more restrictive view of that cause of action. The same Memorandum of Decision analyzed the concepts of "duty" and "foreseeability" with regard to the negligence claim of Count Two.

The defendant posits its action or inaction is not, as a matter of law, a proximate cause of the abduction. "The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue . . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement, the question is one to be determined by the trier as a matter of fact." *Label Systems Corp. v. Aghamohammadi*, 270 Conn. 291, 322 (2004). This court instructed the jury the test for determining proximate cause was whether EJM's conduct was a substantial factor in bringing about the claimed injury or damages, that it must be established the injury or damage would not have occurred but for the defendant's wrongful conduct[6] and that there may be more than one proximate cause of the claimed injury. Tr., 4/27/05, p. 72. In fact, the jury was directed to "insist" the defendant's conduct be a substantial factor in causing the claimed injury or damage. *Id.*, at 73. Though EJM took no exceptions to the charge, it argues (in each of these motions) that each such

---

[6] Thus, the jury was instructed with regard both to cause in fact and legal causation (of which causation in fact is the first component). Our Appellate Court has said, "The proximate cause requirement tempers the expansive view of causation [in fact] . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty." *Dubreuil v. Witt*, 80 Conn. App. 410, 428 (2003).

failure to take exception should be preserved under the plain error doctrine. See New Trial Motion, at p. 3. "Jury instructions must be read as a whole . . . and are not to be judged in artificial isolation from the overall charge."[7] See, e.g., *DeMarkey v. Fratturo*, 80 Conn. App. 650, 659 (2003) (Internal quotations omitted.).

Trial testimony clearly established arrangements for the flight in question were made on less than thirty (30) hours notice, that the father had requested a one-way trip to Egypt, that the passenger manifest indicated two very young children would be flying with them, unaccompanied by an adult female, and that the quoted charge of approximately $160,000 was so "unusual" that the Director of Charter Operations (who took the reservation and spoke to the father) had himself never booked a trip to Egypt nor could he identify any prior international flight booked on such short notice, and he couldn't remember any charge as high as this one. In fact, his testimony was that he could not recall any other instance where one parent had booked an international flight for children without the presence of the other parent. There was evidence the father's credit card company would authorize only $15,000; the remainder came from a wire transfer made by a female not known to the defendant and not related to the children. The same witness testified he did not want to know whether the minors' mother would be on the flight. The defendant's own expert testified to the charter industry's "Know Your Customer" rule; he testified the proper procedure in booking a flight such as this for a new (or "pop-up") customer was to determine whether the potential client was "established" by inquiring whether he owned a home, had a bank account, etc. - none of which inquiries were here made. He also testified that, if - as here - a wire transfer were involved, the normal practice would have been to gather information about the source of the funding. That was not done here. Further, there was evidence before the jury that a company called NetJets, this defendant's sister company,

_____

[7] The jury was also charged it could not find EJM liable to the plaintiff solely for its failure to require executed dual consent forms. Tr., 4/27/05, p. 80.

in a publication entitled "NetJets Update," advised that, in view of "parental custody issues," U.S. Customs and Border Patrol officers recommended "children carry documentation when traveling internationally alone or with only one parent . . . regardless of the minor child's nationality or age." Exh. 26. It continued, "It is also recommended that the child carry a notarized letter signed by the absent parent . . . authorizing the travel." *Id.* Though that communication was published in 2003, no EJM employee who testified (either in deposition or at trial) had any knowledge of the communication or the contents of the warning. EJM made no inquiry of Wissa regarding any documents relevant either to the children or to their mother; thus, no document or notarized letter was provided. The NetJets article concluded with a referral to the State Department's website at www.travel.state.gov for additional information. EJM's Director of Charter Services (Montag) - whose e-mail address is T. Montag at NetJets.com - testified that he expected the defendant's operations area would be checking for the State Department's various advisories regarding travel to foreign countries. Finally, by affidavit made a full exhibit (Exhibit 27), Leila Ben Debba, who served as International Case Coordinator for the National Center for Missing and Exploited Children from 1999-2002, testified to a State Department advisory dated August, 2000, entitled "International Parental Child Abduction - Egypt" (referred to as the "Egypt Advisory"), which read in part:

