UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAWN POULIOT : | |
| : | CIVIL ACTION NO. |
| Plaintiff : | 3:02 CV 1302 (JCH) |
| : | |
| v. : | JUDGE JANET C. HALL |
| : | |
| PAUL ARPIN VAN LINES, INC. et al. : | |
| : | |
| Defendants : | February 27, 2006 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL**

Pursuant to Rule 59 of the Federal Rules of Civil Procedure and Local Rule 7(d), the defendants Paul Arpin Van Lines, Inc. and Arpin Logistics, Inc., hereby submit the following reply memorandum in support of their motion for new trial.

**I.     The Plaintiff's Liability Arguments**

*A.     Recklessness*

In a footnote in his memorandum of law, the plaintiff "agrees to a voluntary dismissal, under Fed. R. Civ. P. 41, of [his] recklessness claim . . . ." (Pl. Mem., 3 n.1). However, in this case, either an involuntary dismissal with prejudice, a voluntary dismissal with prejudice as a condition, or entry of judgment as a matter of law is the proper course of action because the plaintiff failed to prosecute his recklessness claim at trial.

In general, a voluntary dismissal of a claim under Rule 41 is without prejudice to renewal of the claim at some later point in time. See *Shady Records, Inc. v. Source Enterprises, Inc.*, 371 F.Supp.2d 394, 396 (S.D.N.Y. 2005). However, this Court has the authority to make prejudice a condition of dismissal. *Shady*, 371 F.Supp. at 396 (citing *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2nd Cir. 1988). In *Shady*, the District Court determined that dismissal without prejudice of a claim that had been pending for over a year, in which discovery and pretrial submissions had

been made and trial was less than two weeks away, would be grossly unfair to the defendant. As the Court pointed out, "[t]o permit the plaintiff to discontinue the case at this late stage, and then to reinstate the same action whenever it felt like it in the future, would authorize intolerable manipulation of the Court's calendar and the defendants' resources." *Shady*, 371 F.Supp. at 396.

In this case, given that the plaintiff orally withdrew his recklessness claim on the first day of trial and presented no facts or argument in support of it during the trial, it would constitute a similarly "intolerable manipulation" to permit him to reinstate that claim should a new trial be ordered, either now or on appeal. As such, the Court should dismiss the recklessness claim with prejudice and order that the dismissal will have full *res judicata* effect, or simply enter judgment as a matter of law in favor of the defendants.

  B. *Bifurcation*

With respect to bifurcation, the plaintiff claims that because the defendants cite no case in which a district court was reversed for failing to bifurcate a trial, "any error in that regard must be characterized as harmless under Fed. R. Civ. P. 61." (Pl. Mem., 4). This argument ignores the well-settled rule that "[i]n determining whether an error was harmless, however, we must look to the unique context of the particular case, 'including the one-sided or closely balanced nature of the evidence bearing upon the issue which the error arguably affected . . . and the centrality of that issue to the ultimate decision.'" *Phoenix Associates III v. Stone*, 60 F.3d 95, 105 (2nd Cir. 1995) (quoting *Malek v. Federal Ins. Co.*, 994 F.2d 49, 55 (2nd Cir. 1993); see 12 MOORE'S FEDERAL PRACTICE, §61.02[2] at 61-6 ("[c]learly, review for harmless error is fact specific and must, therefore, proceed on a case by case basis"). It is therefore has no bearing on the harmfulness of the Court's refusal to bifurcate this trial whether, in other factual circumstances, other district courts have not been reversed for a like refusal. All that matters is whether, in the

context of this trial, the powerful and emotional nature of the plaintiff's damages evidence – discussed in detail in the defendants' motion for new trial – may have had a substantial effect on the jury's verdict.

