No. X06-CV-95-0155184 S              SUPERIOR COURT

NORMAN PELLETIER ET AL               COMPLEX LITIGATION DOCKET

V.                                   AT WATERBURY

SORDONI/SKANSKA CONSTRUCTION         MARCH 9, 2006
COMPANY

## MEMORANDUM OF DECISION

On December 8, 2005, a jury rendered a verdict in favor of the plaintiff Norman Pelletier against the defendant Sordoni/Skanska Construction Company (Sordoni) in the amount of $5,645,834.74 in economic damages and $22,710,000 in non-economic damages for the injuries that the plaintiff received when a steel cross beam fell on him severing his spinal cord while he was employed as an ironworker at a construction site. Sordoni has requested a remittitur of the verdict.[1] The novel issue presented by Sordoni's motion is whether the testimony of a physician that specific medical expenses are reasonably probable is required to establish the future life care needs, including future personal care and medical expenses, of a person with paraplegia. Under the

---

[1] The jury also awarded damages for loss of consortium to Reine Pelletier, the wife of Norman Pelletier. The defendant's motion for remittitur does not challenge that award.

1

circumstances of this case, I conclude that it is not.

At trial, the plaintiff presented the testimony of Lawrence Forman, a certified rehabilitation counselor, certified medical case manager, certified disability analyst and fellow in the International Academy of Life Care Planners. Forman opined as to the future expenses that the plaintiff would incur as a result of his injuries. Forman testified, in part, that it was more probable than not that the plaintiff would need a personal care attendant for twelve hours per day when he reached age 61[2], that he would be hospitalized on the average of two to four days per year and he would need a pulmonological evaluation annually. The defendant asserts that Forman was not qualified to opine on such matters because these expenses constitute medical expenses for which the testimony of a medical provider was required. The plaintiff contends that Forman's experience and training together with the evidence submitted concerning the plaintiff's injuries and past medical expenses were sufficient to establish the plaintiff's future life care needs. I agree with the plaintiff.

---

[2] While Forman concluded that the plaintiff would need assistance with his personal care for twelve hours per day, he recommended that the plaintiff hire a live-in personal care attendant because he believed that it would be more economical to do so.

2

The plaintiff submitted, through the testimony of his treating physicians and medical records, evidence that he suffered permanent, debilitating injuries as a result of the accident. His permanent injuries included paraplegia and bladder, bowel, and sexual dysfunction. He also suffers from osteoporosis, osteopenia[3], autonomic dysreflexia[4] and frequent urinary tract infections. The medical evidence established that the plaintiff's injuries would continue into the future. Forman testified that, in addition to his certifications as a rehabilitation counselor, medical case manager and life care planner, he has experience and training in determining the various types of medical and rehabilitative services and equipment that a person with spinal cord injuries will need and the length of that need. Forman further testified that he reviewed the plaintiff's medical records, met with the plaintiff and visited him in his home. Forman completed a written rehabilitation evaluation and life care plan for the plaintiff which was submitted into evidence. Forman testified that he recommended in his plan that the plaintiff obtain an annual pulmonological evaluation beginning at age 57 because he was at risk of pulmonary complications due to his spinal cord injury. Forman based his recommendation on the Surgeon General's list of persons at risk for upper respiratory complications, his own knowledge that persons with spinal cord injuries are more susceptible to pulmonological problems and on the fact that

---

[3]Osteopenia refers to decreased calcification or density of bone.

[4]Autonomic dysreflexia is a condition where the blood pressure in a person with a spinal cord injury becomes excessively high due to over activity of the autonomic nervous system.

the plaintiff had previously received pulmonary evaluations. Forman also concluded that the plaintiff would be hospitalized an average of two to four days per year because of his injuries. Forman testified that he based this conclusion on a consideration of the plaintiff's injuries and statistics published by spinal cord injury centers on the rate of hospitalization for persons with the plaintiff's injuries. Finally, Forman concluded that the plaintiff would need a personal care attendant for twelve hours per day when he reached age 61. He testified that he based his conclusion on the extent of the plaintiff's injuries, his knowledge and experience that the plaintiff's stamina, endurance and functional capacity will decrease as he ages, and his knowledge and experience as to the type and extent of personal care assistance required by a person with the plaintiff's injuries as that person ages. The plaintiff also presented evidence from a treating physician, Dr. Rosenblum, that he expected that the plaintiff's functional independence would become increasingly challenged with aging.

The defendant argues that Forman's testimony is insufficient to establish the plaintiff's future need for hospitalization, pulmonological evaluations and personal care assistance because they constitute future medical expenses which require the testimony of a physician. Specifically, the defendant maintains that a physician must testify that it is reasonably probable that the plaintiff will incur such expenses in the future. The defendant argues that such a requirement is mandated by *Marchetti v. Ramirez*, 240 Conn. 49 (1997). The defendant reads the decision in *Marchetti* too broadly.