> Currently there are no international or bilateral treaties in force between Egypt and the United States dealing with international parental child abduction. The Hague Convention on the Civil Aspects of International Child Abduction cannot be invoked if a child is taken from the United States to Egypt, or vice versa, by one parent against the wishes of the other parent or in violation of a U.S. custody order.

That same advisory (available when this flight was being arranged) notes that children under a certain age (generally, 18 years for boys and 21 years for girls) cannot leave Egypt without the father's permission, that Egyptian immigration officials allow a father to put a travel "hold" on his children, and that American citizens traveling to Egypt "place themselves under the jurisdiction of Egyptian courts." *Id.* Under all of these circumstances, this court concludes: 1) proximate cause was

a question of fact for the jury; 2) there was not error in the charge regarding proximate cause which, read as a whole, was fair to both parties; 3) there was sufficient evidence upon which the jury could have found EJM's action - or inaction - was a proximate cause of the plaintiff's injury or damages; and 4) given the totality of the evidence as above described, there was sufficient evidence upon which the jury could have found EJM was wilfully blind to Wissa's abduction of his children, that Wissa could have successfully abducted the children only by reason of EJM's willingness to satisfy the unusual and urgent travel demands of Wissa ("urgent" in view of the testimony that, on the Monday following this Friday flight, there was a scheduled hearing in the Massachusetts probate court concerning the plaintiff's request Wissa's future travel with the children outside Massachusetts be prohibited) and as a result of EJM's ignorance of or knowing avoidance of information regarding parental abduction of children to such countries as Egypt, which information had been available to EJM and its sister company.

The defendant claims there was no evidence it was either reckless or wilfully blind regarding the abduction or that it intentionally assisted Wissa in the abduction or that it even knew of Wissa's intention to kidnap the children. Here again the defendant claims the court improperly charged the jury and, though the defendant took no exceptions to the charge, it can seek review under the plain error doctrine. The jury was instructed it must find the defendant "knowingly assisted in a substantial way Wissa's illegal conduct" to hold it liable for aiding and abetting Wissa's interference with the plaintiff's custodial relations. There is not the requirement - under either Massachusetts or Connecticut decisional law - to plead or prove actual knowledge. If a person confronted with a state of facts closes his eyes in order that he may not see that which would be visible and therefore known to him if he looked, he is chargeable with "knowledge" of what he would have seen had he looked. *Demoulas v. Demoulas*, 428 Mass. 555 (1998). "[K]nowledge of facts or circumstances which ought reasonably to excite suspicion and put one on inquiry is sufficient to charge one with notice of those

facts that he might have ascertained by the exercise of ordinary diligence." *State v. Barber*, 24 Conn. Supp. 346, 352 (Conn. Cir. App. Div. 1962). The plaintiff alleged EJM remained wilfully blind and/or egregiously refused to see the father's obvious unlawful activity. Second Revised Complaint, Para. 43. The jury was free to consider whether, under all of the circumstances to include the irregularities in the flight arrangements (specifically, the short notice, the circumstances surrounding payment, and the absence on the manifest of a female of such an age as to suggest she was the mother of the children), the defendant's aggressive marketing of the "privacy" and "discretion" afforded travelers by the charter airline industry, EJM's failure to know of or to act upon State Department warnings re parental abductions and the travel by children to Egypt, the failure to require dual parental consent forms, etc., EJM was liable for aiding and abetting Wissa's wrongful act. Whether EJM had the requisite knowledge to impose liability is a question particularly suited to a trier of fact. See *Batick v. Seymour*, 186 Conn. 632 (1982). The court's charge was an application of evidentiary rules permitting juries to infer knowledge and intent from circumstantial evidence and to find awareness of a fact based on wilful blindness to it. In fact, the jury heard from an EJM witness that no inquiry was made of Wissa whether he was even the father of these children. The characteristic element of wilful misconduct is "the design to injure either actually entertained or to be implied from the conduct or circumstances . . . ." (Emphasis added.) *Arnone v. Connecticut Light & Power Co.*, 90 Conn. App. 188, 197 (2005). On the basis of the evidence before the jury, it could reasonably have concluded EJM knowingly and wilfully aided and abetted Wissa. [E]rror cannot be predicated on the court's failure to adopt the particular language of a request to charge where the matter is adequately and fairly covered in the charge." *Drummond v. Hussey*, 24 Conn. App. 247, 249 (1991). To charge the jury (as this court did) that the jury must find the defendant knowingly assisted the father's illegal conduct in a substantial way is to charge intentional assistance under the circumstances.