  C.  *The FMCSA*

Two points in the plaintiff's memorandum regarding the Court's refusal to give a curative instruction on the FMCSA Regulations are misleading. First, the plaintiff claims that the defendants' waived any objection to the admission of Dr. Ruhl's testimony. (Pl. Mem., 5). This is a complete non sequitur. The defendants did not challenge the admissibility of Dr. Ruhl's testimony on this point because the Court did not rule that the no duty existed under the FMCSA Regulations until the last day of trial. However, the lack of an objection to Dr. Ruhl's testimony has nothing to do with the issue of whether the Court should, or should not, have granted the defendants' clear and timely request for a curative instruction once the Court made its ruling regarding the FMCSA.

Second, the plaintiff notes that several defense witnesses "testified unequivocally that the defendant had an obligation to 'systematically inspect, repair and maintain their equipment' including the liftgate." (Pl. Mem., 6). Their choice of language, however, was not a coincidence. Rather, it was the product of a clear attempt by the plaintiff to ensure that each witness repeated that mantra for the jury – a mantra that echoed the language of the FMCSA Regulations first testified to by Dr. Ruhl. It is therefore disingenuous for the plaintiff now to argue that the fact of their testimony prevents any prejudice to the defendant from the Court's refusal to give a curative instruction, given that their testimony was the obvious product of the plaintiff's attempt to reinforce the language of the FMCSA in the jurors' minds.

*D.    Golden Rule*

The plaintiff relies principally on *Johnson v. Celotex*, 899 F.2d 1281 (2nd Cir. 1990), to support his claim that the failure to give a curative instruction following his Golden Rule argument was harmless. (Pl. Mem., 10). However, there are two key distinctions between *Johnson* and the present case (both of which only become apparent after reading the District Court decision as well as the Second Circuit opinion). First, neither decision sets forth the actual language of the Golden Rule arguments in *Johnson*. There is, therefore, no real way to compare its degree of harmfulness with the remarks in this case. Second, unlike the present case, the defendants in *Johnson* did not request a curative instruction in spite of the supposed pernicious nature of the arguments of plaintiff's counsel. *In re Joint Eastern & Southern Districts Asbestos Litigation*, 124 F.R.D. 538, 544 (E.D. & S.D.N.Y. 1989), *aff'd*, *Johnson v. Celotex*, 899 F.2d 1281 (2nd Cir. 1990).

The plaintiff also argues that "[i]magining that Shawn Pouliot's disabilities amounted to a job is not the same as asking the jury to award Shawn what they themselves would want to be awarded if they were the victim." (Pl. Mem., 10). Even the most cursory perusal of the comments of plaintiff's counsel during his summation belies this assessment. Counsel very clearly asked the jurors to imagine that they "had to live as Shawn Pouliot for one year with all the things we have discussed, 7 days a week, 365 days a year[,]" and to then consider what "would fair and just reasonable compensation for that period of time be . . . ." (Tr. 1/18/06, Trial Summations, 28). As such, it is simply nonsensical for the plaintiff to now assert that he did not ask the jury to give Shawn what they themselves would want if they were in Shawn's position.

*E.    Insufficiency on Apportionment*

The plaintiff argues that the defendants failed to preserve their claim for a new trial on

this issue by failing to move for a directed verdict on their comparative negligence claim. (Pl. Mem., 12-13). However, that requirement applies only to motions for judgment as a matter of law under Rule 50. Indeed, the very case cited on this point by the plaintiff, *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149 (2nd Cir. 1998), concerned a Rule 50 motion. No such requirement exists for new trial motions under Rule 59. *Urti v. Commercial Transport Corp.*, 479 F.2d 766, 768-69 (5th Cir. 1973); see also *Total Petroleum, Inc. v. Davis*, 788 F.2d 476, 479 (8th Cir. 1986). As such, the defendants have not waived this claim.

## II.     The Plaintiff's Damages Arguments

Only one of the plaintiff's damages arguments requires a response: His assertion that *Jones v. Kramer*, 267 Conn. 336 (2004), bars any reduction of the plaintiff's economic damages for payments from collateral sources because the defendants did not request a jury verdict form that identified the specific items of economic loss for which the jury was compensating the plaintiff. (Pl. Mem., 27). This assertion is belied by the actual facts and holding of *Jones*.