In *Marchetti*, our Supreme Court held that an award of damages for future medical

expenses must be based on evidence that such expenses are reasonably probable. In doing so, the Supreme Court expressly rejected dicta in Seymour v. Garcia, 221 Conn. 473, 479 (1992), that such an award could be based on testimony that the plaintiff "might incur future medical expenses." The Supreme Court in Marchetti reaffirmed the well-established principle that "in assessing damages in a tort action, a trier is not concerned with possibilities but with reasonable probabilities." Id., 54. Here, Forman testified that it was more probable than not that the plaintiff would incur the expenses challenged by the defendant. Such testimony took the expenses out of the realm of "speculation and conjecture" which Marchetti was justly concerned about, id., and into the realm of probability.

Marchetti does not hold that the testimony of a physician that certain medical expenses are reasonably probable is required to establish future medical expenses. It merely holds that such evidence is sufficient. Id., 55. Courts in other jurisdictions appear to be split on the issue of whether future medical expenses can be proven in the absence of a physician's testimony. Compare Rivera v. Turabo Med. Center Partnership, 415 F.3d 162, 170-171 (1st Cir. 2005) (the trial court did not abuse its discretion in admitting the testimony of a life care planner to establish future medical needs) and Midway National Bank v. Estate of Bollmeier, 504 N.W. 2d 59, 65 (Minn. App. 1993) (the trial court did not abuse its discretion in admitting testimony of a rehabilitation consultant to establish a life care plan) with Norwest Bank, N.A. v. Kmart Corporation, 1997 WL 33479072 (N.D. Ind. 1997) (a life care planner was not qualified to establish future medical care and

treatment). I conclude that the evidence presented in this case was sufficient to establish that it was reasonably probable that the plaintiff would incur the future medical expenses challenged by the defendant and that testimony from a physician to that effect was not required.

Forman was qualified through his extensive training and experience to give his opinion as to the future life care needs of the plaintiff. Conn. Code Evid. §7-2. He based his opinions concerning those needs on medical evidence which established the nature and extent of the plaintiff's injuries and on the past medical expenses incurred by the plaintiff.[5] See Marchetti v. Ramirez, supra, 240 Conn. 56 ("[T]he cost and frequency of past medical treatment . . . may be used as a yardstick for future expenses if it can be inferred that the plaintiff will continue to seek the same form of treatment in the future.") Moreover, the plaintiff's treating physicians established that the plaintiff's injuries were permanent. Finally, Forman used statistical information distributed by spinal cord injury centers on the frequency and extent of future medical expenses in reaching his opinions. The sum and substance of this evidence were sufficient to establish the plaintiff's future need for personal care assistance, hospitalization, and pulmonological evaluations.[6]

---

[5]Evidence was presented that the plaintiff had been hospitalized in the past, received personal care assistance from his family, and received prior pulmonological evaluations.

[6]It is also noteworthy that the defendant did not dispute at trial the plaintiff's claim that he would need personal care assistance and pulmonological evaluations in the future. The defendant presented a life care expert who agreed that the plaintiff should have annual pulmonological evaluations and that he would need personal care assistance as he aged.

The defendant also claims that the amount of the jury's award for non-economic damages should be reduced because it "shocks the conscience." I am not persuaded.

A trial court's obligations in reviewing a request for a remittitur are well established. "Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Ham v. Greene*, 248 Conn. 508, 536, cert. denied, 528 U.S. 929 (1999). In determining whether the jury's verdict is reasonably supported by the evidence, the evidence before the jury must be viewed in the light most favorable to the plaintiff. *Johnson v. Chaves*, 78 Conn. App. 342, 346 (2003). The court's determination that the jury exercised poor judgment or that the court would have ruled differently is an insufficient basis for ordering a remittitur. Id., 346-47. "The court's proper function is to determine whether the evidence, reviewed in a light most favorable to the prevailing party, reasonably supports the jury's verdict." Id.

The defendant contends that the award of $22.7 million in non-economic damages

to the plaintiff "should shock this court's sense of justice." It does not. The steel beam which fell on the plaintiff severed his spinal cord. He no longer has the use of his legs. According to the medical testimony, he has a permanent impairment of 80% of his whole person. He has no voluntary control over his lower extremities, bowel, bladder or sexual function. He testified that he is in constant pain. The most basic of daily activities, such as getting out of bed, going to the bathroom, getting dressed and preparing a meal require significant time, effort and assistance to accomplish. At the time of the verdict, he had endured this pain, loss of function, and loss of life's activities for the past 11 years and, given his life expectancy, he can expect to bear it for 25 years more. Put simply, the enormity of the award is matched by the enormity of the plaintiff's damages. See *Pisel v. Stamford Hospital*, 180 Conn. 313, 344 (1980) ("While the amount of the verdict is substantial, in a relative sense it is no more substantial than the plaintiff's injury.")

In light of the above, the plaintiff's motion for remittitur is hereby denied.

BY THE COURT

_____
Jon M. Alander
Judge of the Superior Court