-11-

Nor does this court accept that she should have instructed that Count Three (loss of filial consortium) was "the damages for the First Count." Motion, at p. 2. The court, having explained the elements of the two causes of action, carefully noted the distinction between the damages for Count One and Count Three. She noted the damages to be awarded for Count One, if awarded, were for the plaintiff's own emotional injury (for which she was medically treated) whereas the damages to be awarded for Count Three were for the deprivation of the society of her two young children for twenty-two months and for the joy and fulfillment experienced in sharing in their daily lives. Tr., 4/27/05, Charge, at 30-31. That charge is consistent with both the comments to Restatement (Second) of Torts, § 700 and *Murphy v. I.S.K. Con. Of New England, Inc.*, 409 Mass. 842 (1991), which provides that, in intentional interference actions, a parent may recover compensation for loss of filial consortium in addition to damages for emotional distress and monies spent for recovery of the child. *Id.*, at 862.

Regarding the claim it was error to permit a question concerning "the lack of subsequent remedial measures by the defendant" (Motion, at p. 2), the court's recollection is that she ruled during trial that Rule 4-7 of the Connecticut Code of Evidence did not preclude the introduction of deposition testimony reflecting the "lack" of subsequent remedial measures. By its terms, Rule 4-7 provides evidence of "measures taken" after an event, which, if taken before the event, would have made injury less likely to result is not admissible to prove negligence or culpable conduct. By its terms, it prohibits evidence of <u>affirmative</u> remedial measures taken after the event to prevent future harm to others (as, for example, if the defendant were asked whether, after this flight, EJM required a father traveling alone with children to produce executed dual parental consent forms or, in the case of a divorced father, a copy of a court order permitting him to take his children out of the country). The purpose for excluding evidence of subsequent remedial repairs is to encourage repairs without fearing the fact of repair would be offered as proof of negligence. *Hall v. Burns*, 213 Conn. 446,

457-58 (1990). The rule does not preclude evidence no repairs or measures were taken. Thus, when EJM's employee (Raber) testified EJM, as a result of this abduction, had not done anything to safeguard against further child abductions on its flights, it was not in contravention of either the express language or underlying policy rationale of § 4-7. The federal counterpart to that section, Federal Rule of Evidence 407, is a narrow limitation designed to exclude only evidence that would discourage safety improvements. See, e.g., Cann v. Ford Motor Co., 658 F.2d 54, 60 (2d Cir. 1981). Further, this court's belief is that no objection to the question was made until the day after the testimony; thus, had the court instructed the jury not to consider that evidence (the requested remedy), the jury would have heard the allegedly offensive testimony twice.