In *Jones*, "the plaintiff claimed more than $40,000 in economic damages, including more than $30,000 in medical expenses and $10,000 in lost wages." *Id.* at 339-40. However, the jury awarded the plaintiff only $15,000 in economic damages, without any specification as to whether the award was for medical expenses or lost wages. The trial court subsequently granted the defendant's motion to reduce the verdict by $12,000 (which was the stipulated amount of medical costs that had been paid by the plaintiff's insurer). *Id.* at 340. On appeal, the Connecticut Supreme Court reversed the trial court's decision, based on the Court's conclusion that Conn. Gen. Stat. §52-225a "must be construed to allow only payments specifically corresponding with items of damages included in the jury's verdict to be deducted as collateral sources from the economic damages award." *Id.* at 348. Therefore, a defendant bears "the

5

burden of proving that the items of damages corresponding with the desired collateral source reduction actually are included in the award." *Id.* at 350.

However, it is crucial to remember the factual context in which the Court announced this new requirement of tort defendants. As the *Jones* decision notes,

> the plaintiff submitted multiple items of economic damages, consisting of two categories: claimed medical expenses and lost wages. In awarding the plaintiff some, but not all, of his claimed economic damages, the jury necessarily made the determination that the plaintiff was entitled to some items of damages, but not others, or was entitled to partial recovery for all items of damages. *Accordingly*, we cannot say that requiring the defendant to request, through interrogatories, that the jury break down its award of economic damages, would be particularly unwieldy.

*Id.* at 350-51 n.7 (emphasis added). In other words, because the jury awarded the plaintiff less than the full amount of economic damages that he requested, the record was unclear as to which portion(s) of the plaintiff's request the jury chose to disregard in its verdict.

There is no such confusion in this case, however, because the jury clearly awarded the plaintiff the full amount that he requested for economic damages. The total economic damages award was $6,306,376, which corresponds to the sum of the maximum amounts testified to by Mr. Forman and Dr. Gamboa. Therefore, unlike *Jones*, there is no question whether the jury "made the determination that the plaintiff was entitled to some items of damages, but not others, or was entitled to partial recovery for all items of damages . . . ." *Id.* The jury obviously did neither – instead, it awarded the plaintiff every penny that he asked for in both medical expenses and lost wages. As such, specific interrogatories are not necessary in order for this Court to determine whether a collateral source reduction – based on the sources identified in the defendants' motion for new trial – is appropriate.

6

Respectfully submitted,

_____
Daniel J. Krisch, Esq.  CT 21994
Michael S. Taylor, Esq.  CT 14650
**Horton, Shields & Knox, P.C.**
90 Gillett Street
Hartford, CT 06105
(860) 522-8338
*fax* (860) 728-0401
dkrisch@hortonshieldsknox.com
mtaylor@hortonshieldsknox.com

Harold J. Friedman, Esq. CT 23785
Karen Frink Wolf, Esq. CT 26494
**Friedman. Gaythwaite, Wolf & Leavitt**
Six City Center, P.O. Box 4726
Portland, ME  04112-4726
(207) 761-0900
(207) 761-0186 (Fax)
hfriedman@fgwl-law.com
kwolf@fgwl-law.com

CERTIFICATE OF SERVICE

       This is to certify that a copy of the foregoing was mailed via U.S. First Class Mail on February 27, 2006, to the following:

Michael A. Stratton, Esq.  
**Stratton Faxon**  
59 Elm Street  
New Haven, CT  06510

Roland F. Moots, Jr., Esq.  
**Moots, Pellegrini, Spillane & Mannion**  
46 Main Street, PO BOX 1319  
New Milford, CT 06776-1319

Thomas J. Grady, Esq.  
**Lenihan Grady & Steele**  
6 Canal Street  
PO Box 541  
Westerly, RI 02891-0541

Harold J. Friedman, Esq.  
Karen Frink Wolf, Esq.  
**Friedman Gaythwaite Wolf & Leavitt**  
Six City Center, P.O. Box 4726  
Portland, ME  04112-4726

_____  
Daniel J. Krisch