Finally, the defendant claims the court improperly determined EJM could not claim superseding cause because it denied its own negligence and alternate pleadings are permissible. It needs first be stated the court did not prevent evidence of intentional wrongdoing by others. There was frequent reference to the wrongful conduct of Wissa, his mother, and Hope Amanda Smith (who paid for the flight). The Order of April 20, 2005 (in response to a Motion in Limine for Preclusion of Evidence Relating to Comparative Negligence Special Defenses) precluded "evidence or argument regarding the apportionment of liability or fault as to reckless or intentional tortfesors" and the court noted no apportionment claim had been advanced. No clarification of that Ruling was requested; thus, the court had no reason to believe any party thought the Order meant other than what it said - EJM could not argue or offer evidence going to the percentage of liability vis-a-vis intentional tortfeasors. The same Ruling also provided the "existence of intervening superseding cause presupposes [defendant's negligence] which is denied; no jury issue presents." EJM now argues the court concluded - wrongly - EJM's denial of negligence and its effort to assert superseding cause as a defense were inconsistent and that superseding causation applies only when there is admitted negligence. Again, no clarification of the Ruling was requested.

-13-

EJM relies primarily on *Wagner v. Clark Equipment Co.*, 243 Conn. 168 (1997). "Traditionally, Connecticut law defined superseding cause as 'an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" Motion, at pp. 5-6, citing to 243 Conn., at 179. The defendant then cites to *Barry v. Quality Steel Products, Inc.*, 263 Conn. 424 (2003). The claim in *Barry* was that the trial court improperly instructed the jury on the doctrine of superseding cause (The defendants there claimed the combined negligence of both plaintiffs constituted superceding cause which exonerated the defendants from liability on the product liability claim; the plaintiffs argued their injuries were not outside the scope of the risks created by the alleged defective design and manufacture of the subject roof bracket.). The Court engaged in an extensive examination of the continuing vitality of the doctrine and concluded the doctrine "no longer serves a useful purpose in our tort jurisprudence" (*Id.*, at 446) and that it was "no longer appropriate to give an instruction of the doctrine of superseding cause in cases involving multiple acts of negligence." *Id.* In the case before this jury, there was no claim of negligence against any party other than EJM (As earlier noted, the case against Wissa was premised on his intentional conduct and was tried to the court.). Because C.G.S. § 52-572h(o) provides there shall be no apportionment of liability or damages as between negligent parties on the one hand and other than negligent tortfeasors (to include intentional tortfeasors such as Wissa), this court, in the above referenced Ruling, precluded argument of a never pled apportionment claim. The defendant, while conceding § 52-572h(o) precludes any argument of apportionment as against Wissa and that both Massachusetts and Connecticut law relates superseding cause to proximate cause, states, "In the instant case, however, EJM claims that the reckless and intentional acts of third parties, not the third parties' negligence, worked as a superseding cause" and that EJM "should have been allowed to

-14-

argue the conduct of third parties broke the causal chain."[8] Motion, at p. 6. The effect of the court's Ruling, EJM argues, was to make it responsible for the conduct of third parties "even if its conduct was not the proximate cause of the plaintiff's alleged injuries." *Id.* The court is not persuaded. While the *Barry* Court articulated that its conclusion the doctrine no longer served a useful purpose was confined to cases wherein there were multiple acts of negligence (263 Conn., at 439, fn. 16), there is no reason to believe the result would be any different if that Court were presented with these circumstances. "Our conclusion does not necessarily affect those cases where the defendant claims that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." (Emphasis added.) This is not the case in which a criminal attack on a plaintiff was deemed to be a superseding cause of plaintiff's inquiry claimed to have been caused by an overgrowth of vegetation on the defendant's property (*Doe v. Manheimer*, 212 Conn. 748 [1989]). Nor is it a case wherein the murder of a decedent in a parking garage (owned and operated by a defendant who allegedly failed to provide adequate security) was deemed to be a superseding cause which exonerated the defendant's claimed negligence (*Stewart v. Federated Dep't. Stores*, 234 Conn. 597 [1995]) - both of which cases were cited by the Court in *Barry* at fn. 16. The defendant here cannot dress Wissa as an "unforeseeable" intentional tortfeasor. The Court in *Stewart* described the concept of proximate cause as a limitation on "how far down the causal continuum individuals will be held liable for the consequences of their actions." 234 Conn., at 605-06. Clearly, that Court viewed intervening or superseding cause as having a temporal component. EJM confuses, as did the plaintiff in *Wagner, supra*, the concepts of concurring cause and superseding cause. "A concurrent

---

[8] EJM never puts a face on "third parties" but it should be noted the only other party in the case before the court was Wissa, whose claimed conduct was intentional and whose case was tried to the court. The claims of negligence against other parties were resolved prior to trial; had they not been resolved, *Barry* makes clear the doctrine of superseding cause would not have been applicable.

-15-

cause is contemporaneous and coexistent with the defendant's wrongful conduct and actively cooperates with the defendant's conduct to bring about the injury. (Citations omitted.) A concurrent cause does not relieve the defendant of liability. (Citation omitted.) A superseding cause, by contrast, 'so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury . . . .'" (Emphasis added.) 243 Conn., at 183. Consistent with this analysis, the Court in *Barry* directed that, upon retrial, the fact finder must determine whether the defendants' conduct "was a cause in fact and a proximate cause of the plaintiffs' injuries." 263 Conn., at 446. Their view of proximate cause "implicitly includes one of the stated purposes of the doctrine of superseding cause, namely, to limit the defendant's liability to foreseeable bounds." *Id.*, at 441, fn. 17. And, as EJM concedes, Massachusetts law also relates the superseding cause doctrine to proximate cause. Motion, at 7, citing to *Kent v. Commonwealth*, 437 Mass. 312, 320 (2002) (holding the decision of INS to take custody of the prisoner and deport him to Canada superseded any negligence of the parole board which released a prisoner who later shot a police officer). Massachusetts also views "intervening cause"[9] as having a temporal component. It is one "which comes into active operation after the negligence of the defendant." *Christopher v. Father's Huddle Café, Inc.*, 57 Mass. App. Ct. 217, 228 (2003). An intervening cause "is neither operating in the defendant's presence, nor at the place where the defendant's act takes effect at the time of the defendant's act." *Id.* Intervening acts occurring subsequent to a defendant's negligence may constitute superseding cause. (See e.g., *Howard Alperin et al.*, 14C Mass. Prac., Summ. Of Basic Law § 20.233, n.1 [3d ed. 2004]) and see also *Peckham v. Continental Casualty Co.*, 895 F.2d 830, 838 (1st Cir. 1990) in accord. It was - and is - this court's view no jury issue as to superseding cause presented because EJM's actions in conducting the flight

---

[9] As the Court in *Wagner, supra,* noted, "the terms 'intervening cause' and 'superseding cause' have been used interchangeably." 245 Conn., at 178. It then deferred to 2 Restatement (Second), Torts §§ 440-453, which takes the position "superseding cause" is correct and that that term embodies within it the concept of an "intervening force."

under the circumstances here presented and Wissa's conduct in carrying out the abduction were concurrent. The inquiry for this jury was whether EJM's conduct was both a cause in fact and a proximate cause of the harm to the plaintiff. They were instructed as to both as they were instructed there can be more than one substantial factor. That Wissa's conduct in abducting the children occurred contemporaneously with EJM's conduct of the flight under the circumstances with which it was presented obviates the concern of the *Barry* Court that too much prominence ought not be given to the temporal order of the contributions of each tortfeasor since "most events . . . result from a convergence of many conditions." 263 Conn., at 424. (Citation omitted.)

The defendant's Motion to Set Aside Verdict and For New Trial is denied.

## Motion to Set Aside Verdict and For Judgment Notwithstanding the Verdict (#197.40)

The issues (six in number) raised in this motion were raised in the motion already considered herein - thus, the court address them only briefly.

EJM argues its failure to move for a directed verdict should have no effect on this court's ruling on its motion for judgment notwithstanding the verdict because its motion for summary judgment raised the issue of preemption only with regard to the Warsaw Convention and not to the Airline Deregulation Act (ADA) and, thus, the issue of preemption was preserved for review. Since the ADA was not raised in either the motion to dismiss or the motion for summary judgment, the court rejects the argument the ADA issue was preserved since - though it could have been raised - it was not. Nor does the court believe the plain error doctrine preserves the issue for the reason here earlier stated. The federal statute is not applicable (Specifically, in enacting the ADA, Congress did not intend to immunize airlines for personal injuries caused by their tortious conduct and because

allowing this suit does not significantly impact EJM's competitive posture in the industry.).[10]
Further, if, as defendant argues, preemption raises an issue of subject matter jurisdiction (Motion,
at 2), it is an issue for the court. EJM neither raised any defense based upon the ADA nor argued
the ADA in its motion for summary judgment (as the defendant concedes). In a remarkably similar
Massachusetts case, the Massachusetts Supreme Judicial Court held that a defendant who failed to
raise a preemption defense based upon the Labor Management Relations Act in a motion for directed
verdict could not raise it for the first time in a JNOV motion. See *Abramiam v. President & Fellows
of Harvard Coll.*, 432 Mass. 107, 115 (2000). Our Supreme Court has emphasized that the phrase
"relate to" in the preemption clause of the ADA "cannot be taken to extend to the furthest stretch of
its indeterminancy or else for all practical purposes preemption would never run its course."
*Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001). Preemption, in that Court's words, ought not turn
on "infinite connections." *Id.*, at 147. To the extent it may be said this case raises issues of boarding
or ticketing procedures, it is only peripherally so and to so construe the federal preemption clause
as to be applicable here would create a "safe harbor for airlines from civil prosecution for the civil
analogues of criminal offenses." *Pittman v. Grayson*, 869 F. Supp. 1065, 1074 (S.D.N.Y. 1994).
Holding EJM liable for its tortious conduct here will not undermine the ADA's goal of promoting
competition within the airline industry.

Finally, as the plaintiff has argued, the same counsel who here argues the failure to move for
a directed verdict does not preclude the granting of a TNOV motion has previously written, "The

---

[10] The claims here raised do not present issues of state imposed obligations on an air
carrier's pricing structure,, its routing, ticketing or boarding procedures or service. See, e.g., 149
U.S.C. § 41713(b)(1). Contrary to the claim EJM advances in its Reply brief, this case does not
center on the bargaining process between Wissa and EJM (Indeed, there was no negotiation at all
between them.). Nor is there any claim or evidence here of state imposed obligations that would
result in additional operating costs to EJM.

motion for directed verdict is a prerequisite to a § 16-37 motion."[11]  Horton, Shields & Knox, Connecticut Practice Book Annotated, § 16-37, Authors' Comments, at 573 (citations omitted.). Citing to *Salaman v. Waterbury*, 44 Conn. App. 211, 215-16 (1997), the authors continue, "A motion for judgment n.o.v. should raise only issues that were raised in a motion for directed verdict." *Id.* This court finds no reason to abandon this requirement of procedural practice long recognized by our jurisprudence.

As to the claim there was not evidence of recklessness, see the references to this court's earlier rulings and see also *Dubay v. Irish*, 207 Conn. 518 (1988) - also cited by this defendant - wherein our Supreme Court stated, "While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing." *Id.* See also *Dubay*, at 533, fn. 8.  There was more than sufficient evidence for the jury to find that EJM was wilfully blind to the charter industry's "Know Your Customer" rule; its own expert testified to EJM not following the proper practice of determining a profile of a pop-up customer and, where a wire transfer was involved, of gathering information regarding the source of the funds.  Tr., 4/26/05, a.m., at 28 and p.m., at 14.

With regard to the no duty claim, see Ruling on Motion for Summary Judgment, at 12-14. EJM's attempt to engraft a "special relationship" requirement upon the longstanding two-pronged test of foreseeability and public policy goals is not supported by the law of either Massachusetts or Connecticut where, as here, the defendant actively aided in Wissa's plan and, by so doing, was liable to the plaintiff under Count One.  See, e.g., *McKinney v. Vareschi*, 42 Mass. App. Ct. 953, 955 (1997) ("The foremost consideration in determining whether a special relationship exists between

---

[11] P.B. § 16-37 provides inter alia, "After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set the verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict."

a plaintiff and a defendant is whether the defendant reasonably could foresee that he would be expected to take affirmative action to protect the plaintiff and could anticipate harm to the plaintiff from the failure to do so."); *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 571 (1998) ("The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct . . . ."). Nor is EJM's concern that requiring background information from a passenger or inquiring into the consent of a non-traveling parent would expose it to federal or state claims of discrimination under these circumstances persuasive since child abductors are not a constitutionally protected class and the sex of the non-traveling parent (or of the traveling parent) is neither determinative nor at issue.

The motion is denied.


## Motion to Set Aside the Verdict and For New Trial or Remittitur (#197.20)

The defendant has moved under P.B. §§ 16-35, 16-36 and C.G.S. § 52-216a, the verdict (in the total amount of $27 million) be set aside and a new trial be ordered either unconditionally or unless the court order a remittitur accepted by the plaintiff. It argues the verdict is excessive as a matter of both state common law and federal constitutional law, is inconsistent and duplicative, and should be offset as a result of "any settlement with a former codefendant."

While the defendant consistently describes a verdict of $27 million, the jury returned two (2) verdicts based on two (2) separate causes of action and for which the plaintiff claimed differing injuries and/or losses. It was instructed that, with regard to Count One (the aiding and abetting of interference with custodial relations), they were to consider the plaintiff's recovery costs (There was

evidence the plaintiff herself paid $699,916.38 in such costs[12]) and her emotional distress. The

defendant has raised plaintiff's reference (in closing argument) to the plaintiff's mother having spent

more than $3 million in recovering her grandchildren. Defense counsel objected to that comment;

the court sustained the objection and told the jury, "She's not entitled to that. She's not entitled to

that as economic damages." Tr., 4/27/05, a.m., at 32. Counsel then asked for a curative instruction

which the court indicated the jury would get - at which point, plaintiff's counsel remarked to the jury,

"Judge Sheedy will be instructing you that the economic damages cannot include that. They should

be $700,000 or so when you do the math." *Id.* The court later charged the jury that, with regard to

recovery expenses, "[Y]ou will compensate Ms. Streeter only for the monies she paid and she lost

.... So you are not to be concerned with what anybody else may have lost or what anybody else may

have paid." Tr., 4/27/05, a.m., p. 78. Thus, it was made clear that the plaintiff could be awarded no

more than $699,916.38 in recovery costs. The jury was also instructed that, if they found for the

plaintiff on Count One and compensated her for emotional distress on that count, they could not

again compensate her for emotional distress on Count Two even if they found EJM was liable to her

on Count Two. Tr, 4/27/05, a.m., pp. 82-83.[13]

As our Supreme Court has said, "The size of the verdict alone does not determine whether

it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere

within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks

the sense of justice <u>as to compel the conclusion that the jury was influenced by partiality, prejudice,</u>

<u>mistake or corruption</u>." *Ham v. Greene*, 248 Conn. 508, 536 (1999) (Quotation omitted; emphasis

---

[12] The plaintiff argued $628,000 was the amount incurred for legal and investigative
services - here and abroad - and that there were travel expenses of $67,149.92 and $4,766.46 in
cell phone expenses. Exhs. 18-22; Tr., 4/2i7/05, a.m., p. 31.

[13] Conversely, they were instructed that, if they found the plaintiff had not sustained her
burden of proof on Count One but had done so for Count Two, they were to consider the
plaintiff's damages for the emotional distress claimed in Count Two. *Id.*